Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc A. Goldich (*pro hac vice to be filed*)
SHELLER, P.C.
1528 Walnut St., 4th Floor
Philadelphia, PA 19102
mgoldich@sheller.com
Telephone:  (215) 790-7300
Facsimile:  (215) 546-0942

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER A. NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEAGATE TECHNOLOGY LLC,<br><br>Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     PARTIES ................................................................................................................. 2

III.    JURISDICTION AND VENUE ............................................................................... 2

IV.     FACTUAL ALLEGATIONS ................................................................................... 3

        A.      General Background ................................................................................... 3

        B.      Defendant Touts "a major milestone for the hard drive industry" ............... 4

        C.      The Drives' Warranty ................................................................................. 8

        D.      The Backblaze Reports ............................................................................... 9

        E.      The Plaintiff's and the Class' Experience ................................................. 12

V.      CLASS ACTION ALLEGATIONS ....................................................................... 17

VI.     VIOLATIONS ALLEGED .................................................................................... 19

FIRST CLAIM FOR RELIEF  (VIOLATION OF THE CALIFORNIA UNFAIR
        COMPETITION LAW) (ON BEHALF OF PLAINTIFF AND THE CLASS) ..................... 19

SECOND CLAIM FOR RELIEF  (VIOLATION OF THE CALIFORNIA FALSE
        ADVERTISING LAW) (ON BEHALF OF PLAINTIFF AND THE CLASS) ..................... 22

THIRD CLAIM FOR RELIEF  (BREACH OF EXPRESS WARRANTY)  (ON
        BEHALF OF PLAINTIFF AND THE CLASS) .................................................. 24

FOURTH CLAIM FOR RELIEF  (BREACH OF IMPLIED WARRANTY) (ON
        BEHALF OF PLAINTIFF AND THE CLASS) .................................................. 25

FIFTH CLAIM FOR RELIEF  (UNJUST ENRICHMENT/MONEY HAD AND
        RECEIVED) (ON BEHALF OF PLAINTIFF AND THE CLASS) ..................................... 27

SIXTH CLAIM FOR RELIEF  (VIOLATION OF THE SOUTH DAKOTA
        DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION
        STATUTE) (ON BEHALF OF PLAINTIFF AND THE SOUTH DAKOTA
        SUBCLASS) .............................................................................................. 28

PRAYER FOR RELIEF ..................................................................................................... 29

JURY DEMAND ................................................................................................................ 30

Plaintiff Christopher A. Nelson ("Plaintiff"), by his designated attorneys, individually and on behalf of all others similarly situated, for his class action Complaint, alleges as follows based upon personal knowledge, the investigation of counsel, information and belief, and publicly available information:

## I.   INTRODUCTION

1.     This is a class action arising from Defendant Seagate Technology, LLC's ("Defendant") repeated failure and inability to deliver non-defective hard drives that conform to their express and implied warranties; its breach of consumer protection, unfair competition and false advertising laws; and its unjust enrichment.

2.     In October 2011, Defendant released the Seagate Barracuda 3TB Hard Disk Drive and Seagate Backup Plus 3TB External Hard Disk Drive (hereafter "Backup Plus") (collectively referred to as "Drives").

3.     Defendant marketed – and continues to market – the Drives as innovative, fast, powerful, reliable, dependable, and having extremely low failure rates.

4.     The Drives were not, however, reliable or dependable and they did not have low failure rates. Rather, they were defective and failed prematurely at spectacularly – and in many respects unprecedentedly – high rates.

5.     As demonstrated by consumer experience and reports released by Backblaze, a data backup company, the true failure rate of the Drives was substantially higher than advertised, and the Drives did not last nearly as long as comparable devices from other manufacturers or even other models manufactured by Defendant.

6.     The Drives purchased by Plaintiff and putative Class Members failed after unreasonably short intervals including, without limitation, less than a year after purchase. Indeed, many Class Members purchased Drives that failed months, weeks, or days after their first use.

7.     Defendant expressly warranted that it would replace failed Drives, but the replacements were also defective and failed at extremely high rates. Thus, the warranties failed of their essential purpose because Defendant never delivered non-defective, conforming Drives.

8.     For example, Plaintiff ordered a Backup Plus on or around November 22, 2012, and it suffered a sudden, complete, and catastrophic failure in early December 2014, rendering it useless. Plaintiff lost irreplaceable photos and documents as a result, and he expended a great deal of time attempting to recover his data.

9.     Plaintiff subsequently received a warranty replacement from Defendant, but on or around October 20, 2015 – less than a year after Plaintiff received it – the replacement Drive experienced the same type of failure as the original, rendering it useless.

10.     This suit is brought on behalf of Plaintiff and all other purchasers of Defendant's Drives for violation of the California Unfair Competition Law, the California False Advertising Law, the South Dakota Deceptive Trade Practices and Consumer Protection Statute, breach of express and implied warranties, and unjust enrichment.

11.     As a result of these violations and breaches, this action seeks restitution; damages arising from replacement costs, loss of data, and data recovery expenses; other actual, consequential, and incidental damages; interest; reasonable attorneys' fees and costs; and any other relief the Court deems just and appropriate.

## II.     PARTIES

12.     Plaintiff Christopher A. Nelson is a natural person and a citizen of South Dakota. Plaintiff ordered the Backup Plus from Bestbuy.com from his residence in South Dakota where he subsequently received the Backup Plus and the replacement Drive.  As set forth herein, Plaintiff and Class members suffered an ascertainable loss, namely the loss of money, financial injury, and damages as a direct and proximate result of the acts and omissions committed by Defendant.

13.     Defendant Seagate Technology, LLC is a hard drive manufacturer and distributor incorporated in Delaware and has its principle place of business at 10200 South De Anza Boulevard, Cupertino, California. Defendant, along with its subsidiaries, affiliates, and parent corporations, is the second largest hard drive manufacturer in the world.

## III.     JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are more than 100 proposed Class

Members, some members of the proposed class – including Plaintiff – and the Defendant are citizens of different states, and the amount in controversy exceeds $5 million.

15.     This Court has personal jurisdiction over Defendant because Defendant has its principle place of business in Cupertino, California and directs all of its operations from there. Alternatively, this Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California such that the exercise of jurisdiction by this Court is consistent with notions of fair play and substantial justice: A substantial portion of the wrongdoing alleged in this Complaint took place in California; Defendant conducts business in California and otherwise avails itself of the protections and benefits of California law through the promotion, marketing, and sale of its Drives in the State; and this action arises out of or relates to these contacts.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant has its principal place of business in Cupertino, California and directs all of its operations from there.

17. <u>Intradistrict Assignment</u>:  Assignment to the San Jose division of this Court is appropriate because Defendant's headquarters and principal place of business is in Cupertino, California. Because this action arises in the county of Santa Clara, pursuant to Northern District of California Local Rule 3-2, assignment to the San Jose Division is proper.

## IV.   FACTUAL ALLEGATIONS

**A.     General Background**

18.     A hard disk drive ("HDD" or "hard drive") is an electromechanical data storage device used for storing and retrieving information for a computer using rotating discs – which are called platters – coated with magnetic material with motors to spin or "drive" the discs.

19.     HDDs use a moving actuator arm – known as a head arm – to read and write data by magnetically changing or reading areas on the platters pursuant to instructions sent from the computer. The head arm is powered by an actuator motor called the servo motor.

20.     The storage capacity of HDDs are typically measured in terms of gigabytes ("GB") and terabytes ("TB"). One GB is 1000 megabytes, and one TB is 1000 GB, or one million megabytes.

21.     The Drives have capacities of 3TB.

010581-11  849499 V1

22.     The internal version of the Barracuda is installed inside of a computer's casing.

23.     The external versions, including without limitation the Backup Plus, are Barracuda drives enclosed in external casings with external power supplies and Universal Serial Bus ("USB") input/outputs.

24.     Although the external versions come in multiple models, the model number of their enclosed Barracuda drives, ST3000DM001, is the same as the internal version.

25.     Accordingly, the statements, technical specifications, and reports pertaining to the Barracuda discussed *infra* also apply to the external versions.

**B.      Defendant Touts "a major milestone for the hard drive industry"**

26.     Defendant released the internal version of the Barracuda in October 2011, and it subsequently released the external versions. Defendant sold – and continues to sell – the Drives through retailers and/or its own website.[1]

27.     The Barracuda was released to much fanfare. As reported on several hardware review websites, it was the first hard drive in the world to utilize three platters of 1TB each. By contrast, its predecessor, the Barracuda XT 3TB HDD, contained five platters with a capacity of 600GB each.

28.     Defendant marketed the Barracuda as an engineering triumph and a "major milestone for the hard drive industry." According to Defendant's promotional materials, in order to cram a TB of storage onto each platter:

> Seagate engineers had to pack 340,000 hard drive tracts into the width of a single inch. This means that, when reading and writing data, the read-write head needs to accurately follow a track that is a mere 75 nanometres wide. That's about 500 times smaller than the [period] at the end of this sentence.[2]

29.     Defendant further touted the Barracuda as having a "host of refined technologies to further boost performance. In combination, these improvements squeeze even more performance out

---

[1] The internal version of the Barracuda has been renamed the "Desktop HDD 3TB," but it retains the same model number.

[2] Seagate, *Product Overview, The Power of One: Barracuda Hard Drives* (2011), available at http://www.seagate.com/staticfiles/docs/pdf/en-GB/marketing/barracuda-po0103-1-1111gb.pdf (hereafter "Product Overview").

CLASS ACTION COMPLAINT          - 4 -

of storage already known for pushing the envelope!" Some of these improvements include a "third-generation dual-core processor" that handles data faster; "40nm chip manufacturing technology" that provides more computing power; and "64MB of DDR2 SDRAM" that "enables the fastest cache to date on Barracuda drives." *Id.*

30.     Defendant promoted the Barracuda as not only powerful, fast, and innovative, but also highly reliable. For example, in one printed advertisement, Seagate stated that Barracudas provide "[r]eliable performance, even in tough environments, thanks to Seagate AcuTrac™ servo technology."  Likewise, Defendant claimed in a data sheet that its servo technology delivers "dependable performance, even with hard drive track widths of only 75 nanometers."

31.     Moreover, the following statements, among others, appear on the order page for the Barracuda on Defendant's website:

    a.    The Barracuda is the "one drive for every desktop system need, supported by 30 years of trusted performance, reliability and simplicity."

    b.    "Rest easy knowing your drive delivers dependable performance with Seagate® AcuTrac™ servo technology."

    c.    "Protect your data with Seagate Secure® models."

    d.    "Count on Seagate to deliver the storage innovations that bring down your costs and crank up your storage."

    e.    "Desktop HDDs are produced using the most sophisticated manufacturing process in the industry, with a focus on environmental stewardship."[3]

32.     Defendant marketed both the external and internal versions of the Drives as powerful and reliable. The following statements, among others, appear on the order page for the Backup Plus on Defendant's website:

    a.    "Backup Plus from Seagate is the simple, one-click way to protect and share your entire digital life – without getting in the way of the rest of your life."

    b.    The Backup Plus has a "[m]assive capacity for a lifetime of memories."

---

[3] *Desktop HDD*, Seagate, http://www.seagate.com/internal-hard-drives/desktop-hard-drives/desktop-hdd/ (last accessed Jan. 21, 2016).

c.    "Life is full of amazing moments you want to remember forever. The Backup Plus desktop drive lets you set up easy automatic backups of all your stuff, so you know that even if 'life happens' to your computer, your memories are always protected."

d.    "Think of how many photos you've shared on Facebook or Flickr. With Backup Plus, you can easily download them right to your Backup Plus drive, so even more of your life is safe and sound."[4]

33.    Defendant made statements about the Backup Plus in other materials and publications available on the Internet that are substantially similar to the foregoing.[5]

34.    Upon reading that the Backup Plus is suitable for protecting one's "digital life," "lifetime of memories," and "amazing moments," a reasonable consumer would conclude that the Backup Plus is highly reliable and has a long useful life.

35.    In addition to the foregoing statements, Defendant published reliability and data integrity specifications for the Drives.

36.    Specifically, it claimed that the annualized failure rate of the Barracuda is less than one percent and that the maximum non-recoverable read errors per bits read is 1 per 10E14. *Data Sheet*, *supra* ¶ 29.

37.    The maximum non-recoverable read errors per bits read is sometimes referred to as the "hard error rate." It pertains to the probability of a drive failing to read and return the requested data after exhausting all means to recover it (practically speaking, this means the data is lost), and the probability of such a failure is measured in relation to some number of bits transferred or read.[6]

38.    The Barracuda's claimed hard error rate of 1 per 10E14 means that one non-recoverable read error will occur for every 100 trillion bits read.

---

[4] *Backup Plus Desktop Drive V1*, Seagate, http://www.seagate.com/external-hard-drives/desktop-hard-drives/backup-plus-desk-v1 (last accessed Jan. 21, 2016).

[5] *See, e.g., Backup Plus Data Sheet*, Seagate, http://www.seagate.com/www-content/product-content/backup-plus-fam/backup-plus-desktop-drive/en-us/docs/backup-plus-desk-ds1757-2-1306us.pdf (last accessed Jan. 21, 2016).

[6] *Series SSD: 1. Non-Recoverable Read Errors and Reliability*, Smorgastor (April 2, 2013), http://smorgastor.drhetzler.com/2012/04/02/series-ssd-1-hard-errors-and-reliability/.

39.     A read error does not mean complete hard drive failure. Rather, a single read error typically results in the loss of a data sector, which is only 512 bytes – or 4096 bits[7] – in most storage devices. In some instances, the data location that cannot be read is still capable of storing data, thus subsequently writing data to the location may clear the error.[8]

40.     Upon information and belief, a large number of read errors usually have to occur to cause a major or total drive failure.

41.     Consequently, based upon the Barracuda's published hard error rate of one in per 100 trillion bits read, a major or total drive failure resulting from non-recoverable read errors should occur very infrequently; once in several hundred trillion – or quadrillion – bits read.

42.     A hard drive's annualized failure rate ("AFR") is an estimate of the probability that it will fail in a given year due to problems in its manufacture or design or some other supplier cause.[9]

43.     AFR does not include failures that occurred because of misuse, user-inflicted damage, unauthorized modifications, and the like. *Id.*

44.     Manufacturers typically calculate a drive's AFR by first determining its "mean time between failures" ("MTBF") by running approximately 1000 drives at a high temperature for 30 days. Alternatively, some manufacturers predict the MTBF rather than conduct testing before a drive is first released. The MTBF data is then inputted in a mathematical formula to determine the AFR. *Id.*

45.     AFRs can also be calculated by consumers and businesses, such as data backup companies, based on the number of failures their drives incur, provided they have a large sample size.

46.     A drive's AFR is typically accurate for about three years, and after that the true AFR begins to increase. *Id.*

---

[7] There are eight bits in a byte.

[8] *See Id.*; *Non-Recoverable Read Error*, Smorgastor, http://smorgastor.drhetzler.com/glossary/nrre/ (last accessed Dec. 16, 2015).

[9] Robin Harris, *MTBF, AFR and you*, ZDNet (Feb. 8, 2011), http://www.zdnet.com/article/mtbf-afr-and-you/.

47.     Accordingly, the Barracuda's advertised AFR of less than one percent means that any particular Barracuda drive has less than a one-percent chance of failing in any given year, at least within its first three years of use.

48.     The foregoing statistics and statements would lead a reasonable consumer to believe that the Drives are highly reliable and have long expected lives. In reality, however, they suffered – and continue to suffer – from model-wide defects that cause premature failures at an astonishingly high rate.

**C.     The Drives' Warranty**

49.     In addition to misrepresenting the reliability of the Drives, Defendant failed to provide Plaintiff and Class members with non-defective replacements that conform to the Drives' express and implied warranties.

50.     The Drives purchased by Plaintiff and Class members are or were covered by an express warranty. The warranty, by its explicit terms, is governed by California law. *See Seagate Limited Warranty* (hereto attached as Exhibit A).

51.     Upon information and belief, the internal Barracuda's warranty was three years for a brief time following its release. It was then reduced to one year on December 31, 2011, and subsequently increased to two years. The warranty for the Backup Plus was – and continues to be – two years.

52.     Other than being three-, two-, or one-year in duration, the warranty is uniform and is therefore subject to uniform standards, principles, and applications for purchasers throughout the United States.

53.     The warranty covers defects in "material or workmanship" and provides for the replacement of defective Drives. Defendant will not, however, recover data off a customer's Drive unless the customer pays an "engagement fee" and a "recovery fee" which can "easily be over $2,000."[10]

---

[10] *See id.*; *Frequently Asked Questions*, Seagate, http://www.seagate.com/services-software/seagate-recovery-services/resources (last accessed Jan 22, 2016).

54.     Customers are responsible for paying the cost to ship their Drives to Defendant for replacement.

55.     The warranty on replacements is the remainder of the original warranty period or 90 days, whichever is greater.

56.     Because the Drives contain model-wide defects, the replacement Drives suffer from the same defects as those that are newly purchased, causing them to fail prematurely at extremely high rates.

57.     Replacement Drives are often refurbished units. Upon information and belief, this includes failed Drives that were returned to Defendant by previous owners for replacement.

58.     Defendant knew, or should have known, that the Drives were irreparably defective and highly likely to fail.  Moreover, as discussed *infra*, Defendant is aware of published reports and countless consumer complaints pertaining to new and replacement Drive failures.

59.     In light of the foregoing, Defendant did not – and cannot – deliver Drives to Plaintiff and Class members that conform to their express and implied warranties. The warranties have therefore failed of their essential purpose.

60.     Moreover, sending failed Drives as warranty replacements knowing they are highly likely to fail again is unfair and unconscionable.

**D.      The Backblaze Reports**

61.     Backblaze is an online data backup company that has published multiple reports demonstrating that the Drives are unreliable, fail prematurely at extremely high rates, and have an AFR much higher than advertised by Defendant.

62.     Backblaze backs up its customers' data using "storage pods" consisting of numerous consumer-grade hard drives. It has been in business since 2007.

63.     Over the years, Backblaze has used tens of thousands – if not hundreds of thousands – of drives from various manufacturers in its storage pods, including the Barracuda. Currently, there are approximately 50,000 drives deployed in Backblaze's pods.[11]

64.     In 2013 and 2015, Backblaze reported that approximately 80% of the drives it uses function for at least four years.[12]

65.     Barracuda disk drives, however, fell far short of this benchmark.

66.     Hard drives should follow a "bathtub-shaped failure rate curve." Reliability engineers use this model to describe expected failure rates for products, and it takes into account factory defects resulting in early failures, random failures, and wear-out failures that occur after substantial use. *2013 Report*, *supra* ¶ 64.

67.     The early failure rate is highest when a product is new and decreases substantially with time, whereas the wear-out failure rate increases significantly over time and the random failure rate remains constant. This creates an overall failure rate that looks like a semi-flattened "U", and all of these rates together create a bathtub shape when plotted on a graph. *See id. See also General Predicted Failure Rates* (attached hereto as Exhibit B).

68.     In 2013, Backblaze reported that its experience matches the bathtub-curve model. It calculated the AFR for its drives based on their observed failures and found that it hovers around 5% for the first year-and-a-half, drops to about 1.4% for the next year-and-a-half, and then increases to 11.8 percent for the following year. *2013 Report*, *supra* ¶ 63.

69.     Backblaze later discovered that Barracudas do not conform to the bathtub curve.

70.     Backblaze deployed 4,829 Barracudas beginning in January 2012. It used the internal and external versions.

---

[11] *See What Can 49,056 Hard Drives Tell Us? Hard Drive Reliability Stats for Q3 2015*, Backblaze (Oct. 14, 2015), https://www.backblaze.com/blog/hard-drive-reliability-q3-2015 (hereafter "Q3 2015 Report").

[12] *CSI: Backblaze – Dissecting 3TB Drive Failure*, Backblaze (April 15, 2015), https://www.backblaze.com/blog/3tb-hard-drive-failure (hereafter "2015 Report"); *How long do disk drives last?*, Backblaze (Nov. 12, 2013), https://www.backblaze.com/blog/how-long-do-disk-drives-last/ (hereafter "2013 Report").

71.     In 2015, Backblaze reported that, instead of following the expected bathtub curve, the AFR for the Drives followed a steep upward curve.  In 2012, the AFR was 2.7 percent, and instead of declining it increased to 5.4 percent in 2013, and then skyrocketed to 47.2 percent in 2014. *2015 Report*, *supra* ¶ 63.

72.     In terms of raw percentages, approximately 32 percent of the Drives deployed in 2012 failed by early 2015.[13] Of the Drives put into service between 2012 and 2014, 29.5 percent failed by early 2015. *See Id.*

73.     Accordingly, only 68 percent of the Drives deployed in 2012 were operational after *three* years, which was well below Backblaze's overall drive survival rate of 80 percent after *four years.*

74.     Moreover, only 6% of the Drives deployed in 2012 were still being used by early 2015. This is because in addition to the 32 percent that failed during operation, 62 percent were removed because they were in a pod that contained failed Drives, and 75 percent of the removed Drives failed Backblaze's reliability testing. *See id.*

75.     The raw failure rate of the Drives dwarfed those of the other brands and models that Backblaze used. For instance, in 2012, Backblaze deployed 2,511 HGST 3TB drives, model HDS5C3030ALA630, and by early 2015, only 103 – 4.1 percent – had failed. Likewise, only 2 of 45 – 4.5 percent – of Backblaze's Western Digital 3TB drives, model WD30EFRX, failed. Indeed, even the Barracuda's predecessor, the Seagate XT 3TB drive, model ST33000651AS, fared substantially better: Out of the 181 deployed in 2012, only 15 drives – 8.3 percent – failed by 2015. *Id.*

76.     The survival rate after three years for these hard drives was therefore 95.9 percent, 95.5 percent, and 91.7 percent, respectively. Furthermore, Backblaze did not permanently remove any of the HGST or Western Digital drives that did not fail during operation, and only 11 units of the Barracuda's predecessor drive were retired after being pulled for testing. *See Id.*

---

[13] Raw failure rates are distinct from AFRs. The former is calculated by dividing the number of drives that failed by a particular date by the number that were put into service during a particular time. The latter is calculated using a more complex formula that takes into account, *inter alia*, MTBF data or the number of drives that are in service during each day within the chosen period.

77.     Backblaze subsequently released additional hard drive reliability statistics. In October 2015, it reported that the Barracuda had an AFR of 30.94 percent for the first through third quarters of 2015 and an overall failure rate of 28.46 percent dating back to 2013. *Q3 2015 Report*, *supra* ¶ 62.

78.     This is substantially higher than any of the other six models of 3TB hard drives used by Backblaze during this period. The next highest failure rate belonged to the Western Digital Red, model WDC WD30EFRX, which had a 2015 AFR of 8.79 percent and an overall failure rate of 7.65 percent. Indeed, the Barracuda had a higher failure rate than all but one of the 26 other models of any size deployed by Backblaze, which ranged from 1-8TB. *See id. See also Backblaze Hard Drive Failure Rates* (hereto attached as Exhibit C).

79.     The Drives' steep upward failure curve and their extremely high AFR and raw failure rates indicate that they are defectively designed, made with substandard or contaminated materials, or produced with poor workmanship, causing a large portion of the Drives to incur catastrophic failures early in their useful lives.

**E.     The Plaintiff's and the Class' Experience**

80.     Plaintiff ordered a Backup Plus online from Best Buy on November 22, 2012 and received it at his home shortly thereafter. Plaintiff registered the Drive with Seagate in December 2012.

81.     The retail price of the Drive was $99, and it cost $105.99 after tax.  It was covered by a two-year warranty.

82.     Plaintiff purchased and used the Drive for personal, non-business purposes.

83.     Plaintiff's Drive failed in December 2014 while it was still under warranty. It suffered a catastrophic failure with little to no forewarning; a large number of data sectors suddenly failed, rendering the Drive useless.

84.     As a result of the failure, Plaintiff lost data, including without limitation irreplaceable photos and documents. He also expended a considerable amount of time attempting to recover his data.

85.     In or about December 2014, Plaintiff sought and received a replacement Backup Plus from Defendant pursuant to the Drive's warranty.

CLASS ACTION COMPLAINT             - 12 -

86.     Less than a year later, on or around October 20, 2015, the replacement Drive suffered a catastrophic failure.

87.     Members of the Class have had experiences similar to Plaintiff's.

88.     On the website newegg.com, there are over 700 reviews where consumers gave the Barracuda a rating of one or two out of five.[14]

89.     Defendant is aware of the large number of negative reviews on Newegg. Indeed, it is aware of the specific consumer complaints as Defendant has responded to many reviews apologizing for the problems with the Barracuda and stating that Defendant would like to speak with the consumer by phone.

90.     Set forth below is a sample of some consumer reviews posted to Newegg.com:

    a.   Vincent Y. [December 12, 2012]

         Dead in a week

         Pros: Great storage (while it works)
         Pretty fast
         Rather quiet

         Cons: Used for a week, started 'chirping' and 'clicking'. (Moderate use, not heavy use). Within the day it started making sounds, the hard-drive simply failed and died. It would not be recognized.

         I bought two, this happened to both . . . .

    b.   Dustin S. [Dec. 18, 2012]

         Replacement is also bad.

         Pros: None.

         Cons: [Returned] first one replacement also bad after 3days use. Not happy I had to pay shipping.

    c.   Brock M. [June 14, 2013 2:41 pm]

         DOA Two Times.

         *Pros:* I purchase two of these. One is working fine with no problem.

---

[14] *See* Reviews of *Seagate Desktop HDD ST3000DM001 3TB 64MB Cache SATA 6.0Gb/s 3.5" Internal Hard Drive Bare Drive*, Newegg, http://www.newegg.com/Product/Product.aspx?Item=N82E16822148844 (last accessed Jan. 20, 2016)

*Cons:* I purchased two of these hard drives. [One] worked and the other one didn't. I returned the one that was dead and received another dead one. Quite frustrating.

d.  Donald D. [July 20, 2013 10:25 am]

Bought 3 died in 3 months.

Pros: Cheap, Lots of space, fast shipping

Cons: I got three of these and all three died in the first three months all about a week apart!

e.  Jake W. [May 2, 2014]

High Failure Rate

Pros: When the drives aren't failing they run how I would expect.

Cons: These drives seem to have a very high failure rate. 2 drives died after less than a week of use. After 3-4 months 2 more failed and I had to go through Seagate's terrible warranty system. Just this week a 5th drive failed and had to be sent back to Seagate. In total I have spent over $60 shipping the drives back to Seagate to get them replaced. I can no longer in good faith recommend Seagate drives to anyone I know.

f.  Mark N. [August 18, 2014 8:31 pm]

No More for me.

Pros: Price

Cons:  This is a replacement for my original purchase that gave me problems from the get go. This one started having delays and corrupt data shortly after use. I'm just getting tired of sending drives back to Seagate just to get another refurbished drive in exchange that will also fail shortly after receiving it.

Other Thoughts: Enough is enough, no more getting sucked in because the price may be a few dollars cheaper than a more reliable brand.

g.  Anonymous [December 26, 2015 1:35 pm]

*Pros:* Fastest storage drive I've ever owned.

*Cons:* Died faster than any drive I've ever owned. Data that I would have rather forfeit bodily functionality than lose has been lost . . . .

h.  Peter B. [September 8, 2015 7:16 am]

Don't let the price tempt you!

Pros: Works as advertised for a short period of time

Cons: Yikes! Not reliable at all. I have 2 of these drives and the first one died after 3 months. Replacement drive just died again after barely being used (seriously, it sat in the box – when installed, it lasted a month) and now it's out of warranty . . . .

    i.    Alex C. [January 14, 2016 3:23 pm]

Not sure about Seagate Quality anymore.

Pros: Good size
Decent price

Cons: Bad reliability. 3 out 7 failed within 2 years
I bought 7 same drives about 22 months ago for a RAID 5 NAS setup. One as spare. About 4 months ago, one drive failed. Another one failed after 2 more months. Before RMA [Return Material Authorization] came back, another one failed just 3 weeks ago. This last failed one is just of warranty for a few days . . . .

    j.    Howard [Jan. 10, 2016 5:24 am]

The Drives have a bad failure rate

Pros: None

Cons**:** I have had several of these drives fail in my RAID array. I replaced them and now one I just purchased was dead after a month . . . .

91.    Hundreds – if not thousands – of reviews and complaints about Barracuda failures are also posted on websites such as Amazon.com.[15]

92.    Similarly, the Backup Plus has received hundreds of negative reviews on Amazon.com. Indeed, there are approximately 450 reviews where consumers rated the Backup Plus a one-out-of-five.[16]

93.    Defendant is aware of the large number of negative reviews on Amazon.com, as well as the specific complaints consumers have, because it replied to numerous reviews.

94.    Set forth below is a sample of some consumer reviews of the Backup Plus posted to Amazon.com:

---

[15] *See, e.g. Customer Reviews*, http://www.amazon.com/Seagate-Desktop-3-5-Inch-Internal-ST3000DM001/dp/B005T3GRLY/ref=cm_cr_pr_product_ top?ie=UTF8.

[16] *See Customer Reviews*, http://www.amazon.com/Seagate-Backup-Desktop-External-STCA3000101/product-reviews/B00829THQE/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterBy=addOneStar&showViewpoin ts=0 (last accessed Jan. 21, 2015).

a.   M. Olson [Sept. 5, 2012]

Failed in a week.

I have had this ONE week. On a Mac so I reformatted the drive and it seemed to work fine. Did about 1.5TB of backup the first two days it appeared to work fine. Tried to mount today... Nothing. Disk repair failed. Have to erase and reformat. I don't trust it. Big disappointment.

b.   A Programmer [August 6, 2013]

Failed after a month

As a Pre-engineering student, and as a programmer, I needed a reliable backup drive. This drive failed after a month. Yesterday, I needed to repartition my computer to run only Linux and Windows. I had all of my documents backed up, including games, My school stuff, my college essays, my programs that I made, my operating system .iso's, my programming pdf's, and a draft of the book that I was writing on how to program Java 7. Sure enough, when I plugged in my hard drive (I was running Windows 7) and started to transfer files, it failed and made a weird whirring sound . . .

I am exceptionally irritated by the drives lack of reliability and [Seagate's] refusal to recover my lost data without paying a great sum of money that I cannot afford as a student.

c.   DS [June 10, 2014]

There's a reason this drive has [hundreds of] 1 star reviews. This is the worst hard drive I've ever had the displeasure of owning. The first drive developed bad sectors in less than one year. So many that data recovery was actually kind of a PITA…

I was able to get an RMA from Seagate for the drive. The new drive arrived from Seagate and it still had the previous customer's asset management stickers on it, including their phone number and address... right next to the big sticker that said: RECERTIFIED.

Three weeks later the replacement drive failed as well. I'm not going to even bother with an RMA even though it's under warranty still, I'm sure the next drive will just fail as well.

d.   Amazon Customer [Feb. 6, 2015]

The purpose of an external hard drive is for it to provide a restore option when and if my computer hard drive fails. In order to be useful for this purpose, the external hard drive must be available and reliable. This is my second hardware failure for this product. Both times the hard drive failed to power up. The Seagate failed within its warranty period, so Seagate replaced it, but would not do any data recovery unless I paid $300 for them to attempt. No thanks . . . Fast forward a year, and the replacement Seagate drive failed.

e.   E [January 11, 2016]

CLASS ACTION COMPLAINT                    - 16 -

010581-11  849499 V1

The disk performed OK while it worked, but started dying after less than two years of rather light use.

Over the years I've used quite a few backup drives, and this one seems the least reliable of them all . . . .

## V. CLASS ACTION ALLEGATIONS

95.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a Class defined as:.

All individuals in the United States who purchased, not for resale, at least one Barracuda 3TB Hard Disk Drive, model number ST3000DM001, or at least one external drive that contained the aforesaid Barracuda drive.

96.     Plaintiff also brings this action as a class action on behalf of the following Subclass:

All individuals in South Dakota who purchased, not for resale, at least one Barracuda 3TB Hard Disk Drive, model number ST3000DM001, or at least one external drive that contained the aforesaid Barracuda drive.

97.     Excluded from the Classes are: (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person or entity who has settled or released these same claims against Defendant as evidenced by a written release; and (c) the Judge to whom this case is assigned.

98.     Plaintiff is a member of the Classes that he seeks to represent. Members of the proposed Classes are fully ascertainable and can be identified using Defendant's records of online retail sales (including records of retail sales by its authorized resellers and dealers), product registrations, and other information kept by Defendant in the usual course of business and/or in the control of Defendant. Class members can be notified of the class action through publication on user websites and direct e-mailings to address lists maintained in the usual course of business by Defendant. Alternatively, Class members can self-identify themselves.

99.     <u>Numerosity/Impracticability of Joinder:</u>  The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes include, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents and records in Defendant's possession, custody and control or otherwise obtained through reasonable means.

CLASS ACTION COMPLAINT                    - 17 -

100.   <u>Commonality and Predominance:</u>  There are common questions of law or fact which predominate over any questions affecting only individual members of the Classes.  These common legal or factual questions, include, but are not limited to the following:

    a.   whether Defendant engaged in a pattern of fraudulent, deceptive and misleading conduct;

    b.   whether Defendant's acts and omissions violated consumer protection, unfair competition, and/or false advertising statutes;

    c.   whether Defendant made material misrepresentations of fact or omitted stating material facts to Plaintiff and the Classes regarding the defective nature and high failure rate of the Drives;

    d.   whether Defendant's false and misleading statements of fact and concealment of material facts regarding the defective nature and high failure rate of the Drives were knowing and intentional;

    e.   whether Defendant breached its express and implied warranties;

    f.   whether, as a result of Defendant's misconduct, Plaintiff and the Classes are entitled to relief, and, if so, the nature of such relief;

    g.   whether, by the misconduct set forth herein, Defendant violated the common law of unjust enrichment;

    h.   whether the Plaintiff and members of the Classes have sustained ascertainable loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof.

101.   <u>Typicality:</u>  The representative Plaintiff's claims are typical of the claims of the members of the Classes he seeks to represent. Plaintiff and members of the Classes have been injured by the same wrongful practices in which Defendant has engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

102.   <u>Adequacy:</u>  Plaintiff is a representative that will fully and adequately assert and protect the interests of the Classes, and has retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests which are contrary to or conflicting with the Classes.

103.   <u>Superiority:</u>  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendant has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate.

104.   In the alternative, Plaintiff seeks certification pursuant to Rule 23(c)(4) on the issues of: (a) whether Defendant breached its warranty contracts with Plaintiff and the Class; and (b) whether Defendant engaged in deceptive, confusing or misleading practices in connection with the sale and warranting of the Drives.

## VI.   VIOLATIONS ALLEGED

### FIRST CLAIM FOR RELIEF

### (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW)
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

105.   Plaintiff incorporates the allegations set forth above as if fully set forth herein.

106.   California Business and Professions Code § 17200, *et seq.*, the Unfair Competition Law ("UCL"), prohibits any "unlawful, unfair, or fraudulent business act or practices."

107.    Plaintiff, the members of the Class, and Defendant are "persons" within the meaning of the UCL.

108.    Defendant violated the UCL for one or more of the following reasons:

a.    It engaged in unlawful conduct.

b.    It made material misrepresentations and omissions.

c.    It engaged in immoral, unethical, unscrupulous, and oppressive conduct, or conduct that is otherwise against established public policy.

109.    More specifically, Defendant violated the UCL's "unlawful" prong by violating California's Consumer Legal Remedies Act, False Advertising Law, and express and implied warranty statutes, as set forth below.

110.    Defendant violated the UCL's "fraudulent" prong because it made material misrepresentations and omissions regarding the Drives, as set forth in this Complaint.

111.    The affirmative misrepresentations made by Defendant include, without limitation, that the Drives are high-performing and reliable. For example, Defendant claimed that the Barracuda provides "[r]eliable performance, even in tough environments, thanks to Seagate AcuTrac™ servo technology;" that it delivers "dependable performance, even with hard drive track widths of only 75 nanometers;" that the Backup Plus is suitable to protect one's "digital life" and "lifetime of memories;" and that the Barracuda has a hard error rate of 1 per 10E14 and an AFR of less than one percent.

112.    Members of the public would likely be deceived by these statements, as they are unqualified affirmations of the Drives' reliability and quality and are not mere "puffery" or hyperbole.

113.    Because Defendant made material affirmative representations about the reliability and performance of the Drives, it had a duty to disclose their defective nature to Plaintiff and to the Class Members prior to or contemporaneous with each sale. Defendant's duty to disclose also arose out of its active concealment of the Drive's defects, as well as the fact that, at the time of sale, it had knowledge of the defects whereas the Plaintiff and the Class Members did not.

114. Defendant failed to disclose the Drives' defective nature. For example, it failed to disclose that the Drives are not reliable or dependable, that they are defective and prone to early catastrophic failures, and that their published hard error rates and AFRs are wholly inaccurate.

115. Defendant's omissions and misrepresentations were material because a reasonable consumer would attach importance to the existence or non-existence of a defect that strongly and adversely affects the Drive's reliability and longevity.

116. It is common knowledge that a hard drive's reliability and longevity are important to consumers, as consumers store valuable and often irreplaceable files, pictures, documents, and other data on them. Defendant, which is one of the largest hard drive manufacturers in the world, therefore knew, or had reason to know, that consumers were likely to regard the foregoing as important in deciding whether to purchase its Drives.

117. Moreover, the consumer reviews and complaints discussed *supra* put Defendant on notice of the above.

118. Plaintiff would not have purchased a Backup Plus if he had known about its model-wide defect. Since Defendant's misrepresentations and omissions were material, it may be presumed that members of the Class would not have purchased a Drive if they had known about their defects.

119. If Defendant had disclosed the Drives' defects, the defects would have become known to Plaintiff and the Class Members because, upon information and belief, they would have been disseminated on the Internet, by retail employees, and through other sources.

120. Defendant violated the UCL's unfair prong because Defendant's acts and practices set forth in this Complaint offend established public policy or are otherwise immoral, unethical, unscrupulous, and oppressive.

121. These acts and practices include, without limitation, Defendant marketing and selling the Drives knowing they contain serious model-wide defects; failing to adequately disclose and remedy the defects; misrepresenting the quality and reliability of the Drives; replacing failed Drives with "refurbished" Drives that had already failed; failing to provide refunds or a different model of hard drive to warranty claimants even though Defendant never delivered conforming, non-defective

Drives; and providing defective replacement Drives and charging customers exorbitant sums of money to recover their data.

122.    The harm these acts and practices cause to consumers greatly outweighs any benefits associated with those acts and practices.

123.    Defendant's conduct has also impaired competition within the hard drive market and has prevented Plaintiff and Class Members from making fully informed decisions about whether to purchase Drives and/or the price to be paid to purchase them.

124.    Plaintiff has standing to pursue all of the foregoing Unfair Competition Law claims on behalf of the Class because he has suffered an injury in fact, including the loss of money or property, as a result of and in reliance on Defendant's unfair, unlawful, and deceptive practices. As set forth above, had Defendant disclosed the Backup Plus' defects, Plaintiff would not have purchased one, or, at a minimum, he would not have paid as much. In addition, Plaintiff has expended money as a result of the defect because he had to pay to ship his Backup Plus to Defendant for replacement.

125.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated throughout the country.

126.    Accordingly, Plaintiff and the Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

### (VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW)
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

127.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

128.    California Business and Professions Code § 17500 *et seq.*, the False Advertising Law ("FAL"), proscribes the dissemination of a statement that is "untrue, misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

129.    Plaintiff and the members of the Class are "persons" within the meaning of the FAL.

130.    Defendant is a "corporation" within the meaning of the UCL.

131.    Defendant violated the FAL because it knowingly made material affirmative misrepresentations and omissions regarding the Drives as set forth in this complaint, as well as for the reasons set forth *supra*, ¶¶ 110-118.

132.    Moreover, Defendant knew, or should have known, that its statements and omissions were untrue or misleading. Upon information and belief, Defendant received, or otherwise had knowledge of, thousands of complaints and reviews from customers pertaining to the defects at issue in this litigation and was aware of the Backblaze reports. Additionally, it had firsthand knowledge of the Drives' defects because it examined and tested all Drives sent in by consumers for replacement.

133.    Plaintiff has standing to pursue a FAL claim on behalf of the National Class because he has suffered an injury in fact, including the loss of money or property, as a result of and in reliance on Defendant's false advertising. As set forth *supra*, had Defendant disclosed the Backup Plus' defects, Plaintiff would not have purchased one, or, at a minimum, he would not have paid as much. In addition, Plaintiff has expended money as a result of the defect because he had to pay to ship his Backup Plus to Defendant for replacement.

134.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated throughout the country.

135.    Accordingly, Plaintiff and the Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its false advertising practices and to restore to Plaintiff and the Class any money Defendant acquired by false advertising, including restitution and/or restitutionary disgorgement, and for attorney's fees and costs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CLAIM FOR RELIEF**

**(BREACH OF EXPRESS WARRANTY)**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

136.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

137.     As an express warrantor and manufacturer and merchant, Defendant had certain obligations under California Commercial Code § 2313 *et seq*. and California Civil Code § 1791.2 et seq. to conform the Drives to their express warranties.

138.     When Plaintiff and Class Members purchased the Drives, Defendant expressly warranted that they were free from defects in materials and workmanship.

139.     The defects in the Drives were present at the time of sale to Plaintiff and members of the Class.

140.     Defendant breached its express warranties – and continues to breach them – because it did not, and cannot, deliver conforming, non-defective Drives to Plaintiff and Class Members despite sending replacement Drives to them.

141.     Defendant did not, and cannot, deliver conforming, non-defective Drives because the Drives suffer from model-wide defects that cause them to fail at extremely high rates. The Drives' warranties have therefore failed of their essential purposes.

142.     Simply put, Defendant replaced defective Drives with defective Drives, and in many instances Defendant provided as replacements failed drives that it "refurbished" despite knowing that they were irreparably defective and highly likely to fail again.

143.     Defendant also failed and refused to reimburse or refund Plaintiff and the Class Members or to provide them with functionally equivalent, non-defective hard drives of a different model.

144.     Plaintiff used his Drive in a manner consistent with its intended use and has performed each and every duty required under the terms of the warranty, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's deceptive, unfair, unconscionable, and fraudulent conduct.

145.     Defendant has received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

146.     Additionally, upon information and belief, Defendant has received – or otherwise has knowledge of – thousands of complaints and reviews from customers pertaining to the defects at issue in this litigation and is aware of the Backblaze reports.

147.     In its capacity as a supplier and/or warrantor, and by the deceptive, unfair, unconscionable, and fraudulent conduct described herein, any attempt by Defendant to limit its express warranties in a manner that would exclude or limit coverage for the defects present in the Drives as of the time of sale, which Defendant knew about prior to offering the Drives for sale, which Defendant concealed and did not disclose, and did not remedy prior to sale or afterward, is unconscionable, and any such effort to disclaim or otherwise limit liability for the defects at issue is null and void.

148.     Any attempt by Defendant to limit or exclude any form of damages or other remedies, including without limitation consequential and incidental damages, is unconscionable and therefore null and void due to Defendant's deceptive, unfair, unconscionable, and fraudulent conduct.

149.     Plaintiff and the Class Members have suffered damages caused by Defendant's breach of the express warranties and seek to recover damages including, without limitation, restitution; consequential and incidental damages such as data loss and data recovery costs; attorney's fees and costs; and any other relief the Court deems just and appropriate.

**FOURTH CLAIM FOR RELIEF**

**(BREACH OF IMPLIED WARRANTY)**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

150.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

151.     Defendant is and was at all relevant times a merchant with respect to the Drives.

152.     A warranty that the Drives were in merchantable quality and condition is implied by law pursuant to California Commercial Code § 2314 and Cal. Civ. Code § 1792.

153.    Defendant did not disclaim this warranty, nor could it; pursuant to Cal. Civ. Code § 1793, a manufacturer, distributor, or retailer may not limit, modify, or disclaim the implied warranty of merchantability if it extends an express warranty on the product.

154.    Defendant impliedly warranted that the Drives were of good and merchantable condition and quality – fit for their ordinary intended use, namely providing reliable data storage.

155.    The Drives were defective at the time they left the possession of Defendant, as set forth above. Defendant knew of this defect at the time these transactions occurred. Thus, the Drives, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

156.    By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

157.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

158.    Plaintiff used his Drive in a manner consistent with its intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's deceptive, unfair, unconscionable, and fraudulent conduct.

159.    Defendant has received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

160.    Additionally, upon information and belief, Defendant has received – or otherwise has knowledge of – thousands of complaints and reviews from customers pertaining to the defects at issue in this litigation and is aware of the Backblaze reports.

161.    Plaintiff and Class Members are in privity of contract with Defendant because they purchased the Drives through retailers or Defendant's website.

162.    As a direct and proximate result of Defendant's breach of warranties, Plaintiff and the Class Members have been injured and seek to recover damages including, without limitation, restitution; consequential and incidental damages such as data loss and data recovery costs; attorney's fees and costs; and any other relief the Court deems just and appropriate.

1

**FIFTH CLAIM FOR RELIEF**

2

**(UNJUST ENRICHMENT/MONEY HAD AND RECEIVED)**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

3

163.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

4

5

164.    Through the deceptive, unfair, and unconscionable conduct and statements described

6

above, Defendant sold defective Drives to Plaintiff and Class Members and thereafter failed and

refused to provide them with the non-defective Drives they paid for.

7

165.    Such conduct includes, without limitation, marketing and selling the Drives knowing

8

they contain serious model-wide defects; failing to adequately disclose and remedy the defects;

9

misrepresenting the quality and reliability of the Drives; replacing failed Drives with "refurbished"

10

Drives that had already failed; failing to provide refunds or a different model of hard drive even

11

though Defendant never delivered non-defective Drives; and providing customers with defective

12

replacement Drives and charging them exorbitant sums of money to recover their data.

13

166.    Upon information and belief, Defendant engaged in the foregoing conduct in order to

14

enrich itself at the expense of Plaintiff and Class Members.

15

167.    Further, Defendant refused, and continues to refuse, to replace Drives or issue refunds

16

to Plaintiff and Class Members for Drive failures occurring outside of the warranty period, despite

17

the fact that Defendant utterly failed to provide them with non-defective Drives inside of the

18

warranty period.

19

168.    As the proceeds from the sale of Defendant's Drives were obtained/induced by

20

improper means, Defendant is not legally or equitably entitled to obtain these proceeds.

21

169.    Defendant breached the public trust through its misrepresentations, omissions, and

22

other deceptive, unfair, and unconscionable conduct connected to the sale and replacement of its

23

Drives, all of which was to the detriment of Plaintiff and Class Members.

24

170.    By its actions in taking and withholding Drive sales proceeds, Plaintiff and Class

25

Members conferred, and continue to confer, a benefit upon the Defendant, and the Defendant is

26

aware of such benefit.

27

28

171.    By Defendant taking and withholding Plaintiff's and Class' monies, Defendant was and is financially unjustly enriched, causing an economic detriment to the Plaintiff and the Class.

172.    Defendant's retention of this benefit violates the fundamental principles of justice, equity, and good conscious.

173.    As it would be unjust and inequitable for Defendant to retain its ill-gotten gains, Defendant is required to pay restitution to Plaintiff and the Class.

**SIXTH CLAIM FOR RELIEF**

**(VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION STATUTE)**
**(ON BEHALF OF PLAINTIFF AND THE SOUTH DAKOTA SUBCLASS)**

174.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

175.    The South Dakota Deceptive Trade Practices and Consumer Protection Statute ("DTP-CPS"), S.D.C.L. § 37-24-1, *et seq.*, prohibits deceptive acts or practices including, *inter alia*, knowingly and intentionally acting, using, or employing any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or concealing, suppressing, or omitting any material fact in connection with the sale or advertisement of any merchandise.

176.    Plaintiff, Class Members, and Defendant are "persons" as defined by the DTP-CPS.

177.    Defendant violated the DTP-CPS because it knowingly and intentionally made material misrepresentations and omissions regarding the Drives in connection with the sale and/or advertisement of the Drives, as set forth in this Complaint.

178.    Defendant affirmatively misrepresented, and continues to misrepresent, that the Drives are high-performing and reliable. For example, Defendant claimed that the Barracuda provides "[r]eliable performance, even in tough environments, thanks to Seagate AcuTrac™ servo technology;" that it delivers "dependable performance, even with hard drive track widths of only 75 nanometers;" that the Backup Plus is suitable to protect one's "digital life" and "lifetime of memories;" and that the Barracuda has a hard error rate of 1 per 10E14 and an AFR of less than one percent.

179.    These claims are false and/or misleading for the reasons set forth in this Complaint.

180.    Defendant failed to disclose material facts about the Drives including, without limitation, that the Drives are not reliable or dependable, that they are defective and prone to early catastrophic failures, and that their published hard error rates and AFRs are wholly inaccurate.

181.    Defendant made these misrepresentations and omissions knowingly and intentionally. Upon information and belief, Defendant received, or otherwise had knowledge of, thousands of complaints and reviews from customers pertaining to the defects at issue in this litigation and was aware of the Backblaze reports. Additionally, it had firsthand knowledge of the Drives' defects because it examined and tested all Drives sent in by consumers for replacement. Despite this knowledge, Defendant intentionally misrepresented, and continues misrepresent, the Drives as high-performing and reliable, and it chose to conceal rather than disclose the true defective nature of the Drives for its own pecuniary gain.

182.    If Defendant had disclosed the Drives' defects, they would have become known to Plaintiff and Class Members because, upon information and belief, they would have been disseminated on the Internet, by retail employees, and through other sources.

183.    Neither Plaintiff nor members of the Class would have purchased a Drive if they had known about the model-wide defects. Thus, Defendant's omission of this critical information, along with Defendant's affirmative misrepresentations, proximately caused economic injury to Plaintiff and the Class.

184.    Plaintiff has standing to pursue a DTP-CPS claim on behalf of the South Dakota Class because he lost money and property as a result of Defendant's misrepresentations and omissions.

185.    As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and the South Dakota Class Members have been injured and seek to recover actual damages including, without limitation, restitution; damages stemming from data loss and data recovery costs; and any other relief the Court deems just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class members pray for relief as set forth below:

A.    Restitution and/or actual, incidental and consequential damages, and such other relief as provided by the statutes cited herein.

1        B.     Pre-judgment and post-judgment interest.

2        C.     Equitable relief in the form of restitution and/or disgorgement of all of Defendant's

3  ill-gotten gains.

4        D.     Attorney's fees and costs.

5        E.     An injunction against Defendant, its affiliates, successors, transferees, assignees, and

6  other officers, directors, partners, agents and employees thereof, and all other persons acting or

7  claiming to act on their behalf or in concert with them, from in any manner continuing its unfair,

8  unlawful, and deceptive practices and false advertising.

9        F.     All other relief to which Plaintiffs and Class members may be entitled at law or in

10  equity.

11
### JURY DEMAND

12      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

13  jury for all issues so triable.

14

15  DATED: February 1, 2016         HAGENS BERMAN SOBOL SHAPIRO LLP

16

17                    By:     */s/ Jeff. D. Friedman*

18                    715 Hearst Avenue, Suite 202
Berkeley, California 94710

19                    Telephone: (510) 725-3000
Facsimile: (510) 725-3001

20                    jefff@hbsslaw.com

21                    Steve W. Berman (*pro hac vice to be filed*)
1918 Eighth Avenue, Suite 3300

22                    Seattle, Washington 98101

23                    Telephone: (206) 623-7292
Facsimile: (206) 623-0594

24                    steve@hbsslaw.com

25                    Marc A. Goldich (*pro hac vice to be filed*)
SHELLER, P.C.

26                    1528 Walnut St., 4th Floor
Philadelphia, PA 19102

27                    Telephone: (215) 790-7300
Facsimile: (215) 546-0942

28                    mgoldich@sheller.com

*Attorneys for Plaintiff*

010581-11  849499 V1