SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
npopovic@sheppardmullin.com
ANNA S. McLEAN, Cal. Bar No. 142233
amclean@sheppardmullin.com
DAVID E. SNYDER, Cal. Bar No. 262001
dsnyder@sheppardmullin.com
LIÊN H. PAYNE, Cal. Bar No. 291569
lpayne@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947

Attorneys for Defendant
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 5:16-cv-00523-RMW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM IN SUPPORT**<br><br>**Date:**    October 7, 2016<br>**Time:**    9:00 a.m.<br>**Place:**    Ctrm. 6, San Jose Courthouse<br>**Judge:**  Hon. Ronald M. Whyte<br><br>Second Consolidated Amended Complaint filed: July 11, 2016 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 2

II.   BRIEF STATEMENT OF RELEVANT FACTUAL ALLEGATIONS ........................... 3

III.  THE CLRA, UCL, FAL AND STATE STATUTORY CLAIMS ALL FAIL AS A
      MATTER OF LAW ............................................................................................................ 5

      A.    Rule 9(b) Applies ..................................................................................................... 5

      B.    Plaintiffs Fail to Allege a False Advertising Claim Under the UCL's Fraud
            Prong, the FAL, the CLRA, or Any State Consumer Statutes ................................. 6

            1.    Plaintiffs' Fraudulent Omission Claim Fails ................................................ 7

                  a.    Plaintiffs Fail to Allege Any Defect ................................................ 7

                  b.    Plaintiffs Fail to Allege Seagate Had Any Duty to Disclose .......... 11

                  c.    Plaintiffs Fail to Allege Seagate Knew of Any Defect ................... 12

            2.    Plaintiffs Allege No Actionable Misrepresentations ................................... 14

                  a.    Barracuda Drives ............................................................................ 15

                  b.    Backup Plus Drives ......................................................................... 16

                  c.    Statements Regarding RAID and NAS ............................................ 18

      C.    Plaintiffs Fail to Allege Claims Under the UCL "Unfair" or "Unlawful"
            Prongs .................................................................................................................... 19

IV.   THE CLAIMS FOR BREACH OF EXPRESS WARRANTY FAIL .............................. 20

V.    THE CLAIMS FOR BREACH OF IMPLIED WARRANTY FAIL .............................. 22

VI.   THE CLRA CLAIMS FAIL INDEPENDENTLY ......................................................... 23

      A.    All But Two Plaintiffs Failed to File the Required Venue Declarations ................ 23

      B.    The CLRA Claims of Plaintiffs Nelson, Hauff, Schechner, Crawford,
            Dortch and Smith Are Time-Barred ....................................................................... 23

VII.  THE CLAIMS FOR "UNJUST ENRICHMENT" FAIL ................................................ 24

VIII. CONCLUSION ................................................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Federal Cases</u>

4

*Annunziato v. eMachines, Inc.*
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) .................................................................. 15, 16, 17, 22

5

6

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................................... 24

7

*Baba v. Hewlett-Packard Co.*
    2010 U.S. Dist LEXIS 59747 (N.D. Cal., June 16, 2010) ...................................................... 12

8

9

*Berenblat v. Apple, Inc.*
    2010 WL 1460297 (N.D. Cal. 2010) ................................................................................... 12

10

11

*Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) ........................................................................................... 11

12

*Boland, Inc. v. Rolf C. Hagen Corp.*
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) ............................................................................... 20

13

14

*Brothers v. Hewlett-Packard Co.*
    2006 U.S. Dist. LEXIS 82027 (N.D. Cal. Oct. 31, 2006) .................................................. 5, 21

15

16

*Brothers v. Hewlett-Packard Co.*
    2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ...................................................... 21

17

*Cipollone v. Liggett Group, Inc.*
    505 U.S. 504 (1992) .......................................................................................................... 21

18

19

*Clemens v. DaimlerChrysler Corp.*
    534 F.3d 1017 (9th Cir. 2008) ........................................................................................... 22

20

21

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*
    173 F.3d 725 (9th Cir. 1999) ............................................................................................. 14

22

*Decoteau v. FCA US LLC*
    2015 U.S. Dist. LEXIS 152579 (E.D. Cal. Nov. 9, 2015) ....................................................... 7

23

24

*Donohue v. Apple, Inc.*
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................................ 12

25

26

*Frenzel v. Alphicom*
    76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014) ......................................................................... 21

27

*Herremans v. BMW of N. Am., LLC*
    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .......................................................................... 9

28

*In Elias v. Hewlett-Packard Co.*
  2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ............................................................................ 9

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. Cal. 2009) .................................................................................. 5, 6

*Kent v. Hewlett Packard*
  2010 U.S. Dist. LEXIS 76818 (N.D. Cal. July 6, 2010) ...................................................... 22

*Kowalsky v. Hewlett-Packard Co.*
  771 F. Supp. 2d 1138 (N.D. Cal. 2010) .............................................................................. 22

*Kowalsky v. Hewlett-Packard Co.*
  771 F. Supp. 2d 1156 (N.D. Cal. 2011) .............................................................................. 12

*Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262, *21
  (N.D. Cal. July 27, 2007) ............................................................................................16, 20

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*
  2015 U.S. Dist. LEXIS 14674 (N.D. Cal. Feb. 5, 2015).................................................... 24

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*
  319 F. Supp. 2d 1040 (C.D. Cal. 2003)............................................................................... 21

*Neu v. Terminix Intern., Inc.*
  2008 U.S. Dist. LEXIS 60505 (N.D. Cal. July 24, 2008) ................................................... 13

*Oestreicher v. Alienware Corp.*
  544 F. Supp. 2d 964 (N.D. Cal. 2008) .....................................................................12, 14, 17

*Paracor Finance, Inc. v. General Electric Capital Corp.*
  96 F.3d 1151 (9th Cir. 1996) ............................................................................................... 24

*Punian v. Gillette Co.*
  2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016) ..................................................... 7

*Rice v. Sunbeam Prods., Inc.*
  2013 U.S. Dist. LEXIS 7467 (C.D. Cal. Jan. 7 2013) ......................................................... 19

*Ross v. Sioux Honey Assn.*
  2013 U.S. Dist. LEXIS 6181 (N.D. Cal. Jan. 14, 2013) ...................................................... 18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
  996 F. Supp. 2d 942 (S.D. Cal. 2014)................................................................................... 6

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Tv. Litig.*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...............................................................12, 13, 18, 23

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) ............................................................................................... 9

-ii-

*Sumer v. Carrier Corp.*
  2015 U.S. Dist. LEXIS 20731 (N.D. Cal. Feb. 20, 2015).................................................16, 21

*Summit Tech., Inc. v. High-Line Medical Instruments*
  Co., 933 F. Supp. 918 (C.D. Cal. 1996) ....................................................................... 16

*Taliaferro v. Samsung Telecoms. Am., LLC*
  2012 U.S. Dist. LEXIS 6221 (N.D. Tex., Jan. 19, 2012)...................................................... 20

*Tietsworth v. Sears, Roebuck & Co.*
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......................................................................... 16

*In re Toyota Motor Corp.*
  754 F. Supp. 2d 1208 (C.D. Cal. 2010).......................................................................... 8

*Troup v. Toyota Motor Corp.*
  Fed. Appx. 668 (9th Cir. 2012)...................................................................................... 8

*Vassigh v. Bai Brands LLC*
  2015 U.S. Dist. LEXIS 90675, ** 10-11 (N.D. Cal. July 13, 2015) ........................................ 6

*Vess v. Ciba-Geigy Corp.*
  317 F.3d 1097 (9th Cir. 2003) ....................................................................................... 5

*Williams v. Gerber Prods. Co.*
  552 F.3d 934 (9th Cir. 2008) ........................................................................................ 6

*Willis v. Buffalo Pumps Inc.*
  34 F. Supp. 3d 1117 (S.D. Cal. 2014) ............................................................................ 11

*Wilson v. Hewlett-Packard Co.*
  668 F.3d 1136 (9th Cir. 2012) ...............................................................................9, 11, 12

*Xavier v. Phillip Morris USA*
  787 F. Supp. 2d. 1075 (N.D. Cal. 2011) .......................................................................... 23

*Yagman v. General Motors Co.*
  2014 U.S. Dist. LEXIS 120045 (C.D. Cal. Aug. 22, 2014) .................................................... 7

State Cases

*Burr v. Sherwin Williams Co.*
  42 Cal. 2d 682 (1954)................................................................................................. 22

*Chapman v. Skype, Inc.*
  220 Cal. App. 4th 217 (2011) ...................................................................................... 14

*Daugherty v. Am. Honda Motor Co.*
  144 Cal. App. 4th 824 (2006) ...................................................................................... 11

-iii-

*People v. Dollar-Rent-A-Car Sys., Inc.*
    211 Cal. App. 3d 119 (1989) ............................................................................ 14

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fed. R. Civ. Proc. 8 ..........................................................................................3, 7, 8

Fed. R. Civ. Proc. 9 ..........................................................................................6, 7, 8

Fed. R. Civ. P. 9(b) .....................................................................................1, 3, 5, 11

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

Rule 11 ............................................................................................................... 10

State: Statutes, Rules, Regulations, Constitutional Provisions

Cal. Civ. Code § 1780(d) ...................................................................................... 23

Cal. Civ. Code § 1783 ........................................................................................... 23

Cal. Civ. Code § 1791.2 *et seq.* ............................................................................ 22

Cal. Civ. Code § 1792 ........................................................................................... 22

California's Song-Beverly Act ................................................................................ 22

Consumers Legal Remedies Act ("CLRA") ...................................................... passim

False Advertising Law ("FAL") ......................................................................... passim
    Business & Professions Code § 17500 *et seq*

Unfair Competition Law ("UCL") ...................................................................... passim
    Business & Professions Code § 17200 *et seq*

SMRH:478653065.11

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 7, 2016, at 9:00 a.m. or as soon thereafter as the matter can be heard, in Courtroom 6, Fourth Floor of the United States District Court, Northern District of California, 280 South First Street, San Jose, California, 95113, the Honorable Ronald M. Whyte presiding, Defendant Seagate Technology LLC, will and hereby does move for an order pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) dismissing with prejudice all claims in the Second Consolidated Amended Complaint.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the papers and pleadings on file in this action, and such other papers and oral argument as may be submitted prior to or at the hearing on this motion.


Dated: August 5, 2016                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                  By        /s/ Anna S. McLean
                                        ANNA S. McLEAN

                                        Attorneys for Defendant
                                        SEAGATE TECHNOLOGY LLC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Despite having filed a fifth complaint—comprised of 90 pages of allegations with 50 pages of exhibits—and notwithstanding their multiple opportunities to allege facts stating a claim, Plaintiffs still fail to do so.  That is because, at bottom, Plaintiffs cannot allege a systemic defect or that Seagate Technology LLC ("Seagate") failed to comply with the terms of its warranty.

The nine named plaintiffs allege Seagate violated California's Unfair Competition Law, Business & Professions Code §17200 *et seq.* ("UCL"), and False Advertising Law, Business & Professions Code §17500 *et seq.* ("FAL"), and breached express and implied warranties relating to certain hard disk drives manufactured by Seagate.  Plaintiffs also assert duplicative claims under the unfair competition and warranty laws of eight states.  Finally, Plaintiffs assert a claim for "unjust enrichment."  Their claims all fail as a matter of law for two principal reasons.  *First*, they allege no warranty breach.  Plaintiffs received what Seagate's limited warranty promised: replacements for hard drives that failed while under warranty.  *Second*, Plaintiffs fail to identify any actual defect in the drives they allege are subject to a "model-wide defect."  Simply reciting "model-wide defect" does not suffice.  In the absence of any allegations stating ***what*** alleged model-wide defect caused their drives to fail, plaintiffs have merely alleged that nine Seagate customers purchased hard drives that eventually failed.  That is not a putative class action.  It is not even nine individual actions.  Consumer products sometimes fail.  That is the point of warranties.  And when a manufacturer complies with its warranty obligations, as Seagate did here, the failure of a product does not give rise to liability.

Permitting Plaintiffs to proceed on their "model-wide defect" theory—an attempt to convert their non-existent warranty claims into a tort—without even alleging ***what*** the defect is would turn warranty law on its head.  Any manufacturer of any consumer product could be sued under California's FAL, UCL and CLRA for false advertising and fraudulent practices any time a product failed, whether under warranty or not.

Plaintiffs rely on a blog post by a low-cost data storage company called Backblaze, along with a handful of anonymous or pseudonymous comments on the Internet, as anecdotal evidence

of a defect. But none provides any reasons for the alleged drive failures, let alone any basis to conclude such failures resulted from a common defect. At best, Plaintiffs' allegations show that some drives may fail while in warranty for a wide variety of reasons unrelated to any defect.

Plaintiffs must meet the stringent requirements of Federal Rule of Civil Procedure 9(b) because their claims sound in fraud. But even under the more relaxed standards of Rule 8, to survive a motion to dismiss, a plaintiff alleging a product defect must *identify* the defect. Alleging a symptom—or in Plaintiffs' case, an ultimate result—is insufficient as a matter of law. Seagate knows of no authority that says a manufacturer has a duty to disclose in the absence of an actual, identified product defect. Plaintiffs cannot hide behind their purported inability to allege facts stating such a claim. Plaintiffs could have investigated their Seagate drives to determine whether they show evidence of a defect. They needed no discovery from Seagate to do so. Their failure to investigate sufficiently to allege facts supporting a defect requires the dismissal of their claims.

Plaintiffs' claims fail for reasons in addition to the core failure to allege a defect or a warranty breach: (1) Plaintiffs fail to allege a false advertising claim under the UCL, FAL or CLRA because they do not allege any actionable misrepresentations; (2) even if Plaintiffs had alleged a defect, which they have not, Plaintiffs fail to allege Seagate had knowledge of such a defect or a duty to disclose it; (3) Plaintiffs fail to allege privity and thus their implied warranty claims fail; (4) most Plaintiffs' CLRA claims fail because they failed to file the required venue declarations; (5) many Plaintiffs' CLRA claims are time-barred; and (6) no claim for "unjust enrichment" lies where the parties are governed by an agreement—here, the Seagate limited warranty. In any event, the "unjust enrichment" claim is duplicative of the statutory claims.

The Court should dismiss Plaintiffs' Second Amended Complaint without leave to amend.

## II.     BRIEF STATEMENT OF RELEVANT FACTUAL ALLEGATIONS

Plaintiff Nelson, of South Dakota, purchased a Backup Plus drive with a two-year warranty from Best Buy's website on November 22, 2012. (SAC, ¶¶ 135-137.) The drive failed two years later and Nelson requested and received a replacement. (*Id.*, ¶ 146.) The replacement drive failed outside the warranty period. (*Id.*, ¶ 147.) Nelson does not allege he sought but did not receive a replacement for any drive that failed under warranty.

1    Plaintiff Hauff, of Massachusetts, purchased two Internal Barracuda drives with two-year

2  warranties on August 19, 2012 from amazon.com. (SAC, ¶ 149.) One of those drives failed

3  during the warranty period and Hauff requested and received a replacement. (*Id.*, ¶¶ 158-159.)

4  The replacement failed outside the warranty period. (*Id.*, ¶ 159.) The other drive originally

5  purchased also failed outside the warranty period. (*Id.*, ¶ 160.) Hauff does not allege he sought

6  but did not receive a replacement for any drive that failed under warranty.

7    Plaintiff Schechner, of Florida, purchased a Backup Plus with a three-year warranty on

8  November 28, 2012 from amazon.com. (SAC, ¶¶ 162-164.) The drive failed on April 13, 2014,

9  and Schechner received a warranty replacement. (*Id.* ¶¶ 169, 171.) That drive also failed and

10  Schechner again received a replacement. Schechner does not allege he sought but did not receive

11  a replacement for any drive that failed under warranty.

12    Plaintiff Hagey, of Tennessee, purchased an Internal Barracuda drive with a three-year

13  warranty at Best Buy on April 6, 2014. (SAC, ¶¶ 174, 176.) The drive failed on May 25, 2015

14  and Hagey received a replacement. (*Id.*, ¶¶ 182-183.) The replacement failed and Hagey did not

15  request a replacement drive. (*Id.*, ¶ 184.) Hagey does not allege he sought but did not receive a

16  replacement for any drive that failed under warranty.

17    Plaintiff Crawford, of New York, purchased three Internal Barracuda drives with two-year

18  warranties from TigerDirect. (SAC, ¶¶ 186, 188.) The three drives failed at different times and all

19  were replaced. (*Id.*, ¶¶ 195-197.) Plaintiff Crawford also purchased an Internal Barracuda drive

20  on eBay, which he does not allege is an authorized retailer. The drive failed while in warranty,

21  and Crawford received a replacement, which subsequently failed. (*Id.*, ¶¶ 198-199.) Although

22  Crawford alleges the replacement drive failed in warranty and that he did not receive another

23  replacement, the warranty is inapplicable because it expressly states that "[o]nly consumers

24  purchasing [drives] from an authorized Seagate retailer or reseller may obtain coverage under this

25  limited warranty." (SAC, Ex. F.) *See infra,* p. 21, n.7.

26    Plaintiff Manak, of Texas, purchased two Internal Barracuda drives with two-year

27  warranties from newegg.com on May 16, 2013. (SAC, ¶¶ 211-213.) One of Manak's two drives

28  failed on March 15, 2014 and Manak requested and received a replacement. (*Id.*, ¶ 220.) The

1  replacement failed outside warranty.  (*Id.*, ¶ 221.) Manak does not allege he sought but did not

2  receive a replacement for any drive that failed under warranty.

3      Plaintiff Enders purchased 16 Internal Barracuda drives with two-year warranties "between

4  September 2012 and May 2014" from amazon.com.  (SAC, ¶ 223.)  Although Enders alleges that

5  "at least" five of the 16 drives "suffered catastrophic failures," and that "at least one" of the drives

6  "failed by reporting uncorrectable read errors," he does not allege he requested any replacement

7  drives.  (*Id.*, ¶ 230.)

8      Plaintiff Dortch purchased eight Internal Barracuda drives with one-year warranties "in the

9  spring of 2013" from tigerdirect.com and Evertech.  (SAC, ¶¶ 232-233.) Two of the eight drives

10  failed while under warranty and were replaced.  (*Id.*, ¶ 239.)  One of the replacement drives failed

11  outside warranty.  (*Id.*, ¶ 240.)  Dortch does not allege he sought but did not receive a replacement

12  for any drive that failed under warranty.

13      Plaintiff Smith purchased "four or five" Internal Barracuda drives "in November 2012,"

14  and subsequently purchased "two or three" Internal Barracuda drives, from various retailers,

15  "including Newegg and TigerDirect."  (SAC, ¶¶ 243-244.)  "At least four" of the drives failed in

16  warranty and Smith received replacements.  (*Id.*, ¶¶ 249-250.)  Smith does not allege he sought but

17  failed to receive a replacement for any drive that failed under warranty.

18  **III.    THE CLRA, UCL, FAL AND STATE STATUTORY CLAIMS ALL FAIL AS A
          MATTER OF LAW**

19

20      **A.      Rule 9(b) Applies**

21      Rule 9(b) requires all averments of fraud to be pled with particularity "irrespective of

22  whether the substantive law at issue is state or federal," and even where "fraud is not an essential

23  element of a claim."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. Cal. 2009)

24  (*quoting Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1102, 1106 (9th Cir. 2003)). Where a

25  complaint's allegations are "grounded in fraud," the plaintiff must meet the heightened pleading

26  standards under Rule 9(b).  *Id.* at 1125.  A complaint is "grounded in fraud" where a plaintiff

27  "allege[s] a unified course of fraudulent conduct."  *Id.*; s*ee also Brothers v. Hewlett-Packard Co.*,

28

2006 U.S. Dist. LEXIS 82027, * 23 (N.D. Cal. Oct. 31, 2006) (Whyte, J.) ("*Brothers I*") (Rule 9 applies where complaint "based on an entire course of fraudulent conduct").

Because all Plaintiffs' claims sound in fraud, they must satisfy Rule 9's heightened pleading standard. *See, e.g., Kearns*, 567 F.3d at 1127 (Rule 9 applies to UCL claims in federal court); *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675, ** 10-11 (N.D. Cal. July 13, 2015) (Rule 9 applies to claims under FAL and non-California statutes). Plaintiffs allege Seagate engaged in a "pattern or generalized course of conduct." (SAC, ¶ 296.) For example, they allege Seagate "made material misrepresentations and omissions" (SAC, ¶ 280); "knowingly failed to disclose the Drives defects" (SAC,¶ 230); engaged in "deceptive . . . and fraudulent conduct" and "concealed and did not disclose" information amounting to "fraudulent conduct" (SAC, ¶¶ 346-347); that it "kn[ew] [the drives] contain serious model-wide defects" but "fail[ed] to adequately disclose . . . the defects" (SAC, ¶ 292 All claims contain similar language alleging a course of conduct grounded in fraud. But that is not enough, because they must allege "the who, what, when, where, and how" of the alleged fraud. *Vess c. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107. Plaintiffs fail to meet that standard.

### B. Plaintiffs Fail to Allege a False Advertising Claim Under the UCL's Fraud Prong, the FAL, the CLRA, or Any State Consumer Statutes

Under the FAL, the CLRA, and the fraud prong of the UCL, conduct is considered deceptive or misleading only if the conduct is "likely to [] deceive[]" a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). Sellers may deceive a reasonable consumer under the FAL, CLRA and UCL either through (a) a failure to disclose information the seller had an obligation to disclose, or (b) affirmative representations. *See, e.g., In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014). Here, Plaintiffs fail to allege facts supporting either a fraudulent omission or an affirmative misrepresentation by Seagate.

### 1.    Plaintiffs' Fraudulent Omission Claim Fails

#### a.    Plaintiffs Fail to Allege Any Defect

Plaintiffs allege their drives are subject to "model-wide defects" that cause the drives to fail at "spectacularly . . . high rates." (SAC, ¶ 4.) But they allege no facts showing that any of their purported drive failures *resulted from a defect in the product,* as opposed to accident, abuse, neglect, heat or humidity beyond product specifications, improper installation, misuse, or any other of the many potential causes of drive failure. Even though Plaintiffs filed their first complaints six months ago and have amended to add seven new plaintiffs, more than 10 new causes of action, and 56 additional pages, they still allege nothing about the design or manufacturing of their drives they claim to be defective. These pleading failures are fatal. *See, e.g., Punian v. Gillette Co.*, 2016 U.S. Dist. LEXIS 34164, *35 (N.D. Cal. Mar. 15, 2016) (dismissing complaint under Rule 9 for failure to identify the particular defect); *Decoteau v. FCA US LLC*, 2015 U.S. Dist. LEXIS 152579, *2 (E.D. Cal. Nov. 9, 2015) ("Plaintiffs must allege specific facts to support their conclusion that their [products] were defective in order to adequately state a claim"); *Yagman v. General Motors Co.*, 2014 U.S. Dist. LEXIS 120045, **6-7 (C.D. Cal. Aug. 22, 2014) (dismissing under Rule 8 because "Plaintiff has not . . . pled sufficient facts to support his suggestion that a manufacturing defect is a plausible cause of [his] harm").[1]

*Yagman* is instructive. There, the named Plaintiff in a putative class action asserting warranty, fraud and other claims alleged that a vehicle with an unspecified defect "stopped running and it experienced a complete electrical shutdown." 2014 U.S. Dist. LEXIS 120045 at *4. He asserted the purported "complete shutdown" happened twice—the second time after testing by the Defendant—and that a "jury could reasonably draw the inference that the vehicle was defective." *Id.* The court dismissed under Rule 8, holding that "*[t]he fact that the engine failed*

---

[1]    The tagalong claims under consumer protection statutes in New York, Florida, Massachusetts, Illinois, Tennessee, South Carolina, Texas and South Dakota fail for the same reason. As to the Massachusetts and Texas statutes, Plaintiffs violated their stipulation with Seagate, memorialized in the Court's order at Docket No. 54, by adding numerous unauthorized factual allegations, despite agreeing they would not "add further named plaintiffs or claims or additional facts supporting any existing claims other than" amendments "regarding notice provisions of" the CLRA and the Texas and Massachusetts statutes.

1  *renders it merely possible that a manufacturing defect was the cause*." (Emphasis added.) *Id.* at

2  6. Thus, under the "plausibility" standard of Rule 8—lower than the "particularity" standard of

3  Rule 9, applicable here—the court concluded that any "reasonable inference" of a product defect

4  did "not necessarily rise to the level of plausibility." *Id.*; *see also In re Toyota Motor Corp.*, 754

5  F. Supp. 2d 1208, 1222 (C.D. Cal. 2010) (even under the lower Rule 8 standard, "plaintiffs should

6  '*identify/explain how* the [product] either deviated from [defendant's] intended result/design or

7  *how* the [product] deviated from other seemingly identical [product] models") (emphasis in

8  original) (*quoting Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010)).[2]

9      Hard disk drives are complex electro-mechanical devices with many moving parts,

10  including: (1) the "platter," or the spinning disk upon which data are stored and retrieved and

11  which rotates at thousands of RPM's; (2) the "head," which reads and writes data onto the platter;

12  (3) the "head arm," which positions the head along the platter; (4) the casing, which prevents the

13  entry of particles that can disrupt the microscopically precise interaction between head and platter;

14  (5) the actuator, an electro-magnetic device that powers the head arm across the platter; (6) a

15  central spindle that rotates the platter; (7) a circuit board that controls the flow of data to and from

16  the platter; and (8) a small spindle allowing the head arm to move across the platter. Malfunction

17  of any of these components can lead to drive failure, and each of these components can fail for

18  many reasons having nothing to do with design or manufacturing defects. Plaintiffs name no

19  parts, no failures of any specific part, and fail even to offer a theory as to why their drives failed.

20  Thus, Plaintiffs offer no factual support for their conclusory "model-wide defect" allegation.

21      Moreover, Plaintiffs fail to offer anything more than cursory allegations regarding the

22  *manner* in which their drives failed. And their vague allegations describe widely different types

23  of drive "failure."[3] As a result of this conclusory pleading, it is impossible to determine even the

---

25  [2] Indeed, Plaintiffs fail even to allege whether the defect was a manufacturing defect or a design defect. If the latter, their claims are barred because Seagate's warranty covers defects in

26  material or workmanship, and "express warranties covering defects in materials and workmanship exclude defects in design." *Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668,

27  668-669 (9th Cir. 2012).

28  [3] Nelson alleges his drive "failed" when a "large number of data sectors suddenly failed." (SAC ¶ 144.) Hauff alleges his drive "started experiencing problems" when it "developed bad

1   *possible* reasons for the alleged drive failures, much less whether those reasons had any

2   connection to a "model-wide defect." Nor do Plaintiffs draw any causal link between any

3   purported defect and the symptoms or injury pled. These pleading failures deprive Seagate of the

4   ability to receive "fair notice and . . . defend itself effectively." *See Starr v. Baca*, 652 F.3d 1202,

5   1216 (9th Cir. 2011).

6       "Failures"—even "catastrophic failures"—are not defects. They are results. Because all

7   products will experience some rate of premature failure (or failure from misuse), the cases finding

8   a duty to disclose involve an actual identifiable defect in the product.[4] Here, Plaintiffs have

9   merely asserted—based on a third-party blog post, not their own testing, analysis, or even a

10  statistically significant sample—that Seagate's drive model number ST3000DM001 supposedly

11  has a "staggering failure rate," which "indicates" that "the Drives contain an inherent, model-wide

12  defect." (SAC ¶ 108.) But what *is* the defect? The SAC is silent. Permitting Plaintiffs to proceed

13  on a theory that *any* failure of nine purchasers' drives equates to liability and damages would

---

14  sectors," and then "failed completely." (SAC ¶ 159.) Schechner claims his drive "crashed and
15  failed to boot back up ever again," that "the power light would turn on but the Drive did not
    'spin up,' and that the "computer could not find or recognize the Drive." (SAC ¶ 169.) Hagey
16  alleges only that his drives "crashed and catastrophically failed." (SAC ¶ 182.) Crawford
    alleges that one drive "suffered a complete and catastrophic failure," and that "the other two
17  began to return read errors." (SAC ¶ 196.) As to a replacement drive Crawford received, he
    alleges only that it "failed." (SAC ¶¶ 198, 199, 201.) Manak alleges only that his drive
18  "failed," and that the replacement "suffered a complete and catastrophic failure." (SAC ¶¶
    220, 221.) Enders alleges "at least five" of his drives "suffered catastrophic failures," but
19  specifies that "at least one of the original Drives failed by reporting uncorrectable read errors."
    (SAC ¶ 230.) Dortch alleges that "four of [the] eight" drives he purchased "suffered
20  catastrophic failures." (SAC ¶ 238.) He alleges replacement drives "failed" or
    "catastrophically failed," with no further information. (SAC ¶ 240.) Smith alleges "at least
21  four of [his] original eight Drives failed," with no further information. (SAC ¶ 249.)

22  [4] *In Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *1 (N.D. Cal. Feb. 5, 2014), for
    example, plaintiff alleged Hewlett-Packard had installed a 220-watt power supply unit in one
23  of its computer models, when the component parts in that model needed at least 300 watts to
    operate properly. According to plaintiff, because of this identified design defect, the power
24  supply unit was "incapable of providing adequate power." *Id.* at *4. In *Herremans v. BMW of
    N. Am., LLC*, 2014 WL 5017843, at *1 (C.D. Cal. Oct. 3, 2014), plaintiff likewise alleged the
25  existence of an actual, identified design defect—the sealed ball bearing system in the
    automobile's water pump was alleged to be defective because the stress placed on it exceeded
26  engineering limitations. *See also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th
    Cir. 2012) (noting that the "complaint describes the design defect in some detail," including
27  "that the component that connects the power jack to the motherboard 'was designed in a
    manner that is exceedingly fragile,' as the connection is supported only by a few pins affixed
28  with solder").

1   upend California warranty law.  Indeed, such a theory—that alleged premature failure = defect *per*

2   *se*— would impose a strict liability standard in place of proof that the alleged failure had any

3   connection to actions by Seagate.  California law requires more.  The possibility of device failure

4   is why manufacturers provide warranties.  Manufacturers advertise their warranties, and

5   consumers place value on them, because both recognize that virtually no product can be assured

6   not ever to fail prematurely.  If there were no possibility of such failure, the warranty would be

7   pointless.

8        Plaintiffs attempt to assert that, by replacing failed drives pursuant to warranty, Seagate

9   somehow "admitted" a "model-wide defect."  (*See* SAC ¶ 118.).  This argument fails on multiple

10  levels.  First, the warranty's limitation to drives exhibiting "defects in materials or workmanship"

11  obviously does not prohibit Seagate from replacing drives *without* such defects, or from deciding

12  in its discretion to replace drives that fail for any reason.  Second, even if it were true that *all*

13  returned drives exhibited a "defect," nothing in the SAC, the warranty, or anywhere else suggests

14  Plaintiffs' drives failed due to a defect in *manufacturing or design—*as opposed to, say, faulty

15  installation.  Third, even if it were the case that *all* drives replaced pursuant to the warranty were

16  defective, nothing in the SAC provides any basis to conclude that the defect was uniform or

17  "model-wide," as Plaintiffs assert.  Plaintiffs' attempt to turn Seagate's compliance with its

18  warranty terms into a tort is a "heads I win, tails you lose" argument arising from the self-

19  defeating fact that Plaintiffs assert breach of warranty claims *despite admitting in their complaint*

20  *that Seagate complied with the warranty terms*.  Their attempt to avoid that fatal problem by

21  asserting unspecified "model-wide defects" fails.[5]

22        If the Drives actually were defective, Plaintiffs should have alleged facts showing as much.

23  Plaintiffs could have conducted pre-filing investigation (as Rule 11 requires) to determine whether

24  the Drives suffer from a model-wide defect and to identify the nature of any such defect.  The law

25  _____

26  [5]   Plaintiffs' contention that Seagate "not only repairs or attempts to repair 100% of warranty
       returns, but 100% of those Drives are defective," (SAC ¶ 119) is a blatant misreading of a
27     website statement about Seagate's "takeback program" for refurbishment or recycling of
       warranty returns.  Information about Seagate's "green practices" plainly has nothing to do with
28     whether any of its drives are defective.

1   does not permit a plaintiff to file a lawsuit—or, in this case, multiple lawsuits and multiple

2   amended pleadings—and impose on the courts and the defendant the enormous burden and

3   expense of refuting meritless claims when the plaintiff has failed to do even the most basic

4   groundwork to establish his claim.  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)

5   (*quoting In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (requirements of Rule 9(b)

6   serve "to deter the filing of complaints as a pretext for the discovery of unknown wrongs . . . and

7   to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous

8   social and economic costs absent some factual basis").

9                       **b.       Plaintiffs Fail to Allege Seagate Had Any Duty to Disclose**

10          A defendant is not liable for a fraudulent omission unless the omission is "contrary to a

11  representation actually made by the defendant or an omission of a fact the defendant was obliged

12  to disclose."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (*quoting*

13  *Daugherty  v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)).  In *Wilson,* the Ninth Circuit

14  held that "a manufacturer's duty to consumers is limited to its warranty obligations absent either

15  an affirmative misrepresentation or a safety issue." *Id.*  Thus, in order to plead a UCL claim based

16  on an omission, a plaintiff must plead with particularity "factual allegations showing any instance

17  of physical injury or any safety concerns posed by the defect."  *Daugherty*, 144 Cal. 4th at

18  836.  Also, a plaintiff  "must sufficiently allege that a defendant was aware of a defect at the time

19  of sale to survive a motion to dismiss."  *Wilson*, 668 F.3d at 1145.

20          Plaintiffs fail to allege facts supporting any duty of Seagate to disclose.  First, the drives

21  are not alleged to present any "safety issues," and thus no duty arises.  *See, e.g. Willis v. Buffalo*

22  *Pumps Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014) ("In *Wilson*, the Ninth Circuit rejected a

23  broad obligation to disclose all material facts, but accepted that a manufacturer would be 'bound to

24  disclose' a defect that posed safety concerns or risk of physical injury.").  Second, although

25  Plaintiffs allege knowledge based, *inter alia*, on comments posted on the Internet, as shown

26  below, they allege no facts to support that Seagate knew of any underlying defects, because there

27  were no underlying defects about which Seagate could have known.

28

1

### c.      Plaintiffs Fail to Allege Seagate Knew of Any Defect

2      "In order to give rise to a duty to disclose, a complaint must contain specific allegations

3  demonstrating the manufacturer's knowledge of the alleged defect *at the time of sale*." *Donohue v.*

4  *Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) (emphasis original).  Even assuming

5  Seagate had a duty to disclose unspecified "defects,"  Plaintiffs' fraudulent omission claims fail

6  because the SAC does not allege facts showing that Seagate knew of any defects *at the time of*

7  *sale*.  *See, e.g., Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160 (N.D. Cal. 2011)

8  ("*Kowalsky v. HP*") (fraudulent omission claims subject to dismissal unless Plaintiffs make "a

9  plausible showing that the defendant knew of the alleged defect when it made the representations

10  alleged to be deceptive"); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*

11  *Television Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) ("*In re Sony HDTV*") ("Plaintiffs have

12  failed to offer sufficiently particularized allegations showing that Sony was aware of the defect

13  when Plaintiffs purchased the televisions.").

14      Plaintiffs quote pseudonymous or anonymous web comments made by purported Seagate

15  customers whose drives allegedly failed.  However, "[r]andom anecdotal examples of disgruntled

16  customers posting their views on websites" is insufficient "to impute knowledge upon

17  defendants."  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008); *see*

18  *also Baba v. Hewlett-Packard Co.*, 2010 U.S. Dist. LEXIS 59747 (N.D. Cal., June 16, 2010) **

19  14-16 (allegations of complaints on Internet insufficient to support claim HP engaged in fraud

20  regarding a known defect); *Berenblat v. Apple, Inc.*, 2010 WL 1460297, *9 (N.D. Cal. 2010) ("the

21  complaints posted on Apple's consumer website merely establish the fact that some customers

22  were complaining.  By themselves, they are insufficient to show that Apple had knowledge.").

23  Moreover, virtually all of the comments post-date the Plaintiffs' purchases and thus are irrelevant

24  as a matter of law.  *See Wilson*, 668 F.3d 1136, 1145-48 ("plaintiffs must sufficiently allege that a

25  defendant was aware of a defect ***at the time of sale*** to survive a motion to dismiss") (emphasis

26

27

28

1   added); *In re Sony HDTV*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("Sony had no duty to

2   disclose facts of which it was unaware").[6]

3       In any event, Plaintiffs allege no facts indicating they have any basis for concluding that

4   the postings are accurate or legitimate.  And even accepting, *arguendo,* the truthfulness of the

5   unsubstantiated postings, they establish neither the existence of a defect nor Seagate's knowledge

6   of same.  Once the chronologically irrelevant postings are eliminated, there are at most five

7   comments alleging drive failure—four regarding the Barracuda drives, and one regarding the

8   Backup Plus drives.  However, none sheds any light on the reasons for the posters' alleged drive

9   failures, nor provides any basis to conclude that the Drives have a design or manufacturing defect.

10  Like the SAC, the Internet comments describe symptoms and types of failure, ranging from drives

11  that were "dead on arrival"—a condition that would most likely occur as a result of mishandling

12  during shipping or storage—to drives exhibiting a "weird whirring sound," and drives that

13  "developed bad sectors."  Many postings make clear the allegedly "failed" drives were replaced

14  pursuant to warranty; no one claims Seagate did not honor its warranty obligations.

15      To the extent Plaintiffs attempt to rely on Backblaze's assertions in a blog post as imputing

16  knowledge of some defect to Seagate, this attempt fails for two reasons.  First, the Backblaze blog

17  post was published in April 2015—long after all of the Plaintiffs purchased their allegedly

18  defective drives.  (Request for Judicial Notice ("RJN") at ¶ 1 & Ex. A.)  Most Plaintiffs purchased

19  their drives in 2012; no Plaintiff purchased a drive after 2014.  Obviously, information released in

20  2015 could not have provided any basis for Seagate to know about an alleged defect prior to

21  purchases a year or more earlier.  *See, e.g., Neu v. Terminix Intern., Inc.*,  2008 U.S. Dist. LEXIS

22  60505, * 10 (N.D. Cal. July 24, 2008) (no "knowledge" within UCL where studies cited by

23  plaintiff were published after defendant made allegedly misleading statements).

24      Second, the blog post fails to identify any defect that resulted in purported drive failure.

25  Indeed, Backblaze commenters repeatedly noted this failing, observing that Backblaze's blog

26

27  [6]   Of the five comments regarding Backup Plus drives, only one pre-dates the alleged purchases.
    Six of the 10 comments quoted in the SAC regarding Barracuda drives post-date the
28  purchases.

1    contained "not a bit of discussion (did I miss it?) as to HOW the drives failed," and noting that the

2    "post still didn't explain HOW the drives failed."  (RJN, ¶ 1& Ex. A at p. 12 of 21.)

3         Third, the Backblaze blog post is based on an admittedly unscientific and anecdotal

4    assessment of drives that Backblaze admits it misused by (1) using consumer-grade drives for

5    commercial applications, and (2) "shucking" external drives—i.e., using them without their

6    protective casings.  (RJN, ¶ 1 & Ex. A at p. 9 of 21.)   Accordingly, Backblaze's "analysis" is

7    irrelevant to Plaintiffs' claims because the drives were used outside the requirements of Seagate's

8    warranty.  Finally, Plaintiffs allege Backblaze "concluded that the cause of the staggering failure

9    rate was the Drives themselves."  (SAC ¶ 107.)  The blog post concludes nothing of the sort.  It

10   merely speculates that "perhaps" Seagate drives "were impacted more than other models or other

11   vendors" by flooding in Thailand in 2011.  (RJN, Ex. A at p. 10 of 21.)  The most Backblaze says

12   is that *one* of several possibilities for the allegedly high failure rate of Seagate drives was "the

13   drives themselves," with no mention of any particular problem—much less a "model-wide defect."

14                        **2.        Plaintiffs Allege No Actionable Misrepresentations**

15        Plaintiffs' misrepresentation claims fail as well. The FAL "prohibits the use of any untrue

16   or misleading statement in selling real or personal property or personal services." *People v.

17   Dollar-Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 128 (1989). The FAL prohibits "not only

18   advertising which is false, but also advertising which[,] although true, is either actually misleading

19   or which has a capacity, likelihood or tendency to deceive or confuse the public. *Chapman v.

20   Skype, Inc*., 220 Cal. App. 4th 217, 226 (2011). To violate the FAL, advertising must actually

21   mislead or be likely to mislead an ordinary consumer acting reasonably under the circumstances.

22   *Id*. Further, to be actionable, a statement must allege facts, as opposed to opinion. *Oestreicher*,

23   544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("The court has not been able to glean any false

24   statements of fact from plaintiff's complaint"); s*ee also Coastal Abstract Serv., Inc. v. First Am.

25   Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (to be actionable, statement must be a "specific

26   and measurable claim, capable of being proved false or being reasonably interpreted as a statement

27   of objective fact").

28

Plaintiffs allege material misrepresentations with respect to two categories of drives: Barracuda and Backup Plus, both allegedly containing Seagate's 3TB drive model number ST3000DM001.[7] As to both, Plaintiffs' core claim is that Seagate allegedly misrepresented the drives by making statements about the functions and technology of those drives, as well as statements about their reliability and quality.

### a.    Barracuda Drives

As to the Barracuda drives, the SAC quotes, *inter alia,* the following alleged statements:

- "Seagate AcuTrac technology enables reliable read/write performance even in high touch operating environments."

- "Seagate AcuTrac™ technology enables new storage densities with accurate reading and writing to nano-sized tracks that are only 75 nanometers wide! That's about 500 times smaller than the period at the end of this sentence."

- "Proven quality and performance."

- "Barracuda has become the world's most popular family of hard drives with consistent quality and performance-enhancing innovations and features…."

- "The Barracuda® hard drive gives you one hard drive platform for every desktop storage application. One drive with trusted performance, reliability, simplicity, and capacity."

- "Count on Barracuda drives to deliver the storage innovations that drive your costs down and your performance up."

- The Barracuda is "produced using the most sophisticated manufacturing process in the industry, with a focus on environmental stewardship."

(SAC, ¶ 55.)

None of these statements is actionable. Nor is any false. Nor did any cause any damage to Plaintiffs. At most, the statements make subjective representations about general characteristics of the drives that are neither quantifiable nor provably true or false.

"The word 'performance' is non-actionable . . . ." *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005). "Describing a product as [']quality' or as 'having high performance criteria' are the types of subjective characterizations that . . . courts have repeatedly

---

[7]    Earlier iterations of Plaintiffs' complaint alleged misrepresentations regarding GoFlex drives. Plaintiffs have removed those allegations now that the sole Plaintiff who allegedly purchased a GoFlex drive, Mr. Ginsberg, has been dismissed. Thus, Plaintiffs fail to state a claim regarding the GoFlex drives.

1    held to be mere puffing." *Id.* (*quoting Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100

2    (2005)).  Similarly, "the word 'reliability' is non-actionable . . . ." *Annunziato*, 402 F. Supp. 2d at

3    1140.  "The word ['']reliable' is inherently vague and general—in common parlance akin to a

4    statement that the machine is fine." *Summit Tech., Inc. v. High-Line Medical Instruments*, Co.,

5    933 F. Supp. 918, 931 (C.D. Cal. 1996).  Moreover, "a claim that machines are 'reliable' is

6    'incapable of objective verification and not expected to induce reasonable consumer reliance.'"

7    *Id.*; *see also Sumer v. Carrier Corp.*, 2015 U.S. Dist. LEXIS 20731, *4 (N.D. Cal. Feb. 20, 2015)

8    (statements about "reliability and quality of [air conditioner] evaporator coils are non-actionable . .

9    . ."); *Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262, *21(N.D. Cal. July 27, 2007)

10   (statements that laptops are a "reliable mobile computing solution" are non-actionable); *aff'd*, 316

11   Fed. Appx. 585 (9th Cir. 2009).

12           Plaintiffs allege that a "reasonable person" would understand the above statements to

13   mean, *inter alia*, that the Barracuda drive "will last as long as comparable hard drives on the

14   market, if not longer," and that it "does not suffer from a latent, model-wide defect that causes it to

15   fail at an extremely high rate."  (SAC, ¶ 66.)  However, none of the statements says anything

16   about "comparable drives on the market."  Furthermore, representations that allegedly defective

17   products are "designed, manufactured and tested for years of dependable operations" are non-

18   actionable statements of opinion and thus "as a matter of law could not deceive a reasonable

19   customer." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010).

20                              **b.      Backup Plus Drives**

21           As to the Backup Plus drives, the SAC quotes, *inter alia,* the following alleged statements:

22           • "Your digital life safe and sound."

23           • "Backup Plus . . . is the simple, one-click way to protect and share your entire
                 digital life."

24           • "Up to 4TB capacity for a lifetime of memories."[8]

25

26

27   _____

28   [8]      Plaintiffs fail to provide the document that allegedly states "4TB capacity;" the only drives
             at issue are 3TB.

- "[L]ets you do more with photos and movies, protect everything in your digital life."

- "Protect . . . Photos, videos and more."

- "The Backup Plus desktop drive lets you set up easy automatic backups for all your stuff, so you know that even if 'life happens' to your computer, your memories are always protected.

- "With Backup Plus, you can easily download [photos] . . . so even more of your life is safe and sound."

(SAC ¶ 67.)

As shown above, "reliable" and "long useful life" are inherently subjective concepts that do not give rise to a legal claim. *See, e.g.*, *Anunziato*, 402 F. Supp. 2d at 1140. Statements such as "your digital life safe and sound;" "protect photos;" and "your memories are always protected" do not address a "specific or absolute characteristic" of the drives and, thus, are non-actionable. *See Oestereicher,* 544 F. Supp. 2d at 973. They also are not "mis-statement[s] of fact." *Id*. Nor, as also shown above, do any of the statements make representations about "comparable drives on the market," or suggest premature failure is impossible.

Plaintiffs further assert, based on the Barracuda product data sheet, that Seagate "claimed that the annualized failure rate ('AFR') of the Drives is less than 1% and that the maximum non-recoverable read errors per bits read is 1 per 10E14." (SAC, ¶ 72.) They cite the following statistical data (*See* SAC ¶ 54, Ex. B.)[9]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Contact Start/Sbp Cycles | - | - | - | - | - | 50,000 | 50,000 | 50,000 |
| Load/Unload Cycles | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | - | - | - |
| Nonrecoverable Read | 1 per | 1 per | 1 per | 1 per | 1 per | 1 per | 1 per | 1 per |
| Annualized Failure Rate (AFR) | <1% | <1% | <1% | <1% | <1% | <1% | <1% | <1% |
| Power-On Hours | 2400 | 2400 | 2400 | 2400 | 2400 | 2400 | 2400 | 2400 |

---

[9]    These specifications, from Seagate's Barracuda Data Sheet dated November 2011, relate only to Barracuda drives and thus have no relevance to Plaintiffs' claims about Backup Plus drives.

1    First, these are statistical test results. By definition, they provide no guarantee of future

2    performance for any individual drive.  Second, Plaintiffs do not allege any of the product

3    specifications, which are statistical measures based on test populations, were untrue.  It goes

4    without saying that true, non-misleading information cannot be the basis of a misrepresentation

5    claim.  *In re Sony HDTV*, 758 F. Supp. 2d at 1093 (FAL proscribes only a statement that is

6    "untrue, misleading, and which is known, or which by the exercise of reasonable care should be

7    known, to be untrue or misleading") (citing Cal. Bus. & Prof. Code § 17500 *et seq*.).  Third,

8    Plaintiffs themselves allege AFR "does not include failures that occurred because of misuse, user-

9    inflicted damage, unauthorized modifications, and the like."  (SAC, ¶ 76.) Yet nowhere do

10   Plaintiffs allege that they used the drives consistent with manufacturer specifications, or that they

11   did not otherwise misuse the drives.

12   Even if the SAC could be construed to allege that Seagate's specification data are false or

13   misleading, Plaintiffs' reliance on highly technical explanations (*see* SAC ¶¶ 74-78) merely

14   highlights why such data are not and could not be materially misleading to a "reasonable

15   consumer"—no such consumer is alleged to have known of or relied upon this information before

16   purchasing.  *See Ross v. Sioux Honey Assn.*, 2013 U.S. Dist. LEXIS 6181, *48 (N.D. Cal. Jan. 14,

17   2013) ("reasonable consumer" standard "adopts the perspective of the 'ordinary consumer acting

18   reasonably under the circumstances' and thus 'questions of judgment calling for the perspective of

19   a reasonable consumer are 'determined in the light of the effect [such a question] would most

20   probably produce on ordinary minds'") (citations omitted).  Moreover, to the extent such highly

21   technical information would be within the purview of a "reasonable consumer," which is doubtful,

22   the SAC does not allege that a "reasonable consumer" would find the Barracuda specifications to

23   be misleading.

### c.    Statements Regarding RAID and NAS

25   Finally, Plaintiffs allege that various Seagate materials state the Drives are "designed for,"

26   and a "best fit" for RAID and NAS.  (*See, e.g.*, SAC, ¶¶ 58-63.)  Plaintiffs claim these alleged

27   statements are actionable because "the Drives are not designed for ***certain types of home RAID***

28   ***configurations***." (*Id.*, ¶ 6, emphasis added)  They further claim the alleged representations "would

-18-

1    cause a reasonable person to believe that the Drive is suitable and designed for *all* RAID and NAS

2    configurations, including RAID 5." (SAC, ¶ 64, emphasis added)

3        First, none of the statements Plaintiffs allege Seagate made about NAS or RAID asserts

4    that the drives are suitable for *all* NAS and RAID configurations.  Plaintiffs Hauff, Crawford,

5    Enders and Dortch allege they *used* the drives for NAS or RAID configurations and that

6    individual drives failed.  But they allege no facts supporting the allegation that the drives failed

7    *because of* the NAS or RAID configurations, that there was anything in particular about the Drives

8    that made them unsuitable for NAS or RAID uses, or that the alleged unsuitability for NAS or

9    RAID uses led to any harm to any of the Plaintiffs.  Thus, even assuming any of the alleged

10   statements regarding NAS or RAID was false or misleading—which they were not—Plaintiffs

11   have not alleged they suffered any harm as a result.  They merely allege their drives failed,

12   irrespective of any RAID or NAS use.[10]

13   **C.    Plaintiffs Fail to Allege Claims Under the UCL "Unfair" or "Unlawful"
           Prongs**

14

15       With one exception, Plaintiffs' allegations under the "unfair" prong of the UCL are

16   identical to those under the "fraudulent" prong and fail for the same reasons.  The exception is the

17   assertion that Seagate violated the "unfair" prong of the UCL by "replacing failed Drives with

18   'refurbished' Drives" and by "failing to provide refunds or a different model of hard drive to

19   warranty claimants."  (SAC, ¶ 292.)

20       But Seagate's warranty specifically provides that Seagate "may replace your product with

21   a product that was previously used [and] repaired." (SAC, Ex. F.)  Further, the warranty limits the

22   remedies available to replacement, not "refunds or a different model of hard drive."  Thus, based

23   on the SAC's allegations, Seagate complied with the warranty.  California law permits the

24   limitation of remedies in consumer contracts; compliance with such limited remedies, therefore,

25   cannot be "unfair" within the UCL.  *See, e.g., Rice v. Sunbeam Prods., Inc.*, 2013 U.S. Dist.

26   LEXIS 7467, *34 (C.D. Cal. Jan. 7 2013) (limitation of remedy to repair or replacement "is

27   ─────────────
     [10]    Only four Plaintiffs allege they used their drives for RAID or NAS.  A fifth, Smith, merely
28           asserts he "intended" to do so, but does not claim he actually did. (SAC ¶ 247.)

1  allowable under California law").  To the extent Plaintiffs' claims under the UCL's "unlawful"

2  prong rely on the alleged warranty breach, they fail for two reasons.  First, breach of an express

3  warranty—a contract—is not "unlawful" for purposes of the UCL.  *See Boland, Inc. v. Rolf C.*

4  *Hagen Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) ("[a] breach of contract … is not in

5  itself an unlawful act for purposes of the UCL").  Second, as shown below, Seagate did not breach

6  its warranties.

7  ## IV.     THE CLAIMS FOR BREACH OF EXPRESS WARRANTY FAIL

8         The Seagate limited warranty states that if a drive fails, "Seagate will replace your product

9  without charge with a functionally equivalent replacement product."  (SAC, Ex. F.)  It further

10 provides that replacement is the sole remedy available, and that this sole remedy is only available

11 during the warranty period.  (*See* SAC, Ex. F, "How Long Does Coverage Last" and "What Does

12 This Limited Warranty Not Cover?")  Thus, Seagate promised to replace failed drives during the

13 warranty period.  (*See* SAC ¶ 126 [alleging that Seagate's limited warranty "provides for the

14 replacement of defective Drives].")

15        Plaintiffs allege no breach of this agreement.  Indeed, Plaintiffs acknowledge they all either

16 received replacements for allegedly failed drives during the warranty period, or did not request a

17 replacement after an in-warranty drive failed.  (*See* SAC, ¶¶ 135-152.)[11]  Instead, they allege that

18 Seagate "did not . . . deliver conforming, non-defective Drives," and that Seagate "replaced

19 defective Drives with defective Drives."  (SAC ¶¶ 336, 339, 341.)  In *Long v. Hewlett-Packard*

20 *Co.*, 2007 U.S. Dist. LEXIS 79262 at *11-12, this Court (Ware, J.) rejected a breach of warranty

21 claim where plaintiff alleged defendant "substituted one defective [product] for another" because

22 defendant complied with warranty terms.  Seagate promised to replace any failed drives during the

23 warranty period and, as Plaintiffs allege in the SAC, it did exactly what it promised.  Plaintiffs'

24

25 [11]   The sole exception is Plaintiff Crawford.  However, Crawford failed to allege a contractual
    precondition to recovery—namely, that he purchased his drive from "an authorized retailer."
26  (SAC ¶¶ 186, 198, 199, 201; SAC Ex. F.)  Thus, his claim fails as a matter of law for a reason
    different from the other plaintiffs.  *See Taliaferro v. Samsung Telecoms. Am., LLC*, 2012 U.S.
27 Dist. LEXIS 6221, *7 (N.D. Tex., Jan. 19, 2012) (applying California law and dismissing
    breach of warranty claim where plaintiff failed to "return product to an authorized phone
28 service facility," as required).

1   breach of warranty claims therefore fail as a matter of law.  *See Brothers v. Hewlett-Packard Co.*,

2   2007 U.S. Dist. LEXIS 13155, *13 (N.D. Cal. Feb. 12, 2007) ("*Brothers II*") (failure to state

3   breach of warranty claim where plaintiffs alleged defendant computer manufacturer "replac[ed] a

4   defective part with another defective part," and defendant replaced malfunctioning part during the

5   warranty period, because that is "exactly what the Limited Warranty provides").

6       "A manufacturer's liability for breach of an express warranty derives from, and is

7   measured by, the terms of that warranty."  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525

8   (1992).  Thus, "'a plaintiff cannot maintain a breach of warranty claim…for a product that is

9   repaired within the warranty period and fails again months after the warranty has expired.'"

10  *Frenzel v. Alphicom*, 76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014) (*quoting Long*, 2007 U.S. Dist.

11  LEXIS 7962, *10); *see also, e.g., Brothers I*, 2006 U.S. Dist. LEXIS 82027, *25 ("To the extent

12  plaintiff contends that [defendant] failed to repair the defect while his [computer] was under

13  warranty, it is undisputed that [defendant] replaced the motherboard at the time, which corrected

14  the asserted . . . problems. To the extent plaintiff alleges that [defendant] breached the warranty by

15  failing to repair the computer when it again displayed problems, it is undisputed that the warranty

16  had already expired").

17      Here, Plaintiffs allege the Drives failed within the warranty period, and that those failed

18  drives were replaced.[12]   Although some (but not all) Plaintiffs appear to allege drive failures

19  *outside* the warranty period, such alleged failures cannot support a breach of warranty claim.

20

21

22

23  [12]  Plaintiffs' assertion that the "warranties failed of their essential purpose" adds nothing.  (SAC

24  ¶ 10.)  A limited remedy fails of its essential purpose only when "'a party is deprived of its
    contractual remedy.'"  *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040,
    1055 (C.D. Cal. 2003) (*quoting O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995).

25  Under Plaintiffs' own allegations, they received replacement drives when requested during the

26  warranty period, *i.e.,* they received "exactly what the Limited Warranty provides."  *Brothers
    II,*  2007 U.S. Dist. LEXIS 13155, *14.  Accordingly, the limited warranty's purpose was

27  fulfilled.  *See Sumer*, 2015 U.S. Dist. LEXIS 20731, **2-3 (no "failure of essential purpose"
    where defendant replaced defective part during warranty period and part failed again outside

28  period).

1    Seagate met its warranty obligations, and Plaintiffs' breach of express warranty claim fails as a

2    matter of law.[13]

3    **V.    THE CLAIMS FOR BREACH OF IMPLIED WARRANTY FAIL**

4           Plaintiffs alleging claims for breach of implied warranty must allege privity.  *See, e.g.,*

5    *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Kent v. Hewlett Packard*,

6    2010 U.S. Dist. LEXIS 76818, *11 (N.D. Cal. July 6, 2010) (one of four named plaintiffs in

7    putative class action who did not purchase allegedly defective product directly from HP "cannot

8    state a claim for breach of the implied warranty of merchantability").  Accordingly, because none

9    of Plaintiffs allege they purchased their drives directly from Seagate, all Plaintiffs' implied

10   warranty claims fail.

11          The SAC asserts that "privity is not required . . . when plaintiffs rely on a manufacturer's

12   written representations on product labels or advertising materials in deciding to purchase a

13   defective product."  (SAC, ¶ 343.)  That is not the law.  Some courts have held there is a "possible

14   exception" for the privity requirement for breach of ***express*** warranty claims where the Plaintiff

15   "relie[s] on representations made by the manufacturer in labels or advertising material."  *Burr v.*

16   *Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954).  However, Seagate could find no case applying

17   this exception to the privity requirement for implied warranty claims.  The SAC further asserts

18   that "[p]rivity is also not required when the plaintiffs are the intended beneficiaries of implied

19   warranties between a retailer and a manufacturer."  (SAC, ¶ 363.)  To the contrary, "[n]o reported

20   California decision has held that the purchaser of a consumer product may dodge the privity rule

21   by asserting that he or she is a third-party beneficiary of the distribution agreements linking the

22

23   ─────────────────────

24   [13]   The same result obtains under the breach-of-warranty laws of New York, Illinois, Florida,
          Massachusetts, Tennessee, South Carolina, Texas and South Dakota because compliance with

25        a warranty's terms cannot constitute a breach.  To the extent Plaintiffs attempt to assert claims
          under California's Song-Beverly Act, Cal. Civ. Code section 1791.2 *et seq.*, such claims fail as

26        to all Plaintiffs except Enders, the only Plaintiff to allege he purchased a drive in California.
          Cal. Civ. Code § 1792; *Annunziato*, 402 F. Supp. 2d at 1142; *see also Kowalsky v. Hewlett-*

27        *Packard Co.*, 771 F. Supp. 2d 1138, 1155 (N.D. Cal. 2010) (rejecting argument that online
          sales may be treated as occurring in California because order processed and shipped from

28        California).

1   manufacturer to the retailer who ultimately made the sale." *Xavier v. Phillip Morris USA,* 787 F.

2   Supp. 2d. 1075, 1083 (N.D. Cal. 2011).[14]

3   **VI.    THE CLRA CLAIMS FAIL INDEPENDENTLY**

4           **A.    All But Two Plaintiffs Failed to File the Required Venue Declarations**

5           In any action under the CLRA, "concurrently with the filing of the complaint, the plaintiff

6   shall file an affidavit stating facts showing that the action has been commenced in a county

7   described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d).  If

8   "a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion

9   or upon motion of any party, dismiss the action without prejudice." *Id.*  Each named plaintiff must

10  file a declaration. *See In re Sony HDTV*, 758 F. Supp. 2d. at 1094 (dismissing all CLRA claims

11  except that asserted by lone plaintiff of 47 who submitted declaration).  Here, Nelson filed a venue

12  declaration with his amended complaint (Dkt. 37), as did Enders  (Dkt. 38).  No plaintiffs filed

13  such venue declarations with the SAC.  Accordingly, the CLRA claims of Hauff, Schechner,

14  Hagey, Crawford, Manak, and Dortch and Smith should be dismissed.

15          **B.    The CLRA Claims of Plaintiffs Nelson, Hauff, Schechner, Crawford, Dortch
                    and Smith Are Time-Barred**

16          A claim under the CLRA must be brought within three years.  Cal. Civ. Code § 1783.  The

17  statutory period commences on the "date of the commission" of the act alleged to violate the

18  CLRA.  Here, Plaintiffs allege Seagate violated the CLRA by "fail[ing] to disclose" the drives'

19  alleged defects.  (SAC, ¶ 324.)  The statutory limitations period therefore commenced on the date

20  each Plaintiff purchased his Drives, at the latest.  The original complaints in this action were filed

21  in February, 2016.  Accordingly, any Plaintiff who purchased his drive before February, 2013 is

22  time-barred.  Plaintiffs Nelson, Hauff, Schechner, Crawford, Dortch and Smith all allege they

23  purchased their drives prior to February, 2013.  Their CLRA claims are thus time-barred.

24

25

26

27  [14]   Any Song-Beverly implied warranty claims except Enders' also fail for the reasons stated

28  *supra* at n.13.

1  **VII.   THE CLAIMS FOR "UNJUST ENRICHMENT" FAIL**

2        A cause of action for unjust enrichment "does not lie when an enforceable, binding

3  agreement exists defining the rights of the parties."  *Paracor Finance, Inc. v. General Electric*

4  *Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  Here, Plaintiffs allege an agreement with

5  Seagate—the limited warranty.  Moreover, Plaintiffs' unjust enrichment claims are duplicative of

6  the claims under the UCL and FAL as well as the warranty claims, and should be dismissed on

7  that basis as well.  *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d

8  1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely

9  duplicative of statutory or tort claims"); *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,

10  2015 U.S. Dist. LEXIS 14674, * 29 (N.D. Cal. Feb. 5, 2015) (dismissing unjust enrichment claim

11  where it "duplicates Plaintiff's other statutory and common law claims").  Plaintiffs' claims for

12  unjust enrichment allege the same "deceptive" conduct that forms the basis for their other claims.

13  The unjust enrichment claims thus should be dismissed without leave to amend.

14  **VIII.   CONCLUSION**

15        For the foregoing reasons, the SAC should be dismissed in its entirety without leave to

16  amend.

17  Dated:  August 5, 2016                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

18

19                                  By _____
                                              */s/ Anna S. McLean*
20                                           ANNA S. McLEAN

21                                      Attorneys for Defendant
                                       SEAGATE TECHNOLOGY LLC

22

23

24

25

26

27

28