Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
AXLER GOLDICH, LLC
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 207-2920
mgoldich@axgolaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 5:16-cv-00523-RMW |
| CONSOLIDATED ACTION | [PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

**A.    PURPOSE**

Unless otherwise agreed to by the parties, this Order will govern discovery of electronically stored information ("ESI") in the above captioned case and all actions that are later consolidated with this case (collectively, the "Litigation") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.  Capitalized terms in this Order are defined in the attached Exhibit A.

**B.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**C.    LIAISON**

Within 10 days after entry of this stipulation and Order, the parties will identify ESI liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each ESI liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The parties will rely on the ESI liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.  Any party is free to change its designated ESI Liaison by providing written notice to the other parties.

**D.    PRESERVATION**

The parties will discuss their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  Given the nature and complexity of these coordinated actions, the parties agree to address methods to reduce the costs and burdens of preservation and to ensure proper ESI is preserved.  The parties shall meet and confer as early as possible to discuss, *inter alia*:

    1)  Ranges of creation or receipt dates for ESI to be preserved;

    2)  Description of data from sources that are not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved pursuant to Federal Rule of Civil Procedure 26(b)(2)(B);

3) Data from sources that either party believe could contain relevant information but is not discoverable and should not be preserved, upon balancing the proportionality factors;

4) Whether to suspend any automated document destruction program of electronically-recorded material;

5) Custodians for whom ESI will be preserved, including names or general titles and the number of custodians;

6) Systems, if any, that contain ESI not associated with individual custodians that will be preserved; and

7) Any disputes related to scope or manner of preservation.

The following categories of ESI are not discoverable—and, to the extent that they exist, need not be retained, processed, reviewed, or produced—except upon a showing of good cause: (a) recorded voice messages; (b) temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system; (b) common system and program files; (c) Online Access Data; (d) electronic mail sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is saved elsewhere; (e) other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is saved elsewhere; (f) Network Access and Server Activity Logs; (g) on-line access data such as temporary internet files, history, cache, cookies, etc.; (h) data in metadata fields that are frequently updated automatically, such as last-opened dates.

**E.     SEARCH**

The parties will continue to cooperate in good faith regarding the disclosure and formulation of appropriate search terms and protocols used to search for ESI responsive to document requests served pursuant to Federal Rule of Civil Procedure 34. The parties shall meet and confer as early as possible to discuss, *inter alia*:

1) Disclosure of search terms used to search for documents responsive to document requests, including semantic synonyms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-

language alphanumeric associational references to relevant ESI, or information that may lead to the discovery of relevant ESI;

2) Post-search error sampling and sampling/testing reports, if any; and

3) Potential use of computer-assisted review or predictive coding techniques.

The parties will meet and confer, prior to the application of search terms to find documents responsive to party document requests, and will review any search terms proposed and/or requested by the parties.  The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including any supplemental requests to add additional search terms based on supplemental document productions by either party.  If the Receiving Party has reason to believe that a production is missing relevant ESI or contains substantial amounts of irrelevant ESI, the parties agree to promptly meet and confer regarding potential quality control methods that the Producing Party can implement.

This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests.

**F.    PRODUCTION FORMATS**

The parties agree that documents produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents.  In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

1) **Document Format.**  Documents shall be produced according to the following formats:

i.   Electronic Production of Paper Documents. Documents that are maintained in paper format shall be scanned per document and converted to a Static Image, and, except as otherwise provided below, shall be produced as black and white 1-bit TIFF images at 300 x 300 d.p.i. or greater resolution, in Group 4 compression single-page TIFFs and reflect the full and complete information contained in the original Document.

Documents shall also be produced with the associated OCR, and with an index file, in accordance with Paragraph F(1)(iii)(A), below.  In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

    ii.  <u>Electronically Stored Information</u>. Except as provided in Paragraph F(1)(iii)(E) below, Document images shall be generated from electronic Documents in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original Document. All black and white images must be in 1-bit TIFF image format and color documents, if applicable, must be in 8-bit JPG image format, together with an index file or functional equivalent specified in Paragraph F(1)(iii)(A) that contains the metadata as set forth in Paragraph F(8), below, and Extracted Text or associated OCR or a link thereto. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

    iii.  <u>File Structure</u>. Each production shall include the following unless otherwise agreed between the parties:

      A) **Index File:**

        a.  Each production has one index file, in .DAT file format.

        b.  The format of the DAT file should use Western European (Windows) encoding Standard Concordance delimiters shall be used:

          i.  Comma — ASCII character 20 (¶);

          ii.  Quote — ASCII character 254 (þ); and

          iii.  Newline — ASCII character 174 (®).

        c.  First line must contain column/field names.

        d.  The fields BEGINBATES, ENDBATES, TEXTPATH and NATIVELINK must be present.

e.  Each subsequent row must contain the Metadata for one Document.

f.  Every row must have the same number of columns/fields (empty values are acceptable).

g.  File should be placed in the root directory.

**B)  OCR and Extracted Text Files (.TXT Files):**

a.  A single text file for each Document containing all the Document's pages, in text.

b.  Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document, filenames should not contain spaces.

c.  Text must be encoded in Western European (Windows) format.

d.  The TEXTPATH of the OCR or Extracted Text files should be included as a field in the DAT file listed above.

e.  Files should be placed in the text/ subdirectory.

**C)  Image Files:**[1]

a.  A single image for each page in each Document.

b.  A single image per file (no multi-page image files).

c.  The default format should be 1-bit black and white single-page TIFF images and 24-bit color JPG images, if applicable.

d.  Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc.), filenames should not contain spaces.

---

[1] Not required for documents produced in Native Format

e.  Files should be placed in the images/ subdirectory.

D) **Native Files**:

    a.  Native files need only be produced for (a) Microsoft Excel files, (b) Microsoft PowerPoint files, and (c) other files that the parties may agree should be produced natively pursuant to Paragraph F(1)(iii)(E), below.

    b.  Where Documents are produced in Native Format (pursuant to Paragraph F(1)(iii)(E), below) filenames must be unique in the production, unless the content is identical; preferably by naming files by the starting Bates number of the associated document.

    c.  The filename of a native file must retain the file extension corresponding to the original Native Format; for example, an Excel 2003 spreadsheet's extension must be .XLS.

    d.  Each native file filename must correspond to the NATIVELINK metadata field in its corresponding document's row in the DAT file.

    e.  Where native files are produced pursuant to this subsection, it is unnecessary to produce Image files, such as TIFF images, other than the Bates stamped native placeholder documents discussed below.

    f.  Any native file text must be encoded in Western European (Windows) format.

    g.  Native files should be placed in the native's subdirectory.

E) **Native Format Documents**. The parties recognize that it may be appropriate for certain Documents to be produced in Native Format. Therefore, the Producing Party shall produce all .XLS spreadsheets and .PPT presentations in Native Format, unless there is an agreement

to the contrary, with Bates stamped native placeholder documents representing native documents for purposes of document identification and confidentiality designations. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as audio files. The parties will meet and confer regarding such requests.

If a Document to be produced as a Native Format contains privileged information as well as non-privileged information, it shall be produced in TIFF format with redactions rather than Native Format.

To the extent the Producing Party wishes to establish additional procedures for the protection of confidential information as defined in any applicable Protective Order entered herein produced in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the information in Native Format.

iv. <u>Color</u>. Documents shall be produced in black and white in the first instance. If a produced Document contains color and that color is necessary to decipher the meaning, context, or content of the document, the Producing Party shall honor reasonable requests for either the production of the original Document for inspection and copying or production of a color image of the Document.

v. <u>Resolution of Production Issues</u>. If Documents cannot be read because of imaging or formatting problems, the Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

2)  **Production Media.** A Producing Party shall produce Documents on such readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media, and where not practicable to do so, may be provided in an accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production or in a separate letter or email an explanation of how to decrypt the files. The parties agree to the following production formats: SFTP site, CD, DVD or external USB hard drive, whichever results in the least number of items.

3)  **Production of Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a Database, in lieu of producing the Database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the Requesting Party or counsel. Upon review of the report(s), the Requesting Party may make reasonable requests for additional information to explain the Database scheme, codes, abbreviations, and different report formats or to request specific data from identified fields.

If a Producing Party asserts that certain ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

4) **Document Unitization.** Paper documents scanned into Document Images shall be logically unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state, if possible. For electronic documents, the relationship of Documents in a Document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from Native Format to TIFF, provided however that the Parties shall only be required to present one level of parent-child relationship. Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail.  All hard copy Documents imaged and produced electronically shall include a unitization file ("index file") in accordance with paragraph F(1)(iii)(a).

5) **Duplicates.** The Producing Party may remove duplicate Documents pursuant to the following limitations: removal of duplicates shall only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values at the Document level).  As a general rule, a Producing Party may de-duplicate its production within a source (custodian), or across the entire production (cross-custodian/globally).  With respect to hard copy documents for which metadata does not exist, however, a Producing Party may only de-duplicate within a source (e.g., custodian), provided however that if the Producing Party provides the custodian field for metadata as requested in Exhibit B it may de-duplicate across the entire production. If a Producing Party de-duplicates across the entire production (globally), the Producing Party shall provide both of the following: (1) the name of each custodian possessing the de-duplicated copy; and (2) the metadata indicating any BCCs on any de-duplicated emails.

Where any such Documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Nothing in this paragraph is intended to resolve a Producing Party's objections in written discovery

1  requests on the ground that the request is duplicative because the requested

2  Documents were produced or are being produced by other parties.

3  6) **Paper Documents Containing Fixed Notes.** Paper Documents that contain fixed notes

4  shall be scanned with the notes affixed, if it can be done so in a manner so as not to

5  obstruct other content on the Document. If the content of the Document is obscured by

6  the affixed notes, the Document and note shall be scanned separately.

7  7) **Bates Numbering and Other Unique Identifiers.** Each Producing Party shall Bates

8  number its production(s) as follows:

9  i.  Document Images. Each page of a produced Document—except Native

10  Files— shall have a legible, unique page identifier ("Bates Number")

11  electronically "burned" onto the image at a location that does not

12  unreasonably obliterate, conceal, or interfere with any information from

13  the source document. The Bates Numbers shall be enumerated as defined

14  above in Definitions.  The Producing Party will use a consistent prefix

15  throughout the matter unless good reason exists for using a different

16  prefix. No other legend or stamp will be placed on the Document Image

17  other than a confidentiality legend (where applicable), redactions, the

18  Bates Number identified above, and any other internal tracking number

19  that the Producing Party may choose to use. The confidentiality legend

20  shall be "burned" onto a Document's image at a location that does not

21  unreasonably obliterate or obscure any information from the source

22  document.

23  ii.  Native Format Documents. In the event Native Format Documents are

24  produced, in order to preserve the integrity of those Native Format

25  Documents, no Bates Number, confidentiality legend or internal tracking

26  number should be added to the content of the Native Document unless

27  otherwise agreed between the Producing Party and the Receiving Party

28  during any meet and confer related to confidentiality protections for Native

1  Format Documents; however, the Producing Party will provide a MD5

2  Hash Value for each Native Format Document.

3  8) **Metadata.** The Producing Party shall produce the metadata information described in

4  Exhibit B, if available, with each production and in the format described in Paragraph

5  F(1)(iii)(a) above. The Producing Party has no obligation or duty to fill in any metadata

6  fields or create any metadata that is not present with the original file. For each Document,

7  the Producing Party shall produce a line in the index file with the fields identified in

8  Exhibit B, where available. The field naming conventions shall be as described in Exhibit

9  B unless otherwise agreed and consistently applied across all productions.

10  9)  **Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be

11  decompressed in a reiterative manner to ensure that a zip within a zip is decompressed

12  into the lowest possible compression resulting in individual folders and/or files.

13 **G.    PRODUCTION OF PAPER DOCUMENTS**

14  1) **Unitization of Paper Documents**:  Paper documents should be logically unitized for

15  production.  Therefore, when scanning or producing paper documents, distinct

16  documents shall not be merged into a single file or database record, and distinct

17  documents shall not be split into multiple files or database records. The parties will

18  make their best efforts to unitize documents correctly.

19  2) **File/Binder Structures (Parent-Child Unitization)**:  Where multiple documents

20  were organized into groups, such as folders, clipped bundles and binders, each distinct

21  document shall be unitized as described above, but maintained together in a parent-

22  child relationship.  The parties will make their best efforts to unitize parent-children

23  groups correctly.

24  3) **Identification**:  Where a document or a document group – such as folder, clipped

25  bundle, or binder – has an identification spine, "Post-It Note" or any other label, the

26  information on the label shall be scanned and produced as the first page of the

27  document or grouping.

28

    4)  **Custodian Identification**:  The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**H.**    **PHASING**

When a party propounds discovery requests pursuant to Federal Rule of Civil Procedure 34, the parties agree to promptly meet and confer regarding the sources and custodians of the initial production of ESI and the phasing of the production of ESI, should such phasing be appropriate.

**I.**    **OBJECTIONS TO ESI PRODUCTION**

If either party objects to producing requested information in the formats described herein on the grounds that such information is not reasonably accessible because of undue burden or cost, before asserting such an objection, the responding party will inform the requesting party of any format in which it is willing to produce the requested data, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested form of production would impose an undue burden or is unreasonably costly, and afford the requesting party 10 business days from receipt of such notice to propose an alternative means of compliance with the request. Such proposal may include alternative cost estimates for ESI discovery production, may offer a proposal for ESI discovery cost allocation, or both.

The parties shall meet and confer in good faith to resolve any dispute regarding a proposed deviation from the provisions of this stipulation. To the extent the parties are unable to resolve any such dispute, each party reserves the right to seek judicial intervention in compliance with the relevant court rules and orders. Nothing in this Order negates the parties' ongoing obligations to report spoliation of evidence.

**J.**    **DOCUMENTS PROTECTED FROM DISCOVERY**

    1)  For any document withheld in its entirety or produced but redacted on the basis of privilege or work product protections, the party withholding the document(s) (the "Withholding Party") will produce privilege/redaction logs consistent with the requirements of the Federal Rules of Civil Procedure.

2) Privilege logs shall be in Excel format or any other format that permits electronic sorting and searching.  When there is a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately.  For each document withheld or redacted, the producing party's privilege/redaction logs shall include the following information: (a) custodian or source; (b) date; (c) author(s); (d) for documents produced but redacted on the ground of privilege, the starting and ending Bates number; (e) recipient(s), CC(s) and BCC(s) (for e-mail and hardcopy communication such as letters and internal memoranda); (f) specification of the privilege claimed; and (g) a description of the document and the basis for the privilege or redaction claim. Privilege/redaction logs shall be produced within 45 days of the production, or another time period mutually agreed to by the parties.

3) Pursuant to Federal Rule of Evidence 502(b), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not an automatic waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding, and the Parties agree that the standard set forth in Rule 502(b) shall apply.

4) The parties intend to meet and confer regarding, and enter into, a Stipulation and  Order pursuant to Federal Rule of Civil Procedure 502(d) for this litigation, which will address all other issues of privilege, including the production of privileged or protected documents or information.

5) Communications involving trial counsel that postdate the filing of the complaint need not be placed in a privilege log.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

1

**K.    PROPORTIONALITY AND COSTS**

2

    The parties intend to meet and confer regarding the costs that parties will share to reduce

3

overall discovery expenses, including a shared document repository or other cost-saving measures.

4

**L.    MODIFICATION**

5

    This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court

6

for good cause shown.

7

**M.    MISCELLANEOUS**

8

    This Stipulated Order is not intended to govern any protections or restrictions related to the

9

production of privileged litigation material.  Any documents recalled due to a mutually-agreed upon

10

claw-back provision shall have a specific protocol followed to ensure all copies of each such

11

document are appropriately removed from the review system of the opposite party.

12

    **IT IS SO STIPULATED**, through Counsel of Record.

13

14

DATED:  August 19, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

15

16

                                           By: /s/ Steve W. Berman
                                               Steve W. Berman (*pro hac vice*)

17

                                           1918 Eighth Avenue, Suite 3300
                                           Seattle, Washington 98101
                                           Telephone: (206) 623-7292

18

                                           Facsimile: (206) 623-0594
                                           steve@hbsslaw.com

19

                                           Jeff D. Friedman

20

                                           715 Hearst Avenue, Suite 202
                                           Berkeley, California 94710

21

                                           Telephone: (510) 725-3000
                                           Facsimile: (510) 725-3001

22

                                           jefff@hbsslaw.com

23

                                           Marc A. Goldich (*pro hac vice*)
                                           AXLER GOLDICH, LLC

24

                                           One Liberty Place
                                           1650 Market Street, Suite 3600

25

                                           Philadelphia, PA 19103
                                           Telephone: (267) 207-2920

26

                                           mgoldich@axgolaw.com

27

                                           *Attorneys for Plaintiffs*

28

DATED: August 19, 2016                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /s/ Anna S. McLean
        Anna S. McLean (142233)
Neil A.F. Popivić (132403)
David E. Snyder (262001)
Liên H. Payne (291569)
Mukund H. Sharma (249125)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
amclean@sheppardmullin.com
npopovic@sheppardmullin.com
dsnyder@sheppardmullin.com
lpayne@sheppardmullin.com
msharma@sheppardmullin.com

*Attorneys for Defendant*


**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Steve W. Berman, am the ECF User whose identification and password are being used to file this [Proposed] Stipulated Order re: Discovery of Electronically Stored Information.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated:  August 19, 2016              By:  ____/s/ Steve W. Berman_____
                                              Steve W. Berman

1

## ORDER

2          **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

3

4     DATED: _____          _____

5                                          UNITED STATES DISTRICT COURT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
## EXHIBIT A

3
### DEFINITIONS

4
A.  "**Electronically stored information**" or "**ESI**," as used herein, means and refers to

5
computer generated information or data of any kind, stored in or on any storage media located on

6
computers, file servers, disks, tape or other real or virtualized devices or media.  Non limiting

7
examples of ESI include:

8
• Digital communications (e.g., e-mail, voice mail, instant messaging);

9
• E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);

10
• Word processed documents (e.g., Word or WordPerfect files and drafts);

11
• Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

12
• Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

13
• Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

14
• Sound Recordings (e.g., .WAV and .MP3 files);

15
• Video and Animation (e.g., .AVI and .MOV files);

16
• Databases (e.g., Access, Oracle, SQL Server data, SAP);

17
• Contact and Relationship Management Data (e.g., Outlook, ACT!);

18
• Calendar and Diary Application Data (e.g., individual entries stored in an Outlook PST,

19
blog entries);

20
• Online Access Data (e.g., Temporary Internet Files, History, Cookies);

21
• Presentations (e.g., PowerPoint, Corel Presentations);

22
• Network Access and Server Activity Logs;

23
• Project Management Application Data;

24
• Computer Aided Design/Drawing Files;

25
• Backup and Archival Files (e.g., Veritas, Zip, .GHO); and

26
• Cloud based or other virtualized ESI, including application, infrastructure and data.

27

28

B. "**Native File(s)**" or "**Native Format**" means and refers to ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of) the application in which such ESI is normally created, viewed, modified and/or as used by the producing party in the normal course of its business.

C. "**Metadata**" means and refers to information embedded in or associated with a Native File (i) that does not constitute the primary content region of the file; (ii) that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File that describes the characteristics, origins, usage and/or validity of the electronic file; and/or (iii) that is generated automatically by the operation of a computer or other information technology system when a Native File is created, **modified**, transmitted, deleted or otherwise manipulated by a user of such system.

D. "**Database**" means or refers to a set of related files that is created and managed by a Database Management System or DBMS.

E. "**Database Management System**" or "**DBMS**" means and refers to software that controls the organization, storage, retrieval, security and integrity of data in a database.

F. "**Static Image**" means or refers to a representation of ESI produced by scanning paper documents or converting a Native File to create a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

G. "**Documents**" means or refers to any electronic or tangible medium from which information can be obtained and /or translated into reasonably usable form, and shall have the same meaning as used in the Federal Rules of Civil Procedure, including without limitation writings, computer file, drawings, graphs, charts, photographs, sound recordings, images, video and other data, data records or data.

H. "**Load/Unitization File**" means or refers to an electronic file containing information identifying a set of paper-scanned images or processed ESI and containing (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, including attachments,

associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

I. "**OCR**" means or refers to the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

J. "**Extracted Text**" means or refers to the user-created text that can be electronically extracted from a native file without the use of OCR. Extracted text is favored over OCR.

K. "**Receiving Party**" means or refers to the party receiving production of Documents in response to any request for production of document(s) pursuant to Federal Rule of Civil Procedure 34(a) or pursuant to any initial production of documents identified in the party's Rule 26(a) disclosures.

L. "**Producing Party**" means or refers to the party producing Documents in response to any request for production of documents pursuant to Federal Rule of Civil Procedure 34(a) or pursuant to any initial production of documents identified in the party's Rule 26(a) disclosures.

M. "**Bates Number**" means or refers to an identifier consisting of a two to seven letter prefix, associated with the Producing Party's name, followed by numbers (e.g., ABCD000000001). Each page in the production is assigned a unique, incremental Bates number. The prefix must be the same for all pages from the same Producing Party unless good reason exists for the Producing Party to use a different prefix.

N. "**Media**" means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

**EXHIBIT B**

**METADATA**

| Field Name | Populated For Email, Efile, Calendar, Contact, or Paper ("ESI Items" collectively refers to Email, Efile, Calendar, and Contact) ("All Items" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
| BegBates | All Items | First Bates number (production number) of an item |
| EndBates | All Items | Last Bates number (production number) of an item **The EndBates field should be populated for single-page items. |
| AttachRange | All Items | Bates number of the first page of the parent item to the Bates number of the last page of the last attachment "child" item |
| BegAttach | All Items | First Bates number of attachment range (i.e., Bates number of the first page of the first attachment) |
| EndAttach | All Items | Last Bates number of attachment range (i.e., Bates number of the last page of the last attachment) |
| PgCount | All Items | Number of pages in the item |
| Custodian | All Items | Name of person from whose files the item is produced |
| CustodianOther | All ESI Items | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | All ESI items | Size (in kilobytes) of the source native file |
| SourceFilePath | All ESI items | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | All ESI items | The MD5 or SHA-1 hash value of the file. |
| NativeFileLink | All ESI items | Hyperlink path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| SourceParty | All Items | Name of party producing the item |
| RecordType | All Items | Indicates item type (e.g., paper, email, edoc, image, attachment) |
| Application | All ESI items | Indicates software application that generated the ESI item (e.g., Outlook, word, etc.) |
| FileExtension | All ESI items | Indicates file extension of source native file |
| DateSent (mm/dd/yyyy) | Email, Calendar | Date email or calendar item was sent |
| LastModDate (mm/dd/yyyy) | All ESI items | Date the item was last modified |
| TimeSent (hh:mmAM/PM) | Email, Calendar | Time email or calendar item was sent |
| DateReceived | Email, Calendar | Date email or calendar item was received |

| Field Name | Populated For Email, Efile, Calendar, Contact, or Paper ("ESI Items" collectively refers to Email, Efile, Calendar, and Contact) ("All Items" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
| TimeReceived | Email, Calendar | Time email or calendar item was received |
| ParentBates | All Items | First Bates number for the parent item of a family **Will not be populated for items that are not part of a family. Should be populated in each record representing an attachment "child" item. |
| AttachBates | Email | First Bates number of each "child" attachment. **Can be more than one Bates number listed depending on the number of attachments. Should be populated in each record representing a "parent" document. |
| To | Email, Calendar | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | Email, Calendar | The name and SMTP email address of the sender of the email or calendar item |
| CC | Email, Calendar | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | Email, Calendar | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| AttachCount | All Items | Number of attached, embedded or grouped items |
| AttachName | All ESI items | The file name(s) of the attached items |
| Importance Ranking | Email, Calendar | Level of importance/sensitivity of messages or calendar items |
| Follow- Up Flags | Email, Calendar | Tracks responses to messages or calendar items that were sent and follow up on messages or calendar that were received. |
| Status as READ or UNREAD | Email, Calendar | Whether or not a message or calendar item was READ or UNREAD. |
| MessageID | Email, Calendar | The unique message identifier generated by the source email or calendar system |
| PrevMessageID | Email | The MessageID of the previous message in the email thread (the message that was replied to or forwarded) |
| AgentID | All ESI items | The name and SMTP email address of any delegate who created the item "on behalf" of the owner/author |
| DateCreated (mm/dd/yyyy) | All ESI items | Date the item was created |
| TimeCreated (hh:mm AM/PM) | All ESI items | Time the item was created |
| ModifiedBy | All ESI items | Person who last modified or saved the item, as populated in the metadata or document properties of |

| Field Name | Populated For Email, Efile, Calendar, Contact, or Paper ("ESI Items" collectively refers to Email, Efile, Calendar, and Contact) ("All Items" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
| | | the native file |
| LastModTime (hh:mm AM/PM) | All ESI items | Time the item was last modified |
| LastAccessDate (mm/dd/yyyy) | All ESI items | Date the item was last accessed |
| LastAccessTime (hh:mm AM/PM) | All ESI items | Time the item was last accessed |
| FileName | All ESI items | The filename of the source native file for an ESI item |
| Title | Efile | Any value populated in the Title field of the source file metadata or item properties |
| Subject | All ESI items | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item) |
| Author | All ESI items | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | All Items | Full relative path to the current location of the document-level text file specified in Paragraph F(1)(iii)(B) of this ESI Stipulation and Order. |
| Redacted | All Items | User-generated field that will indicate redactions.  "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Confidentiality | All Items | Indicates if item has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
| ContactNames | Contact | All names associated with contact entry (such as first, last, middle, nicknames, prefix, suffix, etc.) |
| ContactEmail | Contact | All email addresses associated with the contact record |
| ContactEmailAlias | Contact | For example, the name or reference that will display in the email address lines in place of the actual email address |
| ContactPhone | Contact | All phone numbers associated with the contact entry |
| Contact Mail | Contact | All physical mailing addresses associated with the contact entry |
| Contact URL | Contact | All URL addresses associated with the contact entry |
| ContactNotes | Contact | All free text entered by user that is associated with and reflected in contact entry |
| ContactAssociations | Contact | Identification of other contact entries associated with and reflected in the contact entry, such as contact |

| Field Name | Populated For Email, Efile, Calendar, Contact, or Paper ("ESI Items" collectively refers to Email, Efile, Calendar, and Contact) ("All Items" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
|  |  | entry's assistant or manager |
| ContactTracking | Contact | Track contacts made with the person or entity shown in the contact entry, such as date and/or time and type of contact |
| ContactFollowup | Contact | Tracks responses to contact entries that were sent and follow up on contact entries that were received |
| ContactCategories | Contact | Specific fields designed to sort, filter or classify the contact entry |
| CalendarStartDate | Calendar | Calendar meeting/appointment start date |
| CalendarStarttime | Calendar | Calendar meeting/appointment start time |
| CalendarParticipants | Calendar | Calendar meeting/appointment attendees/participants/recipients |
| CalendarNotes | Calendar | All free text entered by user that is reflected in the body text section of the calendar entry |
| CalendarCategories | Calendar | Specific fields designed to sort, filter or classify calendar entries |
| CalendarResponse | Calendar | The acceptance response given by each attendee/participant/recipient to a proposed appointment or meeting invitation (such as accept, tentative or decline) |
| RFPNumber | Paper | Identifier used to reflect the document request to which the item is responsive |
| Timezone | All ESI Items |  |
| HiddenData | All ESI Items |  |
| InternetMsgID | All ESI Items | Globally unique identifier for a message, which typically includes message ID and a domain name (for instance, abcde123@abcde.123.net) |