Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
AXLER GOLDICH, LLC
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 207-2920
mgoldich@axgolaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | No. 5:16-cv-00523-RMW<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge:  Hon. Ronald M. Whyte<br>Ctrm.:  6<br>Date:   October 7, 2016<br>Time:   9:00 a.m. |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT.................................................................................................1

ARGUMENT ......................................................................................................................2

I.  STANDARD OF REVIEW................................................................................................2

II.  PLAINTIFFS ADEQUATELY ALLEGE AFFIRMATIVE MISREPRESENTATION
CLAIMS UNDER THE UCL'S FRAUDULENT PRONG, THE FAL, THE CLRA,
AND THE OTHER STATE CONSUMER STATUTES.......................................................3

    A.  Plaintiffs allege actionable misrepresentations – as already found by a
California state court judge in the parallel proceeding...................................3

    B.  Plaintiffs adequately allege that Seagate made material misrepresentations
about the drives' reliability and suitable uses...............................................4

        1.  Six months ago, the *Pozar* court disagreed with Seagate's identical
argument on identical advertising statements..................................4

        2.  There is no basis for Seagate's argument that statements containing
the terms "performance" and "reliable" are necessarily puffery....................5

        3.  The complaint alleges additional, specific misrepresentations that are
sufficient to state a claim – and which Seagate fails to address.....................7

III.  PLAINTIFFS ADEQUATELY ALLEGE OMISSION CLAIMS UNDER THE
UCL'S FRAUDULENT PRONG, THE FAL, THE CLRA, AND THE OTHER
STATE CONSUMER STATUTES. ......................................................................................9

    A.  Plaintiffs' allegations give rise to a duty to disclose the hard drive defect. ...............9

    B.  Plaintiffs need not allege Seagate's knowledge of the defect – though it
is plain. .......................................................................................................10

    C.  Plaintiffs allege a systemic latent defect – and they are not required to
allege its mechanical cause when the existence has been alleged
with specificity. ..........................................................................................12

        1.  The state court held that a defect was adequately alleged..........................13

        2.  Plaintiffs are not required to plead the mechanical details of
the defect. ....................................................................................13

        3.  Even if plaintiffs were required to allege a mechanical cause of
the defect – which they are not – their omissions claims would
still survive. .................................................................................18

    D.  Plaintiffs allege that Seagate's omission of this systemic latent defect is
material to consumers...................................................................................18

IV.  PLAINTIFFS ALSO ADEQUATELY ALLEGE CLAIMS UNDER THE UCL'S
UNLAWFUL AND UNFAIR PRONGS. ..............................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.      PLAINTIFFS' EXPRESS WARRANTY CLAIMS ARE WELL PLED. ...........................20

VI.     PLAINTIFFS' IMPLIED WARRANTY CLAIMS ARE WELL PLED. ...........................23

VII.    THE CLRA CLAIMS ARE NOT DEFECTIVE.................................................................24

VIII.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE ALSO WELL PLED.................25

CONCLUSION ...........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Aguilar v. General Motors LLC*,
    No. 1:13-cv-00437-LJO, 2013 WL 5670888 (E.D. Cal. Oct. 16, 2013) ................................ 14

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-CV-01196-WHO, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ............................... 3

*Anunziato v. eMachines*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ......................................................................... 6, 7, 8

*In re Apple In-App Purchase Litig.*,
    855 F. Supp. 2d 1030 (N.D. Cal. 2012) .................................................................................. 24

*Arnold v. Dow Chemical Co.*,
    91 Cal. App. 4th 698 (2001) .................................................................................................. 24

*Aryeh v. Canon Business Solutions, Inc*,
    55 Cal. 4th 1185 (2013) ......................................................................................................... 24

*Asghari v. Volkswagen Grp. of Am., Inc.*,
    42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) ................................................................... 13, 14

*ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
    402 F.3d 700 (6th Cir. 2005) ................................................................................................. 17

*Baba v. Hewlett-Packard Co.*,
    No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal., June 16, 2010) ..................................... 11

*Berenblat v. Apple, Inc.*,
    Nos. 08-4696 JF, 09-1649 JF, 2010 WL 1460297 (N.D. Cal. 2010) ..................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 2

*Brothers v. Hewlett-Packard Co.*,
    No. C-06-02245 RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) .................................. 20

*Brothers v. Hewlett-Packard Co.*,
    No. C-06-02245 RMW, 2007 WL 485979 (N.D. Cal. Feb 12, 2007) ..................................... 20

*C.I.R. v. Bosch's Estate*,
    387 U.S. 456 (1967) ................................................................................................................. 3

*Cartwright v. Viking Industries, Inc.*,
    249 F.R.D. 351 (E.D. Cal. 2008) ........................................................................................... 24

*Carvalho v. Equifax Info. Servs., LLC,*
    629 F.3d 876 (9th Cir. 2010) ...................................................................................... 3

*Chapman v. Skype, Inc.,*
    220 Cal. App. 4th 217 (2013) .................................................................................... 4

*Cholakyan v. Mercedes-Benz USA, LLC,*
    796 F. Supp. 2d 1220 (C.D. Cal. 2011) ......................................................... 13, 14

*Collins v. eMachines, Inc.,*
    202 Cal. App. 4th 249 (2011) .................................................................................. 18

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,*
    911 F.2d 242 (9th Cir. 1990) .................................................................................... 5

*Cortez v. Purolator Air Filtration Prod. Co.,*
    999 P.2d 706 (Cal. 2000) .......................................................................................... 10

*Dana v. Hershey Company, et al.,*
    No. 15-CV-04453-JCS, 2016 WL 1213915 (N.D. Cal. Mar. 29, 2016) .............. 9, 10

*Day v. AT&T Corp.,*
    63 Cal. App. 4th 325 (1998) ...................................................................................... 9

*Decoteau v. FCA,*
    No. 2:15-cv-00020-MCE, 2015 WL 6951296 (E.D. Cal. Nov. 9, 2015) .......... 15, 16, 17

*Donohue v. Apple, Inc.,*
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ............................................................... 10, 19

*In re Easysaver Rewards Litigation,*
    737 F. Supp. 2d 1159 (S.D. Cal. 2010) ............................................................... 24, 25

*Ehrlich v. BMW of N. Am., LLC,*
    801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................................................... 13

*Elias v. Hewlett-Packard Co.,*
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) .................................................................... 3

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) .................................................................................. 2

*Falk v. Gen. Motors Corp.,*
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................................. 13

*Frenzel v. Aliphcom,*
    76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014) ............................................................ 20

*Gilbert Financial Corp. v. Steelform Contracting Co.,*
    82 Cal. App. 3d 65 (1978) ........................................................................................ 24

*Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*,
   No. 04CV147 WQH, 2007 WL 1994057 (S.D. Cal. Apr. 18, 2007) ....................................25

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
   No. 3:11-cv-01576-H, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012).................. 12, 13, 21, 24

*In re HP Inkjet Printer Litig.*,
   No. C 05-6580 JF, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006).........................................25

*Jekowsky v. BMW of N. Am., LLC*,
   No. 13-02158 JSW, 2013 WL 6577293 (N.D. Cal. Dec. 13, 2013).....................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...........................................................................................2

*Keilholtz v. Superior Fireplace Co*,
   No. C 08-00836 CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) ....................................25

*King v. Order of Commercial Travelers of America*,
   333 U.S. 153 (1948) ...........................................................................................................3

*Lima v. Gateway, Inc.*,
   710 F. Supp. 2d 1000 (C.D. Cal. 2010) ........................................................................4, 5, 8

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ............................................................................................19

*Long v. Graco Children's Prod. Inc.*,
   No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ............................11

*Long v. Hewlett-Packard, Co.*,
   No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) ................................6, 20

*Mazza v. Am. Honda Motor*,
   666 F.3d 581, 587 (9th Cir. 2012) ................................................................................10, 11

*McKell v. Washington Mutual, Inc.*,
   142 Cal. App. 4th 1457 (2006) ..........................................................................................19

*MGM Grand Hotel, Inc. v. Imperial Glass Co.*,
   533 F.2d 486 (9th Cir. 1976) ...............................................................................................3

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014)........................................................................21, 23, 24

*Norcia v. Samsung Telecomm.*,
   No. 14-CV-00582-JD, 2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ..................................9

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008).............................................................................6, 10

*Oregel v. Am. Isuzu Motors, Inc.*,
  90 Cal. App. 4th 1094 (2001) ................................................................................. 21

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n*,
  237 Cal. App. 4th 812 (2015) ................................................................................. 10

*Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ................................................................................. 25

*People v. Duz-Mor Diagnostic Lab., Inc.*,
  68 Cal. App. 4th 654 (1998) ................................................................................. 10

*Philippine Nat'l Oil Co. v. Garrett Corp.*,
  724 F.2d 803 (9th Cir. 1984) ................................................................................. 21

*Philips v. Ford Motor Co.*,
  No. 14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) .................................. 25

*Pozar v. Seagate Technology LLC*,
  No. CGC – 15-547787, 2016 WL 4562694
  (Cal. Super. Feb. 10, 2016) ........................................................ 3, 4, 5, 6, 7, 10, 13, 17

*Punian v. Gillette Co.*,
  No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) ........................... 2, 15

*Rice v. Sunbeam Prods., Inc.*,
  No. CV 12-7923-CAS, 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ...................................... 19

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
  144 Cal. App. 4th 785 (2006) ................................................................................. 21

*Rossetti v. Stearn's Prod., Inc.*,
  No. CV 16-1875-GW, 2016 WL 3277295 (C.D. Cal. June 6, 2016) .................................... 24

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ................................................................................. 19

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (2015) ............................................................................ 9, 19

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ................................................................................... 2

*In re Sony HDTV Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................................... 6, 24

*In re Sony VAIO Computer Notebook Trackpad Litigation*,
  No. 09-cv-2109 BEN, 2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) .................................... 24

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ....................................................................................7

*Sumer v. Carrier Corp.*,
   No. 14-cv-04271-VC, 2015 WL 758314 (N.D. Cal. Feb. 20, 2015)...................................6, 20

*Summit Tech, Inc. v. High-Line Medical Instruments, Co.*,
   933 F. Supp. 918 (C.D. Cal. 1996) ...............................................................................6

*Tietsworth v. Sears Roebuck and Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .........................................................................19

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...............................................................................................10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
   *& Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) .............................................................14, 19, 20, 24

*Valencia v. Volkswagen Grp. of Am. Inc.*,
   119 F. Supp. 3d 1130 (N.D. Cal. 2015)..........................................................................14

*Vigil v. General Nutrition Corp.*,
   No. 15-cv-0079 JM, 2015 WL 2338982 (S.D. Cal. May 13, 2015)........................................5

*W.L. Gore & Assocs., Inc. v. Totes, Inc.*,
   788 F. Supp. 800 (D. Del. 1992) ..................................................................................7

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ......................................................................................10

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ...................................................................................3, 4

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .....................................................................................10

*Woods v. Google, Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012)...........................................................................4

*Xavier v. Phillip Morris USA*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011).......................................................................23, 24

*Yagman v. General Motors Co.*,
   No. cv-14-4696-MWF, 2014 WL4177295 (C.D. Cal. Aug. 22, 2014) ......................15, 16, 17

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...................................................................................2, 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

810 ILL. COMP. STAT. .......................................................................................................20

Cal. Bus. & Prof. Code § 17200 ................................................................................. *passim*

Cal. Bus. & Prof. Code § 17500 ................................................................................. *passim*

CAL. CIV. CODE § 1770 ............................................................................................. *passim*

CAL. CIV. CODE § 1793.2(d)(1) .......................................................................................21

CAL. COM. CODE § 2719(2) ...........................................................................................20

FLA. STAT. § 672.719(2) ................................................................................................20

MASS. GEN. LAWS CH. 106, § 2-719 ...............................................................................20

N.Y. U.C.C. § 2-719(2) ...................................................................................................20

S.C. CODE ANN. § 36-2-719(2) .......................................................................................20

S.D. CODIFIED LAWS § 57A-2-719(2) .............................................................................20

TENN. CODE ANN. § 47-2-719(2) ...................................................................................20

TEX. BUS. & COM. CODE § 2.719(B) ..............................................................................20

1

## SUMMARY OF ARGUMENT

2

Consumers invest in hard drives to have a place to safely store important personal files, such

3

as their most precious family memories. Seagate advertises its drives as reliable and durable, with

4

"consistent quality and performance," suitability for RAID and NAS configurations, and failure rates

5

of less than 1%. None of this is true. Instead, staggering failure rates as high as 47.2% have been

6

reported – and consumers have experienced overwhelming data loss as a result. Consumers

7

purchasing Seagate's drives as a result of its false advertising have experienced economic loss and

8

Seagate should be required to make restitution to them.

9

Instead of taking responsibility for its defective drives, Seagate asserts that this Court should

10

disregard its advertisements as mere puffery. But a state court judge has already rejected this

11

argument in refusing to dismiss almost identical consumer claims based on the same advertising,

12

because it is sufficiently specific in context, as required by the applicable case law. *See* Section II.

13

In addition to affirmative misrepresentation claims, plaintiffs also adequately allege that

14

Seagate failed to disclose material facts about the drives, namely that the drives have a defect, are not

15

reliable or suitable for RAID and NAS, have inaccurate published failure rates, and do not last as

16

long as comparable hard drives. First, plaintiffs adequately allege a duty to disclose based on Sea-

17

gate's affirmative misrepresentations. Second, the statutes at issue do not require plaintiffs to allege

18

Seagate's knowledge of the defect – though plaintiffs do, as illustrated by the fact that Seagate itself

19

has responded to online consumer complaints regarding drive failures. Third, contrary to Seagate's

20

incorrect assertion, plaintiffs are not required to allege the mechanical cause of the defect when its

21

existence has been alleged with specificity – including the experiences of the plaintiffs, thousands of

22

complaining consumers online, and the findings of the Backblaze report. *See* Section III.

23

Plaintiffs' warranty claims are also well pled. Plaintiffs adequately allege that Seagate's

24

express warranty fails of its essential purpose, because Seagate is simply replacing defective drives

25

with other defective drives. *See* Section V. And plaintiffs' implied warranty claims do not fail for

26

lack of privity, because plaintiffs are intended third party beneficiaries. *See* Section VI.

27

Lastly, plaintiffs' CLRA venue affidavits are sufficient and their claims timely under the

28

discovery rule. *See* Section VII.

Seagate's motion to dismiss should be dismissed in its entirety.

**ARGUMENT**

**I.    Standard of Review**

In ruling on Seagate's motion to dismiss under 12(b)(6), the Court must accept the allegations of the complaint as true and construe them in the light most favorable to plaintiffs.[1] Dismissal is "inappropriate unless the plaintiffs' complaint fails to 'state a claim to relief that is plausible on its face.'"[2] Moreover, dismissal "with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment."[3] Plaintiffs respectfully request leave to amend if necessary.

Because plaintiffs' warranty claims do not sound in fraud, the "strictures of Rule 8 apply."[4] As to those claims, the complaint need not contain "detailed factual allegations."[5] Allegations which "raise a right to relief above the speculative level" will suffice.[6] Moreover, all of plaintiffs' claims that sound in fraud satisfy Rule 9(b). As the Ninth Circuit has explained, Rule 9(b) requires allegations to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[7] To that end, plaintiffs must allege the "the who, what, when, where, and how of the misconduct alleged."[8] That is exactly what plaintiffs have done.

Plaintiffs allege the who (Seagate),[9] the what (representations and material omissions regarding the performance and reliability of the drives,[10] despite an annualized failure rate as high as 47.2%[11]), the when (since the drives were released in 2011),[12] the where (product brochures, data

---

[1] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). Internal quotations and citations omitted and emphasis added unless otherwise indicated.

[2] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[4] *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, *14 (N.D. Cal. Aug. 20, 2015). *See, e.g.,* Second Amended Consolidated Complaint, ECF No. 62 ("Complaint"), ¶¶ 10-11.

[5] *Twombly*, 550 U.S. at 555.

[6] *Id.* at 555-56.

[7] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[8] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

[9] Complaint, ¶ 3.

[10] *Id.* at ¶¶ 49-63 & Exs. A-D.

[11] *Id.* at ¶¶ 5, 92.

[12] *Id.* at ¶ 49.

sheets and webpages),[13] and the how (consumers' reasonable reliance on deceptive statements caused economic loss in violation of various state laws).[14] Plaintiffs satisfy Rule 9(b).

## II.    Plaintiffs Adequately Allege Affirmative Misrepresentation Claims under the UCL's Fraudulent Prong, the FAL, the CLRA, and the Other State Consumer Statutes.

As the Ninth Circuit has explained with respect to the UCL, FAL, and CLRA, the "standard for all three statutes is the 'reasonable consumer' test, which requires a showing that members of the public are likely to be deceived by the business practice or advertising at issue."[15] Seagate does not specifically address plaintiffs' claims under the laws of New York, Florida, Massachusetts, Illinois, Tennessee, South Carolina, Texas, or South Dakota. Rather, it asserts only that these claims be treated as those under California law.[16]

### A.    Plaintiffs allege actionable misrepresentations – as already found by a California state court judge in the parallel proceeding.

As stated by the Ninth Circuit, in a diversity case like this one, the duty of the federal court "is to ascertain and apply the existing California law."[17] While federal courts are not bound by trial court decisions, the Ninth Circuit does regard them as persuasive authority.[18]

Notably absent from Seagate's brief is that the state trial court in *Pozar v. Seagate Technology LLC* has already decided the very issue before this Court. In *Pozar*, the plaintiffs brought the same California consumer protection claims pursued here, based on the same advertising and drive defects.[19] Seagate demurred, arguing that the plaintiffs did not allege actionable affirmative misrepresentations. The state court disagreed. Rather, it held that the plaintiffs had sufficiently alleged that Seagate made "specific statements about the reliability of its hard drives" and that

---

[13] *Id.* at ¶¶ 49-63 & Exs. A-D.

[14] *E.g., id.* at ¶¶ 8, 295.  *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2013 WL 5407039, *4 (N.D. Cal. Sept. 25, 2013) (collecting cases).

[15] *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132 (N.D. Cal. 2013) (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

[16] Def's Mot. at p. 7 n.1.

[17] *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010).

[18] *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 (9th Cir. 1976) (citing *King v. Order of Commercial Travelers of America*, 333 U.S. 153 (1948)); *see also C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967).

[19] No. CGC – 15-547787, 2016 WL 4562694, *1 (Cal. Super. Feb. 10, 2016).

"reasonable consumers could be deceived" by these affirmative misrepresentations.[20] This Court should reach the same conclusion.

> **B.    Plaintiffs adequately allege that Seagate made material misrepresentations about the drives' reliability and suitable uses.**
>
> > **1.    Six months ago, the *Pozar* court disagreed with Seagate's identical argument on identical advertising statements.**

As stated by *Pozar*, Seagate has the burden to show that allegations of the complaint "compel the conclusion as a matter of law that consumers are not likely to be deceived."[21] Pure falsity is not required. Whether advertising statements are misleading is a question of fact that is rarely appropriate for a motion to dismiss as a matter of law.[22] Seagate claims that its advertising statements are "subjective representations about the drives that are neither quantifiable nor provably true or false"[23] and so are non-actionable puffery. This argument failed in *Pozar*, and it should fail here.

The *Pozar* court found that Seagate's advertising statements "are sufficiently concrete and related to the purposes of hard drives that reasonable consumers could be deceived by them."[24] In fact, "Seagate made fairly specific statements about the reliability of its hard drives – *e.g.*, even when life happens to your computer, your memories are always protected. A reasonable person might rely on that statement when choosing one hard drive or another."[25] The *Pozar* court further found certain alleged representations were not mere puffery. Now Seagate points to the *same* advertising statements in this case[26] and argues *again* that such statements are too general. Specifically, Seagate challenged the following statements in *Pozar*:

- "trusted performance, reliability, simplicity and capacity";
- "[p]roven quality and performance";

---

[20] *Id.* at *4.

[21] *Id.* (citing *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 226-27 (2013)).

[22] *Id.* at *3 (quoting *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D. Cal. 2010)); *see also Williams*, 552 F.3d at 939 (it is the "rare situation" that warrants granting a motion to dismiss based on the "puffery" defense); *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1197 (N.D. Cal. 2012).

[23] Def's Mot. at 15.

[24] 2016 WL 4562694, at *4 (citing *Chapman*, 220 Cal. App. 4th at 226-27).

[25] *Id.*

[26] *E.g.*, Def's Mot. at 15.

- the hard drives have "become the world's most popular family of drives with consistent quality and performance-enhancing innovations";
- "[y]our digital life safe and sound'";
- the hard drives are "the simple, one-click way to protect and share your entire digital life"; and
- "[l]ife is full of amazing moments you want to remember forever. The Backup Plus desktop lets you set up easy automatic backups of all your stuff, so you know that even if 'life happens' to your computer, your memories are always protected." [27]

The California state court already found these to be sufficient.[28] This Court should decide the same.

### 2.  There is no basis for Seagate's argument that statements containing the terms "performance" and "reliable" are necessarily puffery.

Seagate argues that because some of its advertising statements contain the terms "performance" and "reliable," the statements are necessarily puffery. This argument fails. Courts examine advertising statements in their full context to determine whether a reasonable consumer would rely on them, not by fixating on certain words as Seagate invites the Court to do.[29]

Not only did *Pozar* explicitly find that Seagate's statements containing the words "performance" and "reliable" survived the demurrer, but other courts have unequivocally rejected the argument that such phrases automatically amount to nonactionable puffery. In *Lima,* in denying a motion to dismiss, the court held that statements "cannot be considered in isolation" and that individually non-actionable statements are actionable when "they contribute to the deceptive context of the advertising as a whole."[30] Likewise, in *Vigil v. General Nutrition Corp.*, the court refused to look at the words "premium" and "maximum" in a vacuum, reasoning that they need to be examined in context to determine whether the *entire* "statement is provably false" or the "packaging is deceptive as a whole."[31]

Seagate's advertisements and promotional statements are actionable because they are all either "specific statements about the reliability of its hard drives"[32] or contribute to the deceptive

---

[27] 2016 WL 4562694, at *1.

[28] *Compare Pozar*, 2016 WL 4562694 *with* Complaint, ¶¶ 55, 67.

[29] "Puffing has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

[30] 710 F. Supp. 2d at 1007.

[31] *Vigil v. General Nutrition Corp.*, No. 15-cv-0079 JM, 2015 WL 2338982, *9 (S.D. Cal. May 13, 2015).

[32] *Pozar*, 2016 WL 4562694, at *4.

context of the advertising as a whole. For instance, Seagate: (1) advertised its drives as having an annualized failure rate ("AFR") of less than 1% and a read error rate of 1 per 10E14 bits read; (2) claimed that its "AcuTrac technology enables reliable read/write performance even in high touch operating environments"; (3) assured consumers that they could "[r]est easy knowing your drive delivers dependable performance with Seagate® AcuTrac™ servo technology"; and (4) stated that "even if 'life happens' to your computer, your memories are always protected."[33] Appearing alongside these specific affirmations are statements such as "proven quality and performance" and "consistent quality and performance-enhancing innovations and features."[34] All of these statements are actionable because, taken together and in their overall context, they are "sufficiently concrete and related to the purposes of hard drives that reasonable consumers could be deceived by them."[35]

The case law Seagate relies upon is distinguishable. Seagate relies heavily on *Anunziato v. eMachines* for the proposition that the phrases "performance," "reliability," and "long useful life" are not actionable.[36] *Anunziato* does not stand for this blanket proposition, and Seagate does not cite a single case that does. In fact, the statements that the *Anunziato* court found to be puffery are very different than Seagate's advertising statements.[37]

*Anunziato* found classic examples of "[g]eneralized, vague, and unspecified assertions" to be puffery, such as: "[w]e are sure that you'll be pleased with the outstanding quality, reliability, and

---

[33] Complaint, ¶¶ 55, 67, 72.

[34] *E.g.,* Complaint, ¶¶ 55-58, 67-69.

[35] *Pozar*, 2016 WL 4562694, at *4.

[36] Def's Mot. at 15-17 (citing 402 F. Supp. 2d 1133 (C.D. Cal. 2005)).

[37] 402 F. Supp. 2d at 1140.  Seagate's other cases are also inapposite.  *See In re Sony HDTV Litig.,* 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) ("plaintiffs have failed to identify advertisements, when and where they were shown, or why they were untrue or misleading"); *Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("superb, uncompromising quality" and "faster, more powerful" than the competition were too generalized to be actionable); *Long v. Hewlett-Packard, Co.,* No. C 06-02816 JW, 2007 WL 2994812, *6 (N.D. Cal. July 27, 2007) (three advertising statements: that the laptop computers were "notebooks," that they are a "reliable mobile computing solution," and that the user could "do more on the move" were too vague to be actionable); *Summit Tech, Inc. v. High-Line Medical Instruments, Co.,* 933 F. Supp. 918, 931 (C.D. Cal. 1996) (statement that previously-owned lasers were "perfectly reliable" constituted puffery but permitting other false and misleading statements to proceed).  *See* Def's Mot. at 15-16.  Lastly, the discussion in *Sumer v. Carrier Corp.,* No. 14-cv-04271-VC, 2015 WL 758314, *2 (N.D. Cal. Feb. 20, 2015), is too conclusory to be entitled to any persuasive weight.

performance of your new notebook."[38] The statements Seagate made here are drastically different because they are considerably more detailed, specific, and definite. In addition to the statements discussed above, Seagate touted its drives as incredibly precise and reliable. Specifically, it stated:

> Seagate engineers had to pack 340,000 hard drive tracts into the width of a single inch [in order to fit a TB of storage on each platter]. This means that, when reading and writing data, the read-write head needs to accurately follow a track that is a mere 75 nanometers wide. That's about 500 times smaller than the period at the end of this sentence.[39]

This is not puffery, nor a "subjective representation about a general characteristic" of the drives. This is a specific statement meant to impress upon the consumer that the read-write head of the hard drive is accurate and precise – more like the statement in *Anunziato* that the computer uses "brand-name components", which the court found to be actionable.[40] Further, statements that the drives have undergone "*years* of trusted performance"[41] and provide "[r]eliable performance, even in tough environments . . . like an all-in-one PC with the music turned up,"[42] are akin to the phrase "most stringent quality control tests" – which the *Anunziato* court found to be "actionable" and "*not* mere puffery."[43] As explained by the *Pozar* court, these are statements that a reasonable consumer would rely on when making a purchase, and are sufficient to state a claim.[44]

### 3. The complaint alleges additional, specific misrepresentations that are sufficient to state a claim – and which Seagate fails to address.

The complaint goes beyond the statements presented in *Pozar*, which are sufficient in themselves, and sets forth further statements that are undeniably factual in nature. Notably, the complaint alleges that Seagate misrepresented the AFR and read error rate of its drives as being less than 1% and 1 per 10E14 bits read, respectively.[45] This is a "specific and measurable advertisement

---

[38] 402 F. Supp. 2d at 1139.

[39] Complaint, ¶ 51.

[40] 402 F. Supp. 2d at 1141-42.

[41] Complaint, ¶ 58.

[42] *Id.* at ¶ 53 ("Reliable performance, even in tough environments, thanks to Seagate AcuTrac™ servo technology" and the AcuTrac™ technology "reliably and accurately [follows the drive's] nano tracks even in challenging operating environments, like an all-in-one PC with the music turned up.").

[43] 402 F. Supp. 2d at 1140-41.

[44] *Pozar*, 2016 WL 4562694, at *3-4.

[45] Complaint, ¶¶ 72, 81, 109.

claim of product superiority based on product testing and, as such, is not puffery."[46] Indeed, Seagate

does not contend that it is puffery, implicitly admitting its sufficiency in that respect. Instead, it

asserts – without legal support – that a reasonable consumer would not rely on this information

before purchasing a drive, implying that the Court should disregard the allegation.[47] However,

plaintiffs specifically allege: (1) that they viewed and relied on the AFR and read error rate data;[48]

(2) that a reasonable consumer, regardless of whether they knew the precise technical definitions of

AFR and read error rate, would understand what the data means and would find it material;[49] and

(3) that the data is false, misleading, and likely to deceive a reasonable consumer.[50] Indeed, the

complaint alleges how and why a reasonable consumer would understand the data, find it material,

and be deceived by it.[51] Whether the data is, in fact, material and likely to deceive a reasonable

person is a question of fact not suitable for resolution on a motion to dismiss.[52]

The complaint also sets forth how Seagate deceptively advertised that the drives are

"designed for," "perfect for," and "best-fit" for RAID and NAS. In reality, they are not designed for

RAID-5 or suitable for any type of RAID or NAS array.[53] In its motion, Seagate claims these

statements are not actionable because Seagate did not advertise that the drives were "designed for,"

"perfect for," and "best-fit" for *all* RAID and *all* NAS."[54] Seagate has the standard backwards – it

should have identified *which* RAID and NAS arrays are actually "perfect for" and "best-fit" for the

---

[46] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997); *W.L. Gore & Assocs., Inc. v. Totes, Inc.*, 788 F. Supp. 800, 809 (D. Del. 1992) (numerical comparison that product is seven times more breathable "gives the impression that the claim is based upon independent testing" and "is not a claim of general superiority or mere puffing"); *Anunziato*, 402 F. Supp. 2d at 1140-41.

[47] Def's Mot. at 18. Seagate is attempting to have it both ways – its advertising is either insufficiently based in fact to be misleading or it is *too much* based in fact, to the point that consumers would not rely on it. Seagate is wrong on both counts.

[48] Complaint, ¶¶ 153-154, 178-179, 192-193, 227-229.

[49] *Id*. at ¶¶ 79-81.

[50] *Id*. at ¶¶ 109, 281-282. Despite these detailed allegations and the entire section dedicated to the Backblaze report, Seagate inexplicably claims that plaintiffs fail to allege that the data is false or misleading and that a reasonable consumer would find it misleading. Def's Mot. at 18. Seagate's contention is patently false.

[51] Complaint, ¶¶ 79-80, 80 n.3, 281-282, 287-288, 458, 536.

[52] *Lima*, 710 F. Supp. 2d at 1007.

[53] Complaint, ¶¶ 6, 59-64, 110-115,

[54] Def's Mot. at 19.

drives, and its failure to do so is precisely the type of misleading statement contemplated by courts. At best, these statements are "perfectly true statement[s] couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, [which] is actionable…."[55] A potential consumer who looks at a package stating the product is "designed for, perfect for, and the best fit for RAID and NAS," *without distinction* as to type of RAID or NAS, reasonably assumes the hard drives were made for RAID and NAS, *without distinction*.

Seagate also ignores other statements it made regarding suitability of the drives for all RAID and NAS arrays. Over and over again, Seagate creates the impression that the drives are suitable for any and all varieties of set ups, without exception. As alleged in the complaint, Seagate's website states that the Barracuda drive is the "*one drive for every desktop system need*, supported by 30 years of trusted performance, reliability and simplicity."[56] In a 2011 press release, Seagate claimed the drive is designed for "desktop, tower or all-in-one personal computers; workstations, home and small business servers; network-attached storage devices; direct-attached storage expansion; and home and small-business RAID solutions."[57] The 2012 Barracuda webpage asserted that the drive is "Perfect when you need to . . . Build a desktop or all-in-one PCs;" "Equip home servers;" "Implement a desktop RAID;" or "Build network attached storage devices (NAS)."[58] Not once does Seagate state that the drive is not suitable for certain RAID arrays.  These misleading claims of product suitability are sufficiently specific to state a claim.

## III.    Plaintiffs Adequately Allege Omission Claims Under the UCL's Fraudulent Prong, the FAL, the CLRA, and the Other State Consumer Statutes.

### A.    Plaintiffs' allegations give rise to a duty to disclose the hard drive defect.

While there is some debate in federal court as to whether there is a need for a safety concern to support a duty to disclose with respect to a pure omission claim brought under California law,[59]

---

[55] *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-333 (1998).

[56] Complaint, ¶ 58(a).

[57] *Id.* at ¶ 60.

[58] *Id.* at ¶ 63.

[59] *Compare Norcia v. Samsung Telecomm.*, No. 14-CV-00582-JD, 2015 WL 4967247, *6 (N.D. Cal. Aug. 20, 2015) (citing *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015)), *with Dana v. Hershey Company, et al.*, No. 15-CV-04453-JCS, 2016 WL 1213915, *8 (N.D. Cal. Mar. 29, 2016).

there is no question that material misrepresentations support a duty to disclose omitted information to the contrary.[60] As discussed above, Seagate has made material misrepresentations to consumers regarding the performance, reliability, and suitable uses of its drives and these in turn support a duty to disclose the omitted characteristics, lack of reliability, true suitable uses, and defective nature of the drives. As determined in the parallel state court proceeding, for example, "the existence of affirmative misrepresentations resolves the CLRA claim, both because they are actionable in themselves, and because they permit a claim for omissions."[61] So too here.

**B.**     **Plaintiffs need not allege Seagate's knowledge of the defect – though it is plain.**

Seagate's reliance on *Wilson* for the proposition that plaintiffs must allege its knowledge of the defect is misplaced.[62] To state a claim under the UCL, the California Supreme Court has stated that one generally "need not show that a UCL defendant intended to injure anyone," because the UCL "imposes strict liability."[63] With respect to an unlawful prong claim, however, if the predicate violation requires a showing of intent, then so too does the UCL unlawful prong claim.[64] Accordingly, in *Wilson*, the plaintiffs had to allege the defendants' knowledge of the defect, because their unlawful prong claim was premised on violations of common law fraud and deceit statutes, both of which "have an intent requirement."[65] But here plaintiffs' UCL fraud prong claim has no mental element, so Seagate's knowledge of the defect is extraneous to the claim.[66]

Likewise, the California Court of Appeal has identified section 1770(a)(5) of the CLRA as a consumer protection provision that "imposes liability without the necessity of showing intent."[67]

---

[60] *Id.* (citing *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir. 2012)).

[61] *Pozar*, 2016 WL 4562694, at *4.

[62] Def's Mot. at 11.

[63] *Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706, 717 (Cal. 2000); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (advertisement need not be "known to be false by the perpetrator" to state a UCL fraud prong claim).

[64] *People v. Duz-Mor Diagnostic Lab., Inc*., 68 Cal. App. 4th 654, 673 (1998).

[65] 668 F.3d at 1145–46.

[66] *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n*, 237 Cal. App. 4th 812, 846 (2015) (explaining that California's "unfair competition law" is one example "of actionable fraud that does not require a mental element").

[67] *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001).  *Wilson* did not address *Wershba* in concluding otherwise.  668 F.3d at 1145.

Thus, in *Mazza v. Am. Honda Motor*, the Ninth Circuit described the UCL and CLRA as consumer protection laws that "have no scienter requirement."[68] Plaintiffs need not allege Seagate's knowledge of the defect to state a claim.

Of course, if plaintiffs only argued a duty to disclose based on Seagate's exclusive knowledge of the defect or its active concealment of it, then plaintiffs would need to allege Seagate's knowledge of the defect. However, plaintiffs allege a duty to disclose based on Seagate's affirmative misrepresentations. Thus, most of the cases cited by Seagate are simply inapposite.[69]

In any event, Seagate's knowledge of the defects is patent from the complaint. As alleged by plaintiffs, there are thousands of negative reviews and complaints about the drive failures on websites such as newegg.com and amazon.com. And Seagate was aware of the contents of these reviews and complaints – which were posted beginning in December 2011 – ***because it responded to many of them, apologizing for the problems the customers were having with their drives and inviting them to call Seagate customer services or tech support***.[70] Moreover, the Backblaze report confirms that the drives were failing at an unprecedented rate during the class period,[71] and failures were frequently experienced within approximately one year of the sale – even within the first 90 days after purchase.[72]

In addition, Seagate had firsthand knowledge of the drive failures due to the nature of its warranty program. As stated on its website, Seagate has a "take-back program for hard drives under warranty." Thus, Seagate itself was in receipt of failed drives throughout the class period.[73] Given the large number of consumer complaints and Seagate's exposure to its own defective drives, which

---

[68] 666 F.3d 581, 587, 591 (9th Cir. 2012).  By its statutory language, the FAL requires only proof that defendant knew or should have known.  *See* Cal. Bus. & Prof. Code § 17500.

[69] Def's Mot. at 12-13 (citing *Donohue v. Apple, Inc.,* 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012); *In re Sony HDTV,* 758 F. Supp. 2d at 1095; *Oestreicher,* 544 F. Supp. 2d at 974; *Baba v. Hewlett-Packard Co.,* 2010 WL 2486353, *5 (N.D. Cal., June 16, 2010); *Berenblat v. Apple, Inc.,* 2010 WL 1460297,  *9 (N.D. Cal. 2010)).

[70] Complaint, ¶¶ 118, 254-263.  *See, e.g., Long v. Graco Children's Prod. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, *7 (N.D. Cal. Aug. 26, 2013) ("complaints also reflect that customers complained to Graco directly and Graco responded to them").

[71] Complaint, ¶¶ 82-108.

[72] *Id*. at ¶¶ 182, 198, 220, 238, 239.

[73] *Id*. at ¶ 119; Ex. F to Complaint.

it tested and attempted to repair, it knew or should have known that the defects were inherent, latent, and model-wide. But, despite this knowledge, Seagate did not disclose the drive defects; instead, it continued to promote the drives as highly reliable with an extremely low failure rate.[74]

Finally, and quite remarkably, in an email to plaintiff Smith, Seagate **admitted** that the hard drive is not actually designed for RAID 5, which is a common configuration in home RAID and NAS systems. Specifically, a Seagate customer support representative wrote, "The consumer level drives you have are not meant for any type of raid configuration beyond a Desktop RAID 0 or 1. If you do use 'desktop class drives' in a RAID 5 configuration, you can expect to deal with RAID failures."[75] But, at the same time, Seagate advertised the drives as "designed for," "perfect" for and "best-fit" for NAS and Desktop RAID, without any qualification that the drive is *only* appropriate for RAID 0 or 1. Thus, the email sent by Seagate customer support to Mr. Smith demonstrates that it knew that the drives were not designed for RAID 5 (or any other RAID beyond that of 0 or 1) and would cause failures if used in such a configuration.[76] In short, the complaint more than adequately alleges that Seagate knew that its drives were defective and not suitable for RAID and NAS, yet it failed to disclose this to plaintiffs and class members.[77]

### C. Plaintiffs allege a systemic latent defect – and they are not required to allege its mechanical cause when the existence has been alleged with specificity.

Seagate endeavors to avoid claims based on its omissions by arguing that, because plaintiffs purportedly failed to set forth in detail the mechanical cause of the drives' systemic latent defect, its material omissions are not actionable and should be dismissed as a matter of law.[78] Seagate is wrong. As set forth below, plaintiffs have adequately alleged a systemic latent defect existing at the time of sale and need not also allege the mechanical causes of the defect. In any event, plaintiffs allege at least five other actionable omissions that are independent from the failure to disclose the defect.

---

[74] *Id.* at ¶¶ 120-121.

[75] *Id.* at ¶ 111.

[76] *Id.* at ¶¶ 112-113.

[77] *Horvath v. LG Elecs. MobileComm U.S.A., Inc.,* No. 3:11-cv-01576-H, 2012 WL 2861160, *9 (S.D. Cal. Feb. 13, 2012) (holding that allegations that the defendant "had notice of the defects based on consumer postings" and that the defendant's "responses to the postings suggest [defendant] had knowledge of the content of those postings" were sufficient to adequately plead knowledge).

[78] Def's Mot. at 7-11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    The state court held that a defect was adequately alleged.

In overruling Seagate's demurrers in *Pozar*, the state court rejected the same meritless argument that Seagate makes here: that the complaint failed to adequately allege facts sufficient to state a claim that a systemic latent defect existed.[79] The *Pozar* court found that the complaint "*does* claim the defect existed."[80] As to whether the complaint would satisfy a federal pleading standard, the court stated "that is the use of the Backblaze reports: whether true or not, ***the existence of the reports make the allegations plausible***.[81]

In addition to discussing the Backblaze reports in substantial detail, the complaint in the present case cites extensive consumer complaints and ***over 30*** drive failures experienced by plaintiffs that were caused by the latent defect.[82] In contrast, *Pozar* alleges only *two* drive failures.[83] Given that the complaint here contains even more specific allegations than in *Pozar*, which alleged substantially identical UCL, FAL, and CLRA claims, the analysis should end there. The complaint plainly satisfies the Rule 9(b) particularity standard, and plaintiffs' allegations provide more than adequate notice to Seagate of the basis for the claims.[84] Accordingly, plaintiffs adequately allege omissions claims under the UCL, FAL, CLRA, and the other consumer statutes.

### 2.    Plaintiffs are not required to plead the mechanical details of the defect.

Seagate's contention that a plaintiff must plead the cause of a defect is squarely contradicted by the case law. In *Cholakyan v. Mercedes-Benz USA, LLC*, the court held that a "[p]laintiff is ***not required to plead the mechanical details*** of an alleged defect in order to state a claim" that is predicated on the failure to disclose a material fact.[85] Numerous other cases have held, explicitly and

---

[79] *Pozar*, 2016 WL 4562694, at *3.

[80] *Id.* (emphasis in original).

[81] *Id.* at *3, n.2.

[82] Complaint, ¶¶ 135-252.

[83] *Pozar*, 2016 WL 4562694, at *3.

[84] "When a claim rests on allegations of fraudulent omission [], the Rule 9(b) standard is somewhat relaxed because a plaintiff cannot plead either the specific time of an omission or the place, as he is not alleging an act, but a failure to act." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013); s*ee also Falk v. Gen. Motors Corp.,* 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (the Rule 9(b) standard is relaxed in fraudulent omission cases).

[85] 796 F. Supp. 2d 1220, 1237 (C.D. Cal. 2011) (rejecting the defendant's argument that the defect at issue – interior water leakage in Mercedes-Benz E-Class vehicles – was not pled with sufficient particularity because the specific cause was not alleged). *See also Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 912 (C.D. Cal. 2010) (allegations of an unspecified "design flaw that

impliedly, that a plaintiff need not allege the cause of a defect to satisfy Rule 9(b). In *Aguilar v. General Motors LLC*, the court found that allegations pertaining to a "steering defect [in certain GM vehicles] resulting in the potential failure of power steering, pulling to the left and right, and loss of steering control while driving" were sufficient to state a claim.[86] Likewise, in *Asghari*, the court rejected the defendants' argument that plaintiffs failed to plead the nature of the defect with sufficient particularity because they did not allege the mechanical cause of the defect.[87] The complaint alleged that the engine defect caused abnormal oil consumption, set forth the rate of oil consumption and the repairs required for each plaintiff's Volkswagen, and quoted numerous consumer complaints.[88] The court held that "these allegations, taken together, [are] sufficient to identify the purported defect with the particularity required by Rule 9(b).[89]

The complaint here contains the same types of allegations. Indeed, it alleges the defect with more specificity because it describes, in exacting detail, that the drives fail at extremely high rates and that a large number of consumers have experienced drive failures. For instance, the complaint discusses the Backblaze reports at length and states the annualized and raw failure rates of the drives, both of which are extraordinarily high.[90] It also alleges that the drives have an abnormal failure curve, that their failure rates are substantially higher than comparable hard drives on the market, and that the drives do not last nearly as long as comparable hard drives.[91] Moreover, the drive failures that plaintiffs have experienced, and the circumstances of those failures, are plead with particularity, and the complaint alleges that there are thousands of negative reviews about the drives online and it quotes numerous reviews pertaining to drive failures.[92] As in *Asghari*, the foregoing

---

caused the windshield in [Mini Coopers] to have a high propensity to crack or chip under circumstances that would not cause non-defective windshields to similarly fail" were sufficient to state a claim.).

[86] No. 1:13-cv-00437-LJO, 2013 WL 5670888 (E.D. Cal. Oct. 16, 2013).

[87] 42 F. Supp. 3d at 1326 n.72. *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1191, 1193 (C.D. Cal. 2010); *Valencia v. Volkswagen Grp. of Am. Inc.,* 119 F. Supp. 3d 1130 (N.D. Cal. 2015).

[88] *Asghari*, 42 F. Supp. 3d at 1326 n.72.

[89] *Id.*

[90] Complaint, ¶¶ 82-109.

[91] *Id.*

[92] *Id.* at ¶¶ 135-263.

allegations, taken together, are more than sufficient to satisfy Rule 9(b).

Notwithstanding the contrary authority, Seagate erroneously relies on *Punian v. Gillette Co.*, *Yagman v. General Motors Co.*, and *Decoteau v. FCA* to support its argument that claims based on material omissions must detail the specific design or mechanical flaw giving rise to the drives' latent defect. This reliance is misplaced. *Punian* does not hold that plaintiffs must allege the mechanical cause of a defect, nor does it stand for such a proposition.[93] In *Punian*, the plaintiff's twenty-two page complaint alleged that the defendant's advertising and packaging for batteries failed to disclose that the batteries can leak.[94] The complaint, however, did not allege "any particular likelihood of leakage"; that there was a "significant, substantial, likely, or particular rate of failure"; that the leakage rate was substantial when compared to that of comparable batteries; the "impact of battery leakage on the battery," or that "consumers had any expectations" about the leakage or failure rate.[95] The court held that because of the foregoing deficiencies – in conjunction with plaintiff's failure to allege the cause of the defect– the complaint did not plausibly allege a material defect. That is, an "*unspecified* potential to fail" did not suffice to allege a material defect.[96]

By contrast, plaintiffs allege in substantial detail that the drives have an extremely high failure rate that is substantially greater than comparable hard drives and that the drives do not follow a normal failure curve. Moreover, the complaint alleges that plaintiffs and class members expected, among other things, that the drives would safeguard their data and would not fail prematurely at abnormally high rates, and that these expectations were created by Seagate's misrepresentations.[97] The drive failures and the consequences of these failures are also alleged in substantial detail.

---

[93] The *Punian* court's observation that "cases finding . . . a duty to disclose a product defect have identified a particular design or manufacturing defect" should be given little weight because numerous cases, including those discussed above, have not required identification of a particular defect. No. 14-cv-05028-LHK, 2016 WL 1029607, *14 (N.D. Cal. Mar. 15, 2016). In any event, the *Punian* court did not hold that defect identification is a pleading requirement.

[94] *Id*. at *2.

[95] *Id*. at *11, *15. Notably, the complaint also did not allege that any of the batteries purchased by plaintiff leaked or failed. *Id.* at *11.

[96] *Id*. at *14.

[97] *E.g.,* Complaint, ¶¶ 66, 71, 80, 121.

1    Accordingly, plaintiffs have alleged with particularity a specific potential to fail that is material to a

2    reasonable consumer and therefore need not allege a specific cause of the defect.

3        Seagate's reliance on *Yagman* is similarly misplaced.  Preliminarily, it is not a consumer

4    protection case and addresses implied warranty claims only.[98] Moreover, unlike here, the *Yagman*

5    complaint is virtually devoid of allegations supporting a claim that a defect exists.[99] Nevertheless, the

6    court held that the complaint fell only "slightly short" of meeting the Rule 8 plausibility standard and

7    granted the plaintiff leave to amend.[100] Thus, rather than supporting Seagate's apparent argument

8    that plaintiffs have failed to even plausibly allege that a model-wide defect caused the drive failures,

9    *Yagman* simply illustrates the fact that Rule 8 "does not pose a particularly difficult hurdle for a

10   plaintiff,"[101] and that this modest hurdle is easily cleared by the complaint's extensive allegations

11   regarding the drives' massive failure rate and the high incidence of drive failures among plaintiffs

12   and Class members.

13       Likewise, in *Decoteau,* the court addressed "a close question regarding the factual specificity

14   necessary to plead claims based on product defects."[102] There, the plaintiffs alleged an unspecified

15   "transmission defect" caused rough shifts affecting speed, acceleration, and deceleration.[103] The

16   court dismissed the complaint with leave to amend because "automatic transmissions . . . are

17   complicated systems that demand more detailed factual allegations in order to identify a plausible

18   defect."[104] The court stated, however, that it "***does not necessarily expect all plaintiffs to have to

19   plead the mechanical details of a defect*** in order to state a claim" and opined that "the level of

20   specificity required appears to directly correlate to the complexity of the machinery in question."[105]

21   The court further stated that in a "challenge regarding a less complex component, allegations similar

---

22       [98] No. cv-14-4696-MWF, 2014 WL 4177295, *1 (C.D. Cal. Aug. 22, 2014).

23       [99] Indeed, the *Yagman* complaint simply recites that the Buick Lucerne is defective, that the
24   engine and electrical system shut down in the plaintiff's Lucerne while he was driving, and that
     repair attempts failed to fix the problem. *See id.* at *1.

25       [100] *Id*. at *3.

         [101] *Id.*

26       [102] No. 2:15-cv-00020-MCE, 2015 WL 6951296, *3 (E.D. Cal. Nov. 9, 2015).

27       [103] *Id.* at *1.

         [104] *Id.* at *3.

28       [105] *Id.*

to Plaintiffs' might be sufficient" and gave the steering defect in *Aguilar* as an example.[106]

Seagate attempts to shoehorn this case to fit the limited holding of *Decoteau* by characterizing hard drives as "complex electro-mechanical devices with many moving parts." Notwithstanding that Seagate's argument should be disregarded as based upon facts not alleged in the complaint, the level of complexity of a hard drive does not even approach that of a transmission.[107] As set forth above, courts have found that a plaintiff need not allege the mechanical details of a defect in the cabin of a Mercedes, in the windshield of a Mini Cooper, in a GM steering system, or in a Volkswagen engine. And, in stark contrast to the allegations in the cases cited by Seagate, the failures experienced by the plaintiffs, the Backblaze study, and consumer experience are, as acknowledged by the *Pozar* court,[108] sufficient to state a claim that a systemic latent defect exists.

In a last ditch attempt to challenge the plausibility of plaintiffs' well-pled allegations, Seagate raises the hypothetical question of whether, rather than being caused by a model-wide defect, the drive failures could have resulted from some other cause such as "accident, abuse, neglect, heat or humidity beyond product specifications, improper installation, misuse", or otherwise.[109] Putting aside that such factual disputes are an issue for the factfinder and not suitable for resolution on 12(b)(6), plaintiffs received replacements, and to receive a replacement under the terms of Seagate's own warranty, the failure could not have been caused by "accident, abuse, neglect, electrostatic discharge, degaussing, heat or humidity beyond product specifications, improper installation, or misuse."[110] Moreover, the complaint states repeatedly that plaintiffs' drive failures were caused by the defect and that plaintiffs used their drives "in a manner consistent with their intended use, and have performed each and every duty required under the terms of the warranty."[111] The hypothetical alternatives

---

[106] *Id.*

[107] *See* Def's Mot. at 8. Indeed, as advanced by Seagate, a hard drive only has eight parts and one function: to store data files. By contrast, the components and subcomponents of a vehicle transmission are so numerous and complex that they are assigned part numbers and organized in catalogues. *See generally ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.,* 402 F.3d 700 (6th Cir. 2005).

[108] 2016 WL 4562694, at *3 n.2.

[109] Def's Mot. at 7.

[110] Complaint, ¶119.

[111] *Id.* at ¶¶ 182, 194, 220, 230, 238, 249, 342, 375; *see also id.* at ¶¶ 355, 389.

advanced by Seagate are not only belied by the aforementioned allegations regarding plaintiffs'

proper use of the drives but also by the complaint's allegation that, in diagnosing the issue with the

drives, Backblaze ruled out confounding factors for the staggering failure rate.[112]

### 3. Even if plaintiffs were required to allege a mechanical cause of the defect – which they are not – their omissions claims would still survive.

Even assuming *arguendo* that plaintiffs were required to set forth a mechanical cause of the

defect, plaintiffs' omission claims would still survive. This is because, contrary to Seagate's

mischaracterization of the complaint, in *addition* to failing to disclose that the drives "are plagued by

a latent, model-wide defect that renders them highly prone to early catastrophic failures," plaintiffs

allege that Seagate failed to disclose:

> 1) that the Drives are not reliable or dependable . . . ; 3) that they are not
> suitable for storing, protecting, or backing up important personal data; 4)
> that they are not designed for RAID 5 or suitable for any form of RAID or
> NAS; 5) that their published read error rates and AFRs are wholly
> inaccurate; and 6) that they do not last as long as comparable hard drives
> on the market.[113]

Indeed, the complaint sets forth that Seagate failed to disclose "the true quality, reliability, failure

rate, and proper uses of the Drives."[114] Thus, in addition to Seagate's failure to disclose the existence

of the latent model-wide defect, plaintiffs allege at least five other actionable omissions.

### D. Plaintiffs allege that Seagate's omission of this systemic latent defect is material to consumers.

Seagate does not even attempt to dispute that each of its omissions were material.  This is

because it is obvious that a reasonable consumer would attach importance to the fact that a hard drive

purchased to store and safeguard important files frequently failed, resulting in the loss of those very

files the consumer sought to secure.[115]  Where, as here, the defect "obliterate[s] the function" of the

---

[112] Complaint, ¶¶ 105-107.

[113] *Id*. at ¶¶ 285, 323, 409, 430, 448, 476, 495, 513, 534, 551.

[114] *Id*. at ¶¶ 422, 469, 477, 488, 496, 514, 537.

[115] *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011) (allegation that defendant failed to disclose computer defect that controlled floppy disk data transmission stated CLRA claim because reasonable consumer would attach importance to disclosure of the floppy disk defect).

drives, Seagate's omission of the defect is material.[116] In any event, the question of whether an omission is material "is a question for the trier of fact," not suitable for decision in a motion to dismiss.[117]

## IV.   Plaintiffs Also Adequately Allege Claims Under the UCL's Unlawful and Unfair Prongs.

By properly alleging a violation of other laws, plaintiffs allege a violation of the UCL unlawful prong.[118] Seagate misstates plaintiffs' allegations in arguing that breach of a contract cannot itself support a UCL violation.[119] Rather, plaintiffs allege that Seagate's violation of California warranty statutes, in addition to violations of the CLRA and FAL, serve as predicate violations of law for the UCL unlawful prong claim.[120]

Plaintiffs also properly allege a UCL unfair prong claim, because Seagate's conduct is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."[121] In particular, plaintiffs allege that replacing defective hard drives with defective hard drives – and charging customers exorbitant sums of money to recover their data when these drives repeatedly fail – is unscrupulous and causes injury to consumers that outweighs its benefits.[122]

In arguing that California law allows limitations of remedies in warranties, Seagate ignores that it does not permit replacement of a defective product with another defective product. Indeed, in *In re Toyota Motor Corp. Unintended Acceleration Litig.* (relied on by the only case Seagate cites on this point),[123] the court found that a defective replacement did not satisfy the limited warranty:

> [T]he limitation on the remedy found in the written warranty must be viewed through the lens of Plaintiffs' theory of the alleged defects. Plaintiffs allege there are defects in the Toyota vehicles that Toyota is unable or unwilling to repair, and that the two wide-scale recalls failed

---

[116] *Rutledge*, 238 Cal. App. 4th at 1174.

[117] *Id.* at 1175-76; *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007).

[118] *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). *See* Complaint, ¶ 279.

[119] Def's Mot. at 20.

[120] Complaint, ¶ 279. *See Tietsworth v. Sears Roebuck and Co.*, 720 F. Supp. 2d 1123, 1136–37 (N.D. Cal. 2010) (violations of Song Beverly and Magnuson–Moss warranty statutes provide basis for UCL unlawful prong claim).

[121] *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006); *see also Donohue*, 871 F. Supp. 2d at 928 (applying the balancing test from *McKell*).

[122] Complaint, ¶¶ 291-293, 126, 129.

[123] Def's Mot. at 19 (citing *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, *11 (C.D. Cal. Jan. 7, 2013)).

to repair the defect.  Accepting this fact as true, as the Court must at the pleadings stage, Plaintiffs have stated a claim for breach of express written warranty….[124]

In sum, plaintiffs adequately allege their UCL unlawful and unfair prong claims.

## V.    Plaintiffs' Express Warranty Claims Are Well Pled.

Seagate wrongly insists it did all that its limited warranty required of it. According to Seagate, because it replaced some of the drives, it could not have breached the terms of its warranty. In so arguing, Seagate ignores the law on failure of essential purpose and mischaracterizes the complaint by implying that plaintiffs alleged only that the original drives failed. But the complaint alleges in great detail that Seagate failed to replace the defective drives with non-defective replacements and that many plaintiffs received *replacement* hard drives that malfunctioned or failed *during the replacement warranty period*.[125] Indeed, five plaintiffs – Schechner, Hagey, Crawford, Dortch, and Smith – received replacements that failed during their warranty.[126] Plaintiffs Nelson and Hauff similarly received replacement drives with the latent defect, which caused them to begin malfunctioning during the replacement warranty period.[127]  Seagate cannot avoid liability for breach of warranty by replacing defective products with defective products.

Under the Uniform Commercial Code, as adopted by California and all of the other states in which plaintiffs reside, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this [code]."[128] Likewise, the Song-Bervely Consumer Warranty Act provides that if the manufacturer does not repair the "goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either

---

[124] 754 F. Supp. 2d at 1178.

[125] Seagate cites several cases to support its position that plaintiffs allege no breach of its express warranty. However, all of these cases are inapposite because none of the replacement products failed within warranty and, in some cases, not even the original products failed within warranty. Accordingly, the warranties could not, as a matter of law, fail of their essential purpose. This is not the case here.  *See Long*, 2007 WL 2994812; *Brothers v. Hewlett-Packard Co.*, No. C-06-02245 RMW, 2007 WL 485979, *1 (N.D. Cal. Feb 12, 2007); *Brothers v. Hewlett-Packard Co.*, No. C-06-02245 RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006); *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014); *Sumer*, 2015 WL 758314, at *1.

[126] Complaint, ¶¶ 171-172, 183, 195-201, 239-240, 250.

[127] Complaint, ¶¶ 147, 159.

[128] CAL. COM. CODE § 2719(2); N.Y. U.C.C. LAW § 2-719(2); 810 ILL. COMP. STAT. 5/2-719(2); FLA. STAT. § 672.719(2); MASS. GEN. LAWS CH. 106, § 2-719; TENN. CODE ANN. § 47-2-719(2); S.C. CODE ANN. § 36-2-719(2); TEX. BUS. & COM. CODE § 2.719(B); S.D. CODIFIED LAWS § 57A-2-719(2).

replace the goods or reimburse the buyer . . . ."[129] Here, the express warranty at issue is the Seagate Limited Warranty, which provides, "If Seagate authorizes you to return your product to Seagate or an authorized service provider, Seagate will replace your product without charge with a functionally equivalent replacement product."[130] Seagate breached the terms of the warranty, because it was unable to replace the drives with functionally equivalent, non-defective replacements and thus the warranty failed of its essential purpose.

A warranty fails of its essential purpose when the warrantor "[fails] to cure defects under warranty within a reasonable time" after a reasonable number of attempts.[131] As long as there is more than one opportunity to fix the nonconformity, the reasonableness of the number of attempts is a *question of fact* to be determined in light of the circumstances,[132] and resolution of this question on a motion to dismiss is not appropriate.[133] Each occasion that an opportunity to remedy the non-conformity arises – such as when a consumer requests repair or replacement – counts as an attempt even if repair or replacement does not actually occur.[134] For example, in *Jekowsky*, the plaintiff brought his car in twice for service and the court held that whether the "two opportunities Plaintiff provided to BMW were sufficient to satisfy the reasonableness requirement is a question of fact which the Court may not determine at this procedural stage.[135]

---

[129] Cal. Civ. Code § 1793.2(d)(1).

[130] Complaint, Ex. F.

[131] *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 969-970 (N.D. Cal. 2014). *See also Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) (holding that a warranty fails of its essential purpose if multiple repair attempts are unsuccessful within a reasonable time).

[132] *Jekowsky v. BMW of N. Am., LLC*, No. 13-02158 JSW, 2013 WL 6577293 (N.D. Cal. Dec. 13, 2013); *Horvath*, 2012 WL 2861160; *Robertson v. Fleetwood Travel Trailers of Cal., Inc.,* 144 Cal. App. 4th 785, 799 (2006).

[133] *Jekowsky*, 2013 WL 6577293, at *5.

[134] *Id.* at *4; *Robertson*, 144 Cal. App. 4th at 799. *See also Horvath*, 2012 WL 2861160, at *6 ("a consumer's obligation is only to give the manufacturer or its service provider 'a reasonable opportunity to repair' the product"); *Oregel v. Am. Isuzu Motors, Inc*., 90 Cal. App. 4th 1094, 1103, (2001) (same).

[135] *Jekowsky,* 2013 WL 6577293, at *4. Similarly, in *Horvath*, the court denied a motion to dismiss in a factually analogous case. The *Horvath* plaintiffs alleged that a certain model of mobile phone suffered from an inherent defect. 2012 WL 2861160, at *1. The plaintiffs ***collectively*** gave the defendant over ten opportunities to repair the defect. *Id.* at *1, *6. Unable to repair the defects, the defendant provided the plaintiffs with "replacement phones suffering from the same defects." *Id.* at *1. The court held that the allegations "raise a right to relief for breach of [the defendant's] express warranty above the speculative level" and denied the motion to dismiss. *Id.* at *6.

1    Here, plaintiffs gave Seagate numerous opportunities to provide them with conforming, non-

2 defective drives, and Seagate failed to do so.  Out of the 43 hard drives plaintiffs purchased, 22 failed

3 – 21 of which failed during the original new product warranty period.[136]  Of those 21 failed drives,

4 14 were purportedly replaced by Seagate under the terms of the warranty.  But Seagate simply

5 replaced an inherently defective product with the same defective product, as evidenced by the fact

6 that 10 of the replacement drives failed.[137] Of those 10 failed replacements, 7 malfunctioned or failed

7 while still under warranty.[138] For plaintiffs Crawford[139] and Dortch,[140] Seagate also inexplicably

8 refused to replace at least two.[141]

9    Since plaintiffs have given Seagate multiple opportunities to provide conforming, non-

10 defective drives, the reasonableness of the number of replacement attempts becomes a question of

11 fact not appropriate for resolution at this stage of the litigation.  Notwithstanding, two attempts is

12 more than reasonable under the circumstances of this case.  Consumers use hard drives to store

13 valuable and often irreplaceable files, pictures, documents, and other important personal data.[142]

14

15    [136] Complaint, ¶¶ 135-252.

16    [137] *Id.*

17    [138] *Id.* Although plaintiff Nelson's replacement Backup Plus did not fail completely until after the warranty expired, it started malfunctioning within the warranty period.  *Id.* at ¶ 147.

18    [139] Plaintiff Crawford alone gave Seagate at least two opportunities to remedy the non-conformity. Mr. Crawford purchased four drives, all of which failed within the warranty period. *Id.*
19 at ¶¶ 186, 195-198. He received replacement drives from Seagate, but three of the four replacements failed. *Id.* at ¶¶ 195-201. Two of the replacements were still under warranty when they failed but Seagate refused to replace one of them. *Id.* at ¶¶ 195-197, 201.

20    [140] Mr. Dortch purchased eight drives, and three failed. *See* Complaint, ¶¶ 232, 239-240. Seagate
21 provided warranty replacements for two, but one of the replacements failed. *Id.* at ¶ 239-240. Seagate refused to issue another replacement because the drive's warranty had purportedly expired. *Id.* at ¶
22 240. However, the warranty had not expired; the warranty was one year and the replacement drive failed approximately nine months after purchase. *Id.* at ¶¶ 234, 239-240.

23    [141] Seagate erroneously contends that Mr. Crawford failed to allege that he purchased his drives
24 from an authorized retailer. Def's Mot. at 20.  To the contrary, Mr. Crawford purchased three drives from TigerDirect, which is an "authorized Seagate retailer." Complaint, ¶¶ 186, 187.  The fourth
25 drive was purchased from eBay, and Seagate issued a warranty replacement to Mr. Crawford.  *Id.* at ¶ 198. Because the warranty provides that "[o]nly customers purchasing [drives'] from an authorized
26 Seagate retailer or reseller may obtain [warranty] coverage", it may be inferred, drawing all reasonable inferences in favor of plaintiffs, that eBay is an authorized reseller. Ex. F. to Complaint.
27 In any event, the replacement drive that Seagate sent was covered by the warranty because Seagate warrants that, if it replaces a product, the replacement is covered by the remainder of the original warranty or 90 days, whichever is greater. *Id.*

28    [142] *Id.* at ¶ 288.

1    Indeed, in the words of Seagate, people use hard drives to store their "entire digital lives" and

2    "lifetime of memories,"[143] and all of this data can be wiped away forever if a hard drive fails.[144] Even

3    if the data is recoverable, data recovery services are extremely expensive.  For instance, Seagate's

4    data recovery fees can easily exceed $2,000;[145] plaintiff Dortch paid thousands of dollars to have a

5    company recover data, including more than a decade of family photos;[146] and plaintiff Crawford paid

6    $7,500 to recover 8TB of data that he lost due to drive failures, including 20 years' worth of photos,

7    important tax documents, and drawings done by a deceased relative.[147] Due to the stress and strain,

8    both emotional and financial, that a drive failure can cause, many consumers are understandably

9    unwilling to continue to use a particular drive model after the originals **and** replacements have

10   failed.[148] Accordingly, it would be unreasonable to require plaintiffs to give Seagate more than two

11   opportunities to provide them with conforming, non-defective drives.

12   **VI.    Plaintiffs' Implied Warranty Claims Are Well Pled.**

13           Seagate incorrectly contends that plaintiffs' implied warranty claims fail due to the plaintiffs'

14   lack of privity with Seagate.[149] But plaintiffs properly allege that they are third-party beneficiaries of

15   the contracts between Seagate and its authorized retailers,[150] and this exception exists and is viable

16   under California law. Citing *Xavier v. Phillip Morris USA*,[151] Seagate claims that no reported

17   California decision has held that such an exception exists,[152] but this contention is erroneous because

18   subsequent to *Xavier* numerous courts have so held. For instance, in *In re MyFord Touch Consumer*

19   *Litig.*, the district court criticized *Xavier* and held that the third-party beneficiary exception is

20

21   _____

22           [143] *Id*. at ¶ 67.

         [144] *E.g., id*. at ¶ 170.

23           [145] *Id*. at ¶ 126.

         [146] *Id*. at ¶ 241.

24           [147] *Id*. at ¶¶ 199-200.

25           [148] *E.g., id*. at ¶¶ 172, 184.

         [149] Def's Mot. at 22.  Seagate does not take issue with the Song Beverly claim brought on behalf
26   of the California subclass.  *See* Def's Mot. at 23 n. 14.

27           [150] Complaint, ¶ 365.

         [151] 787 F. Supp. 2d 1075 (N.D. Cal. 2011).

28           [152] Def's Mot at 22-23.

cognizable under California law.[153] Indeed, many cases pre-dating *Xavier* have held that the

exception is available. For example, in *In re Toyota*, the court held that "the clear weight of authority

compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they

successfully plead a breach of implied warranty claim."[154]

## VII.    The CLRA Claims Are Not Defective.

Seagate does not complain about the substance of plaintiffs' CLRA notice; instead, it

quibbles that not every plaintiff has filed a venue affidavit.[155] This is of no moment. Courts have

repeatedly held that an affidavit of proper venue filed by one plaintiff is sufficient to satisfy the

CLRA – even though other plaintiffs in a consolidated action have not also filed venue affidavits.[156]

In any event, even if plaintiffs had failed to file *any* venue affidavits it could be cured with leave to

amend.[157]

Moreover, all of plaintiffs' claims are timely. In *Aryeh v. Canon Business Solutions, Inc*., the

California Supreme Court reiterated that "the discovery rule postpones accrual of a cause of action

until the plaintiff discovers, or has reason to discover, the cause of action."[158] The Court held that

claims under the UCL are "governed by common law accrual rules," including the discovery rule,[159]

and its rationale applies to claims under the CLRA as well. Indeed, courts have expressly held that

---

[153] 46 F. Supp. 3d at 984. *See also Horvath*, 2012 WL 2861160, at *7 (observing that "California has recognized an exception to the vertical privity requirement where the plaintiff consumer is an intended third-party beneficiary of the contract for sale of a good between a manufacturer and a dealer" and applying the exception).

[154] 754 F. Supp. 2d at 1184 (citing *Gilbert Financial Corp. v. Steelform Contracting Co.,* 82 Cal. App. 3d 65, 69 (1978); *Arnold v. Dow Chemical Co.,* 91 Cal. App. 4th 698, 720 (2001); *Cartwright v. Viking Industries, Inc.,* 249 F.R.D. 351, 356 (E.D. Cal. 2008); *In re Sony VAIO Computer Notebook Trackpad Litigation,* No. 09-cv-2109 BEN, 2010 WL 4262191, *3 (S.D. Cal. Oct. 28, 2010)).

[155] Def's Mot. at 23.

[156] *E.g., In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1037–38 (N.D. Cal. 2012). *See also In re Easysaver Rewards Litigation*, 737 F. Supp. 2d 1159, 1178 (S.D. Cal. 2010) (holding that a venue affidavit filed by a named plaintiff was sufficient even though that plaintiff was no longer named in the consolidated complaint because the "purpose of the rule" was still satisfied). The case cited by Seagate is inapposite because the plaintiffs had been directed to file venue affidavits but failed to do so.  *See In re Sony HDTV*, 758 F. Supp. 2d at 1094.

[157] *Rossetti v. Stearn's Prod., Inc.*, No. CV 16-1875-GW, 2016 WL 3277295, *2 (C.D. Cal. June 6, 2016).

[158] 55 Cal. 4th 1185, 1192 (2013).

[159] *Id.* at 1196.

1  the "discovery rule also applies to CLRA claims."[160]

2       On facts strikingly similar to those here, the district court in *Philips* held that the plaintiffs'

3  CLRA claims were timely:  "Even though Ford is correct that UCL and CLRA claims in consumer

4  cases generally accrue on the date of purchase, California Plaintiffs here were not charged with a

5  duty to reasonably investigate until the alleged steering defect manifested in their vehicles."[161]  Here,

6  plaintiff Nelson did not experience the failure of his drive until December 2014,[162] Hauff not until

7  July 2014,[163] Schechner not until April 2014,[164] Crawford not until January 2014,[165] and Dortch not

8  until at least the Spring of 2013.[166]  With the three-year statute of limitations then commencing, the

9  plaintiffs' CLRA claims were timely filed in February 2016.

10 **VIII.  Plaintiffs' Unjust Enrichment Claims Are Also Well Pled.**

11      Seagate argues that plaintiffs cannot assert unjust enrichment claims given their statutory and

12 warranty claims. Plaintiffs, however, may plead an unjust enrichment claim in the alternative.[167]

13 Though this issue has been decided differently by other courts, including this one, plaintiffs

14 respectfully request that their claims for unjust enrichment be permitted to proceed – at least until it

15 has been determined that they have an adequate remedy at law, as it is premature "at this early stage

16 in the litigation to determine whether other remedies available to Plaintiffs are adequate."[168]

                              **CONCLUSION**

17      Plaintiffs respectfully request the Court to deny Seagate's motion to dismiss in its entirety.

18

19 _____
   [160] *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, *7–8 (N.D. Cal. July 7, 2015).

20   [161] *Id.* at *8.

   [162] Complaint, ¶ 144.

21   [163] *Id.* at ¶ 158.

22   [164] *Id.* at ¶ 169.

   [165] *Id.* at ¶ 196.

23
   [166] *Id.* at ¶¶ 232, 239.  Plaintiff Smith experienced multiple hard drive failures within thirty days
24 of his purchase in November 2012.  *Id.* at ¶¶ 243, 252.  While his CLRA claim is not itself timely,
   the UCL unlawful prong claim creates a four-year statute of limitations for the predicate CLRA
25 violation.  *See* Cal. Bus. & Prof. Code § 17208.

26   [167] *In re: Easysaver*, 737 F. Supp. 2d at 1180; *In re HP Inkjet Printer Litig.*, 2006 WL 563048,
   *6–7 (N.D. Cal. Mar. 7, 2006); *Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*, No. 04CV147
   WQH, 2007 WL 1994057, *3 n.2 (S.D. Cal. Apr. 18, 2007).
27
   [168] *Keilholtz v. Superior Fireplace Co*, No. C 08-00836 CW, 2009 WL 839076, *5 (N.D. Cal.
28 Mar. 30, 2009).  *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996),
   was decided on summary judgment.  *See* Def's Mot. at 24.

DATED: September 2, 2016                HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____/s/ Steve Berman_____
Steve W. Berman (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jeff. D. Friedman
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
AXLER GOLDICH, LLC
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 207-2920
mgoldich@axgolaw.com

*Attorneys for Plaintiffs*