1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
3  npopovic@sheppardmullin.com
   ANNA S. McLEAN, Cal. Bar No. 142233
4  amclean@sheppardmullin.com
   DAVID E. SNYDER, Cal. Bar No. 262001
5  dsnyder@sheppardmullin.com
   LIÊN H. PAYNE, Cal. Bar No. 291569
6  lpayne@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
7  San Francisco, California 94111-4109
   Telephone:    415.434.9100
8  Facsimile:    415.434.3947

9  Attorneys for Defendant
   SEAGATE TECHNOLOGY LLC

10

11                    UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14  IN RE SEAGATE TECHNOLOGY LLC        Case No. 5:16-cv-00523-RMW
    LITIGATION
15                                       **REPLY IN SUPPORT OF MOTION TO
                                         DISMISS SECOND CONSOLIDATED
16  CONSOLIDATED ACTION                  AMENDED COMPLAINT**

17

18                                       **Date:**    October 7, 2016
                                         **Time:**    9:00 a.m.
19                                       **Place:**   Ctrm. 6, San Jose Courthouse
                                         **Judge:**   Hon. Ronald M. Whyte

20

21                                       Second Consolidated Amended Complaint
                                         filed:  July 11, 2016

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.     PLAINTIFFS' CLAIMS UNDER CALIFORNIA AND ALL OTHER STATE
        STATUTORY SCHEMES FAIL ....................................................................................... 2

        A.      Rule 9(b) Applies to All of Plaintiffs' Claims .......................................................... 2

        B.      Plaintiffs Fail to Allege a False Advertising Claim Under the UCL's Fraud
                Prong, the FAL, the CLRA or Any State Consumer Statute ..................................... 3

                1.      Plaintiffs' Fraudulent Omission Claims Fail ................................................. 3

                        a.      Plaintiffs Fail to Allege Any Defect ................................................. 3

                                (1)     The Authorities Plaintiffs Cite Do Not Save Their
                                        Claims ................................................................................. 5

                                (2)     The State Court Decision in *Pozar* Is Irrelevant ................... 6

                        b.      Plaintiffs Fail to Allege Seagate Had Any Duty to Disclose ........... 7

                        c.      Plaintiffs Fail to Allege Seagate Knew of Any Defect .................... 7

                2.      Plaintiffs Allege No Actionable Misrepresentations ..................................... 8

III.    THE CLAIMS FOR BREACH OF EXPRESS WARRANTY FAIL .............................. 11

IV.     THE CLAIMS FOR BREACH OF IMPLIED WARRANTY FAIL ................................ 13

V.      THE CLRA CLAIMS FAIL INDEPENDENTLY ........................................................... 14

        A.      The Claims Are Time-Barred ................................................................................... 14

        B.      Plaintiffs Failed to File Venue Affidavits ............................................................... 14

VI.     THE CLAIMS FOR "UNJUST ENRICHMENT" FAIL ................................................. 15

VII.    CONCLUSION ................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>FEDERAL CASES</u>

*Aguilar v. General Motors*
    2013 U.S. Dist. LEXIS 149108 (E.D. Cal. Oct. 16, 2013) ......................................................5, 6

*Aloudi v. Intramedic Research Group, LLC*
    2016 U.S. Dist. LEXIS 52417 (N.D. Cal. Apr. 19, 2016)..............................................................2

*Altman v. HO Sports Co*
    2009 U.S. Dist. LEXIS 108971 (E.D. Cal. Nov. 23, 2009) ..........................................................5

*Annunziato v. eMachines, Inc.*
    402 F. Supp. 2d 133 (C.D. Cal. 2005)................................................................................9, 10, 12

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................................................................................15

*Ashgari v. Volkswagen Group of America*
    42 F. Supp. 3d 1306 (C.D. Cal. 2013)........................................................................................6

*Brothers v. Hewlett-Packard Co.*
    2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007)......................................................2, 13

*Cholakyan v. Mercedes-Benz*
    796 F. Supp. 2d 1220 (C.D. Cal. 2011)......................................................................................5

*Decoteau v. FCA US LLC*
    2015 U.S. Dist. LEXIS 152579 (E.D. Cal. Nov. 9, 2015) ..........................................................4

*Dickey v. Advanced Micro Devices, Inc.*
    2016 U.S. Dist. LEXIS 47383 (N.D. Cal. Apr. 7, 2016)...........................................................15

*Donohue v. Apple, Inc.*
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ......................................................................................7

*Ehrlich v. BMW of North America*
    801 F. Supp. 2d 908 (C.D. Cal. 2010)........................................................................................6

*Elias v. Hewlett-Packard Co.*
    2014 U.S. Dist. LEXIS 16836 (N.D. Cal. Feb. 5, 2014)............................................................7

*Fontalvo v. Sikorsky Aircraft Corp.*
    2013 U.S. Dist. LEXIS 116052 (S.D. Cal. Aug. 15, 2013)........................................................5

*Herron v. Best Buy Co.*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ......................................................................................7

FEDERAL CASES (Cont'd)

*Hodsdon v. Mars, Inc.*
   2016 U.S. Dist. LEXIS 19268 (N.D. Cal. Feb. 17, 2016) ...........................................7

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*
   2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ........................................12

*Huntzinger v. Aqua Lung Am., Inc.*
   2015 U.S. Dist. LEXIS 167140 (S.D. Cal. Dec. 10, 2015) ......................................14

*Jekowsky v. BMW of North America*
   2013 U.S. Dist. LEXIS 175374 (N.D. Cal. Dec. 13, 2013) .....................................12

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ................................................................................2, 9

*Knoppel v. St. Jude Medical Inc.*
   2013 U.S. Dist. LEXIS 104456 (C.D. Cal. May 7, 2013) .........................................5

*Kowalsky v. Hewlett-Packard Co.*
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................................................7

*Lima v. Gateway, Inc.*
   710 F. Supp. 2d 1000 (C.D. Cal. 2010) ...................................................................9

*Long v. Hewlett-Packard Co.*
   2007 U.S. Dist. LEXIS 79262  (N.D. Cal. July 27, 2007) .......................................13

*In re MyFord Touch Consumer Litig.*
   46 F. Supp. 3d 936 (N.D. Cal. 2014) .....................................................................12

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*
   319 F. Supp. 2d 1040 (C.D. Cal. 2003) .................................................................12

*Norcia v. Samsung*
   2015 U.S. Dist. LEXIS 110454 (N.D. Cal. Aug. 20, 2015) ......................................7

*Philips v. Ford Motor Co.*
   2015 U.S. Dist. LEXIS (N.D. Cal. Jul. 7, 2015) ....................................................14

*Phillipine Nat'l Oil Co. v. Garrett Corp.*
   724 F.2d 803 (9th Cir. 1984) .................................................................................12

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*
   793 F. Supp. 2d 651 (S.D.N.Y. 2011) .....................................................................2

*Punian v. Gillette Co.*
   2016 U.S. Dist. LEXIS 34164 ..........................................................................3, 7, 8

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT

FEDERAL CASES (Cont'd)

*In re Sony HDTV*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................................11, 15

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (1997) .............................................................................................................10

*Stanwood v. Mary Kay, Inc.*
    941 F. Supp. 2d 1212 (C.D. Cal. 2012) ...................................................................................7

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011) .................................................................................................5

*In re Toyota Motor Corp.*
    754 F. Supp. 2d 1208 (C.D. Cal. 2010) ...................................................................................4

*Vess v. Ciba-Geigy Corp.*
    317 F.3d 1097 (9th Cir. 2003) .................................................................................................6

*Vigil v. General Nutrition Corp.*
    2015 U.S. Dist. LEXIS 63506 (S.D. Cal. May 13, 2015) ........................................................9

*Wilson v. Hewlett-Packard Co.*
    668 F.3d 1136 (9th Cir. 2012) ..........................................................................................5, 7, 8

*Xavier v. Phillip Morris USA*
    787 F. Supp. 2d. 1075 (N.D. Cal. 2011) ................................................................................13

*Yagman v. General Motors Co.*
    2014 U.S. Dist. LEXIS 120045 (C.D. Cal., Aug. 22, 2014) ............................................3, 4, 5

STATE CASES

*Fox v. Ethicon Endo-Surgery, Inc*
    35 Cal. 4th 797 (2005)...........................................................................................................14

*Pozar v. Seagate Technology LLC*
    2016 Cal. Super. LEXIS 5083 (Cal. Sup. Ct. Feb. 10, 2016) ...........................................6, 8, 9

*Robertson v. Fleetwood Travel Trailers of Calif., Inc.*
    144 Cal. App. 4th 785 (2006)..................................................................................................12

FEDERAL STATUTES & RULES

Federal Rules of Civil Procedure
    Rule 8 ...................................................................................................................................2, 4
    Rule 9 ............................................................................................................................ *passim*
    Rule 9(b).................................................................................................................................2, 6

## STATE STATUTES & RULES

California Civil Code
    § 1792 .................................................................................................................... 12
    § 1780(d) ............................................................................................................... 14

California Commercial Code ...................................................................................... 12, 13

California Consumers Legal Remedies Act ............................................................. *passim*

California False Advertising Law ........................................................................ 1, 3, 4, 11

California Song-Beverly Act ........................................................................................... 12

California Unfair Competition Law ...................................................................... 1, 3, 4, 8

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Second Amended Complaint ("SAC") rests on circular reasoning unsupported by facts.  Plaintiffs assume that if a Seagate drive failed, whether within or out of warranty, it must be representative of a "latent model-wide defect."  Any and all drives that failed are therefore "defective" and, because they are "defective," Seagate is legally responsible under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumers Legal Remedies Act ("CLRA"), as well as consumer statutes in eight other states.  According to Plaintiffs, such liability attaches irrespective of whether Seagate replaced their drives under its limited warranty, which Plaintiffs concede it did.  If accepted as sufficient to state a claim, Plaintiffs' allegations would render California warranty law a nullity, because manufacturers would be subject to liability for product failures irrespective of any alleged defect and irrespective of whether the manufacturer fulfilled its warranty obligations.  This is not the law.

To the contrary, the law requires Plaintiffs alleging liability based on a product "defect" at a minimum to identify **what the defect is**—what part or function failed to perform properly? Without such allegations, **any** product failure under **any** circumstances and irrespective of **any** warranty would give rise to potential liability.  Analogizing to a lemon law claim, it would therefore be sufficient merely to allege that a car stopped running—without any specificity as to which part failed and what the manufacturer did to repair it.  Plaintiffs must allege more.  At a minimum, they must identify a particular defect they claim led to their injuries, and they must connect the specified defect **to** those injuries.  Here, moreover, because Plaintiffs have alleged a course of conduct sounding in fraud, they must satisfy the exacting requirements of Rule 9.

Plaintiffs' attempt to distinguish the authorities cited by Seagate misses badly.  The law is clear:  merely equating "failure" with "defect" is insufficient.  Plaintiffs' cases hold no differently, and their claims for fraudulent omission therefore fail.  Their claims for affirmative misrepresentation fare no better, as Seagate's alleged statements are neither false nor misleading as a matter of law.

The fundamental problem with Plaintiffs' theory is that Seagate complied with its warranty terms.  It replaced failed drives as it promised.  Indeed, with one exception (which fails for another

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT

reason), Plaintiffs acknowledge they either received replacements for failed drives or did not request a replacement after an in-warranty drive failed.  As this Court and many others have held, replacing a failed product during the warranty period obviates legal liability under circumstances such as those alleged in the SAC.  Plaintiffs assert they can avoid this law by resort to the "failure of essential purpose" doctrine, but they misstate that law and, in any event, even Plaintiffs' version of it would not save their claims.

Plaintiffs' breach-of-implied-warranty claims fail because they do not allege privity.  The exception to the privity requirement Plaintiffs attempt to invoke has not been recognized by any reported California decision and, even if it had, Plaintiffs fail to allege facts supporting its application here.

Finally, several Plaintiffs' CLRA claims fail because they are either time-barred or have failed to file the required affidavits, or both.  Plaintiffs' authorities are not to the contrary.  The Court should dismiss this action.

## II.    PLAINTIFFS' STATUTORY CLAIMS UNDER ALL STATES' LAWS FAIL

### A.    Rule 9(b) Applies to All of Plaintiffs' Claims

Plaintiffs do not dispute that their statutory claims must meet the heightened standard of Rule 9(b), but they insist their warranty claims "do not sound in fraud" and thus that "the strictures of Rule 8 apply" to those claims.  (Opp., 2:8-9.)  Not so.  Rule 9(b) requires all averments of fraud to be pled with particularity even where "fraud is not an essential element of the claim."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-27 (9th Cir. 2009).  A complaint is "grounded in fraud" where a plaintiff "allege[s] a unified course of fraudulent conduct."  *Id.* at 1125-27.[1]  As with all of Plaintiffs' claims, the warranty claims allege Seagate "knew" that it sold "defective" drives, and did so despite that knowledge—*i.e.,* that Seagate engaged in fraudulent activity.  (*See, e.g.*, SAC ¶ 341 [express warranty claim, alleging Seagate "provided as replacements failed drives that it

---

[1]    Courts have applied Rule 9 to all of a complaint's allegations, including breach of warranty where, as here, the entire complaint "sound[s] in fraud."  *See, e.g., Brothers*, 2006 U.S. Dist. LEXIS 82027, **22-23; *Aloudi v. Intramedic Research Group, LLC*, 2016 U.S. Dist. LEXIS 52417 (N.D. Cal. Apr. 19, 2016) (finding under Rule 9(b) that plaintiff failed to allege a breach of such warranty); *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 793 F. Supp. 2d 651, 678 (S.D.N.Y. 2011) ("Rule 9(b)'s heightened pleading standard applies here because the breach claim turns on whether fraudulent conduct adequately has been pleaded").

1    'refurbished' despite knowing that they were irreparably defective"]; 366 [implied warranty claim,

2    alleging "Plaintiffs and the Class have been damaged by receiving an inferior product from that

3    which they were promised"].)  Indeed, in attempting to rely on the "failure of essential purpose"

4    doctrine, Plaintiffs assert Seagate "provided as replacements failed drives that it 'refurbished'

5    *despite knowing that they were irreparably defective*."  (SAC, ¶ 341, emphasis added.)  Plaintiffs'

6    warranty allegations are based on the same "course of conduct" sounding in fraud and, thus, Rule

7    9 applies.

      **B.**      **Plaintiffs Fail to Allege a False Advertising Claim Under the UCL's Fraud
8                    Prong, the FAL, the CLRA or Any State Consumer Statute**

9            **1.**      **Plaintiffs' Fraudulent Omission Claims Fail**

10                **a.**      **Plaintiffs Fail to Allege A Defect**

11    Plaintiffs spend multiple pages protesting that they need not allege *the mechanical cause*

12    *of the alleged defect*.  (Opp. 12:16-19:2)  But Seagate does not contend the "mechanical cause of

13    a defect" must be alleged.  Rather, the law requires Plaintiffs to allege *a defect* with particularity.

14    Plaintiffs must "*identif[y] a particular design or manufacturing defect and describe[] the*

15    *connection between the defect and the harm to the plaintiff*."  *Punian v. Gillette Co*., 2016 U.S.

16    Dist. LEXIS 34164, *46 (emphasis added).  They have failed to do so.

17    Plaintiffs quote the *Punian* court's observation that plaintiffs there did not allege "any

18    particular likelihood of [battery] leakage," or that there was a "significant, substantial, likely or

19    particular rate of failure."  (Opp., 15:8-9.)  These observations are irrelevant to the holding, which

20    rested on the plaintiffs' failure to "identif[y] any cause for Duralock Batteries' potential to leak

21    within ten years, or allege[] the existence of a design or manufacturing defect in Duralock

22    Batteries."  *Punian*, 2016 U.S. Dist. LEXIS 34164 at *47.

23    Similarly, Plaintiffs assert *Yagman* is "not a consumer protection case," but do not explain

24    why that is relevant—and in any event it is untrue: The *Yagman* plaintiffs alleged a putative class

25    action on behalf of all consumers who purchased Buick Lucernes of model years 2006 to 2011.

26    *Yagman v. General Motors Co*., 2014 U.S. Dist. LEXIS 120045, *1 (C.D. Cal., Aug. 22, 2014).

27    To the extent Plaintiffs assert *Yagman* is somehow inapplicable because plaintiffs there did not

28    assert claims under the UCL, FAL or CLRA, they are wrong.  Indeed, the distinction only

1   emphasizes why their claims fail: *Yagman* applied the lower standard of Rule 8 in dismissing

2   claims for failure to allege a defect; because Plaintiffs here allege a fraudulent course of conduct

3   under the UCL, FAL and CLRA, the more stringent standard of Rule 9 applies.

4          Attempting to distinguish *Decoteau*, Plaintiffs highlight that court's observation that it

5   "does not necessarily expect all plaintiffs to have to 'plead the mechanical details' of a defect."

6   (Opp., 16:18-19, quoting *Decoteau v. FCA US LLC*, 2015 U.S. Dist. LEXIS 152579, *9-10 (E.D.

7   Cal. Nov. 9, 2015).)  Again, Plaintiffs here fail to identify *any* defect and thus whether they must

8   also plead the hypothetical defect's "mechanical details" is beside the point.  Characterizing as

9   "argument" Seagate's description of hard drives as "complex electro-mechanical devices with

10  many moving parts," Plaintiffs assert "the level of complexity does not even approach that of a

11  transmission."  (Opp., 17:3-5.)  Again, beside the point.  The plaintiffs in *Decoteau* at least

12  isolated the part of the vehicles they believed to be defective, the transmission.  These allegations,

13  though more specific than Plaintiffs' here, were insufficient: "Plaintiffs must go further than a

14  conclusory allegation that [a defect] exists . . . because automatic transmissions . . . are

15  complicated systems that demand more detailed factual allegations in order to identify a plausible

16  defect."  *See Decoteau*, 2015 U.S. Dist. LEXIS 152579 at *10.[2]

17         Plaintiffs do not attempt to distinguish the holding in *In re Toyota Motor Corp*., 754 F.

18  Supp. 2d 1208, 1222 (C.D. Cal. 2010), *quoting Lucas v. City of Visalia*, 726 F. Supp. 2d 1149,

19  1155 (E.D. Cal. 2010), that "plaintiffs should '*identify/explain how* the [product] either deviated

20  from [defendant's] intended result/design or *how* the [product] deviated from other seemingly

21  identical [product] models'" (emphasis original).  The only distinction they allege between drives

22  that did *not* fail and drives that *did* fail is the fact of failure.  Thus, according to Plaintiffs, the

23  purported "defect" *is* the failure.  This is insufficient; Plaintiffs must plead a particular source or

24  _____

25  [2]     Plaintiffs assert the Court should disregard that hard drives are "complex electro-
    mechanical devices with many moving parts" because that description is "based upon facts not
26  alleged in the complaint."  (Opp. 17:3-4.)  Yet the SAC alleges hard drives are "electromechanical
    data storage device[s]" that store and retrieve information for a computer using "rotating discs;"
27  drives have "motors to spin or 'drive' the discs;" (SAC ¶ 30) drives "use a moving actuator arm"
    that "magnetically chang[es] or read[s] areas on the platters pursuant to instructions sent from the
28  computer," and the "head arm" is "powered by an actuator motor called the servo motor;" (*Id*., ¶
    31) and "hard drives also have firmware embedded in their memory" (*Id*., ¶ 32).

1    cause of the failure.  *See, e.g., Yagman*, 2014 U.S. Dist. LEXIS 120045 at *6 ("The fact that the

2    engine failed renders it merely possible that a manufacturing defect was the cause"); *Wilson v.*

3    *Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("[p]laintiffs do not plead any facts

4    indicating how the alleged design defect . . . causes the Laptops to burst into flames").[3]

5                        **(1)      Plaintiffs' Authorities Do Not Save Their Claims**

6              Plaintiffs cling to the purported "mechanical details" distinction, citing *Cholakyan v.*

7    *Mercedes-Benz*, 796 F. Supp. 2d 1220, 1237 (C.D. Cal. 2011) for the proposition that they are "not

8    required to plead the mechanical details of an alleged defect."  (Opp., 13:17-18.)  But plaintiffs

9    there alleged "defects in the . . .  water drainage system" in certain vehicles that caused them to

10   "fail[ ] to prevent water from entering the interior of the vehicle." 796 F. Supp. 2d at 1224.

11   Importantly, the *Cholakyan* plaintiffs alleged that the defect in the water drainage system caused

12   "electrical failures," and further alleged the defect "can cause engine failure." *Id*.

13             Unlike the plaintiffs in *Cholakyan*, Plaintiffs here have simply skipped to the allegation of

14   "failure," and labeled ***that*** a "defect."   Analogizing to *Cholakyan*, it is as if Plaintiffs simply

15   alleged "electrical failures" and/or "engine failure," without alleging facts supporting any ***source***

16   of the alleged failure—in *Cholakyan*, the water drainage system.  Plaintiffs fail to identify, much

17   less allege facts supporting, any design or manufacturing defect that could plausibly have led to

18   the supposedly "widespread" drive failures.  That omission is fatal, in part because the failure to

19   identify any defect deprives Seagate of the ability to receive "fair notice . . . and defend itself

20   effectively."  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Under Plaintiffs'

21   allegations, the alleged drive failures could have resulted from a virtually limitless number of

22   sources, including many having nothing to do with Seagate.

23             Plaintiffs' reliance on *Aguilar v. General Motors*, 2013 U.S. Dist. LEXIS 149108 (E.D.

24

25   [3]      *See also Altman v. HO Sports Co*, 2009 U.S. Dist. LEXIS 108971, *23 (E.D. Cal. Nov. 23,
     2009) ("conspicuously absent from [plaintiff's] claims is an identification of what aspect of the
26   [allegedly defective product] makes their design and warning defective"); *Fontalvo v. Sikorsky*
     *Aircraft Corp.*, 2013 U.S. Dist. LEXIS 116052 *10 (S.D. Cal. Aug. 15, 2013) ("Plaintiff does not
27   include factual allegations that identify what aspect of the subject component design and
     manufacture made it defective"); *Knoppel v. St. Jude Medical Inc*., 2013 U.S. Dist. LEXIS
28   104456, *5 (C.D. Cal. May 7, 2013) ("the Complaint does not describe how any of the three
     devices were defective in a way that caused [plaintiff's] injury").

1　　Cal. Oct. 16, 2013), *Ashgari v. Volkswagen Group of America*, 42 F. Supp. 3d 1306, 1328, fn 72

2　　(C.D. Cal. 2013), and *Ehrlich v. BMW of North America*, 801 F. Supp. 2d 908 (C.D. Cal. 2010) is

3　　also misplaced.  None of these cases addresses, much less contradicts, the authorities holding

4　　plaintiffs must plead facts showing a **defect**, rather than conclusory allegations of product **failure**.[4]

5　　**(2)**　　***Pozar* Is Irrelevant**

6　　　　　　Plaintiffs rely heavily on the trial court's decision in the earlier-filed state court *Pozar*

7　　action for the proposition that "a defect was adequately alleged."  (Opp. 13:1.)  *Pozar* does not aid

8　　them, for two reasons.  First, the trial court there applied the lower pleading standards of

9　　California courts.  Here, Rule 9(b)'s particularity requirements apply, requiring Plaintiffs to allege

10　　"the who, what, when, where, and how" of the alleged fraud.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d

11　　1097,  1106 (9th Cir. 2003).  Indeed, the *Pozar* court noted that its decision turned on the fact that

12　　California law had no "specificity requirements."  *Pozar v. Seagate Technology LLC,* 2016 Cal.

13　　Super. LEXIS 5083 *6  (Cal. Sup. Ct. Feb. 10, 2016) "unless there is some *specificity*

14　　requirements, [the complaint has alleged] this is enough for now" (emphasis original).  Second,

15　　*Pozar* does not say what Plaintiffs claim it does.  It did not decide that the defect "was adequately

16　　alleged," as Plaintiffs suggest.  The issue there was whether plaintiffs had alleged a defect *within*

17　　*the warranty period*.  *Id*. at **4-5 ("The question for now is whether the FAC alleges the drives

18　　were unmerchantable within the one year period . . . .  he FAC *does* claim the defect existed *within*

19　　the one-year period" (first emphasis original, second emphasis added).

---

20

21　　[4]　　In *Aguilar*, the court held that plaintiff's allegation of "a steering defect resulting in the
　　potential failure of power steering, pulling to the left and right, and loss of steering control" was

22　　"material to a reasonable consumer."  *Id*. at *13.  The parties do not appear to have raised, and the
　　court did not address, the issue here—whether Plaintiff alleged a defect **at all**.  In any event,

23　　unlike Plaintiffs here, the plaintiff in *Aguilar* actually alleged a defect in a particular part of the
　　car—the steering system—and connected that defect to a specifically alleged result.

24　　　　In *Ashgari*, the court discusses in a footnote the defendants' assertion, made only at oral
　　argument, that plaintiffs "failed to plead the nature of the defect with the particularity required by

25　　Rule 9(b)."  *Ashgari v. Volkswagen Group of America*, 42 F. Supp. 3d 1306, 1328, fn 72.  Unlike
　　Plaintiffs here, the *Ashgari* plaintiffs alleged a specific defect in the engine of the vehicles at

26　　issue—excessive oil consumption.  *Id*. at 1328.  Moreover, they connected that defect to the
　　alleged harm, specifically that it "can cause engine failure while the vehicles are in operation."  *Id*.

27　　Plaintiffs here allege no such facts.  They simply allege a **result**, "drive failure," with no facts
　　supporting the "what" or "how" of that result, as required by Rule 9.

28　　　　*Ehrlich v. BMW of North America*, 801 F. Supp. 2d 908 (C.D. Cal. 2010), contains no
　　discussion of the sufficiency of  plaintiffs' "defect" allegations at all.

1

**b.    Plaintiffs Fail to Allege Seagate Had Any Duty to Disclose**

2       Plaintiff assert there is "some debate in federal court" as to whether a duty to disclose

3   arises in the absence of a safety concern.  However, the Ninth Circuit in *Wilson* was clear: "a

4   manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative

5   misrepresentation or a safety issue." 668 F.3d 1136, 1141 (2012).  And while two district courts

6   have found a duty to disclose absent a safety concern—*see Norcia v. Samsung*, 2015 U.S. Dist.

7   LEXIS 110454 *17 (N.D. Cal. Aug. 20, 2015); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d

8   1212, 1221 (C.D. Cal. 2012)—"the overwhelming majority of courts to consider the issue have

9   found the opposite," *Hodsdon v. Mars, Inc.*, 2016 U.S. Dist. LEXIS 19268 *17 (N.D. Cal. Feb. 17,

10  2016).

11

**c.    Plaintiffs Fail to Allege Seagate Knew of Any Defect**

12      Plaintiffs assert they are not required to allege Seagate knew about the alleged defect to

13  state a claim for fraudulent omission.  To the contrary, "[i]n order to give rise to a duty to disclose,

14  a complaint must contain specific allegations demonstrating the manufacturer's knowledge of the

15  alleged defect." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) (emphasis in

16  original)*; see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160 (N.D. Cal.

17  2011) (claims subject to dismissal unless Plaintiffs make "plausible showing that the defendant

18  knew of the alleged defect when it made the representations alleged to be deceptive").  Moreover,

19  in order to assert a claim of active concealment, as Plaintiffs do here (*see, e.g.,* SAC ¶ 348

20  [Seagate "concealed and did not disclose" information, amounting to "fraudulent conduct"]),

21  Plaintiffs must allege "'affirmative acts on the part of the defendants in hiding, concealing or

22  covering up the matters complained of.'" *Punian*, 2016 U.S. Dist. LEXIS 34164 at *51 (*quoting

23  Lingsch v. Savage*, 213 Cal. App. 2d 729, 734, (1963).  "Mere nondisclosure does not constitute

24  active concealment." *Herron v. Best Buy Co*., 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013).

25  Courts require more than "facts showing that the defendant knew of the alleged defect and did

26  nothing to fix it or alert customers to its existence."  *Elias v. Hewlett-Packard Co.*, 2014 U.S. Dist.

27  LEXIS 16836 *37 (N.D. Cal. Feb. 5, 2014), *quoting Tietsworth v. Sears, 720 F. Supp. 2d 1123,*

28

*1135 (N.D. Cal. 2010).*[5]

Plaintiffs assert they have sufficiently alleged that Seagate knew of the purported defect because the SAC identifies four categories of information: (1) consumer complaints, (2) the Backblaze blog post, (3) statements by Seagate regarding RAID and NAS, and (4) Seagate's "take-back" recycling program. (Opp. 11:8-12:15.)  However, none of these allegations overcomes Plaintiffs' failure to identify any defect, which necessarily includes a failure to allege what it was Seagate "knew" that it was required to disclose.  *See, e.g.*, *Punian*, 2016 U.S. Dist. LEXIS 34164 at *35-36 (plaintiffs failed to allege knowledge and defect).

Plaintiffs do not contest that the Backblaze blog post and the vast majority of online complaints post-date their alleged drive failures and thus cannot provide any basis for the contention that Seagate "knew" about them.  *See Wilson*, 668 F.3d 1136, 1145-48 ("plaintiffs must sufficiently allege that a defendant was aware of a defect ***at the time of sale*** to survive a motion to dismiss") (emphasis added).  As to what a Seagate "customer support representative" purportedly said about the use of Seagate's 3TB drives in RAID arrays (Opp. 12:12), Plaintiffs fail to allege any connection between the allegation that the Drives were "not designed for RAID 5" and the failure of any of their drives.  They allege no facts that the drives failed ***because of*** NAS or RAID configurations, that there was anything in particular about the Drives that made them unsuitable for NAS or RAID uses, or that any alleged unsuitability for NAS or RAID uses harmed any of the Plaintiffs.  Thus, again, they have failed to plead a defect Seagate had a duty to disclose, much less that Seagate knew about any such defect when Plaintiffs bought their drives.[6]

### 2.    Plaintiffs Allege No Actionable Misrepresentations

Plaintiffs rely heavily on *Pozar* for the contention that they sufficiently allege actionable misrepresentations.  (Opp. 4:6-5:14.)  Indeed, they assert that this Court must "ascertain and apply

---

[5]    Plaintiffs assert that, because under the UCL and CLRA a plaintiff "need not show . . . defendant intended to injure anyone," they are not required to plead Seagate's knowledge of the Drives' purported "model-wide defects." (Opp. 10:11.)  Whether the UCL and the CLRA as a general matter require an element of ***intent*** is separate question from (a) whether ***knowledge*** is required, and (b) whether Plaintiffs must plead ***facts*** that Seagate knew of the purported defect. As the authorities cited by Seagate make clear (Mot. at 12), Plaintiffs must plead facts supporting such knowledge, and Plaintiffs cite no authority suggesting otherwise.

[6]    As shown in the Motion, the allegations that Seagate's "take back" program demonstrates knowledge fail on multiple levels, none of which are addressed in the Opposition. (Mot. 10:8-21.)

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT

the existing California law," and thus suggest that *Pozar* is somehow dispositive here. (Opp. 3:13-16.) As noted above, *Pozar* is irrelevant because it applied California pleading standards, whereas Rule 9 is a federal procedural requirement that applies "irrespective of whether the substantive law at issue is state or federal." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. Cal. 2009) (citations and quotations omitted).

Plaintiffs urge the Court to consider the allegedly actionable statements "in their overall context," and suggest that Seagate argues the Court should do otherwise. (Opp. 15:9-15.) However, whether the Court views "the overall context" or not, the statements Plaintiffs allege to be actionable either are not statements of fact or are subjective representations about general characteristics of the Drives that are neither quantifiable nor provably true or false. Plaintiffs attempt to distinguish the holding in *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 133 (C.D. Cal. 2005) that the phrases "performance," "reliability," and "long useful life" are not actionable by arguing that the case "does not stand for this blanket proposition." (Opp. 6:11-13.) But Plaintiffs cite no authority holding that such statements *are* actionable.[7]

In any event, although Plaintiffs assert that Seagate's representations here are "considerably more detailed, specific and definite" than the statements at issue in *Annunziato*, they fail to say how or why. They cite only the following alleged statement:

> Seagate engineers had to pack 340,000 hard drive tracts into the width of a single inch [in order to fit a TB of storage on each platter]. This means that, when reading and writing data, the read-write head needs to accurately follow a track that is a mere 75 nanometers wide. That's about 500 times smaller than the period at the end of this sentence.

---

[7] Plaintiffs cite *Vigil v. General Nutrition Corp.*, 2015 U.S. Dist. LEXIS 63506 (S.D. Cal. May 13, 2015) and *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000 (C.D. Cal. 2010). In *Vigil*, the court addressed the words "premium" and "maximum"—words that are not at issue here and which together suggest a measurable and quantifiable assertion, *i.e.,* the "best" or the "most." Similarly, in *Lima*, the court addressed words not at issue here, *e.g.,* "visually intense." More importantly, *Lima* held that, **in concert with** a specific representation that the video monitors at issue would "deliver[] more than four times the resolution of standard 720p high definition," the general phrase could be understood as false or misleading given the alleged propensity of the monitors **not** to deliver such high resolution. Thus, *Vigil* and *Lima* at most stand for the proposition that words which by themselves are not actionable may be actionable only if paired with other statements that can be quantified. Here, as shown, the allegedly false or misleading statements make no such quantifiable claim, individually or in tandem with other more specific allegations.

1    (Opp. 7:4-7 [quoting SAC ¶ 51].)  Plaintiffs assert that this is a "specific statement meant to

2    impress upon the consumer that the read-write head of the hard drive is accurate and precise."

3    (Opp. 7:8-9.)  But the SAC does not allege the read-write head is **not** accurate and precise, or,

4    indeed, that anything in the above-quoted statement is false or misleading.

5        Plaintiffs next attempt to equate alleged statements by Seagate that the drives "have

6    undergone 'years of trusted performance,'" with the statement "most stringent quality control

7    tests," held to be actionable in *Annunziato*.  (Opp. 7:10-13.)  The analogy fails for two reasons.

8    First, the alleged Seagate statement was not that the Drives had "**undergone** years of trusted

9    performance," as Plaintiffs incorrectly assert, and indeed it is not even clear how any product

10   could "undergo" "years of trusted performance."  Rather, Seagate stated that the drives are

11   "**supported by** 30 years of trusted performance, reliability and simplicity"—in other words, for 30

12   years, Seagate drives have shown "trusted performance, reliability and simplicity."  The statement

13   found actionable in *Annunziato* was that the defendant had **actually performed** "stringent quality

14   control tests," which was actionable as "a specific factual assertion which could be established or

15   disproved through discovery."  *Annunziato,* 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005).

16       Next, Plaintiffs claim that Seagate's annualized failure rate (AFR) statistics are actionable

17   because they are a "specific and measurable advertisement claim of product superiority based on

18   product testing."  (Opp. 7: 21-8:1.)  The AFR numbers are statistical test results.  In that sense,

19   they are "specifically measurable," but they make no representation as to any individual drive, nor

20   could they reasonably be understood to do so.  They also do not make any representation of

21   superiority over other products.  Plaintiffs' authority on this point demonstrates why the alleged

22   statement is not actionable.  In *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1145

23   (1997), the Ninth Circuit distinguished between statements of "general superiority," which are not

24   actionable, and specific statements of superiority **as to other products** that are based on

25   "independent testing," which may be actionable.  108 F.3d at 1145 (citing *W.L. Gore & Assocs.,*

26   *Inc. v. Totes  Inc.*, 788 F. Supp. 800, 809 (D.Del. 1992) ("[a] numerical comparison that product is

27   **seven times more breathable" than competitor products** is actionable) (emphasis added)).  Even

28   if the AFR stats could be understood as a claim of "product superiority," they make no assertion of

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT

1    superiority vis-à-vis other products.[8]

2          Finally, Plaintiffs erroneously assert Seagate's alleged statements that the Drives are

3    "designed for," "perfect for," and "best fit" for RAID or NAS are actionable.  First, Plaintiffs fail

4    to connect the allegedly actionable statements with the harm alleged. The SAC asserts Plaintiffs

5    were harmed because a "model-wide defect[ ]" caused the drives to "fail prematurely at

6    spectacularly . . . high rates."  (SAC ¶ 4.)  However, Plaintiffs allege no facts that the drives failed

7    *because of* the NAS or RAID configurations or that the alleged unsuitability for NAS or RAID

8    uses led to any harm to any of the Plaintiffs.

9          Second, none of the alleged NAS or RAID statements could be false or misleading to a

10   reasonable consumer.  Plaintiffs claim the alleged statements are actionable because "the Drives

11   are not designed for ***certain types of home RAID configurations***." (*Id*., ¶ 6, emphasis added)

12   They further claim the alleged representations "would cause a reasonable person to believe that the

13   Drive is suitable and designed for ***all*** RAID and NAS configurations, including RAID 5." (SAC ¶

14   64, emphasis added)  But none of the allegedly actionable statements asserts that the drives are

15   suitable for ***all*** NAS and RAID configurations, nor do those statements so imply.[9]  Plaintiffs assert

16   that Seagate "should have identified which RAID and NAS arrays are actually 'perfect' and 'best

17   fit' for the drives."  (Opp., 8:17-9:1.)   However, as shown above, Seagate had no duty to disclose

18   under Plaintiffs' fraudulent omission claim and, in any event, Plaintiffs cite no authority

19   supporting the proposition that a manufacturer's product data sheet or webpage must dispel all

20   possible implications raised by its statements.

21   **III.    THE CLAIMS FOR BREACH OF EXPRESS WARRANTY FAIL**

22          Plaintiffs rely on the "failure of essential purpose" doctrine to assert Seagate breached its

---

23   [8]     In any event, Plaintiffs do not allege any of the product specifications are untrue.  True,
24   non-misleading information cannot support a misrepresentation claim.  *In re Sony HDTV*, 758 F.
      Supp. 2d 1077, 1093 (S.D. Cal. 2010) (FAL proscribes only a statement that is "untrue,
25   misleading, and which is known, or which by the exercise of reasonable care should be known, to
      be untrue or misleading").

26   [9]     Indeed, Plaintiffs allege Seagate made representations regarding RAID uses as part of a
      series of proposed appropriate uses for the Drives, *e.g.,* "designed for desktop, tower, or all-in-one
27   personal computers; workstations, home and small business servers; network-attached storage
      devices; direct-attached storage expansion; and home and small-business RAID solutions."  (SAC
28   ¶ 60)  Does this imply the 3TB drives are suitable for all workstations, servers, and PCs as well as
      all possible RAID configurations?  Of course not, and no reasonable consumer would so conclude.

warranty.  However, Plaintiffs misstate the doctrine as applied in the Commercial Code context, and in any event it does not aid them.  A warranty "fails of its essential purpose" only when "a party is ***deprived of its contractual remedy***."  *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1055 (C.D. Cal. 2003) (emphasis added, quotations and citations omitted).  Here, Plaintiffs received the remedy promised—replacement, so the doctrine does not apply.  That a replacement drive might have failed does not change this analysis.[10]

First, Plaintiffs assert that a warranty "fails of its essential purpose" when a manufacturer fails "to cure defects under warranty within a reasonable time after a reasonable number of attempts." (Opp., 21:7-8, *quoting In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 969-70 (N.D. Cal. 2014).)  However, every case plaintiffs cite for this rule derives it from the Song-Beverly Act, which is inapplicable as a matter of law to nine of ten Plaintiffs.[11]  Plaintiffs cite no authority that applies the same rule to warranty claims under the Commercial Code.[12]

Second, to the extent  the rule derived from Song-Beverly could  apply, it does not salvage Plaintiffs' claims.  Song-Beverly provides for ***replacement*** as a remedy where the number of

---

[10]    Plaintiffs assert Seagate "breached the terms of its warranty" because "it was unable to replace the drives with . . . ***non-defective replacements***."  (Opp. 21:4-5, emphasis added.)  But this is not what the warranty says.  Seagate promises to provide "a functionally equivalent replacement product." (SAC, Ex. F.)  The replacement drive is also under warranty—either 90 days from replacement or the remainder of the original warranty, whichever is longer.  (SAC, Ex. F.)  Thus, customers are expressly provided a remedy in the event the replacement fails.

[11]    Song-Beverly requires a purchase in California. Civ. Code § 1792.  Only one Plaintiff, Enders, alleges he purchased a drive in California.  *See* Cal. Civ. Code § 1792; *Annunziato*, 402 F. Supp. 2d at 1142.  All other Plaintiffs are barred as a matter of law from bringing Song-Beverly claims. Plaintiffs further assert that under the "essential purpose" doctrine, "the reasonableness of the number of attempts is a *question of fact*" and thus not appropriate at the pleading stage.  (Opp. 21:9-10, emphasis original.)  However, none of the cases Plaintiffs cite for this proposition even mentions, much less applies, the "essential purpose" doctrine.  *See Jekowsky v. BMW of North America*, 2013 U.S. Dist. LEXIS 175374, **11-12 (N.D. Cal. Dec. 13, 2013); *Robertson v. Fleetwood Travel Trailers of Calif., Inc.*, 144 Cal. App. 4th 785, 797 (2006); *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 19215, **18-19 (S.D. Cal. Feb. 13, 2012).  Rather, all three cases concern claims under Song-Beverly and, in particular, the Song-Beverly Act's specific language providing for a "reasonable number of ***repair*** attempts" (*see Id.*) (emphasis added), which, as we show below, is irrelevant here both as a matter of fact and law.

[12]    The only Commercial Code case Plaintiffs cite states that a warranty fails of its essential purpose if multiple ***repair*** attempts are not made "within a reasonable time."  *See Phillipine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 807 (9th Cir. 1984).  *Phillipine Nat'l Oil* does not stand for the proposition that multiple ***replacement*** attempts can result in a "failure of essential purpose" and, in any event, here Plaintiffs received the remedy promised.

1    ***attempts at repair*** has been "unreasonable."  It states, in pertinent part:

2            Except as provided in paragraph (2), if the manufacturer or its

3            representative in this state does not ***service or repair*** the goods ***to***
         ***conform to the applicable express warranties*** after a reasonable

4            number of attempts, the manufacturer ***shall either replace the goods***
         ***or reimburse the buyer*** in an amount equal to the purchase price

5            paid by the buyer, less that amount directly attributable to use by the
         buyer prior to the discovery of the nonconformity.

6            Cal. Civ. Code § 1793.2(d)(1) (emphasis added).

7            Here, Seagate replaced the allegedly failed drives, and it did so within the warranty period.

8    Thus, Song-Berly is facially inapplicable—the harm it seeks to prevent (failure to ***repair***) is not

9    alleged here, and the remedy it provides (replacement) is one Plaintiffs concede they have already

10   received.  The law is clear that alleging (as Plaintiffs do here) a defendant "replaced a defective

11   [product] with a defective [product]," fails to state a claim for breach of warranty.  *See, e.g.*, *Long*

12   *v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262  **11-12 (N.D. Cal. July 27, 2007) (under

13   Commercial Code, rejecting breach claim where plaintiff alleged defendant "substituted one

14   defective [product] for another"); *Brothers v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 13155,

15   *13 (N.D. Cal. Feb. 12, 2007) (failure to state breach of warranty claim under Commercial Code

16   where computer manufacturer allegedly "replac[ed] a defective part with another defective part").

17   **IV.    THE CLAIMS FOR BREACH OF IMPLIED WARRANTY FAIL**

18           Plaintiffs assert the privity requirement for implied warranty claims does not apply because

19   they are the "intended beneficiaries" of  contracts between Seagate and retailers. (Opp. 23:14-

20   15.)[13]  However, "[n]o reported California decision has held that the purchaser of a consumer

21   product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the

22   distribution agreements linking the manufacturer to the retailer who ultimately made the sale."

23   *Xavier v. Phillip Morris USA,* 787 F. Supp. 2d. 1075, 1083 (N.D. Cal. 2011)[14]

24           In any event, even if the "third party beneficiary" exception were recognized under

25   California law, Plaintiffs have failed to plead facts supporting its application. To avail themselves

26   _____

27   [13]    The Opposition does not dispute that the exception for reliance on a "manufacturer's
     written representations on product labels" does not apply here.

28   [14]    Plaintiffs cite several federal decisions post-dating *Xavier* and finding that the "third party
     beneficiary" exception is available under California law.  No California court has so held.

1   of the rule, Plaintiffs must allege some contractual relationship between Seagate and its retailers.

2   *See, e.g., Huntzinger v. Aqua Lung Am., Inc*., 2015 U.S. Dist. LEXIS 167140, **27-28 (S.D. Cal.

3   Dec. 10, 2015).  Here, Plaintiffs merely allege, conclusorily, that "Plaintiffs and Class members

4   are intended beneficiaries of ***contracts between Defendant and its authorized retailers and***

5   ***sellers*."  (SAC ¶ 365, emphasis added.)  This is insufficient; it assumes the existence of unnamed

6   contracts, the terms of which are not alleged.  *See, e.g., Huntzinger*, 2015 U.S. Dist. LEXIS at

7   **27-28 (although Plaintiff alleged relationship between manufacturer and distributor, "[t]hese

8   conclusory allegations are not supported by facts sufficient to infer a contractual relationship").[15]

9   **V.    THE CLRA CLAIMS FAIL INDEPENDENTLY**

10          **A.    The Claims Are Time-Barred**

11          Relying on *Philips v. Ford Motor Co*., 2015 U.S. Dist. LEXIS **23-28 (N.D. Cal. Jul. 7,

12  2015), Plaintiffs assert the "discovery rule" tolled the statute of limitations for their CLRA claims

13  until each Plaintiff's drive failed. (Opp. 25:2-9.)  *Philips* does not aid them.  First, the discovery

14  rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action."

15  *Fox v. Ethicon Endo-Surgery, Inc*, 35 Cal. 4th 797, 807 (2005).  Plaintiffs are charged with inquiry

16  notice if they have "the ***opportunity to obtain knowledge from sources open to [their]***

17  ***investigation*."  *Id*. at 807-808 (quotations and citations omitted, emphasis added).  Here, the only

18  purported "defect" was drive failure itself—and, as the SAC alleges, the assertion that Seagate

19  drives may fail was widely available when Plaintiffs purchased their drives.  (See, e.g., SAC ¶¶

20  256-263.)  Accordingly, the statutory period began to accrue then, and the claims of Plaintiffs

21  Nelson, Hauff, Schechner, Crawford, Dortch and Smith are time-barred.[16]

22          **B.    Plaintiffs Failed to File Venue Affidavits**

23          Plaintiffs cite two cases where courts did not dismiss because a plaintiff had not filed the

24  venue affidavit required pursuant to Cal. Civ. Code § 1780(d).  (Opp. 24, fn 156.)  However, in

25  _____

26  [15]    Plaintiffs appear to assert that the limited warranty ***itself*** is the unspecified contract
between Defendant and its authorized retailers. (SAC ¶ 365.)  This makes no sense.  The warranty
27  is plainly not an agreement between Seagate and any retailer or seller.  (See SAC, Ex. F.)  In any
event, Seagate does not dispute the existence of an express warranty between it and *customers*
28  who satisfy the warranty's terms.  The issue is whether there is also an implied warranty.
[16]    Plaintiffs admit Smith's CLRA claim is time-barred.  (Opp. 25, fn 166.)

1    those cases the **original plaintiff** filed the required venue declaration with the **original complaint**,

2    but was later removed from the action.  Here, neither of the original plaintiffs, Nelson and

3    Ginsberg, filed venue declarations—**ever**.  (See Dkt. 1.) The fact that Nelson filed an affidavit

4    with the **amended** complaint does not remedy the original failure; nor does it fulfill the obligations

5    of the other Plaintiffs to file their own affidavits.  *See In re Sony HDTV*, 758 F. Supp. 2d at 1094

6    (dismissing CLRA claim in a consolidated class action complaint because plaintiffs failed to

7    provide the required affidavits); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F.

8    Supp. 2d 1070, 1077 (N.D. Cal. 2011) (same).[17]

9    **VI.    THE CLAIMS FOR "UNJUST ENRICHMENT" FAIL**

10         Plaintiffs assert their duplicative "unjust enrichment" claim survives because they "may

11   plead an unjust enrichment claim in the alternative."  (Opp., 25:12.)  But the weight of authority

12   holds such alternative pleading is improper, including (as Plaintiffs acknowledge) a decision by

13   this Court.  *See Dickey v. Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 47383 *24 (N.D.

14   Cal. Apr. 7, 2016) (Whyte, J.) (rejecting "alternative pleading" contention because, as here,

15   plaintiffs' "unjust enrichment theory rests on allegations covered by other claims that provide for

16   legal remedies") (quotations and citations omitted).

17   **VII.   CONCLUSION**

18         The SAC should be dismissed in its entirety and without leave to amend.

19   Dated:  September 23, 2016                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

20

21                                  By_____*/s/ Anna S. McLean*_____
                                              ANNA S. McLEAN

22

23                                      Attorneys for Defendant
                                      SEAGATE TECHNOLOGY LLC

24

25

26   _____

27   [17]    Plaintiffs attempt to distinguish *In re Sony* on the basis that the plaintiffs there "had been directed to file venue affidavits but failed to do so." (Opp. 24, fn 156.)  In that case, the plaintiffs had been previously dismissed without prejudice for failing to file affidavits, and the court again

28   dismissed when they failed to cure.  That does not mean Plaintiffs here had the option of waiting until an initial dismissal to file their affidavits.