```
 1                    UNITED STATES DISTRICT COURT

 2                FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                           SAN JOSE DIVISION

 4

 5    IN RE SEAGATE TECHNOLOGY LLC   )   CV-16-00523 RMW
      LITIGATION                     )
 6    _____)   OCTOBER 7, 2016
                                     )
 7    CONSOLIDATED ACTION            )   PAGES 1 - 18

 8

 9                       TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE RONALD M. WHYTE
10                    UNITED STATES DISTRICT JUDGE

11

12    A-P-P-E-A-R-A-N-C-E-S:

13    FOR THE PLAINTIFFS:    HAGENS BERMAN SOBOL
                             SHAPIRO LLP
14                           BY:  STEVE BERMAN
                                  ASHLEY BEDE
15                           1918 EIGHTH AVENUE, STE 3300
                             SEATTLE, WA   98101
16
                             AXLER GOLDICH
17                           BY:  NOAH AXLER
                             1650 MARKET STREET, STE 3600
18                           PHILADELPHIA, PA   19103

19    FOR THE DEFENDANT:     SHEPPARD MULLIN RICHTER
                             & HAMPTON LLP
20                           BY:  ANNA MCLEAN
                                  DAVID SYNDER
21                           FOUR EMBARCADERO CENTER, 17TH FL.
                             SAN FRANCISCO, CA   94111
22
                             BY:  MUKUND SHARMA
23                           379 LYTTON AVENUE
                             PALO ALTO, CA   94301
24
      COURT REPORTER:        GEORGINA GALVAN COLIN, CSR
25                           LICENSE NO. 10723
```

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                                    OCTOBER 7, 2016 |
| 2 | P-R-O-C-E-E-D-I-N-G-S |
| 3 | (WHEREUPON, COURT CONVENED AND THE FOLLOWING |
| 4 | PROCEEDINGS WERE HAD:) |
| 5 | THE COURT:  GOOD MORNING EVERYBODY. |
| 6 | THE CLERK:  YOUR HONOR, CALLING IN RE SEAGATE |
| 7 | TECHNOLOGY LLC LITIGATION, CASE 16-CV-00523. |
| 8 | COUNSEL, PLEASE STATE YOUR APPEARANCES. |
| 9 | MS. MCLEAN:  GOOD MORNING, YOUR HONOR.  ANNA MCLEAN |
| 10 | FOR THE DEFENDANT SEAGATE.  AND I HAVE WITH ME MUKUND SHARMA |
| 11 | AND DAVID SYNDER FROM OUR OFFICE SHEPPARD MULLIN.  THANK YOU. |
| 12 | MR. BERMAN:  GOOD MORNING, YOUR HONOR.  STEVE |
| 13 | BERMAN ON BEHALF OF THE PLAINTIFFS.  AND WITH ME IS ASHLEY BEDE |
| 14 | OF MY LAW FIRM, AND MR. NOAH AXLER OF CO-COUNSEL'S FIRM. |
| 15 | THE COURT:  ALL RIGHT.  I GUESS THE FIRST ISSUE I'D |
| 16 | LIKE TO ADDRESS IS WHAT, WHAT'S THE OBLIGATION UNDER THE |
| 17 | WARRANTY CLAIMS; IS IT TO REPAIR, OR REPLACE, OR CAN THERE BE |
| 18 | SOME OTHER REMEDY FOR THE ALLEGED BREACH OF EXPRESS WARRANTY? |
| 19 | MS. MCLEAN:  YOUR HONOR, DID YOU WANT ME TO ADDRESS |
| 20 | THAT FIRST? |
| 21 | THE COURT:  GO AHEAD. |
| 22 | MS. MCLEAN:  THE WARRANTY PROVIDES A REMEDY OF |
| 23 | REPLACEMENT WITH A FUNCTIONALLY EQUIVALENT DRIVE.  PLAINTIFFS |
| 24 | HAVE ALLEGED THAT THERE IS SOMEHOW, I THINK TO BOOTSTRAP IT ON |
| 25 | TO A SONG-BEVERLY TYPE ANALYSIS, THEY'VE ALLEGED THAT THERE'S |

1   SOME TYPE OF REASONABLE NUMBER OF ATTEMPTS TO REPLACE
2   REQUIREMENT.  BUT THAT'S NOT WHAT SONG-BEVERLY SAYS.
3              SONG-BEVERLY RELATES TO NUMBER OF ATTEMPTS TO
4   REPAIR.  AND, IN ANY EVENT, ONLY ONE PLAINTIFF FALLS UNDER
5   SONG-BEVERLY BECAUSE ONLY ONE PLAINTIFF BOUGHT THEIR DRIVES IN
6   CALIFORNIA.
7              THE COURT:  OKAY.  THANKS.
8              MR. BERMAN:  OUR POSITION, YOUR HONOR, IS THAT THE
9   STATUTE AT ISSUE FOLLOWS THE UCC REMEDY WHICH PROVIDES FOR
10  "WHERE CIRCUMSTANCES CAUSE AN EXCLUSIVE OR LIMITED REMEDY TO
11  FAIL OF ITS ESSENTIAL PURPOSE, THERE'S A BREACH OF WARRANTY."
12  AND HERE WE HAVE A SITUATION WHERE WE'VE ALLEGED WITH
13  SPECIFICITY A FAILURE OF ESSENTIAL PURPOSE.  I'LL GIVE YOU JUST
14  THREE EXAMPLES.
15             PLAINTIFF NELSON, N-E-L-S-O-N, IN PARAGRAPH 144 AND
16  PARAGRAPH 146, ALLEGES THAT WITHIN THE WARRANTY PERIOD HE
17  BROUGHT A DISK IN FOR REPLACEMENT.  THEY REPLACED IT.  THE
18  REPLACED DISK FAILED, AGAIN WITHIN THE WARRANTY PERIOD.
19             PLAINTIFF HAUFF, H-A-U-F-F --
20             THE COURT:  IS THAT ENOUGH THOUGH?
21             MR. BERMAN:  I THINK IT IS.  I MEAN, AT WHAT -- AT
22  SOME POINT, YOU KNOW, YOU DON'T HAVE TO KEEP -- IT'S A FAILURE,
23  I BELIEVE, OF ESSENTIAL PURPOSE IF A MANUFACTURER REPLACES THE
24  PRODUCT WITH ANOTHER DEFECTIVE PRODUCT.  THE IDEA OF FULFILLING
25  A WARRANTY OBLIGATION IS I COME IN, I BRING YOU MY PRODUCT, AND

1  YOU GIVE ME SOMETHING THAT WORKS; NOT SOMETHING THAT DOESN'T
2  WORK AND AGAIN FAILS WITHIN THE WARRANTY PERIOD.
3          SO THAT'S OUR POSITION; THAT WE HAVE THREE
4  PLAINTIFFS, AT LEAST, ALL BROUGHT THEIR DISKS BACK, THEY ALL
5  GOT A SECOND DISK THAT FAILED AGAIN WITHIN THE WARRANTY PERIOD.
6  THE WARRANTY'S FAILED ON ITS PURPOSE.
7          THE COURT:  DO YOU HAVE ANY CASE THAT SAYS ONE
8  REPAIR ATTEMPT IS ALL THAT'S REQUIRED?
9          MR. BERMAN:  THE CASE, THE KEY CASE WE'RE RELYING
10 ON IN THAT REGARD IS J-E-K-O-W-S-K-Y VS BMW.  IT'S CITED IN OUR
11 BRIEF.
12          SO, AND BOTTOM LINE IS, AS COUNSEL NOTED, THE
13 WARRANTY PROVIDED THAT YOU'RE SUPPOSED TO GET A FUNCTIONALLY
14 EQUIVALENT REPLACEMENT PRODUCT, AND IF YOU GOT ANOTHER
15 DEFECTIVE PRODUCT THAT ISN'T A BREACH OF WARRANTY AND A FAILURE
16 OF THE WARRANTY'S PURPOSE.  THAT'S OUR POSITION ON THAT, YOUR
17 HONOR.
18          MS. MCLEAN:  YOUR HONOR, MAY I RESPOND TO THAT?
19          THE COURT:  VERY BRIEFLY.
20          MS. MCLEAN:  YOUR HONOR, THERE'S NO AUTHORITY THAT
21 PROVIDES THAT REPLACEMENT OF A PRODUCT WITH ANOTHER PRODUCT
22 THAT FAILS MEANS THERE'S FAILURE OF ESSENTIAL PURPOSE.  THAT IS
23 NOT THE LAW.  THE UCC CASE THAT MR. BERMAN CITED DOES NOT SAY
24 THAT.  WHAT THE UCC PROVIDES IS IF THE PERSON FAILS TO GET
25 THEIR REMEDY THAT'S PROVIDED FOR UNDER THE WARRANTY, THEN

1     THERE'S A FAILURE OF ESSENTIAL PURPOSE.  AND NONE OF THE

2     PLAINTIFFS HERE ALLEGED THAT THEY FAILED TO GET THE REMEDY

3     PROVIDED FOR UNDER THE WARRANTY.  IF THEIR DRIVE FAILED, THEY

4     GOT A REPLACEMENT.  IF THEY SENT IT BACK, THEY GOT ANOTHER

5     REPLACEMENT.  IF THEY DIDN'T SEND IT BACK, OF COURSE THEY

6     DIDN'T GET A REPLACEMENT.

7              THERE'S NO PLAINTIFF WHO ALLEGES THEIR DRIVE FAILED

8     MORE THAN ONCE AND THEY DIDN'T GET A REPLACEMENT.  THE ONLY

9     PERSON WHO ALLEGES ANYTHING CLOSE TO THAT IS THE PERSON WHO

10    BOUGHT THEIR DRIVE ON EBAY, CRAWFORD.  EBAY IS NOT AN

11    AUTHORIZED RETAILER, AND SO HE WAS NOT ENTITLED TO A WARRANTY

12    REPLACEMENT IN THE FIRST PLACE.  ALTHOUGH SEAGATE DID PROVIDE

13    HIM ONE, EVEN THOUGH IT DIDN'T HAVE TO.  AND WHEN THERE WAS

14    ANOTHER FAILURE, THEY DID NOT ELECT TO PROVIDE HIM THAT FREE

15    REPLACEMENT.  BUT THERE ARE NO FACTUAL ALLEGATIONS THAT SUPPORT

16    A FAILURE OF THE ESSENTIAL PURPOSE, SINCE EVERY PLAINTIFF GOT A

17    REPLACEMENT DRIVE WHEN THEY ASKED FOR ONE.

18              AND THERE IS NO LAW THAT SAYS A FAILURE OF

19    ESSENTIAL PURPOSE ARISES WHEN THERE'S A SECOND FAILURE.  AND IN

20    FACT, YOUR HONOR'S CASE, BROTHERS, I BELIEVE, HELD PRECISELY

21    THAT.  AND THOSE ARE, THE OTHER CASES CITED IN OUR PAPERS IN

22    ADDITION TO BROTHERS THAT HOLD A WARRANTY REPLACEMENT THAT

23    FAILS AGAIN IS, IS NOT SUFFICIENT TO ALLEGE A FAILURE OF

24    ESSENTIAL PURPOSE.  THANK YOU.

25              THE COURT:  OKAY.  WHAT ABOUT THE THIRD PARTY

1    BENEFICIARY THEORY, WITH RESPECT TO THE COMMERCIAL CODES

2    ALLEGED VIOLATIONS?

3                MS. MCLEAN:  THE THIRD PARTY BENEFICIARY THEORY, ON

4    THE BREACH OF IMPLIED WARRANTY, IT'S MY UNDERSTANDING THAT THAT

5    IS WHAT PLAINTIFFS ARE ARGUING UNDER BREACH OF IMPLIED

6    WARRANTY.  A THIRD PARTY BENEFICIARY'S THEORY TO GET AROUND THE

7    LACK OF PRIVITY.  BUT THEY DON'T ALLEGE ANY CONTRACTS WITH THE

8    SELLERS FROM WHICH THEY WOULD DERIVE A THIRD PARTY BENEFICIARY

9    ANALYSIS.

10               AND THEY SEEM TO BE SAYING WELL, THERE'S AN IMPLIED

11   WARRANTY WITH THE SELLER TO PROVIDE A, TO PROVIDE A WARRANTY.

12   BUT THAT DOESN'T MAKE ANY SENSE BECAUSE THE SELLER ISN'T GOING

13   TO BE USING THE DRIVE, AND OF COURSE THERE'S NO WARRANTY THAT

14   WOULD APPLY.  SO THE ONLY THING THAT COULD APPLY FROM WHICH

15   THERE WOULD BE A POTENTIAL THIRD PARTY BENEFICIARY IS AN

16   EXISTENCE, THE EXISTENCE OF SOME KIND OF OTHER WRITTEN

17   CONTRACT, WHICH IS NOT ALLEGED.

18               MR. BERMAN:  WE RELY ON TWO CASES FOR OUR PRIVITY

19   IS SATISFIED HERE BECAUSE WE'RE THIRD PARTY BENEFICIARIES.  AND

20   THOSE TWO CASES, YOUR HONOR, ARE IN RE MYFORD TOUCH CONSUMER

21   LITIGATION, AND IN RE TOYOTA MOTOR CORPORATION UNINTENDED

22   ACCELERATION.  WE PATTERNED THE COMPLAINT HERE AFTER THE

23   ALLEGATIONS IN THOSE CASES.  I CAN SAY THAT BECAUSE I'M LEAD

24   COUNSEL IN THE FORD CASE AND THE TOYOTA CASE.

25               AND THE ALLEGATION PARTICULARLY THAT WE BELIEVE

1          SATISFIES THE HOLDINGS IN THOSE CASES IS CONTAINED AT PARAGRAPH

2          365 OF THE COMPLAINT, WHERE WE ALLEGE THAT PLAINTIFFS AND CLASS

3          MEMBERS ARE INTENDED THIRD PARTY BENEFICIARIES OF CONTRACTS

4          BETWEEN THE DEFENDANT AND ITS AUTHORIZED RETAILERS AND

5          RESELLERS.

6                   THE RESELLERS COULD NOT POSSIBLY HAVE BEEN THE

7          INTENDED HOLDERS UNDER THE IMPLIED WARRANTY BECAUSE THEY DON'T

8          USE THE PRODUCT; WE DO.  THE CONSUMERS ARE.  SO IN THIS CASE,

9          AS THE COURT FOUND IN FORD MYTOUCH, AND IN TOYOTA, IT MAKES

10         SENSE THAT WE WOULD BE THE THIRD PARTY BENEFICIARIES OF THE

11         IMPLIED WARRANTY HERE.

12                  THE COURT:  WHAT ABOUT THE ARGUMENT THAT -- I'M

13         SWITCHING GEARS NOW.

14                  MR. BERMAN:  SURE.

15                  THE COURT:  THAT A LOT OF THE REPRESENTATIONS WERE

16         PUFFERY?

17                  MR. BERMAN:  YOU WANT ME TO GO FIRST?

18                  THE COURT:  SURE.

19                  MR. BERMAN:  OKAY.  I'M GLAD YOU ASKED THAT

20         QUESTION BECAUSE WHEN I WAS GETTING READY FOR THE ARGUMENT I

21         WAS KIND OF STRUCK BY HOW UNUSUAL THIS CASE IS IN TERMS OF THE

22         MISREPRESENTATIONS.  AND THE REASON I SAY THAT IS I'M SURE THAT

23         YOUR HONOR HAS HAD LOTS OF CONSUMER CASES WHERE THE CONSUMER

24         SAYS THEY WERE EXPOSED TO A GENERAL ADVERTISING CAMPAIGN AND

25         THEY CAN'T REMEMBER EXACTLY WHAT THEY RELIED ON.  I'VE DONE

1   CASES LIKE THAT; I'M SURE COUNSEL HAS.

2   IN THIS CASE YOU HAVE SOMETHING HIGHLY UNUSUAL THAT

3   I CAN'T REMEMBER HAVING BEFORE.  AND I'LL GIVE YOU SOME

4   EXAMPLES OF WHY I SAY THAT.  IN THIS CASE, THE PLAINTIFFS ALL

5   ALLEGE THAT THEY READ THE DATA SHEETS, THE BARRACUDA DATA

6   SHEETS, THEY READ THE WEBSITES, MANY OF THEM READ AND RELIED

7   UPON THE READ ERROR RATE, AND STATEMENTS ABOUT RELIABILITY AND

8   ACCURACY.

9   SO I'LL GIVE YOU AN EXAMPLE, PLAINTIFF M-A-N-A-K,

10  AT PARAGRAPHS 215 THROUGH 218, SAYS HE RELIED ON ALL THOSE

11  THINGS, INCLUDING THE READ ERROR RATE OF ONE PERCENT, WHICH WE

12  ALLEGE WAS GROSSLY WRONG; IT'S 47 PERCENT.  MR. ENDERS,

13  E-N-D-E-R-S, AT PARAGRAPHS 227 THROUGH 30, HE RELIED ON THE

14  SAME MATERIAL.  MR. DORTCH, HE RELIED ON THE REPRESENTATIONS

15  THAT THEY WERE SUITABLE FOR OUR RAID AND NAS CONFIGURATIONS,

16  THAT'S 236 THROUGH 237, AND AT 242.

17  WHEN YOU HAVE PLAINTIFFS RELYING ON VERY SPECIFIC

18  REPRESENTATIONS LIKE THAT, AND IT'S A REASONABLE CONSUMER TEST,

19  SO THESE CONSUMERS REASONABLY BELIEVE THAT THOSE STATEMENTS

20  TOLD THEM THAT THE HARD DRIVES WOULD BE RELIABLE, THAT THEY

21  WERE TOP OF THE LINE IN TERMS OF TECHNOLOGY, AND MORE

22  IMPORTANTLY, THEY WERE SUITABLE FOR RAID AND NAS

23  CONFIGURATIONS.  AND THE COMPLAINT ALLEGES THAT, FOR EXAMPLE,

24  THEY WERE NOT SUITABLE.  AND THE DEFENDANT BASICALLY ADMITS

25  THEY WERE NOT SUITABLE FOR RAID AND NAS CONFIGURATIONS, OTHER

1       THAN RAID ZERO.

2                  THE COURT:  DID THEY -- DO YOU HAVE TO ALLEGE THAT

3       DEFENDANTS KNEW THOSE REPRESENTATIONS WERE FALSE?

4                  MR. BERMAN:  I DON'T BELIEVE WE DO.  UNDER THE

5       CALIFORNIA STATUTES AT ISSUE, KNOWLEDGE IS NOT A REQUIREMENT.

6       BUT, IF YOUR HONOR THINKS THAT WE'RE WRONG ON THAT, I'M GLAD TO

7       TAKE THAT ON.  BECAUSE WE ALLEGE, PLAUSIBLY, THAT THE DEFENDANT

8       KNEW.  HOW DO WE ALLEGE THAT?  WELL, NUMBER ONE, WE ALLEGE THAT

9       THEY NOW ADMIT THAT THE SYSTEM DOESN'T WORK FOR RAID 5.0.  AND

10      THEIR ARGUMENT IS WELL, WE NEVER SAID IT DID.  FIRST, WHAT THEY

11      SAID WAS IT WORKED FOR RAID, PERIOD.  THEY DIDN'T SAY A

12      REASONABLE CONSUMER WOULD ASSUME THAT IT WORKED FOR ANY RAID.

13      SO THEY KNEW THAT IT DIDN'T WORK FOR RAID 5; THAT'S CERTAINLY

14      PLAUSIBLE.

15                 TWO, THE BACKBLAZE MATERIAL ABOUT THE ERROR RATES

16      CERTAINLY WAS KNOWN TO DEFENDANTS.  SO HERE'S A THIRD PARTY

17      REVIEWING THESE PRODUCTS SAYING THAT THEY HAVE A 47 PERCENT

18      ERROR RATE.  IT'S COMPLETELY PLAUSIBLE IN MY VIEW THAT A

19      COMPANY WOULD SEE REPORTS LIKE THIS ABOUT ITS PRODUCT AND THERE

20      WOULD BE ALL KINDS OF DIALOG BACK AT HEADQUARTERS; WHAT'S GOING

21      ON HERE?  DO WE HAVE A PROBLEM OR NOT?

22                 AND THE THIRD PRONG OF OUR KNOWLEDGE ARGUMENT IS

23      THAT THE HUNDREDS OF COMPLAINTS WE REFER TO.  AGAIN, COMPANIES,

24      AT LEAST AT THE PLEADING STAGE, IT'S I THINK LOGICAL TO INFER

25      THAT COMPANIES SCAN THE INTERNET, SCAN WEBSITES, SCAN MATERIALS

1    THAT HAVE CONSUMER COMPLAINTS AND BECOME AWARE OF THEM.  SO

2    THOSE THREE PRONGS, IN OUR VIEW, ESTABLISH AT THIS STAGE THAT

3    THE COMPANY -- THAT IT'S PLAUSIBLE THAT THE COMPANY KNEW OF

4    THESE DEFECTS.

5              THE COURT:  OKAY.  LET ME HEAR FROM YOUR OPPOSITION

6    NOW.

7              MR. BERMAN:  THANK YOU, YOUR HONOR.

8              MS. MCLEAN:  THANK YOU, YOUR HONOR.  I'LL TAKE THE

9    STATEMENTS OF OPINION QUESTION FIRST.  I DIDN'T HEAR COUNSEL

10   ATTEMPT TO DEFEND THE ALLEGATIONS ABOUT THINGS LIKE, YOU KNOW,

11   TRUSTED RELIABILITY, PERFORMANCE.  HE IS NOT NOW CLAIMING THAT

12   THOSE ARE SUFFICIENT TO BE MISREPRESENTATIONS AS OPPOSED TO

13   GENERALIZED STATEMENTS OF OPINION.

14             SO, THEN WE GET TO THE DATA SHEET.  FIRST, NOT ALL

15   THE PLAINTIFFS ALLEGED THAT THEY READ AND RELIED ON IT.  BUT

16   TWO, IT'S JUST A DATA SHEET.  IT DOESN'T PROMISE FUTURE

17   PERFORMANCE.  IT'S STATISTICS ABOUT TESTING RUN ON THE DRIVES

18   PRE-RELEASE.  AND I WOULD SUBMIT, YOUR HONOR, THAT NO

19   REASONABLE CONSUMER WOULD INTERPRET THE SPECIFICATIONS AS A

20   PROMISE OF FUTURE PERFORMANCE AS TO ANY PARTICULAR DRIVE.  THEY

21   HAVE NINE PEOPLE HERE WHO SAID THAT THEIR DRIVES FAILED.  THAT

22   IS NOT SUFFICIENT EVEN TO CALL INTO A QUESTION A LESS THAN A

23   ONE PERCENT FAILURE RATE OF A DRIVE THAT HAS SOLD MILLIONS OF

24   COPIES.

25             THEY NOW, THEY REFER TO THE BACKBLAZE STUDY.  THE

1       BACKBLAZE REPORT WAS PUBLISHED IN MARCH 2015.  SO THAT CAN'T
2       POSSIBLY HAVE GIVEN SEAGATE KNOWLEDGE OF A PURPORTED DEFECT
3       BECAUSE ALL THE PLAINTIFFS BOUGHT THEIR DRIVES BEFORE.  AND THE
4       LAW IS CLEAR THAT TO PROVIDE KNOWLEDGE IT HAS TO BE AT THE TIME
5       THE PLAINTIFFS BOUGHT THEIR DRIVES.
6                 MOREOVER, THE BACKBLAZE REPORT IS CLEAR THAT IT'S
7       NOT PURPORTING TO CALL INTO QUESTION THE AFR'S THAT WERE
8       PUBLISHED.  ALL THEY DO IS SAY THIS IS WHAT THEIR EXPERIENCE
9       WAS IN A SETTING THAT WASN'T, THE DRIVES WERE NOT DESIGNED FOR.
10      THEY ADMIT THAT THEY SHUCK THE DRIVES, AND TAKE THEM FROM THEIR
11      PROTECTIVE CASINGS.  AND THEY ADMIT THAT THEY USE THE DRIVES
12      FOR COMMERCIAL PURPOSES WHICH THEY WERE NOT DESIGNED FOR, AND
13      WHICH VOIDS THE WARRANTY.  SO THAT CAN'T BE KNOWLEDGE THAT THE
14      AFR'S ARE WRONG.
15                AND, IN FACT, THE PLAINTIFFS NEVER ALLEGE THAT THE
16      AFR'S ARE WRONG.  THE ONES WHO SAY THEY RELY ON IT, THEY DON'T
17      SAY THAT THE AFR'S ARE A LIE.  THEY SAY THAT THEIR EXPERIENCE
18      WASN'T CONSISTENT.  BUT I WOULD SUBMIT, YOUR HONOR, THAT THAT
19      IS INSUFFICIENT BECAUSE -- AND AS JUDGE KOH FOUND IN THE PUNIAN
20      VS GILLETTE CASE, WHICH I WOULD RECOMMEND TO YOUR HONOR AS
21      REALLY A TEMPLATE FOR THIS CASE -- THAT MERELY THE ALLEGATION
22      THAT THE DRIVES HAVE A POTENTIAL TO FAIL, WHICH IS EQUIVALENT
23      TO WHAT THE CLAIM WAS IN PUNIAN, THAT THE BATTERIES HAVE A
24      POTENTIAL TO LEAK, IS NOT, IS ONE, IT'S IMMATERIAL; AND TWO,
25      IT'S NOT, NOT A MISREPRESENTATION.

1                    ON THE RAID NAS ISSUE, FIRST, ONLY THREE OF THE
2        PLAINTIFFS, I BELIEVE, SAID THAT THEY USED IT IN A RAID 5
3        CONFIGURATION.  BUT, TWO, I HEARD COUNSEL SAY THAT SEAGATE
4        ADMITS THAT IT'S NOT SUITABLE FOR RAID 5; THAT'S NOWHERE IN THE
5        COMPLAINT.  THAT'S NOT, THAT'S NOT ALLEGED.
6                    WHAT IS ALLEGED IS THAT ONE OR TWO OF THE
7        PLAINTIFFS USED IT IN THAT CONFIGURATION AND THAT THEIR DRIVES
8        FAILED.  BUT THERE'S NO CAUSAL LINK ALLEGED.  THEY DON'T SAY
9        "MY DRIVE FAILED BECAUSE OF THE USE IN A RAID 5 CONFIGURATION."
10       SO THAT DOESN'T AMOUNT TO KNOWLEDGE EITHER.
11                   AND THEN CONSUMER COMPLAINTS; SIMILAR TO THE
12       BACKBLAZE ISSUE, THE CONSUMER COMPLAINTS THAT THEY QUOTE IN
13       THEIR COMPLAINT ARE LARGELY AFTER THE PLAINTIFFS BOUGHT THEIR
14       DRIVE.  AND TWO, AND I THINK THE COURT CAN TAKE JUDICIAL NOTICE
15       OF THIS BECAUSE IN FOOTNOTES TO THEIR COMPLAINT THEY INCLUDE
16       THE URL TO THE NEWEGG AND BACKBLAZE COMMENTS, WHICH THEY QUOTE
17       FROM SELECTIVELY.  SO I THINK THE COURT CAN TAKE JUDICIAL
18       NOTICE OF THE REST OF THEM FOR COMPLETENESS, BUT IF THE COURT
19       LOOKS AT THE AMAZON REVIEWS OR THE NEWEGG REVIEWS, YOU'LL SEE
20       THAT CURRENTLY THE DRIVES GET A 3.6 OUT OF 5 RATING ON NEWEGG,
21       AND THEY GET A 3 OUT OF 5 RATING ON AMAZON.  AND THAT'S AS OF
22       TODAY, AFTER THE NEGATIVE PUBLICITY OF THIS LAWSUIT AND THE
23       BACKBLAZE POSTING.
24                   SO, HOW CAN THAT BE EVIDENCE OF KNOWLEDGE OF A
25       SYSTEMIC DEFECT WHEN YOU HAVE AT MOST MIXED REVIEWS, AND

1    REVIEWS THAT MOSTLY POSTDATE THE, MOSTLY POSTDATE THE
2    PLAINTIFFS' PURCHASES?  AND AS THIS COURT HELD IN THE <u>DONOHUE</u>
3    CASE INVOLVING THE APPLE DROPPED CALLS ISSUE, THERE HAS TO BE
4    KNOWLEDGE AT THE TIME THE PLAINTIFFS BOUGHT THEIR DRIVE.  IN
5    THAT CASE, APPLE FOUND LATER THAT THE BARS THAT IT WAS GETTING
6    ON RECEPTION FOR THE IPHONE WERE NOT ACCURATE IN SOME
7    CIRCUMSTANCES.  AND THE COURT SAID WELL, YOU HAVE TO PLEAD
8    KNOWLEDGE AT THE TIME YOU BOUGHT YOUR IPHONE.  AND IN THIS CASE
9    THE PLAINTIFFS CANNOT AND DO NOT DO THAT.
10             SO, AS TO GENERALIZED STATEMENTS OF OPINION,
11   THEY'RE VAGUE AND NOT ACTIONABLE.  THE ONLY THING THAT IS NOT
12   VAGUE, THE AFR'S IS NOT ALLEGED TO BE FALSE.  AND AS TO THE
13   KNOWLEDGE, NONE OF THEIR ALLEGED FACTS CREATES KNOWLEDGE ON THE
14   PART OF SEAGATE AT THE TIME THE PLAINTIFFS BOUGHT THEIR DRIVE.
15             THE COURT:  OKAY.
16             MS. MCLEAN:  THANK YOU.
17             THE COURT:  ARE YOUR AFFIRMATIVE, FOR YOUR OMISSION
18   CLAIMS, ARE THEY BASED ON A, BASED ON A CONTRARY AFFIRMATIVE
19   REPRESENTATION?
20             MR. BERMAN:  YOUR HONOR, I THINK OUR OMISSIONS
21   CLAIMS ARE MIXED.  AND THE REASON I SAY THAT IS CERTAINLY THE
22   MISREPRESENTATIONS AT ISSUE HERE THAT WE'VE JUST TALKED ABOUT
23   GIVE RISE TO A DUTY TO DISCLOSE MATERIAL FACTS.  SO ALL OF THE
24   MISREPRESENTATIONS THAT WE ALLEGE WERE ACTIONABLE GIVE RISE TO
25   A DUTY TO DISCLOSE.

1               IN ADDITION, WE ALSO HAVE AN OMISSION CASE HERE,
2     IRRESPECTIVE OF AFFIRMATIVE MISREPRESENTATIONS BECAUSE IT'S OUR
3     VIEW THAT THE DEFENDANT HAD SUPERIOR KNOWLEDGE OF THE DEFECT,
4     AND BECAUSE OF THAT KNOWLEDGE, WHICH WAS EXCLUSIVELY IN ITS
5     CONTROL, IT HAD A DUTY TO DISCLOSE CERTAIN THINGS.  SO, FOR
6     EXAMPLE, COUNSEL SAID THAT WE DON'T ALLEGE THAT THERE WAS AN
7     ADMISSION THAT THE RAID 5 WAS NOT COMPATIBLE WITH THE
8     BARRACUDA.  IN FACT, AT PARAGRAPH 111, WE CITE TO AN E-MAIL
9     FROM THE COMPANY TO PLAINTIFF SMITH IN WHICH THE DEFENDANT
10    ADMITTED THAT THE INTERNAL BARRACUDA IS NOT ACTUALLY DESIGNED
11    FOR RAID 5.  SO YOU HAVE KNOWLEDGE THAT'S NOT OUT IN THE
12    PUBLIC, IT'S MATERIAL THAT THIS SYSTEM IS NOT DESIGNED FOR THE
13    TYPES OF USE THAT SOME OF THE CONSUMERS ARE INTENDING TO MAKE
14    OF IT.  AND THE DEFENDANT WITHHELD THAT INFORMATION.
15              IF I COULD GO BACK, YOU KNOW --
16              THE COURT:  DO YOU HAVE OTHER EXAMPLES OF THAT, OF
17    AFFIRMATIVE, OF OMISSIONS THAT WEREN'T BASED ON CONTRARY
18    AFFIRMATIVE REPRESENTATIONS?
19              MR. BERMAN:  YES, YOUR HONOR, I DO.  IN FACT, I
20    MADE A CHART OF THEM.  AND RATHER THAN GO THROUGH EACH ONE OF
21    THEM HERE, IF YOUR HONOR PLEASES, I'LL JUST HAND UP WHAT I
22    THINK ARE THE OMISSIONS IN THE COMPLAINT THAT ARE DIVORCED OF
23    AFFIRMATIVE MISREPRESENTATIONS.  AND I'LL HAND COUNSEL ONE AS
24    WELL.
25              (HANDED TO COURT AND COUNSEL.)

1            MR. BERMAN:  I THOUGHT IT MIGHT MAKE YOUR JOB A

2    LITTLE EASIER JUST TO CONDENSE WHAT'S IN THE COMPLAINT.

3            AT THE BACK OF THAT IS THE LIST OF ALL OF THE, WHAT

4    I WOULD CALL, OMISSIONS THAT ARE PURE OMISSIONS THAT WERE NOT

5    DISCLOSED IN THIS CASE.

6            AND IF I COULD GO BACK TO ONE MORE POINT, YOUR

7    HONOR.  WHEN I STARTED OUT ANSWERING YOUR QUESTIONS ABOUT THE,

8    WHAT AFFIRMATIVE REPRESENTATIONS ARE AT ISSUE, I DID NOT GIVE

9    YOU, I DID NOT GO THROUGH EVERY SINGLE REPRESENTATION.  I GAVE

10   YOU SOME EXAMPLES OF THE PLAINTIFFS' SPECIFIC RELIANCE ON

11   SPECIFIC THINGS.  BUT THE PLAINTIFFS ALSO ALLEGE THAT THEY

12   RELIED ON GENERAL ALLEGATIONS ABOUT THE RELIABILITY AND QUALITY

13   AND PERFORMANCE OF THE SYSTEM.

14           AND WE RELY ON THE POZAR CASE, THERE'S A PARALLEL

15   CASE GOING ON IN CALIFORNIA STATE COURT.

16           THE COURT:  RIGHT.

17           MR. BERMAN:  RIGHT?  AND SO THE COURT THERE FOUND

18   THAT THOSE STATEMENTS WERE ACTIONABLE.  AND THE NOTION THAT,

19   THIS IS THE, THIS IS EXHIBIT D, IT'S THE DATA SHEET, AND IT HAS

20   THE ANNUALIZED FAILURE RATE OF ONE PERCENT.  SEVERAL OF THE

21   PLAINTIFFS SAY THEY RELIED ON THAT.  AND WE ALLEGE AT PARAGRAPH

22   109 THAT THAT WAS FALSE.  IT'S UP TO THE JURY AT THIS POINT TO

23   DECIDE WHETHER THAT RELIANCE WAS REASONABLE.  COUNSEL SAYS IT

24   WASN'T.  BUT WE'RE AT THE PLEADING STAGE, PLAINTIFFS SAY I

25   RELIED ON THIS.  SO WE THINK THAT THAT'S AN ACTIONABLE

1   STATEMENT THAT ALSO GAVE RISE TO A DUTY UNDER THE OMISSION

2   PRONG OF THE STATUTES AT ISSUE TO DISCLOSE THAT THE ERROR RATES

3   WAS MUCH HIGHER.

4           THE COURT:  ANYTHING ELSE YOU WANT TO SPECIFICALLY

5   CALL MY ATTENTION TO?

6           MR. BERMAN:  NO, YOUR HONOR.

7           THE COURT:  ANYTHING FURTHER FROM THE DEFENSE?

8           MS. MCLEAN:  YES, YOUR HONOR, JUST BRIEFLY.

9           I WOULD LIKE YOUR HONOR TO TAKE A LOOK AT EXHIBIT

10  D.  IT IS THE SPECS THAT WERE PUBLISHED.  THEY'RE PURELY DATA.

11  THEY DON'T MAKE ANY PROMISE OF FUTURE PERFORMANCE.  THEY DO NOT

12  SAY THAT THEY'RE APPLICABLE TO EVERY CONSUMER'S DRIVE.  AND

13  EVEN IF THEY WERE, PLAINTIFFS DON'T ALLEGE THAT THEY'RE FALSE.

14  THAT'S THE FUNDAMENTAL ISSUE FOR THIS.  THEY DON'T ALLEGE THAT

15  SEAGATE LIED ABOUT THIS DATA.  IF, IF PLAINTIFFS RELY ON

16  INFORMATION THAT IS NOT MATERIAL, AND THAT IS MISINTERPRETED

17  FOR A PURPOSE THAT CANNOT BE REASONABLY INTERPRETED BY A

18  REASONABLE CONSUMER, THAT CANNOT GIVE RISE TO A CLAIM OF FRAUD.

19          AND THAT'S ONE THING THAT HASN'T BEEN ADDRESSED,

20  YOUR HONOR, WHICH IS WE'RE TALKING ABOUT RULE 9(B) HERE.  THE

21  <u>POZAR</u> CASE IS IN STATE COURT.  FOR ONE THING, IT'S FRAMED IN A

22  BREACH OF WARRANTY CONTEXT, RATHER THAN FRAUDULENT OMISSIONS

23  LIKE THIS CASE.  BUT THE STATE COURT CASE OBVIOUSLY IS NOT

24  UNDER RULE 9, NOR IS IT UNDER RULE 8.  AND THE COURT THERE

25  SPECIFICALLY DISTINGUISHED THE FACT THAT IT WAS NOT REQUIRED TO

16

1        FIND THAT THERE WAS ANY SPECIFICITY OF THE PLEADING OF

2        OMISSIONS IN THE CONTEXT OF A DEMURRER IN STATE COURT.  SO IT

3        IS NOT AUTHORITY FOR THIS COURT IN THIS CONTEXT UNDER RULE 9 OR

4        EVEN UNDER RULE 8.

5                THE, I WAS INTERESTED TO HEAR COUNSEL POINT TO AN

6        E-MAIL IN PARAGRAPH 111 OF THE COMPLAINT THAT ONE PLAINTIFF

7        RECEIVED WHEN HE ASKED A QUESTION ABOUT HIS RAID.  I MEAN, IS

8        THAT, IS THAT WHAT COUNSEL ARE RELYING ON AS A CLASSWIDE

9        REPRESENTATION FOR USE IN HIS PARTICULAR CONTEXT?  THAT MAKES

10       NO SENSE.  I DIDN'T HEAR ANY OTHER REPRESENTATION ABOUT USE AND

11       RAID 5 THAT COUNSEL ARE RELYING ON, OR THAT'S PLED IN THE

12       COMPLAINT.  SO I THINK THE COURT CAN DISREGARD THAT.

13               ALL THE OTHER ALLEGATIONS ABOUT RAID RELATE

14       GENERALLY TO RAID.  THEY DON'T SAY WHAT LEVEL; THEY DON'T

15       PURPORT TO SAY THAT IT'S SUITABLE FOR EVERY CONCEIVABLE USE IN

16       A RAID CONFIGURATION.  AND I THINK THE COURT CAN DETERMINE THAT

17       THAT IS NOT A REASONABLE INTERPRETATION OF THE STATEMENTS THAT

18       ARE ALLEGED ABOUT RAID.

19               AS TO SUPERIOR KNOWLEDGE, I THINK WE'VE COVERED

20       THAT PRINCIPALLY.  THE ALLEGATIONS MOSTLY RELATE TO STATEMENTS

21       OR TO ISSUES THAT AROSE AFTER THE PLAINTIFFS BOUGHT THEIR

22       DRIVE.  THE BACKBLAZE REPORT OBVIOUSLY IS WHAT SPARKED THIS

23       CASE AND WHAT SPARKED THE STATE COURT CASE.  BUT THAT WAS

24       PUBLISHED IN MARCH 2015.  SO IT CANNOT BE A BASIS FOR

25       KNOWLEDGE, NOR CAN CONSUMER COMPLAINTS.  THERE ARE MANY, MANY

1   AUTHORITIES IN OUR PLEADINGS THAT SAY INTERNET COMPLAINTS ARE
2   NOT RELIABLE AND ARE NOT SUFFICIENT TO PROVIDE KNOWLEDGE.  AND
3   I THINK WE'VE DEALT WITH THE RAID AND NAS.
4              PLAINTIFFS ALSO ALLEGE THAT SOMEHOW SEAGATE'S
5   RECYCLING PROGRAM IS AN INDICATION OF KNOWLEDGE.  THAT'S HARD
6   FOR ME TO UNDERSTAND.  SEAGATE SAYS IT WILL TAKE BACK DRIVES
7   UNDER WARRANTY AND EITHER RECYCLE THEM OR REFURBISH THEM.  AND
8   PLAINTIFFS WANT TO MAKE THAT INTO SOME KIND OF ADMISSION OF A
9   DEFECT, BUT IT DOESN'T PURPORT TO BE THAT.  IT'S SIMPLY A GREEN
10  PRACTICE ON THEIR CORPORATE CITIZENSHIP PAGE.  AND I DON'T
11  THINK ANY PLAINTIFF WOULD REASONABLY INTERPRET THAT AS ANY KIND
12  OF ADMISSION OF A DEFECT.
13             IS THERE ANYTHING ELSE THAT YOUR HONOR WOULD LIKE
14  TO HEAR FROM ME?
15             THE COURT:  NO; I THINK THAT COVERS IT.
16             MS. MCLEAN:  THANK YOU.
17             THE COURT:  OKAY.  MATTER STANDS SUBMITTED.
18             MR. BERMAN:  THANK YOU, YOUR HONOR.
19             THE COURT:  THANK YOU.
20             (WHEREUPON, PROCEEDING WAS CONCLUDED.)

**CERTIFICATE OF REPORTER**

     I, GEORGINA GALVAN COLIN, PRO TEMPORE COURT REPORTER FOR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

     THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDING HAD IN THE ABOVE-ENTITLED MATTER, THAT I REPORTED THE SAME IN STENOTYPE TO THE BEST OF MY ABILITY, AND THEREAFTER HAD THE SAME TRANSCRIBED BY COMPUTER-AIDED TRANSCRIPTION AS HEREIN APPEARS.

DATED: OCTOBER 19, 2016

*/S/ GEORGINA GALVAN COLIN*
GEORGINA GALVAN COLIN, CSR
LICENSE NUMBER 10723