1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                  NORTHERN DISTRICT OF CALIFORNIA

6

7

8    IN RE SEAGATE TECHNOLOGY LLC                     Case No.  16-cv-00523-JCS
     LITIGATION
9
                                                       **ORDER GRANTING IN PART AND
10   CONSOLIDATED ACTION                               DENYING IN PART MOTION TO
                                                       DISMISS SECOND CONSOLIDATED
11                                                     AMENDED COMPLAINT**

12                                                     Re: Dkt. No. 68

13   **I.      INTRODUCTION**

14          Plaintiffs[1] bring this putative class action against Defendant Seagate Technology LLC

15   ("Seagate"), alleging that Seagate misrepresented certain hard drives and delivered defective

16   drives to consumers.  Seagate moves to dismiss for failure to state a claim. The Court, the

17   Honorable Ronald Whyte presiding, heard argument on October 7, 2016.  Following Judge

18   Whyte's retirement, this case was reassigned to the undersigned magistrate judge for all purposes

19   upon consent of the parties pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below,

20   Seagate's motion to dismiss is GRANTED in part and DENIED in part.  Plaintiffs may amend

21   their complaint to address the deficiencies identified below no later than March 3, 2017.

22   **II.     BACKGROUND**

23          Seagate manufactures and distributes hard drives.  2d Consolidated Am. Compl. ("SCAC,"

24   dkt. 62) ¶ 25.[2]  Seagate released the Seagate Barracuda 3TB internal hard drive, model number

25   ST3000DM001, in October of 2011.  *Id.* ¶ 2.  Seagate subsequently released two external 3TB

26

27   _____
     [1] Plaintiffs are Christopher Nelson, Dennis Crawford, Joshuah Enders, David Schechner,
     Chadwick Hauff, James Hagey, Nikolas Manak, John Smith, and Dudley Lane Dortch IV.
28   [2] Although Plaintiffs have amended their complaints multiple times, Seagate's present motion is
     the first motion to dismiss in this litigation.

United States District Court
Northern District of California

hard drives—the Backup Plus 3TB and GoFlex3TB—that enclosed the same model number ST3000DM001 hard drives in an external casings with external power supplies and USB connectors.  *Id.* ¶¶ 2, 47−48.  In late 2012 or early 2013, Seagate rebranded the Barracuda 3TB internal drive as the "Desktop HDD" internal drive, but the model number remained the same.  *Id.* ¶ 46.  According to Plaintiffs, Seagate has continuously and falsely marketed these model number ST3000DM001 "Barracuda" hard drives as "reliable, dependable, and suitable for use in Network Attached Storage ("NAS") and Redundant Array of Independent Disks ("RAID") configurations." *Id.* ¶¶ 3−4.  Plaintiffs allege that the Barracuda drives[3] had a "latent, model-wide defect" that caused them to fail at annual rate "as high as 47.2%" and that the drives "are not designed for certain types of home RAID configurations."  *Id.* ¶¶ 4, 5.

The nine named plaintiffs[4] are citizens of nine different states, each of whom purchased at least one Seagate Barracuda hard drive from an authorized retailer.  *Id.* ¶¶ 14−17, 19−23, 135−136, 149−50, 162−63, 174−75, 186−87, 211−12, 223−24, 232−33, 243−44.  Each named plaintiff alleges reliance on Seagate's advertising representations and express warranty.  *Id.* ¶¶ 137−40, 151−54, 165−67, 176−79, 188−93, 213−18, 225−39, 234−36, 245−47.  Each named plaintiff also alleges that at least one of his Barracuda drives failed under warranty.  *Id.* ¶¶ 144, 158, 169, 182, 195−201, 220, 230, 239, 249.  Plaintiffs seek to represent a nationwide class of individuals who purchased at least one Seagate model ST3000DM001 or, in the alternative, nine statewide subclasses of purchasers.  *Id.* ¶¶ 264−65.

Plaintiffs assert claims for breach of express and implied warranty (Claims 4 through 7), violation of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act and the consumer protection statutes of the eight other states of the named plaintiffs' citizenship (Claims 1 through 3 and 8 through 15), and unjust enrichment (Claim 16).

/ / /

/ / /

---

[3] This Order uses the terms "drives," "hard drives," or "Barracuda drives" interchangeably to refer to the various Seagate products discussed above consisting of or containing model number ST3000DM001 hard drives.

[4] A tenth named plaintiff voluntarily dismissed his claims.  *See* dkts. 66, 67.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## III.     ANALYSIS

### A.     Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Plaintiffs' false advertising claims are subject to Rule 9(b) of the Federal Rules of Civil Procedure, which sets a heightened pleading standard for claims based on fraud.  "In alleging

1  fraud or mistake, a party must state with particularity the circumstances constituting fraud or

2  mistake." Fed. R. Civ. P. 9(b).  The Ninth Circuit has held that in order to meet this standard, a

3  "complaint must specify such facts as the times, dates, places, benefits received, and other details

4  of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see*

5  *also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013).  "Rule 9(b) demands that the

6  circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the

7  particular misconduct . . . so that they can defend against the charge and not just deny that they

8  have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)

9  (alteration in original) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001))

10  (internal quotation marks omitted).  The heightened pleading standard does not apply to state-of-

11  mind allegations.  Fed. R. Civ. P. 9(b).

12       Seagate argues that Plaintiffs' warranty claims are also subject to Rule 9(b) because

13  Plaintiffs allege "a unified course of fraudulent conduct."  Where a plaintiff alleges a unified

14  course of fraudulent conduct, the claims are "said to be 'grounded in fraud' or to 'sound in fraud,'

15  and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).'" *Kearns*,

16  567 F.3d at 1125 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.

17  2003)).  Here, however, Plaintiffs' complaint is not based on a unified course of fraudulent

18  conduct.  Plaintiffs' warranty claims are based Seagate's alleged failure to deliver non-defective

19  drives, rather than Seagate's alleged use of false or misleading statements in advertising.  *See*

20  SCAC ¶¶ 10, 11.  Seagate argues that Plaintiffs allege fraudulent conduct in connection with their

21  express warranty claims by alleging that Seagate provided replacement drives that Seagate

22  'refurbished' *despite knowing* that they were irreparably defective and highly likely to fail again."

23  SCAC ¶¶ 341, 374 (emphasis added).  But "[w]here fraud is not an essential element of a claim,"

24  as is true of Plaintiffs' warranty claims, "only those allegations of a complaint which aver fraud

25  are subject to Rule 9(b)'s heightened pleading standard." *Kearns*, 567 F.3d at 1124 (citing *Vess*,

26  317 F.3d at 1105).  Moreover, even under Rule 9(b), "[m]alice, intent, knowledge, and other

27  conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

28

**B.      Express Warranty Claims**

Seagate contends that Plaintiffs' allegations do not show any violation of its express warranty, because Plaintiffs acknowledge that Seagate provided replacement drives as required by the terms of its warranty.  *See* Mot. (dkt. 68) at 20.  Plaintiffs do not meaningfully dispute that point, but argue instead that this claim should proceed based on the "essential purpose" doctrine and on California's Song-Beverly Consumer Warranty Act.  *See* Opp'n (dkt. 72) at 20−23.

**1.  Seagate's Limited Warranty**

**a.  Allegations of Defective Replacement Drives**

Seagate's limited warranty covers "any defects in material or workmanship" in new Seagate products purchased from authorized retailers or resellers.  SCAC Ex. F at 1.  Under the warranty, Seagate promises to "replace" defective products "without charge with a functionally equivalent replacement product" if consumers "follow proper return procedure."  *Id.*  Plaintiffs do not allege that Seagate breached the warranty by failing to replace defective drives upon request.  Rather, Plaintiffs allege that Seagate breached the express warranty by "replac[ing] defective Drives with defective Drives."  SCAC ¶¶ 341, 374.  Plaintiffs' opposition asserts that five named plaintiffs—Schechner, Hagey, Crawford, Dortsch, and Smith—received replacement drives that failed during the warranty period, and two additional plaintiffs—Nelson and Hauff—received replacement drives that began to malfunction (but did not fail entirely) during the warranty period.  Opp'n at 20.

Under the terms of the warranty, a replacement drive must only be "functionally equivalent" to the original product.  *Id.* Ex. F at 1.  Plaintiffs do not plausibly allege that replacement drives were more prone to failure than retail drives.[5]  Moreover, the terms of the warranty contemplate a remedy for defective replacement drives—namely warranty coverage "for

---

[5] To the extent that Plaintiffs' conclusory assertion that the refurbished drives provided as replacements were "highly likely to fail again," *see* SCAC ¶ 341, could be construed suggesting that replacement drives were not "functionally identical" to retail drives, that assertion is not supported by sufficient factual allegations to survive scrutiny under *Iqbal* and *Twombly*.  The Court also notes that Seagate's warranty expressly permits it to "replace [a returned] product with with a product that was previously used, repaired and tested to meet Seagate specifications."  *Id.* Ex. F at 1.  Plaintiffs do not plausibly allege that Seagate failed to repair and test refurbished drives as required by the warranty.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the greater of either the remainder of the original product warranty or 90 days." *Id.*  Reading the

2    warranty as a whole, failure of a replacement drive under warranty would require only that

3    Seagate provide another replacement.  Absent circumstances sufficient to satisfy the essential

4    purpose doctrine or the Song-Beverly Act, discussed separately below, the Court holds that failure

5    of a replacement drive—which Plaintiffs characterize as "replac[ing] defective Drives with

6    defective Drives," SCAC ¶¶ 341, 374—is not in itself a breach of the express terms of Seagate's

7    warranty, so long as Seagate provided a further replacement upon request if the drive was still

8    within warranty.

9                    **b.  Failure to Provide Replacement Drives**

10          Plaintiffs' express warranty claims, as currently alleged, are based on Seagate's failure to

11   deliver "conforming, non-defective Drives to Plaintiffs and Class Members *despite sending*

12   *replacement Drives to them.*"  SCAC ¶¶ 338, 371 (emphasis added).  The Second Consolidated

13   Amended Complaint does not put Seagate on notice of a claim for failure to send replacements on

14   request.

15          In footnotes, Plaintiffs nevertheless contend that Seagate refused requests for second

16   replacements from two named Plaintiffs, Dudley Lane Dortch and Dennis Crawford.  *See* Opp'n at

17   22 & nn.140−41.  It is not clear from the complaint, however, that either Dortch or Crawford's

18   drive failed under warranty.  Plaintiffs themselves allege that the warranty for Dortch's

19   replacement drive had expired before he sought a second replacement.  *See* SCAC ¶ 240 (alleging

20   that Dortch's drives "were just outside warranty" at the time in question).  As for Crawford,

21   Plaintiffs allege that he purchased the original drive at issue from eBay, with no allegation that

22   eBay itself or the particular eBay user who sold the drive was an authorized reseller.  *Id.* ¶¶ 186,

23   198, 201; *see also id.* Ex. F at 1 ("Only consumers purchasing this product from an authorized

24   Seagate retailer or reseller may obtain coverage under this limited warranty.").  The Court declines

25   to infer from Seagate's initial replacement of the drive that eBay was in fact an authorized reseller,

26   nor is the Court persuaded that the failed replacement drive fell within the scope of the warranty

27   even if the initial drive that it replaced did not.  *Cf.* Opp'n at 22 n.141 (advancing those

28

1   arguments).[6]

2        Plaintiffs therefore do not adequately allege breach of the express warranty.  If Plaintiffs

3   are aware of facts to support such a claim—e.g., if Crawford in fact purchased his initial drive

4   from an authorized retailer and was nevertheless refused service when his replacement drive failed

5   under warranty—Plaintiffs may amend their complaint to so allege.

6              **2.  Essential Purpose Doctrine**

7        Rather than focusing on the express terms of Seagate's warranty, Plaintiffs instead rely

8   primarily on the essential purpose doctrine, described in the Uniform Commercial Code and

9   adopted in all nine states at issue, which provides that "[w]here circumstances cause an exclusive

10  or limited remedy to fail of its essential purpose, remedy may be had as provided" in the code.

11  *See* Cal. Com. Code § 2719; Fla. Stat. § 672.719(2); 810 Ill. Comp. Stat. 5/2-719(2); Mass. Gen.

12  Laws ch. 106, § 2-719; N.Y. U.C.C. Law § 2-719(2); S.C. Code Ann. § 36-2-719(2); S.D.

13  Codified Laws § 57A-2-719(2); Tenn. Code Ann. § 47-2-719(2); Tex. Bus. & Com. Code Ann.

14  § 2.719(B).  But the essential purpose doctrine only "becomes operative when a party is deprived

15  of its contractual remedy."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d

16  1040, 1055 (C.D. Cal. 2003) (citations omitted).  The "aggrieved party '[o]rdinarily . . . must

17  provide [the other party] a reasonable opportunity to carry out the exclusive or limited remedy

18  before . . . successfully [arguing] failure of essential purpose.'"  *Id.* (alterations in original)

19  (quoting 1 White & Summers, *Uniform Commercial Code*, § 12-10 at 661); *see also Philippine*

20  *Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) ("[T]he law is that a repair or

21  replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful

22  within a reasonable time." (emphasis omitted)).

23        The essential purpose of Seagate's limited warranty is to ensure that customers are not

24  deprived of functional drives during the warranty period—a purpose that can be fulfilled either by

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27  [6] The Second Consolidated Amended Complaint also alleges that Seagate refused a second request for replacement by former plaintiff Adam Ginsberg, whose first replacement drive may have failed within the warranty period.  *See* SCAC ¶¶ 203−10.  Ginsberg voluntarily dismissed his claims

28  after the filing of the operative complaint.  *See* dkts. 66, 67.  This Order therefore does not consider allegations regarding Ginsberg's experience.

United States District Court
Northern District of California

1    drives continuing to function as intended, or by Seagate replacing defective drives with functional

2    drives.  *See generally* SCAC Ex. F.  In this case, as discussed above, Plaintiffs do not allege that

3    Seagate failed to provide a replacement for a defective drive still under warranty after being

4    presented with an opportunity to do so.  Plaintiffs argue that "[d]ue to the stress and strain, both

5    emotional and financial, that a drive failure can cause, many consumers are understandably

6    unwilling to continue to use a particularly drive model after the originals and replacements have

7    failed," Opp'n at 23 (emphasis omitted), but cite no authority that would excuse Plaintiffs' failure

8    to seek a remedy under the terms of the warranty.  *Cf., e.g.*, *In re MyFord Touch Consumer Litig.*,

9    46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) ("[B]efore the exclusive repair and replace remedy is

10   considered to have failed of its essential purpose, 'the seller *must be given an opportunity* to repair

11   or replace the product.'" (quoting *Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d

12   721, 729 (S.D. Ohio 2008) (emphasis added in *MyFord Touch*))).

13          Plaintiffs argue that "[a]s long as there is more than one opportunity to fix the

14   nonconformity, the reasonableness of the number of attempts is a question of fact to be determined

15   in light of the circumstances."  Opp'n at 21 (emphasis omitted).  Two of the three cases that

16   Plaintiffs cite for this proposition applied it in the context of the Song-Beverly Act, not the

17   essential purpose doctrine.  *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App.

18   4th 785, 799 (2006); *Jekowsky v. BMW of N. Am., LLC*, No. C 13-02158 JSW, 2013 WL 6577293,

19   at *4 (N.D. Cal. Dec. 13, 2013) (quoting *Robertson*).  Regardless, Plaintiffs have not plausibly

20   alleged that Seagate failed to provide any plaintiff with a functional drive after "more than one

21   opportunity to fix the nonconformity."  *Cf.* Opp'n at 21; *see also Philippine Nat'l*, 724 F.2d at 808

22   (stating that the essential purpose doctrine requires "repeated [unsuccessful] repair attempts").

23   The only named plaintiff who replaced the same drive twice, David Schechner, has not used the

24   drive he received after the second replacement and thus does not plausibly allege any deficiency of

25   that drive.  *See* SCAC ¶ 172.[7]

26   _____

27   [7] One case cited by Plaintiffs appears to have held that multiple attempts to have products repaired
     can be aggregated among several plaintiffs to establish a breach of warranty under the essential

28   purpose doctrine.  *See Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-
     RBB, 2012 WL 2861160, at *1, *6 (S.D. Cal. Feb. 13, 2012) (allowing an essential purpose claim

1    While there would likely be some point at which repeated failure of replacement drives

2    would deprive consumers of the essential purpose of the warranty, the Court declines to hold, in

3    the absence of authority, that a mere two successive failures within the warranty period—or in

4    other words, only one unsuccessful replacement—can meet that test where a warranty both

5    specifically contemplates replacement of defective drives and provides the same warranty

6    coverage for replacement drives.

7                   **3.    Song-Beverly Act**

8    Nor can Plaintiffs sustain their express warranty claims through California's Song-Beverly

9    Consumer Warranty Act, which provides in relevant part that "if the manufacturer . . . does not

10   service or repair the goods to conform to the applicable express warranties after a reasonable

11   number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an

12   amount equal to the purchase price paid by the buyer, less that amount directly attributable to use

13   by the buyer prior to the discovery of the nonconformity."  Cal. Civ. Code § 1793.2(d)(1); *see*

14   Opp'n at 20–21.  This argument fails for multiple reasons.

15   By its terms, the statute addresses failure to repair after a reasonable number of attempts—

16   not failure to replace.  Here, Seagate's express warranty authorized consumers to return products

17   in exchange for a replacement, rather than for repair.  *See* SCAC Ex. F at 1 ("By sending product

18   for replacement, you agree to transfer ownership of the original product to Seagate.  Seagate will

19   not return your original product to you.").  Section 1793.2(d)(1) contemplates replacement as a

20   remedy in the event that repair attempts fail.  In this case, Seagate already promised to replace

21   defective replacement drives under warranty, and Plaintiffs do not allege that any of them

22   requested "service or repair" from Seagate.  Nor, as discussed above, do Plaintiffs allege that

23   Seagate failed to replace a defective drive that was under warranty upon request.  Because there is

24   no allegation that any plaintiff sought repair services, much less that Seagate failed to provide a

25

26   _____

27   to proceed based on allegations that "Plaintiffs collectively made at least ten repair attempts"). This Court respectfully disagrees with the aggregate analysis of *Horvath*, and declines to hold that a limited warranty remedy fails at its essential purpose absent a showing that a *particular plaintiff*

28   was unable to obtain a satisfactory product despite giving a defendant a reasonable number of opportunities to remedy the defect.

United States District Court
Northern District of California

replacement after an unsuccessful repair, the statute does not apply to Plaintiffs' asserted claims.

Moreover, section 1793.2(d)(1) is limited to goods sold in California. *See Cummins, Inc. v. Superior Court*, 36 Cal. 4th 478, 490 (2005) (concluding "that subdivision (d)(2) of section 1793.2, like subdivision (d)(1) . . . is limited to new motor vehicles *sold in this state*" (emphasis added)). Only one named plaintiff, Joshuah Enders, alleges that he purchased Seagate hard drives in California, and Enders does not allege that he presented any hard drive to Seagate—either for repair or for replacement. *See* SCAC ¶¶ 223−31.

Finally, "[t]he reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances, but at a minimum there must be more than one opportunity to fix the nonconformity." *Robertson*, 144 Cal. App. 4th at 798−99. As discussed above in the context of the essential purpose doctrine, there is no allegation that any plaintiff provided Seagate "more than one opportunity to fix the nonconformity" of a defective drive within the warranty period.

* * *

Plaintiffs do not adequately state a claim for breach of express warranty, whether under the terms of the warranty itself, under the essential purpose doctrine, or under the Song-Beverly Act. Seagate's motion is therefore GRANTED as to Plaintiffs' express warranty claims, which are DISMISSED with leave to amend if Plaintiffs can allege sufficient facts to remedy the deficiencies discussed above.

### C.      Implied Warranty Claims

Plaintiffs assert breach of the implied warranty under the California Commercial Code, California's Song-Beverly Act (which provides for an implied warranty separately from the reasonable-opportunity-for-repair statute discussed above), and statutes of the eight other states of the named plaintiffs' citizenship. *See* Cal. Com. Code § 2314; Cal. Civ. Code § 1792; 810 Ill. Comp. Stat. 5/2-314, 5/2A-212; Fla. Stat. § 672.314; Mass. Gen. Laws ch. 106, § 2-314; N.Y. U.C.C. Law § 2-314; S.C. Code § 36-2-314; S.D. Codified Laws § 57A-2-314; Tenn. Code § 47-2-314; Tex. Bus. & Com. Code § 2.314. Seagate does not address Plaintiffs' California implied warranty claim under the Song-Beverly Act, which does not require privity. *See* Cal. Civ. Code

United States District Court
Northern District of California

§ 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."); *MyFord Touch*, 46 F. Supp. 3d at 982; *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *10 (S.D. Cal. Oct. 29, 2013). Nor does Seagate address Plaintiffs' implied warranty claims brought under the laws of the other eight states. Seagate's motion is therefore DENIED as to those claims.

Section 2314 of the California Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale," which includes a warranty that "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314. Seagate challenges Plaintiffs' claim under this statute solely on the basis of a lack of privity—Seagate does not, for example, contest the sufficiency of Plaintiffs' allegations that that the drives at issue fall below the standard of merchantability. *See* Mot. at 22−23; Reply (dkt. 77) at 13−14. "The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.,* 198 Cal. App. 3d 646, 656 n.6 (1988)). "Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* (citing *Osborne*, 198 Cal. App. 3d at 656 n.6). Plaintiffs contend that they can nevertheless pursue this claim against Seagate under the third-party beneficiary exception to the privity requirement.

The parties dispute whether the third-party beneficiary exception is viable in the consumer warranty context. Seagate argues that "'[n]o reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale.'" Mot. at 22−23 (quoting *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011)). Plaintiffs point to a number of federal district court decisions that found the exception "viable under California law" and applied it to consumer claims

11

1    against a manufacturer based on the manufacturer's agreement with a reseller.  Opp'n at 23−24

2    (citing, *e.g.*, *MyFord Touch*, 46 F. Supp. 3d at 984 (relying on *Gilbert Fin. Corp. v. Steelform*

3    *Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978) and rejecting the holding of *Xavier*)).[8]

4            Cases finding a third-party beneficiary exception generally trace their holding to *Gilbert*, in

5    which a California appellate court held that the owner of a building could bring an implied

6    warranty of fitness claim against a subcontractor who installed a leaky roof, despite a lack of

7    privity, because the owner was an intended beneficiary of the contract between the subcontractor

8    and the general contractor that the owner had hired.  *See Gilbert*, 82 Cal. App. 3d at 67, 69.  As far

9    as the Court is aware, Seagate is correct that no published decision of a California court has

10   applied this doctrine in the context of a consumer claim against a product manufacturer.

11   Recognizing that federal district courts have reached different conclusions, the Court holds that

12   such an approach would be inconsistent with the Ninth Circuit authority.

13           In *Clemens*, the purchaser of Dodge Neon automobile argued that "similar equities,"

14   beyond certain specific exceptions not applicable here, supported an exception to the privity

15   requirement for his implied warranty claim against the car manufacturer.  *Clemens*, 534 F.3d at

16   1023.  The Ninth Circuit "decline[d] this invitation to create a new exception that would permit

17   [the] action to proceed."  *Id.* at 1023−24.  Although the Ninth Circuit acknowledged authority

18   from other jurisdictions finding the privity requirement "an archaism in the modern consumer

19   marketplace," it held that "California courts have painstakingly established the scope of the privity

20   requirement under California Commercial Code section 2314, and a federal court sitting in

21   diversity is not free to create new exceptions to it."  *Id.* at 1024.

22           Some district court decisions have held that *Clemens* forecloses the type of claim Plaintiffs

23

24   [8] *See Roberts v. Electrolux Home Products, Inc.*, CV12-1644, 2013 WL 7753579, at *10 (C.D.
     Cal. March 4, 2013); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*

25   *& Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010); *In re Sony Vaio Computer*
     *Notebook Trackpad Litig.*, No. 09CV2109 BEN RBB, 2010 WL 4262191, at *3 (S.D. Cal. Oct.

26   28, 2010); *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008); *see also*
     *Huntzinger v. Aqua Lung Am., Inc.*, No. 15CV1146 WQH (KSC), 2015 WL 8664284, at *9−10

27   (S.D. Cal. Dec. 10, 2015) (generally acknowledging the third party beneficiary doctrine to be
     applicable to implied warranty product defect claims, but holding that the plaintiff had not

28   sufficiently alleged a contractual relationship between the manufacturer and retailer).

United States District Court
Northern District of California

seek to bring here.  *See Xavier*, 787 F. Supp. 2d at 1082−83; *Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013).  Others have distinguished *Clemens* on the basis that it did not explicitly consider a third-party beneficiary argument, and instead rejects an exception vaguely based on "similar equities" to those recognized by the California courts.  *See MyFord Touch*, 26 F. Supp. 3d at 984; *In re Toyota*, 754 F. Supp. 2d at 1185.

Although it appears that the majority of district court decisions to consider the question have held that a consumer who purchased a product from a retailer can invoke the third party beneficiary exception to bring an implied warranty claim against the manufacturer, this Court cannot square that outcome with *Clemens*.  In that case, the Ninth Circuit held that "an end consumer . . . who buys from a retailer is not in privity with a manufacturer" and therefore cannot bring an implied warranty claim under section 2314 against the manufacturer.  *Clemens*, 534 F.3d at 1023 (citing *Osborne*, 198 Cal. App. 3d at 656 n.6).  According to the Ninth Circuit, allowing exceptions beyond those clearly recognized by the California courts would improperly undermine a rule "painstakingly established" by the state courts.  *Id.* at 1024.  It is difficult to imagine a more thorough nullification of the rule stated in *Clemens* than to hold that consumers, simply by virtue of their status as end users of a product, are implied beneficiaries of distribution contracts between manufacturers and retailers, and thus entitled to bring implied warranty claims under section 2314.  Nor is it clear that *Gilbert*, a case considering a subcontract to build a roof for a specific, identifiable customer, *see* 82 Cal. App. 3d at 67, compels relaxing the privity rule for all end purchasers of products sold through retailers.  Although the privity requirement in this context may well be an "archaism," *see Clemens*, 534 F.3d at 1024, this Court concludes that it is bound by *Clemens* to dismiss Plaintiffs' claim under section 2314 of the California Commercial Code. Seagate's motion is GRANTED as to that claim.

### D.    Consumer Protection Claims

The FAL prohibits the use of "untrue or misleading" statements in advertising. Cal. Bus. & Prof. Code § 17500.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in

the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To state a claim based on false advertising or promotional practices, "it is necessary only to show that members of the public are likely to be deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (citation and internal quotation marks omitted); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that false advertising claims under all three statutes are "governed by the 'reasonable consumer' test."). Seagate moves to dismiss Plaintiffs' claims under the FAL, CLRA, and UCL "fraudulent" prong for failure to adequately allege an actionable affirmative misrepresentation or omission.[9]

### 1. Affirmative Misrepresentations

Plaintiffs' claims implicate a number of allegedly false or misleading statements. As discussed below, the Court declines to dismiss Plaintiffs' claims based on Seagate's statements as to the drives' annualized failure rate ("AFR") and suitability for use in RAID configurations, but dismisses Plaintiffs' claims to the extent they are based on the other statements identified in the complaint. Plaintiffs do not sufficiently allege the falsity of Seagate's affirmative statements as to the drives' read error rate, suitability for NAS, or AcuTrac technology, and the Court holds that Seagate's affirmative statements about the general reliability and performance of the drives are non-actionable puffery.

### a. Published Annualized Failure Rate

Seagate published a "Barracuda Data Sheet," beginning in 2011, which includes a representation that the model number ST3000DM001 drives have an "annualized failure rate (AFR)" of less than 1%. SCAC Ex. B; *see also* SCAC ¶¶ 72−73. Seagate argues that the

---

[9] Seagate argues that Plaintiffs' false or misleading advertising claims under the consumer protection statutes of the eight other states fail for the same reasons. Plaintiffs note that Seagate does not specifically address Plaintiffs' other claims in its motion, but do not identify any differences in state law that would allow a claim to proceed in the absence of an adequately alleged affirmative misrepresentation or fraudulent omission. The Court assumes for the purpose of the present Order that the other consumer protection statutes at issue are not materially different from the California statutes.

published AFR data are "statistical results" that "provide no guarantee of future performance for any individual drive" and therefore not actionable.  Mot. at 18.  The Court disagrees with Seagate's premise that statistical test results are inherently non-actionable.  The Barracuda Data Sheet purports to describe the "Key Advantages" of the Barracuda drives, and the AFR statistic is listed under the heading for "Reliability/Data Integrity" specifications.  *See* SCAC Ex. B.  If Plaintiffs can show that the published AFR is inaccurate, Plaintiffs could plausibly prove that a reasonable consumer would be materially deceived as to the drives' reliability.

Seagate also contends that Plaintiffs fail to allege that the published AFR is false.  Mot. at 18; Reply at 11 n.8.  Seagate is incorrect.  The complaint in fact explicitly alleges that Seagate's "representation that the Drives have an AFR of less than 1% is false, misleading, and likely to deceive a reasonable person."  SCAC ¶ 109.

To the extent that such an allegation alone might not be sufficient to meet the plausibility standard of *Iqbal* and *Twombly*, the complaint also alleges that Seagate's published AFR is inconsistent with the results of independent testing by Backblaze, Inc., an online data backup company.  *Id.* ¶ 5; *see also* RJN (dkt. 68-1) Ex. A (Backblaze report).[10]  Backblaze found that Seagate's ST3000DM001 drives failed at an annualized rate substantially higher than the AFR for the other 3TB hard drives used by Backblaze between 2012 and 2015—and substantially higher than 1%.  SCAC ¶¶ 5, 82, 93−97.  Backblaze reported that "[i]n annual terms, 2.7% of the drives failed in 2012, 5.4% failed in 2013 and 47.2% failed in 2014.  As of March 31, 2015, 1,423 of the 4,829 deployed Seagate 3TB drives had failed, that's 29.5% of the drives."  RJN Ex. A at 9; *see also* SCAC ¶ 92.  According to Plaintiffs, "Backblaze subsequently released statistics for 2015, revealing that the Drives had an AFR of 30.94% for the first through third quarters of 2015 and an overall failure rate of 28.46% dating back to 2013."  SCAC ¶ 93.

Seagate argues that the Backblaze assessment of the drives' AFR is unreliable because Backblaze admittedly used the consumer-grade drives for commercial applications and "shucked" the external drives that it used—removing them from their protective casings.  Mot. at 14.

---

[10] The Court takes judicial notice of the Backblaze report as incorporated by reference by the complaint.

1  Plaintiffs allege that Backblaze considered the effects of both the storage environment and

2  shucking in its analysis, but concluded that the high failure rate was caused by the drives

3  themselves.  SCAC ¶¶ 105−07.  The question at this stage of the case, however, is not whether the

4  Backblaze report itself *proves* Seagate's published AFR false, but whether Plaintiffs' allegation

5  that the AFR was false is plausible.  Taking into account the allegations regarding the Backblaze

6  report, the Court holds that Plaintiffs have sufficiently alleged that the AFR published by Seagate

7  was inaccurate and misleading.

8       Seagate's remaining arguments with respect to the published AFR are similarly unavailing.

9  Seagate argues that "no consumer is alleged to have known of or relied upon this information

10  before purchasing" and that "the SAC does not allege that a 'reasonable consumer' would find the

11  Barracuda specifications to be misleading."  Mot. at 18.  But the complaint alleges that several

12  named plaintiffs read the AFR data before purchase, relied on the information as material, and

13  would not have purchased their drives if they had known that drives had a higher AFR.  *See* SCAC

14  ¶¶ 153−54, 161, 178−79, 185, 192−93, 202, 227−29, 231.  Moreover, Plaintiffs specifically allege

15  that a "reasonable consumer would consider these statistics material because they measure the

16  reliability and longevity of the Drives, which are extremely important qualities of hard drives."  *Id.*

17  ¶ 79.  Such allegations are sufficient at the pleading stage.  Seagate also argues that Plaintiffs'

18  AFR claims must fail because Seagate's AFR statistic does not include failures because of misuse,

19  and Plaintiffs have not alleged that they "use the drives consistent with manufacturer

20  specifications."  Mot. at 18.  It is not clear how Plaintiffs' later use of the drives is relevant to

21  Plaintiffs' claim that Seagate engaged in false advertising, but in any case, Plaintiffs do in fact

22  allege that they used the drives "in a manner consistent with their intended use."  SCAC ¶¶ 355,

23  389.  Accordingly, Seagate's motion is DENIED as to Plaintiffs' affirmative misrepresentation

24  claims based on Seagate's published AFR statistic.

25                    **b.  Published Read Error Rate**

26       In the same Barracuda Data Sheet containing the published AFR, Seagate published

27  statistics showing that maximum "Nonrecoverable Read Errors per Bits Read" for the model

28  number ST3000DM001 drives is "1 per 10E14," which means that for every 100 trillion bits of

United States District Court
Northern District of California

data read, the drives fail to recover 1 bit of requested data.  SCAC ¶¶ 72–75 & Ex. B.  Plaintiffs allege in a conclusory fashion that the published read error rate, among other representations by Seagate, was "false, misleading, and ha[d] a tendency to deceive."  *Id.* ¶ 81.  But under Rule 9(b), Plaintiffs must plead the falsity of affirmative representations with specificity, and the complaint contains no such allegations with respect to the read error rate.  Plaintiffs do not claim that the Backblaze reports analyze anything other than the AFR, and plaintiffs identify no other source of information as to the "true" read error rate for the drives.  While some individual plaintiffs' experiences could perhaps relate to read error rates—*see, e.g.*, *id.* ¶ 144 (alleging that "a large number of data sectors suddenly failed with little or no warning" on Nelson's drive); *id.* ¶¶ 159–60 (alleging that Hauffs' drives experienced "bad sectors")—the complaint does not include sufficient information to understand how those incidents relate to the read error rate, or whether it would be reasonable to extrapolate that Seagate's representations of this metric were false based on Plaintiffs' anecdotal experiences.  Plaintiffs' misrepresentation claims based on the read error rate are therefore DISMISSED with leave to amend.

### c.  NAS and RAID Representations

In the Barracuda Data Sheet and other publications, Seagate describes the Barracuda drives as "designed for," "perfect" for and "best-fit" for use in NAS and Desktop RAID configurations. SCAC ¶¶ 59, 60, 61, 63, 112.  A Network Attached Storage ("NAS") device is a computer appliance consisting of hardware such as a motherboard, a CPU, and memory, and at least one hard drive in an enclosure.  *Id.* ¶ 37.  A NAS device is often used for storing and sharing files across a computer network.  *Id.* ¶ 36.  A Redundant Array of Independent Disks ("RAID") configuration is a data storage technology that combines multiple hard drives in a single unit for the purposes of data redundancy, performance improvement, or both.  *Id.* ¶ 39.  RAID systems can be configured in several "levels," and the most common levels for home units are RAID 0, RAID 1, and RAID 5.  *Id.* ¶ 39.  RAID 0 does not provide any data redundancy but typically increases storage space and data read/write speeds.  *Id.* ¶ 41.  RAID 1 is used for data redundancy and typically involves two hard drives storing duplicate data.  *Id.* ¶ 42.  RAID 5 utilizes three or more hard drives, and a percentage of each hard drive, together equaling the storage space of one drive,

United States District Court
Northern District of California

is set aside for redundancy purposes. *Id.* ¶ 43. A RAID 5 configuration can withstand the failure of one hard drive, but if two drives fail within a short span of one another, data may be lost. *Id.* An NAS system can include a RAID configuration such that the server backs up its own data using data redundancy. *Id.* ¶ 44.

Plaintiffs allege that Seagate described the Barracuda drives in a 2011 press release as "designed for desktop, tower or all-in-one personal computers; workstations, home and small business servers; network-attached storage devices; direct-attached storage expansion; and home and small-business RAID solutions." *Id.* ¶ 60. In a 2012 version of the Barracuda website, Seagate claimed that the drives were "Perfect when you need to . . . Build desktop or all-in-one PCs;" "Equip home servers;" "Implement a desktop RAID;" or "Build network attached storage devices (NAS)." *Id.* ¶ 61. Plaintiffs allege that Seagate has made similar representations in the Barracuda Data Sheets and Desktop HDD Kit Data Sheets published since 2011. *Id.* ¶¶ 63, 112. To plead the falsity of these statements, Plaintiffs rely on an email sent from a Seagate customer support representative to plaintiff John Smith: "The consumer level drives you have are not meant for any type of raid configuration beyond a Desktop RAID 0 or 1. If you do use 'desktop class drives' in a RAID 5 configuration, you can expect to deal with RAID failures." *Id.* ¶ 111. Plaintiffs also allege that "[d]ue to their extremely high failure rate, Internal Barracudas are not suitable for a system that backs up its own data through redundancy, as using them would amount to defective Drives backing up data on defective Drives." *Id.* ¶ 114.

Seagate contends that the RAID statements cannot be considered false or misleading as a matter of law because Seagate has never claimed that the Barracuda drives are suitable for *all* RAID configurations. Mot. at 18–19. But California's consumer protection statutes "'prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (quoting *Kasky*, 27 Cal. 4th at 951). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" or motion to dismiss. *Id.* at 938–39. Even if the Court were to accept Seagate's contention that the drives are in fact suitable for use in some RAID configurations, Plaintiffs could plausibly show that a

18

reasonable consumer would be deceived as to their suitability for use in other RAID configurations—particularly given Plaintiffs' allegation that RAID 5 is among "the most common [RAID configurations] for home units." SCAC ¶ 39. The Court therefore cannot say that Seagate's RAID statements are not actionable as a matter of law merely because the statements do not explicitly refer to "all" RAID configurations.

Seagate also argues that these claims fail because Plaintiffs fail to allege that any named plaintiffs suffered harmed as a result of these particular representations. Not all named plaintiffs allege that they suffered injury as a result of Seagate's NAS and RAID statements, but plaintiffs Chadwick Hauff, Dennis Crawford, Joshuah Enders, Dudley Lane Dortch IV, and John Smith specifically allege that they relied on Seagate's RAID statements and would not have purchased the drives if they had known the truth. SCAC ¶¶ 153, 156−57, 192−193, 202; 227, 229, 231, 236−37, 242, 247, 251. Plaintiffs have therefore adequately alleged that they suffered injury as a result of the statements. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011) (stating that a "consumer who relies on a product label," "challenges a misrepresentation contained therein," and alleges that "he or she would not have bought the product but for the misrepresentation" sufficiently alleges both economic injury and causation). The Court declines to dismiss Plaintiffs' claims based on the RAID representations.

As for NAS, however, Plaintiffs present no specific factual allegations showing that the drives are unsuitable for use in NAS applications, except to the extent that an NAS device might be configured to use RAID 5. Although NAS systems can use RAID configurations, SCAC ¶ 44, Plaintiffs have not plausibly alleged that a reasonable consumer would understand Seagate's representations that the drives were suitable for NAS applications as suggesting that they were suitable for RAID 5 configurations. Plaintiffs' claims that Seagate's statements regarding NAS were affirmative misrepresentations are therefore DISMISSED with leave to amend.

### d. AcuTrac Technology Representations

The complaint recounts several of Seagate's statements describing its AcuTrac technology and its effect on the "read/write" performance of the drives:

19

- "Seagate AcuTrac™ technology enables new storage densities with accurate reading and writing to nano-sized tracks that are only 75 nanometers wide! That's about 500 times smaller than the period at the end of this sentence."

- "Seagate engineers had to pack 340,000 hard drive tracts into the width of a single inch. This means that, when reading and writing data, the read-write head needs to accurately follow a track that is a mere 75 nanometers wide. That's about 500 times smaller than the period at the end of this sentence."

- "Reliable performance, even in tough environments, thanks to Seagate AcuTrac™ servo technology."

- Seagate AcuTrac technology "reliably and accurately [follows the Drive's] nano-tracks even in challenging operating environments, like an all-in-one PC with the music turned up."

- "AcuTrac™ servo technology delivers dependable performance, even with hard drive track widths of only 75 nanometers."

- "Seagate AcuTrac technology enables reliable read/write performance even in high touch operating environments."

- "Rest easy knowing your drive delivers dependable performance with Seagate® AcuTrac™ servo technology."

*See* SCAC ¶¶ 51, 53, 54, 55, 58 (alteration in original).  As with the published read error rate, the complaint contains no specific, plausible allegations as to the falsity of these statements.  Plaintiffs do not allege, for example, that the read-write head does not "accurately follow a track that is a mere 75 nanometers wide" or that Seagate's AcuTrac servo technology is not reliable in "high touch operating environments."  Plaintiffs do not connect the AcuTrac technology or the drives' read-write performance with Backblaze's analysis or the individual plaintiffs' experiences, and do not identify any other source of information that would show these statements to be false.  The Court therefore GRANTS Seagate's motion with respect to claims based on these representations, and DISMISSES such claims with leave to amend.

### e.  Reliability and Performance Representations

Finally, Plaintiffs point to a series of Seagate's statements that describe the reliability and performance of the drives:

- "Proven quality and performance."

- "Barracuda has become the world's most popular family of hard drives with consistent quality and performance-enhancing innovations and features . . . ."

- "One drive with trusted performance, reliability, simplicity, and capacity."

20

- "Count on Barracuda drives to deliver the storage innovations that drive your costs down and your performance up."

- Barracuda is "produced using the most sophisticated manufacturing process in the industry, which a focus on environmental stewardship."

- "Your digital life safe and sound."

- "Backup Plus from Seagate is the simple, one-click way to protect and share your entire digital life—without getting in the way of the rest of your life."

- "Backup Plus is the family of external drives from Seagate that lets you do more with photos and movies, protect everything in your digital life, and manage it all from a single intuitive dashboard."

- "Space for everything you've got. No more having to pick and choose what you protect."

- "Life is full of amazing moments you want to remember forever. The Backup Plus desktop drive lets you set up easy automatic backups of all your stuff, so you know that even if 'life happens' to your computer, your memories are always protected."

SCAC ¶¶ 55, 58, 67.

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (quoting *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)).  Use of terms like "quality," "reliability," and "performance" generally constitutes puffery.  *See id.* at 1140 (collecting cases); *see also Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) ("The word 'reliable' is inherently vague and general—in common parlance akin to a statement that the machine is 'fine.'").  In contrast, "misdescriptions of specific or absolute characteristics of a product are actionable." *Southland Sod Farms*, 108 F.3d at 1145 (citations and internal quotation marks omitted) (finding a claim that "Less is More" to be nonactionable puffery, but a "50% Less Mowing" claim actionable as "a specific and measurable advertisement claim of product superiority based on product testing").  Seagate's statements listed above do not involve specific or measurable facts about the drives' characteristics on which a reasonable consumer could rely.  They consist instead of vague and subjective assertions, amounting to mere puffery.[11]

_____

[11] Certain of these statements include more specific factual claims that might go beyond puffery, such as the assertion that Seagate drives can be used for automatic backups.  Plaintiffs do not

21

United States District Court
Northern District of California

1   Plaintiffs argue that a state trial court considering similar claims against Seagate recently

2   found the same statements to be actionable.  *See Pozar v. Seagate Tech. LLC*, No. CGC-15-

3   547787, 2016 Cal. Super. LEXIS 5083 (Cal. Super. Ct. Feb. 10, 2016).  The *Pozar* court found

4   Seagate's statements specific enough to state a CLRA claim: "To be sure there are cases that do

5   find puffery, but here Seagate made fairly specific statements about the reliability of its hard

6   drives—e.g., even when 'life happens' to your computer, your memories are always protected.'  A

7   reasonable person might rely on that statement when choosing one hard drive over another."  *Id.* at

8   *9.  The *Pozar* court cited *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000 (C.D. Cal. 2010), in which

9   the district court found that although statements that a monitor "offered a 'visually intense'

10  gaming experience or 'über-universal functionality'" were not "quantifiable and, as such, entirely

11  subjective," considered in context, the statements were relevant to the plaintiff's claim that the

12  defendant "misled him into believing that the monitor could attain a resolution of 2,560 x 1,600

13  pixels without additional purchase" and "that the monitor would connect to almost any device,"

14  and therefore did not constitute mere puffery.  *Lima*, 710 F. Supp. 2d at 1007-08.

15  This court agrees with the *Pozar* and *Lima* courts that the deceptiveness of a defendant's

16  statements must be evaluated in context of whole advertisement.  *See also Williams*, 552 F.3d at

17  939 n.3 (finding that a claim that snacks are "nutritious" contributes to the "deceptive context of

18  the packaging as a whole" and declining to dismiss the statement as puffery).  But in this case at

19  least, Plaintiffs do not allege that the statements were made in a context that suggests a particular

20  level of verifiable reliability or performance.  Plaintiffs do not allege, for example, that the

21  statements were made in close connection with Seagate's published AFR statistics or any other

22  specific reliability or performance claims.  *Cf. Williams*, 552 F.3d at 939 & n.3 (addressing claims

23  made on packaging that, in context, could promote an objectively false conclusion that the product

24  was made entirely from natural ingredients).

25  The state trial court's findings notwithstanding, this Court concludes that the statements

26

27  ───────────────────────────────

28  challenge the truthfulness of those elements of the statements.  The analysis here focuses on
    Plaintiffs' contention that Seagate's marketing misrepresented the reliability and general
    performance of the drives.

1    are too vague, general, and subjective to be actionable.  *See e.g.*, *Punian v. Gillette Co.*, No. 14-

2    CV-05028-LHK, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016) (finding statements that "a

3    consumer 'will always have access to power' when needed" and can 'trust' Duralock batteries" to

4    be non-actionable puffery, because "even in the context of a broad advertising campaign," the

5    statements made no specific factual claim about the batteries); *Summit*, 933 F. Supp. at 931 ("In

6    the context of the entire advertisement, the phrase 'perfectly reliable' is not couched in terms that

7    would indicate independent verifiability.").  Seagate's motion is therefore GRANTED with

8    respect to claims based on the broad representations of reliability set forth above, and such claims

9    are DISMISSED with leave to amend if Plaintiffs can sufficiently allege a connection to more

10   specific misrepresentations.

### 2.  Omission Claims

12        Under California law, an allegedly fraudulent omission is actionable only if the omission is

13   "contrary to a representation actually made by the defendant, or an omission of a fact the

14   defendant was obliged to disclose."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824,

15   835 (2006).  "California courts have generally rejected a broad obligation to disclose . . . ."

16   *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  In *Wilson*, the Ninth Circuit

17   held that, absent affirmative misrepresentations, an obligation to disclose under California law

18   extends only to matters of product safety, at least with respect to products no longer covered by an

19   express warranty.  *Id.* at 1141–43 & n.1 (examining *Daugherty*, 144 Cal. App.4th at 836, and

20   subsequent decisions, and distinguishing *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d

21   1123 (N.D. Cal. 2010)).  Some courts have identified four circumstances that give rise to a duty to

22   disclose:

23            (1) when the defendant is in a fiduciary relationship with the
             plaintiff; (2) when the defendant had exclusive knowledge of
24           material facts not known to the plaintiff; (3) when the defendant
             actively conceals a material fact from the plaintiff; and (4) when the
25           defendant makes partial representations but also suppresses some
             material facts.

26   *Tietsworth*, 720 F. Supp. 2d at 1133 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336

27   (1997)); *but see, e.g.*, *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL

28   4967247, at *6 (N.D. Cal. Aug. 20, 2015) (noting some disagreement as to the use of these

United States District Court
Northern District of California

1    factors).

2        Plaintiffs allege that Seagate wrongfully failed to disclose the following information:

3            1) that the Drives are not reliable or dependable; 2) that they are
4            plagued by a latent, model-wide defect that renders them highly
             prone to early catastrophic failures; 3) that they are not suitable for
5            storing, protecting, or backing up important personal data; 4) that
             they are not designed for RAID 5 or suitable for any form of RAID
6            or NAS; 5) that their published read error rates and AFRs are wholly
             inaccurate; and 6) that they do not last as long as comparable hard
7            drives on the market.

8    SCAC ¶ 285.

9        In their opposition brief, Plaintiffs contend that their omissions claims arise out of

10   Seagate's affirmative misrepresentations.  *See* Opp'n at 10; *see also Pozar*, 2016 Cal. Super.

11   LEXIS 5083, at *9 (citing *Daugherty*, 144 Cal. App. 4th at 835) (finding no need to address

12   whether Seagate had "an independent obligation to disclose" because the alleged affirmative

13   misrepresentations were both "actionable in themselves," and "permit[ted] a claim for

14   omissions").  As discussed above, Plaintiffs adequately allege affirmative misrepresentations as to

15   the drives' AFR and suitability for use in RAID configurations.

16       Viewing the complaint as a whole, and taking into account Rule 9(b)'s instruction that

17   "knowledge . . . may be alleged generally," it is plausible that Seagate knew of and failed to

18   disclose information contrary to those representations—e.g., that the published AFR was

19   inaccurate or that the drives were in fact unsuitable for RAID 5 configurations.  With respect to

20   AFR, such an inference is plausible at the pleading stage based on the allegations discussed above

21   that the actual failure rate was much higher than published, and based on Seagate's presumed pre-

22   market testing of its products.  The Court holds that publication of the allegedly false AFR gave

23   rise to a duty to disclose information bearing on the drives' alleged unreliability.  As for RAID,

24   Plaintiffs specifically allege that a Seagate representative informed one of the plaintiffs that the

25   drives at issue "are not meant for any type of raid [sic] configuration beyond a Desktop RAID 0 or

26   1," and would be prone to failure in a RAID 5 configuration.  SCAC ¶ 111.  The Court finds this

27   allegation sufficient at the pleading stage to show Seagate's knowledge that its drives were not

28   suitable for at least one common RAID use case, and holds that Seagate's representation that the

United States District Court
Northern District of California

24

1    drives could be used for "Desktop RAID" gave rise to a duty to disclose that limitation.  *See, e.g.*,

2    *id.* Ex. B.

3           As discussed above, Plaintiffs have not plausibly alleged Seagate's representations

4    regarding the drives' NAS capabilities or error read rates to be false or misleading.  Similarly,

5    Plaintiffs have not plausibly alleged that Seagate withheld any relevant information on those

6    subjects.  The Court therefore GRANTS Seagate's motion as to wrongful omission claims based

7    on those subjects, and DISMISSES such claims with leave to amend.  The remaining categories of

8    alleged wrongful omission set forth above and at paragraph 285 of the complaint, however, are

9    sufficiently tied to the alleged misrepresentations regarding AFR and RAID capabilities to

10   proceed.

11          In light of these holdings, the Court need not determine whether Seagate would have an

12   independent duty to disclose any of the information at issue, beyond that duty triggered by its

13   alleged affirmative misrepresentations.  Such a duty would not alter the outcome of this motion as

14   to either the surviving omission claims, which will proceed regardless of such a duty, or the claims

15   related to NAS capabilities and error read rates, which would warrant dismissal for failure to

16   plausibly allege any such omission even if an independent duty to disclose exists.  The Court

17   declines to resolve the question of whether these allegations could support a duty to disclose

18   independent of affirmative misrepresentations.

19               **3.   Other Arguments for Dismissal of CLRA Claims**

20          Seagate raises two arguments specific to Plaintiffs' CLRA claims: (1) that such claims

21   should be dismissed for failure to file venue affidavits; and (2) that such claims are time barred.

22          "In any action [under the CLRA], concurrently with the filing of the complaint, the

23   plaintiff shall file an affidavit stating facts showing that the action has been commenced in a

24   county described in this section as a proper place for the trial of the action."  Cal. Civ. Code

25   § 1780(d).  If a plaintiff fails to file the required affidavit, "the court shall, upon its own motion or

26   upon motion of any party, dismiss the action without prejudice."  *Id.*  As Seagate acknowledges,

27   however, two named plaintiffs submitted venue affidavits with their amended complaints filed

28   before consolidation.  Mot. at 23 (citing dkt. 37 in this case and dkt. 38 in case number 16-cv-

United States District Court
Northern District of California

1    00612).  Seagate nevertheless contends that these claims must be dismissed because affidavits

2    were not included with Plaintiffs' original complaints.  Reply at 14−15.  Such a result would serve

3    no purpose where the appropriate remedy would merely be dismissal with leave to amend to attach

4    the same affidavits that were previously filed.  *See* Cal. Civ. Code § 1780(d) (calling for dismissal

5    without prejudice).  The Court is therefore persuaded that the purpose of the rule has been satisfied

6    and declines to dismiss any plaintiff's CLRA claim on this basis.  *See In re Sony Gaming*

7    *Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 971 (S.D. Cal. 2012) (finding

8    the purpose of the requirement satisfied where only one named plaintiff filed a venue affidavit); *In*

9    *re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1037−38 (N.D. Cal. 2012) (same); *In re*

10   *Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1178 (S.D. Cal. 2010) (finding the purpose

11   satisfied even where the plaintiff who had filed an affidavit with an original complaint was no

12   longer a named plaintiff in the consolidated complaint).

13         The Court also declines to dismiss plaintiffs' CLRA claims as time barred, except for the

14   claim of Plaintiff John Smith, which Plaintiffs concede is barred.  *See* Opp'n at 25 n.166.  Under

15   the discovery rule "plaintiffs are required to conduct a reasonable investigation after becoming

16   aware of an injury, and are charged with knowledge of the information that would have been

17   revealed by such an investigation."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808

18   (2005).  Even though "UCL and CLRA claims in consumer cases generally accrue on the date of

19   purchase," Plaintiffs in this case "were not charged with a duty to reasonably investigate" until

20   their hard drives failed.  *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448,

21   at *8 (N.D. Cal. July 7, 2015) (holding that a duty to investigate did not arise "until the alleged

22   steering defect manifested in [the plaintiffs'] vehicles").  Seagate argues that Plaintiffs could have

23   learned about the possibility of drive failure from customer reviews posted online, but on the facts

24   alleged, the Court finds that "Plaintiffs had no reason to suspect wrongdoing, and there was no

25   fact or circumstance to prompt an investigation" into such reviews before Plaintiffs' own drives

26   failed.  *See id.*

27   / / /

28   / / /

United States District Court
Northern District of California

#### 4.  UCL "Unlawful" Prong Claims

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).  Seagate moves to dismiss Plaintiffs' "unlawful" prong claims to the extent that they are based on Seagate's alleged breach of the express warranty contract.  Mot. at 20; *see Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) ("A breach of contract . . . is not itself an unlawful act for purposes of the UCL.").  Plaintiffs' "unlawful" prong claims are in fact predicated on Seagate's alleged violations of the CLRA, FAL, and California's express and implied warranty statutes.  *See* SCAC ¶ 279.  Seagate's motion to dismiss Plaintiffs' unlawful prong claims is therefore DENIED to the extent Plaintiffs adequately allege predicate statutory violations, as discussed above, and GRANTED to the extent that the underlying statutory claims are also dismissed.  *See Tietsworth*, 720 F. Supp. 2d at 1136–37 (denying a motion to dismiss UCL unlawful prong claims to the extent the plaintiffs had stated violations of the CLRA and the Song-Beverly Act).

#### 5.  UCL "Unfair" Prong Claims

Seagate moves to dismiss Plaintiffs' UCL "unfair" prong claims on the grounds that they overlap with Plaintiffs' misrepresentation claims (which Seagate also contends should be dismissed, as discussed above), and that Plaintiffs' claim that Seagate should have provided refunds or different models of hard drives contradicts the express terms of Seagate's warranty.  Mot. at 19−20 (citing SCAC ¶ 292).  Plaintiffs argue that the "unfair" prong claim should proceed based on the premise that "replacing defective hard drives with defective hard drives—and charging customers exorbitant sums of money to recover their data when these drives repeatedly fail—is unscrupulous and causes injury to consumers that outweighs its benefits."  Opp'n at 19 (citing SCAC ¶¶ 126, 129, 291−93; *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)).  Seagate does not address this issue in its reply brief.

The test for the "unfair" prong of the UCL remains somewhat unsettled in the California courts.  Courts previously held a practice to be "'unfair' . . . when it offends an established public

1    policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially

2    injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th

3    861, 886−87 (1999) (citation and internal quotation marks omitted).  "This test involves balancing

4    the harm to the consumer against the utility of the defendant's practice." *Lozano v. AT & T*

5    *Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (citing *S. Bay*, 72 Cal. App. 4th at 886).

6    The California Supreme Court, however, found that the *South Bay* test was "too amorphous and

7    provide[d] too little guidance to courts and businesses" in a UCL case between competitors, and

8    held instead that:

9            When a plaintiff who claims to have suffered injury from a direct
             competitor's "unfair" act or practice invokes section 17200, the
10           word "unfair" in that section means conduct that threatens an
             incipient violation of an antitrust law, or violates the policy or spirit
11           of one of those laws because its effects are comparable to or the
             same as a violation of the law, or otherwise significantly threatens or
12           harms competition.

13   *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185, 187.  The *Cel-Tech* court

14   explicitly declined to decide what test applied to actions brought by consumers, as opposed to by

15   competitors.  *Id.* at 197 n.12.

16          In the years since *Cel-Tech*, some courts have continued to use the *South Bay* test for cases

17   brought by consumers, *e.g.*, *McKell*, 142 Cal. App. 4th at 1473, while others have followed *Cel-*

18   *Tech*'s lead and "require[d] that the unfairness be tied to a 'legislatively declared' policy," *Lozano*,

19   504 F.3d at 736, or in other words, "'that the UCL claim be tethered to specific constitutional,

20   statutory, or regulatory provisions,'" *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1027 (N.D.

21   Cal. 2016) (quoting *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal.

22   2014)).  "Absent guidance from the California courts about the proper definition of an 'unfair'

23   business practice, federal courts have applied both tests."  *Id.* (citing *Lozano*, 504 F.3d at 736).

24          To the extent that the California statutory claims discussed above are allowed to proceed,

25   Plaintiffs may also proceed on UCL unfairness claims for violation for the legislatively declared

26   policies underlying the statutes at issue.  Conversely, Plaintiffs UCL unfairness claims are

27   DISMISSED with leave to amend to the extent that they rely on theories rejected in other contexts

28   above, because Plaintiffs have not plausibly alleged contravention of a legislative policy under

United States District Court
Northern District of California

*Cel-Tech* or substantive unfairness under *South Bay*.  With respect to Plaintiffs' theory of "replacing defective hard drives with defective hard drives," for example, Plaintiffs have not plausibly alleged that replacement hard drives were less reliable than retail drives, and the Court is not satisfied that the alleged failure of some replacement drives is in itself sufficiently "immoral, unethical, oppressive, unscrupulous or substantially injurious" to support a claim.  *See S. Bay*, 72 Cal. App. 4th at 886−87.

That leaves Plaintiffs' theory that Seagate's practice of "charging customers exorbitant sums of money to recover their data when [Seagate's] drives repeatedly fail" is unfair within the meaning of the UCL, which does not significantly overlap with any other claim addressed above.  *See* Opp'n at 19; SCAC ¶ 292 ("These [unfair] acts and practices include . . . charging customers exorbitant sums of money to recover their data.").  Because Seagate has not presented any reason to dismiss claims based on this theory, the Court declines to dismiss such claims at this time.

### E.      Unjust Enrichment Claims

Seagate argues that Plaintiffs' unjust enrichment claim should be dismissed as duplicative of Plaintiffs' "claims under the UCL and FAL as well as the warranty claims" because it is based on the same factual allegations as Plaintiffs' other claims.  Mot. at 24.  Although Plaintiffs' unjust enrichment claim may ultimately prove to be "duplicative of or superfluous to . . . other claims," the Ninth Circuit has held that "this is not grounds for dismissal" because a party may plead claims in the alternative.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)).  Seagate's motion to dismiss this claim is DENIED.

## IV.     CONCLUSION

For the reasons discussed above, Seagate's motion to dismiss is GRANTED as to: (1) Plaintiffs' express warranty claims (including to the extent such claims are based on the essential purpose doctrine or the Song-Beverly Act); (2) Plaintiffs' implied warranty claims under the California Commercial Code; (3) Plaintiffs' affirmative misrepresentation claims based on Seagate's statements about the drives' read error rate, NAS capabilities, AcuTrac technology, and general reliability and performance; (4) Plaintiffs' omissions claims based on NAS capabilities and read error rates; (5) all CLRA claims by Plaintiff John Smith; and (6) Plaintiffs' claims under

United States District Court
Northern District of California

29

the "unlawful" and "unfair" prongs of the UCL to the extent that they depend on theories dismissed in the context of other claims.  Seagate's motion is DENIED as to Plaintiffs' remaining claims.  Plaintiffs may file a third consolidated amended complaint no later than March 3, 2017.

**IT IS SO ORDERED.**

Dated: February 9, 2017

_____
Joseph C. Spero
Chief Magistrate Judge

United States District Court
Northern District of California