SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
MUKUND H. SHARMA, Cal. Bar No. 249125
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:     npopovic@sheppardmullin.com
         amclean@sheppardmullin.com
         msharma@sheppardmullin.com
         rodewald@sheppardmullin.com
         lpayne@sheppardmullin.com
         jsiu@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:**   June 23, 2017<br>**Time:**  9:30 a.m.<br>**Place:**  Courtroom G<br>**Judge:**  Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed:  July 11, 2016 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................2

II.    BRIEF STATEMENT OF RELEVANT FACTUAL ALLEGATIONS ..............................3

III.   LEGAL STANDARD ..................................................................................................................5

IV.    ARGUMENT ................................................................................................................................6

    A.     This Court Should Strike Allegations and Claims That Have Been
        Dismissed ........................................................................................................................6

    B.     Plaintiffs' Claims for Violations of the Consumer Protection Laws Of
        Florida, Texas, and South Dakota Should Be Adjudicated on the Pleadings
        and the Subclass Allegations Stricken Because the Named Plaintiffs Do Not
        Allege They Saw The Alleged Misrepresentations Still at Issue ..............................8

    C.     The Breach of Implied Warranty Claims Fail ..........................................................10

        1.     The Claims for Breach of Implied Warranty Under New York,
                Illinois, Florida, Tennessee, South Carolina, and South Dakota Law
                Fail for Lack of Privity ..............................................................................10

        2.     The Claim for Breach of Implied Warranty Under Texas Law Fails
                for Lack of Notice ......................................................................................11

        3.     The Claim for Breach of Massachusetts Implied Warranty Law Fails
                Because Plaintiffs Do Not Allege Essential Elements of the Claim ...........13

        4.     Plaintiffs' Song Beverly Act Implied Warranty Claims Fail Because
                Plaintiffs Fail to Plead a Defect Present in the Drives During the
                One-Year Warranty Period ..........................................................................16

        5.     The Song-Beverly Act Implied Warranty Claims and Class
                Allegations Fail Because Plaintiffs Fail to Allege They Purchased
                Drives in California ....................................................................................18

    D.     Plaintiffs' Nationwide Class Allegations Should Be Stricken ................................20

V.     CONCLUSION ..........................................................................................................................23

**TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Altman v. HO Sports Co.*
    2009 U.S. Dist. LEXIS 108971 (E.D. Cal. Nov. 19, 2009) ......................................................15

*Andren v. Alere, Inc.*
    No. 16cv1255-GPC (NLS), 2017 WL 168605 (S. D. Cal. Jan. 17, 2017) ................................8

*Anunziato v. eMachines, Inc.*
    402 F. Supp. 2d 1133 (C.D. Cal. 2005).................................................................................19

*Aoki v. Benihana, Inc.*
    839 F. Supp. 2d 759 (D. Del. 2012) ........................................................................................5

*Back v. Wickes Corp.*
    375 Mass. 633 (Mass. 1978) ...........................................................................................13, 15

*Banks v. Nissan N. Am., Inc.*
    No. C 11-2022 PJH, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012)......................22

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 ...........................................................................................................................5

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systs., Inc.*
    637 F.3d 1047, 1054 (9th Cir. 2011).......................................................................................5

*California State Electronics Ass'n v. Zeos Int'l Ltd.*
    41 Cal. App. 4th 1270 (1996).................................................................................................20

*In re Carrier IQ, Inc., Consumer Privacy Litig.*
    78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015) .....................................................................19

*Chavez v. United States*
    683 F.3d 1102 (9th Cir. 2012)..................................................................................................5

*Cigna Ins. Co. v. Oy Saunatec*
    241 F.3d 1 (1st Cir. 2001) ...............................................................................................13, 15

*Cortina v. Goya Foods, Inc.*
    94 F. Supp. 3d 1174 (S.D. Cal. 2015) ...................................................................................5, 8

*Culinary & Serv. Emp's Union, AFL-CIO Local 555 v. Hawaii Emp. Ben. Admin., Inc.*
    688 F.2d 1228 (9th Cir. 1982)..................................................................................................6

*Daniel v. Ford*
    806 F.3d 1217 (9th Cir. 2015)................................................................................................17

**Cases**                                                                                           **Page(s)**

*David v. Am. Suzuki Motor Corp.*
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) ...................................................................................11

*Ferrari v. Natural Ptnr., Inc.*
  2017 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 9, 2017) ...........................................................15

*Frenzel v. AliphCom*
  76 F. Supp. 3d 999 (N.D. Cal. 2014) (Orrick, J.) ...............................................................8, 22

*Granfield v. Nvidia Corp.*
  No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678 (N.D. Cal. July 11, 2012) ......................22

*Grassi v. Int'l Comfort Prods., LLC*
  2015 U.S. Dist. LEXIS 107467 (E.D. Cal. Aug. 13, 2015) .....................................................17

*Gusse v. Damon Corp.*
  470 F. Supp. 2d 1110 (C.D. Cal. 2007) ...........................................................................19, 20

*Haglund v. Philip Morris, Inc.*
  446 Mass. 741 (2006) .............................................................................................................13

*Henry Schein, Inc. v. Stromboe*
  102 S.W.3d 675 (Tex. 2002) .....................................................................................................9

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*
  No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13,
  2012) ....................................................................................................................................5, 22

*Iannacchino v. Ford Motor Co.*
  451 Mass. 623 (Mass. 2008) ...................................................................................................15

*Jandreau v. Sheesley Plumbing & Heating Co.*
  324 N.W.2d 266 (S.D. 1982) ...................................................................................................11

*Johnson ex rel. Estate of Johnson v. Brown & Williamson Tobacco Corp.*
  345 F. Supp. 2d 16 (D. Mass. 2004) .......................................................................................13

*Kearney v. Philip Morris, Inc.*
  916 F. Supp. 61 (D. Mass. 1996) ............................................................................................13

*Kowalsky v. Hewlett-Packard Co.*
  771 F. Supp. 2d 1138 (N.D. Cal. 2010) ..................................................................................19

*Lally v. Volkswagen Aktiengesellschaft*
  45 Mass. App. Ct. 317, 337, 698 N.E.2d 28 (1998) .........................................................13, 14

1  | **Cases** | **Page(s)**

2  *Laspesa v. Arrow Int'l, Inc.*
3     2009 U.S. Dist. LEXIS 121576 (D. Mass. Dec. 23, 2009) ................................14, 15

4  *Leach v. Wiles*
      58 Tenn. App. 286, 429 S.W.2d 823 (1968) ...........................................................11

5  *Lucas v. City of Visalia*
6     726 F. Supp. 2d 1149 (E.D. Cal. 2010) ...........................................................14, 15

7  *Marcus v. Apple Inc.*
      2015 U.S. Dist. LEXIS 50399 (N.D. Cal. Apr. 16, 2015)......................................17
8

9  *Martin v. Home Depot U.S.A., Inc.*
      369 F. Supp. 2d 887 (W.D. Tex. 2005) ................................................................12
10
   *Massey v. Novartis Pharms. Corp.*
11    46 F. Supp. 3d 688 (W.D. Tex. 2014) ..................................................................12

12 *Mazza v. American Honda Motor Co.*
      666 F.3d 581 (9th Cir. 2012).....................................................................2, 20, 22
13

14 *McCann v. Foster Wheeler*
      48 Cal. 4th 68 (2010)............................................................................................21
15
   *McKay v. Novartis Pharm. Corp.*
16    751 F.3d 694 (5th Cir. Tex. 2014).................................................................11, 12

17 *Mexia v. Rinker Boat Co.*
      174 Cal. App. 4th 1297 (2009).......................................................................16, 17
18

19 *Missud v. Oakland Coliseum Joint Venture*
      2013 U.S. Dist. LEXIS 29915 (N.D. Cal. Mar. 5, 2013) ......................................10
20

21 *In re MyFord Touch Consumer Litig.*
      46 F. Supp. 3d 936 (N.D. Cal. 2014) .............................................................11, 12

22 *Nguyen v. CTS Electronics Manufacturing Solutions Inc.*
      301 F.R.D. 337 (N.D. Cal. 2014) ..........................................................................6
23

24 *O'Neil v. Electrolux Home Prods.*
      2008 U.S. Dist. LEXIS 39998 (D. Mass. May 14, 2008) ......................................16
25
   *O'Shea v. Littleton*
26    414 U.S. 488 (1974) ...........................................................................10, 11, 12

27 *Odom v. Ford Motor Co.*
      230 S.C. 320, 95 S.E. 2d 601 (S.C. 1956)............................................................11

28

**Cases**                    **Page(s)**

*Papasan v. Allain*
   478 U.S. 265 (1986) ...........................................................................................5

*Parenteau v. Gen. Motors, LLC*
   2015 U.S. Dist. LEXIS 31184, 2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) ...........................16

*Parker v. Raymond Corp.*
   87 A.D. 3d 1115 (2d App. Div. 2011)...................................................................10

*Prohias v. AstraZeneca Pharm., L.P.*
   958 So. 2d 1054 (Fla. 3d Dist. Ct. App. 2007)...........................................................9

*Rothe v. Maloney Cadillac, Inc.*
   518 N.E.2d 1028 (1988) .....................................................................................10

*Salameh v. Tarsadia Hotel*
   726 F.3d 1124 (9th Cir. 2013) ........................................................................9, 11

*Sanders v. Apple, Inc.*
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................10

*Sisney v. Best, Inc.*
   754 N.W.2d 804 (S.D. 2008) ...............................................................................9

*Smith v. Ariens Co.*
   375 Mass. 620 (Mass. 1978) ..............................................................................14

*Steckman v. Hart Brewing*
   143 F.3d 1293 (9th Cir. 1998) .....................................................................9, 16, 18

*Sullivan v. Oracle Corp.*
   51 Cal.4th 1191 (2011)......................................................................................21

*Taylor v. Am. Chemistry Council*
   576 F.3d 16 (1st Cir. 2009) ...............................................................................16

*Town of Westport v. Monsanto Co.*
   2017 U.S. Dist. LEXIS 53815 (D. Mass. Apr. 7, 2017)...........................................14

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*
   110 S.W. 3d 194 (Tex. App. 2003) .....................................................................12

*United States v. Wang*
   404 F. Supp. 2d 1155 (N.D. Cal. 2005) ..................................................................6

*Varney v. R.J. Reynolds Tobacco Co.*
   118 F. Supp. 2d 63 (D. Mass. Mar. 28, 2000)..................................................13, 14

SMRH:482860675.12        MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS

**Cases**                                                                                                    **Page(s)**

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ...................................................................17

*Whittlestone, Inc. v. Handi-Craft Co.*
    618 F.3d 970 (9th Cir. 2010) ..................................................................................5

*Wilcox v. Hillcrest Memorial Park*
    696 S.W.2d 423 (Tex. App. Dallas July 8, 1985) ...................................................12

*Wilson v. Frito-Lay N. Am.*
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................................22

*Yagman v. General Motors Co.*
    2014 U.S. Dist. LEXIS 120045 (C.D. Cal. Aug. 22, 2014) .................................15, 17

*Zeman v. Williams*
    2014 U.S. Dist. LEXIS 91501 (D. Mass. July 7, 2014) .......................................14, 15

**Statutes**                                                                                                 **Page(s)**

Cal. Civ. Code § 1750 .....................................................................................................4

Cal. Civ. Code § 1791.1(c) ...........................................................................................16

Cal. Civ. Code § 1791.2 .................................................................................................4

Cal. Civ. Code § 1792 ...........................................................................................4, 10, 19

Cal. Com. Code § 2313 ...................................................................................................4

Cal. Com. Code § 2314 ......................................................................................... *passim*

Cal. Com. Code § 2401(2) .............................................................................................19

California Business and Professions Code § 17200 *et seq.* ..............................................3

California Business and Professions Code § 17500 *et seq.* ..............................................3

Fla. Stat. § 501.203(7) ....................................................................................................4

Fla. Stat. Ann. § 501.211 ................................................................................................8

Florida Stat. § 672.313 ...................................................................................................4

Florida Stat. § 672.314 ..........................................................................................4, 10, 11

Ill. Comp. Stat. 5/2-314 .........................................................................................4, 10

Ill. Comp. Stat. 5/2A-212 .............................................................................................10

**Statutes**                                                                **Page(s)**

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ........................... 4

Mass. Gen. Laws Chapter 93A, § 1 *et seq.* .................................................................. 4

Massachusetts General Laws Chapter 106, § 2313                                                      4

Massachusetts General Laws Chapter 106, § 2314 ................................................... 4, 10

New York General Business Law § 349 ...................................................................... 4

New York U.C.C. § 2-313 .................................................................................... 4

New York U.C.C. § 2-314 ............................................................................... 4, 10

New York U.C.C. § 2-A-2 .................................................................................... 4

S.C. Code Ann. § 39-5-20(a) ............................................................................... 4

S.D.C.L. § 37-24-1 *et seq.* ................................................................................ 4

S.D.C.L. § 37-24-31 ........................................................................................ 8

S.D.C.L. § 57A-2-314 ..................................................................................... 10

Song-Beverly Consumer Warranty Act ............................................................. *passim*

South Carolina Code § 36-2-313 ........................................................................... 4

South Carolina Code § 36-2-314 ...................................................................... 4, 10

South Dakota Codified Laws § 57A-2-313 .................................................................. 4

South Dakota Codified Laws § 57A-2-314 .............................................................. 4, 10

Tenn. Code Ann. § 47-18-104 .............................................................................. 4

Tennessee Code § 47-2-313 ................................................................................ 4

Tennessee Code § 47-2-314 ........................................................................... 4, 10

Tex. Bus. & Com. Code § 2.313 ............................................................................ 4

Tex. Bus. & Com. Code § 2.314 ...................................................................... 4, 10, 11

Tex. Bus. & Com. Code § 2.607(c)(1) .................................................................... 12

Tex. Bus. & Com. Code § 17.41 *et seq.* .................................................................. 4

Tex. Bus. & Com. Code § 17.50(a)(1) ..................................................................... 8

1

**<u>Other Authorities</u>**                                                                                    **<u>Page(s)</u>**

2

Fed. R. Civ. P. 12 ................................................................................................1, 5, 6, 10

3

Restatement (Second) of Torts § 402A (1965) ..........................................................13, 15

4

Restatement of the Law, Third, Torts: Products Liability, § 2..................................13, 15

5

S. Rep. No. 109-14 (2005) ..............................................................................................23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:482860675.12

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 23, 2017, at 9:30 a.m., or as soon thereafter as the matter can be heard, in Courtroom G, on the 15th Floor of the United States District Court, Northern District of California, at 450 Golden Gate Avenue, San Francisco, California, 94102, the Honorable Joseph C. Spero presiding, Defendant Seagate Technology LLC, will and hereby does move for an order for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and striking certain allegations and claims in the Second Consolidated Amended Complaint pursuant to Fed. R. Civ. P. 12(f).

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Proposed Order, the papers and pleadings on file in this action, and such other papers and oral argument as may be submitted prior to or at the hearing on this motion.

Dated: May 26, 2017                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By          _____/s/ *Anna S. McLean*_____
                          ANNA S. McLEAN

                          Attorneys for Defendant
                          SEAGATE TECHNOLOGY LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On February 9, 2017, this Court dismissed a substantial portion of the allegations and claims in Plaintiffs' Second Consolidated Amended Complaint (SCAC), including: (1) all of the purported misrepresentation/omission allegations *except for* two narrow, technical representations; (2) the express warranty claims; and (3) a portion of the implied warranty claims.  Order Granting in Part and Denying in Part Motion to Dismiss Second Consolidated Amended Complaint, Dkt. 100 ("Order").  The Court allowed Plaintiffs until March 3, 2017 to file a Third Consolidated Amended Complaint.  *Id.* at 30:3.  Plaintiffs declined to file a further amended complaint, thereby leaving in place a pleading replete with spurious and unnecessary allegations and claims the Court already dismissed.  The currently operative, 566-paragraph SCAC contains hundreds of paragraphs accusing Seagate of myriad purported misrepresentations and failures to honor warranties, even though the Court rejected those allegations as a matter of law.  Similarly, claims for breach of certain state consumer protection laws remain in the SCAC, even though the named plaintiffs for those states never saw any of the alleged misrepresentations still at issue.  This state of the pleadings is prejudicial to Seagate and risks confusion of the issues.  The first aim of this motion, therefore, is to bring the operative complaint into line with the Court's Order so the parties can focus on the only two remaining alleged misrepresentations:  whether Seagate misled or failed to disclose material facts to Plaintiffs relating to: (1) the Drives' Redundant Array of Independent Disks (RAID) capabilities, and (2) their annualized failure rate (AFR).[1]

Second, Seagate moves for judgment on the pleadings as to Plaintiffs' implied warranty claims which have not previously been challenged.  These claims fail for the independent reasons that the state laws upon which they are based require pleading:  (1) privity, and/or (2) pre-suit notice, and/or (3) a specific "latent defect," and/or (4) a purchase within California—none of which Plaintiffs have pled.

Third, Seagate moves to strike Plaintiffs' nationwide class allegations.  Under *Mazza v.*

---

[1] Seagate uses the term Drives to mean the 3TB versions of the Internal Barracuda, the Backup Plus, and the FreeAgent GoFlex, as defined in paragraph 2 of the SACC.

*American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), and California's governmental interest choice-of-law analysis, Plaintiffs cannot apply California consumer protection laws to out-of-state class members.  Nor do Plaintiffs allege any facts that could justify applying California law to a nationwide class of purchasers who do not reside in California, did not purchase a hard drive in California, and were not exposed to any allegedly deceptive statements in California.  Moreover, the differences between and among California's consumer protection laws and those of other jurisdictions preclude certification of a nationwide class in which multiple states' laws must be applied.  Therefore, the Court can, and should, strike Plaintiffs' nationwide class allegations on a pleadings motion, as other courts have done.  Accordingly, Seagate hereby moves:  (1) to strike the portions of the SCAC the Court previously dismissed, (2) for judgment on the pleadings as to the implied warranty claims, and (3) to strike the alleged nationwide class.[2]

## II.    BRIEF STATEMENT OF RELEVANT FACTUAL ALLEGATIONS

This putative consumer class action was initially filed in February 2016.  Dkt. 1.  On May 9, 2016, Plaintiffs filed their First Consolidated Amended Complaint.  Dkt. 39.  On June 8, 2016, the parties entered into a joint stipulation allowing plaintiffs to file the SCAC, Dkt. 53, which they did on July 11, 2016, Dkt. 62.  The nine Named Plaintiffs are residents of:  California, New York, Florida, Massachusetts, Illinois, Tennessee, South Carolina, Texas, South Dakota (the "nine states").[3]  The SCAC purports to allege claims on behalf of the Named Plaintiffs, a nationwide Class (the "Class") and nine state Subclasses.  The SCAC alleges causes of action for:

(1)    Violation of California's **Unfair Competition Law (UCL),** California Business and Professions Code section 17200 *et seq.* [by Plaintiffs, the California Subclass and the Class];

(2)    Violation of California's **False Advertising Law (FAL),** California Business and Professions Code section 17500 *et seq.* [by Plaintiffs, the California Subclass and the Class];

---

[2] For the Court's convenience, filed herewith as **Exhibit 1** is a "redline" version of the SCAC.  Claims and allegations the Court previously dismissed, and which Seagate requests that the Court now strike, are shown in red, strikethrough font.  Claims and allegations as to which Seagate requests the Court strike or grant judgment on the pleadings are shown in blue, strikethrough font.

[3] The tenth plaintiff, Adam Ginsberg ("Plaintiff Ginsberg") was voluntarily dismissed from this action on July 27, 2016.  *See* Dkt. 67.

(3)  Violation of the **Consumers Legal Remedies Act (CLRA),** California Civil Code section 1750 *et seq.* [by Plaintiffs, the California Subclass and the Class];

(4)  **Breach of Express Warranty under California law,** California Commercial Code section 2313 *et seq.* and California Civil Code section 1791.2 *et seq.* [by Plaintiffs and the Class];

(5)  **Breach of Implied Warranty of Merchantability Under California law.** California Commercial Code section 2314 and California Civil Code section 1792 (Song-Beverly Consumer Warranty Act (Song-Beverly)) [by Plaintiffs and the Class];

(6)  **Breach of Express Warranty under the laws of the nine states**:  California Commercial Code section 2313; California Civil Code section 1791.2; New York U.C.C. section 2-313 and section 2-A-2; 810 Illinois Comp. Stat. 5/2-313; Florida Stat. section 672.313; Massachusetts General Laws Ch. 106, Section 2313; Tennessee Code section 47-2-313; South Carolina Code section 36-2-313; Texas Business and Commercial Code section 2.313; and South Dakota Codified Laws section 57A-2-313 [by the respective nine state Subclasses];

(7)  **Breach of the Implied Warranty of Merchantability under the laws of the nine states**:  California Commercial Code section 2314; California Civil Code section 1792; New York U.C.C. section 2-314; 810 Illinois Comp. Stat. 5/2-314; Florida Stat. section 672.314; Massachusetts General Laws Ch. 106, Section 2314; Tennessee Code section 47-2-314; South Carolina Code section 36-2-314; Texas Business and Commercial Code section 2.314; and South Dakota Codified Laws section 57A-2-314 [by the nine Subclasses];

(8)  – (15)  **Violation of the consumer protection laws of eight states:** New York (New York General Business Law section 349), Florida (Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. section 501.203(7)), Massachusetts (Massachusetts Consumer Protection Law, Mass. Gen. Laws Ch. 93A, section 1 *et seq.*), Illinois (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2), Tennessee (Tennessee Consumer Protection Act, Tenn. Code Ann. section 47-18-104), South Carolina (South Carolina Unfair Trade Practices Act, S.C. Code Ann. section 39-5-20(a)), Texas (Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code section 17.41 *et seq.*), and South Dakota (South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D.C.L. section 37-24-1 *et seq.*) [by the respective Named Plaintiff and state Subclass];

(16)  **Unjust Enrichment** under California law [by Plaintiffs and the Class].

Seagate moved to dismiss the SAC on August 5, 2016.  (Dkt. 68.)  After this case was reassigned, the Court granted in part and denied in part Seagate's Motion to Dismiss.  Specifically, the Court **dismissed** the following claims and allegations:

- the Fourth and Sixth claims for relief for breach of express warranty;

- the Fifth and Seventh claims for relief for breach of implied warranty under California Commercial Code section 2314;

- the First through Third, and Eighth through Thirteenth claims for relief to the extent based on any alleged misrepresentations/omissions **other than** Seagate's representations regarding the Drives' RAID capabilities and their AFRs.

Dkt. 100.  The Court gave plaintiffs until March 3, 2017 to file a Third Consolidated Amended Complaint.  Order at 30:3. They did not do so.  Accordingly, on March 24, 2017, Seagate answered the unamended SCAC.  Dkt. 105.

## III.    LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is properly granted when, accepting all factual allegations as true, the moving party is entitled to judgment as a matter of law.  *Cafasso, U.S. ex rel. v. General Dynamics C4 Systs., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  The standard of review under Rule 12(c) is "substantially identical" to the *Iqbal* and *Twombly* plausibility standard under Rule 12(b).  *Chavez v. United States*, 683 F.3d 1102, 1108-1109 (9th Cir. 2012).  Under this standard, a plaintiff must plead "enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (citation omitted).  Mere conclusions couched in factual allegations are insufficient to state a claim, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and a complaint cannot "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement[,]'" *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at \*5 (S.D. Cal. Feb. 13, 2012) (internal citation omitted).

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  Here, "immaterial" means "that which has no essential or important relationship to the claim for relief . . ." and "impertinent" means "statements that do not pertain, and are not necessary, to the issues in question."  *Id*. at 974 (citation omitted).  Finally, a "scandalous pleading is one that 'improperly casts a derogatory light on someone, most typically a party to the action.'"  *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012)).  While generally

1  disfavored, a motion to strike is appropriate where it "will make trial less complicated or eliminate

2  serious risks of prejudice to the moving party, delay, or confusion of the issues."  *Nguyen v. CTS*

3  *Electronics Manufacturing Solutions Inc.*, 301 F.R.D. 337, 340 (N.D. Cal. 2014).[4]

4  **IV.    ARGUMENT**

5        **A.    This Court Should Strike Allegations and Claims That Have Been Dismissed**

6        As a result of Plaintiffs' failure to amend their complaint to conform to this Court's Order,

7  the SCAC is bloated with superfluous claims and allegations of alleged misrepresentations that

8  have already been dismissed.  The Court permitted Plaintiffs to proceed on statements regarding

9  only two narrow subjects:  the Drives' AFRs and suitability for use in RAID configurations.  The

10  Court dismissed all of Plaintiffs' claims to the extent they were based on other alleged

11  misrepresentations or marketing statements recited in the SAC:

> [T]he Court declines to dismiss Plaintiffs' claims based on Seagate's statements as to the drives' annualized failure rate ("AFR") and suitability for use in RAID configurations, *but dismisses Plaintiffs' claims to the extent they are based on the other statements identified in the complaint*.  Plaintiffs do not sufficiently allege the falsity of Seagate's affirmative statements as to the drives' read error rate, suitability for NAS, or AcuTrac technology, and the Court holds that Seagate's affirmative statements about the general reliability and performance of the drives are non-actionable puffery.

16  Order at 14:12-19 (emphasis added); *see also id.* at 16:25-17:14 (dismissing claims based on read

17  error rate statements); *id.* at 19:18-24 (dismissing claims based on NAS statements); *id.* at 20:13-

18  21 (dismissing claims based on statements relating to AcuTrac or AcuTrac technology); *id.* at

19  20:22-23:11 (dismissing claims based on other statements regarding performance or reliability).

20        The Court also dismissed Plaintiffs' express warranty claims and their implied warranty

21  claims under California Com. Code section 2314.  The Court dismissed Plaintiffs' express

---

22

23        [4]  A court may strike a pleading or portions thereof either on its own or on the motion of a party before it responds to the pleading.  Given the limited time Seagate had to respond after

24  Plaintiffs failed to file a third amended complaint, and out of an abundance of caution, Seagate answered the SCAC on March 24, 2017.  At this time, Seagate requests that the Court strike

25  portions of Plaintiffs' SCAC to effectuate its Order.  *See Culinary & Serv. Emp's Union, AFL-CIO Local 555 v. Hawaii Emp. Ben. Admin., Inc.*, 688 F.2d 1228, 1232-33 (9th Cir. 1982) (court

26  acted within its discretion in striking claims under Rule 12(f) even though defendant had already answered); *United States v. Wang*, 404 F. Supp. 2d 1155, 1157 (N.D. Cal. 2005) ("a court can

27  consider the merits of an untimely motion to strike[,]" because "Rule 12(f) clearly permits a Court on its own initiative, at any time, to strike . . . . In effect, the Court's discretion renders the twenty

28  (20) day rule essentially unimportant.").

1  warranty claims (4 and 6) and related allegations on the basis that "Plaintiffs do not adequately

2  state a claim for breach of express warranty, whether under the terms of the warranty itself, under

3  the essential purpose doctrine, or under the Song-Beverly Act."  Order at 10:15-19.  Moreover, the

4  Court struck Plaintiffs' Fifth and Seventh Claims to the extent they alleged a breach of California

5  Com. Code section 2314 on the ground that Plaintiffs had failed to allege that they (1) were in

6  contractual privity with Seagate, or (2) fell within an exception to the privity rule.  Order at 13:21-

7  24.  Thereafter Plaintiffs failed to amend these claims.[5]

8      All of the above allegations and claims should now be stricken.  Proceeding on a pleading

9  replete with superfluous allegations poses a substantial risk of confusion of the issues and

10  prejudice to Seagate.  Seagate has already been forced to expend significant time answering the

11  entirety of Plaintiffs' 566-paragraph SCAC.  Dkt. 105.  Moreover, many of Plaintiffs' dismissed

12  allegations amount to an attempt to smear Seagate.  The SCAC repeatedly charges Seagate with

13  purported misrepresentations and failures to honor warranties, even though the Court dismissed

14  those allegations and claims as a matter of law.

15      Indeed, the SCAC contains at least 53 paragraphs accusing Seagate of violating its express

16  warranty, even though the Court held Plaintiffs stated inadequate facts to support any such

17  allegation.  SCAC ¶¶ 10, 12, 122-133, 279, 292, 333-350, 368-384, 454, 529; Order at 7:2-5.

18  Similarly, in at least 28 paragraphs Plaintiffs accuse Seagate of making false statements as to the

19  drives' read error rate or AcuTrac technology, even though the Court held Plaintiffs failed to

20  sufficiently allege that any of these statements were false.  SCAC ¶¶ 53-55, 58, 72, 74-76, 80, 191,

21  192, 216, 218, 227, 281, 285, 323, 408, 409, 430, 445, 448, 476, 495, 513, 530, 534, 551; Order at

22  14:15-17, 17:13-14, 20:19-21.  At least 76 paragraphs make allegations regarding the drives'

23  suitability for NAS even though those claims have also been dismissed.  SCAC ¶¶ 3, 6, 35-38, 44,

24  59, 61-66, 110-117, 153, 156, 157, 161, 192, 193, 227, 229, 236-238, 247, 248, 281, 284, 285,

25  289, 306, 320, 322, 323, 357, 358, 391, 392, 408, 409, 411, 413, 423, 426, 430, 445, 448, 451,

26  455, 470, 471, 475, 476, 488, 489, 494, 495, 506, 507, 512, 513, 530, 534, 537, 549, 551, 554;

27  Order at 14:15-19, 19:18-24.  Many other paragraphs accuse Seagate of making

28

[5] Plaintiffs themselves voluntarily dismissed Plaintiff Ginsburg.  *See* Dkt. 67.

1    misrepresentations that the Court ruled were "too vague, general, and subjective to be actionable."

2    *See generally*, Exhibit 1 hereto; Order at 20:22-23:11.

3         These are exactly the type of immaterial, impertinent, and scandalous allegations that are

4    the proper target of a motion to strike.  *Cortina*, 94 F. Supp. 3d at 1182 (a pleading is scandalous

5    where it "improperly casts a derogatory light on someone, most typically on a party to the

6    action.").  Finally, because the dismissed allegations have no possible bearing on the remaining

7    claims, they should be stricken as immaterial and impertinent.  *Frenzel*, 76 F. Supp. 3d at 1006

8    (motions to strike are proper where "the matter to be stricken clearly could have no possible

9    bearing on the subject of the litigation."); *Andren v. Alere, Inc.*, No. 16cv1255-GPC (NLS), 2017

10   WL 168605, at *3 (S. D. Cal. Jan. 17, 2017) ("Immaterial matter is that which has no essential or

11   important relationship to the claim for relief . . . .").  In light of Plaintiffs' refusal to amend their

12   pleading to comport with the Court's Order, the Court should now strike from the SCAC the

13   material it has already dismissed.

14        **B.    Plaintiffs' Claims for Violations of the Consumer Protection Laws Of Florida,**
            **Texas, and South Dakota Should Be Adjudicated on the Pleadings and the**
15          **Subclass Allegations Stricken Because the Named Plaintiffs Do Not Allege**
            **They Saw The Alleged Misrepresentations Still at Issue**
16

17        Similarly, this Court should adjudicate on the pleadings Plaintiffs' Ninth, Fourteenth, and

18   Fifteenth Claims for Relief, in which Plaintiffs Schechner, Manak, and Nelson allege violations of

19   the consumer protection laws of Florida, Texas and South Dakota, respectively, and strike the

20   Subclass allegations as to each of those claims.  SCAC ¶¶ 418-436 (Florida), 522-544 (Texas),

21   545-556 (South Dakota).  The Court dismissed these claims to the same extent as it dismissed

22   Plaintiffs' allegations under the California consumer protection statutes.  Order at 14, n.9.  In other

23   words, these claims have been dismissed *except as to* alleged statements about AFR and RAID.

24        Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. Ann. § 501.211, Texas's

25   Deceptive Trade Practices Act, Tex. Business and Commercial Code section § 17.50(a)(1), and

26   South Dakota's Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws §

27   37-24-31 each require that plaintiffs allege they relied on defendant's deceptive conduct to their

28

detriment.[6]  Here, plaintiffs Schechner, Manak and Nelson fail to allege they ever saw Seagate's RAID or AFR statements, much less relied on them.  SCAC ¶¶ 162-173 (Schechner), 211-222 (Manak), 135-148 (Nelson).  *A fortiori,* they do not and cannot allege that they were injured by such statements.  *Id.*  The Court should grant judgment on the pleadings on Claims 9, 14, and 15, because the plaintiffs who purport to bring these claims (Schechner, Manak, and Nelson) fail to allege that they saw, relied on, or were injured by any alleged AFR or RAID representations.

Further, these claims should be dismissed without leave to amend.  As noted, the Court previously dismissed them except to the extent they allege statements about AFR and RAID, Order at 14, n.9.  In so holding, the Court recognized that, while other named plaintiffs allege reliance on AFR and/or RAID statements, Schechner, Manak, and Nelson do not.  Order at 16:11-14 (explaining that "several named plaintiffs" allege that they read and relied on AFR statements and citing allegations "¶¶ 153−54, 161 [Hauff], 178−79, 185 [Hagey], 192−93, 202 [Crawford], 227−29, 231 [Enders]," but not any allegations of Schechner, Manak or Nelson); Order at 19:7-11 (listing plaintiffs who alleged reliance on RAID statements; Schechner, Manak and Nelson not included).  The Court provided Plaintiffs the opportunity to amend—at which time they could have added such allegations if they were able to do so—but they did not.  Accordingly, Claims 9, 14, and 15 should be dismissed without leave to amend.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (leave to amend properly denied when plaintiff failed to take advantage of prior opportunity to amend); *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." (citations omitted)).

---

[6] *E.g.*, *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054 (Fla. 3d Dist. Ct. App. 2007) (affirming dismissal of complaint under Florida Unfair and Deceptive Trade Practices Act because plaintiff "fail[ed] to allege Defendants' alleged wrongs caused her to purchase [the product]"); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693-94 (Tex. 2002) (reversing certification of class against computer software manufacturer on grounds that there was "no evidence the purchasers actually did rely on [Defendant's] statements . . . ."); *Sisney v. Best, Inc.*, 754 N.W.2d 804, 811 (S.D. 2008) (dismissing claim under South Dakota DTPCPS because plaintiff failed to plead "that he was adversely affected *as a result of* a deceptive practice used by the Defendants in connection with *their sale or advertising*" of the product.") (emphasis added).

1    Once these Plaintiffs' claims are dismissed, there are no Named Plaintiffs who have

2    standing either to assert these claims or to represent the purported Florida, Texas and South

3    Dakota Subclasses.  On that basis, the Court should strike both the claims and the Subclasses.  *See*

4    *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citation omitted) ("[I]f none of the named plaintiffs

5    purporting to represent a class establishes the requisite of a case or controversy with the

6    defendants, none may seek relief on behalf of himself or any other member of the class.").[7]

7    **C.    The Breach of Implied Warranty Claims Fail**

8    Plaintiffs' Fifth Cause of Action alleges breach of implied warranty under California's

9    Song Beverly Act.  Plaintiffs' Seventh Cause of Action alleges violations of the implied warranty

10   laws of California, New York, Illinois, Florida, Massachusetts, Tennessee, South Carolina, Texas

11   and South Dakota, on behalf of the respective proposed Subclasses from those states.  SCAC ¶

12   386 (alleging breach of implied warranty under Cal. Com. Code § 2314; Cal. Civil Code § 1792;

13   N.Y. U.C.C. § 2-314; 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212; Fla. Stat. § 672.314;

14   Massachusetts ALM Gen. Laws Ch. 106, § 2-314; Tenn. Code § 47-2-314; S.C. Code § 36-2-314;

15   Tex. Bus. & Com. Code § 2.314; and S.D. Codified Laws § 57A-2-314).  For the reasons

16   explained below, all of these claims fail as a matter of law.

17
**1.    The Claims for Breach of Implied Warranty Under New York, Illinois, Florida, Tennessee, South Carolina, and South Dakota Law Fail for Lack of Privity**
18

19   Privity of contract is required for implied warranty claims under the laws of New York,

20   Illinois, Florida, Tennessee, South Carolina and South Dakota.[8]  Here, Plaintiffs allege they

---

22   [7]  Rule 12(f) can properly be used to strike class allegations in situations where the
23   identified defect in the class allegations will not be remediable through further discovery.  *See*
*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989-91 (N.D. Cal. 2009) (granting Rule 12(f) motion
24   to strike class allegations where standing deficiencies would preclude action from ever proceeding
as a class action); *Missud v. Oakland Coliseum Joint Venture*, 2013 U.S. Dist. LEXIS 29915, *75
25   (N.D. Cal. Mar. 5, 2013) (class allegations stricken where class counsel sought to be class
representative, which defect could be remedied only by substituting a different class
26   representative).  Here, further discovery will not remedy the lack of named plaintiffs able to assert
claims under Florida, Texas or South Dakota law.

27   [8]  *E.g.*, *Parker v. Raymond Corp.*, 87 A.D. 3d 1115, 1116 (2d App. Div. 2011) (summarily
adjudicating implied warranty claims under New York law because "contractual privity between
28   the parties was clearly lacking"); *Rothe v. Maloney Cadillac, Inc.*, 518 N.E. 2d 1028, 1029–30

1  bought their drives from third parties, not from Seagate.  SCAC ¶¶ 135 (Nelson, South Dakota),

2  162 (Schechner, Florida), 174 (Hagey, Tennessee), 186 (Crawford, New York), 232 (Dortch,

3  South Carolina), 244 (Smith, Illinois).  This Court previously held that Plaintiffs' implied

4  warranty claim under California Commercial Code section 2314 was barred due to a lack of

5  privity; in the process, the Court rejected Plaintiffs' claims that they fell within a third-party

6  beneficiary exception to the privity requirement.  Order at 13:16-24.  This Court's rationale

7  applies with equal force to implied warranty claims under the laws of other states.

8          Accordingly, because the implied warranty statutes of New York, Illinois, Florida,

9  Tennessee, South Carolina and South Dakota all require privity, Plaintiffs' claims under these

10  statutes fail as a matter of law and are thus properly adjudicated on the pleadings.  The Court

11  previously granted Plaintiffs leave to amend these claims and they did not do so.  Order at 30:3.

12  They should now be dismissed with prejudice.  Indeed, leave to amend would be futile because

13  Plaintiffs affirmatively allege they did not purchase their drives from Seagate.  *Salameh*, 726 F.3d

14  at 1133.  Because no Plaintiffs can sustain these claims, the related class allegations should also be

15  stricken.  *O'Shea*, 414 U.S. at 494.

16              **2.    The Claim for Breach of Implied Warranty Under Texas Law Fails for
                        Lack of Notice**

18          Plaintiffs' Seventh Cause of Action alleges breach of Texas' implied warranty law, Tex.

19  Bus. & Com. Code § 2.314.  Under Texas law, to maintain a claim against a manufacturer, the

20  plaintiff must give notice of the alleged breach ***before*** bringing suit.  *In re MyFord Touch*

21  *Consumer Litig*., 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014) (implied warranty claims dismissed

22  (1988) (under Illinois law, privity of contract is a prerequisite to recover damages for breach of
23  implied warranty); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009)
     ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in
24  the absence of privity.") (internal citation omitted); *Leach v. Wiles*, 58 Tenn. App. 286, 303, 429
     S.W.2d 823, 831 (1968) ("Therefore, we must necessarily reach the conclusion that the rule
25  requiring privity of contract between the parties as an essential element of implied warranty still
     exists in Tennessee, except in cases where the product involved is 'in a defective condition
26  unreasonably dangerous to the user or to his property.'"); *Odom v. Ford Motor Co.*, 230 S.C. 320,
     325-26, 95 S.E. 2d 601 (S.C. 1956) (under South Carolina law, no privity existed between dealer
27  and remote vendee); *Jandreau v. Sheesley Plumbing & Heating Co., Inc.*, 324 N.W.2d 266, 272
28  (S.D. 1982) (under South Dakota law, "a non-privity buyer, whether commercial or consumer,
     cannot recover for direct economic loss on either an express or an implied warranty theory.").

1  with prejudice for failure to allege pre-suit notice); *McKay v. Novartis Pharm. Corp.*, 751 F.3d

2  694, 707 (5th Cir. Tex. 2014) (summary judgment granted based on plaintiffs' failure to provide

3  pre-suit notice).  To assert a warranty claim, "[t]he buyer must within a reasonable time after he

4  discovers or should have discovered any breach ***notify the seller of breach or be barred from any***

5  ***remedy***." Tex. Bus. & Com. Code § 2.607(c)(1) (emphasis added).  Nor does filing a complaint

6  constitute sufficient notice; notice must be given pre-suit.  *See, e.g.*, *Martin v. Home Depot U.S.A.,*

7  *Inc.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005); *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.

8  3d 194, 202 (Tex. App. 2003) ("Neither did the commencement of litigation satisfy this notice

9  requirement.").[9]

10  Plaintiff Manak is the only Texas resident.  SCAC ¶ 22.  Manak does not allege he

11  provided Seagate with notice of a claim for breach of implied warranty.  SCAC ¶¶ 211-22.  The

12  Seventh Cause of Action alleges generally, "Defendant has received timely notice regarding the

13  problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer

14  an effective remedy."  SCAC ¶ 396.  As discussed above, this type of general notice allegation is

15  insufficient.  *U.S. Tire-Tech*, 110 S.W.3d at 202; *McKay*, 751 F.3d at 706; *Massey*, 46 F. Supp. 3d

16  at 692.  Accordingly, Seagate should be granted judgment on the pleadings as to this claim.

17  Likewise, the allegation of a Texas Subclass should be stricken, since there is no Named Plaintiff

18  who made the required notice and can represent that Subclass.  *O'Shea*, 414 U.S. at 494.  Leave to

19  amend would be futile because Manak cannot now provide pre-suit notice.  *In re MyFord Touch*

20  *Consumer Litig.*, 46 F. Supp. 3d at 978; *Martin*, 369 F. Supp. 2d at 893.

21  

22  [9]   Indeed, for notice to be sufficient, "[t]he manufacturer must be made aware of a problem
with a ***particular product*** purchased by a ***particular buyer***." *U.S. Tire-Tech*, 110 S.W.3d at 202
23  (emphasis added); *Massey v. Novartis Pharms. Corp.*, 46 F. Supp. 3d 688, 692 (W.D. Tex. 2014)
(notice insufficient where plaintiff alleged defendant "had notice because [defendant] received
24  several Adverse Event reports from other claimants," because "generalized notice is not sufficient
to satisfy the notice requirement"); *McKay*, 751 F.3d at 706 (notice insufficient where, "even
25  though Dr. Leibowitz did notify Novartis of the problems his patients were experiencing with
the drugs, there is no evidence that he alerted Novartis that McKay in particular had suffered an
26  injury."); *Wilcox v. Hillcrest Memorial Park*, 696 S.W.2d 423, 425 (Tex. App. July 8, 1985) ("The
buyer is required to notify the seller that a breach of warranty has occurred in order to give the
27  seller an opportunity to inspect the product to determine whether it was defective and to allow the
28  seller an opportunity to cure the breach, if any.")

1

2

### 3. The Claim for Breach of Massachusetts Implied Warranty Law Fails Because Plaintiffs Do Not Allege Essential Elements of the Claim

3      "Actions under Massachusetts law for breach of the implied warranty of merchantability

4  are the functional equivalent of strict liability in other jurisdictions."  *Cigna Ins. Co. v. Oy*

5  *Saunatec*, 241 F.3d 1, 15 (1st Cir. 2001) ("The Legislature has made the Massachusetts law of

6  warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of

7  Torts § 402A (1965).'" (citing *Back v. Wickke Corp.*, 375 Mass. 633 (Mass. 1978))); *Johnson ex*

8  *rel. Estate of Johnson v. Brown & Williamson Tobacco Corp*., 345 F. Supp. 2d 16, 20 (D. Mass.

9  2004) ("The Massachusetts Legislature has 'transformed warranty liability into a remedy intended

10  to be as comprehensive as the strict liability theories of [many other] jurisdictions." (citation

11  omitted)).

12

13

14

15

> To survive the motion to dismiss on this claim, the plaintiff must allege sufficient facts to demonstrate that the defendants manufactured or sold the product, the product was unreasonably dangerous or unsuited for ordinary use at the time it left the defendants' hands ***because of a defect***, the plaintiff was using the product in an intended or reasonably foreseeable manner when she was injured, and the product's defect was a legal cause of the plaintiff's injury.

16  *Varney v. R.J. Reynolds Tobacco Co*., 118 F. Supp. 2d 63, 69 (D. Mass. 2000) (emphasis added)

17  (citing *Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. 317, 337, 698 N.E.2d 28

18  (1998)).

19      Massachusetts law recognizes at least two types of product defects:  design defects and

20  defects caused by inadequate warnings.  *Haglund v. Philip Morris, Inc*., 446 Mass. 741, 746-47

21  (2006) ("A seller breaches its warranty obligation when a product that is 'defective and

22  unreasonably dangerous' for the '[o]rdinary purposes' for which it is 'fit' causes injury. . . .

23  Warranty liability may be premised either on the failure to warn, or, as here, on defective design."

24  (citations omitted)); *Kearney v. Philip Morris, Inc*., 916 F. Supp. 61, 64 (D. Mass. 1996)

25  ("[B]reach of warranty can occur if either (1) the product is defectively designed, or (2)

26

27

28

1    foreseeable users are not adequately warned of the dangers associated with its use.")[10]  Plaintiffs

2    fail to plead the elements of either theory.

3        The elements of a design defect claim include:  (1) the existence of a defect at the time the

4    product left the manufacturer's control; and (2) the existence of a safer [or better] and practical

5    alternative design.  *See Smith v. Ariens Co*., 375 Mass. 620, 626 (Mass. 1978) ("[T]he essence of

6    this theory is that all products of a particular type are defective when they leave the

7    manufacturer."); *Town of Westport v. Monsanto Co*., 2017 U.S. Dist. LEXIS 53815, *15 (D. Mass.

8    Apr. 7, 2017) (design defect claim must be based on a technologically feasible and practical

9    alternative design that would have reduced or prevented the plaintiff's harm). As noted above, a

10   plaintiff must also show the purported design defect was a legal cause of plaintiff's injury.

11   *Varney*, 118 F. Supp. 2d at 69; *Lally*, 45 Mass. App. Ct. at 337.

12       Here, Plaintiffs fail to allege anything about the design of the Drives they claim is

13   defective.  Nor do Plaintiffs plausibly plead that any defect existed at the time the drives left

14   Seagate's control.[11]  Furthermore, Plaintiffs do not allege there was a technologically feasible and

15   practical alternative design that would have reduced or prevented their alleged harm.  Finally, they

16   allege no facts to support a conclusion that a defect caused Plaintiffs' alleged injuries.  These

17   pleading defects are fatal.  "Without any allegation as to ***how*** the [product] was 'defective in

18   design and/or manufacture,' the claim is not pled to the *Twombly-Iqbal* standard."  *Zeman v.*

19   *Williams*, 2014 U.S. Dist. LEXIS 91501, *13 (D. Mass. July 7, 2014) (emphasis in original)

20   (dismissing breach of warranty claim); *Varney*, 118 F. Supp. 2d at 70 (dismissing breach of

21   implied warranty claim where "plaintiff does not allege that there were ***specific*** defects in the

22

23       [10]  The Restatement of Product Liability and many states' laws also recognize
     manufacturing defect as a third type of product defect.  "A product is defective when, at the time
24   of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective
     because of inadequate instructions or warnings."  Restatement of the Law, Third, Torts: Products
25   Liability, § 2; *Laspesa v. Arrow Int'l, Inc.*, 2009 U.S. Dist. LEXIS 121576, *10 (D. Mass. Dec. 23,
     2009) (the three types of defect, "design, manufacturing, and warning – have distinct standards for
26   liability, which apply in both the negligence and warranty contexts").  Regardless of whether
     Massachusetts recognizes manufacturing defect liability, plaintiffs have failed to adequately plead
27   it, as explained below.

28       [11]  Indeed, as explained in Section IV.C.4, most Plaintiffs allege that their drives
     functioned perfectly well for months and/or years, or have never failed.

1   design of defendants' cigarettes" and "there is not the slightest description of what those

2   [alternative] designs were or why they would have avoided causing harm to the plaintiff if

3   adopted.")  Under a design defect theory, ***"[a] bare allegation that the [product] suffered from a***

4   ***'design defect' is an insufficient legal conclusion***." *Lucas v. City of Visalia*, 726 F. Supp. 2d

5   1149, 1155 (E.D. Cal. 2010) (emphasis added) (citing *Iqbal*).[12]  Thus, Plaintiffs fail to state a

6   claim for design defect under Massachusetts law.

7          Nor do Plaintiffs plead a manufacturing defect.  "A manufacturing defect exists when a

8   product deviates in its construction or quality from specifications or planned output in a manner

9   that renders it 'unreasonably dangerous.'"  *Laspesa*, 2009 U.S. Dist. LEXIS 121576, *10;

10  Restatement of the Law, Third, Torts: Products Liability, § 2(a) (product "contains a

11  manufacturing defect when the product departs from its intended design even though all possible

12  care was exercised in the preparation and marketing of the product").[13]  Plaintiffs do not allege

13  ─────────────────────

14      [12] Because Massachusetts implied warranty law is congruent with other states' strict

15  product liability law, *Cigna*, 241 F.3d at 15, cases discussing the pleading standard for strict
    product liability claims under equivalent states' laws are an appropriate guide.  *Back v. Wickes*

16  *Corp.*, 375 Mass. 633, 640 (Mass. 1978) ("The Legislature has made the Massachusetts law of
    warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of

17  Torts § 402A (1965).  For this reason, we find the strict liability cases of other jurisdictions to be a
    useful supplement to our own warranty case law").  *See Altman v. HO Sports Co*., 2009 U.S. Dist.

18  LEXIS 108971, 24-25 (E.D. Cal. Nov. 19, 2009) ("The FAC's allegation that the product defects
    (which are not identified) were substantial causes in causing [plaintiff's] injuries . . . is a legal

19  conclusion that does not allege a plausible cause of action."); *Ferrari v. Natural Ptnr., Inc*., 2017
    U.S. Dist. LEXIS 3663, *17 (N.D. Cal. Jan. 9, 2017) (dismissing design defect claim where

20  "allegations do not identify the theory of design defect that Plaintiff intends to assert, nor do these
    allegations provide supporting facts that 'explain how the particular design' of the product caused

21  Plaintiff's alleged harm."); *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 632-36 (Mass. 2008)
    ("[b]ecause the term 'defect' is conclusory and can be subjective as well, a bare assertion that a

22  defendant, while representing the opposite, has knowingly manufactured and sold a product that is
    'defective,' or suffers from 'safety-related defects,' does not suffice to state a viable claim").

23

24      [13] *See also Lucas*, 726 F. Supp. 2d at 1155 (to allege a manufacturing defect, plaintiffs

25  must "***identify/explain how*** the [product] either deviated from [defendant's] intended result/design
    or ***how*** the [product] deviated from other seemingly identical [product] models" (emphasis in

26  original)); *Zeman*, 2014 U.S. Dist. LEXIS 91501, *13 ("[w]ithout any allegation as to ***how*** the
    [product] was 'defective in design and/or manufacture,' the claim is not pled to the *Twombly-Iqbal*

27  standard." (emphasis original)); *Yagman v. General Motors Co*., 2014 U.S. Dist. LEXIS 120045,
    **6-7 (C.D. Cal. Aug. 22, 2014) (dismissing claim under Rule 8 because "Plaintiff has not . . .

28  pled sufficient facts to support his suggestion that a manufacturing defect is a plausible cause of
    [his] harm"); *Iannacchino*, 451 Mass. at 632-36.

SMRH:482860675.12

1    that their drives deviated from Seagate's intended design.  Indeed, they appear to allege the

2    opposite—that *all* Drives contain an unidentified "latent defect."  Thus, Plaintiffs fail to allege a

3    manufacturing defect.

4         Finally, Seagate has not found any Massachusetts case permitting a "failure to warn"

5    theory to support an implied warranty claim where the product at issue did not cause physical

6    injuries.  Even were the Court to permit such a theory, Plaintiffs fail to satisfactorily plead this

7    type of defect either.  Generally speaking, a supplier has a duty to warn foreseeable users of

8    dangers in the use of its product of which the supplier knows or should have known.  *Taylor v.*

9    *Am. Chemistry Council*, 576 F.3d 16, 24 (1st Cir. 2009).  However, to state a claim, Plaintiffs must

10   allege causation, including that they would have seen the "warnings" and such warnings would

11   have prevented the injury.  *O'Neil v. Electrolux Home Prods.*, 2008 U.S. Dist. LEXIS 39998, *20

12   (D. Mass. May 14, 2008).  Plaintiffs fail to so allege; nor could they, as they do not concede that

13   the manner in which they used (or misused) the drives contributed to the alleged failures.  The

14   Court should grant judgment on the pleadings on the Massachusetts' implied warranty claim.

15        As explained below, Plaintiffs allege their drives "failed" in radically different ways, and

16   that many failed only after years of use or not at all.  Accordingly, Plaintiffs will never be able to

17   allege a design defect, manufacturing defect, or failure to warn.  The Massachusetts implied

18   warranty claim thus should be dismissed without leave to amend.  *Steckman*, 143 F.3d at 1298.

19        **4.    Plaintiffs' Song Beverly Act Implied Warranty Claims Fail Because Plaintiffs Fail to Plead a Defect Present in the Drives During the One-**
20        **Year Warranty Period**

21        In their Fifth and Seventh claims for relief, Plaintiffs allege breach of the implied warranty

22   under California's Song Beverly Act.  The Song-Beverly Act imposes an implied warranty of

23   merchantability that "shall be coextensive in duration with an express warranty which

24   accompanies the consumer goods . . . *but in no event* shall such implied warranty have a duration

25   of . . . *more than one year* following the sale of new consumer goods to a retail buyer."  Cal. Civ.

26   Code § 1791.1(c) (emphasis added).  To state a claim, plaintiffs must plausibly allege that a "latent

27   defect" existed and rendered the products unmerchantable within a year after purchase.  *Mexia v.*

28   *Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-05 (2009).  Furthermore, "it is the defect itself,

rather than some theoretical imperfection, that must exist during the warranty period, and that defect must be so severe as to cause the product to fall below the 'minimum level of quality' guaranteed by the warranty." *Parenteau v. Gen. Motors, LLC*, 2015 U.S. Dist. LEXIS 31184 *30 (C.D. Cal. Mar. 5, 2015). Falling below the minimum level of quality means the product "did not possess even the most basic degree of fitness for ordinary use." *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (citation and quotation marks omitted). While a latent defect need not be discovered by the buyer within the one-year period, *Mexia*, 174 Cal. App. 4th at 1308-09, courts following this rule have emphasized potential safety risks presented by such products. *Marcus v. Apple Inc.*, 2015 U.S. Dist. LEXIS 50399, *15 (N.D. Cal. Apr. 16, 2015) (citing cases). For example, in *Daniel v. Ford*, 806 F.3d 1217, 1220-21 (9th Cir. 2015), plaintiff alleged a latent alignment problem in the vehicles severe enough to cause a "safety hazard" from "premature tire wear," thus rendering the cars unmerchantable at the moment they were sold. By contrast, where plaintiff alleged violation of the warranty of merchantability but failed to identify the alleged defect, he failed to meet Rule 8's pleading standard. *Yagman v. GM Co.*, 2014 U.S. Dist. LEXIS 120045 (C.D. Cal. Aug. 22, 2014) (complaint that "pleads facts that are 'merely consistent with' [D]efendants' liability, [and thus] 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (internal citation and quotation marks omitted); *Grassi v. Int'l Comfort Prods., LLC*, 2015 U.S. Dist. LEXIS 107467 **10-11 (E.D. Cal. Aug. 13, 2015) (where plaintiff alleged defect with "low" "occurrence rate" of corrosion and the defect was repaired, plaintiff failed to allege a defect sufficient to take the product below the "minimum level of quality."). Thus, Plaintiffs must ***identify*** the alleged defect and plausibly plead that such defect was sufficiently severe that it rendered the drives ***unmerchantable within one year of sale***.

Here, Plaintiffs summarily allege that the drives suffer from a "latent defect." SCAC ¶¶ 7, 9, 11, 110, 113, 134, 306, 358, 392. They fail to identify the defect—or even the part of the product in which it purportedly resides. Nor do they allege that the defect existed within one year of sale, or that it was severe enough to render the drives unmerchantable. Instead, Plaintiffs allege facts that contradict such conclusions; their allegations describe widely different types of drive

1  "failure."[14]  Plaintiffs further allege that Backblaze found that the drives at issue functioned

2  perfectly well for at least two years, SCAC ¶ 92, and many Plaintiffs allege their drives failed only

3  after years of use, *or not at all*, SCAC ¶¶ 158-160, 202, 211, 220, 223, 230, 232, 239-241, 243,

4  249-252.  Without identifying a defect and alleging facts sufficient to draw an inference that the

5  defect existed within the limitations period and rendered the drives unmerchantable, Plaintiffs fail

6  to state a claim for breach of implied warranty under the Song-Beverly Act.[15]  Leave to amend

7  would be futile, because Plaintiffs cannot plead the existence or timing of any such defect

8  consistent with the facts they have already alleged.  Accordingly, Plaintiffs' Song-Beverly implied

9  warranty claim should be dismissed without leave to amend.  *Steckman*, 143 F.3d at 1298.

10       **5.**       **The Song-Beverly Act Implied Warranty Claims and Class Allegations Fail Because Plaintiffs Fail to Allege They Purchased Drives in California**

11   

12       Plaintiffs' breach of implied warranty claims under the Song Beverly Act fail for the

13  independent and further reason that Plaintiffs fail to plead they purchased any drives in California,

14  which is a jurisdictional prerequisite.  Plaintiffs purport to bring the Fifth Cause of Action for

15  breach of Song-Beverly on behalf of the Named Plaintiffs and a nationwide class.  SCAC ¶¶ 351-

16   

17     [14]  Nelson and Hauff alleges their drives failed because they developed "bad sectors." SCAC ¶¶ 144, 158-160.  Schechner claims his drive "crashed and failed to boot back up ever

18  again" and that "the power light would turn on but the Drive did not 'spin up.'"  SCAC ¶ 169. Crawford alleges that two drives "began to return read errors[,]" SCAC ¶ 196, and Hagey alleges

19  that one drive suffered "intermittent drive seek failures[,]" SCAC ¶ 183.  Other plaintiffs allege their drives "failed" without specifying how.  *See generally*, SCAC ¶¶ 135-252.

20   

21     [15]  In overruling Seagate's demurrer as to the Song-Beverly implied warranty claim in the parallel *Pozar* state court action, Judge Karnow accepted *Pozar* plaintiffs' conclusory allegation

22  that the supposed latent defect existed within the one-year limitations period.  In doing so, he expressly noted that state court judges do not apply the stricter federal plausibility standard, and

23  speculated that, were he to do so, the Backblaze reports "perhaps" might make the named plaintiffs' allegations plausible.  Here, Plaintiffs make a similar conclusory allegation that the

24  Drives contained model-wide defects at the time of sale.  (*See, e.g.*, ¶ 339).  Seagate submits that this allegation is insufficient to meet Rule 8's plausibility requirement, and that the Backblaze

25  reports do not make Plaintiffs' conclusory allegation plausible.  Indeed, Backblaze admits that its use of drives is nothing like normal consumer use.  *See* Request for Judicial Notice, filed herewith,

26  Exhibit A [Backblaze website https://www.backblaze.com/blog/how-long-do-disk-drives-last/ ] (explaining that Backblaze keeps consumer drives "spinning all the time" in a "24×7 workload of

27  a data center environment" for which the drives were not designed; Backblaze uses "'external' hard drives that were 'shucked' out of their enclosures" and "45 drives are mounted in each

28  Backblaze Storage Pod, and the Storage Pods are mounted in racks in our data centers.")

1   367.  The Seventh Cause of Action alleges claims for breach of implied warranty under the laws of

2   numerous states, including (again) breach of implied warranty under Song-Beverly.  SCAC ¶¶

3   385-401.  The Seventh Cause of Action is alleged on behalf of all Subclasses, including the

4   California Subclass.  Plaintiffs voluntarily dismissed Plaintiff Ginsburg.  Dkt. 67.  Of the

5   remaining Plaintiffs, only Enders resides in California.  SCAC ¶ 17.  Enders alleges he purchased

6   drives "from amazon.com."  SCAC ¶ 223.  None of the other Plaintiffs alleges that he resides in

7   California, and none alleges he purchased any drive in California.  SCAC ¶¶ 135-252.

8        By its express terms, the Song-Beverly Act implies a warranty of merchantability in "every

9   sale of consumer goods that are sold at ***retail in this state*** . . . ."  Cal. Civ. Code § 1792 (emphasis

10  added).  Accordingly, if plaintiffs fail to allege they purchased the allegedly defective product in

11  California, their claims under Song-Beverly fail as a matter of law.  *Anunziato v. eMachines, Inc.*,

12  402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005) (named plaintiff's Song-Beverly Act claim failed as

13  a matter of law because plaintiff purchased the allegedly defective product in Massachusetts over

14  the internet); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155 (N.D. Cal.

15  2010) (rejecting argument that online sales may be treated as occurring in California because order

16  processed and shipped from California); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F.

17  Supp. 3d 1051, 1107 (N.D. Cal. Jan. 21, 2015) (dismissing Song-Beverly claims where there were

18  "no allegations in the SCAC that any of these Plaintiffs purchased their mobile devices ***in***

19  ***California***." (emphasis original).)  Here, none of the Named Plaintiffs alleges he purchased a drive

20  in California.  SCAC ¶ 223; ¶¶ 135-252.  Accordingly, Seagate should be granted judgment on the

21  pleadings as to the Song-Beverly claims.[16]  If Plaintiffs could have pleaded a purchase in

22  California, they would have done so.  Thus, the dismissal should be without leave to amend.

23  _____

24      [16] Song-Beverly also does not apply to internet sales that did not originate from a seller in
    California.  A "sale" for purposes of Song-Beverly occurs when "title to the goods pass[es] in
25  California."  *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1115 (C.D. Cal. 2007) (citing Cal.
    Civ. Code § 1791(n)).  Where title passes outside of California, the Song-Beverly Act does not
26  apply.  *Id.* at 1113.  Under the California Commercial Code, "title passes to the buyer at the time
    and place at which the seller completes his performance . . . .  If the contract requires or authorizes
27  the seller to send the goods to the buyer but does not require him to deliver them at destination,
    title passes to the buyer at the time and place of shipment; but . . .  [i]f the contract requires
28  delivery at destination, title passes on tender there."  Cal. Com. Code § 2401(2).  Applying these

1    Furthermore, the Class is defined as "[a]ll individuals in the United States who purchased,

2    not for resale, at least one Seagate model ST3000DM001 hard drive. . . ." and the California

3    Subclass is defined as, "[a]ll individuals in California who purchased, not for resale, at least one

4    Seagate model ST3000DM001 hard drive…"  SCAC ¶¶ 264, 265.  The other state-specific

5    Subclass definitions similarly apply to "individuals in [state] who purchased, not for resale, at

6    least one Seagate" drive.  *Id*.  Neither the nationwide Class nor any of the Subclasses is limited to

7    individuals who purchased a drive ***in California***.  As a result, this Court should strike Plaintiffs'

8    nationwide Class and all Subclass allegations under the Song-Beverly Act claims.

9    **D.    Plaintiffs' Nationwide Class Allegation Should Be Stricken**

10    Plaintiffs purport to bring the First through Fifth and Sixteenth Causes of Action on behalf

11    of a nationwide Class.  As explained in Sections II and IV.A., the Court already dismissed

12    Plaintiffs' Fourth Cause of Action in its entirety, and dismissed the Fifth Cause of Action to the

13    extent it alleges breach of implied warranty under California Commercial Code section 2314.  As

14    explained in Section IV.C(5) above, the nationwide Class allegations under the Song-Beverly part

15    of the Fifth Cause of Action should also be stricken, because Song-Beverly applies only to drives

16    purchased in California.  As explained below, the remaining nationwide Class allegations should

17    also be stricken (under the First through Third and Sixteenth Causes of Action), because choice of

18    law principles preclude application of California's laws to non-California resident members of the

19    putative class under the facts of this case.

20    The Ninth Circuit has held, under California's choice of law rules, that "each class

21    member's consumer protection claim should be governed by the consumer protection laws of the

22    

23    principles, the *Gusse* court explained that goods shipped in California by a California retailer
pursuant to an internet sale out of state would fall within the ambit of Song-Beverly, while goods
24    shipped by a Minnesota retailer to a consumer in California would not fall within the purview of
Song-Beverly because title to the goods had passed in Minnesota.  *Gusse* at 1115, n.7.  California
25    courts are in accord.  *See, e.g.*, *California State Electronics Ass'n v. Zeos Int'l Ltd.*, 41 Cal. App.
4th 1270, 1277 (1996) (Song-Beverly Act did not apply to products sold by mail order from
26    Minnesota retailer to California buyer because title passed in Minnesota upon shipment, and thus
were not goods "sold in this state" within the meaning of the Act).  Here, of course, Amazon.com
27    is based in Seattle, Washington, so title would have presumably passed to Plaintiff Enders there,
and in any event, Plaintiffs fail to allege where Enders' drive was shipped from for purposes of
28    establishing whether Song-Beverly applies.

1    jurisdiction in which the transaction took place." *Mazza v. American Honda Motor Co.*, 666 F.3d

2    581, 594 (9th Cir. 2012).  In *Mazza*, plaintiffs filed a class action alleging that Honda had

3    misrepresented and concealed material information about the capabilities of an optional safety

4    feature.  *Id.* at 587.  They brought claims for violations of the UCL, FAL, CLRA, as well as unjust

5    enrichment.  *Id.*  The district court certified a nationwide class.  The Ninth Circuit vacated the

6    certification order.  *Id.* at 585, 587.

7         Applying California's governmental interest choice-of-law test, the Ninth Circuit held that

8    Honda had demonstrated California's law should be displaced as to class members from other

9    states.  It examined: (1) whether the laws of affected states are different; (2) if there is a difference,

10   whether there is a "true conflict" between each state's interest in applying its own law to the case;

11   and (3) if a true conflict exists, which state's interest would be more impaired if its law was not

12   applied.  *Id.* at 590.  The court first determined that there was a material conflict between

13   California's consumer protection laws and those of other states because (1) such laws have

14   different scienter requirements, (2) some require named plaintiffs to demonstrate reliance, while

15   other states' consumer protection statutes do not (e.g., Florida and New York), (3) they provide

16   different remedies, and (4) they establish different elements for recovery under a theory of unjust

17   enrichment.  *Id.* at 591.  Similarly, the court noted that "[t]he elements necessary to establish a

18   claim for unjust enrichment also vary materially from state to state."  *Id.* at 591 (citation omitted).

19        Second, the court, relying on principles of federalism and California's stated policy that a

20   "jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its

21   borders[,]" determined that there was a true conflict between California law and the laws of the 43

22   other states at issue as each state had "a strong interest in applying its own consumer protection

23   laws" to resident class members.  *Id.* at 592 (quoting *McCann v. Foster Wheeler*, 48 Cal. 4th 68,

24   97 (2010)).[17]  Third, the court reasoned that "each class member's consumer protection claim

25   should be governed by the consumer protection laws of the jurisdiction in which the transaction

---

26        [17]  Indeed, the California Supreme Court has articulated a presumption against
27   extraterritorial application of California's laws:  "[W]e presume the Legislature did not intend a
     statute to be operative, with respect to occurrences outside of the state, . . . unless such intention is
28   clearly expressed."  *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (internal citation and
     quotation marks omitted).

took place" as those states' interests in "calibrat[ing] liability to foster commerce" would be impaired by the application of California's laws.  *Id.* at 593-94.  Because the laws of multiple jurisdictions applied, the court held that variances in state law overwhelmed common issues and precluded a finding of predominance for a nationwide class.  *Id.* at 596.

Courts applying *Mazza* have reached the same conclusion, finding variances in states' consumer protection and unjust enrichment laws to be dispositive of class certification—even at the pleadings stage.  *See, e.g.*, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1008-10 (N.D. Cal. 2014) (Orrick, J.) (dismissing nationwide class action claims under *Mazza*, explaining that it was "highly unlikely that discovery will uncover information relevant to whether [plaintiff] may maintain a national class action asserting claims under California law" such that "applying the governmental interest test at the pleading phase" was proper);  *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at *6-11 (S.D. Cal. Feb. 13, 2012) (dismissing claims of non-resident named plaintiffs under Song-Beverly, CLRA, and UCL in manufacturing defect case); *Granfield v. Nvidia Corp.*, No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678, at *9 (N.D. Cal. July 11, 2012) (Massachusetts resident's claims under CLRA and UCL were barred because she bought her computer in Massachusetts); *Banks v. Nissan N. Am., Inc.*, No. C 11-2022 PJH, 2012 U.S. Dist. LEXIS 37754, at *2 (N.D. Cal. Mar. 20, 2012) (plaintiffs could not pursue UCL and CLRA claims as a nationwide class action, and could pursue such claims as to a California class only); *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (dismissing named plaintiff's UCL, FAL, CLRA, and unjust enrichment claims because "non-California residents' claims are not supported 'where none of the alleged misconduct or injuries occurred in California.'"  (internal citation and quotation marks  omitted)).

*Mazza* precludes certification of a nationwide class in this case.  There are no facts alleged that could justify the application of California law to a nationwide class of consumers who do not reside in California, did not purchase a hard drive in California, and were not exposed to any allegedly deceptive statements in California.[18]  Moreover, the variations between California law

---

[18] While plaintiffs may argue that specific representations about RAID uses or AFRs "emanated" from Seagate's California headquarters, that would require them to pinpoint specific

1  and the laws of other jurisdictions regarding scienter, reliance, causation, remedies, and limitations

2  require that the law of each consumer's state be applied to plaintiffs' claims—to conclude

3  otherwise would be to ignore the principles of federalism that underlie the Class Action Fairness

4  Act. *See* S. Rep. No. 109-14, at 24, 61-63 (2005) ("[T]he problem is that many state courts faced

5  with interstate class actions have undertaken to dictate the substantive laws of other states by

6  applying their own laws to other states, resulting in a breach of federalism principles").

7  **V.     CONCLUSION**

8       For the foregoing reasons, Seagate respectfully requests that the Court:

9       a.   Strike the allegations and claims it previously dismissed, specifically:

10          (1)   the Fourth and Sixth Causes of Action for express warranty;

11          (2)   the Fifth and Seventh Causes of Action to the extent they allege a breach of
                  California Com Code section 2314;

12          (3)   all allegations of misrepresentations or omissions except those related to
13                RAID or AFR;

14       (*see* Exhibit 1 [red, strikethrough text])

15       b.   Grant Judgment on the Pleadings in favor of Seagate with prejudice as to the
                Fourteenth, and Fifteenth Claims for Relief because they depend entirely on factual
16              allegations that were dismissed;

17       c.   Grant Judgment on the Pleadings in favor of Seagate with prejudice as to all state
                implied warranty claims in the Fifth and Seventh Causes of Action, including on
18              the claims under New York, Illinois, Florida, Tennessee, South Carolina, and South
                Dakota law for lack of privity; on the implied warranty claim under Texas law for
19              lack of notice; and on the implied warranty claim under Massachusetts law and the
                Song Beverly Act in the Fifth and Seventh Causes of Action for failure to allege
20              key elements of these claims;

21       d.   Strike or Grant Judgment on the Pleadings in favor of Seagate with prejudice as to
                the Song Beverly implied warranty claims in the Fifth and Seventh Causes of
22              Action for failure to allege any drives were purchased in California;

23

24

25

26  representations each class member saw.  Seagate has substantial facilities in Colorado, Minnesota,
    and Oklahoma as well as California, necessitating an individualized inquiry.  In any event, the
27  *Mazza* court rejected the argument that California's interest in applying its consumer protection
    laws extraterritorially overcomes the interests of other states merely because the allegedly
28  unlawful statements might emanate from California.

e.    Strike Plaintiffs' nationwide class allegations under the Fifth Cause of Action because the nationwide Class is not limited to individuals who purchased drives in California, and under the First through Third and Sixteenth Causes of Action because choice of law principles preclude non-California residents from asserting these claims.

(*See* Exhibit 1 [blue, strikethrough text])

Dated:  May 26, 2017                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By_____*/s/ Anna S. McLean*_____
ANNA S. McLEAN
Attorneys for Defendant
SEAGATE TECHNOLOGY LLC

SMRH:482860675.12