SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
MUKUND H. SHARMA, Cal. Bar No. 249125
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:      npopovic@sheppardmullin.com
           amclean@sheppardmullin.com
           msharma@sheppardmullin.com
           rodewald@sheppardmullin.com
           lpayne@sheppardmullin.com
           jsiu@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

IN RE SEAGATE TECHNOLOGY LLC LITIGATION

CONSOLIDATED ACTION

Case No. 3:16-cv-00523-JCS

**NOTICE OF MOTION AND MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date:**  July 7, 2017
**Time:**  9:30 a.m.
**Place:**  Courtroom G
**Judge:**  Hon. Joseph C. Spero

Second Consolidated Amended Complaint filed: July 11, 2016

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.................................................2

II.     BRIEF STATEMENT OF RELEVANT FACTUAL ALLEGATIONS ..............................3

III.    LEGAL STANDARD .................................................................................................5

IV.     ARGUMENT .............................................................................................................6

     A.    This Court Should Strike Allegations and Claims That Have Been
       Dismissed .......................................................................................................6

     B.    Plaintiffs' Claims for Violations of the Consumer Protection Laws Of
       Florida, Texas, and South Dakota Should Be Adjudicated on the Pleadings
       and the Subclass Allegations Stricken Because the Named Plaintiffs Do Not
       Allege They Saw The Alleged Misrepresentations Still at Issue .............................8

     C.    The Breach of Implied Warranty Claims Fail ........................................................10

           1.    The Claims for Breach of Implied Warranty Under New York,
              Illinois, Florida, Tennessee, South Carolina, and South Dakota Law
              Fail for Lack of Privity ....................................................................10

           2.    The Claim for Breach of Implied Warranty Under Texas Law Fails
              for Lack of Notice .........................................................................11

           3.    The Claim for Breach of Massachusetts Implied Warranty Law Fails
              Because Plaintiffs Do Not Allege Essential Elements of the Claim ...........13

           4.    Plaintiffs' Song Beverly Act Implied Warranty Claims Fail Because
              Plaintiffs Fail to Plead a Defect Present in the Drives During the
              One-Year Warranty Period ...............................................................16

           5.    The Song-Beverly Act Implied Warranty Claims and Class
              Allegations Fail Because Plaintiffs Fail to Allege They Purchased
              Drives in California ........................................................................18

     D.    Plaintiffs' Nationwide Class Allegations Should Be Stricken ...............................20

V.      CONCLUSION .........................................................................................................23

SMRH:482860675.12

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Altman v. HO Sports Co.*
    2009 U.S. Dist. LEXIS 108971 (E.D. Cal. Nov. 19, 2009) ......................................................15

*Andren v. Alere, Inc.*
    No. 16cv1255-GPC (NLS), 2017 WL 168605 (S. D. Cal. Jan. 17, 2017) .................................8

*Anunziato v. eMachines, Inc.*
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................................19

*Aoki v. Benihana, Inc.*
    839 F. Supp. 2d 759 (D. Del. 2012) .........................................................................................5

*Back v. Wickes Corp.*
    375 Mass. 633 (Mass. 1978) ............................................................................................13, 15

*Banks v. Nissan N. Am., Inc.*
    No. C 11-2022 PJH, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012).....................22

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 ............................................................................................................................5

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systs., Inc.*
    637 F.3d 1047, 1054 (9th Cir. 2011) ........................................................................................5

*California State Electronics Ass'n v. Zeos Int'l Ltd.*
    41 Cal. App. 4th 1270 (1996) .................................................................................................20

*In re Carrier IQ, Inc., Consumer Privacy Litig.*
    78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015) ......................................................................19

*Chavez v. United States*
    683 F.3d 1102 (9th Cir. 2012) ..................................................................................................5

*Cigna Ins. Co. v. Oy Saunatec*
    241 F.3d 1 (1st Cir. 2001) ..............................................................................................13, 15

*Cortina v. Goya Foods, Inc.*
    94 F. Supp. 3d 1174 (S.D. Cal. 2015) ...................................................................................5, 8

*Culinary & Serv. Emp's Union, AFL-CIO Local 555 v. Hawaii Emp. Ben. Admin., Inc.*
    688 F.2d 1228 (9th Cir. 1982)...................................................................................................6

*Daniel v. Ford*
    806 F.3d 1217 (9th Cir. 2015)..................................................................................................17

**Cases**                                                                                                    **Page(s)**

*David v. Am. Suzuki Motor Corp.*
    629 F. Supp. 2d 1309 (S.D. Fla. 2009) ........................................................................11

*Ferrari v. Natural Ptnr., Inc.*
    2017 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 9, 2017) ...........................................15

*Frenzel v. AliphCom*
    76 F. Supp. 3d 999 (N.D. Cal. 2014) (Orrick, J.)...............................................8, 22

*Granfield v. Nvidia Corp.*
    No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678 (N.D. Cal. July 11, 2012) .......................22

*Grassi v. Int'l Comfort Prods., LLC*
    2015 U.S. Dist. LEXIS 107467 (E.D. Cal. Aug. 13, 2015) .....................................17

*Gusse v. Damon Corp.*
    470 F. Supp. 2d 1110 (C.D. Cal. 2007) .................................................................19, 20

*Haglund v. Philip Morris, Inc.*
    446 Mass. 741 (2006) ..............................................................................................13

*Henry Schein, Inc. v. Stromboe*
    102 S.W.3d 675 (Tex. 2002) ......................................................................................9

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*
    No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13,
    2012)..............................................................................................................5, 22

*Iannacchino v. Ford Motor Co.*
    451 Mass. 623 (Mass. 2008) ...................................................................................15

*Jandreau v. Sheesley Plumbing & Heating Co.*
    324 N.W.2d 266 (S.D. 1982) ...................................................................................11

*Johnson ex rel. Estate of Johnson v. Brown & Williamson Tobacco Corp.*
    345 F. Supp. 2d 16 (D. Mass. 2004) ........................................................................13

*Kearney v. Philip Morris, Inc.*
    916 F. Supp. 61 (D. Mass. 1996) .............................................................................13

*Kowalsky v. Hewlett-Packard Co.*
    771 F. Supp. 2d 1138 (N.D. Cal. 2010) ...................................................................19

*Lally v. Volkswagen Aktiengesellschaft*
    45 Mass. App. Ct. 317, 337, 698 N.E.2d 28 (1998)...........................................13, 14

**<u>Cases</u>** **<u>Page(s)</u>**

*Laspesa v. Arrow Int'l, Inc.*
  2009 U.S. Dist. LEXIS 121576 (D. Mass. Dec. 23, 2009) ..................................14, 15

*Leach v. Wiles*
  58 Tenn. App. 286, 429 S.W.2d 823 (1968) ............................................................11

*Lucas v. City of Visalia*
  726 F. Supp. 2d 1149 (E.D. Cal. 2010) .............................................................14, 15

*Marcus v. Apple Inc.*
  2015 U.S. Dist. LEXIS 50399 (N.D. Cal. Apr. 16, 2015)..........................................17

*Martin v. Home Depot U.S.A., Inc*.
  369 F. Supp. 2d 887 (W.D. Tex. 2005) ....................................................................12

*Massey v. Novartis Pharms. Corp.*
  46 F. Supp. 3d 688 (W.D. Tex. 2014) ......................................................................12

*Mazza v. American Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012)..........................................................................2, 20, 22

*McCann v. Foster Wheeler*
  48 Cal. 4th 68 (2010).................................................................................................21

*McKay v. Novartis Pharm. Corp.*
  751 F.3d 694 (5th Cir. Tex. 2014).......................................................................11, 12

*Mexia v. Rinker Boat Co.*
  174 Cal. App. 4th 1297 (2009)...........................................................................16, 17

*Missud v. Oakland Coliseum Joint Venture*
  2013 U.S. Dist. LEXIS 29915 (N.D. Cal. Mar. 5, 2013) ..........................................10

*In re MyFord Touch Consumer Litig.*
  46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................................11, 12

*Nguyen v. CTS Electronics Manufacturing Solutions Inc*.
  301 F.R.D. 337 (N.D. Cal. 2014) ...............................................................................6

*O'Neil v. Electrolux Home Prods.*
  2008 U.S. Dist. LEXIS 39998 (D. Mass. May 14, 2008) ..........................................16

*O'Shea v. Littleton*
  414 U.S. 488 (1974) ......................................................................................10, 11, 12

*Odom v. Ford Motor Co.*
  230 S.C. 320, 95 S.E. 2d 601 (S.C. 1956)................................................................11

**Cases**                                                                                    **Page(s)**

*Papasan v. Allain*
    478 U.S. 265 (1986) ..............................................................................................5

*Parenteau v. Gen. Motors, LLC*
    2015 U.S. Dist. LEXIS 31184, 2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) ...........................16

*Parker v. Raymond Corp.*
    87 A.D. 3d 1115 (2d App. Div. 2011)......................................................................10

*Prohias v. AstraZeneca Pharm., L.P.*
    958 So. 2d 1054 (Fla. 3d Dist. Ct. App. 2007).........................................................9

*Rothe v. Maloney Cadillac, Inc.*
    518 N.E.2d 1028 (1988) ........................................................................................10

*Salameh v. Tarsadia Hotel*
    726 F.3d 1124 (9th Cir. 2013) ..........................................................................9, 11

*Sanders v. Apple, Inc.*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...............................................................10

*Sisney v. Best, Inc.*
    754 N.W.2d 804 (S.D. 2008) ............................................................................9

*Smith v. Ariens Co.*
    375 Mass. 620 (Mass. 1978) .............................................................................14

*Steckman v. Hart Brewing*
    143 F.3d 1293 (9th Cir. 1998) ...................................................................9, 16, 18

*Sullivan v. Oracle Corp.*
    51 Cal.4th 1191 (2011)......................................................................................21

*Taylor v. Am. Chemistry Council*
    576 F.3d 16 (1st Cir. 2009) ..............................................................................16

*Town of Westport v. Monsanto Co.*
    2017 U.S. Dist. LEXIS 53815 (D. Mass. Apr. 7, 2017)......................................14

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*
    110 S.W. 3d 194 (Tex. App. 2003) ...................................................................12

*United States v. Wang*
    404 F. Supp. 2d 1155 (N.D. Cal. 2005) .............................................................6

*Varney v. R.J. Reynolds Tobacco Co.*
    118 F. Supp. 2d 63 (D. Mass. Mar. 28, 2000)................................................13, 14

**Cases**                                                                                                          **Page(s)**

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ...................................................................17

*Whittlestone, Inc. v. Handi-Craft Co.*
    618 F.3d 970 (9th Cir. 2010) ...............................................................................5

*Wilcox v. Hillcrest Memorial Park*
    696 S.W.2d 423 (Tex. App. Dallas July 8, 1985) .................................................12

*Wilson v. Frito-Lay N. Am.*
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..............................................................22

*Yagman v. General Motors Co.*
    2014 U.S. Dist. LEXIS 120045 (C.D. Cal. Aug. 22, 2014) ..............................15, 17

*Zeman v. Williams*
    2014 U.S. Dist. LEXIS 91501 (D. Mass. July 7, 2014) ....................................14, 15

**Statutes**                                                                                                       **Page(s)**

Cal. Civ. Code § 1750 .................................................................................................4

Cal. Civ. Code § 1791.1(c) ........................................................................................16

Cal. Civ. Code § 1791.2 ............................................................................................ 4

Cal. Civ. Code § 1792 ....................................................................................4, 10, 19

Cal. Com. Code § 2313 ............................................................................................. 4

Cal. Com. Code § 2314 .................................................................................... *passim*

Cal. Com. Code § 2401(2) .........................................................................................19

California Business and Professions Code § 17200 *et seq.*.............................................3

California Business and Professions Code § 17500 *et seq.*.............................................3

Fla. Stat. § 501.203(7) ...............................................................................................4

Fla. Stat. Ann. § 501.211 ...........................................................................................8

Florida Stat. § 672.313 ...............................................................................................4

Florida Stat. § 672.314 ....................................................................................4, 10, 11

Ill. Comp. Stat. 5/2-314 ....................................................................................4, 10

Ill. Comp. Stat. 5/2A-212 ..........................................................................................10

SMRH:482860675.12
MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS

**Statutes**                                                                  **Page(s)**

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2...........................4

Mass. Gen. Laws Chapter 93A, § 1 *et seq.* .......................................................4

Massachusetts General Laws Chapter 106, § 2313                                                     4

Massachusetts General Laws Chapter 106, § 2314 ..................................................4, 10

New York General Business Law § 349 ...............................................................4

New York U.C.C. § 2-313 .........................................................................4

New York U.C.C. § 2-314............................................................................4, 10

New York U.C.C. § 2-A-2 .........................................................................4

S.C. Code Ann. § 39-5-20(a)......................................................................4

S.D.C.L. § 37-24-1 *et seq.* ......................................................................4

S.D.C.L. § 37-24-31 ..............................................................................8

S.D.C.L. § 57A-2-314 ...........................................................................10

Song-Beverly Consumer Warranty Act ............................................................. *passim*

South Carolina Code § 36-2-313..................................................................4

South Carolina Code § 36-2-314..................................................................4, 10

South Dakota Codified Laws § 57A-2-313 .........................................................4

South Dakota Codified Laws § 57A-2-314 .........................................................4, 10

Tenn. Code Ann. § 47-18-104.....................................................................4

Tennessee Code § 47-2-313 ......................................................................4

Tennessee Code § 47-2-314 ......................................................................4, 10

Tex. Bus. & Com. Code § 2.313 ..................................................................4

Tex. Bus. & Com. Code § 2.314 ..................................................................4, 10, 11

Tex. Bus. & Com. Code § 2.607(c)(1) ............................................................12

Tex. Bus. & Com. Code § 17.41 *et seq.* ........................................................4

Tex. Bus. & Com. Code § 17.50(a)(1) ............................................................8

1

**Other Authorities**                                                                                                      **Page(s)**

Fed. R. Civ. P. 12 ...................................................................................................1, 5, 6, 10

Restatement (Second) of Torts § 402A (1965) .........................................................13, 15

Restatement of the Law, Third, Torts: Products Liability, § 2..................................13, 15

S. Rep. No. 109-14 (2005) .............................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:482860675.12    MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 7, 2017, at 9:30 a.m., or as soon thereafter as the matter can be heard, in Courtroom G, on the 15th Floor of the United States District Court, Northern District of California, at 450 Golden Gate Avenue, San Francisco, California, 94102, the Honorable Joseph C. Spero presiding, Defendant Seagate Technology LLC, will and hereby does move for an order for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and striking certain allegations and claims in the Second Consolidated Amended Complaint pursuant to Fed. R. Civ. P. 12(f).

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Proposed Order, the papers and pleadings on file in this action, and such other papers and oral argument as may be submitted prior to or at the hearing on this motion.

Dated: May 31, 2017                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By            /s/ *Anna S. McLean*
_____
                          ANNA S. McLEAN

                    Attorneys for Defendant
                    SEAGATE TECHNOLOGY LLC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

On February 9, 2017, this Court dismissed a substantial portion of the allegations and claims in Plaintiffs' Second Consolidated Amended Complaint (SCAC), including: (1) all of the purported misrepresentation/omission allegations *except for* two narrow, technical representations; (2) the express warranty claims; and (3) a portion of the implied warranty claims.  Order Granting in Part and Denying in Part Motion to Dismiss Second Consolidated Amended Complaint, Dkt. 100 ("Order").  The Court allowed Plaintiffs until March 3, 2017 to file a Third Consolidated Amended Complaint.  *Id.* at 30:3.  Plaintiffs declined to file a further amended complaint, thereby leaving in place a pleading replete with spurious and unnecessary allegations and claims the Court already dismissed.  The currently operative, 566-paragraph SCAC contains hundreds of paragraphs accusing Seagate of myriad purported misrepresentations and failures to honor warranties, even though the Court rejected those allegations as a matter of law.  Similarly, claims for breach of certain state consumer protection laws remain in the SCAC, even though the named plaintiffs for those states never saw any of the alleged misrepresentations still at issue.  This state of the pleadings is prejudicial to Seagate and risks confusion of the issues.  The first aim of this motion, therefore, is to bring the operative complaint into line with the Court's Order so the parties can focus on the only two remaining alleged misrepresentations:  whether Seagate misled or failed to disclose material facts to Plaintiffs relating to: (1) the Drives' Redundant Array of Independent Disks (RAID) capabilities, and (2) their annualized failure rate (AFR).[1]

Second, Seagate moves for judgment on the pleadings as to Plaintiffs' implied warranty claims which have not previously been challenged.  These claims fail for the independent reasons that the state laws upon which they are based require pleading:  (1) privity, and/or (2) pre-suit notice, and/or (3) a specific "latent defect," and/or (4) a purchase within California—none of which Plaintiffs have pled.

Third, Seagate moves to strike Plaintiffs' nationwide class allegations.  Under *Mazza v.*

_____

[1] Seagate uses the term Drives to mean the 3TB versions of the Internal Barracuda, the Backup Plus, and the FreeAgent GoFlex, as defined in paragraph 2 of the SACC.

1    *American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), and California's governmental

2    interest choice-of-law analysis, Plaintiffs cannot apply California consumer protection laws to out-

3    of-state class members.  Nor do Plaintiffs allege any facts that could justify applying California

4    law to a nationwide class of purchasers who do not reside in California, did not purchase a hard

5    drive in California, and were not exposed to any allegedly deceptive statements in California.

6    Moreover, the differences between and among California's consumer protection laws and those of

7    other jurisdictions preclude certification of a nationwide class in which multiple states' laws must

8    be applied.  Therefore, the Court can, and should, strike Plaintiffs' nationwide class allegations on

9    a pleadings motion, as other courts have done.  Accordingly, Seagate hereby moves:  (1) to strike

10   the portions of the SCAC the Court previously dismissed, (2) for judgment on the pleadings as to

11   the implied warranty claims, and (3) to strike the alleged nationwide class.[2]

12   **II.      BRIEF STATEMENT OF RELEVANT FACTUAL ALLEGATIONS**

13           This putative consumer class action was initially filed in February 2016.  Dkt. 1.  On May

14   9, 2016, Plaintiffs filed their First Consolidated Amended Complaint.  Dkt. 39.  On June 8, 2016,

15   the parties entered into a joint stipulation allowing plaintiffs to file the SCAC, Dkt. 53, which they

16   did on July 11, 2016, Dkt. 62.  The nine Named Plaintiffs are residents of:  California, New York,

17   Florida, Massachusetts, Illinois, Tennessee, South Carolina, Texas, South Dakota (the "nine

18   states").[3]  The SCAC purports to allege claims on behalf of the Named Plaintiffs, a nationwide

19   Class (the "Class") and nine state Subclasses.  The SCAC alleges causes of action for:

      (1)   Violation of California's **Unfair Competition Law (UCL),** California Business and
            Professions Code section 17200 *et seq.* [by Plaintiffs, the California Subclass and the
            Class];

      (2)   Violation of California's **False Advertising Law (FAL),** California Business and
            Professions Code section 17500 *et seq.* [by Plaintiffs, the California Subclass and the
            Class];

---

      [2] For the Court's convenience, filed herewith as **Exhibit 1** is a "redline" version of the
      SCAC.  Claims and allegations the Court previously dismissed, and which Seagate requests that
      the Court now strike, are shown in red, strikethrough font.  Claims and allegations as to which
      Seagate requests the Court strike or grant judgment on the pleadings are shown in blue,
      strikethrough font.

      [3] The tenth plaintiff, Adam Ginsberg ("Plaintiff Ginsberg") was voluntarily dismissed
      from this action on July 27, 2016.  *See* Dkt. 67.

(3)  Violation of the **Consumers Legal Remedies Act (CLRA),** California Civil Code section 1750 *et seq.* [by Plaintiffs, the California Subclass and the Class];

(4)  **Breach of Express Warranty under California law**, California Commercial Code section 2313 *et seq.* and California Civil Code section 1791.2 *et seq.* [by Plaintiffs and the Class];

(5)  **Breach of Implied Warranty of Merchantability Under California law.**  California Commercial Code section 2314 and California Civil Code section 1792 (Song-Beverly Consumer Warranty Act (Song-Beverly)) [by Plaintiffs and the Class];

(6)  **Breach of Express Warranty under the laws of the nine states**:  California Commercial Code section 2313; California Civil Code section 1791.2; New York U.C.C. section 2-313 and section 2-A-2; 810 Illinois Comp. Stat. 5/2-313; Florida Stat. section 672.313; Massachusetts General Laws Ch. 106, Section 2313; Tennessee Code section 47-2-313; South Carolina Code section 36-2-313; Texas Business and Commercial Code section 2.313; and South Dakota Codified Laws section 57A-2-313 [by the respective nine state Subclasses];

(7)  **Breach of the Implied Warranty of Merchantability under the laws of the nine states**:  California Commercial Code section 2314; California Civil Code section 1792; New York U.C.C. section 2-314; 810 Illinois Comp. Stat. 5/2-314; Florida Stat. section 672.314; Massachusetts General Laws Ch. 106, Section 2314; Tennessee Code section 47-2-314; South Carolina Code section 36-2-314; Texas Business and Commercial Code section 2.314; and South Dakota Codified Laws section 57A-2-314 [by the nine Subclasses];

(8)  – (15)  **Violation of the consumer protection laws of eight states:**  New York (New York General Business Law section 349), Florida (Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. section 501.203(7)), Massachusetts (Massachusetts Consumer Protection Law, Mass. Gen. Laws Ch. 93A, section 1 *et seq.*), Illinois (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2), Tennessee (Tennessee Consumer Protection Act, Tenn. Code Ann. section 47-18-104), South Carolina (South Carolina Unfair Trade Practices Act, S.C. Code Ann. section 39-5-20(a)), Texas (Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code section 17.41 *et seq.*), and South Dakota (South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D.C.L. section 37-24-1 *et seq.*) [by the respective Named Plaintiff and state Subclass];

(16)  **Unjust Enrichment** under California law [by Plaintiffs and the Class].

Seagate moved to dismiss the SAC on August 5, 2016.  (Dkt. 68.)  After this case was reassigned, the Court granted in part and denied in part Seagate's Motion to Dismiss.  Specifically, the Court **dismissed** the following claims and allegations:

- the Fourth and Sixth claims for relief for breach of express warranty;

- the Fifth and Seventh claims for relief for breach of implied warranty under California Commercial Code section 2314;

- the First through Third, and Eighth through Thirteenth claims for relief to the extent based on any alleged misrepresentations/omissions **other than** Seagate's representations regarding the Drives' RAID capabilities and their AFRs.

Dkt. 100. The Court gave plaintiffs until March 3, 2017 to file a Third Consolidated Amended Complaint. Order at 30:3. They did not do so. Accordingly, on March 24, 2017, Seagate answered the unamended SCAC. Dkt. 105.

## III.   LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is properly granted when, accepting all factual allegations as true, the moving party is entitled to judgment as a matter of law. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systs., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). The standard of review under Rule 12(c) is "substantially identical" to the *Iqbal* and *Twombly* plausibility standard under Rule 12(b). *Chavez v. United States*, 683 F.3d 1102, 1108-1109 (9th Cir. 2012). Under this standard, a plaintiff must plead "enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (citation omitted). Mere conclusions couched in factual allegations are insufficient to state a claim, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and a complaint cannot "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement[,]'" *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at *5 (S.D. Cal. Feb. 13, 2012) (internal citation omitted).

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Here, "immaterial" means "that which has no essential or important relationship to the claim for relief . . ." and "impertinent" means "statements that do not pertain, and are not necessary, to the issues in question." *Id*. at 974 (citation omitted). Finally, a "scandalous pleading is one that 'improperly casts a derogatory light on someone, most typically a party to the action.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Aoki v. Benihana, Inc*., 839 F. Supp. 2d 759, 764 (D. Del. 2012)). While generally

1  disfavored, a motion to strike is appropriate where it "will make trial less complicated or eliminate

2  serious risks of prejudice to the moving party, delay, or confusion of the issues." *Nguyen v. CTS*

3  *Electronics Manufacturing Solutions Inc.*, 301 F.R.D. 337, 340 (N.D. Cal. 2014).[4]

4  **IV.     ARGUMENT**

5          **A.     This Court Should Strike Allegations and Claims That Have Been Dismissed**

6          As a result of Plaintiffs' failure to amend their complaint to conform to this Court's Order,

7  the SCAC is bloated with superfluous claims and allegations of alleged misrepresentations that

8  have already been dismissed.  The Court permitted Plaintiffs to proceed on statements regarding

9  only two narrow subjects:  the Drives' AFRs and suitability for use in RAID configurations.  The

10 Court dismissed all of Plaintiffs' claims to the extent they were based on other alleged

11 misrepresentations or marketing statements recited in the SAC:

12              [T]he Court declines to dismiss Plaintiffs' claims based on Seagate's statements as to the
               drives' annualized failure rate ("AFR") and suitability for use in RAID configurations, *but*
13             *dismisses Plaintiffs' claims to the extent they are based on the other statements identified*
               *in the complaint*.  Plaintiffs do not sufficiently allege the falsity of Seagate's affirmative
14             statements as to the drives' read error rate, suitability for NAS, or AcuTrac technology,
               and the Court holds that Seagate's affirmative statements about the general reliability and
15             performance of the drives are non-actionable puffery.

16 Order at 14:12-19 (emphasis added); *see also id.* at 16:25-17:14 (dismissing claims based on read

17 error rate statements); *id.* at 19:18-24 (dismissing claims based on NAS statements); *id.* at 20:13-

18 21 (dismissing claims based on statements relating to AcuTrac or AcuTrac technology); *id.* at

19 20:22-23:11 (dismissing claims based on other statements regarding performance or reliability).

20         The Court also dismissed Plaintiffs' express warranty claims and their implied warranty

21 claims under California Com. Code section 2314.  The Court dismissed Plaintiffs' express

22

23         [4] A court may strike a pleading or portions thereof either on its own or on the motion of a
   party before it responds to the pleading.  Given the limited time Seagate had to respond after
24 Plaintiffs failed to file a third amended complaint, and out of an abundance of caution, Seagate
   answered the SCAC on March 24, 2017.  At this time, Seagate requests that the Court strike
25 portions of Plaintiffs' SCAC to effectuate its Order.  *See Culinary & Serv. Emp's Union, AFL-*
   *CIO Local 555 v. Hawaii Emp. Ben. Admin., Inc.*, 688 F.2d 1228, 1232-33 (9th Cir. 1982) (court
26 acted within its discretion in striking claims under Rule 12(f) even though defendant had already
   answered); *United States v. Wang*, 404 F. Supp. 2d 1155, 1157 (N.D. Cal. 2005) ("a court can
27 consider the merits of an untimely motion to strike[,]" because "Rule 12(f) clearly permits a Court
   on its own initiative, at any time, to strike . . . . In effect, the Court's discretion renders the twenty
28 (20) day rule essentially unimportant.").

1  warranty claims (4 and 6) and related allegations on the basis that "Plaintiffs do not adequately

2  state a claim for breach of express warranty, whether under the terms of the warranty itself, under

3  the essential purpose doctrine, or under the Song-Beverly Act." Order at 10:15-19. Moreover, the

4  Court struck Plaintiffs' Fifth and Seventh Claims to the extent they alleged a breach of California

5  Com. Code section 2314 on the ground that Plaintiffs had failed to allege that they (1) were in

6  contractual privity with Seagate, or (2) fell within an exception to the privity rule. Order at 13:21-

7  24. Thereafter Plaintiffs failed to amend these claims.[5]

8      All of the above allegations and claims should now be stricken. Proceeding on a pleading

9  replete with superfluous allegations poses a substantial risk of confusion of the issues and

10  prejudice to Seagate. Seagate has already been forced to expend significant time answering the

11  entirety of Plaintiffs' 566-paragraph SCAC. Dkt. 105. Moreover, many of Plaintiffs' dismissed

12  allegations amount to an attempt to smear Seagate. The SCAC repeatedly charges Seagate with

13  purported misrepresentations and failures to honor warranties, even though the Court dismissed

14  those allegations and claims as a matter of law.

15      Indeed, the SCAC contains at least 53 paragraphs accusing Seagate of violating its express

16  warranty, even though the Court held Plaintiffs stated inadequate facts to support any such

17  allegation. SCAC ¶¶ 10, 12, 122-133, 279, 292, 333-350, 368-384, 454, 529; Order at 7:2-5.

18  Similarly, in at least 28 paragraphs Plaintiffs accuse Seagate of making false statements as to the

19  drives' read error rate or AcuTrac technology, even though the Court held Plaintiffs failed to

20  sufficiently allege that any of these statements were false. SCAC ¶¶ 53-55, 58, 72, 74-76, 80, 191,

21  192, 216, 218, 227, 281, 285, 323, 408, 409, 430, 445, 448, 476, 495, 513, 530, 534, 551; Order at

22  14:15-17, 17:13-14, 20:19-21. At least 76 paragraphs make allegations regarding the drives'

23  suitability for NAS even though those claims have also been dismissed. SCAC ¶¶ 3, 6, 35-38, 44,

24  59, 61-66, 110-117, 153, 156, 157, 161, 192, 193, 227, 229, 236-238, 247, 248, 281, 284, 285,

25  289, 306, 320, 322, 323, 357, 358, 391, 392, 408, 409, 411, 413, 423, 426, 430, 445, 448, 451,

26  455, 470, 471, 475, 476, 488, 489, 494, 495, 506, 507, 512, 513, 530, 534, 537, 549, 551, 554;

27  Order at 14:15-19, 19:18-24. Many other paragraphs accuse Seagate of making

28

---

[5] Plaintiffs themselves voluntarily dismissed Plaintiff Ginsburg. *See* Dkt. 67.

1    misrepresentations that the Court ruled were "too vague, general, and subjective to be actionable."

2    *See generally*, Exhibit 1 hereto; Order at 20:22-23:11.

3         These are exactly the type of immaterial, impertinent, and scandalous allegations that are

4    the proper target of a motion to strike.  *Cortina*, 94 F. Supp. 3d at 1182 (a pleading is scandalous

5    where it "improperly casts a derogatory light on someone, most typically on a party to the

6    action.").  Finally, because the dismissed allegations have no possible bearing on the remaining

7    claims, they should be stricken as immaterial and impertinent.  *Frenzel*, 76 F. Supp. 3d at 1006

8    (motions to strike are proper where "the matter to be stricken clearly could have no possible

9    bearing on the subject of the litigation."); *Andren v. Alere, Inc.*, No. 16cv1255-GPC (NLS), 2017

10   WL 168605, at *3 (S. D. Cal. Jan. 17, 2017) ("Immaterial matter is that which has no essential or

11   important relationship to the claim for relief . . . .").  In light of Plaintiffs' refusal to amend their

12   pleading to comport with the Court's Order, the Court should now strike from the SCAC the

13   material it has already dismissed.

14        **B.    Plaintiffs' Claims for Violations of the Consumer Protection Laws Of Florida,**
          **Texas, and South Dakota Should Be Adjudicated on the Pleadings and the**
15        **Subclass Allegations Stricken Because the Named Plaintiffs Do Not Allege**
          **They Saw The Alleged Misrepresentations Still at Issue**
16

17        Similarly, this Court should adjudicate on the pleadings Plaintiffs' Ninth, Fourteenth, and

18   Fifteenth Claims for Relief, in which Plaintiffs Schechner, Manak, and Nelson allege violations of

19   the consumer protection laws of Florida, Texas and South Dakota, respectively, and strike the

20   Subclass allegations as to each of those claims.  SCAC ¶¶ 418-436 (Florida), 522-544 (Texas),

21   545-556 (South Dakota).  The Court dismissed these claims to the same extent as it dismissed

22   Plaintiffs' allegations under the California consumer protection statutes.  Order at 14, n.9.  In other

23   words, these claims have been dismissed *except as to* alleged statements about AFR and RAID.

24        Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. Ann. § 501.211, Texas's

25   Deceptive Trade Practices Act, Tex. Business and Commercial Code section § 17.50(a)(1), and

26   South Dakota's Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws §

27   37-24-31 each require that plaintiffs allege they relied on defendant's deceptive conduct to their

28

detriment.[6]  Here, plaintiffs Schechner, Manak and Nelson fail to allege they ever saw Seagate's RAID or AFR statements, much less relied on them.  SCAC ¶¶ 162-173 (Schechner), 211-222 (Manak), 135-148 (Nelson).  *A fortiori,* they do not and cannot allege that they were injured by such statements.  *Id.*  The Court should grant judgment on the pleadings on Claims 9, 14, and 15, because the plaintiffs who purport to bring these claims (Schechner, Manak, and Nelson) fail to allege that they saw, relied on, or were injured by any alleged AFR or RAID representations.

Further, these claims should be dismissed without leave to amend.  As noted, the Court previously dismissed them except to the extent they allege statements about AFR and RAID, Order at 14, n.9.  In so holding, the Court recognized that, while other named plaintiffs allege reliance on AFR and/or RAID statements, Schechner, Manak, and Nelson do not.  Order at 16:11-14 (explaining that "several named plaintiffs" allege that they read and relied on AFR statements and citing allegations "¶¶ 153−54, 161 [Hauff], 178−79, 185 [Hagey], 192−93, 202 [Crawford], 227−29, 231 [Enders]," but not any allegations of Schechner, Manak or Nelson); Order at 19:7-11 (listing plaintiffs who alleged reliance on RAID statements; Schechner, Manak and Nelson not included).  The Court provided Plaintiffs the opportunity to amend—at which time they could have added such allegations if they were able to do so—but they did not.  Accordingly, Claims 9, 14, and 15 should be dismissed without leave to amend.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (leave to amend properly denied when plaintiff failed to take advantage of prior opportunity to amend); *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." (citations omitted)).

---

[6] *E.g.*, *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054 (Fla. 3d Dist. Ct. App. 2007) (affirming dismissal of complaint under Florida Unfair and Deceptive Trade Practices Act because plaintiff "fail[ed] to allege Defendants' alleged wrongs caused her to purchase [the product]"); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693-94 (Tex. 2002) (reversing certification of class against computer software manufacturer on grounds that there was "no evidence the purchasers actually did rely on [Defendant's] statements . . . ."); *Sisney v. Best, Inc.*, 754 N.W.2d 804, 811 (S.D. 2008) (dismissing claim under South Dakota DTPCPS because plaintiff failed to plead "that he was adversely affected *as a result of* a deceptive practice used by the Defendants in connection with *their sale or advertising*" of the product.") (emphasis added).

1    Once these Plaintiffs' claims are dismissed, there are no Named Plaintiffs who have

2  standing either to assert these claims or to represent the purported Florida, Texas and South

3  Dakota Subclasses.  On that basis, the Court should strike both the claims and the Subclasses.  *See*

4  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citation omitted) ("[I]f none of the named plaintiffs

5  purporting to represent a class establishes the requisite of a case or controversy with the

6  defendants, none may seek relief on behalf of himself or any other member of the class.").[7]

7    **C.    The Breach of Implied Warranty Claims Fail**

8    Plaintiffs' Fifth Cause of Action alleges breach of implied warranty under California's

9  Song Beverly Act.  Plaintiffs' Seventh Cause of Action alleges violations of the implied warranty

10  laws of California, New York, Illinois, Florida, Massachusetts, Tennessee, South Carolina, Texas

11  and South Dakota, on behalf of the respective proposed Subclasses from those states.  SCAC ¶

12  386 (alleging breach of implied warranty under Cal. Com. Code § 2314; Cal. Civil Code § 1792;

13  N.Y. U.C.C. § 2-314; 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212; Fla. Stat. § 672.314;

14  Massachusetts ALM Gen. Laws Ch. 106, § 2-314; Tenn. Code § 47-2-314; S.C. Code § 36-2-314;

15  Tex. Bus. & Com. Code § 2.314; and S.D. Codified Laws § 57A-2-314).  For the reasons

16  explained below, all of these claims fail as a matter of law.

17    **1.    The Claims for Breach of Implied Warranty Under New York, Illinois, Florida, Tennessee, South Carolina, and South Dakota Law Fail for Lack of Privity**

19    Privity of contract is required for implied warranty claims under the laws of New York,

20  Illinois, Florida, Tennessee, South Carolina and South Dakota.[8]  Here, Plaintiffs allege they

---

22  [7] Rule 12(f) can properly be used to strike class allegations in situations where the identified defect in the class allegations will not be remediable through further discovery. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989-91 (N.D. Cal. 2009) (granting Rule 12(f) motion to strike class allegations where standing deficiencies would preclude action from ever proceeding as a class action); *Missud v. Oakland Coliseum Joint Venture*, 2013 U.S. Dist. LEXIS 29915, *75 (N.D. Cal. Mar. 5, 2013) (class allegations stricken where class counsel sought to be class representative, which defect could be remedied only by substituting a different class representative).  Here, further discovery will not remedy the lack of named plaintiffs able to assert claims under Florida, Texas or South Dakota law.

27  [8] *E.g.*, *Parker v. Raymond Corp.*, 87 A.D. 3d 1115, 1116 (2d App. Div. 2011) (summarily adjudicating implied warranty claims under New York law because "contractual privity between the parties was clearly lacking"); *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30

1  bought their drives from third parties, not from Seagate.  SCAC ¶¶ 135 (Nelson, South Dakota),

2  162 (Schechner, Florida), 174 (Hagey, Tennessee), 186 (Crawford, New York), 232 (Dortch,

3  South Carolina), 244 (Smith, Illinois).  This Court previously held that Plaintiffs' implied

4  warranty claim under California Commercial Code section 2314 was barred due to a lack of

5  privity; in the process, the Court rejected Plaintiffs' claims that they fell within a third-party

6  beneficiary exception to the privity requirement.  Order at 13:16-24.  This Court's rationale

7  applies with equal force to implied warranty claims under the laws of other states.

8         Accordingly, because the implied warranty statutes of New York, Illinois, Florida,

9  Tennessee, South Carolina and South Dakota all require privity, Plaintiffs' claims under these

10 statutes fail as a matter of law and are thus properly adjudicated on the pleadings.  The Court

11 previously granted Plaintiffs leave to amend these claims and they did not do so.  Order at 30:3.

12 They should now be dismissed with prejudice.  Indeed, leave to amend would be futile because

13 Plaintiffs affirmatively allege they did not purchase their drives from Seagate.  *Salameh*, 726 F.3d

14 at 1133.  Because no Plaintiffs can sustain these claims, the related class allegations should also be

15 stricken.  *O'Shea*, 414 U.S. at 494.

16
                 **2.    The Claim for Breach of Implied Warranty Under Texas Law Fails for
17                         Lack of Notice**

18        Plaintiffs' Seventh Cause of Action alleges breach of Texas' implied warranty law, Tex.

19 Bus. & Com. Code § 2.314.  Under Texas law, to maintain a claim against a manufacturer, the

20 plaintiff must give notice of the alleged breach ***before*** bringing suit.  *In re MyFord Touch*

21 *Consumer Litig*., 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014) (implied warranty claims dismissed

22 (1988) (under Illinois law, privity of contract is a prerequisite to recover damages for breach of
23 implied warranty); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009)
   ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in
24 the absence of privity.") (internal citation omitted); *Leach v. Wiles*, 58 Tenn. App. 286, 303, 429
   S.W.2d 823, 831 (1968) ("Therefore, we must necessarily reach the conclusion that the rule
25 requiring privity of contract between the parties as an essential element of implied warranty still
   exists in Tennessee, except in cases where the product involved is 'in a defective condition
26 unreasonably dangerous to the user or to his property.'"); *Odom v. Ford Motor Co.*, 230 S.C. 320,
   325-26, 95 S.E. 2d 601 (S.C. 1956) (under South Carolina law, no privity existed between dealer
27 and remote vendee); *Jandreau v. Sheesley Plumbing & Heating Co., Inc.*, 324 N.W.2d 266, 272
28 (S.D. 1982) (under South Dakota law, "a non-privity buyer, whether commercial or consumer,
   cannot recover for direct economic loss on either an express or an implied warranty theory.").

1   with prejudice for failure to allege pre-suit notice); *McKay v. Novartis Pharm. Corp.*, 751 F.3d

2   694, 707 (5th Cir. Tex. 2014) (summary judgment granted based on plaintiffs' failure to provide

3   pre-suit notice).  To assert a warranty claim, "[t]he buyer must within a reasonable time after he

4   discovers or should have discovered any breach ***notify the seller of breach or be barred from any***

5   ***remedy***."  Tex. Bus. & Com. Code § 2.607(c)(1) (emphasis added).  Nor does filing a complaint

6   constitute sufficient notice; notice must be given pre-suit.  *See, e.g.*, *Martin v. Home Depot U.S.A.,*

7   *Inc.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005); *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.

8   3d 194, 202 (Tex. App. 2003) ("Neither did the commencement of litigation satisfy this notice

9   requirement.").[9]

10         Plaintiff Manak is the only Texas resident.  SCAC ¶ 22.  Manak does not allege he

11   provided Seagate with notice of a claim for breach of implied warranty.  SCAC ¶¶ 211-22.  The

12   Seventh Cause of Action alleges generally, "Defendant has received timely notice regarding the

13   problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer

14   an effective remedy."  SCAC ¶ 396.  As discussed above, this type of general notice allegation is

15   insufficient.  *U.S. Tire-Tech*, 110 S.W.3d at 202; *McKay*, 751 F.3d at 706; *Massey*, 46 F. Supp. 3d

16   at 692.  Accordingly, Seagate should be granted judgment on the pleadings as to this claim.

17   Likewise, the allegation of a Texas Subclass should be stricken, since there is no Named Plaintiff

18   who made the required notice and can represent that Subclass.  *O'Shea*, 414 U.S. at 494.  Leave to

19   amend would be futile because Manak cannot now provide pre-suit notice.  *In re MyFord Touch*

20   *Consumer Litig.*, 46 F. Supp. 3d at 978; *Martin*, 369 F. Supp. 2d at 893.

---

22         [9]  Indeed, for notice to be sufficient, "[t]he manufacturer must be made aware of a problem
23   with a ***particular product*** purchased by a ***particular buyer***."  *U.S. Tire-Tech*, 110 S.W.3d at 202
     (emphasis added); *Massey v. Novartis Pharms. Corp.*, 46 F. Supp. 3d 688, 692 (W.D. Tex. 2014)
24   (notice insufficient where plaintiff alleged defendant "had notice because [defendant] received
     several Adverse Event reports from other claimants," because "generalized notice is not sufficient
25   to satisfy the notice requirement"); *McKay*, 751 F.3d at 706 (notice insufficient where, "even
     though Dr. Leibowitz did notify Novartis of the problems his patients were experiencing with the
26   drugs, there is no evidence that he alerted Novartis that McKay in particular had suffered an
     injury."); *Wilcox v. Hillcrest Memorial Park*, 696 S.W.2d 423, 425 (Tex. App. July 8, 1985) ("The
27   buyer is required to notify the seller that a breach of warranty has occurred in order to give the
     seller an opportunity to inspect the product to determine whether it was defective and to allow the
28   seller an opportunity to cure the breach, if any.")

**3.      The Claim for Breach of Massachusetts Implied Warranty Law Fails Because Plaintiffs Do Not Allege Essential Elements of the Claim**

"Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions." *Cigna Ins. Co. v. Oy Saunatec*, 241 F.3d 1, 15 (1st Cir. 2001) ("The Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965).'" (citing *Back v. Wickke Corp.*, 375 Mass. 633 (Mass. 1978))); *Johnson ex rel. Estate of Johnson v. Brown & Williamson Tobacco Corp*., 345 F. Supp. 2d 16, 20 (D. Mass. 2004) ("The Massachusetts Legislature has 'transformed warranty liability into a remedy intended to be as comprehensive as the strict liability theories of [many other] jurisdictions." (citation omitted)).

> To survive the motion to dismiss on this claim, the plaintiff must allege sufficient facts to demonstrate that the defendants manufactured or sold the product, the product was unreasonably dangerous or unsuited for ordinary use at the time it left the defendants' hands ***because of a defect***, the plaintiff was using the product in an intended or reasonably foreseeable manner when she was injured, and the product's defect was a legal cause of the plaintiff's injury.

*Varney v. R.J. Reynolds Tobacco Co*., 118 F. Supp. 2d 63, 69 (D. Mass. 2000) (emphasis added) (citing *Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. 317, 337, 698 N.E.2d 28 (1998)).

Massachusetts law recognizes at least two types of product defects:  design defects and defects caused by inadequate warnings.  *Haglund v. Philip Morris, Inc*., 446 Mass. 741, 746-47 (2006) ("A seller breaches its warranty obligation when a product that is 'defective and unreasonably dangerous' for the '[o]rdinary purposes' for which it is 'fit' causes injury. . . . Warranty liability may be premised either on the failure to warn, or, as here, on defective design." (citations omitted)); *Kearney v. Philip Morris, Inc*., 916 F. Supp. 61, 64 (D. Mass. 1996) ("[B]reach of warranty can occur if either (1) the product is defectively designed, or (2)

1   foreseeable users are not adequately warned of the dangers associated with its use.")[10]  Plaintiffs

2   fail to plead the elements of either theory.

3         The elements of a design defect claim include:  (1) the existence of a defect at the time the

4   product left the manufacturer's control; and (2) the existence of a safer [or better] and practical

5   alternative design.  *See Smith v. Ariens Co.*, 375 Mass. 620, 626 (Mass. 1978) ("[T]he essence of

6   this theory is that all products of a particular type are defective when they leave the

7   manufacturer."); *Town of Westport v. Monsanto Co.*, 2017 U.S. Dist. LEXIS 53815, *15 (D. Mass.

8   Apr. 7, 2017) (design defect claim must be based on a technologically feasible and practical

9   alternative design that would have reduced or prevented the plaintiff's harm). As noted above, a

10  plaintiff must also show the purported design defect was a legal cause of plaintiff's injury.

11  *Varney*, 118 F. Supp. 2d at 69; *Lally*, 45 Mass. App. Ct. at 337.

12        Here, Plaintiffs fail to allege anything about the design of the Drives they claim is

13  defective.  Nor do Plaintiffs plausibly plead that any defect existed at the time the drives left

14  Seagate's control.[11]  Furthermore, Plaintiffs do not allege there was a technologically feasible and

15  practical alternative design that would have reduced or prevented their alleged harm.  Finally, they

16  allege no facts to support a conclusion that a defect caused Plaintiffs' alleged injuries.  These

17  pleading defects are fatal.  "Without any allegation as to ***how*** the [product] was 'defective in

18  design and/or manufacture,' the claim is not pled to the *Twombly-Iqbal* standard." *Zeman v.*

19  *Williams*, 2014 U.S. Dist. LEXIS 91501, *13 (D. Mass. July 7, 2014) (emphasis in original)

20  (dismissing breach of warranty claim); *Varney*, 118 F. Supp. 2d at 70 (dismissing breach of

21  implied warranty claim where "plaintiff does not allege that there were ***specific*** defects in the

_____

22

23        [10]   The Restatement of Product Liability and many states' laws also recognize
    manufacturing defect as a third type of product defect.  "A product is defective when, at the time

24  of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective
    because of inadequate instructions or warnings."  Restatement of the Law, Third, Torts: Products

25  Liability, § 2; *Laspesa v. Arrow Int'l, Inc.*, 2009 U.S. Dist. LEXIS 121576, *10 (D. Mass. Dec. 23,
    2009) (the three types of defect, "design, manufacturing, and warning – have distinct standards for

26  liability, which apply in both the negligence and warranty contexts").  Regardless of whether
    Massachusetts recognizes manufacturing defect liability, plaintiffs have failed to adequately plead

27  it, as explained below.

28        [11]   Indeed, as explained in Section IV.C.4, most Plaintiffs allege that their drives
    functioned perfectly well for months and/or years, or have never failed.

1    design of defendants' cigarettes" and "there is not the slightest description of what those

2    [alternative] designs were or why they would have avoided causing harm to the plaintiff if

3    adopted.")  Under a design defect theory, ***"[a] bare allegation that the [product] suffered from a***

4    ***'design defect' is an insufficient legal conclusion***." *Lucas v. City of Visalia*, 726 F. Supp. 2d

5    1149, 1155 (E.D. Cal. 2010) (emphasis added) (citing *Iqbal*).[12]  Thus, Plaintiffs fail to state a

6    claim for design defect under Massachusetts law.

7          Nor do Plaintiffs plead a manufacturing defect.  "A manufacturing defect exists when a

8    product deviates in its construction or quality from specifications or planned output in a manner

9    that renders it 'unreasonably dangerous.'"  *Laspesa*, 2009 U.S. Dist. LEXIS 121576, *10;

10   Restatement of the Law, Third, Torts: Products Liability, § 2(a) (product "contains a

11   manufacturing defect when the product departs from its intended design even though all possible

12   care was exercised in the preparation and marketing of the product").[13]  Plaintiffs do not allege

13

14        [12] Because Massachusetts implied warranty law is congruent with other states' strict
     product liability law, *Cigna*, 241 F.3d at 15, cases discussing the pleading standard for strict
15   product liability claims under equivalent states' laws are an appropriate guide.  *Back v. Wickes
     Corp.*, 375 Mass. 633, 640 (Mass. 1978) ("The Legislature has made the Massachusetts law of
16   warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of
     Torts § 402A (1965).  For this reason, we find the strict liability cases of other jurisdictions to be a
17   useful supplement to our own warranty case law").  *See Altman v. HO Sports Co.*, 2009 U.S. Dist.
     LEXIS 108971, 24-25 (E.D. Cal. Nov. 19, 2009) ("The FAC's allegation that the product defects
18   (which are not identified) were substantial causes in causing [plaintiff's] injuries . . . is a legal
     conclusion that does not allege a plausible cause of action."); *Ferrari v. Natural Ptnr., Inc.*, 2017
19   U.S. Dist. LEXIS 3663, *17 (N.D. Cal. Jan. 9, 2017) (dismissing design defect claim where
     "allegations do not identify the theory of design defect that Plaintiff intends to assert, nor do these
20   allegations provide supporting facts that 'explain how the particular design' of the product caused
     Plaintiff's alleged harm."); *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 632-36 (Mass. 2008)
21   ("[b]ecause the term 'defect' is conclusory and can be subjective as well, a bare assertion that a
     defendant, while representing the opposite, has knowingly manufactured and sold a product that is
22   'defective,' or suffers from 'safety-related defects,' does not suffice to state a viable claim").
23

24        [13] *See also Lucas*, 726 F. Supp. 2d at 1155 (to allege a manufacturing defect, plaintiffs
     must "***identify/explain how*** the [product] either deviated from [defendant's] intended result/design
25   or ***how*** the [product] deviated from other seemingly identical [product] models" (emphasis in
     original)); *Zeman*, 2014 U.S. Dist. LEXIS 91501, *13 ("[w]ithout any allegation has to ***how*** the
26   [product] was 'defective in design and/or manufacture,' the claim is not pled to the *Twombly-Iqbal*
     standard." (emphasis original)); *Yagman v. General Motors Co*., 2014 U.S. Dist. LEXIS 120045,
27   **6-7 (C.D. Cal. Aug. 22, 2014) (dismissing claim under Rule 8 because "Plaintiff has not . . .
     pled sufficient facts to support his suggestion that a manufacturing defect is a plausible cause of
28   [his] harm"); *Iannacchino*, 451 Mass. at 632-36.

that their drives deviated from Seagate's intended design.  Indeed, they appear to allege the opposite—that *all* Drives contain an unidentified "latent defect."  Thus, Plaintiffs fail to allege a manufacturing defect.

Finally, Seagate has not found any Massachusetts case permitting a "failure to warn" theory to support an implied warranty claim where the product at issue did not cause physical injuries.  Even were the Court to permit such a theory, Plaintiffs fail to satisfactorily plead this type of defect either.  Generally speaking, a supplier has a duty to warn foreseeable users of dangers in the use of its product of which the supplier knows or should have known.  *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 24 (1st Cir. 2009).  However, to state a claim, Plaintiffs must allege causation, including that they would have seen the "warnings" and such warnings would have prevented the injury.  *O'Neil v. Electrolux Home Prods.*, 2008 U.S. Dist. LEXIS 39998, *20 (D. Mass. May 14, 2008).  Plaintiffs fail to so allege; nor could they, as they do not concede that the manner in which they used (or misused) the drives contributed to the alleged failures.  The Court should grant judgment on the pleadings on the Massachusetts' implied warranty claim.

As explained below, Plaintiffs allege their drives "failed" in radically different ways, and that many failed only after years of use or not at all.  Accordingly, Plaintiffs will never be able to allege a design defect, manufacturing defect, or failure to warn.  The Massachusetts implied warranty claim thus should be dismissed without leave to amend.  *Steckman*, 143 F.3d at 1298.

> **4.    Plaintiffs' Song Beverly Act Implied Warranty Claims Fail Because Plaintiffs Fail to Plead a Defect Present in the Drives During the One-Year Warranty Period**

In their Fifth and Seventh claims for relief, Plaintiffs allege breach of the implied warranty under California's Song Beverly Act.  The Song-Beverly Act imposes an implied warranty of merchantability that "shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . ***but in no event*** shall such implied warranty have a duration of . . . ***more than one year*** following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code § 1791.1(c) (emphasis added).  To state a claim, plaintiffs must plausibly allege that a "latent defect" existed and rendered the products unmerchantable within a year after purchase.  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-05 (2009).  Furthermore, "it is the defect itself,

1    rather than some theoretical imperfection, that must exist during the warranty period, and that

2    defect must be so severe as to cause the product to fall below the 'minimum level of quality'

3    guaranteed by the warranty." *Parenteau v. Gen. Motors, LLC*, 2015 U.S. Dist. LEXIS 31184 *30

4    (C.D. Cal. Mar. 5, 2015).  Falling below the minimum level of quality means the product "did not

5    possess even the most basic degree of fitness for ordinary use." *See Viggiano v. Hansen Natural

6    Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (citation and quotation marks omitted).  While a

7    latent defect need not be discovered by the buyer within the one-year period, *Mexia*, 174 Cal. App.

8    4th at 1308-09, courts following this rule have emphasized potential safety risks presented by such

9    products.  *Marcus v. Apple Inc.*, 2015 U.S. Dist. LEXIS 50399, *15 (N.D. Cal. Apr. 16, 2015)

10   (citing cases).  For example, in *Daniel v. Ford*, 806 F.3d 1217, 1220-21 (9th Cir. 2015), plaintiff

11   alleged a latent alignment problem in the vehicles severe enough to cause a "safety hazard" from

12   "premature tire wear," thus rendering the cars unmerchantable at the moment they were sold.  By

13   contrast, where plaintiff alleged violation of the warranty of merchantability but failed to identify

14   the alleged defect, he failed to meet Rule 8's pleading standard.  *Yagman v. GM Co.*, 2014 U.S.

15   Dist. LEXIS 120045 (C.D. Cal. Aug. 22, 2014) (complaint that "pleads facts that are 'merely

16   consistent with' [D]efendants' liability, [and thus] 'stops short of the line between possibility and

17   plausibility of 'entitlement to relief.'") (internal citation and quotation marks omitted); *Grassi v.

18   Int'l Comfort Prods., LLC*, 2015 U.S. Dist. LEXIS 107467 **10-11 (E.D. Cal. Aug. 13, 2015)

19   (where plaintiff alleged defect with "low" "occurrence rate" of corrosion and the defect was

20   repaired, plaintiff failed to allege a defect sufficient to take the product below the "minimum level

21   of quality.").  Thus, Plaintiffs must ***identify*** the alleged defect and plausibly plead that such defect

22   was sufficiently severe that it rendered the drives ***unmerchantable within one year of sale***.

23         Here, Plaintiffs summarily allege that the drives suffer from a "latent defect."  SCAC ¶¶ 7,

24   9, 11, 110, 113, 134, 306, 358, 392.  They fail to identify the defect—or even the part of the

25   product in which it purportedly resides.  Nor do they allege that the defect existed within one year

26   of sale, or that it was severe enough to render the drives unmerchantable.  Instead, Plaintiffs allege

27   facts that contradict such conclusions; their allegations describe widely different types of drive

28

1    "failure."[14]  Plaintiffs further allege that Backblaze found that the drives at issue functioned

2    perfectly well for at least two years, SCAC ¶ 92, and many Plaintiffs allege their drives failed only

3    after years of use, *or not at all*, SCAC ¶¶ 158-160, 202, 211, 220, 223, 230, 232, 239-241, 243,

4    249-252.  Without identifying a defect and alleging facts sufficient to draw an inference that the

5    defect existed within the limitations period and rendered the drives unmerchantable, Plaintiffs fail

6    to state a claim for breach of implied warranty under the Song-Berly Act.[15]  Leave to amend

7    would be futile, because Plaintiffs cannot plead the existence or timing of any such defect

8    consistent with the facts they have already alleged.  Accordingly, Plaintiffs' Song-Beverly implied

9    warranty claim should be dismissed without leave to amend.  *Steckman*, 143 F.3d at 1298.

10           **5.    The Song-Beverly Act Implied Warranty Claims and Class Allegations
                      Fail Because Plaintiffs Fail to Allege They Purchased Drives in**
11           **California**

12           Plaintiffs' breach of implied warranty claims under the Song Beverly Act fail for the

13    independent and further reason that Plaintiffs fail to plead they purchased any drives in California,

14    which is a jurisdictional prerequisite.  Plaintiffs purport to bring the Fifth Cause of Action for

15    breach of Song-Beverly on behalf of the Named Plaintiffs and a nationwide class.  SCAC ¶¶ 351-

16    _____

17           [14]  Nelson and Hauff alleges their drives failed because they developed "bad sectors."
      SCAC ¶¶ 144, 158-160.  Schechner claims his drive "crashed and failed to boot back up ever
18    again" and that "the power light would turn on but the Drive did not 'spin up.'"  SCAC ¶ 169.
      Crawford alleges that two drives "began to return read errors[,]" SCAC ¶ 196, and Hagey alleges
19    that one drive suffered "intermittent drive seek failures[,]" SCAC ¶ 183.  Other plaintiffs allege
      their drives "failed" without specifying how.  *See generally*, SCAC ¶¶ 135-252.
20
             [15]  In overruling Seagate's demurrer as to the Song-Beverly implied warranty claim in the
21    parallel *Pozar* state court action, Judge Karnow accepted *Pozar* plaintiffs' conclusory allegation
      that the supposed latent defect existed within the one-year limitations period.  In doing so, he
22    expressly noted that state court judges do not apply the stricter federal plausibility standard, and
      speculated that, were he to do so, the Backblaze reports "perhaps" might make the named
23    plaintiffs' allegations plausible.  Here, Plaintiffs make a similar conclusory allegation that the
      Drives contained model-wide defects at the time of sale.  (*See, e.g.*, ¶ 339).  Seagate submits that
24    this allegation is insufficient to meet Rule 8's plausibility requirement, and that the Backblaze
      reports do not make Plaintiffs' conclusory allegation plausible.  Indeed, Backblaze admits that its
25    use of drives is nothing like normal consumer use.  *See* Request for Judicial Notice, filed herewith,
      Exhibit A [Backblaze website https://www.backblaze.com/blog/how-long-do-disk-drives-last/ ]
26    (explaining that Backblaze keeps consumer drives "spinning all the time" in a "24×7 workload of
      a data center environment" for which the drives were not designed; Backblaze uses "'external'
27    hard drives that were 'shucked' out of their enclosures" and "45 drives are mounted in each
28    Backblaze Storage Pod, and the Storage Pods are mounted in racks in our data centers.")

367.  The Seventh Cause of Action alleges claims for breach of implied warranty under the laws of numerous states, including (again) breach of implied warranty under Song-Beverly.  SCAC ¶¶ 385-401.  The Seventh Cause of Action is alleged on behalf of all Subclasses, including the California Subclass.  Plaintiffs voluntarily dismissed Plaintiff Ginsburg.  Dkt. 67.  Of the remaining Plaintiffs, only Enders resides in California.  SCAC ¶ 17.  Enders alleges he purchased drives "from amazon.com."  SCAC ¶ 223.  None of the other Plaintiffs alleges that he resides in California, and none alleges he purchased any drive in California.  SCAC ¶¶ 135-252.

By its express terms, the Song-Beverly Act implies a warranty of merchantability in "every sale of consumer goods that are sold at *retail in this state* . . . ."  Cal. Civ. Code § 1792 (emphasis added).  Accordingly, if plaintiffs fail to allege they purchased the allegedly defective product in California, their claims under Song-Beverly fail as a matter of law.  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005) (named plaintiff's Song-Beverly Act claim failed as a matter of law because plaintiff purchased the allegedly defective product in Massachusetts over the internet); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155 (N.D. Cal. 2010) (rejecting argument that online sales may be treated as occurring in California because order processed and shipped from California); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. Jan. 21, 2015) (dismissing Song-Beverly claims where there were "no allegations in the SCAC that any of these Plaintiffs purchased their mobile devices *in California*." (emphasis original).)  Here, none of the Named Plaintiffs alleges he purchased a drive in California.  SCAC ¶ 223; ¶¶ 135-252.  Accordingly, Seagate should be granted judgment on the pleadings as to the Song-Beverly claims.[16]  If Plaintiffs could have pleaded a purchase in California, they would have done so.  Thus, the dismissal should be without leave to amend.

───────────────

[16] Song-Beverly also does not apply to internet sales that did not originate from a seller in California.  A "sale" for purposes of Song-Beverly occurs when "title to the goods pass[es] in California."  *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1115 (C.D. Cal. 2007) (citing Cal. Civ. Code § 1791(n)).  Where title passes outside of California, the Song-Beverly Act does not apply.  *Id.* at 1113.  Under the California Commercial Code, "title passes to the buyer at the time and place at which the seller completes his performance . . . .  If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but . . .  [i]f the contract requires delivery at destination, title passes on tender there."  Cal. Com. Code § 2401(2).  Applying these

Furthermore, the Class is defined as "[a]ll individuals in the United States who purchased, not for resale, at least one Seagate model ST3000DM001 hard drive. . . ." and the California Subclass is defined as, "[a]ll individuals in California who purchased, not for resale, at least one Seagate model ST3000DM001 hard drive…"  SCAC ¶¶ 264, 265.  The other state-specific Subclass definitions similarly apply to "individuals in [state] who purchased, not for resale, at least one Seagate" drive.  *Id*.  Neither the nationwide Class nor any of the Subclasses is limited to individuals who purchased a drive ***in California***.  As a result, this Court should strike Plaintiffs' nationwide Class and all Subclass allegations under the Song-Berverly Act claims.

**D.     Plaintiffs' Nationwide Class Allegation Should Be Stricken**

Plaintiffs purport to bring the First through Fifth and Sixteenth Causes of Action on behalf of a nationwide Class.  As explained in Sections II and IV.A., the Court already dismissed Plaintiffs' Fourth Cause of Action in its entirety, and dismissed the Fifth Cause of Action to the extent it alleges breach of implied warranty under California Commercial Code section 2314.  As explained in Section IV.C(5) above, the nationwide Class allegations under the Song-Berverly part of the Fifth Cause of Action should also be stricken, because Song-Berverly applies only to drives purchased in California.  As explained below, the remaining nationwide Class allegations should also be stricken (under the First through Third and Sixteenth Causes of Action), because choice of law principles preclude application of California's laws to non-California resident members of the putative class under the facts of this case.

The Ninth Circuit has held, under California's choice of law rules, that "each class member's consumer protection claim should be governed by the consumer protection laws of the

---

principles, the *Gusse* court explained that goods shipped in California by a California retailer pursuant to an internet sale out of state would fall within the ambit of Song-Berverly, while goods shipped by a Minnesota retailer to a consumer in California would not fall within the purview of Song-Berverly because title to the goods had passed in Minnesota.  *Gusse* at 1115, n.7.  California courts are in accord.  *See, e.g.*, *California State Electronics Ass'n v. Zeos Int'l Ltd.*, 41 Cal. App. 4th 1270, 1277 (1996) (Song-Berverly Act did not apply to products sold by mail order from Minnesota retailer to California buyer because title passed in Minnesota upon shipment, and thus were not goods "sold in this state" within the meaning of the Act).  Here, of course, Amazon.com is based in Seattle, Washington, so title would have presumably passed to Plaintiff Enders there, and in any event, Plaintiffs fail to allege where Enders' drive was shipped from for purposes of establishing whether Song-Berverly applies.

1  jurisdiction in which the transaction took place." *Mazza v. American Honda Motor Co.*, 666 F.3d

2  581, 594 (9th Cir. 2012).  In *Mazza*, plaintiffs filed a class action alleging that Honda had

3  misrepresented and concealed material information about the capabilities of an optional safety

4  feature.  *Id.* at 587.  They brought claims for violations of the UCL, FAL, CLRA, as well as unjust

5  enrichment.  *Id.*  The district court certified a nationwide class.  The Ninth Circuit vacated the

6  certification order.  *Id.* at 585, 587.

7          Applying California's governmental interest choice-of-law test, the Ninth Circuit held that

8  Honda had demonstrated California's law should be displaced as to class members from other

9  states.  It examined: (1) whether the laws of affected states are different; (2) if there is a difference,

10  whether there is a "true conflict" between each state's interest in applying its own law to the case;

11  and (3) if a true conflict exists, which state's interest would be more impaired if its law was not

12  applied.  *Id.* at 590.  The court first determined that there was a material conflict between

13  California's consumer protection laws and those of other states because (1) such laws have

14  different scienter requirements, (2) some require named plaintiffs to demonstrate reliance, while

15  other states' consumer protection statutes do not (e.g., Florida and New York), (3) they provide

16  different remedies, and (4) they establish different elements for recovery under a theory of unjust

17  enrichment.  *Id.* at 591.  Similarly, the court noted that "[t]he elements necessary to establish a

18  claim for unjust enrichment also vary materially from state to state."  *Id.* at 591 (citation omitted).

19          Second, the court, relying on principles of federalism and California's stated policy that a

20  "jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its

21  borders[,]" determined that there was a true conflict between California law and the laws of the 43

22  other states at issue as each state had "a strong interest in applying its own consumer protection

23  laws" to resident class members.  *Id.* at 592 (quoting *McCann v. Foster Wheeler*, 48 Cal. 4th 68,

24  97 (2010)).[17]  Third, the court reasoned that "each class member's consumer protection claim

25  should be governed by the consumer protection laws of the jurisdiction in which the transaction

26          [17] Indeed, the California Supreme Court has articulated a presumption against
27  extraterritorial application of California's laws:  "[W]e presume the Legislature did not intend a
statute to be operative, with respect to occurrences outside of the state, . . . unless such intention is
28  clearly expressed."  *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (internal citation and
quotation marks omitted).

1   took place" as those states' interests in "calibrat[ing] liability to foster commerce" would be

2   impaired by the application of California's laws. *Id.* at 593-94.  Because the laws of multiple

3   jurisdictions applied, the court held that variances in state law overwhelmed common issues and

4   precluded a finding of predominance for a nationwide class. *Id.* at 596.

5        Courts applying *Mazza* have reached the same conclusion, finding variances in states'

6   consumer protection and unjust enrichment laws to be dispositive of class certification—even at

7   the pleadings stage.  *See, e.g.*, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1008-10 (N.D. Cal. 2014)

8   (Orrick, J.) (dismissing nationwide class action claims under *Mazza*, explaining that it was "highly

9   unlikely that discovery will uncover information relevant to whether [plaintiff] may maintain a

10  national class action asserting claims under California law" such that "applying the governmental

11  interest test at the pleading phase" was proper);  *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,

12  No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at *6-11 (S.D. Cal. Feb. 13, 2012)

13  (dismissing claims of non-resident named plaintiffs under Song-Beverly, CLRA, and UCL in

14  manufacturing defect case); *Granfield v. Nvidia Corp.*, No. C 11-05403 JW, 2012 U.S. Dist.

15  LEXIS 98678, at *9 (N.D. Cal. July 11, 2012) (Massachusetts resident's claims under CLRA and

16  UCL were barred because she bought her computer in Massachusetts); *Banks v. Nissan N. Am.,*

17  *Inc.*, No. C 11-2022 PJH, 2012 U.S. Dist. LEXIS 37754, at *2 (N.D. Cal. Mar. 20, 2012)

18  (plaintiffs could not pursue UCL and CLRA claims as a nationwide class action, and could pursue

19  such claims as to a California class only); *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1147

20  (N.D. Cal. 2013) (dismissing named plaintiff's UCL, FAL, CLRA, and unjust enrichment claims

21  because "non-California residents' claims are not supported 'where none of the alleged

22  misconduct or injuries occurred in California.'"  (internal citation and quotation marks  omitted)).

23        *Mazza* precludes certification of a nationwide class in this case.  There are no facts alleged

24  that could justify the application of California law to a nationwide class of consumers who do not

25  reside in California, did not purchase a hard drive in California, and were not exposed to any

26  allegedly deceptive statements in California.[18]  Moreover, the variations between California law

27

28        _____

        [18]  While plaintiffs may argue that specific representations about RAID uses or AFRs
    "emanated" from Seagate's California headquarters, that would require them to pinpoint specific

1    and the laws of other jurisdictions regarding scienter, reliance, causation, remedies, and limitations

2    require that the law of each consumer's state be applied to plaintiffs' claims—to conclude

3    otherwise would be to ignore the principles of federalism that underlie the Class Action Fairness

4    Act.  *See* S. Rep. No. 109-14, at 24, 61-63 (2005) ("[T]he problem is that many state courts faced

5    with interstate class actions have undertaken to dictate the substantive laws of other states by

6    applying their own laws to other states, resulting in a breach of federalism principles").

7    **V.      CONCLUSION**

8           For the foregoing reasons, Seagate respectfully requests that the Court:

9           a.      Strike the allegations and claims it previously dismissed, specifically:

10                  (1)    the Fourth and Sixth Causes of Action for express warranty;

11                  (2)    the Fifth and Seventh Causes of Action to the extent they allege a breach of
                            California Com Code section 2314;

12
                    (3)    all allegations of misrepresentations or omissions except those related to
13                          RAID or AFR;

14          (*see* Exhibit 1 [red, strikethrough text])

15          b.      Grant Judgment on the Pleadings in favor of Seagate with prejudice as to the
                    Fourteenth, and Fifteenth Claims for Relief because they depend entirely on factual
16                  allegations that were dismissed;

17          c.      Grant Judgment on the Pleadings in favor of Seagate with prejudice as to all state
                    implied warranty claims in the Fifth and Seventh Causes of Action, including on
18                  the claims under New York, Illinois, Florida, Tennessee, South Carolina, and South
                    Dakota law for lack of privity; on the implied warranty claim under Texas law for
19                  lack of notice; and on the implied warranty claim under Massachusetts law and the
                    Song Beverly Act in the Fifth and Seventh Causes of Action for failure to allege
20                  key elements of these claims;

21          d.      Strike or Grant Judgment on the Pleadings in favor of Seagate with prejudice as to
                    the Song Beverly implied warranty claims in the Fifth and Seventh Causes of
22                  Action for failure to allege any drives were purchased in California;

23

24

25

26   representations each class member saw.  Seagate has substantial facilities in Colorado, Minnesota,
     and Oklahoma as well as California, necessitating an individualized inquiry.  In any event, the
27   *Mazza* court rejected the argument that California's interest in applying its consumer protection
     laws extraterritorially overcomes the interests of other states merely because the allegedly
28   unlawful statements might emanate from California.

1    e.    Strike Plaintiffs' nationwide class allegations under the Fifth Cause of Action
because the nationwide Class is not limited to individuals who purchased drives in
2    California, and under the First through Third and Sixteenth Causes of Action
because choice of law principles preclude non-California residents from asserting
3    these claims.

4    (*See* Exhibit 1 [blue, strikethrough text])

5    Dated:  May 31, 2017                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                                    By_____*/s/ Anna S. McLean*_____
                                              ANNA S. McLEAN
8                                         Attorneys for Defendant
                                       SEAGATE TECHNOLOGY LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28