Jeff D. Friedman (SBN 173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
AXLER GOLDICH LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
Facsimile: (267) 534-7407
mgoldich@axgolaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | No. 5:16-cv-00523-JCS<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge:   Hon. Joseph C. Spero<br>Ctrm.:   G<br>Date:   August 25, 2017<br>Time:   9:30 a.m. |

Opp'n to Mot. to Strike and
for Judgment on the Pleadings
Case No.: 5:16-cv-00523-JCS

**TABLE OF CONTENTS**

<u>Page</u>

SUMMARY OF ARGUMENT ...................................................................................................I

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.     THE MOTION TO STRIKE ALLEGATIONS AND DISMISSED CLAIMS IS UNTIMELY, UNNECESSARY, AND FAILS TO SATISFY THE STANDARD IMPOSED BY RULE 12. ........................................................................................ 3

II.    THE CONSUMER PROTECTION ACT CLAIMS UNDER THE LAWS OF FLORIDA, SOUTH DAKOTA, AND TEXAS REMAIN VIABLE. .................................... 6

III.   THE BREACH OF IMPLIED WARRANTY CLAIMS ARE ALSO VIABLE. .................. 9

    A.     Privity Is Not Required in South Carolina and South Dakota. ................... 9

    B.     Plaintiffs Satisfy Exceptions to the Privity Requirement in Florida, Illinois, New York, and Tennessee. ........................................................ 10

        1.     The third-party beneficiary exception to privity permits plaintiffs' implied warranty claims in Florida, Illinois, and New York. ...................... 10

        2.     The agency exception to privity permits plaintiffs' implied warranty claims in Florida, New York, and Tennessee. ................................. 13

        3.     The direct dealing exception to privity also permits plaintiffs' implied warranty claims in Florida, Illinois, New York, and Tennessee. .................. 14

    C.     Plaintiffs provided sufficient notice under Texas law ............................. 15

    D.     Massachusetts law recognizes implied warranty claims based in both contract and tort – and pleading the former does not require all the elements of the latter .... 16

    E.     Plaintiffs plead a viable implied warranty claim under California's Song-Beverly Act. ....................................................................................... 19

        1.     Plaintiffs plead a latent defect present at the time of sale, as held in *Pozar*. ........................................................................................ 19

        2.     Plaintiff Enders alleges he purchased drives in California. .......................... 22

IV.   THE PROPER SCOPE OF THE CLASSES SHOULD BE ADDRESSED AT CLASS CERTIFICATION. ........................................................................................... 23

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Allen v. City of Santa Monica*,
    No. CV 11-10139-R, 2013 WL 6731789 (C.D. Cal. Dec. 18, 2013) ...................................... 4

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................................................... 8

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................................ 22, 23

*Azar v. Gateway Genomics, LLC*,
    No. 15CV2945 AJB, 2017 WL 1479184 (S.D. Cal. Apr. 25, 2017) .................................... 25

*Back v. Wickes Corp.*,
    378 N.E.2d 964 (Mass. 1978) ...................................................................................................... 17

*BASF Corp. v. Sublime Restorations, Inc.*,
    880 F. Supp. 2d 205 (D. Mass. 2012) ...................................................................................... 18

*Bay State-Spray v. Caterpillar Tractor Co.*,
    533 N.E.2d 1350 (Mass. 1989) ................................................................................................ 17

*BPI Sports, LLC v. Labdoor, Inc.*,
    No. 15-62212-CIV-BLOOM, 2016 WL 739652 (S.D. Fla. Feb. 25, 2016) ........................... 6

*Braun v. E.I. Du Pont De Nemours & Co.*,
    No. CIV.04-1007, 2006 WL 290552 (D.S.D. Feb. 7, 2006)..................................................... 9

*Bruno v. Eckhart Corp.*,
    280 F.R.D. 540 (C.D. Cal. 2012) .............................................................................................. 25

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................................... 23

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ..................................................................................................... 6

*Catalano v. BMW of N. Am.*,
    167 F. Supp. 3d 540 (S.D.N.Y. 2016)................................................................................. 11, 12

*Cigna Ins. Co. v. Oy Saunatec*,
    241 F.3d 1 (1st Cir. 2001) ........................................................................................................... 18

*Clemens v. DaimlerChrysler*,
    534 F.3d 1017 (9th Cir. 2008)................................................................................................... 12

Opp'n to Mot. to Strike and
for Judgment on the Pleadings
      - ii -

*In re Clorox Consumer Litig.,*
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................................... 24

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
   332 F. App'x 565 (11th Cir. 2009) .............................................................. 6

*Cooper Paintings & Coatings, Inc. v. SCM Corp.,*
   457 S.W.2d 864 (Tenn. Ct. App. 1970) ...................................................... 14

*Cundy v. Int'l Trencher Serv., Inc.,*
   358 N.W.2d 233 (S.D. 1984) ........................................................................ 9

*Daniel v. Ford Motor Co.,*
   806 F.3d 1217 (9th Cir. 2015)..................................................................... 20

*Davis v. Powertel, Inc.,*
   776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .................................................. 6

*DiCintio v. DaimlerChrysler Corp.,*
   282 A.D.2d 276 (N.Y. App. Div. 2001), *rev'd on other grounds* .......................... 13

*Dixon v. Ford Motor Co.,*
   No. 14-CV-6135 JMA, 2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015)................... 12

*Egwuatu v. S. Lubes, Inc.,*
   976 So. 2d 50 (Fla. Dist. Ct. App. 2008) .................................................... 6

*Ehret v. Uber Techs., Inc.,*
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ........................................................ 24

*Elward v. Electrolux Home Prod., Inc.,*
   214 F. Supp. 3d 701 (N.D. Ill. 2016) .................................................... 11, 14

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.,*
   569 F. Supp. 2d 929 (N.D. Cal. 2008) ........................................................ 23

*Foote v. Green Tree Acceptance, Inc.,*
   597 So. 2d 803 (Fla. Dist. Ct. App. 1991) .................................................. 13

*Forcellati v. Hyland's Inc.,*
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...................................................... 25

*Forcellati v. Hyland's, Inc.,*
   No. CV 12–1983–GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ................. 25

*Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.,*
   408 N.E.2d 403 (Ill. App. Ct. 1980) .......................................................... 11

*Gasque v. Eagle Mach. Co.,*
   243 S.E.2d 831 (S.C. 1978) ........................................................................ 9

*Gerstle v. Am. Honda Motor Co., Inc.*,
    No. 16-CV-04384-JST, 2017 WL 1477141 (N.D. Cal. Apr. 25, 2017)..........................24, 25

*Glyptal Inc. v. Engelhard Corp.*,
    801 F. Supp. 887 (D. Mass. 1992) ..........................................................................18

*Gonzalez v. Reed-Joseph Int'l Co.*,
    No. 4:11-cv-01094, 2013 WL 1578475 (S.D. Tex. Apr. 11, 2013)..............................15

*Gordon v. Ford Motor Co.*,
    239 A.D.2d 156 (N.Y. App. Div. 1997).....................................................................13

*Grassi v. Int'l Comfort Prods., LLC*,
    No. 1:15-CV-00253-JAM, 2015 WL 4879410 (E.D. Cal. Aug. 14, 2015) ...........................21

*Green v. Bradley Co.*,
    194 F. Supp. 3d 479 (D.S.C. 2016) ...........................................................................9

*Haglund v. Philip Morris, Inc.*,
    847 N.E.2d 315 (Mass. 2006) ...................................................................................18

*HomeAway Inc. v. City & Cty. of San Francisco*,
    No. 14-CV-04859-JCS, 2015 WL 367121 (N.D. Cal. Jan. 27, 2015) ..............................23

*Horizons, Inc. v. Avco Corp.*,
    551 F. Supp. 771 (W.D.S.D.1982).............................................................................9

*Iannacchino v. Ford Motor Co.*,
    888 N.E.2d 879 (Mass. 2008) ...................................................................................18

*In re iPhone 4S Consumer Litig.*,
    No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ...............................24

*Jacobs v. Yamaha Motor Corp., U.S.A.*,
    649 N.E.2d 758 (Mass. 1995) ...........................................................................17, 18

*Jandreau v. Sheesley Plumbing & Heating Co., Inc.*,
    324 N.W.2d 266 (S.D. 1982) ......................................................................................9

*JKT Co. v. Hardwick*,
    265 S.E.2d 510 (S.C. 1980) .......................................................................................9

*Johnson v. Brown & Williamson Tobacco Corp.*,
    345 F. Supp. 2d 16 (D. Mass. 2004) ........................................................................18

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ..............................................................................24

*Kennedy v. Columbia Lumber & Mfg. Co.*,
    384 S.E.2d 730 (S.C. 1989) .......................................................................................9

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1138 (N.D. Cal. 2010) ........................................................................ 22, 23

*Lally v. Volkswagen*,
  698 N.E.2d 28 (Mass. App. Ct. 1998) .................................................................................. 18

*Leghorn v. Wells Fargo Bank, N.A.*,
  950 F. Supp. 2d 1093 (N.D. Cal. 2013) ................................................................................. 4

*Lebel v. Rampage Sport Fishing Yachts*,
  No. 06-61890-CIV-HUCK, 2007 WL 1724942 (S.D. Fla. June 14, 2007) .......................... 13

*In re: Lenovo Adware Litig.*,
  No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ............................. 7

*Marcus v. Apple Inc.*,
  No. C 14-03824 WHA, 2015 WL 1743381 (N.D. Cal. Apr. 16, 2015) ................................ 22

*Massey v. Novartis Pharms. Corp.*,
  46 F. Supp. 3d 688 (W.D. Tex. 2014) .................................................................................. 15

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................................... 24, 25

*McCann v. Foster Wheeler LLC*,
  48 Cal. 4th 68 (2010) ........................................................................................................... 25

*McKay v. Novartis Pharm. Corp.*,
  751 F.3d 694 (5th Cir. 2014) ............................................................................................... 15

*Mexia v. Rinker Boat Co., Inc.*,
  174 Cal. App. 4th 1297 (2009) ....................................................................................... 20, 21

*Morris v. ADT Sec. Servs.*,
  580 F. Supp. 2d 1305 (S.D. Fla. 2008) ................................................................................. 7

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ................................................................................... 15

*Ortiz v Fireboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................................... 8

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................................................... 8

*Parenteau v. Gen. Motors, LLC*,
  No. CV 14-04961-RGK, 2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) ............................... 22

*Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*,
  No. 1:16-CV-21255-UU, 2016 WL 3390122 (S.D. Fla. June 17, 2016) ......................... 10, 11

*Podobedov v. Living Essentials, LLC*,
　　No. CV 11-6408 PSG, 2012 WL 2513489 (C.D. Cal. Mar. 21, 2012) .................................... 4

*Pozar v. Seagate*,
　　No. CGC-15-547787, 2016 WL 4562694 (Cal. Super. Feb. 10, 2016) ..................... 19, 20, 21

*Reed v. C.R. Bard, Inc.*,
　　No. 1:14-cv-359, 2015 WL 11110600 (E.D. Tex. Mar. 30, 2015) ........................................ 15

*Rothbaum v. Samsung Telecomm. Am., LLC*,
　　52 F. Supp. 3d 185 (D. Mass. 2014) ............................................................................. 10, 18

*In re Rust–Oleum Restore Mktg., Sales Prac. & Prod. Liab. Litig.*,
　　155 F. Supp. 3d 772 (N.D. Ill. 2016) ............................................................................. 14, 15

*Rynders v. E.I. Du Pont De Nemours & Co.*,
　　21 F.3d 835 (8th Cir. 1994) ............................................................................................... 9

*Salameh v. Tarsadia Hotel*,
　　726 F.3d 1124 (9th Cir. 2013) ............................................................................................ 8

*Sanchez-Knutson v. Ford Motor Co.*,
　　52 F. Supp. 3d 1223 (S.D. Fla. 2014) ............................................................................... 10

*Senne v. Kansas City Royals Baseball Corp.*,
　　114 F. Supp. 3d 906 (N.D. Cal. 2015) ................................................................................ 8

*Smith v. Ariens Co.*,
　　377 N.E.2d 954 (Mass. 1978) ........................................................................................... 18

*Smith v. Robertshaw Controls Co.*,
　　410 F.3d 29 (1st Cir. 2005) ............................................................................................... 17

*State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*,
　　741 N.E.2d 101 (N.Y. 2000) ....................................................................................... 11, 12

*State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*,
　　869 So. 2d 592 (Fla. Dist. Ct. App. 2004) .......................................................................... 6

*State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*,
　　946 So. 2d 1253 (Fla. Dist. Ct. App. 2007) ........................................................................ 6

*Swartz v. Gen. Motors Corp.*,
　　378 N.E.2d 61 (Mass. 1978) ............................................................................................. 17

*Town of Westport v. Monsanto Co.*,
　　No. 14-12041, 2017 WL 1347671 (D. Mass. Apr. 7, 2017) ................................................ 18

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac. & Prod. Liab. Litig.*,
　　754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................................. 10

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
    110 S.W.3d 194 (Tex. App. 2003) ................................................................. 15, 16

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................. 22

*Vintage Homes, Inc. v. Coldiron*,
    585 S.W.2d 886 (Tex. Civ. App. 1979) ........................................................... 15

*West v. Carter*,
    712 S.W.2d 569 (Tex. App. 1986) ..................................................................... 7

*Whittlestone, Inc. v. Handi–Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) .............................................................................. 4

*Wilson v. Hammer Holdings, Inc.*,
    850 F.2d 3 (1st Cir. 1988) ................................................................................. 17

*Won Kyung Hwang v. Ohso Clean, Inc.*,
    No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ........... 24, 25

*Yagman v. Gen. Motors Co.*,
    No. CV-14-4696-MWF, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) ............ 21

*Zeman v Williams*,
    No. 11-10204-GAO, 2014 WL 3058298 (D. Mass. July 7, 2014) ..................... 18

**STATUTES & RULES**

Cal. Civ. Code § 1791.1 ......................................................................................... 20

Cal. Civ. Code § 1792 ............................................................................................ 23

Fed. R. Civ. P., Rule 8 ..................................................................................... 19, 21

Fed. R. Civ. P., Rule 9 ..................................................................................... 19, 21

Fed. R. Civ. P., Rule 12 ................................................................................. 3, 4, 23

S.D. Codified Laws § 37-24-6 ............................................................................. 6, 7

S.D. Codified Laws § 57A-2-318 ............................................................................ 9

Tex. Bus. & Com. Code § 17.46 ............................................................................. 7

Tex. Bus. & Com. Code § 2.607 ........................................................................... 15

**SUMMARY OF ARGUMENT**

Consumers invest in hard drives to have a safe place to store important personal files. Seagate advertises its drives as having failure rates of less than 1% and as suitable for use in RAID configurations, while omitting to mention a host of information – including that its drives are not reliable, are plagued by a latent defect rendering them highly prone to failure, are not suitable for storing important personal data, do not last as long as comparable drives on the market, are not suitable for any form of RAID, and have published failure rates that are wholly inaccurate. Instead, staggering failure rates as high as 47.2% have been reported. Thus, consumers purchasing Seagate's drives based on its deceptive advertising and pursuant to implied warranties should be compensated.

Instead of taking responsibility for its defective drives, however, Seagate brings yet another pleading challenge. The Court already denied most of its motion to dismiss as to consumer protection and implied warranty law claims in California and eight other states. Now Seagate asserts that the Court should grant judgment based on various other purported pleading deficiencies with these claims. First, overlooking the well-pled *omission* claims, Seagate unpersuasively argues that the consumer protection claims under Florida, South Dakota, and Texas law should be dismissed because the named plaintiffs do not plead reliance on *affirmative misrepresentations*. Seagate is wrong. In any event, to the extent there is any question regarding plaintiffs' reliance upon Seagate's deceptive marketing, plaintiffs can amend. *See* Section II.

Moreover, Seagate wrongly argues that all the implied warranty claims fail, for a variety of reasons, including lack of privity. In South Carolina and South Dakota, however, privity of contract is not required. *See* Section III(A). And plaintiffs satisfy exceptions to the privity requirement in Florida, Illinois, New York, and Tennessee – including exceptions that apply when consumers are intended third-party beneficiaries, when sellers are acting as agents for the manufacturer, and when consumers have direct dealings with the manufacturer. *See* Section III(B)(1)-(3). Plaintiffs also provide sufficient notice under Texas law. *See* Section III(C).

As for Massachusetts, Seagate conflates contract and tort-based claims in mistakenly arguing that plaintiffs fail to plead all the elements of their implied warranty claim. *See* Section III(D). And, with respect to California's Song-Beverly Act, plaintiffs properly plead a latent defect present at the

1    time of sale, as held by *Pozar* in the parallel state court action.  Meanwhile, plaintiff Enders alleges

2    he purchased drives in California, as held by the Court in this action.  *See* Section III(E).

3         Further, as this Court and many others have held, the proper scope of the classes, including

4    whether a nationwide class can proceed under California law, should be determined on a factual

5    record permitting a sufficiently detailed and state-specific choice-of-law analysis.  *See* Section IV.

6         Finally, in addition to its motion for judgment on the pleadings, Seagate also moves to strike

7    various claims, classes, and allegations.  For all the reasons set forth above – in addition to the fact

8    that it is untimely – the Court should deny that motion in its entirety as well.

9                                    **BACKGROUND**

10        In February of 2016, plaintiffs filed the initial complaints in this matter.  On May 5, 2016,

11   they sent a notice of suit to defendants.  On May 9, 2016, they filed their first consolidated

12   complaint, and on June 28, 2016, they filed the second.  On August 5, 2016, defendants moved to

13   dismiss this second consolidated amended complaint.

14        On February 9, 2017, this Court granted defendants' motion in part and denied it in part.  As

15   to plaintiffs' consumer protection act claims, the Court permitted them to proceed under California

16   law, as well as under the laws of Florida, Illinois, Massachusetts, New York, South Carolina, South

17   Dakota, Tennessee, and Texas, on the allegations that Seagate:

18        • misrepresented the annualized failure rate (AFR) of the hard drives;

19        • misrepresented their suitability for use in RAID configurations;[1]

20        • failed to disclose that the hard drives are not reliable or dependable;

21        • failed to disclose that they are plagued by a latent defect that renders them highly
            prone to early catastrophic failures;

22
23        • failed to disclose that they are not suitable for storing, protecting, or backing up
            important personal data;

24        • failed to disclose that they are not designed for RAID 5 or suitable for any form of
            RAID;

25        • failed to disclose that their published AFRs are wholly inaccurate; and

26        • failed to disclose that they do not last as long as comparable drives on the market.[2]

27   _____

28   [1] Order Granting in Part and Den. in Part Mot. to Dismiss Second Consol. Am. Compl., ECF
     No. 100, (Order) at 14.  Internal citations and quotations omitted and emphasis added unless stated.

The Court also permitted plaintiffs' UCL unfair prong claim to proceed "[t]o the extent that the California statutory claims [ ] are allowed to proceed . . . ."[3] Moreover, the Court allowed plaintiffs' unfair prong claim predicated on Seagate's practice of "charging consumers exorbitant sums of money to recover their data when [Seagate's] drives repeatedly fail" to move forward.[4]

As to plaintiffs' implied warranty claims, the Court permitted them to proceed under California's Song-Beverly Act, as well as under the laws of the other eight states, after noting that Seagate also failed to address those laws in its motion.[5]

In addition, the Court allowed plaintiffs' unjust enrichment claim to go forward.[6]

The Court granted defendants' motion to dismiss as to the rest of the claims, some with prejudice and some without. As to the latter, the Court provided plaintiffs with opportunity to amend.[7] But, because plaintiffs could not cure the express warranty pleading deficiencies identified by the Court, and to save the parties and the Court the added delay and burdens associated with amending, plaintiffs declined to file a further amended complaint.

Seagate now files a motion to strike and for judgment on the pleadings with respect to the claims it failed to address in its motion to dismiss.

## ARGUMENT

**I.    The Motion to Strike Allegations and Dismissed Claims Is Untimely, Unnecessary, and Fails to Satisfy the Standard Imposed by Rule 12.**

Under Rule 12(f)(2), it is untimely for Seagate to bring this motion to strike after having already responded to plaintiffs' second consolidated amended complaint. Seagate filed its answer to the complaint on March 24, 2017, and did not move to strike until two months had passed. Thus, there is no question it is untimely. Indeed, Seagate concedes as much in urging this Court to act "on its own" under rule 12(f)(1).[8] This Court should decline to do so, because besides being untimely,

---

[2] *Id*. at 24-25.

[3] *Id.* at 28.

[4] *Id*. at 29. Curiously, Seagate raised only California law in addressing the consumer protection claims asserted on behalf of the residents of the other class states.

[5] *Id*. at 10-11.

[6] *Id*. at 29.

[7] *Id*. at 6, 10, 17, 19, 20, 23, 28, 30.

[8] Not. of Mot. and Mot. to Strike and for Jud. on the Pleadings, ECF No. 114 (Mot.) at 6 n.4.

the motion is also entirely unnecessary and fails to meet the standard required by Rule 12.

To be sure, striking claims that have already been dismissed would not further the purpose of the rule. As stated by this Court, the "function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[9] Because Seagate seeks to strike "allegations and claims that have been dismissed," the issues have been dispensed with already.[10] The further expenditure of time and money as to the dismissed claims arises now only because of Seagate's unnecessary motion.

Moreover, there is no requirement that plaintiffs file an amended complaint every time there is a substantive case ruling that impacts the operative pleading. Rather, it is generally understood by parties that the complaint is limited by those rulings, without it having to be spelled out by amendment. Indeed, the Court invited plaintiffs throughout its order to amend their complaint if they were able to cure certain identified pleading deficiencies,[11] but the Court did not request plaintiffs to file an amended complaint to conform to the order.

Finally, besides the untimely and unnecessary nature of the motion, proposed deletions from the complaint are improper and fail to meet the standards for striking them. Rule 12(f) provides that a district court may strike from a pleading matter that is "redundant, immaterial, impertinent, or scandalous."[12] But motions to strike "are generally disfavored."[13] "Indeed, a motion to strike should not be granted unless it is clear that the matter to be stricken could have *no possible bearing* on the subject matter of the litigation."[14] Thus, the moving party carries a "*high burden* to demonstrate that there is *no doubt*" the allegations should be stricken.[15] Seagate does not meet this burden.

Instead, Seagate's argument is based on the faulty premise that the "Court permitted Plaintiffs to proceed on statements regarding only two narrow subjects: the Drives' AFR and

---

[9] *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013), *quoting Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010).

[10] Mot. at 6-8.

[11] Order at 6, 10, 17, 19, 20, 23, 28, 30.

[12] Fed. R. Civ. P. 12(f).

[13] *Leghorn*, 950 F. Supp. 2d at 1122.

[14] *Allen v. City of Santa Monica*, 2013 WL 6731789, at *5 (C.D. Cal. Dec. 18, 2013).

[15] *See Podobedov v. Living Essentials, LLC*, No. CV 11-6408 PSG, 2012 WL 2513489, at *3 (C.D. Cal. Mar. 21, 2012).

suitability for use in RAID configurations."[16]  As set forth above, however, the Court also permitted six different omission claims to proceed, as well as plaintiffs' UCL unfair prong claim, unjust enrichment claim, and implied warranty claims.  The factual allegations that Seagate now moves to strike are certainly not "immaterial" to those claims.

Rather, allegations regarding the reliability of Seagate's drives[17] are relevant to plaintiffs' claim that Seagate failed to disclose, *inter alia*, "that the hard drives are not reliable or dependable," "that they are plagued by a latent, model-wide defect that renders them highly prone to early catastrophic failures," and "that they do not last as long as comparable hard drives on the market."[18] Marketing statements that Seagate made regarding the hard drives at issue serve to put the actionable misrepresentations and omissions in context,[19] and can be distinguished from allegations found within a count that such marketing statement are legally actionable misrepresentations under a given statute.[20]  Without waiving their argument as to the untimely and unnecessary nature of this motion, plaintiffs do not specifically object to the proposed deletion of the latter.[21]  Likewise, allegations regarding materials the plaintiffs viewed also contribute to the factual backdrop of plaintiffs' remaining claims.[22]  Lastly, the proposed striking of entire claims[23] and class allegations[24] is improper for the reasons set forth in the following sections.  The motion to strike should be denied.

---

[16] Mot. at 6.

[17] *See* Ex. 1 to Mot. at ¶¶ 3, 4, 49, 59, 109, 121, 470, 472, 488, 491, 506, 509, 514.

[18] Order at 24, 25.

[19] *See* Ex. 1 to Mot. at ¶¶ 50-59, 66-72, 118, 121.

[20] *Id*. at ¶¶ 281, 408, 445, 530.

[21] To be clear, ¶¶ 281, 408, 445, and 530 to the extent they address affirmative misrepresentations on which the Court has not permitted plaintiffs to proceed.  Plaintiffs also have no specific objection to the proposed deletions regarding NAS and read error rates from the following paragraphs: 3, 6, 49, 59, 64-65, 74-75, 80, 82, 110, 112-113, 115-117, 153, 157, 161, 192, 227, 247, 248, 281, 284, 285, 292, 306, 320, 322, 323, 408, 409, 413, 445, 448, 454, 470, 471, 475, 476, 488, 494, 495, 506, 512, 513.  Nor do plaintiffs specifically object to the express warranty claims being stricken at paragraphs 333-350, 368-384, or the allegations regarding dismissed plaintiff Ginsberg at paragraphs 18, 203-210.

[22] *See* Ex. 1 to Mot. at ¶¶ 139-140, 143 (plaintiff Nelson); ¶¶ 166-168, ¶ 172 (plaintiff Schechner); ¶ 191 (plaintiff Crawford); ¶¶ 215-219 (plaintiff Manak).

[23] *See id*. at ¶¶ 1, 11, 12, 122-134, 269, 273, 279, 351-367, 385-401 (implied warranty claims); ¶¶ 418-436, 522-556 (Florida, South Dakota, and Texas consumer protection law claims).

[24] *See id*. at ¶¶ 264-265, 274, 298, 313, 557.

## II.    The Consumer Protection Act Claims Under the Laws of Florida, South Dakota, and Texas Remain Viable.

Seagate wrongly argues that certain consumer protection act claims should be adjudicated on the pleadings and the subclass allegations stricken, because the named plaintiffs did not allege they relied on the misrepresentations still at issue. This argument fails for several reasons.

First, there is no reliance requirement under Florida's Deceptive and Unfair Trade Practices Act. As explained by the Florida Court of Appeal in 2000 in *Davis v. Powertel, Inc.,* the FDUTPA "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large."[25] So "the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."[26] Put most to the point, one "need not show actual reliance on the representation or omission at issue."[27] This holding was repeated by the Florida Court of Appeal in 2004,[28] 2007,[29] and 2008,[30] with the Eleventh Circuit then relying on these cases for the same pronouncement of law in 2009[31] and again as recently as 2016.[32] Against this now-settled background, Seagate cites only to the 2007 decision of the Court of Appeal in *Prohias*, a conclusory opinion that lacked any discussion of the line of contrary authority. In short, Seagate fails to establish a reliance requirement as to Florida.

In any event, the consumer protection law of FDUTPA,[33] like those in South Dakota[34] and

---

[25] 776 So. 2d 971, 975 (Fla. Dist. Ct. App. 2000).

[26] *State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004).

[27] *Davis*, 776 So. 2d at 973.

[28] *Wyndham Int'l*, 869 So. 2d at 598 (same).

[29] *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC,* 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007) (same).

[30] *Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53 (Fla. Dist. Ct. App. 2008) ("plaintiffs need not prove reliance to establish a claim" under the FUDTPA).

[31] *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009), *citing Commerce Comm. Leasing,* 946 So. 2d at 1258.

[32] *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016), *citing Davis*, 776 So. 2d at 973; *see also BPI Sports, LLC v. Labdoor, Inc.*, No. 15-62212-CIV-BLOOM, 2016 WL 739652, at *5 (S.D. Fla. Feb. 25, 2016).

[33] *Davis,* 776 So. 2d at 973 ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation *or omission* at issue.").

[34] S.D. Codified Laws § 37-24-6(1) (declaring it unlawful to "conceal, suppress, or omit any material fact").

Texas,[35] recognizes omission claims, and plaintiffs Schechner,[36] Manak,[37] and Nelson[38] each allege reliance on Seagate's material omissions. Seagate overlooks the omission claims in arguing that the consumer protection act claims should be adjudicated on the merits. Notably, Seagate does not argue that a duty of disclosure must be asserted under these laws, much less that such a duty arises only where there are partial representations or that the named plaintiff must have alleged reliance on the partial misrepresentation to assert the duty.[39] Indeed, "a duty to disclose is not an element of FDUTPA."[40] Similarly, the Texas omission claim is based in the statutory text of § 17.46(b)(24), so, as the Texas Court of Appeal has explained, "[w]hile there may or may not have been a common law duty to disclose, that is irrelevant in this case."[41] The South Dakota omission claim is likewise grounded in the statutory text.[42] Thus, as the law of Florida, South Dakota, and Texas do not require plaintiffs to plead a duty to disclose – let alone a duty that arises from misrepresentations – it is irrelevant whether plaintiffs Schechner, Manak, and Nelson alleged that they viewed Seagate's affirmative misrepresentations regarding AFR and RAID prior to purchase.

Moreover, to the extent there is a reliance requirement in these jurisdiction, plaintiffs can amend to allege it with respect to their affirmative misrepresentation claims. In particular, each can

---

[35] Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (prohibiting one from "failing to disclose information concerning goods or services which was known at the time of the transaction").

[36] *E.g.*, Second Consol. Am. Compl., ECF No. 62 (Complaint), ¶¶ 173, 430, 431.

[37] *E.g.*, *id.*, ¶¶ 222, 551, 554.

[38] *E.g.*, *id.*, ¶¶ 148, 534, 538.

[39] Mot. at 8-9. In its motion to dismiss, Seagate cited only California law in addressing all the consumer protection act claims. A duty to disclose also arises under California law where the defendant has exclusive knowledge, as alleged here. *See In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *13 (N.D. Cal. Oct. 27, 2016); Pls. Opp'n to Mot. to Dismiss Second Consol. Am. Compl., ECF No. 72 (MTD Opp.) at pp. 11-12. Under that theory, exposure to a partial representation would obviously be irrelevant.

[40] *Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1307, 1310 (S.D. Fla. 2008) (denying motion to dismiss where the "crux of Plaintiffs' Complaint is that, despite its awareness of the [analog sunset date], ADT continued to sell analog-based equipment to its customers, without informing them that their back-up system would not be functional").

[41] *West v. Carter*, 712 S.W.2d 569, 573 (Tex. App. 1986) (affirming judgment where the defendant "failed to disclose information concerning goods or services when such information was known at the time of the transaction and [] such failure to disclose was intended to induce the [plaintiffs] into a transaction into which they would not have entered had the information been disclosed"); *see also* Complaint, ¶¶ 527(d), 535-38.

[42] S.D. Codified Laws § 37-24-6(1).

allege to a reasonable certainty that he saw and relied on the 1% AFR. Indeed, at his deposition, Nelson testified that he became aware of the AFR from Seagate's website before he purchased his hard drive.[43] Likewise, Schechner testified that he "relied on the advertised specifications for the drive," including "the size, the price, the annualized failure rate," which "was listed as less than 1%."[44] And Manak testified that he read about Seagate's AFR "on their data sheet" and "relied on their very, very low AFR which would mean it was very unlikely [he] would suffer any data loss."[45]

Seagate inexplicably asserts that plaintiffs should not be permitted to amend now, because they did not do so in response to the Court's order on the motion to dismiss. But the Court invited plaintiffs to amend their complaint if they were able to cure certain identified pleading deficiencies.[46] And the Court previously ruled that plaintiffs' allegations regarding reliance on the AFR data and RAID configurations *were sufficient*.[47] Plaintiffs can hardly be faulted now for failing to amend to cure a deficiency that Seagate did not previously raise. If Seagate wants to bring its pleading challenges in piecemeal fashion, plaintiffs should be permitted to amend in kind.

Finally, even without proposed amendment as to reliance on Seagate's affirmative misrepresentations, the proper course is not to strike that aspect of the claim from the Florida, South Dakota, and Texas allegations.[48] As this Court has held, where there is a plaintiff from each state with standing to assert claims against the defendant, the scope of the claims that can be asserted on behalf of unnamed class members is a question of adequacy to be determined at class certification.[49]

In short, plaintiffs' consumer protection act claims, based on Seagate's affirmative misrepresentations *and* omissions, should proceed under the laws of Florida, South Dakota, and Texas, and there is, therefore, no basis to strike the subclass allegations for these states.

---

[43] Nelson Depo. at 34:21-35:16 (rough transcript).

[44] Schechner Depo. at 92:7-16, 92:21-93:2 (rough transcript).

[45] Manak Depo. at 116:17-117:15 (rough transcript).

[46] Order at 6, 10, 17, 19, 20, 23, 28, 30.

[47] Order at 16, 19. This distinguishes the case on which Seagate relies. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("the district court gave Plaintiffs specific instructions on how to amend the complaint, and Plaintiffs did not comply").

[48] Mot. at 10.

[49] *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp. 3d 906, 922 (N.D. Cal. 2015), *citing Ortiz v Fireboard Corp.*, 527 U.S. 815 (1999), and *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997), and *distinguishing O'Shea v. Littleton*, 414 U.S. 488 (1974).

**III.    The Breach of Implied Warranty Claims Are Also Viable.**

    **A.    Privity Is Not Required in South Carolina and South Dakota.**

    Seagate incorrectly argues that plaintiffs' implied warranty claims fail for lack of privity in South Carolina and South Dakota.[50] These states have no such requirement.

    Seagate relies on a case from 1956 to mistakenly argue that privity is required in South Carolina. But a subsequently enacted commercial code section abolished the privity requirement. As stated by the South Carolina Supreme Court in 1978 in *Gasque v. Eagle Mach. Co*., the plain language of § 36-2-318 "dispenses with the necessity of privity as to any natural person who may be expected to use, consume or be affected by the product.[51] The Court reiterated in 1980 that "South Carolina is in the vanguard in permitting a plaintiff to recover economic loss from a seller with whom he did not deal."[52] And again in 1989, the Court stated that it has "been steadfast in holding that privity of contract as a defense to an implied warranty action is abolished in this State."[53] Federal district courts have recently held the same.[54] In short, there is no privity requirement.

    Likewise, South Dakota's highest court has also stated in no uncertain terms that privity is not required to bring implied warranty claims in that state, distinguishing as dicta the earlier case on which Seagate relies.[55] In 1984, in *Cundy v. Int'l Trencher Serv., Inc.*, the Supreme Court of South Dakota held that *Jandreau* was "not applicable" and that "the discussion on privity was mere dicta."[56] Instead, the court agreed with a federal district court that, since adoption of UCC section 57A-2-318, the "lack of privity is no defense in South Dakota in a breach of implied warranty action by a remote buyer against a manufacturer even though the buyer seeks only the recovery of damages for economic losses."[57] Federal courts in South Dakota have more recently reiterated the point.[58]

---

[50] Mot. at 10-11.

[51] 243 S.E.2d 831, 832 (S.C. 1978).

[52] *JKT Co. v. Hardwick*, 265 S.E.2d 510, 512 (S.C. 1980).

[53] *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 736 (S.C. 1989).

[54] *E.g., Green v. Bradley Co.,* 194 F. Supp. 3d 479, 484-85 (D.S.C. 2016) (citing *Kennedy*, 299 S.C. at 384).

[55] *See* Mot. at 11, *citing Jandreau v. Sheesley Plumbing & Heating Co., Inc.*, 324 N.W.2d 266 (S.D. 1982).

[56] 358 N.W.2d 233, 240 (S.D. 1984).

[57] *Id., citing Horizons, Inc. v. Avco Corp.,* 551 F. Supp. 771, 777–78 (W.D.S.D.1982), *modified on other grounds,* 714 F.2d 862 (8th Cir. 1983).

Thus, plaintiffs' implied warranty claims under South Carolina and South Dakota law can proceed.

**B.      Plaintiffs Satisfy Exceptions to the Privity Requirement in Florida, Illinois, New York, and Tennessee.**

Seagate incorrectly argues that plaintiffs' implied warranty claims fail for lack of privity in Florida, Illinois, New York, and Tennessee.[59]  In fact, courts in those jurisdictions have recognized exceptions, which are applicable here, permitting plaintiffs to assert implied warranty claims that would otherwise be barred for lack of privity.  First, an exception arises in Florida, Illinois, and New York where a consumer is a third-party beneficiary of the manufacturer's warranty.  Second, Florida, New York, and Tennessee recognize an exception where the plaintiff purchases from the manufacturer's agent.  Third, as to claims in all these states, courts have applied an exception where the purchaser has direct dealings with the manufacturer.

**1.      The third-party beneficiary exception to privity permits plaintiffs' implied warranty claims in Florida, Illinois, and New York.**

Plaintiffs properly allege the third-party beneficiary exception to privity, which permits their implied warranty claims under Florida, Illinois, and New York law to proceed.  As to Florida, in *Sanchez-Knutson v. Ford Motor Co.*, a federal district court held that the consumer plaintiffs' implied warranty claims were not precluded based on their lack of privity with the defendant car manufacturer, based on allegations that the plaintiffs were the intended beneficiaries of the warranty agreements.  Specifically, the court held that it was sufficient for the plaintiff to plead that the Ford dealers "were not intended to be the ultimate consumers of the subject vehicles, and have no rights under the warranty agreements provided by Ford.  Ford's warranties were designed for and intended to benefit the consumers only."[60]  Plaintiffs in the instant litigation allege precisely that as to Seagate and its authorized retailers and resellers.[61]

---

[58] *Rynders v. E.I. Du Pont De Nemours & Co.*, 21 F.3d 835, 839 (8th Cir. 1994) ("[The plaintiffs] are clearly correct that there is no privity requirement for recovery on implied warranty theories in South Dakota."); *Braun v. E.I. Du Pont De Nemours & Co.*, No. CIV.04-1007, 2006 WL 290552, at *10 (D.S.D. Feb. 7, 2006) (rejecting the manufacturer's contention "that plaintiffs' breach of contract claims fail for lack of privity of contract").

[59] Mot. at 10-11.

[60] 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014), *citing In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac. & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010).

[61] Complaint, ¶ 399; *see also Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*, No.

Similarly, as to Illinois, the federal district court in *Elward v. Electrolux Home Prod., Inc.* held that the plaintiffs had sufficiently alleged the third-party beneficiary exception to privity. There, the plaintiffs argued that the exception applied "where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements."[62]  And the plaintiffs alleged that "Electrolux was aware of remote customers' requirement that their dishwashers function without overheating, catching fire, and causing floods," that "Electrolux delivered dishwashers in order to satisfy that requirement," and that, in this way, "remote customers are third-party beneficiaries of contracts between Electrolux and their dealer-agents."[63]  The court agreed, holding these allegations "sufficient to survive a motion to dismiss."[64]  Likewise here, Seagate is aware of remote customers' requirement that their hard drives store data without failing prematurely and causing massive data loss,[65] and Seagate delivered hard drives purportedly to satisfy these requirements.  Thus, plaintiffs adequately allege that they are third-party beneficiaries under Illinois law.

In New York, federal district courts have recently acknowledged the availability of the third-party beneficiary exception to privity, but found it inadequately alleged by complaints that lack the detail of the one here.  In *Catalano v. BMW of N. Am.*, the court explained, "Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost."[66]  But the court described the plaintiff as "baldly" alleging and offering only "naked assertions" to show that "any contracts

---

1:16-CV-21255-UU, 2016 WL 3390122, at *4 (S.D. Fla. June 17, 2016) ("At this stage of the proceedings, plaintiff must simply allege an intent to benefit it as the third-party, not prove that it is in fact a third-party beneficiary.").

[62] 214 F. Supp. 3d 701, 704 (N.D. Ill. 2016), *citing Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980).

[63] *Id*. at 705.

[64] *Id*. at 706; *see also id*. at 704 ("Given the fact-intensive nature of the privity inquiry, a determination as to whether privity exists is often not appropriate at the motion-to-dismiss stage.").

[65] This is of course why Seagate falsely advertised an AFR <1%.  *See* Complaint, ¶ 72.

[66] 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016); *see also State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000) (same).

1  between BMW and dealerships were intended to benefit him or other class members."[67]  And the

2  court faulted the plaintiff for not including in the complaint "any provisions from the alleged

3  contracts between BMW and dealerships indicating that the class members are intended third-party

4  beneficiaries of those agreements."[68]  Likewise, in *Dixon v. Ford Motor Co.*, the district court

5  described the plaintiff's complaint as alleging in only "conclusory fashion" that "Ford's express

6  warranties were designed for and intended to benefit the consumers only."[69]  Thus, these courts

7  concluded that the plaintiffs' allegations were "insufficient to show that the class members were

8  intended third-party beneficiaries, even at the pleading stage."[70]

9         The key difference here is that plaintiffs actually include their contractual warranty language

10  as Exhibit F to their complaint.  And that warranty specifically states that "*only* consumers purchas-

11  ing this product from an authorized Seagate retailer or reseller may obtain coverage under this

12  limited warranty."[71]  Plaintiffs also specifically identify and allege those from whom they purchased

13  their hard drives to be authorized Seagate retailers and resellers.[72]  Thus, there can be no question

14  that Seagate's warranties "were designed for and intended to benefit the consumer only."[73]

15         Seagate wrongly argues that the Court's rationale in rejecting the third-party beneficiary

16  exception as to the implied warranty claim under California's Commercial Code "applies with equal

17  force to implied warranty claims under the laws of other states."[74]  The Court's rationale does not

18  apply *at all* to the claims under the laws of other states.  Rather, the Court explained it was "bound"

19  by the Ninth Circuit's decision in *Clemens*, which was specific to California law: "Although the

20  Ninth Circuit acknowledged authority from other jurisdictions finding the privity requirement 'an

21  archaism in the modern consumer marketplace,' it held that 'California courts have painstakingly

22

23  ──────────────────────

24  [67] *Id.*

     [68] *Id.*

25  [69] No. 14-CV-6135 JMA, 2015 WL 6437612, at *6 (E.D.N.Y. Sept. 30, 2015).

26  [70] *Catalano*, 167 F. Supp. 3d at 557.

     [71] Complaint, Ex. F.

27  [72] *Id.*, ¶¶ 186-187 (New York); *see also* ¶¶ 162-163 (Florida); ¶¶ 243-244 (Illinois).

     [73] *Id.*, ¶ 399.

28  [74] Mot. at 11.

1    established the scope of the privity requirement…."[75]  In short, the Ninth Circuit's determination

2    regarding California law has no bearing on whether the third-party beneficiary exception recognized

3    by other states is applicable to the non-California claims at issue here.

### 2. The agency exception to privity permits plaintiffs' implied warranty claims in Florida, New York, and Tennessee.

5         Plaintiffs allege that they purchased from authorized retailers and resellers, who were acting

6    as the agents of Seagate in selling the hard drives.[76]  As set forth below, such allegations satisfy the

7    privity requirements of Florida, New York, and Tennessee at the pleading stage.

8         As the federal district court held in *Lebel v. Rampage Sport Fishing Yachts*, Florida recog-

9    nizes an exception to lack of privity between a purchaser and manufacturer where "the purchaser

10   claim[s] that the dealer acted as the manufacturer's agent."[77]  In *Lebel*, the plaintiff alleged that he

11   purchased his boat from an "authorized dealer," acting as the manufacturer's agent.  And because

12   questions of whether an agency, in fact, existed between the defendant and the dealer remained in

13   dispute, the court denied the defendant's motion for summary judgment based on lack of privity.[78]

14        Likewise, in New York, at least a couple of appellate courts have held that a dealer acting as

15   an agent for a manufacturer can create the requisite privity with a consumer purchasing from the

16   dealer.  In *Gordon v. Ford Motor Co*., the defendant car manufacturer correctly argued that "there

17   can be no implied warranty absent privity between itself and plaintiffs," but the appellate court

18   affirmed the lower court's holding that "such privity would exist if the dealerships with which plain-

19   tiffs dealt were defendant's sales or leasing agents."[79]  Similarly, in *DiCintio v. DaimlerChrysler*,

20   the appellate court reversed the dismissal of the implied warranty claim, because "privity would

21   exist if the dealerships with which plaintiff dealt were DaimlerChrysler's sales or leasing agents."[80]

22   And, in both cases, the court held that discovery "is needed with respect to that possibility."[81]

---

24   [75] Order at 12-13, *citing Clemens v. DaimlerChrysler*, 534 F.3d 1017, 1023 (9th Cir. 2008).

25   [76] Complaint, ¶¶ 162-163, 174-175, 186-187, 398.

26   [77] No. 06-61890-CIV-HUCK, 2007 WL 1724942, at *3 (S.D. Fla. June 14, 2007).

27   [78] *Id.*, *citing Foote v. Green Tree Acceptance, Inc.,* 597 So. 2d 803 (Fla. Dist. Ct. App. 1991).
     [79] 239 A.D.2d 156 (N.Y. App. Div. 1997).

28   [80] 282 A.D.2d 276 (N.Y. App. Div. 2001), *rev'd on other grounds*.
     [81] *Id.*; *see also Gordon*, 239 A.D.2d at 156.

As for Tennessee, courts have also recognized that a dealer can be "for limited purposes a special agent of the defendant with authority to make warranties of the quality and fitness of the defendant's product."[82] Likewise, here, Seagate's authorized retailers and resellers acted as its special agent in providing its warranty materials to the consumer purchasers. Such allegations suffice at the pleading state to satisfy Tennessee's privity requirement as well.

### 3. The direct dealing exception to privity also permits plaintiffs' implied warranty claims in Florida, Illinois, New York, and Tennessee.

As to Illinois, the federal district court in *Elward* also held that the plaintiffs' allegations satisfied the exception applying when "there are direct dealings between the manufacturer and the remote customer."[83] *Elward* relied on *In re Rust–Oleum Restore Mktg., Sales Prac. & Prod. Liab. Litig.*, where "remote customers alleged that they had relied on the manufacturer's misrepresentations in brochures and advertisements prior to purchasing a deck resurfacing product and that they had direct dealings with the manufacturer's agents."[84] The *Rust–Oleum* court held that such allegations were sufficient to allege that the direct relationship exception applied, and permitted the implied warranty claims to go forward.[85] Likewise, in *Elward*, the plaintiff alleged that "she, and others like her, had direct dealings with Electrolux via its advertisements, warranty forms, and registration cards."[86] The *Elward* court held that "these allegations state a plausible claim that Electrolux is liable for breach of implied warranty under the direct relationship exception."[87]

Plaintiffs make similar allegations here. For example, the Illinois plaintiff alleges that he had direct dealings with Seagate by receiving and reviewing its warranty and marketing materials, including Seagate's data sheet for the hard drive and a press release issued by Seagate.[88] Based on similar allegations, the Illinois district court in *Rust-Oleum* declined to dismiss implied warranty

---

[82] *Cooper Paintings & Coatings, Inc. v. SCM Corp.*, 457 S.W.2d 864, 866–67 (Tenn. Ct. App. 1970) (upholding judgment on breach of implied warranty over objection that privity was lacking).

[83] 214 F. Supp. 3d at 705.

[84] *Id., citing Rust–Oleum*, 155 F. Supp. 3d 772, 806–07 (N.D. Ill. 2016).

[85] 155 F. Supp. 3d at 806–07.

[86] 214 F. Supp. 3d at 705.

[87] *Id.*

[88] Complaint, ¶¶ 245-247 (Illinois plaintiff); *see also id.*, ¶¶ 164-166 (Florida plaintiff); ¶¶ 188-192 (New York plaintiff); ¶¶ 176-178 (Tennessee plaintiff); *see generally id.*, ¶¶ 49-81, 398.

1  claims arising under the law of Illinois – as well as Florida, New York, and Tennessee – because, as

2  here, "privity involves issues of fact."[89]  This Court should rule the same.

3          **C.      Plaintiffs provided sufficient notice under Texas law.**

4          Under Texas law, "the buyer must within a reasonable time after he discovers or should have

5  discovered any breach notify the seller of breach."[90]  As the Texas Court of Appeal has stated, "the

6  notice requirements of the Code are to be liberally construed and are not stringent."[91]  And "notice is

7  ordinarily a question of fact, not a question of law."[92]

8          Seagate inexplicably argues that plaintiff Manak does not allege proper notice.  This is

9  incorrect.  First, plaintiffs allege in the complaint that Seagate "has received timely notice regarding

10 the problems at issue in this litigation."[93]  Given that this allegation is deemed true for present

11 purposes, Seagate's motion is not the proper procedural mechanism for challenging the sufficiency

12 of the notice.  Unsurprisingly, the cases to which Seagate cites for the proposition that this

13 "allegation is insufficient" were decided either at summary judgment or trial.[94]

14         Moreover, the facts detailed in the complaint support the allegation of timely notice.  As

15 stated by the Texas Court of Appeal in *U.S. Tire Tech* – a key case relied on by Seagate – a "general

16 expression of the buyer's dissatisfaction with the product may be sufficient to comply with section

17 2.607."[95]  Plaintiff Manak has done just that.  As alleged, one of his hard drives failed in March

18 2014 due to the latent defect, and he subsequently received a refurbished replacement.[96]  The only

19 logical inference from these allegations is that he expressed timely dissatisfaction to Seagate about

20 his hard drive, before receiving the refurbished one.  And this meets the requirement that the manu-

---

21         [89] 155 F. Supp. 3d at 807.

22         [90] Tex. Bus. & Com. Code § 2.607.

           [91] *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 889 (Tex. Civ. App. 1979).

23         [92] *Gonzalez v. Reed-Joseph Int'l Co.*, 2013 WL 1578475, at *15 (S.D. Tex. Apr. 11, 2013).

           [93] Complaint, ¶ 396.

24         [94] *See* Mot. at 12, *citing U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194 (Tex. App.

25 2003); *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694 (5th Cir. 2014); *Massey v. Novartis
   Pharms. Corp.*, 46 F. Supp. 3d 688 (W.D. Tex. 2014).  *In re MyFord Touch Consumer Litig.* is

26 also inapposite because there the plaintiffs argued that pre-suit notice was not required and,
   alternatively, that it was provided by the complaint.  46 F. Supp. 3d 936 (N.D. Cal. 2014).

27         [95] *U.S. Tire-Tech*, 110 S.W.3d at 201; *Reed v. C.R. Bard, Inc.*, No. 1:14-cv-359, 2015 WL
   11110600, at *5 (E.D. Tex. Mar. 30, 2015) (same).

28         [96] Complaint, ¶¶ 220-221.

facturer "be made aware of a problem with a particular product purchased by a particular buyer."[97]

In addition, plaintiff Manak also mailed notice to Seagate on May 5, 2016, prior to plaintiffs filing their first consolidated complaint on May 9, 2016, and their second on June 28, 2016.  While the subject line of this letter referenced the Texas DTPA claim, as opposed to the Texas warranty claim, the letter was adequate to again provide "a general expression of the buyer's dissatisfaction with the product."[98]  And this is particularly so because Texas DTPA claims are often premised in part, as here, on breach of warranty.[99]  The letter was also sent via certified mail, with the return receipt attached as an exhibit to the complaint.[100]  This also distinguishes the jury finding in *U.S. Tire-Tech*, where there was a question as to whether the defendant had ever received the notice.[101]  Here, actual notice is without question.  And, having sent a notice to Seagate, this is not a situation where plaintiffs contend that the "commencement of suit" itself satisfies the notice requirement.[102]

In sum, having alleged that he personally expressed dissatisfaction with his hard drive to Seagate, as well as provided formal notice of related claims to its counsel, Manak adequately alleges notice of his warranty claim under Texas law.[103]  No more is required at the pleadings stage.

### D.    Massachusetts law recognizes implied warranty claims based in both contract and tort – and pleading the former does not require all the elements of the latter.

Seagate is way off base in arguing that plaintiffs fail to plead the elements of their implied warranty claim under Massachusetts law.[104]  As explained by its Supreme Judicial Court on multiple occasions, Massachusetts law recognizes contract-based warranty claims for economic loss, as well as tort-based warranty claims for personal injury and property damages.  And because plaintiffs pursue the former, Seagate's myopic focus on the elements for an implied warranty claim based in tort is entirely misplaced.  Plaintiffs do not bring strict product liability tort-based warranty claims, so there is, for example, no requirement that plaintiffs plead the existence of an alternative design.

---

[97] Mot. at 12, *citing U.S. Tire-Tech*, 110 S.W.3d at 202.
[98] *Id.* at 201.
[99] Complaint, ¶ 523.
[100] *Id.*, Ex. G.; *see also id.*, ¶ 542.
[101] 110 S.W.3d at 201 n.2.
[102] *See* Mot. at 12.
[103] Complaint, ¶ 377.
[104] Mot. at 13-16.

In the seminal case of *Swartz v. Gen. Motors Corp.*, the Supreme Judicial Court held in 1978 that "[a]mendments to the Massachusetts version of the Uniform Commercial Code make it clear that the Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions."[105]  Thus, a "'warranty' action for personal injuries is one imposed by law as a matter of social policy, and not necessarily one which the defendant has acquired by contract."[106]  As the Court subsequently stated in *Bay State-Spray v. Caterpillar Tractor Co.*, "[w]hat makes the Massachusetts situation unique (and our commercial code not uniform in this respect) is the Legislature's imposition of the concept of strict liability in tort into § 2–318 of the [UCC]."[107]

As a result of the *Swartz* decision, the "distinction between tort-based claims resulting from a defective product and contract-based claims based on a breach of warranty was perhaps blurred,"[108] but there remains "meaningful differences between the two kinds of claims."[109]  In *Jacobs v. Yamaha Motor Corp., U.S.A.*, the Supreme Judicial Court cautioned that the "fact that § 2–318 was enacted with a focus on remedies for personal injuries caused by a breach of warranty should not inhibit the independent development of the law concerning warranties extended to the buyer of defective goods."[110]  Rather, "[c]ontract-based warranty claims involving commercial transactions may generally call for different treatment than tort-based warranty claims," and "contract-based warranty claims of buyers of consumer goods themselves deserve separate consideration."[111]  Thus, in such a case – and without regard to the purported elements Seagate says apply – the Court held

---

[105] *Back v. Wickes Corp.*, 378 N.E.2d 964, 968–69 (Mass. 1978) (describing *Swartz v. Gen. Motors Corp.*, 378 N.E.2d 61, 63 (Mass. 1978)).

[106] *Id.* at 969.

[107] 533 N.E.2d 1350, 1352 (Mass. 1989); *Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 35 (1st Cir. 2005) ("[T]echnically, Massachusetts does not recognize strict products liability in tort. However, the Massachusetts Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery….").

[108] *Jacobs v. Yamaha Motor Corp., U.S.A.*, 649 N.E.2d 758, 763 n.5 (Mass. 1995).

[109] *Bay State-Spray*, 533 N.E.2d at 1353 (concluding that "the statute of limitations of § 2–318 applies to tort-based warranty claims and that the statute of limitations of § 2–725 applies to contract-based warranty claims"); *citing Wilson v. Hammer Holdings,* 850 F.2d 3, 7–8 (1st Cir. 1988) ("section 2–318 is designed to cover breach of warranty actions that are in essence products liability actions, and is not designed as an alternative for contractually based warranty claims").

[110] 649 N.E.2d at 763.

[111] *Id.*

that "evidence of the plaintiff's numerous problems with the motorcycle amply supports the jury's finding that Yamaha breached its implied warranty of merchantability."[112]

Other cases are to the same effect: the elements of a tort-based implied warranty claim are not required to prove a contract-based claim.  For example, in *Iannacchino v. Ford Motor Co.*, the Supreme Judicial Court held that both a consumer protection law claim and an implied warranty claim for economic loss would survive a pleading challenge were it alleged that "the plaintiffs own vehicles manufactured and sold by Ford as meeting required government safety standards; that the vehicle's door handles, as Ford knew, failed to comply with NHTSA safety standards; and that the noncompliance was not properly remedied."[113]  And federal district court cases have likewise described Massachusetts's law of contract-based implied warranty to simply require proof that merchantable goods were not "fit for the ordinary purposes for which such goods are used" and thereby caused economic loss.[114]  Thus, plaintiffs' contract-based theory does not incorporate the law of product liability, as Seagate mistakenly contends, such that plaintiffs must also allege "how the product was defective in design" and the existence of an "alternative design."[115]

That said, the fact remains that plaintiffs have pled that the drives are unfit and have caused economic loss based on a defect,[116] so they must adequately plead the existence of a defect,[117] as

---

[112] *Id.* (affirming award of economic damages).

[113] 888 N.E.2d 879, 889 (Mass. 2008) (dismissing without prejudice where "on the current state of the record, the plaintiffs' complaint does not adequately set out a claim that their vehicles fail to comply with FMVSS 206 or are defective in some other way").

[114] *BASF Corp. v. Sublime Restorations, Inc.*, 880 F. Supp. 2d 205, 217, 218 (D. Mass. 2012) (denying summary judgment where a genuine dispute of material fact remains "as to the ultimate question of this case (whether plaintiff's paint and paint equipment produced mixed paint that matched the samples)"); *Glyptal Inc. v. Engelhard Corp.*, 801 F. Supp. 887, 897 (D. Mass. 1992) (denying summary judgment where paint mixture was too thick to be applied efficiently); *cf. Rothbaum v. Samsung Telecomm. Am., LLC*, 52 F. Supp. 3d 185, 202, 203 (D. Mass. 2014) (concluding that the evidence did "not permit a finding that the phones lacked the operative essentials such that they were not fit for their ordinary purposes" where "shutdowns were infrequent and did not impede her ability to use her phone").  *See* Complaint, ¶¶ 391-393, 401.

[115] Mot. at 14, *citing Zeman v Williams*, 2014 WL 3058298, at *5 (D. Mass. July 7, 2014). This case and others cited by Seagate involve product liability tort-based warranty claims for personal injury and/or property damages, and therefore are inapposite.  *See, e.g., Haglund v. Philip Morris, Inc.*, 847 N.E.2d 315 (Mass. 2006); *Smith v. Ariens Co.*, 377 N.E.2d 954 (Mass. 1978); *Lally v. Volkswagen*, 698 N.E.2d 28 (Mass. App. Ct. 1998); *Cigna Ins. Co. v. Oy Saunatec*, 241 F.3d 1 (1st Cir. 2001); *Town of Westport v. Monsanto Co.*, 2017 WL 1347671 (D. Mass. Apr. 7, 2017); *Johnson v. Brown & Williamson Tobacco Corp.*, 345 F. Supp. 2d 16 (D. Mass. 2004).

[116] *E.g.*, Complaint, ¶¶ 392, 401.  *See also* Order at 4 ("Plaintiffs' warranty claims are based on Seagate's alleged failure to deliver non-defective drives….").

1  they have done.[118]  Seagate's continued arguments to the contrary lack merit.[119]  To be sure, in

2  overruling Seagate's demurrers in *Pozar*, the state court rejected the argument that the complaint

3  failed to adequately allege facts sufficient to state a claim that a systemic latent defect existed.  The

4  *Pozar* court found that the complaint "*does* claim the defect existed."[120]  As to whether the

5  complaint would satisfy a federal pleading standard, the court stated "that is the use of the Backblaze

6  reports: whether true or not, *the existence of the reports make the allegations plausible*."[121]  And this

7  Court agreed in stating that "Plaintiffs' allegation that the AFR was false is plausible" based on the

8  Backblaze report's conclusion that "the high failure rate was caused by the drives themselves."[122]

9  In addition to alleging the Backblaze reports in substantial detail, the complaint here also cites

10  extensive consumer complaints and over 30 drive failures experienced by plaintiffs that were caused

11  by the latent defect.[123]  In short, the complaint plainly satisfies rule 8(a) with respect to plaintiffs'

12  contract-based implied warranty claims brought under Massachusetts law.[124]

### E.    Plaintiffs plead a viable implied warranty claim under California's Song-Beverly Act.

#### 1.    Plaintiffs plead a latent defect present at the time of sale, as held in *Pozar*.

15  The state trial court in *Pozar v. Seagate* has already decided the very issue before this Court.

16  In *Pozar*, the plaintiffs brought the same Song-Beverly implied warranty claims pursued here, based

17  on the same latent hard drive defect.  Seagate demurred, arguing that the drives were not "unmer-

18  chantable from the outset,"[125] just like here it argues they were not rendered "unmerchantable within

19  one year of sale."[126]  The state court rejected this argument.  "True, the drives must have been

20  'unmerchantable from the outset,'" the court explained, "but Seagate is wrong to suggest the drives

---

[117] *Iannacchino*, 888 N.E.2d at 889.

[118] MTD Opp. at 12-18; Complaint, ¶¶ 82-115 (allegations regarding the Backblaze report); ¶¶ 135-252 (experiences of the named plaintiffs); ¶¶ 253-263 (other consumer complaints).

[119] Mot. at 14.

[120] 2016 WL 4562694, at *3 (Cal. Super. Feb. 10, 2016) (emphasis in original).

[121] *Id.* at *3 n.2.

[122] Order at 16.

[123] Complaint, ¶¶ 135-252.

[124] *See* Order at 4 (holding that rule 9(b) does not apply to plaintiffs' warranty claims).

[125] 2016 WL 4562694, at *2.

[126] Mot. at 17.

were merchantable – as a matter of law – simply because they stored data without failure during the express warranty period."[127]  Instead, a "product can operate as expected during the one year period, but nevertheless have a latent defect which manifests thereafter."[128]

For this proposition of law, the *Pozar* court relied on the California Court of Appeal's decision in *Mexia v. Rinker Boat*, which the Ninth Circuit recently relied on in *Daniel v. Ford Motor Co.* to hold that "there is nothing that suggests a requirement that the purchaser discover and report to the seller a latent defect within th[e] time period" of Cal. Civ. Code § 1791.1(c).[129]  Put another way, the Song-Beverly Act "does not create a deadline for discovering latent defects."[130]  And the holding of these cases was in no way limited to those involving safety concerns as Seagate contends.[131]  *Daniel* discusses safety solely in the context of the consumer protection law claims;[132] *Mexia* involved corrosion to a boat engine;[133] and *Pozar* involved the same drives as at issue here.[134] Thus, because plaintiffs allege a latent defect that existed at the time of sale, they state timely claims under the Song-Beverly Act, as in *Daniel, Mexia,* and *Pozar.*

Moreover, as discussed above, in overruling Seagate's demurrers in *Pozar*, the state court rejected the same meritless argument that Seagate again makes here: that the complaint failed to adequately allege facts sufficient "to claim a systemic latent defect present during the period."[135] The *Pozar* court found that the complaint "*does* claim the defect existed."[136]  As to whether the complaint would satisfy a federal pleading standard, *Pozar* stated "that is the use of the Backblaze reports: whether true or not, *the existence of the reports make the allegations plausible*."[137]

---

[127] *Pozar*, 2016 WL 4562694, at *2.

[128] *Id.*

[129] 806 F.3d 1217, 1222 (9th Cir. 2015), *quoting Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1310 (2009).

[130] *Id.* at 1223 (reversing judgment against plaintiffs on their implied warranty claims under the Song-Beverly Act), *quoting Mexia*, 174 Cal. App. 4th at 1301 (same).

[131] Mot. at 17.

[132] 806 F.3d at 1225-26.

[133] *Mexia*, 174 Cal. App. 4th at 1301-1302.

[134] *Pozar*, 2016 WL 4562694, at *1.

[135] *Id.*, at *3.

[136] *Id.* (emphasis in original).

[137] *Id.* at *3 n.2.  *See also* Order at 16.

Indeed, in ruling on the motion to dismiss, this Court already rejected Seagate's recycled arguments as to the unreliability of these reports.[138]  Rather, this Court explained that "Plaintiffs allege that Backblaze considered the effects of both the storage environment and shucking in its analysis, but concluded that the high failure rate was caused by the drives themselves" and held that these allegations met the plausibility standard.[139]  And, in addition to alleging the Backblaze reports in substantial detail, the complaint here also cites extensive consumer complaints and over 30 drive failures experienced by plaintiffs that were caused by the latent defect.[140]  In contrast, *Pozar* alleges only *two* drive failures.[141]  In short, the complaint plainly satisfies rule 8(a) with respect to plaintiffs' implied warranty claims brought under California's Song-Beverly Act.[142]

Finally, the federal cases on which Seagate relies in no way undermine the holding of the California state courts in *Pozar* and *Mexia* (nor could they under the *Erie* doctrine).  Unlike here, the *Yagman* complaint is virtually devoid of allegations supporting a claim that a defect exists.[143]  Nevertheless, the court held that the complaint fell only "slightly short" of meeting the rule 8 plausibility standard and granted the plaintiff leave to amend.[144]  Thus, rather than supporting Seagate's argument that plaintiffs have failed to plausibly allege a defect, *Yagman* simply illustrates the fact that rule 8 "does not pose a particularly difficult hurdle for a plaintiff,"[145] and that this modest hurdle is easily cleared by the complaint's extensive allegations regarding the drives' massive failure rate and the high incidence of drive failures among plaintiffs and class members.

And unlike the defect with a "low occurrence rate of causing corrosion" in *Grassi v. Int'l Comfort Prods., LLC*,[146] here plaintiffs allege a defect causing the drives to fail prematurely at

---

[138] *See* Mot. at 18 n.15.

[139] Order at 16.

[140] Complaint, ¶¶ 135-252.

[141] *Pozar*, 2016 WL 4562694, at *3.

[142] *See* Order at 4 (holding that rule 9(b) does not apply to plaintiffs' warranty claims).

[143] *Yagman v. Gen. Motors Co.,* No. CV-14-4696-MWF, 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014).  Indeed, the *Yagman* complaint simply recites that the Buick Lucerne is defective, that the engine and electrical system shut down in the plaintiff's Lucerne while he was driving, and that repair attempts failed to fix the problem.  *See id.* at *1.

[144] *Id.* at *3.

[145] *Id.*

[146] No. 1:15-CV-00253-JAM, 2015 WL 4879410, at *5 (E.D. Cal. Aug. 14, 2015).

"spectacularly" high rates,[147] with Backblaze reporting an annualized failure rate of the drives "as high as 47.2%."[148]  Thus, plaintiffs allege a latent defect that existed at the time of sale and causes catastrophic data loss at spectacularly high rates,[149] such that the defect is "so severe as to cause the product to fall below the minimum level of quality guaranteed by the warranty."[150]  Plaintiffs more than adequately plead their Song-Beverly implied warranty claims.

### 2. Plaintiff Enders alleges he purchased drives in California.

Seagate erroneously argues that the implied warranty claim under the Song-Beverly Act fails because "none of the Named Plaintiffs alleges he purchased a drive in California."[151]  But Seagate simply overlooks that plaintiff Enders alleges that he "purchased multiple Internal Barracudas in California,"[152] from amazon.com,[153] an authorized Seagate retailer.[154]  Indeed, this Court previously recognized that plaintiff Enders "alleges that he purchased Seagate hard drives in California."[155]

Thus, Seagate's cases with respect to plaintiffs purchasing goods over the internet, while residing in states other than California, actually support the viability of Enders's claim.  For example, in *Anunziato v. eMachines, Inc.*, the district court held that the plaintiff's claim failed as a matter of law, because the Song-Beverly Act "only governs goods sold at retail in California," while the plaintiff alleged he "resides in Massachusetts where he purchased the product over the internet."[156]  Likewise, in *Kowalsky v. Hewlett-Packard Co.*, the plaintiff alleged that he was a

---

[147] Complaint, ¶¶ 4, 10, 82, 129, 143, 157, 161, 173, 185, 202, 210, 222.

[148] Complaint, ¶¶ 5, 92.  Seagate's other cases are also inapposite.  *See* Mot. at 17, *citing Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 1743381, at *6 (N.D. Cal. Apr. 16, 2015) ("[The plaintiff] fails to state a plausible claim for breach of the implied warranty of merchantability under Song–Beverly because the alleged safety risk was adequately disclosed."); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) ("[The plaintiff] appears to misapprehend the nature of implied warranty claims; he pleads only that Hansen has breached implied warranties by representing that the drink is a 'premium' diet soda, containing 'all natural flavors.'").

[149] *E.g.,* Complaint, ¶¶ 108, 230.

[150] *See* Mot. at 17, *quoting Parenteau v. Gen. Motors, LLC*, No. CV 14-04961-RGK, 2015 WL 1020499, at *11 (C.D. Cal. Mar. 5, 2015).

[151] Mot. at 19.

[152] Complaint, ¶ 17.

[153] *Id.*, ¶ 223.

[154] *Id.*, ¶ 224.

[155] Order at 10.

[156] 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005).

resident of New Jersey and that he purchased the printer online, with nothing in the complaint to suggest that he "was in California when he made the purchase."[157]  Here, on the other hand, Enders specifically alleges that he purchased the drives online while in California.

By footnote, Seagate also argues that the Song-Beverly Act does not apply to internet sales where shipment takes place outside of California.[158]  The Court should not entertain substantive arguments made exclusively by footnote.[159]  In any event, the argument is also undermined by Seagate's aforementioned cases *dismissing* claims, where online sales were *not* alleged to have been made while the plaintiffs were residing in California.[160]  Further, Seagate goes beyond the facts alleged in the complaint to speculate that Enders's drives shipped from Seattle, Washington, or title passed there, because that is where Amazon is based.  But, at his deposition, Enders testified that he also purchased drives from Newegg Inc., an online retailer located in the City of Industry, California.[161]  Thus, by Seagate's logic, these drives must have shipped from California, or title passed there, because that is where Newegg is based.  Put another way, Seagate is unable to devise a valid reason for the Song-Beverly Act implied warranty claims not to proceed.[162]

## IV.    The Proper Scope of the Classes Should Be Addressed at Class Certification.

First, as discussed above, under Rule 12(f)(2), it is untimely for Seagate to bring this motion after having already responded to plaintiffs' complaint.  Seagate concedes as much in urging this Court to act "on its own" under Rule 12(f)(1).[163]  This Court should decline to do so, because the motion to strike class allegations is premature and unsupported.

---

[157] 771 F. Supp. 2d 1138, 1155 (N.D. Cal. 2010), *order vacated on other grounds on reconsideration*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015) (dismissing without prejudice to permit plaintiffs opportunity to allege that they purchased their mobile devices in California).

[158] Mot. at 19 n.16.

[159] *See First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935 n.1 (N.D. Cal. 2008) ("A footnote is the wrong place for substantive arguments on the merits of a motion, particularly where such arguments provide independent bases for dismissing a claim not otherwise addressed in the motion."); *see also HomeAway Inc. v. City & Cty. of San Francisco*, No. 14-CV-04859-JCS, 2015 WL 367121, at *11 (N.D. Cal. Jan. 27, 2015).

[160] *Anunziato*, 402 F. Supp. 2d at 1142 (C.D. Cal. 2005); *Kowalsky*, 771 F. Supp. 2d at 1155.

[161] Enders Depo. at 155:2-24 (rough transcript).

[162] At class certification, plaintiffs can propose an appropriate Song-Beverly subclass of those purchasing "at retail in this state" per Cal. Civ. Code § 1792.  *See also* Mot. at 20.

[163] Mot. at 6 n.4.

Preliminary, because the "application of California law to the claims of the class does not violate due process, defendants bear the burden of showing that foreign law, rather than California law, should apply."[164]  Seagate does not contest the constitutionality of applying California law nationwide, instead simply addressing California's governmental interest test.[165]  In any event, application of California law to the claims of out-of-state plaintiffs is appropriate where, as here, the plaintiffs allege that the defendant's misleading marketing was developed at, coordinated at, and emanated from the defendant's California headquarters, and that the critical decisions regarding marketing were made in California.[166]  Thus, Seagate bears the burden here, which it cannot meet.

Seagate argues that under the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."[167]  But *Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under one state's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis.  Indeed, the court made clear that its holding was cabined to "the facts and circumstances of this case."[168]  And *Mazza* undertook its class-wide choice-of-law analysis at the class certification stage.  Here, a choice-of-law analysis is premature, because no developed factual record yet exists upon which the Court can make the detailed analysis of state law required by *Mazza*, and because Seagate has failed to explain how any differences in state law would affect the adjudication of plaintiffs' claims, much less how any interests of foreign states would outweigh those of California.

Notably, this Court held in *Won Kyung Hwang v. Ohso Clean, Inc.*, that *Mazza* "did not establish [] a bright-line rule but rather, determined on the basis of a detailed choice-of-law analysis, at the class certification stage of the case, that in *that case* California law should not be applied to

---

[164] *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 539 (C.D. Cal. 2012).

[165] Mot. at 20-23.

[166] *E.g., Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 1477141, at *3–4 (N.D. Cal. Apr. 25, 2017); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237–38 (N.D. Cal. 2012). *See* Complaint, ¶¶ 25, 277(a)-(i).

[167] 666 F.3d 581, 594 (9th Cir. 2012).

[168] *Id.* at 594.

non-California residents."[169]  Thus, this Court concluded that "[s]uch an inquiry is most appropriate at the class certification stage of the case, after the parties have engaged in discovery."[170]  Recent decisions have come to the same conclusion.  For example, earlier this year in *Gerstle v. Am. Honda Motor Co., Inc.*, Judge Tigar stated that "it would be premature to speculate about whether the difference in various states' consumer protection laws are material in this case," and that "the Court has no factual record to decide which state has a greater interest in applying its laws."[171]

For instance, relying only on the Ninth Circuit's opinion in *Mazza*, Seagate simply recites a single, generic interest untethered to any foreign state's law.  Seagate broadly claims that each state has a general interest in "calibrating liability to foster commerce."[172]  But Seagate ignores that *Mazza* (and California) only recognize this interest where the out-of-state defendant is conducting business *within the foreign jurisdiction*.[173]  Without support, Seagate claims to have substantial facilities in Colorado, Minnesota, and Oklahoma as well as California, but fails to even assert such facilities in any other state.[174]  This type of generalized argument is inadequate, as recently recognized by Judge King in *Forcellati*: "[d]efendants have provided no substantive, fact-specific analysis as to whether California…or the states where the sales occurred have the predominant interest."[175]  And such a showing cannot be made in reply.  In sum, Seagate's motion is premature and fails to meet its burden.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Seagate's motion to strike and for judgment on the pleadings in its entirety.

---

[169] No. C-12-06355 JCS, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (emphasis in original).

[170] *Id.*

[171] 2017 WL 1477141, at *4.  *See also Azar v. Gateway Genomics, LLC*, No. 15CV2945 AJB, 2017 WL 1479184, at *4 (S.D. Cal. Apr. 25, 2017); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012); *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).

[172] Mot. at 22.

[173] *Mazza*, 666 F.3d at 592 ("As the California Supreme Court recently re-iterated, each state has an interest in setting the appropriate level of liability for companies conducting business within its territory."), *citing McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91 (2010).

[174] Mot. at 22-23 n.18.

[175] *Forcellati v. Hyland's, Inc.*, No. CV 12–1983–GHK (MRWx), 2014 WL 1410264, at *3 (C.D. Cal. Apr. 9, 2014).

Respectfully submitted,

DATED: June 23, 2017

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____/s/ Steve Berman_____
Steve W. Berman (pro hac vice)
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jeff. D. Friedman (SBN 173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
jefff@hbsslaw.com

Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
Facsimile: (267) 534-7407
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs*