1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
    NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
3   ANNA S. McLEAN, Cal. Bar No. 142233
    TENAYA RODEWALD, Cal. Bar No. 248563
4   MUKUND H. SHARMA, Cal. Bar No. 249125
    LIÊN H. PAYNE, Cal. Bar No. 291569
5   JOY O. SIU, Cal. Bar No. 307610
    Four Embarcadero Center, 17th Floor
6   San Francisco, California 94111-4109
    Telephone:    415.434.9100
7   Facsimile:    415.434.3947
    Email:        npopovic@sheppardmullin.com
8                 amclean@sheppardmullin.com
                  msharma@sheppardmullin.com
9                 trodewald@sheppardmullin.com
                  lpayne@sheppardmullin.com
10                jsiu@sheppardmullin.com

11  Attorneys for Defendant,
    SEAGATE TECHNOLOGY LLC
12

13              UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

15

16  | IN RE SEAGATE TECHNOLOGY LLC LITIGATION | Case No. 3:16-cv-00523-JCS |

17  **SEAGATE'S REPLY IN SUPPORT OF
    MOTION TO STRIKE AND FOR
18  CONSOLIDATED ACTION**  **JUDGMENT ON THE PLEADINGS**

19                          **Date:**   August 25, 2017
                            **Time:**   9:30 a.m.
20                          **Place:**  Courtroom G
                            **Judge:**  Hon. Joseph C. Spero
21

22                          Second Consolidated Amended Complaint
                            filed: July 11, 2016
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     This Court Should Strike All Allegations and Claims That Have Been Dismissed .............1

III.    Plaintiffs' Should Be Required to Amend Their Claims Under the Consumer Protection Laws Of Florida, Texas, and South Dakota ..................................................3

IV.     The Court Should Grant Judgment on the Pleadings on the Florida, Illinois, New York, Tennessee, Texas, Massachusetts, and California Implied Warranty Claims..............3

      A.      No Exceptions Apply to Florida, Illinois, New York, and Tennessee's Privity Requirements ..................................................................................3

            1.      There Is No Third-Party Beneficiary Exception Applicable to Plaintiffs Under Florida, Illinois, and New York Law ..................................4

            2.      There Is No Applicable "Agency Exception" Under Florida, New York or Tennessee Law....................................................................6

            3.      There Is No "Direct Dealing" Exception Applicable to Plaintiffs Under Florida, Illinois, New York, or Tennessee Law ..................................7

      B.      Manak Did Not Provide (and Cannot Allege) Adequate Notice Under Texas Law ..................................................................................................8

      C.      Plaintiffs Fail to State a Claim Under Massachusetts Implied Warranty Law.........10

      D.      Plaintiffs' Song Beverly Act Implied Warranty Claims Fail Because Plaintiffs Fail to Plead a Defect Extant During the One-Year Warranty Period ................................................................................................11

      E.      Plaintiffs Concede Purchases Outside California Are Not Subject to Song-Beverly ..............................................................................................13

V.      A Choice-of-Law Analysis May Be Conducted, and the Class Allegations Stricken, Where, as Here, Further Development of the Factual Record Will Not Cure the Individual, Predominant Issues Apparent on the Face of the SCAC ..................................13

VI.     CONCLUSION ................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abco Metals Corp. v. J.W. Imports Co., Inc.*
560 F. Supp. 125 (N.D. Ill. Sept. 13, 1982) ........................................................7, 8

*Affiliates for Evaluation & Therapy, Inc. v. Viasyn Corp.*
500 So. 2d 688 (Fla. Dist. Ct. App. 1987)...........................................................4, 8

*Am. Suzuki Motor Corp. v. Super. Ct.*
37 Cal. App. 4th 1291 (1995)...............................................................................12

*Americoach Tours, Inc. v. Detroit Diesel Corp.*
2005 WL 2335369 (W.D. Tenn. Sept. 23, 2005) ...................................................7

*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*
51 A.D. 3d 1114 (N.Y. App. Div. 2008)................................................................7

*Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*
58 N.Y.2d 993 (N.Y. 1983) ...................................................................................7

*Azar v. Gateway Genomics, LLC*
No. 15cv2945 AJB (WVG), 2017 WL 1479184 (S.D. Cal. Apr. 25, 2017) ............14

*Cal. State Elecs. Ass'n v. Zeos Int'l Ltd.*
41 Cal. App. 4th 1270 (1996)...............................................................................13

*In re Carrier IQ, Inc., Consumer Privacy Litig.*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................13

*Catalano v. BMW of N. Am., LLC*
167 F. Supp. 3d 540 (S.D.N.Y. 2016) ....................................................................5

*Caterpillar, Inc. v. Usinor Industeel*
393 F. Supp. 2d 659 (N.D. Ill. 2005) .....................................................................8

*Cooper Paintings & Coatings, Inc. v. SCM Corp.*
62 Tenn. App. 13 (1970) .........................................................................................7

*Daniels-Hall v. Nat'l Educ. Ass'n*
629 F.3d 992 (9th Cir. 2010)...................................................................................9

*Del Castillo v. PMI Holdings N. Am. Inc.*
2016 U.S. Dist. LEXIS 91051 (S.D. Tex. July 13, 2016) .....................................8

*Dixon v. Ford Motor Co.*
2015 U.S. Dist. LEXIS 146263 (E.D.N.Y. Sept. 30, 2015)............................5, 6, 8

*Elmazouni v. Mylan, Inc.*
    220 F. Supp. 3d 736 (N.D. Tex. 2016)............................................................9

*Elward v. Electrolux Home Prods., Inc.*
    214 F. Supp. 3d 701 (N.D. Ill. 2016) ..........................................................5, 7

*Foote v. Green Tree Acceptance, Inc.*
    597 So. 2d 803 (Fla. Dist. Ct. App. 1991)....................................................6

*Forcellati v. Hyland's, Inc.*
    876 F. Supp. 2d 1155 (C.D. Cal. 2012)........................................................14

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*
    2010 U.S. Dist. LEXIS 68241 (D.N.J. July 9, 2010) ..................................11

*Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*
    86 Ill. App. 3d 980 (1980)...........................................................................5

*Frenzel v. AliphCom*
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ..........................................................14

*Gerstle v. Am. Honda Motor Co., Inc.*
    No. 16-CV-04384-JST, 2017 WL 1477141 (N.D. Cal. Apr. 25, 2017), *as modified* 2017 WL 1797810 (June 28, 2017)...........................................14

*Gonzalez v. Reed-Joseph Intern. Co.*
    2013 WL 1578475 (S.D. Tex. April 11, 2013) ...........................................9

*Gusse v. Damon Corp.*
    470 F. Supp. 2d 1110 (C.D. Cal. 2007)........................................................13

*Iannacchino v. Ford Motor Co.*
    451 Mass. 623 (2008).................................................................................11

*Jacobs v. Yamaha Motor Corp., U.S.A.*
    420 Mass. 323 (Mass. 1995) .......................................................................10

*Jensvold v. Town & Country Motors, Inc.*
    162 Vt. 580, 649 A.2d 1037 (1994) ............................................................10

*Leach v. Wiles*
    58 Tenn. App. 286 (1968) ........................................................................7, 8

*Lebel v. Rampage*
    2007 WL 1724942 (S.D. Fl. June 14, 2007) ..............................................6

*Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*
    122 A.D.2d 25 (1986) ............................................................................7, 10

*Mahoney v. Endo Health Solutions, Inc.*
    2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) ..................................7

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*
    21 F. Supp. 2d 593 (E.D. La. 1998) ...........................................................4

*Mazza v. American Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ..............................................13, 14, 15

*McKay v. Novartis Pharm. Corp.*
    751 F.3d 694 (5th Cir. Tex. 2014) .............................................................8

*Mekertichian v. Mercedes-Benz U.S.A., LLC*
    347 Ill. App. 3d 828 (2004) .......................................................................8

*Mesa v. BMW of N. Am., LLC*
    904 So.2d 450 (Fla. Dist. Ct. App. 2005) ...............................................4

*Morgan v. Medtronic, Inc.*
    172 F. Supp. 3d 959 (S.D. Tex. 2016) ....................................................9

*In re MyFord Touch Consumer Litig.*
    46 F. Supp. 3d 936 (N.D. Cal. 2014) .......................................................9

*In re NJOY, Inc. Consumer Class Action Litig.*
    2015 WL 12732461 (C.D. Cal. May 27, 2015) ...................................3, 10

*Ocana v. Ford Motor Co.*
    992 So. 2d 319 (Fla. Dist. Ct. App. 2008) ..............................................6

*Oddo v. Arcoaire Air Conditioning & Heating*
    2017 U.S. Dist. LEXIS 10507 (C.D. Cal. Jan. 24, 2017) .....................12

*Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*
    2016 WL 3390122 (S.D. Fla. June 17, 2016) .........................................4

*Resnick v. Hyundai Motor Am., Inc.*
    2016 U.S. Dist. LEXIS 160179 (C.D. Cal. Nov. 14, 2016) ...................12

*Rhodes Pharmacal Co. v. Cont'l Can Co.*
    72 Ill. App. 2d 362 (1966) .........................................................................5

*Rothbaum v. Samsung Telecomm. Am., LLC*
    52 F. Supp. 3d 185 (D. Mass. 2014) ......................................................10

*Rothe v. Maloney Cadillac, Inc.*
    119 Ill. 2d 288 (1988) ................................................................................8

*In re Rust-Oleum Restore Marketing, Sales Practices & Products Liability Litig.*
    155 F. Supp. 3d 772 (N.D. Ill. Jan. 7, 2016) ..........................................8

*Sanchez-Knutson v. Ford Motor Co*.
   52 F. Supp. 3d 1223 (S.D. Fla. 2014)..................................................................4

*Spiegel v. Sharp Elects. Corp*.
   125 Ill. App. 3d 897 (1984)..............................................................................5

*Stefan v. Singer Island Condominiums Ltd*.
   2009 WL 426291 (S.D. Fla. Feb. 20, 2009) ......................................................3

*Taber v. Rauch*
   22 F.2d 680 (5th Cir. Tex. 1927).....................................................................10

*Todd v. Tempur-Sealy Int'l, Inc*.
   2016 WL 344479 (N.D. Cal. Jan, 28, 2016) ....................................................14

*Vintage Homes, Inc. v. Coldiron*
   585 S.W.2d 886 (Tex. Civ. App. 1979) .............................................................8

*West v. Caterpillar Tractor Co., Inc*.
   336 So. 2d 80 (Fla. 1976).............................................................................4, 8

*Wilcox v. Hillcrest Memorial Park*
   696 S.W.2d 423 (Tex. Ct. App. 1985) ..............................................................9

*Williams v. Yamaha Motor Co*.
   851 F.3d 1015 (9th Cir. 2017)..........................................................................3

*Won Kyung Hwang v. Ohso Clean, Inc*.
   No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013).................14

*Yagman v. GM Co*.
   2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) .................................................12

**Statutes**

810 ILCS 5/2-318 ....................................................................................................5

Cal. Civ. Code § 1791.1(c)............................................................................ *passim*

Cal. Com. Code § 2401(2) ......................................................................................13

Fla. Stat. § 672.318.................................................................................................4

Mass. Gen. L. c. 93A..............................................................................................11

S.C. Code § 39-5-140 .............................................................................................15

Tenn. Code § 47-18-109(a)(1) ................................................................................15

Tex. Bus. & Com. Code § 2.314 ..............................................................................8

Tex. Bus. & Com. Code § 2.607(c)(1) ................................................................8

Tex. Bus. & Com. Code § 2.714(a), cmt. 1 ......................................................10

UCC § 2-318 ....................................................................................................4, 8

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................12

Fed. R. Civ. P. 12 ..............................................................................................15

Fed. R. Civ. P. 23(d)(1)(D) ...............................................................................15

SMRH:483433375.5    SEAGATE'S REPLY ISO MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS

I.    **INTRODUCTION**

The time has come to pare back the pleadings match the claims, if any, that may legally proceed.  The Court previously ruled Plaintiffs may not base claims on implausible factual assertions or generalized claims of reliability, and Plaintiffs concede their failure to amend after the Court's Order Granting in Part and Denying in Part Seagate's Motion to Dismiss the Second Consolidated Amended Complaint ("Order") left the operative complaint replete with claims and allegations that are no longer relevant to any pending legal issue.  Opposition ("Opp.") at 5:5-16.  Plaintiffs nevertheless argue that most such allegations should remain because they are "not immaterial," or provide "context."  Opp. at 5:4, 10.  Plaintiffs fail to establish the materiality of their admittedly superfluous allegations.  The Court should strike the allegations that have been dismissed, including all claims of misrepresentation except those related to AFR and RAID.

With respect to state law consumer protection claims, the Court should require Plaintiffs to replead (if they can) to allege reliance under the laws of Florida, Texas, and South Dakota.  As to their implied warranty claims, Plaintiffs cannot avoid privity requirements under the laws of Florida, Illinois, New York, and Tennessee.  Their belated attempts to rely on exceptions for third-party beneficiaries, agency, or direct dealing fail.  And Texas Plaintiff Manak cannot avoid his failure to provide pre-lawsuit notice.  Plaintiffs fail to state a claim under Massachusetts law because they allege neither personal injury nor that the drives fail to meet a legally required standard.  The Court should not allow Plaintiffs to proceed with their implied warranty claim under California's Song-Beverly Act because they allege no facts to support the existence of an identifiable defect within one year of purchase.  Plaintiffs also concede that Song-Beverly does not apply to purchases where title passed outside California.

Finally, the Court should also strike Plaintiffs' nationwide class allegations for claims brought under California law because those claims will implicate the laws of 49 other states, each with its own legal requirements and remedies.

II.    **This Court Should Strike All Allegations and Claims That Have Been Dismissed**

Plaintiffs concede that the Court may strike claims and allegations that were dismissed, including: (1) paragraphs 281, 408, 445, and 530 to the extent they address affirmative

misrepresentations on which the Court has not permitted plaintiffs to proceed, (2) the express

warranty claims (but not the allegations in the body of the SCAC alleging breach), and (3) some

(but not all) allegations related to "NAS and read error rates."[1]  Opp. at 5, n. 21.  Yet they contend

that most of the misrepresentation allegations should remain, because "[t]he factual allegations

that Seagate now moves to strike are certainly not 'immaterial' to [Plaintiffs' omission] claims"

and "allegations regarding materials the plaintiffs viewed also contribute to the factual backdrop

of plaintiffs' remaining claims."[2]  Opp. at 5:5-8, 13-15.  Plaintiffs do not, because they cannot,

explain ***how*** the dismissed misrepresentation allegations are relevant to their remaining claims.

 The Court permitted Plaintiffs' omission claims to proceed ***only to the extent*** they are tied

to Seagate's alleged AFR and RAID misrepresentations.  Order at 25:3-10.  No other purported

"misrepresentations" support Plaintiffs' omission or misrepresentation claims because they either

"'***constitute 'mere puffery' upon which a reasonable consumer could not rely***'" (Order at 20:23-

21:26), or Plaintiffs failed to sufficiently allege the statements were false (Order at 17:7-14, 19:18-

19, 20:13-4 (Plaintiffs failed to allege facts that would support a conclusion that read error rate,

NAS or AcuTrac representations were false)).  Plaintiffs should not be permitted to retain

allegations that Seagate "lied" to its customers by making general statements of opinion the Court

deemed "'mere puffery' upon which a reasonable consumer could not rely[,]" or statements the

Court ruled Plaintiffs have not plausibly alleged are false.[3]  Order at 17:7-14, 19:18-19, 20:13-4.

---

 [1]  For example, Plaintiffs contend that the allegations of ¶¶ 53, 58 and 67 should not be stricken (Opp. at 5:9-10, n. 19), even though the Court held the alleged misrepresentations in those paragraphs were non-actionable.  Order at 20:23-21:26.  Similarly, Plaintiffs argue that the NAS, read error rate, and/or AcuTrac allegations in ¶¶ 35-38, 44, 53-55, 58, 61-63, 66, 72, 76, 111, 114, 156, 191, 193, 216, 218, 229, 236-238, 289, 357-358, 391, 392, 411, 423, 426, 430, 451, 455, 489, 507, 530, 534, 537, 549, 551, and 554 should not be stricken though the Court dismissed claims based on those alleged misrepresentations.  *Compare* Mot. at 7:20-27 *with* Opp. at 5, n. 21.  They also contend that the allegations about Seagate's alleged breach of express warranty in ¶¶ 10, 12, 122-133, 279, 529 should remain even though Plaintiffs concede the corresponding claims may be stricken.  Opp. at 5, n. 21.

 [2]  Plaintiffs do not argue that the allegations in the SCAC that Seagate breached its express warranty (SCAC ¶¶ 10, 12, 122-133, 279, 529) are necessary or relevant to the remaining claims, yet they refuse to concede those allegations should be stricken.  Opp. at 5, n. 21.

 [3]  *See, e.g.*, SCAC ¶¶ 51-58, 62, 67-71.  Plaintiffs argue these paragraphs should not be stricken, and quite brazenly, that the Court should permit them to allege the statements are "false, misleading, and have a tendency to deceive."  *See* SCAC ¶¶ 81, 139, 143, 166, 168, 191, 194, 215, 219, 228, 230, 280, 282, and others.  Opp. at 5, n. 21.

1   Finally, Plaintiffs should not be able to allege that Seagate breached its express warranty when

2   they do not plead sufficient facts to support such a claim, and the corresponding claims have been

3   dismissed.  Order at 10:15-19.   As previously explained, these are exactly the type of immaterial,

4   impertinent, and scandalous allegations the Court should strike.  Mot. at 8.

5   **III.    Plaintiffs' Should Be Required to Amend Their Claims Under the Consumer Protection Laws Of Florida, Texas, and South Dakota**

6

7   Plaintiffs argue, though they did not plead, that because plaintiffs testified in deposition

8   they relied on alleged misrepresentations about AFR and RAID, these claims should not be

9   dismissed.  While Seagate does not agree reliance is not required or that the omissions alleged in

10   this action alone support claims under Florida, Texas, and South Dakota laws[4] (Claims 9, 13, 14),

11   based on Plaintiffs' recent testimony, it appears Plaintiffs may be able to add facially sufficient

12   allegations of reliance to bring these claims.  They should be required to do so.

13   **IV.    The Court Should Grant Judgment on the Pleadings on the Florida, Illinois, New York, Tennessee, Texas, Massachusetts, and California Implied Warranty Claims**

14

15   **A.    No Exceptions Apply to Florida, Illinois, New York, and Tennessee's Privity Requirements**

16   Plaintiffs concede they lack the requisite privity with Seagate to bring claims for breach of

17   implied warranty under the laws of Florida, Illinois, New York, and Tennessee.  Nevertheless,

18   Plaintiffs contend—incorrectly—they should be permitted to pursue such claims because they

19   meet "exceptions" to the privity requirements.[5]

20

21

22   _____

23   [4]  *See, e.g., Stefan v. Singer Island Condominiums Ltd.*, 2009 WL 426291, at *15 (S.D. Fla. Feb. 20, 2009) (dismissing claims because plaintiff did not rely on allegedly deceptive contractual

24   clause and so could not show *causation* as required by Florida law); *In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *14-15 & n.103 (C.D. Cal. May 27, 2015) (citing

25   *Virgilio v. Ryland Group, Inc*, 680 F.3d 1329, 1338 (11th Cir. 2012)) ("Where an FDUTPA claim is based on an omission, and the defendant had no duty to disclose the purportedly withheld

26   information, the claim fails as a matter of law"); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017) (Texas and Florida consumer laws have same requirements as California).

27   [5]  Seagate recognizes that the statutes of South Carolina and South Dakota were amended after the cases Seagate cited—which was not reflected in the information relating to Seagate's

28   cases—and under the amended statutes, privity is not required.  Seagate withdraws its request for judgment on the pleadings on the South Carolina and South Dakota implied warranty claims.

**1.** **There Is No Third-Party Beneficiary Exception Applicable to Plaintiffs Under Florida, Illinois, and New York Law**

Plaintiffs cite two federal cases in support of their argument that Schechner can bring an implied warranty claim under Florida law though he lacks privity with Seagate. This conclusion is precluded by Florida's **state** courts, which hold "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005); *accord West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 88 (Fla. 1976); *Affiliates for Evaluation & Therapy, Inc. v. Viasyn Corp.*, 500 So. 2d 688, 692-93 (Fla. Dist. Ct. App. 1987).

Furthermore, neither Schechner nor the Florida subclass fall within Florida's narrow third-party beneficiary exception, which is limited to a "natural person who is in the family or household **of his or her buyer**, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume or be affected by the goods." Fla. Stat. § 672.318 (Florida's enactment of UCC § 2-318). Schechner alleges he purchased his drive from "Amazon.com." SCAC ¶ 162. Even if Seagate sold directly to Amazon.com, Florida law would only extend Seagate's implied warranty to family members, guests, employees, and agents **of Amazon.com**—not Schechner, who is none of these. *See In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 600 (E.D. La. 1998) (applying § 672.318, and holding though "it was foreseeable—indeed, inevitable—that the siding would be in the homeowners' possession[,]" homeowners were not third-party beneficiaries under Florida's implied warranty law); *Mesa*, 904 So.2d at 458 (plaintiff who leased car from dealership was not in privity with manufacturer for purposes of implied warranty claim though it was certain she or another consumer would be driving the car). Plaintiffs cannot cite any Florida case where the court expanded the third-party beneficiary definition to include indirect purchasers.[6]

---

[6] The federal cases Plaintiffs rely on do not cite the applicable Florida statute, § 672.318, or any Florida state court cases. *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014), neither analyzed nor applied § 672.318, but instead cited *In re Masonite Corp.* and a California case. *In re Masonite Corp.*, applying § 672.318, held the third-party beneficiary exception **did not** apply to consumers who were not in privity. Similarly, *Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*, 2016 WL 3390122 (S.D. Fla. June 17, 2016), did not apply

-4-

Plaintiffs' argument under Illinois law is likewise flawed.  Under Illinois law, the third-party beneficiary exception applies only to a "natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods."  810 ILCS 5/2-318.  Furthermore, the seller must know the identity of the ultimate beneficiary.  "The law of Illinois is that a third-party beneficiary status may only be conferred where the ***identification of the third party to be benefited is clear and the benefit to him is direct***."  *Spiegel v. Sharp Elects. Corp*., 125 Ill. App. 3d 897, 902 (1984) (mere knowledge product would ultimately be re-sold, without knowing specific purchaser, insufficient to establish third-party beneficiary status).  *Id*. at 902-03.  Plaintiffs rely exclusively on a federal case purporting to interpret Illinois law, *Elward v. Electrolux Home Prods., Inc*., 214 F. Supp. 3d 701 (N.D. Ill. 2016), which relied on two Illinois state cases that are easily distinguishable.  In both, ***the defendant personally knew the identity of the third-party beneficiary*** plaintiff.[7]  Plaintiffs do not allege, nor could they, that Seagate knew Smith's identity when he bought the drives.  He cannot be a third-party beneficiary under Illinois law.

Finally, Plaintiffs cite ***no*** New York case—state or federal—applying a third-party beneficiary exception to the privity requirement outside the personal injury context.  Rather, Plaintiffs cite two federal cases that ***refused*** to apply a third-party beneficiary exception.  That is because "New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic."  *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556-57 (S.D.N.Y. 2016) (rejecting third-party-beneficiary argument because plaintiffs failed to cite any provisions ***from the contract between BMW and its dealers*** to show contract was ***intended to benefit*** plaintiff purchasers).  *Id*.  Similarly, in *Dixon v. Ford Motor Co*., 2015 U.S. Dist. LEXIS 146263, at *17-18 (E.D.N.Y. Sept. 30, 2015), the court dismissed the

---

the Florida statute or Florida case law.

[7]  In *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co*., 86 Ill. App. 3d 980, 992-93 (1980), defendant knew who the sheet tubing was for and personally delivered the product to plaintiff.  In *Rhodes Pharmacal Co. v. Cont'l Can Co*., 72 Ill. App. 2d 362, 372-73 (1966), defendant manufacturer met with purchaser plaintiff to discuss the specific customization of the product.

1  implied warranty claim because plaintiff failed to allege that the contract between the

2  manufacturer and resellers was entered into for ***her immediate benefit***.[8]  Here, in support of their

3  third-party beneficiary claim, Plaintiffs point to Seagate's Limited Warranty to ***consumers***.

4  SCAC, Exhibit F.  This is not a contract between Seagate and ***retailers***, which is the contract in

5  which facts supporting a third-party beneficiary exception must exist.  Accordingly, no third-party

6  beneficiary exception under New York law applies in this case.

> **2.    There Is No Applicable "Agency Exception" Under Florida, New York or Tennessee Law**

9         In the agency context, Florida ***state*** cases reject the notion that an exception would permit

10  consumers to sue a manufacturer in the absence of privity.  For example, in *Ocana v. Ford Motor*

11  *Co.*, 992 So. 2d 319, 326 (Fla. Dist. Ct. App. 2008), the court rejected the use of an agency theory

12  in the manufacturer/car dealer context as a "end-run around Florida's historic privity

13  requirement."  Plaintiff had failed to allege the standard actual agency elements: (1) defendant

14  acknowledged the seller was acting as his agent, (2) acceptance of the agency, and (3) ***control by***

15  ***the defendant over the agent's "day-to-day activities during the course of the agency."***  *Id*.

16  Plaintiff had likewise failed to allege the standard apparent agency elements: (1) representation by

17  the defendant, (2) reliance by a third party on that representation, and (3) change in position by the

18  third party based on that representation.  *Id*. at 326-27.  Here, Plaintiffs cannot allege the elements

19  of actual or implied agency between Seagate and Amazon.  For example, they cannot plausibly

20  allege that Seagate acknowledged Amazon was acting as its agent, or that Seagate controlled

21  Amazon's day-to-day operations.[9]  Thus, even if an "agency exception" existed under Florida law

22  (it does not), it would not apply to Schechner's implied warranty claim.

---

[8] "'Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for his benefit; and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'"  *Dixon*, 2015 U.S. Dist. LEXIS 146263, at *17.

[9] Plaintiffs cite *Lebel v. Rampage,* 2007 WL 1724942 (S.D. Fl. June 14, 2007), which does not cite any Florida case establishing an agency exception.  Rather, *Lebel* cites a case about whether ***notice*** to a seller satisfies a duty to provide notice to a manufacturer.  *See Foote v. Green Tree Acceptance, Inc*., 597 So. 2d 803, 804-05 (Fla. Dist. Ct. App. 1991).  *Foote* does not address whether the seller acts as the manufacturer's agent so as to trigger an implied warranty.

1    Similarly, even if an agency exception existed under New York law, it cannot apply here.[10]

2   Plaintiffs merely point to sections of the SCAC alleging that the sellers were authorized dealers of

3   Seagate.  SCAC ¶¶ 186-187 (Crawford alleges he purchased three drives from authorized retailer

4   "TigerDirect").  However, alleged status as an authorized reseller does not establish agency.  *See*

5   *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp*., 122 A.D.2d 25, 26 (1986) (dealer's

6   claim of authorized agency did not establish privity).

7    Nor do Plaintiffs allege facts supporting an agency exception under Tennessee law.

8   Plaintiffs' lone authority, *Cooper Paintings & Coatings, Inc. v. SCM Corp*., 62 Tenn. App. 13

9   (1970), is inapposite.  In *Cooper*, the distributor handed out brochures touting the fitness of

10  defendant's products; the issue was whether this established an agency relationship making

11  defendant responsible for ***the distributor's*** representations.  *Id*. at 18-19.  Here, Plaintiffs are not

12  alleging ***resellers*** made representations for which Seagate should be responsible.  Moreover, other

13  Tennessee cases make clear privity is required for an implied warranty claim.  *See Leach v. Wiles*,

14  58 Tenn. App. 286, 303 (1968) (privity required unless defect is unreasonably dangerous);

15  *Americoach Tours, Inc. v. Detroit Diesel Corp*., 2005 WL 2335369, at *6-8 (W.D. Tenn. Sept. 23,

16  2005) (affirming *Wiles*).

17      ### 3.    There Is No "Direct Dealing" Exception Applicable to Plaintiffs Under Florida, Illinois, New York, or Tennessee Law

18     Although Plaintiffs propose a "direct dealing" exception to the privity requirement under

19  the laws of four different states, they cite only a single Illinois federal case, and no authority from

20  Florida, New York or Tennessee.  Opp. at 14:6-15:2 (citing *Elward, Inc*., 214 F. Supp. 3d at 701).

21  Furthermore, *Elward* is not supported by Illinois law,[11] and other courts analyzing Illinois law

22

23  _____

24   [10]  The two cases cited by Plaintiffs, *Gordon* and *DiCintio*, appear to be exceptions—
neither cites other New York cases in support of an agency exception.  In contrast, many New

25  York cases require privity for implied warranty claims.  *See, e.g.*, *Mahoney v. Endo Health
Solutions, Inc*., 2016 U.S. Dist. LEXIS 94732, at *13 (S.D.N.Y. July 20, 2016) ("[p]rivity is

26  required for a successful implied warranty claim where only economic damages are alleged");
*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc*., 51 A.D. 3d 1114, 1116-17 (N.Y. App. Div.

27  2008); *Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc*., 58 N.Y.2d 993, 995 (N.Y. 1983).

   [11]  *Elward* found an exception where defendant engaged in marketing ***and plaintiffs
28  alleged they had direct dealings with the manufacturer's agents***.  *Id*. at 705.  *Elward* relied on
two federal cases, *Abco Metals Corp. v. J.W. Imports Co., Inc.*, 560 F. Supp. 125, 128 (N.D. Ill.

1   have rejected a "direct dealing" exception.  *E.g.*, *Caterpillar, Inc. v. Usinor Industeel*, 393 F.

2   Supp. 2d 659, 678 (N.D. Ill. 2005) ("it is far from certain that Illinois permits ***any*** exception to the

3   vertical privity requirement for breach of implied warranty") (internal citations omitted).[12]  In

4   *Caterpillar*, even though the manufacturer custom-built the truck for the plaintiff, the court

5   rejected an implied warranty claim for lack of privity.  *Id.* at 679.  In sum, even if a "direct

6   dealing" exception exists under Illinois law, which is doubtful, it is limited to cases where there

7   are "direct dealings" between the manufacturer and consumer—which did not happen here.[13]

8   **B.      Manak Did Not Provide (and Cannot Allege) Adequate Notice Under Texas Law**

9          Plaintiffs concede that Texas law requires Plaintiff Manak to provide Seagate pre-suit

10  notification ***before*** bringing an implied warranty claim.[14]  Tex. Bus. & Com. Code § 2.607(c)(1);

11  *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 707 (5th Cir. Tex. 2014) (summary judgment

12  granted based on plaintiffs' failure to provide pre-suit notice).  They argue instead that Manak

13  provided and sufficiently alleged notice.  Quite the contrary, Manak provided ***no*** pre-suit

14  notification.  *See* Dkt. 36, May 4, 2016, at ¶¶ 368-384 (Complaint filed ***May 4, 2016*** alleging

15  breach of implied warranty under Tex. Bus. & Com. Code § 2.314).  As Plaintiffs admit in the

16  Sept. 13, 1982), and *In re Rust-Oleum Restore Marketing, Sales Practices & Products Liability
    Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. Jan. 7, 2016).  In *Abco*, the manufacturer's employee was

17  present when plaintiff purchased the product and promised the product would suit plaintiff's
    custom needs.  560 F. Supp. at 128.  In *Rust-Oleum*, defendant engaged in a direct marketing

18  campaign to the plaintiff class.  155 F. Supp. 3d at 807.  Notably, *Rust-Oleum* did not cite any
    state law establishing a direct dealing exception, explain how the states defined that exception, or

19  cite any state case supporting its definition of "direct dealing."

20      [12]  *See Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292 (1988) (claim for implied
    warranty requires privity); *Mekertichian v. Mercedes-Benz U.S.A., LLC*, 347 Ill. App. 3d 828, 831-

21  32 (2004) ("In Illinois, actions for breach of implied warranty of merchantability are governed by
    the (UCC).  In order for a plaintiff to file a claim for economic damages under the UCC for the

22  breach of an implied warranty, he or she must be in vertical privity of contract with the seller")
    (internal citations omitted).

23      [13]  Plaintiffs cite no authority for a "direct dealing" exception under Florida, New York or
    Tennessee law.  Those states recognize only very narrow exceptions to the privity requirement—

24  or none at all—and do not reference a "direct dealing" exception.  *See Leach*, 58 Tenn. App. at
    303 (Tennessee law requires privity except in cases of unreasonably dangerous defects); *Dixon*,

25  2015 LEXIS 146263, at *12-17 (only possible exception to New York's privity requirement is
    third-party beneficiary exception); *Affiliates*, 500 So. 2d at 693 (discussed *supra*).

26

27      [14]  To the extent Plaintiffs rely on *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886 (Tex.
    Civ. App. 1979) for the proposition that they were not required to provide notice, "*Vintage Homes*

28  is no longer good law."  *Del Castillo v. PMI Holdings N. Am. Inc.*, 2016 U.S. Dist. LEXIS 91051,
    at *10 (S.D. Tex. July 13, 2016); *McKay*, 751 F.3d at 707 ("[s]ubsequent cases have noted that
    *Vintage Homes* interpreted a different version of § 2.607").

1    SCAC and in their Opposition, Manak did not send any notification to Seagate until May 5, 2016

2    at the earliest.  SCAC, Exhibit G (showing notice was mailed May 5, 2016); Opp. at 16:2

3    (admitting that notice was sent May 5).[15]  Plaintiffs' pleadings and admissions conclusively

4    establish lack of notice.[16]

5         Plaintiffs also argue that Manak provided the required notice because he returned one of

6    his two drives to Seagate under the express warranty and received a replacement drive.  This is not

7    adequate notice.  First, Plaintiffs cite no Texas case holding that replacement of a product under an

8    express warranty constitutes sufficient notice of a breach of implied warranty claim.  To the

9    contrary, the cases cited by Plaintiffs explain "'the notification must 'be sufficient to let the seller

10   know that the transaction is *still troublesome* and must be watched' and, at the same time, 'be

11   such as informs the seller that the transaction is claimed to involve a breach' and thereby allow for

12   'settlement through negotiation.'"  *Gonzalez v. Reed-Joseph Intern. Co*., 2013 WL 1578475, at

13   *15 (S.D. Tex. April 11, 2013) (citations omitted) (notice adequate where pre-suit accident reports

14   and emails identified the problem and Plaintiffs contact information, and provided an opportunity

15   for settlement).  Manak's replacement of one drive under the terms of the express warranty hardly

16   put Seagate on notice that "'the transaction is *still troublesome* and must be watched[;]'" nor did it

17   allow Seagate to cure the putative breach.[17]  *Id.*

18        Furthermore, Manak's return of his original drive cannot possibly constitute notice for the

19

20        [15]  Plaintiffs claim they adequately allege notice by alleging "Defendant has received
     timely notice regarding the problems at issue in this litigation."  SCAC ¶ 396.  However, ***Manak***
21   does not allege that ***he*** provided notice of ***his implied warranty claim*** prior to filing suit, as
     required.  Mot. at 12, n. 9.  Furthermore, Plaintiffs' general allegation is contradicted by the facts
22   alleged in the SCAC and admitted by Plaintiffs—that notice was sent May 5, 2016 (SCAC, Ex. G)
     ***after*** the filing of Manak's first complaint on May 4, 2016 (Dkt. 36).  *Daniels-Hall v. Nat'l Educ.*
23   *Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required to accept as true
     allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial
24   notice").

25        [16]  *Elmazouni v. Mylan, Inc*., 220 F. Supp. 3d 736, 746 (N.D. Tex. 2016) (dismissing
     implied warranty claims for failure to allege pre-suit notice); *Morgan v. Medtronic, Inc*., 172 F.
26   Supp. 3d 959, 970-71 (S.D. Tex. 2016) (same); *In re MyFord Touch Consumer Litig*., 46 F. Supp.
     3d 936, 998-99 (N.D. Cal. 2014) (same).

27        [17]  *See also* Mot. at 12, n. 9 (citing cases); *Wilcox v. Hillcrest Memorial Park*, 696 S.W.2d
28   423, 424 (Tex. Ct. App. 1985) (notice must "give the seller an opportunity to inspect the product
     to determine whether it was defective and to allow an opportunity to cure the breach, if
     any").

1   simple reason that—having returned the drive and received a replacement—Manak cannot sue for

2   breach of the implied warranty with regard to the returned drive.[18]   Most obviously, Seagate

3   provided him a new drive, and he admits he did not provide notice with respect to drives still in

4   his possession.  *See* Tex. Bus. & Com. Code § 2.714(a), cmt. 1 ("This section deals with the

5   remedies available to the buyer after the goods have been accepted and the time for revocation of

6   acceptance has gone by."); *Taber v. Rauch*, 22 F.2d 680 (5th Cir. Tex. 1927) (buyer could not sue

7   for breach of warranty on goods he had already returned for a refund); *see also, e.g.*, *Jensvold v.*

8   *Town & Country Motors, Inc.*, 162 Vt. 580, 587, 649 A.2d 1037, 1042 (1994) ("because buyers

9   are returning the vehicle for refund of the purchase price, breach of warranty damages, which are

10  acceptance damages, are not applicable." (citations omitted)).  Plaintiffs' pleadings and admissions

11  establish that Manak did not provide pre-suit notification as required by Texas law.

12  **C.      Plaintiffs Fail to State a Claim Under Massachusetts Implied Warranty Law**

13          Plaintiffs oppose Seagate's motion on their Massachusetts implied warranty claim by

14  asserting that they bring a "contract based" implied warranty claim and so they are not required to

15  plead the elements of a "tort based" implied warranty claim.  Opp. at 16-18.  They further contend

16  that for a "contract based" implied warranty claim, they need only plead that the "goods were not

17  'fit for the ordinary purposes for which such goods are used' and thereby caused economic loss."

18  Opp. at 18, n. 114 (citing only federal cases).[19]   That is not the law.  First, although Massachusetts

19  recognizes that ***the "injury"*** in in an implied warranty claim can be economic "damages," *Jacobs*

20  *v. Yamaha Motor Corp., U.S.A.*, 420 Mass. 323, 329 (Mass. 1995), this does not mean a consumer

21  bringing a "contract based" implied warranty claim is excused from pleading ***the other elements***

22  of a 'traditional' implied warranty claim, including a product defect.  Mot. at 13-16.  Plaintiffs

23

24          [18]  Per Seagate's Warranty, Manak ***surrendered ownership*** of the original drive to Seagate,

25  so he cannot sue for breach of implied warranty for that drive.  SCAC, Ex. F ("By sending product
    for replacement, you agree to transfer ownership of the original product to Seagate.").

26          [19]  Massachusetts law treats ***consumer*** and ***commercial*** implied warranty claims
    differently, including imposing a privity requirement in the commercial context.  *Jacobs*, 420

27  Mass. at 330.  Plaintiffs cite one consumer implied warranty case, *Rothbaum v. Samsung*
    *Telecomm. Am., LLC*, 52 F. Supp. 3d 185 (D. Mass. 2014), which holds that problems caused by

28  ***the identified defect***—certain capacitors needing replacement—did not render cell phones
    "unmerchantable." *Id.* at 199-201.  The case did not excuse plaintiff from pleading a defect.

1   have not adequately pled any product defect accepted under Massachusetts law.  *Id.*

2       More importantly, Plaintiffs' argument reveals the insufficiency of their pleading.  The

3   Massachusetts Supreme Judicial Court held—in a case Plaintiffs cite—that under a "contract

4   based" implied warranty claim, *i.e.*, an implied warranty claim where no personal injury has been

5   alleged, plaintiff must allege that the product was defective because it failed to comply with ***a***

6   ***legally required standard***.  The Massachusetts Supreme Judicial Court held:

> Because the term "defect" is conclusory and can be subjective as well, a bare assertion that a defendant, while representing the opposite, has knowingly manufactured and sold a product that is "defective," or suffers from "safety-related defects," does not suffice to state a viable claim. …***Where, as in this case, there is no allegation that the plaintiffs— or indeed anyone else—have suffered personal injury or property damage, the complaint must identify a legally required standard*** *that the vehicles were at least implicitly represented as meeting, but allegedly did not.* ***When the standard that a product allegedly fails to meet is not one legally required by and enforced by the government, a claim of economic injury based on overpayment lacks the premise that the purchase price entitled the plaintiffs to a product that met that standard***.

13  *Iannacchino v. Ford Motor Co*., 451 Mass. 623, 632-33 (2008) (citation omitted);[20] *see also In re*

14  *Ford Motor Co. E-350 Van Prods. Liab. Litig*., 2010 U.S. Dist. LEXIS 68241, at *240-43 (D.N.J.

15  July 9, 2010) (applying *Iannacchino* and holding that plaintiffs' implied warranty claims failed as

16  a matter of law because Plaintiff failed to allege personal injury or non-compliance with a legally

17  required standard).  Plaintiffs neither allege personal injury, nor that the drives fail to meet a

18  legally required standard, so their Massachusetts implied warranty claims fails as a matter of law.

19  **D.    Plaintiffs' Song Beverly Act Implied Warranty Claims Fail Because Plaintiffs Fail to Plead a Defect Extant During the One-Year Warranty Period**

21      California's Song-Beverly Act requires a defect, ***and*** that the defect was present in the

22  product within one year of sale, and severe enough to render the product unmerchantable within

23  that year.  Mot. at 16:22-28.  Plaintiffs have not plausibly pled that a defect existed within one

24  year of sale, because they do not identify any alleged defect in the design or manufacture of the

---

26      [20]  The court held that an implied warranty claim requires the same showing of injury as a
27  c. 93A claim, and where "[a]n implied warranty claim and a c. 93A claim are based on the same
    economic theory of injury and the same set of alleged facts, they should survive or fail under the
28  same analysis." *Id*. at 634-35.  Plaintiffs' implied warranty and Mass. Gen. L. c. 93A claims are
    based on the same theory of injury:  that Plaintiffs were induced to pay for, or paid more for,
    "defective" products than they would have paid had they known of the "defect."

1   drives.  At most, Plaintiffs allege some drives failed within one year of sale for a variety of

2   apparently unconnected reasons.  SCAC ¶¶ 195, 207, 220, 239 (alleging a total of four drives

3   failed within a year of sale).[21]  Otherwise, Plaintiffs allege that third party Backblaze purportedly

4   found that *its* drives failed at "high rates" ***well after*** the one-year window.  SCAC ¶¶ 91-92

5   (alleging that the drives at issue functioned perfectly well for at least two years).  Plaintiffs'

6   problem is that the facts they allege clearly support, and are consistent with, a claim that is barred

7   as a matter of law under Song-Beverly, namely, that the drives ***did not suffer*** from any identifiable

8   defect at the time of sale, but rather wore out after the one-year limitation period, or not at all.

9   SCAC ¶¶ 91-92, 158-160, 202, 211, 220, 223, 230, 232, 239-241, 243, 249-252 (alleging many

10  drives never failed, or failed after long use).  That claim is precluded under Song-Beverly.[22]  Cal.

11  Civ. Code § 1791.1(c).  Plaintiffs do not allege any facts to make their preferred legal conclusion

12  (that a defect existed in the drives at the time of sale) more likely than the legally deficient

13  conclusion (that no defect existed, and the drives just wore out after one year, or not at all).

14  Plaintiffs' allegations do not meet the Rule 8 pleading standard.  *Yagman v. GM Co.*, 2014 WL

15  4177295, at *3 (C.D. Cal. Aug. 22, 2014) (dismissing complaint that "pleads facts that are 'merely

16  consistent with' [D]efendants' liability, [and thus] 'stops short of the line between possibility and

17  plausibility of 'entitlement to relief'").  Without identifying a defect and alleging facts sufficient to

18  draw an inference that the defect existed within the limitations period and rendered the drives

19  unmerchantable, Plaintiffs fail to state a claim for breach of Song-Beverly.[23]

20  

---

21      [21]  Plaintiffs claim they allege "over 30 drive failures experienced by plaintiffs that were
22  ***caused by the latent defect.***"  Opp. at 21.  This assertion is not plausible because the drives
    exhibited different alleged failure modes and symptoms.  Mot. at 18, n.14.  Plaintiffs' theory is
23  like claiming a group of cars all failed due to the same "defect" when some had transmission
    problems, in others the engine over-heated, and others would not start.

24      [22]  *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1298-99 (1995) (putative
    class could not assert breach of warranty claims against car manufacturer where vehicles
25  performed as warranted for duration of warranty); *Resnick v. Hyundai Motor Am., Inc.*, 2016 U.S.
    Dist. LEXIS 160179, *38 (C.D. Cal. Nov. 14, 2016) (the *type* of defect alleged to exist at time of
26  sale must be severe enough to render vehicles unmerchantable); *Oddo v. Arcoaire Air
    Conditioning & Heating*, 2017 U.S. Dist. LEXIS 10507, at *49-50 (C.D. Cal. Jan. 24, 2017)
27  (dismissing because plaintiffs could not plausibly allege any current defect in their HVAC
    systems, only a theoretical imperfection).

28      [23]  The Court did not previously address this question in the context of Song-Beverly,
    which differs from Plaintiffs' other claims in its requirement that a defect rendering the drives

-12-

**E.    Plaintiffs Concede Purchases Outside California Are Not Subject to Song-Beverly**

Plaintiffs do not dispute that all named Plaintiffs but Enders fail to state claims under Song-Beverly because they allege purchases outside California.  *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015) (dismissing Song-Beverly claims where there were "no allegations in the SCAC that any of these Plaintiffs purchased their mobile devices *in California*") (emphasis in original).  Plaintiffs argue Enders sufficiently alleges a purchase subject to Song-Beverly because he was physically present in California when he bought drives ***over the internet*** from Amazon.  SCAC ¶ 223.  This allegation is insufficient, and indeed, underscores the inapplicability of Song-Beverly.  The Song-Beverly Act applies only to sales where ***title to goods passes in California***.  *Cal. State Elecs. Ass'n v. Zeos Int'l Ltd.*, 41 Cal. App. 4th 1270, 1275-77 (1996) (citing Cal. Civ. Code § 1791(n)); *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1113, 1115 (C.D. Cal. 2007); Cal. Com. Code § 2401(2).  When goods are shipped from sellers—like Amazon—located outside California, title passes elsewhere.  Thus, Song-Beverly does not apply.  *Zeos*, 41 Cal. App. 4th at 1277; *Gusse*, 470 F. Supp. 2d  at 1115, n.7.

Plaintiffs rely on cases holding Song-Beverly did not apply where the buyer was outside California and the seller was in an ***unspecified location***.  Opp. at 23:6-8, n. 160.  According to Plaintiffs, these cases mean that if the buyer was in California at the time of purchase, the sale must be subject to Song-Beverly.  Plaintiffs' conclusion is incorrect, as demonstrated by *Gusse* and *Zeos*.  Enders has not sufficiently alleged his purchases are subject to Song-Beverly.

Finally, the Song-Beverly claims of the proposed nationwide Class, as well as all state subclasses other than California, are impermissible and should be stricken.  (*See* Section V below.) The California subclass is not limited to members who purchased drives "in" California within the meaning of Song-Beverly, but impermissibly sweeps in all ***residents*** of California regardless of where title to the drives passed.

**V.    A Choice-of-Law Analysis May Be Conducted, and the Class Allegations Stricken, Where, as Here, Further Development of the Factual Record Will Not Cure the Individual, Predominant Issues Apparent on the Face of the SCAC**

Plaintiffs argue that this court should not address the proper scope of the putative class

unmerchantable must exist within one year of sale.

1    under *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), because "a choice-of-

2    law analysis is premature" and is better reserved for class certification.  Opp. at 23:15, 24:15-19,

3    25:16.  Judge Orrick rejected this precise argument in *Frenzel v. AliphCom*, 76 F. Supp. 3d 999,

4    1007 (N.D. Cal. 2014), because "the principle articulated in *Mazza* applies generally and is

5    instructive even when addressing a motion to dismiss," and "[t]here are cases in which further

6    development of the factual record is not reasonably likely to materially impact the choice of law

7    determination."  Further, where the litigation is "advanced" and "extensive discovery . . . has

8    already been completed . . . it is appropriate to conduct a choice-of-law analysis."  *Todd v.*

9    *Tempur-Sealy Int'l, Inc.*, 2016 WL 344479, at *6 (N.D. Cal. Jan, 28, 2016).  In *Todd*, defendants

10    moved to dismiss a complaint that included twenty-three claims under the laws of eleven states,

11    and discovery had been ongoing for over a year.  *Id.* at 1-2.  The court did at choice-of-law

12    analysis and dismissed with prejudice plaintiffs' nationwide unjust enrichment claim under

13    Kentucky law, finding that 1) "the differences in law between the states involved in this litigation

14    are material[,]" as held by the court in *Mazza*, 2) as in *Mazza*, plaintiffs' claims for unjust

15    enrichment and stemming from the defendant's allegedly false advertising "squarely implicated"

16    the "significant interests" of foreign states "in applying their own laws to Plaintiffs' claims[,]" and

17    3) Kentucky law would impair other states' laws because the state in which money for the product

18    was accepted "has the predominant interest."[24]  *Id.* at 6-7.

19        In contrast to Plaintiffs' authorities, this case has been litigated for over a year and a half,

20    including extensive discovery.  The SCAC and the Opposition demonstrate the variances in state

---

24    Plaintiffs' cases do not support their position that the Court should postpone a choice-
of-law analysis, as they all turned on the fact that such analysis was premature before
discovery.  *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 1477141, at
*4 (N.D. Cal. Apr. 25, 2017), *as modified* 2017 WL 1797810 (June 28, 2017) (choice-of-law
analysis may be conducted on pleading motion where "some discovery has taken place"); *Won
Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *21 (N.D. Cal.
Apr. 16, 2013) (declining to apply choice-of-law analysis until "after the parties have engaged in
discovery"); *Azar v. Gateway Genomics, LLC*, No. 15cv2945 AJB (WVG), 2017 WL 1479184, at
*3 (S.D. Cal. Apr. 25, 2017) ("the Court agrees that *Mazza* can be applied at the motion to dismiss
stage.  However, *in the circumstances of this case*, the Court concludes that it is appropriate to
delay the Court's analysis of the choice of law issue until Plaintiff files a motion for class
certification.") (emphasis added); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D.
Cal. 2012) (declining to reach choice-of-law analysis in "early stage in litigation" because "[u]ntil
the Parties have explored the facts in this case, it would be premature to speculate about whether
the differences in various states' consumer protection laws are material in this case").

laws implicated in this litigation will overwhelm common questions and preclude a finding that common questions predominate. *Mazza*, 666 F.3d at 596. The SCAC includes sixteen claims under the laws of nine states. Six claims were originally pled as nationwide claims, and five of those, claims 1, 2, 3, 5 and 16 are still pending. Those claims under California's UCL, FAL, CLRA, Song-Beverly, and unjust enrichment laws, implicate the consumer protection laws of 49 other states, which have different scienter, reliance, causation, privity, and remedies requirements, *id.* at 591, some of which prohibit class actions, *e.g.*, S.C. Code § 39-5-140 (allowing a consumer to "bring an action individually, but not in a representative capacity"); Tenn. Code § 47-18-109(a)(1) ("Any person who suffers an ascertainable loss of money or property . . . may bring an action individually to recover actual damages"). Moreover, the predominance of individual issues will be compounded by the inquiries required for the nine subclasses pled in the SCAC, including, potentially, whether Plaintiffs' subclasses have viable claims under the implied warranty laws of nine states, and whether one of three potential exceptions to the privity requirement could apply to the claims of four subclasses. Opp. at 10-14.

This Court has the authority under Rule 12(f) and 23(d)(1)(D) to strike class allegations or "require that the pleading be amended to eliminate allegations about representation of absent persons[,]" respectively. Plaintiffs have alleged no facts that would justify the application of California law to a nationwide class of consumers who do not reside in California, purchased their drives outside of California from third-party sellers that may or may not have a presence in California, and were not exposed to any allegedly deceptive statements in California. Given the morass of individual, predominant state law issues apparent on the face of the SCAC, this Court should strike Plaintiffs' nationwide class allegations.

## VI.    **CONCLUSION**

For the foregoing reasons, the Court should grant Seagate's Motion.

Dated: July 12, 2017                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____*/s/ Anna S. McLean*_____
ANNA S. McLEAN
Attorneys for Defendant
SEAGATE TECHNOLOGY LLC