UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | Case No. 16-cv-00523-JCS |
| CONSOLIDATED ACTION | **ORDER REGARDING MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 114 |

## I. INTRODUCTION

Plaintiffs[1] bring this putative class action against Defendant Seagate Technology LLC ("Seagate"), alleging that Seagate misrepresented certain hard drives and delivered defective drives to consumers. Seagate now moves to strike certain claims previously dismissed by the Court and allegations related thereto, to dismiss other claims, and to strike nationwide class allegations. The Court heard argument on August 25, 2017. For the reasons set forth below, Seagate's motion GRANTED in part and DENIED in part.[2] Plaintiffs may amend their complaint to address the deficiencies identified below no later than September 15, 2017.

## II. BACKGROUND

Seagate manufactures and distributes hard drives. 2d Consolidated Am. Compl. ("SCAC," dkt. 62) ¶ 25. Seagate released the Seagate Barracuda 3TB internal hard drive, model number ST3000DM001, in October of 2011. *Id.* ¶ 2. Seagate subsequently released two external 3TB hard drives—the Backup Plus 3TB and GoFlex 3TB—that enclosed the same model number

---

[1] Plaintiffs are Christopher Nelson, Dennis Crawford, Joshuah Enders, David Schechner, Chadwick Hauff, James Hagey, Nikolas Manak, John Smith, and Dudley Lane Dortch IV. Two other previously named plaintiffs have since been dismissed by stipulation: Adam Ginsberg (dkts. 66, 67) and John Smith (dkts. 127, 128).
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

ST3000DM001 hard drives in external casings with external power supplies and USB connectors. *Id.* ¶¶ 2, 47−48. In late 2012 or early 2013, Seagate rebranded the Barracuda 3TB internal drive as the "Desktop HDD" internal drive, but the model number remained the same. *Id.* ¶ 46. According to Plaintiffs, Seagate has continuously and falsely marketed these model number ST3000DM001 "Barracuda" hard drives as "reliable, dependable, and suitable for use in Network Attached Storage ("NAS") and Redundant Array of Independent Disks ("RAID") configurations." *Id.* ¶¶ 3−4. Plaintiffs allege that the Barracuda drives[3] had a "latent, model-wide defect" that caused them to fail at annual rate "as high as 47.2%" and that the drives "are not designed for certain types of home RAID configurations." *Id.* ¶¶ 4, 5. In support of those allegations, Plaintiffs cite reports by online data backup provider Backblaze, Inc. stating that based on Backblaze's experience with a large number of hard drives from Seagate and other manufacturers, the Barracuda drives failed at a significantly higher rate than most other hard drives. *Id.* ¶¶ 82–109 & Ex. E.

The eight named plaintiffs are citizens of eight different states,[4] each of whom purchased at least one Seagate Barracuda hard drive from an authorized retailer. *Id.* ¶¶ 14, 15–17, 19−23, 135−136, 149−50, 162−63, 174−75, 186−87, 211−12, 223−24, 232−33. Each named plaintiff alleges reliance on Seagate's advertising representations and express warranty. *Id.* ¶¶ 137−40, 151−54, 165−67, 176−79, 188−93, 213−18, 225−39, 234−36. Each named plaintiff also alleges that at least one of his Barracuda drives failed under warranty. *Id.* ¶¶ 144, 158, 169, 182, 195−201, 220, 230, 239. Plaintiffs seek to represent a nationwide class of individuals who purchased at least one Seagate model ST3000DM001 or, in the alternative, statewide subclasses of purchasers for each of the states represented by a named plaintiff. *Id.* ¶¶ 264−65.

---

[3] This order uses the terms "drives," "hard drives," or "Barracuda drives" interchangeably to refer to the various Seagate products discussed above consisting of or containing model number ST3000DM001 hard drives.

[4] Nelson is a citizen of South Dakota, Crawford is a citizen of New York, Enders is a citizen of California, Schechner was a citizen of Florida when he purchased Barracuda drives (but is now a citizen of North Carolina), Hauff is a citizen of Massachusetts, Hagey is a citizen of Tennessee, Manak is a citizen of Texas, and Dortsch is a citizen of South Carolina. SCAC ¶¶ 14, 15−17, 19−23. As for the former named plaintiffs who have since been dismissed, Smith is a citizen of Illinois, and Ginsberg is a citizen of California. *Id.* ¶¶ 15, 18.

Plaintiffs' operative complaint asserted claims for breach of express and implied warranty (Claims 4 through 7), violation of California's Unfair Competition Law ("UCL"), False Advertising Law, and Consumer Legal Remedies Act ("CLRA") and the consumer protection statutes of the eight other states of the current and former named plaintiffs' citizenship (Claims 1 through 3 and 8 through 15), and unjust enrichment (Claim 16).

This case was initially assigned to the Honorable Ronald Whyte, but was reassigned to the undersigned magistrate judge upon consent of all parties following Judge Whyte's retirement. On a previous motion by Seagate, the Court dismissed several claims and theories of recovery:

> (1) Plaintiffs' express warranty claims (including to the extent such claims are based on the essential purpose doctrine or the Song-Beverly Act); (2) Plaintiffs' implied warranty claims under the California Commercial Code; (3) Plaintiffs' affirmative misrepresentation claims based on Seagate's statements about the drives' read error rate, NAS capabilities, AcuTrac technology, and general reliability and performance; (4) Plaintiffs' omissions claims based on NAS capabilities and read error rates; (5) all CLRA claims by [then-]Plaintiff John Smith; and (6) Plaintiffs' claims under the "unlawful" and "unfair" prongs of the UCL to the extent that they depend on theories dismissed in the context of other claims.

Order Granting in Part & Denying in Part Mot. to Dismiss SCAC ("MTD Order," dkt. 100).[5]

## III.   ANALYSIS

### A.   Motion to Strike Under Rule 12(f)

#### 1.   Legal Standard

A party may move the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal.

---

[5] *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776 (N.D. Cal. 2017). Citations herein to the Court's previous order refer to page numbers in the version filed in the Court's ECF docket.

2008). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, No. 13-CV-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at 973).

### 2. Timeliness

Rule 12(f) provides that a party may move to strike portions of a pleading "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Here, Plaintiffs filed the SCAC on July 11, 2016, Seagate moved to dismiss on August 5, 2016, and after that motion was denied, Seagate filed its answer on March 24, 2017. Under the plain language of the Rule, because the SCAC required a response, any motion to strike under Rule 12(f) was due before Seagate responded to the SCAC. Seagate first moved to strike on May 26, 2017—more than two months after answering[6]—and refiled its motion to comply with this Court's local rule regarding noticing hearing dates on May 31, 2017.

Rule 12(f) also provides, however, that a court may strike material "on its own," without any time limit for the court to do so. Fed. R. Civ. P. 12(f)(1). Some courts have therefore held that a court has discretion to consider an untimely motion to strike under Rule 12(f). *E.g.*, *United States v. Wang*, 404 F. Supp. 2d 1155, 1157 (N.D. Cal. 2005) (citing *Or. Laborers-Emp'rs Tr. Funds v. Pac. Fense & Wire Co*, 726 F. Supp. 786, 788 (D. Or. 1989); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999)). The Ninth Circuit, however—in a case cited in Seagate's motion, Mot. at 6 n.4—has held that granting such a motion is error:

> The district court struck the counts relating to the qualifications of the new union trustees. The court purportedly acted pursuant to Fed. R. Civ. P. 12(f), which permits the court, in its discretion, to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." *This was error.* The district court has authority under Rule 12(f) to strike a pleading, in whole or in part, only if a motion is made before the moving party has filed a responsive pleading, unless the court strikes the pleading on its own initiative or no responsive pleading is permitted. The district court struck the counts in question upon the motion of the trustees after

---

[6] Because Seagate did not file its motion to strike until well after it filed its answer, the Court need not address whether Seagate's earlier motion under Rule 12(b) constitutes "responding" for the purpose of timeliness under Rule 12(f). The Court assumes for the sake of argument that, for the purpose of Rule 12(f), Seagate responded when it filed its answer.

4

they had already filed their answer to the complaint. Thus, the motion was untimely under Rule 12(f).

*Culinary & Serv. Emps. Union, AFL-CIO Local 555 v. Hawaii Emp. Benefit Admin., Inc.*, 688 F.2d 1228, 1232–33 (9th Cir. 1982) (emphasis added).  The Ninth Circuit went on to hold that, under the circumstances of that case, reversal was not warranted because the plaintiffs failed to object to the untimeliness of the motion before the district court, and because the district court struck claims without prejudice to refiling them in a separate complaint and the error was therefore harmless.  *Id.*

The two district court decisions that Seagate cites for this issue from within the Ninth Circuit fail to acknowledge *Culinary* in any way.  *See Wang*, 404 F. Supp. 2d at 1157 (quoting *Oregon Laborers-Employers* for the proposition that "a party has the right to challenge the legal sufficiency of a defense at any time"); *Or. Laborers-Emp'rs*, 726 F. Supp. at 788 (asserting the same, without citation to authority).  At least one district court decision within the Ninth Circuit has held that, despite *Culinary*, "Rule 1's mandate to construe the Federal Rules of Civil Procedure to achieve a just, speedy, and efficient resolution of the action" grants discretion to consider untimely motions under Rule 12(f).  *In re Mission Bay Jet Sports, LLC*, No. 08cv0146 JM(CAB), 2010 WL 144441, at *3 (S.D. Cal. Jan. 11, 2010); *see also Hochberg v. Lincare, Inc.*, No. CV-07-0031-EFS, 2008 WL 11342786, at *2 (E.D. Wash. Mar. 12, 2008) (considering an untimely motion to strike despite *Culinary*, but denying the motion on the merits).  Yet another district court has denied an untimely motion to strike based on *Culinary*, but in the same decision granted the same relief on its own motion because the pleading at issue failed to comply with a prior order of the court.  *Winnemem Wintu Tribe v. U.S. Forest Serv.*, No. 2:09-CV-1072 KJM KJN, 2013 WL 1325423, at *3–4 (E.D. Cal. Mar. 29, 2013).

Despite district court decisions that have held to the contrary, this Court agrees with the *Winnemem Wintu* court that *Culinary* requires denial of a motion to strike filed after the moving party has answered a complaint.  *See id.*  The Court respectfully disagrees with decisions granting such motions, such as *Mission Bay Jet Sports* and *Hochberg*, that such a result can be squared with the Ninth Circuit's clear statement that granting an untimely Rule 12(f) motion "was error." *Culinary*, 688 F.2d at 1232.  Because Seagate did not move to strike until months after it answered

the complaint at issue, the motion is untimely, and must be DENIED.  The Court nevertheless considers whether the material at issue should be stricken on the Court's own motion.  *See Winnemem Wintu*, 2013 WL 1325423, at *4.

### 3.  Allegations Related to Claims Previously Dismissed

The first category of material in the SCAC that Seagate seeks to strike consists of claims dismissed by the Court's previous order, as well as factual allegations that Seagate contends are solely related to the dismissed claims.  *See* Mot. at 6–8.  Seagate's arguments—that the purportedly "superfluous allegations" risk confusion and "constitute an attempt to smear Seagate" in light of the Court's holding that they were not sufficient to state a claim, *id.* at 7—would apply to virtually any case where a motion to dismiss has been granted as to some but not all claims, a relatively common posture for civil litigation in federal court.  Seagate cites no case where a motion to strike has been granted under similar circumstances, and it is not clear what greater clarity an order striking claims would provide as compared to the previous order dismissing those claims.

Rule 12(f) is intended to promote practical benefits of streamlining litigation and reducing cost, *Whittlestone*, 618 F.3d at 973, not to effect merely "an empty formalism," *see Hernandez v. Balakian*, No. CV-F-06-1383 OWW/DLB, 2007 WL 1649911, at *9 (E.D. Cal. June 1, 2007).  Encouraging a second round of motion practice after a successful motion to dismiss, with no practical effect on the ongoing litigation, runs counter to those purposes.  The Court therefore declines to strike previously dismissed claims and related allegations on its own motion, and would deny Seagate's motion as to that material even if timely filed.

### 4.  Nationwide Class Allegations

Seagate contends that Plaintiffs cannot proceed as a nationwide class on claims based on California consumer protection laws, citing *Mazza v. American Honda Motor Company*, 666 F.3d 581, 594 (9th Cir. 2012).  Mot. at 20–23.  In that case, a putative class action on behalf of car owners and lessees, the Ninth Circuit held that California choice of law principles required applying the laws of each state where a transaction took place, and in light of material differences among those laws, vacated the district court's certification of a nationwide class.  *Mazza*, 666 F.3d

at 594.  Although *Mazza* itself addressed a class certification order, *id.* at 585, some district court decisions have applied it to dispose of putative nationwide consumer class claims at the pleading stage.  *E.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2016 WL 34479, at *6–7 (N.D. Cal. Jan. 28, 2016) (dismissing a putative nationwide class claim under Kentucky unjust enrichment law, and noting that "the advanced stage of litigation" and discovery weighed against waiting until the class certification stage to address the issue); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1006–10 (N.D. Cal. 2014) (dismissing both individual and nationwide class claims with leave to amend for failure to include sufficient allegations to support the choice of California consumer protection laws).  As noted in both *Todd* and *Frenzel*, however, "many others have declined to apply choice of law analysis at the pleading phase, instead deferring the issue until class certification."  *Todd*, 76 F. Supp. 3d at 1007; *e.g.*, *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013); *Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013); *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013).  *Mazza* itself declined to set a strict rule against certifying nationwide consumer classes under California law, instead noting that its holding was based on "the facts and circumstances of [that] case," and declining to express a "view whether on remand it would be correct . . . to certify a class with members more broadly [than only California residents] but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law."  *Mazza*, 666 F.3d at 594.

Even assuming for the sake of argument that the circumstances of this case could support early resolution of the choice of law and nationwide class questions that Seagate raises, these are not the sort of issues that the Court would resolve on its own motion, for a number of reasons.  The split of authority on when and if *Mazza* should be applied at the pleading stage counsels against sua sponte action.  From the perspective of fairness to Seagate, class certification still provides a sufficient opportunity to pursue any objections to the putative class that Seagate failed to raise before filing its answer.  Further, as a matter of efficiency, tacitly permitting post-answer Rule 12(f)(2) motions to strike class allegations under the guise of Rule 12(f)(1) sua sponte action

1    would create yet a third stage at which parties could raise such arguments—in addition to the

2    traditional class certification stage and the pre-answer motions considered in cases like *Todd* and

3    *Frenzel*—thus potentially encouraging piecemeal and redundant motions practice. Accordingly,

4    without reaching the merits of Seagate's arguments and without prejudice to Seagate raising them

5    in a more appropriate posture, the Court declines to strike the nationwide class allegations sua

6    sponte under Rule 12(f)(1). To do otherwise under the circumstances of this case, even if the

7    Court agreed with Seagate's arguments, would be a transparent fiction in violation of at least the

8    spirit, if not also the letter, of the Ninth Circuit's holding in *Culinary*.

9    **B.    Motion for Judgment on the Pleadings Under Rule 12(c)**

10   **1.    Legal Standard**

11   Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment

12   on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R.

13   Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)

14   because, under both rules, a court must determine whether the facts alleged in the complaint, taken

15   as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th

16   Cir. 2012) (citation and internal quotation marks omitted).

17   Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the

18   Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . .

19   shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to

20   relief." Fed. R. Civ. P. 8(a). In ruling on a motion under Rule 12(c), the Court must accept all

21   factual allegations in the complaint as true and view them in the light most favorable to the non-

22   moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

23   Dismissal at the pleading stage may be based on a lack of a cognizable legal theory or on

24   the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901

25   F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations

26   respecting all the material elements necessary to sustain recovery under some viable legal theory."

27   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor*

28   *Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2. Illinois Claims

Seagate's motion challenges Plaintiffs' claim for breach of implied warranty under Illinois law based on lack of privity. *See* Mot. at 10–11. After briefing on the motion was complete, the parties stipulated to dismiss without prejudice John Smith, the only named plaintiff with a purported claim under Illinois law. The parties agreed at the hearing that Smith's dismissal disposes of all claims under Illinois law. The Court therefore DISMISSES all such claims, without reaching the parties' arguments regarding whether Illinois law requires privity and what if any exceptions to such a requirement it recognizes.

### 3. Florida, Texas, and South Dakota Consumer Protection Claims

Seagate moves for judgment on the pleadings on Plaintiffs' ninth, fourteenth, and fifteenth claims—under the consumer protection laws of Florida, Texas, and South Dakota, respectively— on the basis that Plaintiffs have not alleged that the named plaintiffs from each of those states actually saw and relied on the alleged misrepresentations that survived the motion to dismiss—i.e., representations regarding the drives' AFR and suitability for RAID. Mot. at 8–10. Plaintiffs do not dispute that their complaint lacks such allegations, but argue that Florida law does not require a plaintiff to show reliance, none of the states at issue require reliance for claims based on omissions, and regardless, deposition testimony indicates that the three individuals at issue did in fact rely on the representations at issue and Plaintiffs could further amend their complaint to so allege. Opp'n at 6–8. In its reply, Seagate agrees that Plaintiffs could amend and asks that they be required to do so, without meaningfully addressing Plaintiffs' other arguments as to these claims. Reply at 3.

Beginning with the Florida claim, Plaintiffs are correct that the weight of Florida authority

9

does not require a plaintiff to allege reliance in order to bring a claim under that state's Deceptive and Unfair Trade Practices Act.  Seagate cites one Florida appellate decision that restates the trial court's order dismissing a claim with prejudice for a number of independently sufficient reasons, including that the plaintiff "fail[ed] to allege the required elements of her FDUTPA and unjust enrichment claims, including failing to allege that Defendants' alleged wrongs caused her to purchase" the product at issue, without citation to authority.  *Prohias v. AstraZenica Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (quoting the trial court's order).  In affirming, the appellate court stated only that it "entirely agree[d] with" the trial court's ruling, with citations to several cases addressing one of the trial court's other rationales for dismissal, safe harbor based on FDA approval.  *Id.*  In contrast, several more thoroughly reasoned decisions from the Florida appellate courts and the Eleventh Circuit have held that a "party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."  *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016); *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (per curiam); *State of Fla. Office of the Attorney Gen. Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1259 (Fla. Dist. Ct. App. 2007); *State of Fla. Office of the Attorney Gen. Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004).  The Court holds that those cases more accurately reflect the state of Florida law, and therefore DENIES Seagate's motion with respect to Plaintiffs' ninth claim.

As for Texas and South Dakota, Plaintiffs do not dispute Seagate's contention that claims based on *affirmative misrepresentations* under the laws of those states require reliance, and Seagate does not respond to Plaintiffs' argument that claims based on *omissions* need not show reliance on a related affirmative misrepresentation.  Seagate's motion is therefore DENIED with respect to Plaintiffs' fourteenth and fifteenth claims to the extent they are based on omissions, and GRANTED with respect to those claims to the extent they are based on affirmative misrepresentations.  If Plaintiffs wish to proceed on an affirmative misrepresentation theory under the Texas and South Dakota consumer protection laws, they must further amend their complaint to

10

allege reliance by Plaintiffs Nikolas Manak and Christopher Nelson.

### 4. Implied Warranty Claims

Seagate moves for judgment on the pleadings on Plaintiffs' implied warranty claims under the laws of each of the states at issue.

### a. Privity Requirements for New York, Florida, Tennessee, South Carolina, and South Dakota Implied Warranty Claims

Seagate contends in its motion that Plaintiffs' claims under New York, Florida, Tennessee, South Carolina, and South Dakota law fail for lack of privity. Mot. at 10–11.[7] Plaintiffs argue that privity is not required under South Carolina and South Dakota law, Opp'n at 9–10, and that exceptions to the privity requirement apply in the other states at issue, *id.* at 10–15.

Seagate concedes that privity is no longer required (and has not been for some time) for an implied warranty claim under South Carolina and South Dakota law, and withdraws its motion as to those claims. Reply at 3 n.5; *see Gasque v. Eagle Mach. Co., Ltd.*, 270 S.C. 499, 502–03 (1978) (citing S.C. Code § 36-2-318); *Cundy v. Int'l Trencher Serv., Inc.*, 358 N.W.2d 233 (S.D. 1984) (citing S.D. Codified Laws § 57A-2-318). The motion is therefore DENIED with respect to implied warranty claims under the laws of those two states. This order addresses the laws of the remaining three states in turn. For the reasons discussed below, Seagate's motion is GRANTED as to Plaintiffs' New York, Florida, and Tennessee implied warranty claims.

### i. New York Privity Exceptions

Under New York law, "[p]rivity is required for a successful implied warranty claim where only economic damages are alleged." *Mahoney v. Endo Health Sols., Inc.*, No. 15cv9841(DLC), 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016) (citing, *e.g.*, *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 793 N.Y.S.2d 576, 579 (App. Div. 2005)). "It is now settled that no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 504 N.Y.S.2d 192, 193–94 (App. Div. 1986). Plaintiffs

---

[7] Seagate makes the same argument with respect to Illinois law, but the Court declines to address that issue because the stipulated dismissal of John Smith renders it moot.

assert exceptions based on the third-party beneficiary doctrine, agency, and direct dealing.

"A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *Cal. Pub. Emps. Retirement Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35 (2000) (citation omitted). Plaintiffs cite no case holding that the consumer of a mass-market product sold at retail meets this standard as a third-party beneficiary of the contract between the manufacturer and the retailer. To the contrary, courts applying New York law have rejected such claims for lack of citation to "any provisions from the alleged contracts between [the manufacturer] and [retailers] indicating that the class members are intended third-party beneficiaries of those agreements." *E.g.*, *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016). To satisfy this requirement, Plaintiffs offer as an exhibit to their complaint a copy of Seagate's express limited warranty, which states that "[o]nly consumers purchasing this product from an authorized Seagate retailer or reseller may obtain coverage under this limited warranty." SCAC Ex. F. There is no indication, however, that the express warranty is a contract between Seagate *and its retailers*, as opposed to between Seagate and its customers. Under New York law, a warranty of merchantability is implied "in a contract for . . . sale"; it would not necessarily be implied by a limited warranty, with different terms, that is not a contract for sale. *See* N.Y. U.C.C. Law § 2-314(1). That the warranty at issue here by its terms only covers consumers, not retailers, tends to suggest that it is not part of a contract for sale between Seagate and the retailers. Accordingly, although Plaintiffs could assert rights under the express warranty if they plausibly alleged a violation thereof, they cannot assert rights as third-party beneficiaries of New York's implied warranty of merchantability absent some further showing that they were intended as immediate beneficiaries of Seagate's sales contracts with retailers.

Plaintiffs also argue that an indirect purchaser can assert an implied warranty claim against a manufacturer based on the theory that the retailer that sold the product to the consumer was an agent of the manufacturer. Opp'n at 13. Plaintiffs cite two decisions from New York courts:

United States District Court
Northern District of California

*Gordon v. Ford Motor Co.*, 657 N.Y.S.2d 43 (App. Div. 1997), and *Dicintio v. DaimlerChrysler Corp.*, 724 N.Y.S.2d 717 (App Div. 2001), *rev'd on other grounds*, 97 N.Y.2d 463 (2002). The first case, *Gordon*, is a two paragraph memorandum decision that asserts, with no citation to authority, that "privity would exist if the dealerships with which [the] plaintiffs dealt were [the] defendant's sales or leasing agents, and disclosure is needed with respect to the latter possibility." *Gordon*, 657 N.Y.S.2d at 43. *DiCintio* is a slightly longer decision but again includes only a conclusory statement that an agency relationship would establish privity, and cites only *Gordon* as authority. *DiCintio*, 724 N.Y.S.2d at 718. Neither case clarifies what if any allegations the plaintiffs had included that might have suggested an agency relationship.

Here, Plaintiffs cite as supporting agency their allegation that Crawford—the only named plaintiff connected to New York—ordered Seagate hard drives from TigerDirect, "an authorized Seagate retailer." SCAC ¶¶ 186–87; *see* Opp'n at 13 & n.76. New York courts considering claims of agency in an implied warranty context apply general agency principles. *See Lexow & Jenkins*, 504 N.Y.S.2d at 194. An agency relationship generally requires, among other things, a showing that the principal allowed the agent to act for it and had authority to control the agent. *See Aymes v. Gateway Demolition Inc.*, 817 N.Y.S.2d 233, 234 (App. Div. 2006). No factual allegation of Plaintiffs' SCAC in this case plausibly supports the conclusion that Seagate had control over TigerDirect. Plaintiffs therefore cannot proceed on an agency exception to the privity requirement.

Finally, Plaintiffs argue that they are entitled to a privity exception based on "direct dealings" between Seagate and the end users of the hard drives—specifically, that Plaintiffs reviewed Seagate's limited warranty and marketing materials. Opp'n at 14–15. Plaintiffs cite only a federal district court decision from the Northern District of Illinois in support of this theory, and although that case included New York claims (in addition to claims under the laws of several other states), it cites no New York statute or case law indicating that the direct dealing exception is viable under New York law. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab.*

13

1    *Litig.*, 155 F. Supp. 3d 772, 806 (N.D. Ill. 2016).[8]  Absent such authority, this Court declines to

2    break new ground in New York's implied warranty and privity doctrines.  *See Clemens v.*

3    *DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (". . . California courts have

4    painstakingly established the scope of the privity requirement . . . and a federal court sitting in

5    diversity is not free to create new exceptions to it.").

6          Because New York law generally requires privity between a plaintiff and defendant to

7    support an implied warranty claim, and Plaintiffs have not alleged facts supporting any exception

8    to that requirement recognized by the New York courts, Seagate's motion is GRANTED as to

9    Plaintiffs' implied warranty claim under New York law.

10                      ii.   Florida Privity Exceptions

11         "Under Florida law, a plaintiff cannot recover economic losses for breach of implied

12   warranty in the absence of privity."  *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist.

13   Ct. App. 2005); *see also, e.g.*, *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App.

14   2008).  As Seagate notes, Florida has a statutory exception to the privity rule, extending a "seller's

15   warranty whether express or implied" to "any natural person who is in the family or household of

16   his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his

17   or her buyer" who can be expected to use the product, Fla. Stat. § 672.318, which does not

18   encompass Plaintiffs here.  At least one court has recognized, however, that the statute does not

19   prevent the development of other common law beneficiary doctrines.  *In re Masonite Corp.*

20   *Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 599 (E.D. La. 1998) (applying Florida

21   law).  And as a general rule, Florida law allows a non-party to a contract to enforce rights as a

22   third-party beneficiary by alleging and proving: "(1) existence of a contract; (2) the clear or

23   manifest intent of the contracting parties that the contract primarily and directly benefit the third

24   party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting

25   from the breach."  *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016)

26

27   ────────────────────
     [8] Plaintiffs cite a second Northern District of Illinois decision in support of their arguments
28   regarding their now-moot Illinois claim, but that case did not purport to apply any law other than
     that of Illinois.  *See Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701 (N.D. Ill. 2016).

                                              14

(citations and internal quotation marks omitted).

Plaintiffs cite only one case applying the third-party beneficiary doctrine to extend Florida's implied warranty protection to a consumer in comparable circumstances to the claims at issue here. Opp'n at 10 (citing *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014)). *Sanchez-Knutson*, a federal district court decision, relies primarily on the Central District of California's decision in *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010), which based its holding on allegations that indirect purchasers of vehicles, rather than the dealers that resold the vehicles to them, "were the intended consumers" of the vehicles. *Sanchez-Knutson*, 52 F. Supp. 3d at 1234 (quoting *In re Toyota*, 754 F. Supp. 2d at 1185). Neither Plaintiffs' opposition nor the district court's decision in *Sanchez-Knutson* cites any Florida authority holding the third-party beneficiary exception applicable in a consumer products context. In contrast, in the parallel context of whether a purported third-party beneficiary can recover economic damages in a tort action (which also generally requires privity under Florida law), Florida courts have looked to whether the plaintiff is specifically identifiable as a beneficiary. *See Fla. Bldg. Inspection Servs., Inc. v. Arnold Corp.*, 660 So. 2d 730, 731–33 (Fla. Dist. Ct. App. 1995) (surveying Florida case law). The Court is not persuaded that the facts of this case satisfy that standard, where Seagate and its retailers are not alleged to have any expectation that Plaintiff Schechner in particular (the only named plaintiff with a connection to Florida) would end up buying Seagate drives. While it is conceivable that the Florida courts or legislature might at some point expand implied warranty remedies to consumers of products purchased through intermediary retailers, this Court declines to create what would appear, with the exception of a single decision by another federal district court, to be a "new exception[]" to the privity rule established by the Florida courts. *See Clemens*, 534 F.3d at 1024.

Plaintiffs also rely on a theory of agency, citing a district court decision holding that a plaintiff's deposition testimony that he subjectively believed an authorized dealer to be a manufacturer's agent was sufficient to deny a motion summary judgment arguing lack of privity. Opp'n at 13 & n.77 (citing *Lebel v. Rampage Sport Fishing Yachts*, No. 06-61890-CIV, 2007 WL 1724942, at *3 (S.D. Fla. June 14, 2007)). That case relied on a Florida decision reversing a grant

15

of summary judgment, on the basis that the defendant failed to meet its burden under Florida procedure to show the *absence* of an issue of fact as to agency. *See Foote v. Green Tree Acceptance, Inc.*, 597 So. 2d 803, 804–05 (Fla. Dist. Ct. App. 1991).

At least one Florida appellate court has since reached the opposite conclusion to *Lebel*, holding that a plaintiff "cannot execute an end-run around Florida's historic privity requirement by employing principal-agent theory" without establishing the usual elements of agency: "1) acknowledgement by [the manufacturer] that [the retailer] was acting as its agent; 2) acceptance of the undertaking by [the retailer]; and 3) control by [the manufactuer] over [the retailer's] day-to-day activities during the course of the agency." *Ocana*, 990 So. 2d at 326. Despite far more detailed allegations of control in that case than here,[9] the *Ocana* court held that the complaint failed to allege agency because it was "devoid of any allegation of some of the tell-tale signs of a principal-agent relationship, such as the ability of the principal to hire, fire, or supervise dealership employees or dealer ownership," and also failed to allege apparent agency. *Id.* This Court holds that *Ocana* represents a better statement of Florida law than *Lebel*, and that Plaintiffs have not plausibly alleged agency within the meaning of that case.

Plaintiffs also assert a direct dealing exception under Florida law, again based on the Northern District of Illinois's *Rust-Oleum* decision. Opp'n at 14–15. As with New York law, the *Rust-Oleum* decision cites no Florida authority in support of its holding that end users can establish privity, or an exception to privity, by pleading that they reviewed a manufacturer's marketing materials. *Rust-Oleum*, 155 F. Supp. 3d at 806–07. Again, this Court declines to find a new exception to Florida's privity requirement absent some indication that Florida courts have accepted—or would accept—the doctrine on which Plaintiffs rely.

---

[9] "Ocana alleges *merely* that Ford, as the manufacturer, exercises control over: 1) dealer location, size, and number of dealer logos on dealer's premises; 2) prizes given to dealer's employees; 3) number of bathrooms dealer must make available to the public; 4) training and certification of sales and service personnel; and also requires that its dealers 5) use manufacturer-supplied computer software; 6) report vehicle sales and sale details, including name and address of purchaser and related information, to manufacturer; 7) provide warranty service paid for by Ford Motor Company; and 8) afford Ford the right to enter the dealer's business premises to audit the records and operations of the dealership as to sales and service." *Ocana*, 992 So. 2d at 326 (emphasis added).

16

As with the New York claim, Plaintiffs have failed to allege facts plausibly supporting an exception to the privity requirement recognized by Florida courts. Seagate's motion is GRANTED as to Plaintiffs' implied warranty claim under Florida law.

### iii. Tennessee Privity Exceptions

Tennessee law generally requires privity between the plaintiff and defendant to support an implied warranty claim, with an exception for personal injury or property damage caused by an unreasonably dangerous product. *See Leach v. Wiles*, 58 Tenn. App. 286, 305 (1968); *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016 B/V, 2005 WL 2335369, at *8 (W.D. Tenn. Sept. 23, 2005) (citing *Leach*). Plaintiffs do not contend that a third-party beneficiary exception is viable in the context of their Tennessee implied warranty claim, but as with their New York and Florida claims, they argue that exceptions based agency and direct dealing apply. *See* Opp'n at 10–13.

With respect to their agency argument, Plaintiffs cite *Cooper Paintings & Coatings, Inc. v. SCM Corp.*, 62 Tenn. App. 13 (1970), for the proposition "that a dealer can be 'for limited purposes a special agent for of the defendant with authority to make warranties of the quality and fitness of the defendant's products.'" Opp'n at 14 (quoting *Cooper Painting*, 62 Tenn. App. at 18). Seagate is correct, however, that *Cooper Painting* concerned whether a manufacturer could be held liable for a *reseller's* warranties, not whether agency principles support extending privity to indirect purchasers for the purpose of a manufacturer's implied warranty. *See* Reply at 7; *Cooper Painting*, 62 Tenn. App. at 18–19. Regardless, as with the New York and Florida claims, Plaintiffs identify no particular allegations in this case that plausibly establish an agency relationship under Tennessee law. *See generally* Opp'n.

As for direct dealing, Plaintiffs again rely solely on the Northern District of Illinois's *Rust-Oleum* decision, which cites no Tennessee authority for its holding. *See* Opp'n at 14–15; *Rust-Oleum*, 155 F. Supp. 3d at 806–07. The Court once again declines to create exceptions to state privity requirements in the absence of authority from the state at issue. Seagate's motion is therefore GRANTED as to Plaintiff's Tennessee implied warranty claim.

### b. Notice Requirement for Texas Implied Warranty Claim

Seagate moves for judgment on the pleadings on Plaintiffs' Texas implied warranty claim for failure to provide Seagate with pre-suit notice of the alleged defect. Mot. at 11–12. Under Texas law, "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex. Bus. & Com. Code § 2.607(c). "Section 2.607's notice requirement should not be applied stringently," and "[t]he good faith of the buyer is the 'governing criterion' under the section." *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 737 (9th Cir. 1988) (citing, *e.g.*, *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir. 1985); *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 889 (Tex. Civ. App. 1979)); *see also Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 628 (5th Cir. 2001). Nevertheless, "[t]he manufacturer must be made aware of a problem with a particular product purchased by a particular buyer," and filing suit does not itself satisfy the notice requirement. *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 202 (Tex. App. 2003); *see also McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 706 (5th Cir. 2014). "The burden of alleging and proving notice under 2.607(c)(1) is properly placed on the buyer," because the "notice requirement is . . . a condition precedent for a buyer's cause of action." *U.S. Tire-Tech*, 110 S.W.3d at 200. "Notice is ordinarily a question of fact and becomes a question of law 'only where there is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence.'" *Ameristar Jet*, 271 F.3d at 628 (citation omitted). Several cases have submitted the question of notice to a jury. *E.g.*, *U.S. Tire-Tech*, 110 S.W.3d at 200; *Wilcox v. Hillcrest Mem. Park of Dall.*, 696 S.W.2d 423, 425 (Tex. App. 1985); *see also Ameristar Jet*, 271 F.3d at 628 (reversing a determination that notice was timely as a matter of law because that "question[] should have been left to the trier of fact").

The majority of Texas appellate courts have held that this provision applies to claims by indirect purchasers against manufacturers, although one appellate court has held that applies only to claims against an immediate seller, and the Texas Supreme Court has declined to resolve the

/ / /

/ / /

issue.[10] *See McKay*, 751 F.3d at 706–07 (surveying Texas decisions); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014) (same). Plaintiffs do not argue that section 2.607(c) is inapplicable here, and this Court will follow the weight of Texas authority and apply section 2.607(c) to Plaintiffs' claim against Seagate.

Plaintiffs argue that their allegation that Seagate "has received timely notice regarding the problems at issue in this litigation," SCAC ¶ 396, must be taken as true, and meets their burden to allege notice under section 2.607 at the pleading stage. Mot. at 15. But legal conclusions are not taken as true, and the Court holds that assertion too conclusory to satisfy the pleading standard of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Plaintiffs must present sufficient factual allegations to plausibly support the conclusion that they provided timely notice.

Plaintiffs also contend that Manak, the only named plaintiff with a connection to Texas, provided notice in two ways: first, by exchanging a failed drive for a replacement under Seagate's express warranty, and second, by sending a letter to Seagate via certified mail on May 5, 2016— one day after Plaintiffs filed in a related case the first complaint that included Manak as a named plaintiff,[11] but five days before the first complaint to do so in this consolidated action (dkt. 39), and more than two months before Plaintiffs filed the operative SCAC. *See* Mot. at 15–16 (citing SCAC ¶¶ 220–21, 542 & Ex. G).

The Court finds the latter effort—sending a letter to Seagate shortly after commencement of litigation but before filing an amended complaint—sufficient to satisfy Plaintiffs' burden to allege proper notice at the pleading stage. It is true that some cases have framed section 2.607 as requiring "pre-suit notice." *E.g.*, *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 970 (S.D. Tex.

---

[10] The minority decision is *Vintage Homes*, 585 S.W.2d 886. Subsequent cases have criticized *Vintage Homes* on this issue for relying on a secondary source that considered Uniform Commercial Code language different from the Texas statute. *See McKay*, 751 F.3d at 707 (citing *Wilcox*, 696 S.W.2d at 425).

[11] *Ginsberg v. Seagate*, No. 5:16-cv-00612-RMW, ECF Doc. No. 36 (N.D. Cal. May 4, 2016). Given that that case was consolidated with the present case, it is reasonable to consider it the same case for the purpose of whether Manak provided notice before filing suit.

2016); *Massey v. Novartis Pharm. Corp.*, 46 F. Supp. 3d 688, 692 (W.D. Tex. 2014); *see also Wilcox*, 696 S.W. 2d at 424 (holding that section 2.607 bars a claim against "a remote seller or manufacturer who was never even made aware that the product in question was defective and who, consequently, never had an opportunity to remedy the defect to the buyer's satisfaction *before litigation was commenced* or even to inspect the product to ascertain if indeed a defect existed" (emphasis added)).  As far as this Court is aware, however, no case has squarely addressed the issue and explicitly held that notice given in good faith and in a timely manner after discovery of a defect, but shortly after filing an initial complaint, cannot satisfy the statute for the purpose of a subsequent amended complaint.  Although federal district courts have on occasion dismissed warranty claims with prejudice at the pleading stage for failure to provide such notice (*Morgan*, 172 F. Supp. 3d at 970–71; *MyFord Touch*, 46 F. Supp. 3d at 978), at least one court has dismissed such claims without prejudice, providing the plaintiffs an opportunity to cure the defect (*Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 746–47 (N.D. Tex. 2016)).  Absent circumstances where notice given after dismissal would clearly be untimely or lack good faith—issues generally better addressed as questions of fact—this Court finds the latter approach preferable to avoid applying a requirement that is intended as a non-stringent question of good faith (particularly in the context of consumer goods) in such a way as to set a procedural trap for unwary litigants that risks permanent forfeiture of potentially meritorious claims.  Accordingly, consistent with this Court's view that failure to provide pre-suit notice can, in appropriate cases, be cured by notice given after dismissal without prejudice, it follows that notice filed shortly after commencement of litigation but before a plaintiff voluntarily amends the complaint may also suffice.

Aside from the argument that notice was inherently untimely because it postdated Manak's first complaint, which the Court rejects, Seagate does not currently argue that notice was untimely from when Manak learned of the basis for his claim, or that notice was not made in good faith. *See* Mot. at 11–12; Reply at 15–16.  Seagate's motion for judgment on the pleadings is therefore DENIED as to the Texas implied warranty claim.

The parties have not cited, and the Court is not aware of, any case considering whether the submission of a defective product for replacement under express warranty satisfies the notice

1    requirement of section 2.607 for an implied warranty claim. Seagate argues that the return under

2    warranty was not sufficient because it failed to give notice that "'the transaction is *still*

3    *troublesome* and must be watched'" and thus did not allow for "'settlement through negotiation,'"

4    and also that the return could only provide notice as to the particular drive actually returned, and

5    Plaintiffs cannot bring an implied warranty claim based on a product no longer in their possession.

6    Reply at 9 (quoting *Gonzalez v. Reed-Joseph Int'l Co.*, No. 4:11-CV-01094, 2013 WL 1578475, at

7    *15 (S.D. Tex. Apr. 11, 2013) (ultimately quoting a comment to the statute)) (emphasis added by

8    Seagate). Although it is not at all clear that Seagate should have anticipated when it filed its

9    motion Plaintiffs' argument that the warranty return constitutes notice, the briefing has played out

10   in such a way that Seagate's substantive arguments on this point appear for the first time in its

11   reply, thus preventing thorough adversarial briefing of these issues. In light of the Court's holding

12   that Manak's May 2016 letter constitutes notice in advance of the presently operative complaint,

13   and that the timeliness and good faith of that notice are questions of fact, the Court declines to

14   resolve at this time the issue of whether a warranty return can also serve as notice.

15                    **c. Massachusetts Implied Warranty Claim**

16           Seagate moved for judgment on the pleadings on Plaintiffs' implied warranty claim under

17   Massachusetts law on the basis that the Massachusetts implied warranty law tracks other

18   jurisdictions' strict products liability laws, and Plaintiffs therefore must allege a design defect,

19   manufacturing defect, or failure to warn within the meaning of that doctrine. Mot. at 13–16.

20   Plaintiffs argue that Seagate misrepresents Massachusetts law by ignoring the distinction between

21   a tort-based implied warranty claim, which Plaintiffs do not pursue here, and a contract-based

22   implied warranty claim, which does not incorporate the requirements of strict products liability.

23   Opp'n at 16–19. Plaintiffs concede that they must allege a defect, but contend that their

24   allegations regarding the drives' unreliability plausibly supports the conclusion that the drives

25   were defective. *Id.* at 18–19. In its reply, Seagate argues that Plaintiffs must still plead the "the

26   other elements of a 'traditional' implied warrant claim, including a product defect . . . accepted

27   under Massachusetts law," and have not done so. Reply at 10–11 (emphasis omitted). Seagate

28   also argues for the first time in its reply that Plaintiffs' claim fails because Massachusetts only

                                                        21

permits implied warranty claims if either: (1) a product causes personal injury or property damage;

or (2) the product fails to meet a legally required and government-enforced standard.  *Id.* at 11

(citing *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 632–33 (2008)).

Despite citing *Iannacchino* in its opening brief, Seagate failed to raise any argument at that

time that Massachusetts law requires a plaintiff seeking purely economic damages on an implied

warranty claim to allege noncompliance with a governmental standard.  *See* Mot. at 15 n.12.  The

Court does not generally consider arguments raised for the first time in a reply brief.  Seagate is

correct, however, that *Iannacchino* sets forth the following standard:

> Because the term "defect" is conclusory and can be subjective as
> well, a bare assertion that a defendant, while representing the
> opposite, has knowingly manufactured and sold a product that is
> "defective," or suffers from "safety-related defects," does not suffice
> to state a viable claim. See *Schaer v. Brandeis Univ.*, 432 Mass. 474,
> 477, 735 N.E.2d 373 (2000) ("we do not accept legal conclusions
> cast in the form of factual allegations"). See also part 3, *infra*.
> Where, as in this case, there is no allegation that the plaintiffs—or
> indeed anyone else—have suffered personal injury or property
> damage, the complaint must identify a legally required standard that
> the [products] were at least implicitly represented as meeting, but
> allegedly did not. When the standard that a product allegedly fails to
> meet is not one legally required by and enforced by the government,
> a claim of economic injury based on overpayment lacks the premise
> that the purchase price entitled the plaintiffs to a product that met
> that standard.

451 Mass. at 632–33 (footnote omitted).  The court describes that standard in the context of a

claim under Massachusetts General Laws chapter 93A, section 9, *see Iannacchino*, 451 Mass. at

629–34, which creates a cause of action for any person injured by a violation of section 2 of that

chapter, which in turn prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, §§ 2, 9.  But the

court went on to hold that the same standard applied to the plaintiffs' implied warranty claim:

> An implied warranty claim and a c. 93A claim are based on the
> same economic theory of injury and the same set of alleged facts,
> they should survive or fail under the same analysis. In other words,
> in view of the interconnected nature of the plaintiffs' c. 93A and
> breach of implied warranty claims, the reasons that call for the
> dismissal of the c. 93A claim also warrant dismissal of the breach of
> implied warranty claim.

*Iannacchino*, 451 Mass. at 634–35.  It follows that a plaintiff cannot proceed on an implied

warranty claim for economic damages without showing that the product at issue failed to comply with a governmental standard.  *See id.*; *see also Kerin v. Titeflex Corp.*, No. C.A. 13-cv-30141-MAP, 2014 WL 67239, at *1 (D. Mass. Jan. 7, 2014) ("The Supreme Judicial Court has recognized claims for economic injury stemming from a defective product, but only where 'the standard that a product allegedly fails to meet is . . . one legally required by and enforced by the government.'"  (quoting *Iannacchino*, 451 Mass. at 633) (ellipsis in original)).

Although the Court admonishes Seagate for failing to raise this issue earlier, the Court declines to disregard controlling authority from a state's highest court that is directly applicable here and, based on the current allegations, forecloses Plaintiffs' implied warranty claim under Massachusetts law.  Seagate's motion is GRANTED as to this claim, without prejudice to Plaintiffs amending the claim if they can plausibly allege that the drives failed to meet a legally required standard that satisfies the requirements of *Iannacchino*.

### d.  California Song-Beverly Act Implied Warranty Claims

Seagate moves for judgment on the pleadings on Plaintiffs' implied warranty claims under California's Song-Beverly Act on two grounds: (1) that Plaintiffs fail to allege a defect present during the one-year statutory warranty period; and (2) that Plaintiffs fail to allege that they purchased drives in California within the meaning of the statute.  For the reasons discussed below, Seagate's motion to dismiss this claim is DENIED as to Plaintiff Enders, but GRANTED as to the remaining named plaintiffs for failure to allege that they purchased Barracuda hard drives in California.

#### i.  One-Year Warranty

Under the Song-Beverly Act, the "duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . but in no event shall such implied warranty have a duration of . . . more than one year following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code § 1791.1(c).  Seagate argues that because Plaintiffs identify different ways in which their drives failed, because Backblaze purportedly found that many drives functioned well for at least two years, and because many Plaintiffs allege that their drives failed after years of

23

1    use, Plaintiffs do not and cannot plausibly allege that a defect existed during the one-year warranty

2    period.  Mot. at 16–18.

3        In *Mexia v. Rinker Boat Company*, 174 Cal. App. 4th 1297 (2009), a California appellate

4    court rejected a similar argument to that advanced here by Seagate.  There, a boat that plaintiff

5    Mexia purchased in 2003 from defendant Miller, manufactured by defendant Rinker, required

6    repairs in 2005 "'because of defects, nonconformities, misadjustments or malfunctions relating to

7    corrosion in the engine,'" and Mexia returned the boat to an authorized dealer to conduct those

8    repairs.  *Id.* at 1301–02 (apparently quoting the complaint).  The boat nevertheless continued to

9    exhibit similar problems, and despite having given the defendants notice of those problems, Mexia

10   concluded in October of 2006 that the defendants were unable or unwilling to bring the boat into

11   compliance with the implied warranty of merchantability, and thereafter filed suit.  *Id.* at 1302.

12   The Court of Appeal addressed the defendants' argument regarding the Song-Beverly Act's one-

13   year warranty period as follows:

> Rinker and Miller further assert that "the boat was fit for its ordinary
> purpose since Mexia did not seek repair from the defendants until
> over two years from the time of purchase." They appear to argue
> that the delay in seeking repairs after the defect was discovered
> compels the conclusion that the boat was merchantable as a matter
> of law at the time of sale. This argument ignores the distinction
> between unmerchantability caused by a latent defect and the
> subsequent discovery of the defect; *the fact that the alleged defect
> resulted in destructive corrosion two years after the sale of the boat
> does not necessarily mean that the defect did not exist at the time of
> sale.* To be sure, the failure to seek repair until after two years could
> mean, as Rinker and Miller suggest, that the boat was merchantable
> at the relevant time and that the subsequent corrosion was, as they
> contend, a "maintenance issue" not covered by the implied warranty.
> At this stage of the case, of course, there is no evidence in the record
> one way or the other as to whether the alleged defects existed at the
> time of sale (or within the duration period); all we have are
> allegations that we must assume are true. Although the evidence
> produced at later stages of the case could show that the corrosion
> was due to improper maintenance, it is also possible that Mexia can
> present evidence that the corrosion was due to a defect that existed
> at the time of sale but remained latent and undiscoverable for two
> years. Resolution of the issue is necessarily dependent upon the facts
> and, if there be any conflict in the evidence, is a matter for a jury.
> (See *Fry v. Pro-Line Boats, Inc.* (2008) 163 Cal. App. 4th 970, 977,
> 77 Cal. Rptr. 3d 622.) At this point in the proceeding, we cannot
> hold that the boat was merchantable as a matter of law.

28   *Id.* at 1308 (emphasis added).  Although *Mexia* initially received a mixed reception from federal

24

district courts, the Ninth Circuit has held that "[a]bsent convincing evidence that the California Supreme Court would decide the issue in Mexia differently, its rule that § 1791.1 'does not create a deadline for discovering latent defects or for giving notice to the seller,' 95 Cal. Rptr. 3d at 288, must be followed." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015) (reversing a grant of summary judgment against several plaintiffs based on the district court's determination that they failed to present evidence that their vehicles became unmerchantable during the warranty period).

In a parallel state court action against Seagate based on essentially the same allegations regarding Barracuda drives, the Superior Court of California for the County of San Francisco relied in large part on *Mexia* to overrule a demurrer arguing that the plaintiffs did not allege a defect within the Song-Beverly warranty period. *Pozar v. Seagate Tech. LLC*, No. CGC-15-547787, 2016 Cal. Super. LEXIS 5083, at *3–7 (Feb. 10, 2016).

Plaintiffs rely heavily on *Mexia* and *Pozar* in their opposition. Opp'n at 19–22. Strangely, Seagate discusses neither of those cases in its opening brief or reply. Mot. at 16–18; Reply at 11–12. Seagate argues that Plaintiffs have not plausibly alleged a latent defect present during the one-year warranty period because the drives exhibited different failure modes, and it is therefore not plausible that all of the failures were due to a single underlying and preexisting defect. Mot. at 16–18; Reply at 11–12.

Lacking any argument to the contrary from Seagate, the Court finds no basis to distinguish *Mexia* from Plaintiffs' allegations in this case. Like in *Mexia*, Plaintiffs allege that their drives malfunctioned after the one-year period expired, but that the failures arose from a latent defect present during the period. Although it is true that the pleading standard in state court differs from the *Iqbal* and *Twombly* standard applicable in federal litigation, the Court holds—in large part based on the Backblaze reports—that the alleged unusually high failure rate of Barracuda drives renders plausible a conclusion that drives had a latent defect at the time of purchase. Questions such as whether the Barracuda drives in fact failed at a higher rate than other hard drives, whether the different failure modes could arise from a common cause, whether the cause was in fact a latent defect, and whether an increased long term risk of failure would render hard drives

25

unmerchantable are issues of fact not appropriate for resolution on the pleadings.

### ii. California Purchase Requirement

Seagate also argues that Plaintiffs' Song-Beverly Act implied warranty claims fail because Plaintiffs have not plausibly alleged that the drives at issue were "sold at retail in this state," as required by the statute. Mot. at 18–20; Cal. Civ. Code § 1792. Seagate asserts in its motion that "none of the Named Plaintiffs alleges he purchased a drive in California." Mot. at 19. That is false: Plaintiffs in fact allege that Enders, the only remaining named plaintiff located in California, "purchased multiple Internal Barracudas in California." SCAC ¶ 17. Seagate is correct as to the remaining named plaintiffs, however, and as for Enders, the question remains whether his allegation is sufficient.

Seagate cites in the body of its opening brief a line of cases indicating that plaintiffs outside of California who order goods over the internet do not meet the in-state purchase requirement, and in a footnote, a line of cases holding that the question turns on where title passes, meaning that plaintiffs within California who order goods over the internet or by mail from outside California do not meet the requirement. Mot. at 19 (citing *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005), and *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1142 (N.D. Cal. 2010),[12] for the proposition orders by plaintiffs outside California do not qualify); *id.* at 19 n.16 (citing *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1115 (C.D. Cal. 2007), and *Cal. State Elecs. Ass'n v. Zeos Int'l Ltd.*, 41 Cal. App. 4th 1270 , 1277 (1996), for the proposition that the statute looks to where title passes). Seagate's opening brief suggests that the totality of this case law requires a plaintiff who ordered a product over the internet to allege both that the plaintiff was located in California, and that the product shipped from California. Mot. at 19 & n.16.[13] No case so holds.

The Central District's holding in *Gusse* and the Court of Appeal's holding in *Zeos* are the most thoroughly reasoned of the cases Seagate cites. Both look to the statutory definition of a

---

[12] *Vacated in part on other grounds*, 771 F. Supp. 2d 1156 (2011).
[13] In its reply and its arguments at the hearing, Seagate focused on the rule that a sale occurs where title passes.

"sale" ("The passing of title from the seller to the buyer for a price," or a "consignment for sale," Cal. Civ. Code § 1791(n)) and the statutory explanation of when and where title passes (upon shipment if the contract does not require actual delivery, or upon tender at the delivery destination if delivery is required, Cal. Comm. Code § 2401(2)). *Gusse*, 470 F. Supp. 2d at 1113; *Zeos*, 41 Cal. App. 4th at 1276–77. In contrast, *Anunziato* simply asserts without citation that "Annunziato resides in Massachusetts where he purchased the product over the internet. Hence Annunziato's Song–Beverly Act claim fails as a matter of law." *Annunziato*, 402 F. Supp. 2d at 1142. The Court respectfully disagrees with that decision's conclusory assertion. And contrary to Seagate's characterization of *Kowalsky* as "rejecting [the] argument that online sales may be treated as occurring in California because [an] order [was] processed and shipped from California," Mot. at 19, Judge Koh in fact held in that case only that the "geographic limitations of the Beverly-Song Act are not based on the manufacturer's place of business," which was the only connection to California actually alleged in the complaint. *Kowalsky*, 71 F. Supp. 2d at 1155. Although the plaintiff contended at oral argument that the sale occurred in California because it was processed and shipped from California, Judge Koh appears to have disregarded that argument as not reflecting the allegations of the complaint. *See id.* The only other case Seagate cites for the in-state purchase requirement is *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), where Judge Chen held allegations that several plaintiffs reside in California to be insufficient in the absence of allegations that any plaintiff "purchased their mobile devices in California." *Carrier IQ*, 78 F. Supp. 3d at 1107 (emphasis omitted).

In sum, the Court holds that *Gusse* and *Zeos*, both of which were decided on summary judgment, correctly state the rule for what constitutes an in-state purchase for the purpose of the Song-Beverly Act. The Court respectfully disagrees with *Annunziato*'s holding that a plaintiff outside California who orders products over the internet necessarily fails the in-state purchase test. The remaining cases—*Kowalsky* and *Carrier IQ*—hold only that there must be some allegation that the product was purchased in California and that the manufacturer's place of business is not relevant; neither of those cases conflicts with *Gusse* and *Zeos*.

Turning to the allegations here, Seagate argues that Enders cannot meet the applicable

standard because "Amazon.com is based in Seattle, Washington, so title would have presumably passed to Plaintiff Enders there." Mot. at 20 n.16. That assertion goes well beyond the pleadings. Although Plaintiffs allege that Enders ordered drives from Amazon,[14] there is no allegation as to where Amazon's business is based (which also happens to be irrelevant, *see Kowalski*, 71 F. Supp. 2d at 1155), where the drive was shipped from,[15] or whether the terms of the purchase contract called for actual delivery or mere shipment.

The next question is whether such allegations are necessary. The Court holds that, at the pleading stage, they are not. Plaintiffs allege that Enders "purchased multiple Internal Barracudas in California." SCAC ¶ 17. Implied warranty claims are not subject to a heightened pleading requirement, *see* MTD Order at 4, and the allegation that Enders purchased drives in California is sufficiently factual to be taken as true under *Iqbal* and *Twombley*. Seagate's motion is therefore DENIED as to Song-Beverly claims on behalf of Enders. Because there are no allegations that any other named plaintiff purchased drives in California, the motion is GRANTED as to the remaining named plaintiffs' Song-Beverly claims, with leave to amend. *See Carrier IQ*, 78 F. Supp. 3d at 1107.

## IV.    CONCLUSION

For the reasons discussed above, Seagate's motion to strike under Rule 12(f) is DENIED as untimely. Seagate's motion for judgment on the pleadings under Rule 12(c) is DENIED as to Plaintiffs' Florida consumer protection claim in its entirety and Plaintiffs' Texas and South Dakota consumer protection claims to the extent based on omissions, but GRANTED as to the Texas and South Dakota consumer protection claims to the extent based on affirmative representations. The 12(c) motion is also DENIED as to Plaintiffs' South Carolina, South Dakota, and Texas implied warranty claims, but GRANTED as to Plaintiffs' New York, Florida, Tennessee, and

[14] Plaintiffs assert in their opposition that Enders testified at his deposition that he also purchased drives from Newegg Inc., a company purportedly based in California. Opp'n at 23. On the present motion under Rule 12(c), however, the Court's analysis is limited to the allegations of the operative complaint.

[15] If the Court were inclined to take judicial notice of Amazon's business practices absent any allegations on the subject—which, to be clear, it is not—the Court would note that Amazon maintains warehouses throughout the country, including in California.

Massachusetts implied warranty claims.  As for Plaintiffs' implied warranty claims under California's Song-Beverly Act, the motion is DENIED as to Plaintiff Joshuah Enders's claims, but GRANTED as to the remaining named plaintiffs' claims under that statute.  Plaintiffs' Illinois implied warranty claim is DISMISSED in light of the voluntary dismissal of Plaintiff John Smith.

Plaintiffs may further amend their complaint no later than September 15, 2017.  If Plaintiffs choose to file a further amended complaint, they are instructed to omit any allegations related solely to claims dismissed by the Court's previous order, or to claims dismissed herein that they do not intend to pursue.

Seagate has at this point filed two motions attacking the sufficiency of the same complaint. Two bites at the apple are enough.  Seagate may not file any further motion under any subpart of Rule 12 of the Federal Rules of Civil Procedure attacking the sufficiency of Plaintiffs' pleading without leave of the Court, with the exception that if Plaintiffs further amend their complaint, Seagate may file any appropriate motion directed to Plaintiffs' changes to the complaint.

**IT IS SO ORDERED.**

Dated: August 25, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge