Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE JUDGE

IN RE SEAGATE TECHNOLOGY LLC      )
LITIGATION.                       )
_____ )    No. C 16-0523 JCS
                                       Friday, August 25, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        HAGENS BERMAN SOBOL SHAPIRO LLP
        1918 Eighth Avenue, Suite 3300
        Seattle, Washington 98101
    BY: **STEVE W. BERMAN, ESQUIRE**

        HAGENS BERMAN SOBOL SHAPIRO LLP
        715 Hearst Avenue, Suite 202
        Berkeley, California 94710
    BY: **SHANA E. SCARLETT, ESQUIRE**

For Defendant:

        SHEPPARD, MULLIN, RICHTER & HAMPTON
        Four Embarcadero Center, 17th Floor
        San Francisco, California 94111-4109
    BY: **NEIL A.F. POPOVIC, ESQUIRE**
        **ANNA S. McLEAN, ESQUIRE**
        **JOY O. SIU, ESQUIRE**

**Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR
              Official Reporter**

<u>**Friday - August 25, 2017**</u>                                    <u>**9:42 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---oOo---**

    **THE CLERK:**  Calling case number C 16-0523, In re Seagate Technology LLC Litigation.

  Appearances, please.

      **MR. BERMAN:**  Good morning, Your Honor.

      **THE COURT:**  Good morning.  How are you doing?

      **MS. McLEAN:**  Good morning, Your Honor.

      **THE COURT:**  Good morning.

      **MS. McLEAN:**  Anna McLean for the defendant Seagate Technology.

      **MR. POPOVIC:**  Neil Popovic for the defendant.

      **MS. SUI:**  Joy Sui, also for the defendant.

      **MR. BERMAN:**  Steve Berman for the plaintiffs.

      **MS. SCARLETT:**  And Shana Scarlett for the plaintiffs.

      **THE COURT:**  Welcome.

  So we got your latest -- you know, I've got to say that I've had an initial reaction, which my law clerk may have to calm me down from, which was, we're doing a 12(c) motion?  We just did a 12(b) motion on the same complaint.

    So I'm going to rule on everything you asked me to rule on, but let's just take this as a warning for the future.  This is piecemeal litigation.  I have no intention of doing piecemeal litigation.

1    The next significant event is supposed to be class

2  motions.  There will be one of those.  And if you want to take

3  a shot at opposing, you oppose it then.  The plaintiffs will

4  move for class certification, and you get to oppose.  So I

5  don't want cross motions or anything like that.

6    And when we get to summary judgment, there's one summary

7  judgment motion.  Nobody gets to file two summary judgment

8  motions.

9    Now, that's a rule that's honored in the breach because

10  there may be good reasons to do something differently,

11  especially as we get -- you know, flesh out some of the issues.

12  As we get towards summary judgment, there may be some we want

13  to peel off because there's too much to bite in one thing.  It

14  doesn't look like that kind of case to me, but maybe it is.

15  But you have to ask if you want to do more than one.

16    I didn't have very many questions about this.  I have a

17  couple of them which I'll ask, which I think are rather minor.

18    We no longer have an Illinois plaintiff, so I assume I can

19  dismiss the Illinois claims.

20        **MS. McLEAN:**  Yes, Your Honor.

21        **THE COURT:**  Is that right?

22        **MS. SCARLETT:**  Yes, that's correct.

23        **THE COURT:**  Okay.

24        **MS. McLEAN:**  And we would also ask that the Court

25  dismiss the allegations relating to that plaintiff.

1          THE COURT:  No, I'm not doing that.  That's completely

2     unnecessary.  And that's one of the reasons I'm going to deny

3     part of your motion to strike is, if a claim is dismissed a

4     claim is dismissed.  I'm not striking allegations.  You can't

5     dismiss allegations.  I'm dismissing his claim and all the

6     Illinois claims.

7          MS. McLEAN:  Your Honor, if I could just ask a

8     question about that, because there are certain allegations that

9     the plaintiff makes --

10          THE COURT:  Yeah.

11          MS. McLEAN:  -- that none of the other plaintiffs

12     make.

13          THE COURT:  Yeah, well, he's not going to be here, and

14     so he's not a plaintiff anymore.

15          MS. McLEAN:  But to the extent they're using those to

16     try to make a claim of misrepresentation or omission then --

17          THE COURT:  So let me ask you that.  Do you think they

18     can do that?  Do you think that Ms. Scarlett, when she gets

19     there, is going to be able to say to the jury that there was

20     this misrepresentation or omission even though no plaintiff

21     claims it?

22          MS. McLEAN:  Not as to this particular plaintiff, Your

23     Honor.  But my concern is that if those allegations remain in,

24     one, they're prejudicial to Seagate.

25          THE COURT:  No, they're not prejudicial to Seagate.

1  They were there before.  They were there after.  People see

2  them.  Whether I strike them or not, they are there.  They're

3  not prejudicial.

4        **MS. McLEAN:**  Well, in this particular case the

5  plaintiff alleged that he was told things by a Seagate

6  representative, in returning his drive, that were untrue.

7  Those are prejudicial allegations.

8        **THE COURT:**  Of course.  It's a complaint.  Complaint

9  allegations are by their nature prejudicial.

10        **MS. McLEAN:**  Yeah.

11        **THE COURT:**  I've got to tell you, this is what I'm

12  talking about.  This is a completely unnecessary argument.  And

13  it just is make-work for everyone, and it's going to be denied

14  every time.  And don't do it again.

15        **MS. McLEAN:**  Yes, Your Honor.

16        **THE COURT:**  The motion to strike in federal court is

17  an extremely limited remedy.  Extremely limited remedy.  It is

18  not designed and there's no authority for the proposition that

19  it's designed to substitute for failure to state a claim or to

20  strike allegations after a claim has been dismissed.  That's

21  just not what it's for.

22        My view is this motion should have been just all in your

23  12(b) or put it in summary judgment.  But it's a waste of time.

24  It's just a waste of time.  It's an extra step you're making

25  everyone go through.  You're increasing the fees on both sides,

1  and I don't want it.  I don't want it.  I want you to focus on

2  the things that matter.  Those things don't matter.

3      So I know you disagree with me on this, but it's very

4  important that you know my view on it.

5          **MS. McLEAN:**  I understand your view, Your Honor.

6          **THE COURT:**  Okay.  Now, so the other thing which was

7  raised in reply, which I think I need to have people address,

8  regards the Massachusetts implied warranty claim.

9      And the defendants in reply raise the issue that is buried

10  in the language of the -- I don't know how to pronounce that --

11  *Iannacchino* case.  Is that how people are pronouncing --

12          **MS. McLEAN:**  I don't know how to pronounce it, but

13  that's the right case.

14          **THE COURT:**  It's about the scope of the word "defect"

15  under Massachusetts law, and argue with some persuasive force

16  that the plaintiff can't proceed on a warranty claim in the

17  absence of a showing that the product failed to comply with an

18  actual official government standard.

19      And I wanted to give you an opportunity to respond to that

20  because it did seem to me that's what *Iannacchino* -- I'm never

21  going to get it right --

22          **MS. SCARLETT:**  Nor will I.

23          **THE COURT:**  -- says.

24      I will spell it for the court reporter later.

25          **MS. SCARLETT:**  So *Iannacchino* had a very specific set

1    of facts where the plaintiff had alleged a defect that was

2    related to a safety standard.  And the Court held that once the

3    plaintiffs had acknowledged the safety standard was approved by

4    NHTSA, the regulatory agency, that was fatal to their case.

5        *Iannacchino*, however, cited approvingly to *Bay State*

6    *Spray*, which is a case that came out from the Supreme Judicial

7    Court of Massachusetts, the highest court in the land.

8        So it cited that approvingly as a case where you could

9    bring an implied warranty claim for economic loss.  Citing it

10   approvingly does not mean overruling it.

11       And if you also look back at *Jacobs vs. Yamaha Motor*

12   *Corp.*, another Supreme Judicial Court of Massachusetts case,

13   that also allowed for a defective motor claim in a motorcycle

14   that does not have any tethering to a safety standard or did

15   not have any personal injury.

16       **THE COURT:**  So how do you square that -- I mean, the

17   sort of general references to prior case law are not

18   particularly useful.

19       How do you square that with the language that the Court

20   used, which was very particular and said that where there's no

21   personal injury or property damage, quote, the company must

22   identify a legally required standard that the products were at

23   least implicitly represented as meeting but allegedly did not.

24       That doesn't seem to be dependent upon that it is -- in

25   this case, they happened to be trying to meet a standard.  I'm

1    just wondering how you square it with that.

2          MS. SCARLETT:  So plaintiffs' position is that that

3    case was very specific to the facts.  And because the

4    plaintiffs had no theory other than the tethering to the safety

5    standard, that was what was before the Court and that was the

6    ruling of the Court.  And it did not overturn what is decades

7    of case law in Massachusetts allowing an economic loss claim

8    for implied warranty.

9          THE COURT:  Do you want to respond to that?

10         MS. McLEAN:  Yes, Your Honor.

11    *Iannacchino* is a Massachusetts Supreme Court case.  So to

12    the extent the Court referred to prior case law and then

13    articulated a different standard, it's clearly redefining the

14    standard.

15         And the issue is not whether claims for economic loss are

16    permitted under Massachusetts law.  It's clear that they are.

17    But in *Iannacchino* the Court articulated the standard for that,

18    which is, it needs to be based on a legally recognized

19    standard.

20         And the Court in the *In re Ford Motor* case applied that,

21    and that was in 2010.  And those cases remain good law.

22         THE COURT:  And there's also a Massachusetts case,

23    District of Massachusetts case, that seemed to follow the same

24    rule.

25         I just find it -- I understand your position.  I just

1    don't understand how that position can square with the language

2    of the opinion, which does not seem to make that dependent on

3    that the claim is founded on a particular government standard.

4        I just -- the language I read seems to be pretty specific

5    that -- I mean pretty general, not specific, that in any case

6    where there's no allegation of personal injury or property

7    damage, that a government legally required standard must be

8    identified.

9        But I'll go back and take a look at it again.  It seemed

10    to me that the language of the case was inconsistent with your

11    description of what you want the holding to be.

12        That's all the questions I had.  Anyone like to comment

13    on -- I've obviously read everything and have a much too

14    lengthy draft going on.

15        Happy to let you go first.

16        **MS. McLEAN:**  Yes, Your Honor, we would like to address

17    the other points we made in our motion.  I understand Your

18    Honor is inclined not to entertain them, but give me a chance.

19        There are actually three levels to this motion.  So to the

20    extent the Court is concerned about piecemeal litigation, the

21    first two levels are not piecemeal litigation.  Admittedly, the

22    third level we did find some additional legal issues we want to

23    raise.

24        **THE COURT:**  That's the part I'm going to rule on.

25        **MS. McLEAN:**  Right, right.  But we have two other

1  levels --

2          **THE COURT:**  Yeah.

3          **MS. McLEAN:**  -- that I think the Court should address

4  now, regardless of whether it feels the duty to address the

5  other legal issues that we've raised for the first time.

6      But -- and I'd appreciate it, Your Honor, if I could

7  approach and provide Your Honor a demonstrative.

8          **THE COURT:**  Okay.  Demonstrative on a 12(c) motion.

9          **MS. SCARLETT:**  Your Honor, just to note, this is the

10  first time plaintiffs are seeing the demonstrative of

11  approximately a hundred pages.

12          **MS. McLEAN:**  Well, this is your complaint so --

13          **THE COURT:**  Red line of the complaint.

14          **MS. McLEAN:**  -- shouldn't be unfamiliar.

15      What I've done here is just shown the areas in which the

16  plaintiffs agree in footnote 21 in their brief that they will

17  amend to delete.  So those are the yellow areas.

18      The red areas are the areas where we believe the Court

19  ordered, in its prior order of February 9th, that they cannot

20  proceed on those claims and allegations --

21          **THE COURT:**  Correct.

22          **MS. McLEAN:**  -- as well.

23          **THE COURT:**  And they don't -- they didn't file an

24  amended complaint.

25          **MS. McLEAN:**  Right.  You know, I understand Your

1   Honor's feelings on that, but I think it is going to cause

2   problems because plaintiffs are taking the position, as you saw

3   in their brief, that they can proceed on broader claims of

4   omissions than the misrepresentation claim the Court gave them

5   permission to proceed on.

6       And it's our view, based on page 25 of the Court's order,

7   that the omissions claims are equally circumscribed to the AFR

8   and RAID issues, as are the misrepresentation claims, and that

9   to the extent the plaintiffs are arguing they have some broad

10  omission claim as to other issues, those have been dismissed.

11      So that's the red in the demonstrative.

12      And then the blue are the additional allegations that we

13  ask be stricken per this motion, which are the new legal

14  issues.

15      So if the Court is going to do nothing else, we would ask

16  that it look at those first two levels and clarify its order to

17  the extent that it is not permitting omissions claims to

18  proceed without a link to the alleged misrepresentations.

19      The Court referred to the Massachusetts case.  We believe

20  there are also some additional legal issues that should be

21  addressed at this stage.  We have plaintiffs from a number of

22  states that have different requirements, such as privity, for

23  their implied warranty claims.

24      And, indeed, the implied warranty claim is the central

25  claim of their case.  They're seeking a nationwide class under

1    Song-Beverly, and they're also seeking statewide classes under

2    these different laws.

3        And we've cited authority in our papers, Your Honor, as to

4    Florida, New York, Tennessee, that the privity requirements of

5    those states cannot be met here.

6        And plaintiffs have attempted to shoehorn their

7    allegations under certain exceptions such as third-party

8    beneficiary and agency and direct dealing.  But we believe the

9    law is clear in those states that the allegations here do not

10   permit those exceptions to apply to a claim of implied warranty

11   under the facts here.

12       The issue of authorized retailers is not sufficient to

13   have a third-party beneficiary or an agency.  That's their main

14   claim.  They tried to get around privity by saying we have

15   authorized retailers.

16       There's several cases that we cited in our papers that --

17   you know, the *Mesa* case in Florida -- that reject such an

18   attempt to plead around privity.

19       All of the New York cases, even ones plaintiffs cite,

20   reject that attempt to plead around privity.  And the Tennessee

21   court only allowed an exception where it was a communication

22   from the reseller to the plaintiff rather than a communication

23   from the reseller to the manufacturer, which is what they're

24   alleging here.

25       So we would ask that the Court reach those issues.  Those

1  are pure legal issues.  The law is clear.  And that would help

2  to narrow the complaint for purposes of discovery and for

3  purposes of class certification.

4      **THE COURT:**  Well, I'm going to reach the issues.  The

5  issue that is contained in those, which you may have meant

6  to -- or maybe you did reference it, is the -- I mean, there

7  are sort of two -- another set of allegations which you want

8  stricken as nationwide class allegations.  And that's a

9  close -- I mean, that's a procedural question that we've all

10  wrestled with as to what stage to do it.  I generally don't do

11  it at this stage of the case because I feel like I don't know

12  enough to do it.

13      But I'm definitely going to rule on the new legal issues

14  that you raise under 12(c).

15      **MS. McLEAN:**  Okay.  Well, I appreciate that, Your

16  Honor.  And those -- we do believe the law is clear with

17  respect to those privity requirements in those states.

18      And the law is also clear that they failed to meet the

19  Texas requirement of prior notice before filing suit.  They

20  admit that.

21      **THE COURT:**  Yeah.

22      **MS. McLEAN:**  That's an easy one.

23      In terms of --

24      **THE COURT:**  What is that?  I guess I don't understand

25  that.  Notice requirements are usually never permanently fatal.

1        **MS. McLEAN:**  This is Texas.

2        **THE COURT:**  They are even not permanently fatal in

3   Texas.  It's a unique place, I grant you that, but they are not

4   usually permanently fatal.

5     So I dismiss it without prejudice to reassert it once

6   you've given notice.  They have already given notice.  I don't

7   know why I would jump through that hoop.

8        **MS. McLEAN:**  Well, they didn't give notice before

9   adding Mr. Manak to the complaint and adding a Texas claim.

10  I'm unaware of any authority --

11       **THE COURT:**  So I dismiss it.  But they've now given

12  notice.

13       **MS. McLEAN:**  Right.  But I don't -- I'm not aware of

14  any case that plaintiffs have cited or that exists in Texas

15  where that's a permissible maneuver.

16       **THE COURT:**  So you think once they don't give notice

17  and sue, they are forever barred?

18       **MS. McLEAN:**  Right.  That's the idea, is that the

19  defendant is supposed to have an opportunity to cure.  And the

20  claim is that he gave notice by returning his drive pursuant to

21  the warranty, where obviously the defendant did cure in that

22  case.  So there's no claim of notice there.

23     Then the second drive --

24       **THE COURT:**  The second drive, yeah.

25       **MS. McLEAN:**  -- that he returned he gave no notice

1    for.  He just didn't return it.

2            THE COURT:  Right.

3            MS. McLEAN:  And so there was no notice in that case.

4            THE COURT:  It just seems to me an odd result that he

5    doesn't give notice, he files a lawsuit, and the remedy is he's

6    permanently barred from filing a lawsuit.  Because if he gives

7    notice the next time, that gives the defendant an opportunity

8    to cure.  And why shouldn't he be able to refile after a

9    notice?

10           MS. McLEAN:  Because the defendant is supposed to be

11   able to make the plaintiff whole so that he doesn't have a

12   problem anymore.

13           THE COURT:  No, no.  I mean, I'm saying -- I'm just

14   trying to figure out practically how this works.

15       So I dismiss the case, Texas claim.  They give notice.

16   They have already given notice, but say they haven't.  They

17   give notice.  The defendant has an opportunity at that point to

18   do it.  An opportunity to cure right then.  They don't take

19   advantage of it.  Then he can sue; right?

20           MS. McLEAN:  That's my understanding if they reject

21   the offer.

22           THE COURT:  Well, they don't have to do anything.

23   There's no requirement of rejection.  There's just a

24   requirement of notice.

25           MS. McLEAN:  I'm not sure about that, Your Honor.

1      **THE COURT:**  I am.  So they give notice.  And then so

2  the legally required opportunity is there.  They can sue.

3      So why would I jump through that hoop since they've

4  already given notice?

5      **MS. McLEAN:**  They gave notice after filing suit.

6      **THE COURT:**  Yeah.

7      **MS. McLEAN:**  They can find another Texas plaintiff,

8  perhaps, and do that.  But I don't think Mr. Manak can file a

9  lawsuit given the way this was -- the order in which this

10  proceeded.

11      **THE COURT:**  Okay.  I appreciate the argument.  I just

12  think it stretches too much.

13      I'm a little bit troubled by your description of the

14  omissions claim because what I said, and I pulled out the case,

15  my order is what I said, and what I meant was that certain

16  subjects were not plausibly alleged as an omission.  And I

17  think I was pretty specific about this.

18      They have not plausibly alleged representations regarding

19  the drive's NAS capabilities or the error read rates.  And they

20  have not plausibly alleged that you withheld, therefore,

21  relevant information on those subjects.  What I did say -- and,

22  therefore, the motions with respect to omissions was granted.

23      But the other categories are sufficient in 285.  Look at

24  it.  I said were sufficiently tied to the representations

25  regarding -- I did allow the AFR and RAID capabilities.  That's

not quite saying omissions regarding the specific AFR.  There's
a series of omissions that I allowed through.

Do you disagree with that way of thinking about it?

MS. McLEAN:  No, we don't disagree with it, Your
Honor.

THE COURT:  Okay.  That's what --

MS. McLEAN:  We specifically look at page 25 of Your
Honor's order --

THE COURT:  Right.

MS. McLEAN:  -- where you say, "In light of these
holdings, the Court need not determine whether Seagate would
have an independent duty to disclose any of the information it
issued beyond that duty triggered by its alleged affirmative
misrepresentation."

So to the extent there's a duty triggered by affirmative
misrepresentations of RAID or NAS capability, we don't dispute
that the plaintiffs can proceed on those allegations.

It's the broader allegations that plaintiffs seem to be
arguing in footnote 21 of their brief that they can still
proceed on that trouble us.  And we would ask the Court to
clarify that.

THE COURT:  I think it's clear 285 has a series of
omissions; right.  And the omissions that I was not going to
allow are the ones that I specifically identified: omissions
regarding the drive's NAS capabilities and error read rates.

1    So there is -- let me take a look at this.  I'll have to

2    look at this.

3        MS. McLEAN:  The problem is, Your Honor, these --

4    these other allegations in here, under one, the drives are not

5    reliable or dependable, their position is they can still

6    proceed on those allegations on an omissions claim.

7        THE COURT:  Yeah.  I think they probably can.

8    What I took out is the NAS allegations and the error read

9    rate allegations.  The other ones I thought were sufficiently

10   tied to the misrepresentation.

11       I suppose it depends where you go with them.  It depends

12   where you go with them.  As allegations, they seem sufficiently

13   tied to the lack of capabilities and the errors that the

14   plaintiffs encountered.  But it may be that it depends on

15   exactly what you're talking about.

16       MS. SCARLETT:  May I address this just briefly?

17       THE COURT:  Yeah.

18       MS. SCARLETT:  So I think the issue the plaintiffs

19   have are, for example, the defendants are asking for paragraph

20   54 to be struck, which refers to the Barracuda drive.

21       But if you look at Exhibit B, which is where the language

22   comes from, this is all found in the same documents.  The AFR

23   rates are on, you know, page 2.  The Barracuda stuff that's

24   quoted in paragraph 54 is found on the first page.

25       THE COURT:  Do this again.  I was districted.

1          **MS. SCARLETT:**  Sure.

2      You know, I think that Anna was saying the purpose of this

3  motion to strike was narrow for discovery or class

4  certification.

5      And I think that the difficulty that presents for us, the

6  plaintiffs, are many of these statements are all found in the

7  same advertising material and marketing material from the

8  defendants.

9      And so there will be no narrowing in terms of the

10  discovery or class certification when, for example, Exhibit B

11  has the language of the Barracuda drive that they're asking to

12  be struck, which is found in paragraph 54.  But it also

13  includes the AFR, the annualized failure rate that the Court

14  upheld, which will not be struck from the complaint.

15          **THE COURT:**  Yeah.  And that's not my concern.

16          **MS. McLEAN:**  That's not our concern either, Your

17  Honor.

18          **THE COURT:**  Doesn't sound like it's their concern.  It

19  is, what is left of paragraph 285?  That's their concern.

20      And my view is that everything is left in 285 except the

21  references to the NAS and the read error rates.

22      Now, what does that mean?  Does that mean you could find

23  any model-wide defect or that you could find any lack of

24  reliability?  No, it doesn't mean that.  But I don't have to

25  deal with that, and I'm not going to deal with that on this

1    record at this stage.

2        What I've said is that those things, those things are

3    still in the case to the extent that the affirmative

4    disclosures trigger a duty to disclose.  And so that's a fairly

5    confined subject matter.

6        Now, I don't know enough about what that means -- you guys

7    know much more than I do -- to really know what that means.

8    But it's a -- it's not any possible defect or any possible

9    reliability problem.  But we'll get into that.  We'll get into

10   that.

11       I'm sure we're going to get into that on class

12   certification and certainly on summary judgment.  But I don't

13   think I can define it more particularly than I already have on

14   the motion to dismiss.

15       **MS. McLEAN:**  We understand, Your Honor.  I think Your

16   Honor's comments will probably help both parties understand how

17   to proceed.

18       **THE COURT:**  Okay.  And then I'll probably think about

19   it again and come up with some other way of thinking about it.

20       Okay.  I'm sorry.  I interrupted the flow of your

21   argument.

22       **MS. McLEAN:**  So on the latent defect issue, I

23   understand this is a complex issue.  But we're now a year and a

24   half into the litigation.

25       Plaintiffs do not plead and chose not to amend their

complaint to plead any more evidence of a defect than they
already have, which is still based exclusively on the Backblaze
website allegations.

     And we believe the law is as clear as it can be, is
plaintiffs have to do more.  They have to do more to identify a
defect in their pleading.  Certainly at this stage they should.

     And, you know, the *Mexia* court and the courts applying
*Mexia* -- we cite a number of them in our brief -- they require
that the plaintiffs identify a defect in their pleading.

     The defect doesn't have to manifest until after the
Song-Beverly one-year statutory period, but it has to be there.
And they have to allege what it is.

     So we believe under both Massachusetts and California law,
under Song-Beverly, that plaintiffs have not done enough here
and that the allegations that they do have, in fact, militate
against a finding of a common defect.  Such as in our motion in
footnote 14, we summarize the plaintiffs' allegations of all
the symptoms that they say occurred with their drives.  And
there's really no common thread running through them.

     So we believe, based on the current record, the implied
warranty allegations are insufficient to survive the one-year
statutory period under *Mexia*.

          **THE COURT:**  Let me ask you what you mean by that.  Do
you mean they have to have identified the cause?

          **MS. McLEAN:**  They have to have at least identified a

1    common mechanism, is my understanding of the case law.

2          **THE COURT:**  Common mechanism.  I'm not sure what that

3    means in this context.

4          **MS. McLEAN:**  Well, one of the cases, *Yagman*, talks

5    about it.  And they talked about common symptoms or mechanism.

6        So they don't have to know the exact scientific cause,

7    shall I say, but my understanding of the case law is they have

8    to allege some common mechanism so that the Court and the

9    parties know what the discovery is about.  And at this point,

10   they have not done that.

11       So we would ask the Court --

12         **THE COURT:**  So if they say something like the read

13   error rates are A, B, and C -- well, that's not where we are

14   going.  Where the AFRs or the RAID capabilities don't function,

15   that's not a common mechanism?  That's not a common enough

16   symptom?

17         **MS. McLEAN:**  If their plaintiffs could allege that.

18   But they haven't.  Their plaintiffs allege completely different

19   mechanisms and completely different -- certainly when they've

20   been deposed, obviously this is outside the record, but they

21   have described completely different circumstances under which

22   their drives failed.

23       So if they could do that, that might be sufficient.  But

24   based on the current complaint, they have not done that.

25         **THE COURT:**  Uhm.  This is an issue that will come up

1    again on class certification, I assume.

2             **MS. SCARLETT:**  Certainly, Your Honor.

3             **THE COURT:**  And will be a problem for you, I assume.

4             **MS. SCARLETT:**  Or it will be addressed by an expert at

5    the time, which will then describe the cause and the mechanism.

6             **THE COURT:**  Okay.  And so it's a matter of what you

7    needed to put in the pleading.

8             **MS. McLEAN:**  The other issue we wanted to raise, Your

9    Honor, was the issue under Song-Beverly of the drives having to

10   be purchased at retail in California.

11        We believe that the allegations are clear that Mr. Enders

12   did not or he does not allege that he did.  Mr. Enders is the

13   only California plaintiff, and he's seeking through himself to

14   apply the Song-Beverly Act nationwide.

15        So at a minimum we think that the nationwide allegations

16   need to be stricken.  But as to his claim in particular, the

17   law is clear that a sale at retail in this state means the time

18   when title passes from the seller to the buyer, and that that

19   is an individual consideration based on the contract terms in

20   which the plaintiff's transaction took place.

21        So to the extent Mr. Enders -- he alleged he bought his

22   drive from Amazon, and he testified he bought his drive from

23   New Egg.  But whoever he bought it from, he needs to allege the

24   terms of that transaction and when title passed.  And the --

25            **THE COURT:**  Why does that -- he says he bought it in

1  California.  I appreciate that that's a fairly general

2  allegation.  Why does he need to do that as a pleading matter,

3  go beyond that to the details of how he bought it in

4  California?

5         MS. McLEAN:  Because he didn't buy it in California.

6         THE COURT:  If title passed because delivery wasn't

7  included, or whatever the standard is, when it was mailed from

8  California, then there may be a (inaudible) in California.

9         MS. McLEAN:  Well, then he should allege that.

10         THE COURT:  That's my question.  Why does he have to

11  allege that for the pleading?

12         MS. McLEAN:  Well, because if he doesn't have a claim,

13  then the Song-Beverly claim disappears from the case.

14         THE COURT:  I understand that.  But the question is

15  why it has to be alleged in the pleading.  Lots of people don't

16  have claims.  We figure that out during summary judgment.

17      The other question is, what are the facts of the case?  I

18  mean, does anybody know?

19         MS. SCARLETT:  He has been deposed.  He purchased 16

20  drives during the class period.  At least a couple of those

21  drives were from New Egg, which is a California company.  This

22  is outside the pleadings, but those are the facts that he

23  testified to.

24         MS. McLEAN:  And that's not the standard under the

25  case law.

1    **THE COURT:**  Right.  Just purchasing from a California

2    company is not the issue.  It is when title passes.

3    **MS. SCARLETT:**  Which he's here in California.  It was

4    purchased in California.  And title passed in California.

5    **THE COURT:**  He is in California?

6    **MS. SCARLETT:**  He purchased the drives in California.

7    **THE COURT:**  While he was in California?

8    **MS. SCARLETT:**  Right.

9    **MS. McLEAN:**  That's not the standard, Your Honor.

10   It's where the title of the product that was purchased passed.

11   So if he ordered it from New Egg in California, you have

12   to look at the terms of service with New Egg as to what their

13   shipment terms are.

14   **THE COURT:**  What if they're in California and he's in

15   California?

16   **MS. McLEAN:**  If he can establish that New Egg's terms

17   of service provide that it's a destination contract -- which is

18   unusual under the *Zeos* case.  They're actually mostly shipment

19   contracts.  But if he can plead that he has a destination

20   contract that required Amazon or New Egg to get the drive to

21   him in California, then title passed in California and then he

22   has a claim.

23   If he has a different type of contract, usually a shipment

24   contract that provides no obligation for the shipper to

25   actually get the drive to the person, their obligation is

1  extinguished at the time of shipment.  So if it was shipped --

2       **THE COURT:**  Title passes at the time of shipment.

3       **MS. McLEAN:**  Yes.

4       **THE COURT:**  And that means what with respect to a

5  California company shipping to a California person?

6       **MS. McLEAN:**  Well, he hasn't alleged that.  He has not

7  alleged where he bought the drives from.  Or he's testified

8  inconsistently on that and where they were shipped from.

9  Amazon is --

10      **THE COURT:**  He has testified that he bought it from

11 New Egg; right?

12      **MS. McLEAN:**  Right.  He does not testify as to what

13 the terms of that contract were or where the shipment took

14 place.

15      I mean, people have fulfillment centers all over the

16 place.  This statute requires title to pass in California.  So

17 the fact that a company is headquartered in California -- there

18 are cases on this we cited in our papers -- is not relevant.

19 It's where title passes.

20      So if he can allege that, then more power to him.  But we

21 don't think he can.

22      **THE COURT:**  Can he?

23      **MS. SCARLETT:**  He could allege that.

24      We don't agree with the articulation of the standard nor

25 that that would be required of every plaintiff or class member

1    to articulate all of the terms of sale.  And it's certainly not

2    required for a Rule 8 pleading standard where he has in

3    paragraph 17 --

4            **THE COURT:**  Skip to the next step.

5            **MS. SCARLETT:**  Sure.

6        If amendment is required, we could allege with more

7    specificity where Mr. Enders bought his drive and where title

8    passed.

9            **THE COURT:**  Where would that be?

10           **MS. SCARLETT:**  California, is our position.

11           **THE COURT:**  What do you mean "our position"?  What are

12   the facts?

13           **MS. SCARLETT:**  So the facts that I know, as I'm here

14   today -- I wasn't at his deposition -- is that he testified he

15   purchased from New Egg, which is a California company, and that

16   he purchased in California, and the drive was shipped to

17   California.

18           **THE COURT:**  From where?

19           **MS. SCARLETT:**  From the New Egg vendor.

20           **THE COURT:**  New Egg from where?

21           **MS. SCARLETT:**  I don't know more specifics than that,

22   Your Honor.  I apologize.  I wasn't at the deposition.

23           **THE COURT:**  That might matter.

24           **MS. SCARLETT:**  Okay.

25           **THE COURT:**  I mean, because if -- and I'm not sure it

1    matters.  But it might matter that title passed from the Kansas

2    City fulfillment center.

3         MS. SCARLETT:  If it would be helpful, we could

4    provide a supplemental statement on this, that provided

5    additional facts to Mr. Enders --

6         THE COURT:  I'm not inclined to deal with this on a

7    pleading basis because of the way it's been alleged.  But it

8    could ultimately turn out to be a problem.  And we will set

9    forth whatever the standard is we think is going to apply, but

10   it might ultimately turn out to be a problem depending on what

11   you find out the facts are.

12      Doesn't sound like anyone knows enough about the facts yet

13   even after his deposition necessarily.

14      Okay.

15         THE WITNESS:

16         MS. McLEAN:  Okay.  Your Honor, I mean, the only other

17   thing I wanted to raise -- and Your Honor already raised it

18   earlier -- was the whole *Mazza* issue.  And I understand your

19   default is not to deal with that on a motion to dismiss or

20   motion for judgment on the pleadings.

21         THE COURT:  Yeah.

22         MS. McLEAN:  You know, to the extent Your Honor would

23   entertain that idea, it does seem as though courts are doing

24   that.

25      Certainly we cited cases, from Judge Orrick in the *Frenzel*

1    case and Judge Tigar in the *Todd* case, where they do reach the

2    issue on a motion to dismiss based on the pleadings.

3         And here we have the UCL, the false advertising law, the

4    CLRA, unjust enrichment, and Song-Beverly which plaintiffs are

5    seeking to apply nationwide.  So those are five claims in which

6    they are seeking to displace the states' law and then plead in

7    the alternative for those particular states where they have

8    plaintiffs but not for the other states where they don't have

9    plaintiffs.

10        So they're seeking to displace the state's law without

11   having a plaintiff who bought the drives in that particular

12   state and to have California law apply across the country.

13        And, you know, certainly we do not believe that under the

14   governmental interest test the plaintiffs can meet that

15   standard.  And we would ask the Court to take a look at it.

16        You know, *Mazza* looked at what the relevant law is in the

17   different states and pointed out the differences between the

18   consumer protection laws of California and those of other

19   states.  It looked at the -- I'm not reading my handwriting.

20   But it looked at the California Supreme Court's *McCann* decision

21   in evaluating the conflicting interests of the states in

22   applying their state's laws.  And the *McCann* decision holds

23   that generally the state where the transaction took place is

24   the place that has the greatest interest.

25        So we do not believe the facts as alleged establish a

1    basis for displacing the laws of those states merely based on

2    an allegation that California law should apply.

3         **THE COURT:**  I mean, I can see the utility of doing it

4    early.

5         Judge Orrick and Judge Tigar are terrific judges.  I have

6    nothing but great respect for them, and I've known them both a

7    long time.  But they're braver than I am.

8         I don't have the confidence that one can apply in such --

9    in the pleading setting the *Mazza* standard in a way that --

10   with any certainty.  It is so fact specific that I would want

11   to do it at the certification stage when people have fully

12   developed the record, rather than cut it off at the pleading

13   stage.  Could end up at the same place.  Could easily end up at

14   the same place.  But I don't know if it will end up at the same

15   place.

16        And I appreciate the argument, and I think it's an

17   argument that will be fought over again.  But I'm really

18   uncomfortable doing it at this stage of the case because --

19   because of the way class certification of those issues -- *Mazza*

20   doesn't set a blanket rule that it's never allowed, that sort

21   of thing.  It's very fact specific.  So I appreciate the

22   argument, but it would be a mistake for me to do it at this

23   stage of the case.

24        Well, thank you.  Is there anything else you would like to

25   say?

1          **MS. McLEAN:**  No, Your Honor.

2          **MS. SCARLETT:**  Is there anything Your Honor would find

3    it helpful for me to address?

4          **THE COURT:**  I have no questions, if that's what you

5    mean.

6          **MS. SCARLETT:**  If Your Honor is inclined to deny the

7    motion to strike the nationwide allegations, I think I'd only

8    just briefly like to touch on the Song-Beverly, the first

9    argument the defendants have made that we have not pled a

10   defect existed at the time of the sale.  And just to address

11   that, we believe the case law is clear that we need only allege

12   a latent defect existed.  It doesn't have to be discovered

13   within the one-year period.  And that's the *Mexia* case.  And it

14   was followed by the Ninth Circuit in *Daniel vs. Ford Motor*.

15         **THE COURT:**  I don't think she disagrees with that.  I

16   think she disagrees whether you've alleged such a defect.

17         **MS. SCARLETT:**  To the second point, whether it's

18   sufficiently alleged in the complaint, it certainly is rife

19   throughout the complaint that we allege a latent defect existed

20   at the time of sale.

21        And to the extent that further specificity is needed by an

22   expert on the cause and mechanism of it, that's something that

23   will be addressed at class certification/summary judgment.  But

24   to require an expert report attached to a pleading is

25   inappropriate.

```
1              THE COURT:  Okay.

2              MS. McLEAN:  I think Your Honor knows our position on

3     that.

4              THE COURT:  Okay.  Is there anything else we should

5     talk about while we're here?

6              MS. SCARLETT:  Not from our perspective, Your Honor.

7              MS. McLEAN:  Nor from ours, Your Honor.

8              THE COURT:  All right.

9              MS. SCARLETT:  Thank you very much.

10             THE COURT:  See you later.  Thank you.

11             MS. McLEAN:  Thank you.

12             THE COURT:  Take it under submission.

13          (At 10:24 a.m. the proceedings were adjourned.)

14                          -   -   -   -

15

16                    CERTIFICATE OF REPORTER

17          I certify that the foregoing is a correct transcript

18    from the record of proceedings in the above-entitled matter.

19

20    DATE:   Tuesday, September 12, 2017

21

22

23                       Katherine Sullivan

24    _____

25        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                     U.S. Court Reporter
```