# EXHIBIT 30

Dudley Lane Dortch IV, Vol 1                                      July 12, 2017

Page 1

```
            UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION


                           _____

   IN RE:
                              Case No.
   SEAGATE TECHNOLOGY, LLC    3:16-cv-00523 JCS
   LITIGATION,
                           _____



   VIDEOTAPED
   DEPOSITION OF:   DUDLEY LANE DORTCH, IV

   DATE:            Wednesday, July 12, 2017

   TIME:            9:55 a.m through 3:37 p.m.

   LOCATION:        Magna Legal Services
                    960 Morrison Drive
                    Charleston, South Carolina

   TAKEN BY:        Attorneys for the Defendant
                    Seagate Technology, LLC

   COURT REPORTER:  MADONNA M. FARRELL
                    Registered Professional Reporter
                    Certified Livenote Reporter
                    CaseViewNet Realtime Reporter
```

Dudley Lane Dortch IV, Vol 1                                      July 12, 2017

Page 94
1  Exhibit B, that you recall reviewing at the time?
2         MR. AXLER:  Objection.  Asked and
3      answered.  Misstates prior testimony.
4         MS. McLEAN:  That's a question.  I'm
5      not stating any testimony.
6         THE DEPONENT:  No, not specifics.
7  BY MS. McLEAN:
8     Q.  Do you recall reviewing annualized failure
9  rate?
10    A.  I do remember seeing that.  I do remember --
11 and not just in this particular data sheet, but
12 Seagate has always been very low.  I do remember
13 that in the history.
14    Q.  In particular, with the purchase of these
15 drives, did you consider that piece of information?
16    A.  I think I looked at any abnormalities for
17 that.  But honestly, Seagate's data sheets have
18 always said less than 1 percent.  I can't think of
19 one that has ever been over less than 1 percent, on
20 any of these that I've ever seen.  Which stands to
21 reason.  You have a good drive, right?
22    Q.  Right.
23        So my question to you is, did you review
24 that information in particular with regard to your
25 purchase of the ST3000DM001?

Page 95
1     A.  I probably did note it, just as I'm looking
2  at it today.
3     Q.  You don't recall specifically?
4     A.  I would have recalled anything out of the
5  norm, and I don't remember that being a factor --
6  that that looks like a normal failure rate to me.
7  So I would have checked that box on my -- it's
8  okay.
9     Q.  In Paragraph 236 --
10    A.  Which exhibit?  8 still?
11    Q.  Yeah, we're still in Exhibit 8.
12        In Paragraph 236, you say you reviewed the
13 Barracuda Data Sheet.  Specifically, you read the
14 statements on the data sheet regarding the
15 suitability of the drive for RAID and NAS?
16    A.  Yes.
17    Q.  You considered these statements to be
18 material and relied on them?
19    A.  Yes.
20    Q.  Is that correct?
21    A.  Yes.
22    Q.  What do you mean by your -- you considered
23 these statements to be material and relied on them?
24    A.  In my specific --
25        MR. AXLER:  Objection.  Compound to the

Page 96
1      extent it calls for a legal conclusion.  You
2      can answer.
3         THE DEPONENT:  In my specific
4      application, I was looking for a drive to
5      fit my need, which was a network array, a
6      network storage array, or a NAS, and a RAID
7      configuration.
8         And based on that, on the data sheet
9      that we just looked at, on the front page of
10     that, it says that this drive was
11     suitable -- maybe it says something
12     different.  Let's see.  It says that falls
13     under the Best-Fit Applications.
14 BY MS. McLEAN:
15    Q.  And you're looking at the first page of
16 Exhibit B?
17    A.  Yes.
18    Q.  Were those the only statements that you
19 considered to be material and which you relied on
20 in purchasing the drives?
21    A.  No.
22    Q.  What other statements did you consider to be
23 material?
24    A.  I think we just went over that.  It would
25 have been the data sheet for that particular drive.

Page 97
1  Voltage tolerance.  I mean, this is just the same
2  stuff we looked at -- we talked about just a minute
3  ago.  Operating temperature, that's good.  I mean,
4  there's some other things on here that I would look
5  at, just like I looked at it today, when buying
6  something for somebody today, either at work or at
7  home.  There's still pertinent information on this
8  data sheet.
9     Q.  Okay.  Well, in a legal context, I'm asking
10 you about what, in particular, you considered and
11 relied on in buying the Seagate drives.
12    A.  Uh-huh.
13    Q.  In the Complaint, Paragraph 236, you mention
14 only the suitability of the drive for RAID and NAS.
15 Are you saying now that there were other factors
16 that you considered to be material and relied on
17 that are not listed in Paragraph 236?
18        MR. AXLER:  Objection.  Asked and
19     answered.  You can answer.
20        THE DEPONENT:  In particular, the
21     Best-Fit Applications -- this drive fit what
22     I needed it to do under Best-Fit
23     Applications.  Did I look at other data on
24     here to make a determination that there was
25     anything that would cause me to think this

Dudley Lane Dortch IV, Vol 1                                    July 12, 2017

Page 98
1  ==drive wouldn't work?  Sure.  I read all of==
2  ==the data on this sheet and still felt that==
3  ==this drive was the best fit.==
4  BY MS. McLEAN:
5     Q.  But my question was specifically, were there
6  any statements other than those under Best-Fit
7  Applications on Exhibit B that you recall
8  reviewing, relying on and considering material to
9  your decision at the time?
10         MR. AXLER:  Objection.  Asked and
11      answered.
12         THE DEPONENT:  To the best of my
13      recollection, no.
14 BY MS. McLEAN:
15    Q.  Okay.
16         MR. AXLER:  Also add an objection to
17      the extent it calls for a legal conclusion.
18         MS. McLEAN:  Well, there's no question
19      pending.
20         MR. AXLER:  I'm just adding to the
21      prior objection.
22 BY MS. McLEAN:
23    Q.  All right.  I'm looking now at the next
24 paragraph, Paragraph 237.  It states, "Defendant's
25 statements were misrepresentations because the

Page 99
1  drives were not fit for NAS, were not designed for
2  RAID-5, and were not suitable for any RAID
3  configuration."  Do you see that?
4     A.  Yes.
5     Q.  Do you know that of your personal knowledge?
6     A.  Do I know that this statement was as a fact,
7  as in --
8     Q.  Correct.  Is this your statement here, that
9  you believe the statements were misrepresentations
10 the drives were not fit for NAS, were not designed
11 for RAID-5, and were not suitable for any RAID
12 configuration?
13         MR. AXLER:  Objection.
14 BY MS. McLEAN:
15    Q.  Is that your opinion?
16         MR. AXLER:  Objection to the extent it
17      calls for a legal conclusion.
18         And to the extent your knowledge comes
19      from communications with your attorneys,
20      I'll instruct you not to answer.
21         THE DEPONENT:  I will not answer that
22      question.
23 BY MS. McLEAN:
24    Q.  Well, do you have any opinion about whether
25 any of the statements that you relied on in

Page 100
1  purchasing the drives were misrepresentations?
2     A.  Do I have any opinions?
3     Q.  Correct.
4     A.  There is some concern, yes.
5     Q.  What do you mean by "some concern"?
6     A.  That the drives weren't actually designed to
7  do what that statement says they should do.
8     Q.  Which would be?
9     A.  The data sheet.  The data sheet -- the data
10 sheet data is not exactly what these drives were
11 designed to do.
12    Q.  And --
13    A.  Or to the best of my knowledge, that would
14 be what the communications, the warranty team, is
15 trying to communicate back to me as an end user.
16 That would be Seagate's warranty -- what you do you
17 call them?  Team?  Section?  Communications?  I
18 don't know how you word it, what you call it.  It's
19 the warranty team call in, do a warranty, those
20 guys.
21    Q.  Well, my question to you is not about the
22 warranty.  It's about, in particular, what
23 statements you believed.  And you believed today,
24 as you sit here, were misrepresentations?
25    A.  Uh-huh.  The statement that they were

Page 101
1  designed for a NAS and that they were designed to
2  be used in a RAID array.
3     Q.  And why do you believe those were
4  misrepresentations?
5     A.  Because the communications that I had from
6  Seagate was that they should not be used in a RAID
7  array and they should not be used on a NAS.
8     Q.  What communication is that?
9     A.  Through telephone communications with the
10 warranty team.  I don't think that that's -- I
11 don't know if that was ever brought up as
12 specifics.  But that was basically what I was told,
13 was that they shouldn't be used in that capacity.
14    Q.  Who told you that?
15    A.  Seagate.
16    Q.  When?
17    A.  It would have been during one of the times
18 that I called for a warranty request.  I can't tell
19 you when.
20    Q.  Somebody told you this over the phone?
21    A.  Yeah.  I think it was after the fact, that
22 they were not going to do any more warranty.  And
23 they had said something to the effect that these
24 were desktop hard drives; they are not meant to be
25 used in any sort of server or array or something

Dudley Lane Dortch IV, Vol 1                                    July 12, 2017

```
                                              Page 202
 1                      ERRATA PAGE
 2   PAGE # - LINE #    CHANGE AND/OR CORRECTION
 3                      (AND EXPLANATION)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
     THE ABOVE CHANGES WERE NOTED BY ME ON THIS ERRATA
20   PAGE BEFORE SIGNING THE ATTACHED VERIFICATION OF
     DEPONENT.  I HAVE RETAINED A COPY OF THIS ERRATA
21   PAGE FOR MY RECORDS, AND COURT REPORTER IS TO
     ATTACH THIS PAGE AND MY VERIFICATION TO THE
22   ORIGINAL TRANSCRIPT.
23
     DATED:
24              DUDLEY LANE DORTCH, IV
25
```