SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
MUKUND H. SHARMA, Cal. Bar No. 249125
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        npopovic@sheppardmullin.com
              amclean@sheppardmullin.com
              msharma@sheppardmullin.com
              rodewald@sheppardmullin.com
              lpayne@sheppardmullin.com
              jsiu@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**DECLARATION OF RONALD LANE IN SUPPORT OF MOTION TO SEAL PORTIONS OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br>**Date:** February 9, 2018<br>**Time:** 9:30 a.m.<br>**Place:** Courtroom G<br>**Judge:** Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed: July 11, 2016 |

I, Ronald Lane, declare as follows:

1. I am the Sr. Director of Customer Technical Support of Seagate Technology LLC ("Seagate"). Unless otherwise indicated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as to their truth.

2. I submit this declaration in support of Seagate's Motion for an Order Sealing Certain Portions of Plaintiffs' Motion for Class Certification.

3. It is my understanding the Plaintiffs filed the Declaration of Steve W. Berman (Berman Decl.) in support of their Motion for Class Certification, ECF No. 136, which attaches 53 exhibits, 33 of which were designated as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the Stipulated Protective Order in this case, ECF Nos. 133, 138-140 (Administrative Motion to Seal; Motion to Remove Incorrectly Filed Document; Administrative Motion to File Under Seal Unredacted Version of Exhibit 28). It is also my understanding that portions of Plaintiffs' Motion for Class Certification and the Declarations of Stefan Boedeker and Andrew Hospodor (Hospodor Decl.) reference or incorporate materials that have also been designated as CONFIDENTIAL by Seagate pursuant to the Stipulated Protective Order and provisionally filed under seal.

4. Due to the confidential nature of the information in certain of these documents, Seagate seeks an order sealing these documents from the public record as set forth in the chart below. As will be explained *infra*, these documents contain trade secret information, from which Seagate derives independent economic value because the information in these documents is not generally known to the public. Because of the sensitive nature of these documents, Seagate takes great efforts to protect their secrecy. Indeed, Seagate only produced these documents in this litigation subject to the Stipulated Protective Order, and has marked these documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Further, Seagate has a compelling reason for desiring this sensitive business information not to be released to its competitors or the public: namely, because there is a risk of competitive harm should this information be generally known.

/ / /

/ / /

| Document Filed Under Seal by Plaintiffs | Portion(s) Sought To Be Sealed |
|---|---|
| Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification | Exhibit 9<br>A portion of Exhibit 20, attached hereto as Exhibit A<br>Exhibit 21<br>Exhibit 22<br>Exhibit 23<br>Exhibit 24<br>A portion of Exhibit 25, attached hereto as Exhibit B<br>Exhibit 26<br>A portion of Exhibit 28, attached hereto as Exhibit C<br>Exhibit 36<br>Exhibit 38<br>Exhibit 39<br>Exhibit 40<br>Exhibit 42<br>Exhibit 43<br>Exhibit 44<br>Exhibit 45<br>Exhibit 46<br>Exhibit 48<br>Exhibit 49<br><br>With the exception of the exhibits identified above, Seagate does not seek to maintain the remaining Exhibits 3, 4, 5, 6, 10, 11, 12, 18, 19, 41, 47, and 51 under seal. |
| Portions of Declaration of Stefan Boedeker in Support of Plaintiffs' Motion for Class Certification | Seagate does not seek to seal the Boedeker declaration. |
| Portions of Declaration of Andrew Hospodor in Support of Plaintiffs' Motion for Class Certification | A portion of ¶ 2<br>¶ 17<br>¶¶ 23-212, and corresponding figures and footnotes<br><br>With the exception of the portions identified above, Seagate does not seek to maintain the remaining designated material under seal. |
| Plaintiffs' Motion for Class Certification | Portions of 1:19-1:21 (citing generally Hospodor Decl.)<br>2:5-2:6 (citing Hospodor Decl., ¶¶ 183-193, 176)<br>7:11-14 (quoting Berman Decl., Ex. 20)<br>8:5-12 (citing Hospodor Decl., ¶¶ 65, 83-84)<br>8:14 (citing Hospodor Decl., ¶ 135; Berman |

| Document Filed Under Seal by Plaintiffs | Portion(s) Sought To Be Sealed |
|---|---|
| | Decl., Ex. 21)<br>8:16-17 (citing Hospodor Decl., ¶¶ 118-169, 193)<br>8:23-9:6 (citing Hospodor Decl., ¶¶ 183-193, 176; Berman Decl., Exs. 22, 23)<br>9:13-14 (citing Hospodor Decl., ¶207)<br>9:15-16 (citing Hospodor Decl., ¶ 210; Berman Decl., Ex. 26)<br>13:8-10 & n.48 (Berman Decl., Exs. 20, 36)<br><br>With the exception of the portions identified above, Seagate does not seek to maintain the remaining designated material under seal. |

## I. Exhibits to the Declaration of Steve W. Berman Should Be Sealed

5. The exhibits to the Declaration of Steve W. Berman that Seagate seeks to seal include (1) information that is treated as confidential by Seagate and would be of value to Seagate's competitors if it were to be disclosed, which would cause Seagate financial and competitive harm, and (2) personal information of Seagate's customers, which Seagate has a legal obligation to protect. Several of these exhibits detail Seagate's business strategies, from which Seagate derives value based on the fact that this information is not generally known to the public.

6. For example, Exhibit 9 sets forth Seagate's internal packaging guidelines, which synthesizes the marketing strategy developed by Seagate employees, and Seagate's protocol for designing its products' marketing materials and featuring them on its products.

7. Exhibit 20 includes an email string that discusses Seagate's internal strategy and procedure for updating one of its marketing materials, its Storage Solutions Guide. Seagate seeks only to redact this email chain, as reflected in **Exhibit A**, attached hereto.

8. Exhibit 21 is an email string that details the project status of a particular team at Seagate, the data it has collected from product testing, and its plans for further product testing and development.

9. Similarly, Exhibit 22 is a Decision Brief assembled by Seagate detailing the results of its testing and analysis of an Original Equipment Manufacturer (OEM) customer's hard drives. In this report, Seagate details the analyses it ran, suggests a design change to resolve issues seen

with the hard drives in this particular OEM's environment, and summarizes its communications with its customer. Both documents reflect the manner in which Seagate tests its drives and develops its products, as well as confidential communications with an OEM customer subject to a confidentiality agreement.

10. Exhibit 23 is an email string, which discusses information set forth in a Consumer Technical Support Weekly Status Report that Seagate assembles to keep track of customer complaints and trends. As such, the report lists customer information and customer issues with Seagate drives, which could be used by competitors to Seagate's disadvantage.

11. Exhibit 24 is a Customer Advocacy report assembled by Seagate that details Seagate's global strategic priorities regarding its reliability and quality control initiatives, and analyzes Seagate's progress on certain initiatives.

12. Further, Exhibits 25, 42, and 44 detail Seagate's internal response to the Backblaze blog post and online content which discussed the Backblaze blog post. These emails detail the strategy Seagate ultimately developed to understand the cause of the problems Backblaze reported, as well as to address public concerns arising out of the Backblaze post. In addition to Exhibits 42 and 44, Seagate seeks to seal a portion of Exhibit 25 (SEAG0010102), reflected in **<u>Exhibit B</u>**, <u>attached hereto</u>, which includes a private email from a Seagate employee to Seagate's Customer Technical Support department asking about the article in a manner that could be misused by competitors to harm Seagate's competitive standing.

13. Exhibit 26 includes the personal identifying information of Seagate's customers, including their names, phone numbers, and personal email addresses, as well as their emails to Seagate customer service. Further, both Exhibit 26 and Exhibit 36[1] show logs from customer service interactions with a consumers. These logs demonstrate Seagate's proprietary method for tracking and managing consumer communications through email and chat features.

---

[1] Exhibit 36 is also irrelevant as the interaction, on its face, involves a consumer contacting Seagate about one terabyte hard drives, not the ST3000DM001. *See* Berman Decl., Ex. 36 at FED_SEAG0035342 (Message 11).

14. Exhibit 28 includes Seagate's Supplemental Responses to Plaintiffs' First Set of Interrogatories, Nos. 1, 2, and 8. These responses reveal Seagate's confidential financial data. To narrowly tailor its sealing request, Seagate has redacted only portions of its Supplemental Responses, as reflected in **Exhibit C**, attached hereto.

15. Exhibits 38 and 39 are letters to Seagate's Authorized Distributors (AD) in the United States and Latin America detailing (1) the rebates available to Seagate's AD's per a product, and includes a list of Seagate's Authorized Distributors, and (2) setting forth modifications to the warranty duration on some of Seagate's products and Seagate's strategy in adopting a different warranty period. All of this is information that Seagate discloses only to its ADs, and, if discovered by Seagate's competitors, such information could be used to undercut Seagate's relationship with its ADs and its competitive position in the hard drive marketplace.

16. Exhibit 40 is a Seagate Product Update presentation, which details Seagate's design process, sets forth proprietary marketing and consumer research, and outlines Seagate's strategy for making product decisions, market-growth projections, and current sales data.

17. Exhibit 43 is an internal email chain discussing Seagate's sales strategy, including a discussion of Seagate's approach to "set [its] Sales teams apart from other companies' sales teams . . . ."

18. Exhibits 45 and 48 are a Technical Customer Management report and Simple Storage Core Team report, respectively, which outline Seagate's product development focuses and the status of various projects, as well as Seagate's overall product strategy.

19. Similarly, Exhibit 46 is a weekly report put together by a Seagate employee detailing the development status of various products.

20. Exhibit 49 is an internal email chain about an issue a consumer experienced with his hard drive and the testing that occurred on the drive. This email chain shows Seagate's failure and error analysis processes, as well as its methods of responding to online consumer feedback.

21. All of these documents show Seagate's internal business strategies and decision making processes. Seagate goes to great lengths to ensure the confidentiality of its documents: for example, as a general matter, any presentations generated by Seagate employees are marked

confidential and disclosure is limited and internal to Seagate, employees include non-transmittal disclosures in their emails, and Seagate enters into non-disclosure agreements with its customers, distributors, and OEMs.

## II. Portions of the Declaration of Andrew Hospodor That Should Be Sealed

22. As admitted in Mr. Hospodor's declaration, his analysis entails a review of, *inter alia*, "Seagate's Drive Development and Manufacturing Process[,]" Seagate's product testing procedures throughout the lifecycle of its products, its analysis of return trends and how its products perform in the field, and its long-term performance objectives. The documents analyzed by Mr. Hospodor detail Seagate's proprietary information, which could be used by Seagate's competitors to replicate its testing methods and predict Seagate's future strategies.

23. Paragraph 17 and a portion of paragraph 2 set forth the conclusions Mr. Hospodor reached based on his review of the confidential procedures cited in paragraphs 23-212. As a result, they should be sealed as well.

## III. The Portions of Plaintiffs' Motion for Class Certification That Cite the Confidential Information in the Hospodor Declaration and Berman Declaration Should Be Sealed

24. The portions of Plaintiffs' Motion for Class Certification that reference the confidential information in the exhibits to the Berman Declaration and in the Hospodor Declaration, reflected in the table at Paragraph 4, *supra*, should be sealed for the same reasons set forth above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 14th day of November, 2017, in Cupertino, California.

_____  11/13/17
Ronald Lane