SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        npopovic@sheppardmullin.com
              amclean@sheppardmullin.com
              trodewald@sheppardmullin.com
              lpayne@sheppardmullin.com
              jsiu@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**SEAGATE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**Date:** March 30, 2018<br>**Time:** 9:30 a.m.<br>**Place:** Courtroom G<br>**Judge:** Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed: July 11, 2016 |

SMRH:485017953.14

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................1

II.     PLAINTIFFS' EVIDENCE IS NEITHER COMMON NOR MATERIAL TO THE
        PROPOSED CLASS .....................................................................................................5

        A.      There Is No Evidence of a Widespread Marketing Campaign as to AFR or
                RAID ..................................................................................................................5

        B.      There Is No Common Evidence of a High Failure Rate or Seagate's
                Knowledge of Same ..........................................................................................7

III.    LEGAL STANDARD ....................................................................................................8

IV.     PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(A) ...........................9

        A.      Because Putative Class Members' Exposure to Seagate's Representations
                and Purported Omissions Is Not Common, There Can Be Neither a
                Classwide Duty to Disclose Nor A Classwide Presumption of Materiality or
                Reliance .............................................................................................................9

        B.      The Alleged Unreliability of the Drives Is Not a Common Issue ..........................11

        C.      Materiality Is Not a Common Issue .......................................................................12

        D.      The Class Representatives Are Atypical and Inadequate to the Extent Their
                Claims Are Subject to Unique Defenses and They Lack Standing........................12

V.      PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(B)...........................14

        A.      Common Legal Issues Do Not Predominate Because Nationwide
                Application of California Law Is Prohibited by Mazza and California's
                Choice of Law Principles .....................................................................................15

        B.      Individual Legal Issues Predominate Under the Laws of the Eight Proposed
                Sub-Class States As Well ....................................................................................18

        C.      Individual Factual Issues Predominate Regarding Exposure, Reliance, and
                Materiality ...........................................................................................................20

        D.      The Proposed Class Is Neither Manageable Nor Superior.....................................22

VI.     PLAINTIFFS' DAMAGES MODEL IS FACTUALLY AND LEGALLY
        UNSOUND; BOEDEKER'S DECLARATION SHOULD BE STRICKEN .....................23

VII.     HOSPODOR'S DECLARATION SHOULD LIKEWISE BE STRICKEN........................24

VIII.    CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Marketing and Sales Practice Litig.*
    2017 WL 2559615 (C.D. Cal. June 7, 2017)...............................................................24

*Amchem Prods. Inc. v. Windsor*
    521 U.S. 591 (1997) .........................................................................................................14

*Aspinall v. Philip Morris Co., Inc.*
    442 Mass. 381 (2004) .......................................................................................................19

*Becerra v. General Motors LLC*
    241 F. Supp. 3d 1094 (S.D. Cal. 2017) ...........................................................................20

*Berndt v. Cal. Dept. of Corrections*
    Case No. C 03-3174 PJH, 2012 WL 950625 (N.D. Cal. Mar. 20, 2012).........................22

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
    No. 10-1044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011)......................................14

*In re Clorox Consumer Litig.*
    301 F.R.D. 436 (N.D. Cal. 2014) ................................................................................2, 19

*Cohen v. DIRECTV, Inc.*
    178 Cal. App. 4th 966 (2009)......................................................................................10, 19

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) ...........................................................................................................23

*In re ConAgra Foods, Inc.*
    302 F.R.D. 537 (C.D. Cal. 2014) ....................................................................................20

*Dana v. Hershey Co.*
    180 F. Supp. 3d 652 (N.D. Cal. 2016) ...........................................................................1, 10

*Daniel v. Ford Motor Co.*
    806 F.3d 1217 (9th Cir. 2015)...........................................................................................19

*Darisse v. Nest Labs, Inc.*
    No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016).............10, 16, 20

*Daubert v. Merrell Dow Pharms. Inc.*
    509 U.S. 579 (1993) ..............................................................................................7, 23, 24, 25

*Daugherty v. Am. Honda Motor Co.*
    144 Cal. App. 4th 824 (2006)............................................................................................10

*Davis v. Powertel, Inc.*
   776 So. 2d 971 (Fla. 1st Dist. Ct. App. 2000) ................................................................. 19

*Davis-Miller v. Automobile Club of S. Cal.*
   201 Cal. App. 4th 106 (2011) ....................................................................................... 11

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*
   383 S.C. 115 (2009) ...................................................................................................... 20

*Doe v. SuccessfulMatch.com*
   70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................................................... 9

*Dudum v. Carter's Retail, Inc.*
   No. 14-cv-00988-HSG, 2016 WL 946008, at *5 (N.D. Cal. Mar. 14, 2016) ............... 22

*Edgar v. MITE Corp.*
   457 U.S. 624 (1982) ...................................................................................................... 16

*Egwuatu v. S. Lubes, Inc.*
   976 So. 2d 50 (Fla. App. Dist. Ct. 2008) ....................................................................... 19

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) ...................................................................................... 9, 12

*Erickson v. Elliot Bay Adjustment Co.*
   No. C16-0391 JLR, 2017 WL 1179435 (W.D. Wash. Mar. 30, 2017) ......................... 22

*Faulk v. Sears Roebuck & Co.*
   No. 11-CV-02159 YGR, 2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ....................... 14

*General Elec. Co. v. Joiner*
   522 U.S. 136 (1997) ...................................................................................................... 25

*Gianino v. Alacer Corp.*
   846 F. Supp. 2d 1096 (C.D. Cal. 2012) ......................................................................... 16

*Grayson v. 7-Eleven, Inc.*
   No. 09-cv-1353 MMA (WMc), 2011 WL 2414378 (S.D. Cal. June 10, 2011) ............. 18

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ....................................................................................... 14

*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*
   403 S.C. 623 (2013) ...................................................................................................... 19

*Hernandez v. Burger*
   102 Cal. App. 3d 795 (1980) ......................................................................................... 17

*In re Hitachi Tele. Optical Block Cases*
   No. 08cv1746, 2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ................................................ 16

*Abogados v. AT&T, Inc.*
   223 F.3d 932 (9th Cir. 2000) ............................................................................................17

*Johns v. Bayer Corp.*
   No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ..................................14

*Jordan v. Paul Financial, LLC*
   No. C 07-04496 SI, 2009 WL 192888 (N.D. Cal. Jan. 27, 2009) ..........................................20

*Kamakahi v. Am. Soc'y for Reprod. Med.*
   305 F.R.D. 164 (N.D. Cal. 2015) ........................................................................................7

*Kamakahi v. Am. Society for Reproductive Medicine*
   No. 3:11-cv-01781-JCS, 2014 WL 7183629 (N.D. Cal. Dec. 15, 2014) ..................................23

*Kowalsky v. Hewlett-Packard Co.*
   No. 5:10-cv-02176-LHK, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012) ..........................4, 5, 18

*Kwikset Corp. v. Super. Ct.*
   51 Cal. 4th 310 (2011) .....................................................................................................21

*Levya v. Medline Indus., Inc.*
   716 F.3d 510 (9th Cir. 2013) .............................................................................................23

*Lewallen v. Medtronic USA, Inc.*
   No. C 01-20395 RMW, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002) ..................................16

*Marsh v. First Bank of Delaware*
   No. 11-cv-05226-WHO, 2014 WL 2085199 (N.D. Cal. May 19, 2014) ..............................16, 18

*Mazur v. eBay Inc.*
   257 F.R.D. 563 (N.D. Cal. 2009) ........................................................................................22

*Mazza v. Am. Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012) .................................................................................... *passim*

*McCann v. Foster Wheeler*
   48 Cal. 4th 68 (2010) ...........................................................................................15, 16, 17

*Mlejnecky v. Olympus Imaging Am. Inc.*
   No. 2:10-CV-02630 JAM, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ................................14

*Norwest Mortg., Inc. v. Super. Ct.*
   72 Cal. App. 4th 214 (1999) ..............................................................................................15

*Opperman v. Path, Inc.*
   2016 WL 3844326 (N.D. Cal. July 15, 2016) .......................................................................18

*Perez v. State Farm Mut. Auto Ins. Co.*
   2012 WL 3116355 (N.D. Cal. July 31, 2012) .......................................................................25

*Peviani v. Nat. Balance Inc.*
   No. 3:10-CV-2451 AJB BGS, 2011 WL 1648952 (S.D. Cal. May 2, 2011) ...................................9

*Pfizer Inc. v. Superior Court*
   182 Cal. App. 4th 622 (2010) ..................................................................................................14, 22

*Philip Morris USA Inc. v. Hines*
   883 So. 2d 292 (Fla. Dist. Ct. App. 2003) .............................................................................19

*Philips v. Ford Motor Co.*
   No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ..............................8, 10

*Pooshs v. Philip Morris USA, Inc.*
   287 F.R.D. 543 (N.D. Cal. 2012) .............................................................................................25

*Pop's Pancakes, Inc. v. NuCO2, Inc.*
   251 F.R.D. 677 (S.D. Fla. 2008) ..............................................................................................19

*Pozar v. Seagate Technology LLC*
   No. CGC-15-547787 (S.F. Super. Ct. Nov. 1, 2017) ...............................................................20

*Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*
   2009 WL 3150984 (D.S.D. Sept. 28, 2009) .............................................................................19

*Ralston v. Mortgage Investors Group, Inc.*
   No. 5:08-cv-00536-JF (PSG), 2012 WL 1094633 (N.D. Cal. Mar. 30, 2012) ..........................16

*Red v. Kraft Foods, Inc.*
   No. CV 10-1028-GW, 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) .......................................22

*Rollins v. Dignity Health*
   19 F. Supp. 909 (N.D. Cal. 2013) ............................................................................................18

*RRTM Rest. Corp. v. Keeping*
   766 S.W.2d 804 (Tex. App. 1988) ...........................................................................................18

*Senne v. Kan. City Royals Baseball Corp.*
   315 F.R.D. 523 (N.D. Cal. 2016) ...........................................................................................7, 8

*Spradling v. Williams*
   566 S.W.2d 561 (Tex. 1978) ...................................................................................................19

*Streber v. Hunter*
   221 F.3d 701 (5th Cir. 2000) ..................................................................................................19

*Sullivan v. Oracle Corp.*
   51 Cal. 4th 1191 (2011) ..........................................................................................................15

*In re Tobacco II Cases*
   46 Cal. 4th 298 (2009) ...............................................................................................................5

*In re Toyota Motor Corp.*
   2011 U.S. Dist. LEXIS 52529 (C.D. Cal. May 13, 2011) ...................................................19

*In re Toyota Motor Corp.*
   785 F. Supp. 2d 925 (C.D. Cal. 2011) ...................................................................................20

*Valentino v. Carter-Wallace*
   97 F.3d 1227 (9th Cir. 1996) .................................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ...........................................................................................................8, 9

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*
   249 S.W.3d 301 (Tenn. 2008) ..............................................................................................20

*Wang v. Chinese Daily News, Inc.*
   737 F.3d 538 (9th Cir. 2013) .................................................................................................8

*Washington Mut. Bank, FA v. Super. Ct.*
   24 Cal. 4th 906 (2001) .........................................................................................................16

*Wiener v. Dannon Co.*
   255 F.R.D. 658 (C.D. Cal. 2009) ...........................................................................................9

*Williams v. Yamaha Motor Co*.
   851 F.3d 1015 (9th Cir. 2017) ...............................................................................................1

*Wilson v. Hewlett-Packard Co*.
   668 F.3d 1136 (9th Cir. 2012) ..........................................................................................1, 12

*Wolf v. Hewlett Packard Co.*
   No. CV 15-01221 BRO, 2016 WL 7743692 (C.D. Cal. Sept. 1, 2016) ................................16

*In re Yahoo Mail Litig.*
   308 F.R.D. 577 (N.D. Cal. 2015) .........................................................................................16

*Zinn v. Ex-Cell-O Corp.*
   148 Cal. App. 2d 56 (1957) ..................................................................................................17

*Zinser v. Accufix Research Institute, Inc.*
   253 F.3d 1180 (9th Cir. 2001) ..............................................................................................18

**Statutes**

S.C. Code § 39-5-140 .................................................................................................................20

Tenn. Code Ann. § 47-18-104(b) ...............................................................................................20

Tenn. Code Ann. § 47-18-109 ....................................................................................................20

Tex. Bus. & Com. Code Ann. § 17.46(7) ...................................................................................19

1

Tex. Bus. & Com. Code Ann. § 17.50 (a) ............................................................................. 19

2

**Other Authorities**

3

Fed. R. Civ. P. Rule 23 .................................................................................... *passim*

4

N.D. Cal. L.R. 7-3 ..................................................................................................... 24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:485017953.14
SEAGATE'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

2         Through two years of litigation, Plaintiffs claimed they were suing Seagate Technology LLC

3    ("Seagate") for allegedly selling model ST3000DM001 hard drives (the "Drives") containing a

4    "latent, model-wide defect" that allegedly caused them to fail prematurely and at a high rate.  *E.g.*,

5    Dkt. 62 (Second Consolidated Amended Complaint (SCAC)), ¶¶ 1, 4, 7, 9, 10, 11, 82-108.  Indeed,

6    Plaintiffs use variations of the word "defect" ***over 185 times*** in the SCAC.  But at class certification,

7    after forcing Seagate to spend more than $1 million responding to discovery requests, Plaintiffs fail

8    to identify any defect.  Rather than admit they cannot establish a class-wide defect, Plaintiffs

9    contend a class should still be certified on the entirely different theory that Seagate allegedly made

10   material, class-wide "omissions" regarding the Drives' supposed "unreliability."  *E.g.*, Dkt. 135 at

11   viii (Statement of Issues); Memorandum of Points and Authorities ("MPA") 2:1-2, 3:18-4:16.[1]

12        This contention also fails.  As the Ninth Circuit has recognized, California courts have

13   "rejected a broad obligation to disclose" under the State's consumer protection laws, such that an

14   omission claim is actionable only if it (1) concerns information about safety the defendant had an

15   affirmative duty to disclose, or (2) is contrary to an affirmative representation by the defendant.

16   *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012) (absent affirmative

17   misrepresentations, omission must pose safety risk to be material); *Williams v. Yamaha Motor Co.*,

18   851 F.3d 1015, 1025-26 (9th Cir. 2017) (same); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 663,

19   666 (N.D. Cal. 2016) (same, citing cases).  Here, Plaintiffs make no contention that the alleged

20   omissions relate to a safety issue; therefore, Seagate could only have a duty to disclose material

21   information contrary to an affirmative representation it previously made.

22        But the Court already ruled that most of the alleged affirmative misrepresentations either

23   (1) "'*constitute 'mere puffery' upon which a reasonable consumer could not rely*,'" or (2) were

24   insufficiently alleged to be false.  Order on Seagate's Motion to Dismiss SCAC, Dkt. 100 at 23:9-

25

26   _____

         [1] Indeed, Plaintiffs appear to concede that no common defect exists, as they do not seek to
27   certify their implied warranty claims.  Moreover, their technical expert, Dr. Andrew Hospodor,
     tested *no Drives*, not even those of the named Plaintiffs.  Instead, he reviewed a smattering of
28   internal Seagate documents—many of which he misconstrues—to posit a series of ***different***
     purported issues with different versions of the Drives at discrete points in time.  Even then, he fails
     to connect any of the alleged problems to failures in the hands of consumers.

25:13 ("Order").  Plaintiffs are therefore left to argue that Seagate's affirmative representations regarding the Drives' annualized failure rate ("AFR") and suitability for use in a redundant arrays of independent disks ("RAID") obligated Seagate to disclose the Drives' alleged "unreliability," *e.g.*, MPA 4:17-10:5; 3:18-19.  Even that limited claim is further curtailed because Plaintiffs' damages expert Stefan Boedeker concedes, based on his conjoint study, that representations about suitability for RAID are immaterial to consumers' purchasing decisions.  Declaration of Stefan Boedeker ISO Pls.' Mot. for Class Cert. (Boedeker Decl.) ¶¶ 145, 158; Payne Decl., Ex. 23 (Boedeker Depo.) at 284:11-17.  Plaintiffs' effort to certify a class thus hinges entirely on Seagate's AFR representations, but the AFR evidence shows Plaintiffs cannot meet the standard for class certification.[2]

First, Plaintiffs fail to show (1) that Seagate made representations regarding AFR and/or RAID as to all—or even most—of the products containing the Drives included in the class definition over the alleged class period, or (2) that the AFR and RAID representations were made in the course of a large-scale advertising campaign that would permit a classwide presumption of exposure so as to give rise to a duty to disclose.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (vacating class certification order because limited marketing campaign precluded presumption of exposure); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 444 (N.D. Cal. 2014) (denying certification under CLRA, UCL, FAL, and five state subclasses alternatively, because classwide presumption of exposure impossible where advertising campaign consisted of only 16-months of television commercials and representations on product packaging).

Most significantly, Plaintiffs' own evidence shows that Seagate did not make representations regarding the ST3000DM001 drive as such.  *See, e.g.*, Dkt. 136 (Berman Decl.), Exs. 2, 3 (Storage Solutions Guides showing specifications were made by product, not drive), 11, 12, 14-19.  Rather, the alleged representations Plaintiffs argue created Seagate's duty to disclose address the attributes of 12 *different* products that may have contained an ST3000DM001 drive.[3]  As set forth in Sections

---

[2] Although Plaintiffs' own evidence shows RAID statements are immaterial to consumers' purchasing decisions, Seagate addresses RAID representations herein in the course of analyzing differences in representations to which class members were exposed.

[3] The products that did or could contain the ST3000DM001 include the Barracuda, Desktop HDD Internal Kit, BackUp Plus Mac, BackUp Plus Desk, Free Agent GoFlex Desk, GoFlex Desk for Mac, Free Agent GoFlex Home, Expansion Desk, Expansion Desk Plus, Business 1 Bay NAS,

1    II(A) and IV(A) below, Seagate made no AFR representations at all with regard to the majority of

2    products containing the Drives, and even the AFR statements Seagate made (for a subset of the

3    products) were buried in technical Data Sheets, Storage Solutions Guides, and Product Manuals

4    available on Seagate's website (but not on product packaging or in brick and mortar stores), which

5    Plaintiffs make no effort to show the class saw, and which changed over time.  Because of this

6    absence of evidence of class-wide exposure, Plaintiffs' damages expert, Boedeker, is reduced to

7    advancing a nonsensical theory that whether class members were actually exposed to AFR

8    representations is irrelevant—because the AFR information is supposedly reflected in the market

9    price and consumers who purchased Drives are therefore "damaged" regardless of whether any

10   misrepresentations were made *to them*.  Section VI, *infra*.  This is not the law.  Plaintiffs must

11   establish that material omissions were made *to class members* as a prerequisite to class certification.

12   They have not done so.  As a result, the proposed class is bloated with persons who were never

13   exposed to Seagate's AFR statements, to whom Seagate never owed a duty to disclose, and who

14   could not possibly have been harmed by Seagate's alleged omissions.  Because Seagate did not

15   make uniform, widespread, and material misrepresentations regarding the Drives, neither a

16   classwide duty to disclose nor a presumption of classwide materiality or reliance can be found.

17        Second, the alleged omission must be contrary to a statement that was *false in some way*

18   *common to the class* such that a *common duty to counter this affirmative representation arose*.

19   Here, Plaintiffs claim Seagate published an allegedly false AFR of "<1%."  Assuming, *arguendo*,

20

21   Business 2 Bay NAS, and Business 4 Bay NAS.  Plaintiffs' class definition provides internal,
     chassis, and box numbers for these products at issue without tying these numbers to product names.
     Two of these products—the Barracuda (ST3000DM001), Desktop HDD Internal Kit

22   (STBD3000100)—were internal hard drives ("Internal Products"), meaning they were purchased by
     consumers who then installed them into desktop computers or other storage devices.  Any product

23   that is not an Internal Product—the vast majority—is an external, backup hard drive ("External
     Products").  The External Products' corresponding internal chassis and box numbers are as follows:

24   Backup Plus Desk (STCA3000101, STDT3000400, STCA3000600, STDT3000402, STCA3000601,
     STFM3000400, STCA3000602, STDT3000100, STDT3000600, STFM3000100), Backup Plus for

25   Mac (STCB3000100, STCB3000201, STCB3000400, STCB3000101, STCB3000401,
     STDU3000400, STCB3000900, STCB3000901, STDU3000101), Expansion Desk (STBV3000100,

26   STEB3000400, STBV3000200, STEB3000100, STEB3000200, STAY3000100, STAY3000102),
     Expansion Desk Plus (STEG3000100, STCP3000400, STCP3000100, STEG3000400), GoFlex

27   Desk for Mac (STBC3000101, STBC3000102), FreeAgent GoFlex Home (STAM3000100,
     STAM3000400), FreeAgent GoFlex Desk (STAC3000100, STAC3000102, STAC3000602,

28   STAC3000404, STAC3000402, STAC3000202, STAC3000403), Business 1 Bay NAS
     (STBM3000100), Business 2 Bay NAS (STBN6000100), Business 4 Bay NAS (STBP12000100).

1  putative class members universally saw the <1% representation—which we know they did not—

2  Plaintiffs must show with evidence as to all versions of the Drives that each had a higher failure rate

3  than represented for that version and that such higher failure rate existed throughout the class period.

4  But even Plaintiffs' technical expert, Hospodor, does not so contend.  At most, his alleged evidence

5  of a higher failure rate is limited to a subset of Drives manufactured before 2013—and even as to

6  those Drives, the evidence does not establish falsity or commonality.  The Court should give no

7  weight whatsoever to Hospodor's opinion.  Sections II(B), IV(B).

8         Third, this case is "materially indistinguishable" from *Mazza*, 666 F.3d at 581, and thus

9  Plaintiffs' attempt to certify a nationwide class precludes a finding of predominance.  Plaintiffs seek

10  to certify a nationwide class under the same statutes at issue in *Mazza*, thereby implicating the same

11  state interests that the Ninth Circuit found barred application of those laws to non-resident class

12  members.  *See Kowalsky v. Hewlett-Packard Co.*, No. 5:10-cv-02176-LHK, 2012 WL 892427, at *7

13  (N.D. Cal. Mar. 14, 2012) (denying certification of UCL and CLRA claims where putative class

14  alleged HP marketed and sold printers without disclosing their unsuitability for copying multiple

15  sheets).  Plaintiffs' request for eight subclasses in the alternative also fails because Plaintiffs (1) do

16  not explain how a trial under the laws of eight states would proceed under Rule 23(b), when (2) the

17  consumer protection statutes of those states vary materially.  *See* Section V.B.  For these reasons, a

18  class action is neither superior nor a manageable method of resolving this dispute.

19         At bottom, Plaintiffs' evidence does not support the claims remaining before the Court on

20  class certification.  Plaintiffs cannot certify a class on the theory that, absent a common defect or a

21  common misrepresentation, Seagate's drives had an "above-industry-standard failure rate."  Instead,

22  Plaintiffs' request for certification is predicated on statutes that require Seagate to have committed

23  an act of consumer *deception* by making a common and material affirmative misrepresentation

24  (FAL), or by withholding information that relates to safety or is contrary to an affirmative

25  misrepresentation (CLRA, UCL).  Plaintiffs fail to present evidence in support of a ***classwide***

26  misrepresentation or omission under any of these theories.   Class certification should be denied.

27

28

## II. PLAINTIFFS' EVIDENCE IS NEITHER COMMON NOR MATERIAL TO THE PROPOSED CLASS

### A. There Is No Evidence of a Widespread Marketing Campaign as to AFR or RAID

Plaintiffs claim that Seagate advertised (1) AFRs "ubiquitously" on its website, in its Product Manuals, Data Sheets, and Storage Solutions Guide, despite the fact that the hard drives "had AFRs far below industry standard[,]" MPA 6:22-7:9, 8:3-4, and (2) that the Drives were "perfect for Desktop RAID" despite the fact that, in light of the alleged high failure rates, "these drives were . . . unsuitable for use in RAID[,]" *id.* at 9:11-14.  However, Plaintiffs do not contend class members could have been exposed to these alleged misrepresentations anywhere but on Seagate's website. *See* MPA 1:11-13, 6:24-7:5 & n.21.  Plaintiffs do not allege, for example, that Seagate advertised the Drives' AFRs or suitability for RAID through commercials or print advertising over long periods of time.  Thus, Plaintiffs have failed to show a long-term and widespread marketing campaign similar to that considered in *In re Tobacco II Cases*, 46 Cal. 4th 298, 324-27 (2009).  Indeed, Plaintiffs do not even come close to the months'-long television campaign, advertisements at dealerships and in print, product brochures, and online representations the court found insufficient to justify a classwide presumption of exposure and reliance in *Mazza*, 666 F.3d at 586-87, 594.

Moreover, Plaintiffs supply *no evidence* that Seagate engaged in a class-wide marketing campaign regarding AFR or RAID as to all products containing the Drives.  Although Plaintiffs attempt to obfuscate their evidentiary deficiencies by referring generally to all 12 products at issue as the "Drives[,]" and citing product-specific materials interchangeably, their own evidence betrays the truth:  Seagate made no representations for the ST3000DM001 drive as such, but rather separately marketed the twelve Internal and External Products that contained the Drives.  Fochtman Decl. ¶ 5.  A review of materials related to these twelve products shows substantial differences in representations regarding AFR and RAID:

- **AFR representations in Storage Solutions Guides, Product Manuals, and Data Sheets relate only to Internal Products, and varied over time.**  Notwithstanding Plaintiffs' argument that Storage Solutions Guides, Data Sheets, and Product Manuals available through Seagate's product detail webpages contained AFRs of <1% "throughout the class period[,]" MPA 6:24-7:5, *Plaintiffs' evidence shows that Seagate only published AFRs for the two Internal Products during the limited time periods of April-November 2011, April 2012-January 2013, and September 2013-January 2014.  See* MPA 6:22-7:16 & n.21 (citing Berman Decl., Exs. 2, 12, & 16 (incorrectly cited by Plaintiffs as Exhibit 17)) (Storage

-5-

Solutions Guides from May and July 2012 containing AFR specs for the Barracuda products); Berman Decl., Exs. 11, 13, 15 (Data Sheets for only the Internal Products); Berman Decl., Ex. 14 (screenshot of a specifications tab on the product detail webpage for the Barracuda product); Berman Decl., Exs. 17-19 (Barracuda Product Manuals, one of which is dated March 2016 and thus is outside the class period); Hospodar Decl. ¶¶ 44-58 (citing Seagate Data Sheets, Product Manuals, and web pages about Internal Products only).

- **Even for Internal Products, Product Manuals did not contain AFR representations until January 2015.**  With regard to the Product Manuals specifically, Plaintiffs' only evidence that "product manual[s], always available on Seagate's website, stated [] these drives had an AFR of 0.34%" is a *draft* Barracuda Product Manual from April 2011 that was never published—as Plaintiffs' counsel was aware from depositions.  MPA 6:24-7:1 (citing Hospodor Decl. ¶¶ 46-49); Schweiss Decl. ¶¶ 6-7; Atty Decl., Ex. 14 (Khurshudov Depo. at 67:3-68:1).  The first publicly-available Barracuda Product Manual is dated August 2011 and contains no AFR representations.  Schweiss Decl., Ex 2.  Indeed, Barracuda Product Manuals did not become available on Seagate's product detail webpage until October 2011.  Payne Decl. ¶¶ 9-10.  Moreover, the Product Manual did not contain an AFR representation until January 2015, after the Barracuda had been rebranded as the Desktop HDD.  Berman Decl., Ex. 17 at 1 (*see* Document Revision History, Rev. L, stating "added AFR = <1% . . . .");  Schweiss Decl. ¶ 9, 11.[4]

- **There is no evidence Seagate made AFR representations as to any External Products.**  Plaintiffs cite no representations whatsoever about the AFRs of External Products.  *See above,* 5:28-29 ("AFR representations in Storage Solutions Guides, Product Manuals, and Data Sheets relate only to Internal Products, and varied over time.").  Indeed, there is no evidence that Seagate ever published AFRs for External Products.  Schweiss Decl. ¶¶ 14-15, exs. 19-27; Fochtman Decl. ¶ 8; Payne Decl., ¶ 14.  Nor did Seagate publish Product Manuals for such products.  Schweiss Decl. ¶ 14.

- **AFR representations were never on product packaging.**  Fochtman Decl., ¶ 8; Berman Decl., Exs. 8 (Plaintiff Nelson's 2012 Backup Plus box), 9 (Seagate's Product Packaging Guidelines, showing box artwork does not include AFR representations).

- **RAID representations varied over time and were made only as to Internal Products and Business 2- and 4- Bay NAS Products.**  *See, e.g.*, Berman Decl., Exs. 2 (July 2012 Storage Solutions Guide, at 2-11, 18-19 with no RAID representations as to External Products; RAID representations only as to Barracuda and Barracuda 3.5 Inch Internal Kit); 3 (October 2013 Storage Solutions Guide, at 2-13, 33 with RAID representations only as to the Desktop 3.5 Inch Internal Kit, the 2-Bay NAS ("customize performance and data redundancy with RAID 0 and 1 configuration options"), and the 4-Bay NAS ("customize performance and data redundancy with RAID 0, 1, 5, and 10 configuration options")); 4-6 (Backup Plus Data Sheets with no RAID or AFR representations); 7 (Backup Plus Desktop for Mac Data Sheet with no RAID or AFR representations); 11 (Barracuda Data Sheet without RAID representation); 12 (May 2012 Storage Solutions Guide, at 2-13 with RAID representations only as to Internal Products).

The evidence above shows, at best, intermittent AFR representations only as to Internal

---

[4] A product manual is not necessarily posted on Seagate's website immediately after finalization. Schweiss Decl., ¶ 13.  Plaintiffs cite no evidence as to the timing of public availability.

1    Products, and intermittent RAID representations only as to Internal Products and the 2- and 4-Bay

2    NAS Products.  Plaintiffs have thus failed to show any widespread marketing campaign common to

3    all covered products or all putative class members.

4    **B.      There Is No Common Evidence of a High Failure Rate or Seagate's Knowledge of Same**

5              The Court should exclude the declaration of Plaintiffs' technical expert, Andrew Hospodor

6    ("Hospodor Decl."), because Hospodor merely speculates about the meaning of internal Seagate

7    documents without offering any evidence of his own; his opinions thus do not meet even minimum

8    standards of admissibility.  *See* Section VII.[5]  Moreover, even if it were admissible, the Hospodor

9    declaration fails to show either ***common evidence*** of a higher AFR or "unreliability," or ***common***

10   ***evidence*** of Seagate's knowledge of same, such as to give rise to a ***common duty to disclose*** to the

11   proposed class as a whole.  In fact, Plaintiffs' evidence shows just the opposite.

12             Hospodor claims the "Drives" had a "higher than advertised" AFR.  However, as noted,

13   Seagate did not publish any AFR for the External Products and did so only intermittently for the

14   Internal Products.  Yet most of Hospodor's evidence of an allegedly "high" AFR relates to the

15   External Products.  Declaration of Don Adams ("Adams Decl."), § VI.A.  With regard to the

16   Internal Products, the documents show ***below 1% AFRs*** for Grenada Classic,[6] BP and BP2 drives.

17   *Id.*, § VI.B.  At most, Hospodor cites two documents he claims show the Grenada ***Classic*** had an

18   AFR above 1% ***at two points in 2012***.  *Id.*, § VI.C.  However, Hospodor admits that later versions of

19   Grenada—the Grenada BP and BP2—were significantly different drives, yet he cites no evidence

20   that the Grenada BP or BP2 drives ever had an AFR above 1%.  *Id.*, § VI.B, § VI.C; Dewey Decl.,

21   ¶¶ 6, 15, 18; Payne Decl., Ex. 11 at 191:23-192:18.  Hospodor's claim that Seagate underestimated

22   the "true" AFR of the Drives is based on inadmissible, unreliable methods and misinterpretations of

23   a handful of Seagate documents (Section VII; Adams Decl. § VII), but even if it were not, Hospodor

24   admits his purported evidence of an "increasing" Beta or AFR is limited to an eight month period in

25

26             [5] "When a party seeks to exclude expert testimony or reports at the class certification stage, courts apply the *Daubert* standard to evaluate the challenged evidence."  *Senne v. Kan. City Royals*

27   *Baseball Corp.*, 315 F.R.D. 523, 586-87 (N.D. Cal. 2016) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (same).

28             [6] "Grenada" was the Seagate internal code name for the family of drives that included the ST3000DM001.  *See, e.g.*, Declaration of Pat Dewey ("Dewey Decl."), ¶ 6.

2011-2012. Payne Decl., Ex. 11 at 51:17-25; 224:15-225:4.  The remainder of Hospodor's purported evidence (relating to yields, ECRs, ship holds and the like) *does not establish that any Drives had an AFR above 1%.*  Adams Decl., ¶¶ 23, 83, 89, 97, 103.  Moreover, none of the purported issues affected more than a tiny minority of putative class members because, with one exception, the evidence is limited to Grenada *Classic* drives *in 2011-2012*.[7]  Adams Decl., § VIII, ¶¶ 23, 81.

Plaintiffs similarly fail to show there is common, admissible evidence of Seagate's *knowledge* that any statement was false.  Seagate did not make AFR statements about the External Products and thus cannot have known such non-existent statements were false.  As to Internal Products, as explained above, Plaintiffs' evidence of a "higher AFR" (or even "unreliability") is limited to Grenada Classic drives in 2011-12.  Plaintiffs offer no evidence of problems with any drives—let alone Seagate's knowledge of same—at any other time or with any other drives.

## III.    LEGAL STANDARD

A class may be certified under Rule 23 of the Federal Rules of Civil Procedure only if all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b) are met.  *Senne*, 315 F.R.D. at 561.  Under Rule 23(a), a class may be certified if the plaintiff demonstrates (1) numerosity; (2) commonality; (3) typicality; and (4) fair and adequate representation of the interests of the class.  Fed. R. Civ. P. 23(a).  Courts must engage in a "rigorous analysis" of Rule 23(a)'s requirements.  *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011)).  In addition, because Plaintiffs invoke Rule 23(b)(3), they must also show that (1) common questions of law or fact predominate over individual questions, and (2) a class action is superior to other available methods of adjudicating the controversy.  *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *6 (N.D. Cal. Dec. 22, 2016).  Here, Plaintiffs have failed to satisfy the commonality, typicality, adequacy, predominance, and superiority requirements.  Accordingly, certification should be denied.

---

[7]  The one exception is the Apple recall (of OEM drives not at issue) which may have covered Grenada BP drives manufactured in early 2013.  Adams Decl., ¶ 106.  Again, Plaintiffs offer no evidence that Apple's concerns were common to any of the Drives used by consumers, as opposed to those installed in Apple's unique computer systems.

## IV.    PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(a)

As discussed in Section II(A) and below, Plaintiffs fail to show that the putative class claims "depend upon a common contention" likely to generate "common *answers* apt to drive the resolution of this litigation."  *Wal-Mart*, 564 U.S. at 349-350.  Nor have Plaintiffs satisfied their burden to show their claims are typical of the class, because (1) certain named plaintiffs are subject to unique defenses, as only Plaintiffs Hauff, Crawford, and Enders purchased their Drives at times when AFR representations were publicly available, *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted) (typicality not satisfied where action based on conduct unique to named plaintiffs and class members were not injured by same course of conduct); and (2) Plaintiffs did not purchase all products in the proposed class, and therefore could not have been harmed by any alleged omissions as to products they did not buy, *see Wiener v. Dannon Co.*, 255 F.R.D. 658, 665-66 (C.D. Cal. 2009).  Plaintiffs are also inadequate to the extent their claims are atypical of the class.  Fed. R. Civ. P. 23(a)(4); *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("The named plaintiffs thus may not be able to provide adequate representation for those who have suffered different injuries."); *Peviani v. Nat. Balance Inc.*, No. 3:10-CV-2451 AJB BGS, 2011 WL 1648952, at *4 (S.D. Cal. May 2, 2011) (named plaintiff inadequate to extent her claims were not "reasonably co-extensive with those of absent class members").

### A.    Because Putative Class Members' Exposure to Seagate's Representations and Purported Omissions Is Not Common, There Can Be Neither a Classwide Duty to Disclose Nor A Classwide Presumption of Materiality or Reliance

Even assuming there were common evidence of an AFR above 1% for the Drives over the class period—which, as set forth above and in Section IV.B below, there is not[8]—Seagate had a duty to disclose such evidence only to members of the class ***who saw the allegedly false AFR statements***.  This is true under each of Plaintiffs' consumer protection claims.  *See Doe v.*

---

[8] Hospodor concedes that his statement about the Drives' failure rate increasing over time is limited to an early version of the internal Barracuda drive during an eight-month period beginning in April 2011 and that his data cannot be used to extrapolate beyond that period. Payne Decl., Ex. 11 (Hospodor Depo.), 52:7-25.  Moreover, even if Seagate had made AFR representations for its External Products—and there is no evidence that it did—Plaintiffs offer no evidence that any of these products had higher-than-advertised failure rates.  Accordingly, a determination of the truth or falsity of Seagate's AFR representations will not "resolve an issue that is central to the validity of each [claim] with one stroke" in the absence of evidence of either: (1) a contrary AFR representation to which all class members were exposed, or (2) higher-than-advertised failure rates as to all Drives.

1    *SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014) (explaining that, "for a plaintiff

2    to bring UCL and CLRA claims on the basis of omissions, the omission must either be 'contrary to a

3    representation actually made by the defendant, or an omission of a fact the defendant was obliged to

4    disclose'") (citation omitted); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835

5    (2006) ("[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent

6    omissions, to be actionable the omission must be *contrary to a representation actually made by the*

7    *defendant*, or an omission of a fact the defendant was obliged to disclose.") (emphasis added); *Dana*

8    *v. Hershey Co.*, 180 F. Supp. 3d 652, 664, 669 (N.D. Cal. 2016) (duty to disclose under CLRA

9    limited to issues of product safety unless necessary to counter affirmative representation, and

10   omissions claim under FAL must involve "*some* affirmative misrepresentation").

11           Because the AFR and RAID information is not safety-related, Seagate can at most have had

12   a duty to disclose the Drives' alleged "true AFR" or "unreliability" to those class members to whom

13   Seagate "actually made" an affirmative representation.  However, exposure to such representations

14   has not been shown, and cannot be presumed, on a classwide basis.  Indeed, "[f]or everyone in the

15   class to have been exposed to the omissions … ***it is necessary for everyone in the class to have***

16   ***viewed the allegedly misleading advertising***."  *Mazza*, 666 F.3d at 596 (emphasis added); *Cohen v.*

17   *DirecTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009) ("we do not understand the UCL to authorize an

18   award . . . on behalf of a consumer who was never exposed in any way to an allegedly wrongful

19   business practice").  Where, as here, there is no widespread marketing campaign, "it is unreasonable

20   to assume that all class members viewed" the allegedly deceptive statements.  *Mazza*, 666 F.3d at

21   596 (citing *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 633-34 (2010)).  Further, when

22   plaintiffs are exposed to "'quite disparate information,' . . . a presumption of reliance is

23   inappropriate."  *Philips*, 2016 WL 7428810, at *16 (individual issues predominated under CLRA

24   and UCL where class members were not exposed to "uniform representations" about vehicle's

25   EPAS system); *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *5-6

26   (N.D. Cal. Aug. 15, 2016) (denying certification under UCL, CLRA, and FAL, in part, because

27   classwide inference of reliance was impossible where no uniform misrepresentations were made);

28   *Davis-Miller v. Automobile Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011) (same).

1  As discussed in Section II(A) above, AFR and RAID representations were not uniformly

2  published as to each of the products containing the Drives.  Indeed, Plaintiffs' sole evidence of a

3  "widespread" campaign involving AFRs is an unrepresentative sample of Storage Solutions Guides,

4  Data Sheets, Product Manuals, and specifications tabs on product detail webpages concerning only

5  the Internal Products, and for three specific and limited time frames: April-November 2011, April

6  2012-January 2013, and September 2013-January 2014.  Thus, an External Product purchaser would

7  never have been exposed to an AFR representation, and would only have been exposed to a RAID

8  representation to the extent she purchased a Business 2- or 4-Bay NAS product.  An Internal

9  Product purchaser who relied on the Product Manual to make her purchasing decision would not

10  have been exposed to an AFR representation *unless* she viewed the Product Manual after January

11  2015.  Because putative class members' exposure to representations about the Drives, and the

12  representations themselves, varied among products and over the class period, (1) any duty to

13  disclose information countering affirmative representations cannot be a common issue, and

14  (2) materiality and/or reliance on any purported omissions cannot be presumed on a classwide basis.

15  **B.      The Alleged Unreliability of the Drives Is Not a Common Issue**

16  Similarly, the alleged unreliability of the Drives is not a common issue.  ***At its very best***

17  Plaintiffs' evidence is that the failure rates of the drives varied by product iteration and over time.

18  Specifically, Hospodor's evidence shows that that the Grenada BP and BP2 drives had AFRs of less

19  than 1%, and he offers no evidence that this ever changed.  Section II(B), *supra*; Adams Decl.,

20  § VI.B.  Moreover, Plaintiffs provide no evidence that any drives manufactured after 2012 had an

21  AFR over 1%.[9]  Even as to drives manufactured *in* 2012, Plaintiffs' evidence is confined to the

22  Grenada Classic.  Because sales of Grenada Classic and Grenada BP overlapped in 2012, even

23  limiting the class to pre-2013 would not be sufficient.  *See* Dewey Decl., ¶ 18; Payne Decl., Ex. 4 at

24  p. 26787 (Grenada BP production expected to equal that of Grenada Classic around September

25  2012).)  Any attempt to sort out which consumers were exposed to which statements about which

26  products would involve an overwhelmingly large number of individualized determinations.

---

27
28  [9]  As explained, Plaintiffs' evidence of "unreliability" is inadmissible and irrelevant.  Section
    II(B); Section VII.  Regardless, with one exception *it too is confined to Grenada Classic drives
    manufactured in 2011-2012.*  Section II(B), Adams Decl., § VIII, ¶¶ 23, 81.

1    **C.       Materiality Is Not a Common Issue**

2         Absent a safety concern, Seagate's AFR statements must constitute a misrepresentation to be

3    material. *See Wilson*, 668 F.3d 1136 at 1141–43.  Therefore, any duty on Seagate's part to disclose

4    the Drives' "true" failure rate is limited to class members who actually saw the AFR.  *Mazza*, 666

5    F.3d at 595 (California law does not "authorize an award . . . on behalf of a consumer who was

6    never exposed in any way to an allegedly wrongful business practice.") (quoting *Cohen v. DirecTV,*

7    *Inc.*, 178 Cal. App. 4th 966, 980 (2009)).  *See* Section II(A), *supra*.  Notably, Seagate's survey

8    expert, Itamar Simonson, determined that consumers who were exposed to the allegedly false AFR

9    statements found a "higher" AFR to be immaterial to their purchasing decisions,  Simonson Decl.

10   ¶ 37, while Plaintiffs' expert Boedeker argued (incorrectly) that exposure is irrelevant.  *See* Section

11   VI, *infra*.  The materiality of a "higher" AFR is the heart of Plaintiffs' theory—for class certification

12   and on the merits—yet Plaintiffs offer no common evidence on this point.

13   **D.       The Class Representatives Are Atypical and Inadequate to the Extent Their Claims
            Are Subject to Unique Defenses and They Lack Standing**

14

15        To establish typicality, Plaintiffs must demonstrate that: (1) "other members have the same

16   or similar injury;" (2) "the action is based on conduct which is not unique to the named plaintiffs;"

17   and (3) "other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at

18   984 (remanding to district court for renewed consideration of typicality where named plaintiffs were

19   subject to unique defenses).  Here, named plaintiffs' claims are atypical for the following reasons.

20        First, although most named plaintiffs purport to have relied on AFR representations, the

21   record shows that this is impossible as to plaintiffs Nelson, Schechner, Hagey, Manak, and Dortch

22   because ***there is no evidence AFR representations were publicly available*** at the time they

23   purchased their Drives.[10]  Further, Plaintiffs Schechner and Nelson are the only named plaintiffs

24   who purchased External Products.  SCAC, ¶¶ 135, 162.  Both claim to have relied on representations

25   _____

26       [10] There is no evidence of published AFRs when Plaintiffs Nelson and Schechner purchased
     their Backup Plus products.  Payne Decl., Ex. 28 (Schechner Deposition, 103:20–104:17), Ex. 29
27   (Nelson Deposition, 112:23–113:15); SCAC ¶¶ 135, 162.  Nor is there any evidence of published
     AFRs when Plaintiffs Hagey, Manak, and Dortch purchased their Barracuda products. *See* Section
     II(A), *supra*; SCAC ¶¶ 174, 211, 232.  Only Plaintiffs Hauff, Crawford, and Enders purchased
28   products within the time frames for which Plaintiffs offer evidence of published AFR
     representations.  *See* Section II(A), *supra*; SCAC ¶¶ 149, 186, 223.

for the *Barracuda* product, *not* the Backup Plus products they purchased. Payne Decl., Ex. 28 (Schechner Deposition, 103:20–104:17), Ex. 29 (Nelson Deposition, 112:23–113:15). Both testified they knew the Backup Plus contained the Barracuda internal drive, *id.*, but it is unclear how they knew this given that Seagate's webpages, Data Sheets, and Storage Solutions Guides never listed the internal drive for External Products, and no Product Manuals were published for External Drives during the alleged class period. Fochtman Decl. ¶ 6; Schweiss Decl. ¶ 14-15, Exs. 19-27. Putting aside this credibility issue, if Schechner and Nelson did somehow link the Barracuda AFR with the Backup Plus products, they would be atypical of other class members as there is no evidence anyone else did so.[11] Accordingly, Plaintiffs Nelson, Schechner, Hagey, Manak, and Dortch are atypical.

Further, only five of the named plaintiffs purchased Barracuda products for use in RAID arrays and thus claim to have relied on Seagate's statements about the drives' suitability for RAID. *See* SCAC, p. 29, ¶ 187 (Crawford used the Barracuda in his RAID 5 system); *Id.* at 25, ¶ 156 (Hauff used the Barracuda in a NAS system); *Id.* at 34, ¶ 224 (Enders used the Barracuda in his home NAS, which used a RAID configuration); *Id.* at 36, p. 236 (Dortch used the Barracuda in his NAS which was configured in RAID 5); Payne Decl., Ex. 22 (Manak Deposition, 135:17-136:10) (Manak intended to use the drives in a RAID configuration). Plaintiff Hagey also purchased a Barracuda product, but despite not using the Barracuda for a RAID array, stated he nevertheless relied on Seagate's statements about RAID suitability. Payne Decl., Ex. 30 (Hagey Deposition, 75:10-76:17). That only five of the eight Plaintiffs say they relied on RAID representations shows the relevance of RAID is not common to the class. Indeed, Plaintiffs' expert Boedeker confirmed in his conjoint study that RAID representations are immaterial to consumers. Accordingly, the five Plaintiffs' alleged reliance on RAID representations is atypical. *See* Boedeker Decl., p. 47, Figure 20; Payne Decl., Ex. 23 (Boedeker Depo. at 284:11-17); Simonson Decl. ¶ 9 n.6.

Finally, Plaintiffs cannot establish typicality because they purchased only two of the 12

---

[11] Plaintiff Schechner claims he relied on the Barracuda Data Sheet because he knew that the Barracuda drive was in the Backup Plus—though he "couldn't even tell you" where he got such information. Payne Decl., Ex. 28 (Schechner Depo.) at 103:20-104:17; 106:7-19. Plaintiff Nelson "believe[s]" that he relied on the Barracuda Data Sheet because "[t]he Barracuda is a different nomenclature, but it's the same drive . . . . Or at least that's what I was led to believe." Payne Decl., Ex. 29 (Nelson Depo.) at 112:23-113:15. Mr. Nelson provides no basis for this belief. *See id.* at 112:13-114:25; MPA 13:4-6; SCAC ¶¶ 135-148.

1  products at issue:  the Barracuda and Backup Plus.[12]  As a result, they lack standing to pursue claims

2  for 10 of the products.  *See Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at

3  *5 (S.D. Cal. Feb. 9, 2010) (plaintiff had standing to sue under UCL and CLRA only as to men's

4  health vitamin he purchased, but no other vitamin products, even where other products contained the

5  same alleged defect and were part of same advertising campaign); *Mlejnecky v. Olympus Imaging*

6  *Am. Inc.*, No. 2:10-CV-02630 JAM, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (named

7  plaintiff lacked standing to bring claims for products she did not purchase); *Carrea v. Dreyer's*

8  *Grand Ice Cream, Inc.*, No. 10-1044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) (same).

9  Under California substantive law, a plaintiff who lacks standing to represent the entire class is

10  inadequate.  *See, e.g.*, *Pfizer Inc.*, 182 Cal. App. 4th at 633-34 (vacating certification of UCL and

11  FAL claims because named plaintiff was inadequate to represent class of all purchasers of Listerine

12  where he viewed advertising related to only some Listerine products).  Likewise here, the named

13  plaintiffs were exposed to representations about only two of the 12 products at issue—the Barracuda

14  and the Backup Plus.  Thus, the named plaintiffs cannot seek relief for alleged

15  misrepresentations/nondisclosures as to the remaining 10 products.  Moreover, because they are

16  subject to this unique standing defense, named plaintiffs are both atypical and inadequate.

17  **V.**    **PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(b)**

18       The predominance test of Rule 23(b)(3) "is far more demanding" than the commonality test

19  of Rule 23(a)(2).  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  The presence of

20  common issues of fact or law sufficient to satisfy Rule 23(a)(2) is not enough to show those issues

21  predominate.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  "Where, after

22  adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized

23  proof or argue a number of individualized legal points to establish most or all of the elements of

24  their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."

25  *Faulk v. Sears Roebuck & Co.*, No. 11-CV-02159 YGR, 2013 WL 1703378, at *5 (N.D. Cal. Apr.

26

27       [12] There are no remaining named plaintiffs who purchased the Desktop HDD Internal Kit,
   the Backup Plus for Mac, the Expansion Desk, the Expansion Desk Plus, the GoFlex Desk for Mac,
28  the FreeAgent GoFlex Desk, the FreeAgent GoFlex Home, the Business 1 Bay NAS, the Business 2
   Bay NAS, or the Business 4 Bay NAS products.

19, 2013) (internal quotations omitted).

**A.      Common Legal Issues Do Not Predominate Because Nationwide Application of California Law Is Prohibited by *Mazza* and California's Choice of Law Principles**

In *Mazza*, 666 F.3d at 594, the Ninth Circuit vacated certification of a nationwide class under the UCL, FAL, and CLRA.  Plaintiffs alleged, *inter alia*, that Honda had failed to disclose that its Collision Mitigation Braking System may not under certain conditions warn drivers of a potential collision in time to avoid it.  *Id.* at 587.  In concluding that common issues did not predominate, the court recognized that although "California ha[d] a constitutionally sufficient aggregation of contacts to the claims of each putative class member[,]" California's governmental interest test required "each class member's consumer protection claim . . . be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  *Id.* at 590, 594.  Applying the test, the court first held there was a material conflict between California's consumer protection laws and those of the 43 other states at issue because (1) such laws have different scienter requirements, (2) some require reliance, while others do not, and (3) they provide different remedies.  *Id.* at 591.

Second, the *Mazza* court, relying on principles of federalism and California's stated policy that a "jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders[,]" determined that there was a true conflict between the laws of California and those of the other states, as each had "a strong interest in applying its own consumer protection laws" to residents.  *Id.* at 592 (quoting *McCann v. Foster Wheeler*, 48 Cal. 4th 68, 97 (2010)).[13]  Thus, the court reasoned, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place" as those states' interests in "calibrat[ing] liability to foster commerce" would be impaired by application of California's laws.  *Id.* at 593-94.  Because multiple states' laws applied, variances in state laws overwhelmed common issues and precluded a finding of predominance.  *Id.* at 596.

Here, "plaintiffs concede that material differences exist between the state laws" of California

---

[13]  Indeed, the California Supreme Court has articulated a presumption against extraterritorial application of California's laws:  "[W]e presume the Legislature did not intend a statute to be operative, with respect to occurrences outside of the state, . . . unless such intention is clearly expressed."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (internal citation and quotation marks omitted); *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (1999) (same).

and the 49 other states whose consumers Plaintiffs seek to represent, "such that they would have a significant effect on the outcome of the litigation or 'significantly alter the central issue of the manner of proof in this case.'"  MPA 17:6-8 (citing *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010)).  This concession is proper as courts applying *Mazza* have routinely held that there are material differences in states' consumer protection laws.[14]  Given these differences, to demonstrate that "foreign law, rather than California law, should apply to class claims" Seagate need only show that (1) given the differences in the affected jurisdictions' laws, a true conflict exists among the states' interests in applying their own laws, and (2) the foreign states' interests would be more impaired if they were to be subordinated to California's policy.  *Washington Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 919-20 (2001); *McCann*, 48 Cal. 4th at 87.  These requirements are easily satisfied.

Under the state interest prong, courts find that where a plaintiff "alleges that consumers from all states were defrauded into buying a product in their state, all 50 states have an interest in having their own laws applied to the consumer transactions that took place within their borders."  *Marsh v. First Bank of Delaware*, No. 11-cv-05226-WHO, 2014 WL 2085199, at *6 (N.D. Cal. May 19, 2014) (internal formatting omitted) (citing *Gianino*, 846 F. Supp. 2d at 1102).[15]  By contrast, California's interest in applying its law to residents of foreign states is attenuated.[16]  Indeed,

---

[14]  *See, e.g.*, *Wolf v. Hewlett Packard Co.*, No. CV 15-01221 BRO (GJSx), 2016 WL 7743692, at *14-15 (C.D. Cal. Sept. 1, 2016) (California law could not apply because variances in state consumer protection statutes were material and outcome-determinative); *Darisse*, 2016 WL 4385849, at *10-15 (detailing differences in consumer protection laws); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1102-03 (C.D. Cal. 2012) (collecting cases and detailing variations in scienter, reliance, injury, pre-filing notice, statutes of limitation, and damages requirements); *In re Hitachi Tele. Optical Block Cases*, No. 08cv1746, 2011 WL 9403, at *6 (S.D. Cal. Jan. 3, 2011) ("There are material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states"); *Ralston v. Mortgage Investors Group, Inc.*, No. 5:08-cv-00536-JF (PSG), 2012 WL 1094633, at *3-4 (N.D. Cal. Mar. 30, 2012) (in omissions case under UCL, limiting certification to California residents, relying on *Mazza* and *Gianino*).  *See also* Payne Decl., Ex. 25 (50 state consumer protection statute survey).

[15]  *See also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602-03 (N.D. Cal. 2015) (each state had an interest in applying its own wiretapping statute to class members' claims, which means that 'if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce.'"); *Lewallen v. Medtronic USA, Inc.*, No. C 01-20395 RMW, 2002 WL 31300899, at *5 (N.D. Cal. Aug. 28, 2002) ("each of the fifty states may have an interest in seeing that its law is applied in an action involving one of its own injured citizens").

[16]  *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting

1   California courts have acknowledged that "with respect to regulating or affecting conduct within its

2   borders, the place of the wrong"—here, the state in which the last event necessary to make the actor

3   liable occurred (*i.e.,* the state of purchase)—"has the predominant interest" in having its laws

4   applied. *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980), *cited with approval in Abogados*

5   *v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000).

6       Plaintiffs attempt to side-step this analysis by contending that "no state has an interest in

7   limiting the liability of [Seagate] other than California . . . ." MPA 18:7-9. This argument was

8   flatly rejected in *Mazza*: "[i]n concluding that no foreign state has 'an interest in denying its citizens

9   recovery under California's potentially more comprehensive consumer protection laws,' ***the district***

10  ***court erred by discounting or not recognizing each state's valid interests in shielding out-of-state***

11  ***businesses from what the state may consider to be excessive litigation***." *Mazza*, 666 F.3d at 592

12  (emphasis added) (citing *McCann*, 48 Cal. 4th at 91). Moreover, Seagate has substantial facilities in

13  other states, each of which would also have a strong interest in regulating its conduct. *See, e.g.,*

14  Schweiss Decl. ¶ 3 (Product Manuals and Data Sheets drafted in Oklahoma); Almgren Decl. ¶ 2

15  (Colorado); Dewey Decl. ¶ 3 (same); Paneno Decl. ¶ 2 (Minnesota).[17] These states' interests would

16  be frustrated by blanket application of California's laws.

17      Finally, under the comparative impairment prong, "with respect to regulating or affecting

18  conduct within its borders, the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at

19  593 (citations omitted) (where plaintiffs alleged Honda failed to disclose brake defect at point of

20  sale, state where product was sold had prevailing interest).[18] Plaintiffs misconstrue "the place of the

21  wrong" as the state "from where the advertising scheme, including the omissions, emanated." MPA

22

---

23  nonresident shareholders"); *Mazza*, 666 F.3d 594 (notwithstanding that Honda is a California
    corporation and the allegedly unlawful advertising "emanated" from California, the court
24  "disagree[d] . . . that applying California law to the claims of foreign residents concerning acts that
    took place in other states where cars were purchased or leased is necessary . . . .").

25  [17] *See also Jobs at Seagate*, seagate.com, https://www.seagate.com/jobs/culture/ (last visited
    Jan. 1, 2018) (listing locations in the Americas as including, among others, facilities in Longmont,
26  Colorado; Bloomington and Shakopee, Minnesota; Oklahoma City, Oklahoma; Tigard, Oregon;
    Lake Mary, Florida; Schaumburg, Illinois; and Round Rock, Texas).

27  [18] *See also McCann*, 48 Cal. 4th at 94 n.12 (geographic location of an omission is place of
    transaction where it should have been disclosed); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80
28  n.6 (1957) (in fraud case, place of wrong was state where misrepresentations were communicated,
    not state where intention to misrepresent was formed or where misrepresented acts took place).

18:13-16.  This was precisely the argument raised by the dissent in *Mazza*, which the majority

rejected.  666 F.3d at 598 (Nelson, J., dissenting).  Here, the conduct giving rise to Seagate's alleged

liability was its communication of AFR representations, which gave rise to a duty to disclose

allegedly higher failure rates.  This asserted harm occurred at the point of purchase, not the place the

purported intention to omit information was formed or from which the AFR statements emanated.

"*Mazza* is materially indistinguishable from this case . . . ."  *See Kowalsky*, 2012 WL

892427, at *7.  Plaintiffs' claims arise under the same statutes and involve the same state interests.

Accordingly, the result must be the same:  California law cannot be applied on a nationwide basis,

and each class member's claims must be governed by the laws of the state of purchase.  Because

"the applicable law" in this case "derives from the law of the 50 states . . . differences in state law

will 'compound the [ ] disparities' among class members from the different states[,]" rendering

individual issues predominant, and the class unmanageable.[19]  *Zinser v. Accufix Research Institute,*

*Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted).

**B.     Individual Legal Issues Predominate Under the Laws of the Eight Proposed Sub-Class States As Well**

Plaintiffs' fallback request to certify sub-classes for the eight states in which they reside does

not overcome the lack of predominance of legal issues.  It is axiomatic that a class proponent must

provide "a suitable and realistic plan for the trial of the class claims . . . ."  *Marsh*, 2014 WL

2085199, at *8; *see also Grayson v. 7-Eleven, Inc.*, No. 09-cv-1353 MMA (WMc), 2011 WL

2414378, at *3 (S.D. Cal. June 10, 2011) (where laws of multiple states apply, party seeking

certification must "creditably demonstrate, through an 'extensive analysis' of state law variances,

'that class certification does not present insuperable obstacles'").  Here, Plaintiffs *assume* California

law will apply, notwithstanding their alternative pleading of eight state subclasses.  Indeed,

Plaintiffs fail to argue, let alone present a trial plan, as to how common questions under eight states'

---

[19] None of Plaintiffs' citations supports a contrary result.  Significantly, Plaintiffs cite only pre-*Mazza* cases in support of their nationwide class arguments except for *Opperman v. Path, Inc.*, 2016 WL 3844326, at *6-7 (N.D. Cal. July 15, 2016), which applies California's governmental interest test to a completely different statute.  MPA 14:16-19:2.

-18-

laws will predominate at trial.[20]  Instead, Plaintiffs provide an Appendix that surveys, without analysis, (1) intent and reliance requirements, (2) the scope of claims permitted, and (3) the damages permitted under eight states' laws.  Dkt. 147.  This falls short of the realistic plan for trial of class claims Plaintiffs are required to present.  Accordingly, Plaintiffs' subclasses are void *ab initio*.

In any event, the consumer protection laws of the proposed eight subclasses vary materially, and thus a class trial would present insurmountable challenges.  For example:

**Injury/Deception Requirements:**  South Carolina requires that any alleged unfair or deceptive act must affect the "public interest."  *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638 (2013).  In Texas, deception occurs when a statement has a tendency "to deceive the ignorant, the unthinking, and the credulous who do not stop to analyze but are governed by appearances and general impressions."  *Streber v. Hunter*, 221 F.3d 701, 728 (5th Cir. 2000); *RRTM Rest. Corp. v. Keeping*, 766 S.W.2d 804, 808 (Tex. App. 1988), *writ denied* (Sept. 6, 1989) (citing *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978)).  By contrast, California applies a "reasonable man standard."  *E.g.*, *In re Toyota Motor Corp.*, 2011 U.S. Dist. LEXIS 52529 (C.D. Cal. May 13, 2011).

**Reliance Requirement:**  Plaintiffs' Appendix erroneously states that South Dakota and Texas do not require reliance.  They do.  *See Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.,* 2009 WL 3150984, at *7 (D.S.D. Sept. 28, 2009) (South Dakota Deceptive Trade Practices Act requires that "a plaintiff must have relied on the alleged misrepresentation"); Tex. Bus. & Com. Code Ann. § 17.50 (a) (West) (same).  Although Florida's law does not require reliance, Plaintiffs must still show *causation* such that class certification is improper if there are "many differences in the facts supporting the claims of individual plaintiffs."  *Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53 (Fla. App. Dist. Ct. 2008).  *Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. 1st Dist. Ct. App. 2000), upon which Plaintiffs rely, has been criticized to the extent it suggests otherwise.  *See, e.g.*, *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 686-87 (S.D. Fla. 2008); *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. Dist. Ct. App. 2003); *see also In re Clorox Consumer Litig.*, 301 F.R.D. at 448 (denying certification of Florida subclass and explaining *Powertel* has been criticized for failure to analyze causation).  California's UCL requires named plaintiffs to show actual reliance, *Tobacco II*, 46 Cal.4th at 328, while the CLRA requires reliance as to the class, *see Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

**Scope of Omission Claim/Knowledge Requirements:**  Under Texas's consumer protection act, an omission must be as to information known to the defendant at the time of the transaction and intended to deceive the consumer.  Tex. Bus. & Com. Code Ann. § 17.46(7) (West).  By contrast, under Massachusetts G.L. c. 93, an "action based on deceptive acts or practices does not require . . . knowledge on the part of the defendant that the representation was false."  *Aspinall v. Philip Morris Co., Inc.*, 442 Mass. 381, 394 (2004).

---

[20] Plaintiffs are not allowed to do so on reply.  *Rollins v. Dignity Health*, 19 F. Supp. 909, 918 (N.D. Cal. 2013) (citing *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.")).

**Statutes of Limitations:** Statutes of limitations for consumer protection laws vary significantly from 2 to 10 years among the states: 2 years (TX); 3 years (CA (CLRA, FAL), NY, SC); 4 years (CA (UCL), FL, MA, SD); 5 years (TN). *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 925, 933 (C.D. Cal. 2011).[21]

**Class Actions/Private Right of Action:** South Carolina and Tennessee, two of the proposed subclass states, do not permit class actions under their consumer protection laws. *See* S.C. Code § 39-5-140; *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123 (2009) ("Federal courts have recognized that class actions may not be brought pursuant to SCUTPA"); Tenn. Code Ann. § 47-18-109 (West) ("Any person who suffers an ascertainable loss of money or property . . . by another person of an unfair or deceptive act or practice described in § 47-18-104(b) . . . may bring an action individually to recover actual damages."); *see also Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 310 (Tenn. 2008) (class actions prohibited under Tennessee consumer statute).

**Remedies/Relief:** Available remedies also vary materially. While some states permit recovery of damages, including MA, SD, TX, and CA under the CLRA, other states limit the available remedies to equitable or restitutionary relief, including CA (UCL, FAL). In addition, several states do not permit punitive damages, including CA (UCL, FAL), SC, SD, TN. *See* Payne Decl., Ex. 25.

Given these substantial differences in the subclass states' laws and Plaintiffs' failure to demonstrate how a trial on common issues would proceed in light of them, Plaintiffs have not met their burden to show that common issues would predominate for the proposed subclasses.[22]

## C. Individual Factual Issues Predominate Regarding Exposure, Reliance, and Materiality

Plaintiffs are entitled to a classwide inference of reliance *only if* they can show "(1) that uniform misrepresentations were made to the class, and (2) that those misrepresentations were material." *Darisse*, 2016 WL 4385849, at *5 (quoting *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 571 (C.D. Cal. 2014)). Plaintiffs have not shown classwide exposure to uniform AFR and RAID representations because (1) there is no evidence Seagate ever published AFRs for External Products,

---

[21] To the extent this Court is inclined to certify subclasses, Plaintiffs Crawford and Manak's claims under the consumer protection laws of New York and Texas, respectively, would be time-barred, rendering them inadequate representatives and their claims atypical. *See* Payne Decl., Exs. 24 at 39:23-25 (Crawford Deposition, showing he purchased his drive in 2012) & 22 at 24:24-25:2 (Manak Deposition, showing he purchased his drives in 2013); SCAC ¶¶ 186, 211. *See also Becerra v. General Motors LLC*, 241 F. Supp. 3d 1094, 1115-16 (S.D. Cal. 2017) (dismissing named plaintiff's claim under Texas Deceptive Trade Practices Act as time-barred and declining to apply relation-back doctrine); *Jordan v. Paul Financial, LLC*, No. C 07-04496 SI, 2009 WL 192888, at *3 (N.D. Cal. Jan. 27, 2009) (holding named plaintiff did not have standing to represent class where his claim was barred by the statute of limitations).

[22] A California subclass also would not be superior under Rule 23(b)(3)(B) as it would be duplicative of the action pending in San Francisco Superior Court, in which Judge Curtis Karnow granted certification as to state plaintiffs' omissions claims under the CLRA and the fraudulent prong of the UCL Payne Decl., Ex. 31 (Order Granting in Part Pls.' Mot. for Class Cert. at 33, *Pozar v. Seagate Technology LLC*, No. CGC-15-547787 (S.F. Super. Ct. Nov. 1, 2017)).

1    (2) product packaging for the Internal Products contained no AFR representations, (3) Seagate did

2    not consistently publish AFRs of Internal Products, and (4) RAID representations were made only

3    as to Internal Products and the Business 2- and 4-Bay NAS.  S*ee* Sections II(A), IV(A), *supra*.

4         Nor have Plaintiffs shown that representations regarding RAID and AFR were common or

5    material to the class.  Under California law, "[a] misrepresentation is judged to be 'material' if 'a

6    reasonable man would attach importance to its existence or nonexistence in determining his choice

7    of action in the transaction in question'. . . ."  *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 332

8    (2011).  Here, AFRs could not have been common or material to buyers of External Products or

9    those who purchased based solely on the box (which would be most brick-and-mortar store

10   shoppers), because they were never exposed to AFR representations.  At best, Plaintiffs' evidence

11   shows that only purchasers of Internal Products who went on Seagate's website and viewed either

12   (1) the specifications tab or downloadable Data Sheets on the Internal Products' pages no earlier

13   than October 23, 2011, (2) the Product Manual after January 2015, or (3) the Storage Solutions

14   Guides, could have been exposed to and relied on AFR representations.  Payne Decl. ¶ 9-10;

15   Schweiss Decl., ¶ 11, Exs. 19-27.  Moreover, even assuming common representations, Plaintiffs still

16   cannot establish classwide materiality in light of Simonson's finding that consumers' purchasing

17   decisions did not change in any statistically significant way when presented with Data Sheets that

18   included AFRs of <1% vs. <8%.  Simonson Decl. ¶ 37.  Regarding RAID, there were no RAID

19   representations as to nearly all External Products, and not even all of the named plaintiffs considered

20   RAID suitability in purchasing their Drives.  Further, even Plaintiffs' own expert concludes that

21   RAID suitability was statistically immaterial.  Boedeker Decl. ¶ 158.

22        Plaintiffs have not established the common materiality of Seagate's alleged AFR and RAID

23   misrepresentations, *see* Section IV(A), *supra*, and cannot show that these representations were

24   uniformly made to all members of the proposed class.  *See* Section II(A), *supra*.  Accordingly, there

25   can be no presumption of reliance or materiality, and therefore individualized factual inquiries will

26   be necessary to determine: (1) whether AFR or RAID representations appeared on Seagate's website

27   or other product-related materials at the time of each class member's purchase for the product

28   purchased; (2) whether the class member saw either or both representations; and (3) whether the

1    specific product purchased in fact had a higher failure rate during the time period in question such

2    that Seagate owed a duty to counter its affirmative representations.

3    **D.    The Proposed Class Is Neither Manageable Nor Superior**

4    Rule 23(b)(3) requires a finding that a class action is superior to other available methods of

5    adjudication, in light of (1) class members' interests in individually controlling their claims, (2) the

6    extent and nature of any litigation already begun by class members, (3) the desirability of

7    concentrating the litigation in a particular forum, and (4) the likely difficulties in managing a class

8    action. Fed. R. Civ. P. 23(b)(3)(A)-(D). As discussed above in Sections II(A) and IV(A), Plaintiffs'

9    motion proposes a grossly overbroad class that includes many members who were never exposed to

10   the allegedly misleading AFR and/or RAID claims, and hence "are not entitled to recover." *See*

11   *Dudum v. Carter's Retail, Inc.*, No. 14-cv-00988-HSG, 2016 WL 946008, at *5 (N.D. Cal. Mar. 14,

12   2016); *see also Pfizer, Inc. v. Super. Ct.*, 182 Cal. App. 4th at 632-33.[23] Plaintiffs thus fail the

13   "implied prerequisite" of providing a class definition that allows for a manageable resolution of

14   class claims. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).[24]

15   Moreover, any attempt to address the class' overbreadth highlights the issues that render

16   certification of any class improper. Without a widespread marketing campaign, to determine who

17   was actually exposed to the allegedly deceptive statements, the Court would have to examine

18   whether purchasers: (1) reviewed Seagate's website containing the Data Sheets, Product Manuals, or

19

20   [23] In *Pfizer*, plaintiffs sought certification of UCL and FAL claims challenging Pfizer's claim that its Listerine mouthwash product was "as effective as floss." The record indicated that 19 of 34 different Listerine bottles did not contain the challenged claim. *Id.* at 632. The Court of Appeal reversed certification of a class of all Listerine purchasers, explaining that "perhaps the majority of class members who purchased Listerine during the [class period] did so not because of any exposure to Pfizer's allegedly deceptive conduct, but rather, because they were brand-loyal customers, or for other reasons." *Id.* at 632. *See also Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2011 WL 4599833, at *5 (C.D. Cal. Sept. 29, 2011) (denying certification where allegedly false and misleading claims did not appear on all product packaging versions plaintiffs sought to include).

[24] The class definition is further overbroad because it only includes a class cutoff date, unbounded by any start date. Not. of Mot. at i:9-ii:5. A class is overboard if it "does not specify a time period for the proposed class, which means the definition is not limited to class members who come within the applicable statute of limitation." *Erickson v. Elliot Bay Adjustment Co.*, No. C16-0391 JLR, 2017 WL 1179435, at *11 (W.D. Wash. Mar. 30, 2017); *see also Berndt v. Cal. Dept. of Corrections*, Case No. C 03-3174 PJH, 2012 WL 950625, at *12 (N.D. Cal. Mar. 20, 2012) ("[S]ince it is impossible to tell from plaintiffs' evidence or argument which or how many class members fall within the appropriate statute of limitations period, the class is simply not ascertainable as currently pled.") Perhaps this is because Plaintiffs tacitly acknowledge the start date would vary based on the statute of limitations for each state subclass.

1    Storage Solutions Guides; (2) if they accessed any of these publications, were they the versions that

2    contained AFR and/or RAID representations; if so, (3) did the consumer purchase one of the

3    products that had one of the alleged misrepresentations; (4) if so, was the representation actually

4    false with regard to drives manufactured at that time; (5) is that class member's claim barred by the

5    statute of limitations under the laws of his or her jurisdiction; and (6) if not, has the class member

6    stated a claim under the applicable laws of her jurisdiction?  These multiple inquiries would lead to

7    "mini-trials," which class actions are designed to avoid.  As a result, a class action would not be

8    superior to other means of resolving this dispute.  Fed. R. Civ. P. 23(b)(3).

9    **VI.    PLAINTIFFS' DAMAGES MODEL IS FACTUALLY AND LEGALLY UNSOUND;
10    BOEDEKER'S DECLARATION SHOULD BE STRICKEN**

11        The Boedeker Declaration purports to set forth a class-wide damages model.  The model, in

12    turn, is based on a conjoint study in which purported hard-drive consumers were surveyed about a

13    limited set of preselected product features to arrive at a dollar value for Seagate's purported

14    omissions with respect to the Drives' AFR and suitability for use in RAID or NAS configurations.

15    The conjoint study, however, is so fundamentally flawed in its conception and execution as to

16    render Boedeker's report and conclusions inadmissible under *Daubert v. Merrell Dow Pharms. Inc.*,

17    509 U.S. 579, 589 (1993); *see generally* Simonson Decl. at ¶¶ 14-20; 42-76.

18        More fundamentally, Boedeker's opinion is irrelevant because it fails to meet the applicable

19    standard for a class-wide damages model under *Comcast Corp. v. Behrend*,  569 U.S. 27, 34 (2013).

20    *Comcast* requires plaintiffs "to show their damages *stemmed from* defendant's actions that created

21    the legal liability." *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (emphasis

22    added).  But Boedeker's analysis is based on his assumption *that it does not matter if consumers*

23    *even saw the published AFR;* the "market equilibrium" price nevertheless somehow reflects its value

24    and can be used to compute "damages."  Simonson Decl. ¶ 70 (quoting Boedeker Depo. at 223:10-

25    225:9).  Such a model cannot determine damages in a case based on alleged consumer *deception*,

26    where Plaintiffs must show that the putative class as a whole suffered harm *as a result of* common,

27    material representations and omissions.  Boedeker's opinions should be stricken not only because

28

1    they are based on a flawed study, but because they are irrelevant.[25]

2    **VII.    HOSPODOR'S DECLARATION SHOULD LIKEWISE BE STRICKEN**

3        The Hospodor Declaration purports to set forth Plaintiffs' scientific evidence of a "higher"

4    AFR and "unreliability" such that Seagate's contrary representations with regard to the Drives at

5    issue were commonly false and material to the proposed class.  It does not and cannot do so.

6    Therefore, Hospodor's entire declaration is improper and irrelevant and should be stricken.

7        First, it is axiomatic that expert testimony on class certification must relate to issues "that

8    could affect the class as a whole."  *See In re 5-Hour Energy Marketing and Sales Practice*

9    *Litigation*, 2017 WL 2559615 at *3 (C.D. Cal. June 7, 2017).  Here, Hospodor admits that he has

10   provided only "examples," and ***does not opine*** that any issues, or a "high" AFR, were ***common*** to

11   the drives and products, or among the named plaintiffs and the class.  Payne Decl., Ex. 11 at 49:7-

12   52:25, 54:17-55:5, 125:19-128:14; 255:3-256:16.  In fact, he presents no such evidence.  Adams

13   Decl, §§ VI, VIII, ¶¶ 23, 81.  In particular, Hospodor's "evidence" and opinions of "unreliability" in

14   paragraphs 118-212 of his declaration (discussion of yield, ECRs, firmware releases, ship holds,

15   etc.) are ***limited to*** 2011-2012 (or May 2013 at the latest), and with minor exceptions, to the Grenada

16   ***Classic*** drives.  Adams Decl., § VIII, ¶¶ 23, 81.  A limited number of statements about a subset of

17   products at certain points in time cannot provide evidence as to any common issues of law or fact.

18       Second, Plaintiffs' theory, and Hospodor's opinions, are that Seagate published one AFR for

19   the drives, but that the "true" AFR was "higher than advertised."  However, much of Hospodor's

20   declaration is not the proper subject of expert testimony.  He admits that a layperson can read and

21   interpret Seagate's consumer-facing representations about the Drives.  Payne Decl., Ex. 11 at

22   315:22-317:13.  Thus, Hospodor's opinions in paragraphs 44-58 regarding the "advertised" AFRs

23   are improper.[26]  Moreover, the bulk of Hospodor's evidence and opinion about the "true" AFR is

24

---

25       [25]    After reviewing the Court's opinion in *Kamakahi v. Am. Society for Reproductive*
     *Medicine,* No. 3:11-cv-01781-JCS, 2014 WL 7183629 (N.D. Cal. Dec. 15, 2014) regarding the
26   application of Local Rule 7-3 to *Daubert* motions. Seagate asked Plaintiffs to stipulate to a proposed
     order permitting *Daubert* motions to be filed separately and within one week of the Opposition and
27   Reply papers, respectively.  Plaintiffs declined.  Accordingly, Seagate has confined its challenges to
     Plaintiffs' expert evidence to this memorandum and expects that Plaintiffs will do the same on reply.
28       [26]  Hospodor's statements and conclusions that AFRs were "higher than advertised" or some
     number of "times higher than advertised" should likewise be stricken because they are simply an

1    based on construing Seagate documents about **External Products**.  Adams Decl., § VI.A.  Because

2    Seagate did not publish an AFR for such products, Hospodor's evidence cannot support his opinions

3    that the "true" AFR was "higher than advertised," and the evidence and opinions are therefore

4    irrelevant to certification.  The remainder of Hospodor's opinions regarding the purported "true"

5    AFRs of Seagate drives are based on speculation and misinterpretations of a handful of internal

6    Seagate documents.  Adams Decl., §§ VI.B, VI.C.  Hospodor provides no evidence to support

7    unsubstantiated personal interpretations of these documents, and his purported "expertise" alone is

8    insufficient.  *See Daubert*, 509 U.S. at 590 (defining expert knowledge as "more than subjective

9    belief or unsupported speculation"); *see also Pooshs v. Philip Morris USA, Inc*., 287 F.R.D. 543,

10    548 (N.D. Cal. 2012) ("interpreting' [defendant's] company documents would not assist the jury

11    because those documents speak for themselves").  These opinions are based on neither reliable

12    methodology nor sufficient evidence, and hence are inadmissible.  *See General Elec. Co. v. Joiner*,

13    522 U.S. 136, 146 (1997) (upholding exclusion of opinions because "nothing in either *Daubert* or

14    the Federal Rules of Evidence requires a court to admit opinion evidence that is connected to

15    existing data only by the *ipse dixit* of the expert").

16    Finally, Hospodor's claim that Seagate's method for calculating AFR underestimated the

17    "true" AFR of the Drives is not the product of accepted principles of reliability analysis correctly

18    applied to Seagate's documents and data (which is the only evidence he considered).  Adams Decl.,

19    § VII.  These opinions are therefore inadmissible as well.  *See Perez v. State Farm Mut. Auto Ins.*

20    *Co*., 2012 WL 3116355 at *5-6 (N.D. Cal. July 31, 2012) (rejecting expert who failed to identify a

21    methodology and relied only on documents sent to him by plaintiff's counsel).

22    **VIII.    CONCLUSION**

23    For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

24    Dated:  January 5, 2018                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

25                                    By _____
                                             */s/ Anna S. McLean*

26                                    ANNA S. McLEAN
                                        Attorneys for Defendant
                                        SEAGATE TECHNOLOGY LLC

27

28    improper attempt to testify that Seagate "advertised" a specific AFR, a matter as to which Hospodor
has neither personal knowledge nor professional expertise.