# EXHIBIT A

2018 WL 505343
Only the Westlaw citation is currently available.
United States Court of Appeals,
Ninth Circuit.

IN RE HYUNDAI AND KIA
FUEL ECONOMY LITIGATION,

Kehlie R. Espinosa; Nicole Marie Hunter; Jeremy
Wilton; Kaylene P. Brady; Gunther Krauth;
Eric Graewingholt; Reece Philip Thomson; Alex
Maturani; Nilufar Rezai; Jack Rottner; Lydia Kievit;
Rebecca Sanders; Bobby Brandon Armstrong; Sergio
Torres; Richard Woodruff; Marshall Lawrence
Gordon; Joel A. Lipman; James Gudgalis; Mary
P. Hoessler; Stephen M. Hayes; Brian Reeves;
Sam Hammond; Mark Leggett; Edwin Naythons;
Michael Washburn; Ira D. Dunst; Brian Weber;
Kamneel Maharaj; Kim Iocovozzi; Herbert J.
Young; Linda Hasper; Leslie Bayard; Tricia Fellers;
Orlando Elliott; James Bonsignore; Margaret
Setser; Guillermo Quiroz; Douglas Kurash; Andres
Carullo; Laura S. Sutta; Georgia L. Thomas; Eric
J. Olson; Jennifer Myers; Tom Woodward; Jerold
Terhost; Cameron John Cestaro; Donald Brown;
Maria Figueroa; Constance Martyn; Thomas Ganim;
Daniel Baldeschi; Lillian E. Levoff; Giuseppina
Roberto; Robert Trader; Sean Goldsberry; Cynthia
Navarro; Owen Chapman; Michael Brein; Travis
Brissey; Ronald Burkard; Adam Cloutier; Steven
Craig; John J. Dixson; Erin L. Fanthorpe; Eric
Hadesh; Michael P. Keeth; John Kirk MacDonald;
Michael Mandahl; Nicholas McDaniel; Mary J.
Moran-Spicuzza; Gary Pincas; Brandon Potter;
Thomas Purdy; Rocco Renghini; Michelle Singleton;
Ken Smiley; Gregory M. Sonstein; Roman Starno;
Gayle A. Stephenson; Andres Villicana; Richard
Williams; Bradford L. Hirsch; Ashley Cephas; David
E. Hill; Chad McKinney; Mordechai Schiffer; Lisa
Sands; Donald Kendig; Kevin Gobel; Eric Larson;
Lin McKinney; Ryan Cross; Phillip Hoffman;
Debra Simmons; Abelardo Morales; Peter Blumer;
Carolyn Hammond; Melissa Leggett; Kelly Moffett;
Evan Grogan; Carlos Medina; Alberto Dominguez;
Catherine Bernard; Michael Breien; Laura Gill;
Thomas Schille; Judith Stanton; Randy Rickert;

Bryan Zirkel; James Kundrat; Robert Smith;
Maria Kotova; Josipa Casey; Luan Snyder; Ben
Baker; Brian Nguyen; Hattie Williams; Bill Holvey;
Lourdes Vargas; Kendall Snyder; Nomer Medina;
Sameria Goff; Ursula Pyland; Marcell Chapman;
Kaye Kurash; Holly Amromin; John Chapman;
Mary D'Angelo; George Rudy; Ayman Mousa;
Shelly Henderson; Jeffrey Hathaway; Dennis
J. Murphy; Douglas A. Patterson; John Gentry;
Linda Ruth Scott; Danielle Kay Gilleland; Joseph
Bowe; Michael Desouto, Plaintiffs-appellees,
Greg Direnzo, Petitioner-Appellee,
Hyundai Motor America; Kia Motors America; Kia
Motors Corporation; Grossinger Autoplex, Inc., FKA
Grossinger Hyundai; John Krafcik; Hyundai Motor
Company; Sarah Kundrat, Defendants-Appellees,
v.
Caitlin Ahearn; Andrew York, Objectors-Appellants.
In re Hyundai and Kia Fuel Economy Litigation,
In re,

Kehlie R. Espinosa; Nicole Marie Hunter; Jeremy
Wilton; Kaylene P. Brady; Gunther Krauth;
Eric Graewingholt; Reece Philip Thomson; Alex
Maturani; Nilufar Rezai; Jack Rottner; Lydia Kievit;
Rebecca Sanders; Bobby Brandon Armstrong; Sergio
Torres; Richard Woodruff; Marshall Lawrence
Gordon; Joel A. Lipman; James Gudgalis; Mary
P. Hoessler; Stephen M. Hayes; Brian Reeves;
Sam Hammond; Mark Leggett; Edwin Naythons;
Michael Washburn; Ira D. Dunst; Brian Weber;
Kamneel Maharaj; Kim Iocovozzi; Herbert J.
Young; Linda Hasper; Leslie Bayard; Tricia Fellers;
Orlando Elliott; James Bonsignore; Margaret
Setser; Guillermo Quiroz; Douglas Kurash; Andres
Carullo; Laura S. Sutta; Georgia L. Thomas; Eric
J. Olson; Jennifer Myers; Tom Woodward; Jerold
Terhost; Cameron John Cestaro; Donald Brown;
Maria Figueroa; Constance Martyn; Thomas Ganim;
Daniel Baldeschi; Lillian E. Levoff; Giuseppina
Roberto; Robert Trader; Sean Goldsberry; Cynthia
Navarro; Owen Chapman; Michael Brein; Travis
Brissey; Ronald Burkard; Adam Cloutier; Steven
Craig; John J. Dixson; Erin L. Fanthorpe; Eric
Hadesh; Michael P. Keeth; John Kirk MacDonald;
Michael Mandahl; Nicholas McDaniel; Mary J.

Moran-Spicuzza; Gary Pincas; Brandon Potter; Thomas Purdy; Rocco Renghini; Michelle Singlteon; Ken Smiley; Gregory M. Sonstein; Roman Starno; Gayle A. Stephenson; Andres Villicana; Richard Williams; Bradford L. Hirsch; Ashley Cephas; David E. Hill; Chad McKinney; Mordechai Schiffer; Lisa Sands; Donald Kendig; Kevin Gobel; Eric Larson; Lin McKinney; Ryan Cross; Phillip Hoffman; Debra Simmons; Abelardo Morales; Peter Blumer; Carolyn Hammond; Melissa Leggett; Kelly Moffett; Evan Grogan; Carlos Medina; Alberto Dominguez; Catherine Bernard; Michael Breien; Laura Gill; Thomas Schille; Judith Stanton; Randy Rickert; Bryan Zirkel; James Kundrat; Robert Smith; Maria Kotova; Josipa Casey; Luan Snyder; Ben Baker; Brian Nguyen; Hattie Williams; Bill Holvey; Lourdes Vargas; Kendall Snyder; Nomer Medina, Sameria Goff; Ursula Pyland; Marcell Chapman; Kaye Kurash; Holly Amromin; John Chapman; Mary D'Angelo; George Rudy; Ayman Mousa; Shelly Henderson; Jeffrey Hathaway; Dennis J. Murphy; Douglas A. Patterson; John Gentry; Linda Ruth Scott; Danielle Kay Gilleland; Joseph Bowe; Michael Desouto, Plaintiffs-Appellees, Greg Direnzo, Petitioner-Appellee, Hyundai Motor America; Kia Motors America; Kia Motors Corporation; Grossinger Autoplex, Inc., FKA Grossinger Hyundai; John Krafcik; Hyundai Motor Company; Sarah Kundrat, Defendants-Appellees, v.

Antonio Sberna, Objector-Appellant, In re Hyundai and Kia Fuel Economy Litigation Kehlie R. Espinosa; Nicole Marie Hunter; Jeremy Wilton; Kaylene P. Brady; Gunther Krauth; Eric Graewingholt; Reece Philip Thomson; Alex Maturani; Nilufar Rezai; Jack Rottner; Lydia Kievit; Rebecca Sanders; Bobby Brandon Armstrong; Sergio Torres; Richard Woodruff; Marshall Lawrence Gordon; Joel A. Lipman; James Gudgalis; Mary P. Hoessler; Stephen M. Hayes; Brian Reeves; Sam Hammond; Mark Leggett; Edwin Naythons; Michael Washburn; Ira D. Dunst; Brian Weber; Kamneel Maharaj; Kim Iocovozzi; Herbert J. Young; Linda Hasper; Leslie Bayard; Tricia Fellers; Orlando Elliott; James Bonsignore; Margaret

Setser; Guillermo Quiroz; Douglas Kurash; Andres Carullo; Laura S. Sutta; Georgia L. Thomas; Eric J. Olson; Jennifer Myers; Tom Woodward; Jerold Terhost; Cameron John Cestaro; Donald Brown; Maria Figueroa; Constance Martyn; Thomas Ganim; Daniel Baldeschi; Lillian E. Levoff; Giuseppina Roberto; Robert Trader; Sean Goldsberry; Cynthia Navarro; Owen Chapman; Michael Brein; Travis Brissey; Ronald Burkard; Adam Cloutier; Steven Craig; John J. Dixson; Erin L. Fanthorpe; Eric Hadesh; Michael P. Keeth; John Kirk MacDonald; Michael Mandahl; Nicholas McDaniel; Mary J. Moran-Spicuzza; Gary Pincas; Brandon Potter; Thomas Purdy; Rocco Renghini; Michelle Singlteon; Ken Smiley; Gregory M. Sonstein; Roman Starno; Gayle A. Stephenson; Andres Villicana; Richard Williams; Bradford L. Hirsch; Ashley Cephas; David E. Hill; Chad McKinney; Mordechai Schiffer; Lisa Sands; Donald Kendig; Kevin Gobel; Eric Larson; Lin McKinney; Ryan Cross; Phillip Hoffman; Debra Simmons; Abelardo Morales; Peter Blumer; Carolyn Hammond; Melissa Leggett; Kelly Moffett; Evan Grogan; Carlos Medina; Alberto Dominguez; Catherine Bernard; Michael Breien; Laura Gill; Thomas Schille; Judith Stanton; Randy Rickert; Bryan Zirkel; James Kundrat; Robert Smith; Maria Kotova; Josipa Casey; Luan Snyder; Ben Baker; Brian Nguyen; Hattie Williams; Bill Holvey; Lourdes Vargas; Kendall Snyder; Nomer Medina; Sameria Goff; Ursula Pyland; Marcell Chapman; Kaye Kurash; Holly Amromin; John Chapman; Mary D'Angelo; George Rudy; Ayman Mousa; Shelly Henderson; Jeffrey Hathaway; Dennis J. Murphy; Douglas A. Patterson; John Gentry; Linda Ruth Scott; Danielle Kay Gilleland; Joseph Bowe; Michael Desouto, Plaintiffs-Appellees, Greg Direnzo, Petitioner-Appellee, Hyundai Motor America; Kia Motors America; Kia Motors Corporation; Grossinger Autoplex, Inc., FKA Grossinger Hyundai; John Krafcik; Hyundai Motor Company; Sarah Kundrat, Defendants-Appellees, v.

Peri Fetsch, Objector-Appellant. In re Hyundai and Kia Fuel Economy Litigation

Kehlie R. Espinosa; Nicole Marie Hunter; Jeremy
Wilton; Kaylene P. Brady; Gunther Krauth;
Eric Graewingholt; Reece Philip Thomson; Alex
Maturani; Nilufar Rezai; Jack Rottner; Lydia Kievit;
Rebecca Sanders; Bobby Brandon Armstrong; Sergio
Torres; Richard Woodruff; Marshall Lawrence
Gordon; Joel A. Lipman; James Gudgalis; Mary
P. Hoessler; Stephen M. Hayes; Brian Reeves;
Sam Hammond; Mark Leggett; Edwin Naythons;
Michael Washburn; Ira D. Dunst; Brian Weber;
Kamneel Maharaj; Kim Iocovozzi; Herbert J.
Young; Linda Hasper; Leslie Bayard; Tricia Fellers;
Orlando Elliott; James Bonsignore; Margaret
Setser; Guillermo Quiroz; Douglas Kurash; Andres
Carullo; Laura S. Sutta; Georgia L. Thomas; Eric
J. Olson; Jennifer Myers; Tom Woodward; Jerold
Terhost; Cameron John Cestaro; Donald Brown;
Maria Figueroa; Constance Martyn; Thomas Ganim;
Daniel Baldeschi; Lillian E. Levoff; Giuseppina
Roberto; Robert Trader; Sean Goldsberry; Cynthia
Navarro; Owen Chapman; Michael Brein; Travis
Brissey; Ronald Burkard; Adam Cloutier; Steven
Craig; John J. Dixson; Erin L. Fanthorpe; Eric
Hadesh; Michael P. Keeth; John Kirk MacDonald;
Michael Mandahl; Nicholas McDaniel; Mary J.
Moran-Spicuzza; Gary Pincas; Brandon Potter;
Thomas Purdy; Rocco Renghini; Michelle Singlteon;
Ken Smiley; Gregory M. Sonstein; Roman Starno;
Gayle A. Stephenson; Andres Villicana; Richard
Williams; Bradford L. Hirsch; Ashley Cephas; David
E. Hill; Chad McKinney; Mordechai Schiffer; Lisa
Sands; Donald Kendig; Kevin Gobel; Eric Larson;
Lin McKinney; Ryan Cross; Phillip Hoffman;
Debra Simmons; Abelardo Morales; Peter Blumer;
Carolyn Hammond; Melissa Leggett; Kelly Moffett;
Evan Grogan; Carlos Medina; Alberto Dominguez;
Catherine Bernard; Michael Breien; Laura Gill;
Thomas Schille; Judith Stanton; Randy Rickert;
Bryan Zirkel; James Kundrat; Robert Smith;
Maria Kotova; Josipa Casey; Luan Snyder; Ben
Baker; Brian Nguyen; Hattie Williams; Bill Holvey;
Lourdes Vargas; Kendall Snyder; Nomer Medina;
Sameria Goff; Ursula Pyland; Marcell Chapman;
Kaye Kurash; Holly Amromin; John Chapman;
Mary D'Angelo; George Rudy; Ayman Mousa;

Shelly Henderson; Jeffrey Hathaway; Dennis
J. Murphy; Douglas A. Patterson; John Gentry;
Linda Ruth Scott; Danielle Kay Gilleland; Joseph
Bowe; Michael Desouto, Plaintiffs-appellees,
Greg Direnzo, Petitioner-Appellee,
Hyundai Motor America; Kia Motors America; Kia
Motors Corporation; Grossinger Autoplex, Inc., FKA
Grossinger Hyundai; John Krafcik; Hyundai Motor
Company; Sarah Kundrat, Defendants-Appellees,
v.
Dana Roland, Objector-Appellant.
In re Hyundai and Kia Fuel Economy Litigation,
Kehlie R. Espinosa; Nicole Marie Hunter; Jeremy
Wilton; Kaylene P. Brady; Gunther Krauth;
Eric Graewingholt; Reece Philip Thomson; Alex
Maturani; Nilufar Rezai; Jack Rottner; Lydia Kievit;
Rebecca Sanders; Bobby Brandon Armstrong; Sergio
Torres; Richard Woodruff; Marshall Lawrence
Gordon; Joel A. Lipman; James Gudgalis; Mary
P. Hoessler; Stephen M. Hayes; Brian Reeves;
Sam Hammond; Mark Leggett; Edwin Naythons;
Michael Washburn; Ira D. Dunst; Brian Weber;
Kamneel Maharaj; Kim Iocovozzi; Herbert J.
Young; Linda Hasper; Leslie Bayard; Tricia Fellers;
Orlando Elliott; James Bonsignore; Margaret
Setser; Guillermo Quiroz; Douglas Kurash; Andres
Carullo; Laura S. Sutta; Georgia L. Thomas; Eric
J. Olson; Jennifer Myers; Tom Woodward; Jerold
Terhost; Cameron John Cestaro; Donald Brown;
Maria Figueroa; Constance Martyn; Thomas Ganim;
Daniel Baldeschi; Lillian E. Levoff; Giuseppina
Roberto; Robert Trader; Sean Goldsberry; Cynthia
Navarro; Owen Chapman; Michael Brein; Travis
Brissey; Ronald Burkard; Adam Cloutier; Steven
Craig; John J. Dixson; Erin L. Fanthorpe; Eric
Hadesh; Michael P. Keeth; John Kirk MacDonald;
Michael Mandahl; Nicholas McDaniel; Mary J.
Moran-Spicuzza; Gary Pincas; Brandon Potter;
Thomas Purdy; Rocco Renghini; Michelle Singlteon;
Ken Smiley; Gregory M. Sonstein; Roman Starno;
Gayle A. Stephenson; Andres Villicana; Richard
Williams; Bradford L. Hirsch; Ashley Cephas;
David E. Hill; Chad McKinney; Mordechai Schiffer;
Lisa Sands; Donald Kendig; Kevin Gobel; Eric
Larson; Lin McKinney; Ryan Cross; Phillip

Hoffman; Debra Simmons; Abelardo Morales; Peter Blumer; Carolyn Hammond; Melissa Leggett; Kelly Moffett; Evan Grogan; Carlos Medina; Alberto Dominguez; Catherine Bernard; Michael Breien; Laura Gill; Thomas Schille; Judith Stanton; Randy Rickert; Bryan Zirkel; James Kundrat; Robert Smith; Maria Kotova; Josipa Casey; Luan Snyder; Ben Baker; Brian Nguyen; Hattie Williams; Bill Holvey; Lourdes Vargas; Kendall Snyder; Nomer Medina; Sameria Goff; Ursula Pyland; Marcell Chapman; Kaye Kurash; Holly Amromin; John Chapman; Mary D'Angelo; George Rudy; Ayman Mousa; Shelly Henderson; Jeffrey Hathaway; Dennis J. Murphy; Douglas A. Patterson; John Gentry; Danielle Kay Gilleland; Joseph Bowe; Michael Desouto, Plaintiffs-Appellees,

Greg Direnzo, Petitioner-Appellee,

Hyundai Motor America; Kia Motors America; Kia Motors Corporation; Grossinger Autoplex, Inc., FKA Grossinger Hyundai; John Krafcik; Hyundai Motor Company; Sarah Kundrat, Defendants-Appellees.

v.

Linda Ruth Scott, Objector-Appellant.

In re Hyundai and Kia Fuel Economy Litigation

John Gentry; Linda Ruth Scott; Danielle Kay Gilleland; Joseph Bowe; Michael Desouto, Plaintiffs, and

James Ben Feinman, Appellant,

v.

Hyundai Motor America; Kia Motors America; Kia Motors Corporation; Grossinger Autoplex, Inc., Fka Grossinger Hyundai; John Krafcik; Hyundai Motor Company; Sarah Kundrat, Defendants-Appellees.

No. 15-56014, No. 15-56025, No. 15-56059, No. 15-56061, No. 15-56064, No. 15-56067

|

Argued and Submitted February 10, 2017 Pasadena, California

|

Filed January 23, 2018

**Synopsis**

**Background:** Consumers brought putative class action under Class Action Fairness Act (CAFA) alleging that automobile manufacturer and its affiliate made misstatements regarding fuel efficiency of their vehicles.

The United States District Court for the Central District of California, George H. Wu, J., 2014 WL 12603199, certified nationwide class for purposes of settlement and preliminarily approved settlement, and denied motion to stay and motion to amend, 2014 WL 12601476. Some consumers appealed.

**Holdings:** The Court of Appeals, Ikuta, Circuit Judge, held that:

[1] district court abused its discretion by not conducting choice of law analysis or rigorously analyzing potential differences in state consumer protection laws before certifying single nationwide settlement class;

[2] district court abused its discretion in certifying settlement class that included used car owners without analyzing whether those class members were exposed to, and therefore could have relied on, misleading statements from automobile manufacturer and its affiliate;

[3] district court did not ensure that amount of attorney fees awarded in class action was not unreasonably excessive in light of results achieved; and

[4] district court's reasoning for enhancing lodestar amount by multiplier for class counsel was not sufficient to explain why enhancement was warranted.

Vacated and remanded.

Nguyen, Circuit Judge, filed dissenting opinion.

West Headnotes (39)

**[1]** **Federal Civil Procedure**
    ⚏ Class Actions

    **Federal Civil Procedure**
    ⚏ Evidence; pleadings and supplementary material

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only; to come within the exception, a party seeking

to maintain a class action must affirmatively demonstrate his compliance with the Federal Rule of Civil Procedure governing class actions. Fed. R. Civ. P. 23.

Cases that cite this headnote

**[2]**    **Federal Civil Procedure**
   👉 In general;certification in general

   **Federal Civil Procedure**
   👉 Hearing and determination; decertification;effect

   Before certifying a class, a trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of the Federal Rule of Civil Procedure governing class actions; a district court's certification must be supported by sufficient findings to be afforded the traditional deference given to such a determination. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[3]**    **Federal Civil Procedure**
   👉 Factors, grounds, objections, and considerations in general

   When a district court certifies for class action settlement only, the moment of certification requires heightened attention. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[4]**    **Federal Courts**
   👉 Class actions

   A district court's decision to certify a class is reviewed for an abuse of discretion. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[5]**    **Federal Courts**
   👉 Abuse of discretion in general

   A district court abuses its discretion when it makes an error of law or when its application of the correct legal standard was (1) illogical,

(2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.

Cases that cite this headnote

**[6]**    **Federal Courts**
   👉 Class actions

   The Court of Appeals reverses if a district court's class certification is premised on legal error. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[7]**    **Federal Civil Procedure**
   👉 Evidence;pleadings and supplementary material

   The Federal Rule of Civil Procedure governing class actions does not set forth a mere pleading standard. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[8]**    **Federal Civil Procedure**
   👉 Evidence;pleadings and supplementary material

   The plaintiff seeking class certification bears the burden of demonstrating that all the requirements of the Federal Rule of Civil Procedure governing class actions have been met. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[9]**    **Federal Civil Procedure**
   👉 Factors, grounds, objections, and considerations in general

   The prerequisites of the Federal Rule of Civil Procedure governing class actions effectively limit the class claims to those fairly encompassed by the named plaintiff's claims. Fed. R. Civ. P. 23.

   Cases that cite this headnote

**[10]**    **Federal Civil Procedure**

🖝 Common interest in subject matter, questions and relief;damages issues

To meet the commonality requirement of the Federal Rule of Civil Procedure governing class actions, the plaintiffs' claims must depend upon a common contention that is of such a nature that it is capable of classwide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Fed. R. Civ. P. 23(a)(2).

Cases that cite this headnote

[11] **Federal Civil Procedure**
🖝 Common interest in subject matter, questions and relief;damages issues

The presence of commonality alone is not sufficient to fulfill the provision of the Federal Rule of Civil Procedure authorizing certification of class when, inter alia, questions of law or fact common to class members predominate over any questions affecting only individual members; rather, a court has a duty to take a close look at whether common questions predominate over individual ones, and ensure that individual questions do not overwhelm questions common to the class. Fed. R. Civ. P. 23(a), 23(b)(3).

Cases that cite this headnote

[12] **Federal Civil Procedure**
🖝 Common interest in subject matter, questions and relief;damages issues

Where plaintiffs bring a nationwide class action under the Class Action Fairness Act (CAFA) and invoke the provision of the Federal Rule of Civil Procedure authorizing certification of class when, inter alia, questions of law or fact common to class members predominate over any questions affecting only individual members, a court must consider the impact of potentially varying state laws, because in a multi-state class action, variations in state law may swamp any common issues and defeat

predominance. 28 U.S.C.A. § 1332(d); Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

[13] **Federal Civil Procedure**
🖝 Consumers, purchasers, borrowers, and debtors

Although variations in state law do not necessarily preclude a class action, where the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving a dispute under the provision of the Federal Rule of Civil Procedure authorizing certification of class when, inter alia, questions of law or fact common to class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

[14] **Federal Civil Procedure**
🖝 Common interest in subject matter, questions and relief;damages issues
**Federal Courts**
🖝 Class actions

For purposes of determining whether predominance is defeated by variations in state law, the proponent of a class action must establish that the forum state's substantive law may be constitutionally applied to the claims of a nationwide class; if the forum state's law meets this requirement, the district court must use the forum state's choice of law rules to determine whether the forum state's law or the law of multiple states apply to the claims. Fed. R. Civ. P. 23(b)(3).

1 Cases that cite this headnote

[15] **Federal Civil Procedure**
🖝 Common interest in subject matter, questions and relief;damages issues

If the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of

multiple states within the class does not pose a barrier to class certification, but if class claims will require adjudication under the laws of multiple states, then the court must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

**[16]    Federal Civil Procedure**
  👉 Evidence;pleadings and supplementary material

For purposes of determining whether predominance is defeated by variations in state law, plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

**[17]    Action**
  👉 What law governs
**Contracts**
  👉 Legal remedies and proceedings

Under California choice of law rules, there are two different analyses for selecting which law should be applied in an action: one considering a contractual choice-of-law provision, and the other requiring an application of the governmental interest test.

Cases that cite this headnote

**[18]    Action**
  👉 What law governs

Under the first step of the California governmental interest approach to choice of law, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California, and if the trial court finds the laws are materially different, it must proceed to the second step

and determine what interest, if any, each state has in having its own law applied to the case; if each state has an interest in having its own law applied, thus reflecting an actual conflict, the court must select the law of the state whose interests would be more impaired if its law were not applied.

Cases that cite this headnote

**[19]    Parties**
  👉 Community of interest;commonality

Under California law, if the court concludes that class claims will require adjudication under the laws of multiple states, then the court must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently.

Cases that cite this headnote

**[20]    Parties**
  👉 Evidence;pleadings and supplementary material

In California, the class action proponent bears the burden of establishing the propriety of class certification.

Cases that cite this headnote

**[21]    Federal Civil Procedure**
  👉 Common interest in subject matter, questions and relief;damages issues

Because the predominance inquiry focuses on questions that preexist any settlement, namely, the legal or factual questions that qualify each class member's case as a genuine controversy, a district court may not relax its rigorous predominance inquiry when it considers certification of a settlement class. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

**[22]    Federal Civil Procedure**
  👉 Factors, grounds, objections, and considerations in general

**Federal Civil Procedure**

👉 Superiority, manageability, and need in general

When confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial, but other specifications of the class action rule, those designed to protect absentees by blocking unwarranted or overbroad class definitions, demand undiluted, even heightened, attention in the settlement context; "heightened" attention is necessary in part because a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

**[23]**    **Federal Civil Procedure**

👉 Factors, grounds, objections, and considerations in general

A court may not justify its decision to certify a settlement class on the ground that the proposed settlement is fair to all putative class members; federal courts lack authority to substitute for the certification criteria a standard never adopted, that if a settlement is fair, then certification is proper. Fed. R. Civ. P. 23.

Cases that cite this headnote

**[24]**    **Federal Civil Procedure**

👉 Consumers, purchasers, borrowers, and debtors

In consumers' action alleging that automobile manufacturer and its affiliate made misstatements regarding fuel efficiency of their vehicles, district court abused its discretion by not conducting choice of law analysis or rigorously analyzing potential differences in state consumer protection laws before certifying single nationwide settlement

class under provision of Federal Rule of Civil Procedure authorizing certification of class when, inter alia, questions of law or fact common to class members predominated over any questions affecting only individual members, even if proposed settlement was fair, other class members had opportunity to opt out, and consideration of litigation management issues was not required. Clean Air Act § 203, 42 U.S.C.A. § 7522(a)(1); Fed. R. Civ. P. 23(b)(3), 23(e).

Cases that cite this headnote

**[25]**    **Federal Courts**

👉 Conflict of Laws;Choice of Law

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law. 28 U.S.C.A. § 1332.

Cases that cite this headnote

**[26]**    **Federal Civil Procedure**

👉 Consumers, purchasers, borrowers, and debtors

In a class action alleging violation of consumer-protection laws, a court must analyze whether the consumer-protection laws of the affected States vary in material ways, even if the court ultimately determines that the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues, because variations in state law may swamp any common issues and defeat predominance. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

**[27]**    **Federal Courts**

👉 Class actions

A district court makes a legal error, and thus abuses its discretion, when it fails to scrutinize a settlement class to the same extent as a litigation class. Fed. R. Civ. P. 23.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Cases that cite this headnote

**[28]** **Federal Civil Procedure**
   🔑 In general;certification in general

A fairness hearing on a class action settlement is no substitute for rigorous adherence to the class action criteria that is designed to protect absentees. Fed. R. Civ. P. 23(e).

Cases that cite this headnote

**[29]** **Federal Civil Procedure**
   🔑 Consumers, purchasers, borrowers, and debtors

In consumers' action alleging that automobile manufacturer and its affiliate made misstatements regarding fuel efficiency of their vehicles, district court abused its discretion in certifying settlement class under provision of Federal Rule of Civil Procedure authorizing certification of class when, inter alia, questions of law or fact common to class members predominated over any questions affecting only individual members that included used car owners without analyzing whether those class members were exposed to, and therefore could have relied on, misleading statements from automobile manufacturer and its affiliate; factual differences regarding used car owners' exposure to misleading statements, as compared to owners of new cars, translated into significant legal differences regarding viability of those class members' claims. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

**[30]** **Federal Civil Procedure**
   🔑 In general;certification in general

Because a court's obligations under the Federal Rule of Civil Procedure governing class actions are heightened in the settlement-class context, a district court's obligation to conduct a rigorous analysis to ensure that the prerequisites of the Rule have been met is heightened as well. Fed. R. Civ. P. 23.

**[31]** **Compromise and Settlement**
   🔑 Fairness, adequacy, and reasonableness

**Federal Civil Procedure**
   🔑 Class actions;settlements

When awarding attorneys' fees in a class action, a district court has an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount. Fed. R. Civ. P. 23.

Cases that cite this headnote

**[32]** **Attorney and Client**
   🔑 Allowance and payment from funds in court

**Federal Civil Procedure**
   🔑 Class actions;settlements

In a class action, there are two primary methods to calculate attorneys fees: the lodestar method and the percentage-of-recovery method. Fed. R. Civ. P. 23.

Cases that cite this headnote

**[33]** **Attorney and Client**
   🔑 Allowance and payment from funds in court

Under the percentage-of-recovery method, the attorneys' fees in a class action equal some percentage of the common settlement fund; the benchmark percentage is 25%. Fed. R. Civ. P. 23.

Cases that cite this headnote

**[34]** **Attorney and Client**
   🔑 Allowance and payment from funds in court

**Federal Courts**
   🔑 Determination of damages, costs, or interest;remittitur

If a district court employs the lodestar method when awarding attorneys' fees in a

class action, but calculates an award that overcompensates the attorneys under the percentage-of-recovery method according to the 25% benchmark standard for common settlement funds, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate; when a district court fails to conduct a comparison between the settlement's attorneys' fees award and the benefit to the class or degree of success in the litigation or a comparison between the lodestar amount and a reasonable percentage award, remand of the case to the district court for further consideration may be required. Fed. R. Civ. P. 23.

Cases that cite this headnote

[35]  **Federal Courts**
    👉 Determination of damages, costs, or interest;remittitur

In the absence of an adequate explanation of whether the attorney fee award is proportionate to the benefit obtained for the class, the Court of Appeals does not have any choice but to remand the case to the district court to permit it to make the necessary calculations and provide the necessary explanations. Fed. R. Civ. P. 23.

Cases that cite this headnote

[36]  **Antitrust and Trade Regulation**
    👉 Attorney fees

District court did not ensure that amount of attorney fees awarded in class action alleging that automobile manufacturer and its affiliate made misstatements regarding fuel efficiency of their vehicles was not unreasonably excessive in light of results achieved; although district court used lodestar method to calculate attorneys' fees, it did not make finding regarding actual value of settlement based on claims made, it did not address objectors' reasonable questions about value of settlement, and it did not calculate value of settlement in order to ensure

that attorneys' fees were not excessive in proportion to settlement value. Fed. R. Civ. P. 23.

Cases that cite this headnote

[37]  **Federal Civil Procedure**
    👉 Attorney fees

If a district court employs the lodestar method when awarding attorneys' fees in a class action, it must provide adequate justification for the use of a multiplier, which is appropriate in only "rare" or "exceptional" cases. Fed. R. Civ. P. 23.

Cases that cite this headnote

[38]  **Antitrust and Trade Regulation**
    👉 Attorney fees

In consumers' class action alleging that automobile manufacturer and its affiliate made misstatements regarding fuel efficiency of their vehicles, district court's reasoning for enhancing lodestar amount by multiplier for class counsel, namely that multipliers were warranted by "complexity and volume of work that counsel engaged in" and by risk that counsel assumed by filing lawsuit before announcement of program to compensate affected vehicle owners and lessees for additional fuel costs they had incurred and would incur in future as result of overstated fuel efficiency estimates, was not sufficient to explain why enhancement was warranted, particularly given objectors' concerns that settlement conferred only modest benefits to class. Fed. R. Civ. P. 23.

Cases that cite this headnote

[39]  **Federal Civil Procedure**
    👉 Attorney fees

A district court's responsibility to conduct an independent inquiry into the reasonableness of attorneys' fees is of equal, if not greater, importance when attorneys' fees are awarded separately from the class award. Fed. R. Civ. P. 23.

Cases that cite this headnote

Appeal from the United States District Court for the Central District of California, George H. Wu, District Judge, Presiding, D.C. No. 2:13-ml-02424-GW-FFM

**Attorneys and Law Firms**

James B. Feinman (argued), James B. Feinman & Associates, Lynchburg, Virginia, for Appellants James Ben Feinman, John Gentry, Linda Ruth Scott, Danielle Kay Gilleland, Joseph Bowe, Michael Desouto.

Edward W. Cochran (argued), Shaker Heights, Ohio; George W. Cochran, Streetsboro, Ohio; John J. Pentz, Sudbury, Massachusetts; for Appellants Caitlin Ahearn and Andrew York.

Steve A. Miller (argued), Steve A. Miller P.C., Denver, Colorado, for Appellant Antonio Sberna.

Matthew Kurilich, Tustin, California, for Appellant Peri Fetsch.

Dennis Gibson, Dallas, Texas, for Appellant Dana Roland.

Elaine S. Kusel (argued), Basking Ridge; Richard D. McCune, McCuneWright LLP, Redlands, California; for Appellees Kehlie R. Espinosa, Lilian E. Levoff, Thomas Ganim, and Daniel Baldeschi.

Benjamin W. Jeffers and Dommond E. Lonnie, Dykema Gossett PLLC, Los Angeles, California, for Appellees Kia Motors America Inc. and Kia Motors Corp.

Shon Morgan (argued) and Joseph R. Ashby, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; Karin Kramer, Quinn Emanuel Urquhart & Sullivan LLP, San Francisco, California; Dean Hansell, Hogan Lovells LLP, Los Angeles, California; for Appellees Hyundai Motor America and Hyundai Motor Co.

Robert B. Carey and John M. DeStefano, Hagens Berman Sobol Shapiro LLP, Phoenix, Arizona, for Appellees Kaylene P. Brady and Nicole Marie Hunter.

Before: Andrew J. Kleinfeld, Sandra S. Ikuta, and Jacqueline H. Nguyen, Circuit Judges.

Dissent by Judge Nguyen

OPINION

IKUTA, Circuit Judge:

**\*2** This appeal involves a nationwide class action settlement arising out of misstatements by defendants Hyundai Motor America, Inc. (Hyundai) and its affiliate, Kia Motors America, Inc. (Kia) [1] regarding the fuel efficiency of their vehicles. The district court had jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because the matter in controversy exceeded $5,000,000, the putative class comprised at least 100 plaintiffs, and at least one plaintiff class member was a citizen of a state different from that of at least one defendant. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold that the district court abused its discretion in concluding that common questions predominate and certifying this settlement class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and we remand to the district court for further proceedings consistent with this opinion. Because the district court may still certify a class on remand, we briefly clarify some principles of attorneys' fees awards in the class action context for the district court on remand.

I

[1] [2] [3] "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (internal quotation marks omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." Comcast Corp. v. Behrend, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (internal quotation marks omitted). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) (internal

quotation marks omitted). A district court's certification "must be supported by sufficient findings to be afforded the traditional deference given to such a determination." *Molski v. Gleich*, 318 F.3d 937, 946–47 (9th Cir. 2003) (internal quotation marks omitted). "When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention[.]" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848–49, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (internal quotation marks and citation omitted).

**[4]** **[5]** **[6]** We review the district court's decision to certify a class for an abuse of discretion. *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008). A district court abuses its discretion when it makes an error of law or when its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotations omitted). "We reverse if the district court's certification is premised on legal error." *Molski*, 318 F.3d at 947.

**\*3** **[7]** **[8]** **[9]** **[10]** Rule 23 "does not set forth a mere pleading standard." *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The plaintiff seeking class certification bears the burden of demonstrating that all the requirements of Rule 23 have been met. *See Zinser*, 253 F.3d at 1188. This requirement means that the plaintiff must first demonstrate through evidentiary proof that the class meets the prerequisites of Rule 23(a), which provides that class certification is proper only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The Rule 23(a) prerequisites "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349, 131 S.Ct. 2541 (internal quotation marks omitted). To meet the commonality requirement of Rule 23(a)(2), the plaintiffs' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350, 131 S.Ct. 2541.

After carrying its burden of satisfying Rule 23(a)'s prerequisites, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. Here, the district court certified the class under Rule 23(b)(3), which provides that a class action may be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and which lists a number of matters "pertinent to these findings." Fed. R. Civ. P. 23(b)(3). [2]

**[11]** The Rule 23(b)(3) predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The "presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Rather, a court has a "duty to take a close look at whether common questions predominate over individual ones," and ensure that individual questions do not "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34, 133 S.Ct. 1426 (internal quotation marks omitted). In short, "[t]he main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013) (internal quotation marks omitted).

**[12]** **[13]** Where plaintiffs bring a nationwide class action under CAFA and invoke Rule 23(b)(3), a court must consider the impact of potentially varying state laws, because "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). "Variations in state law do not necessarily preclude a 23(b)(3) action." *Hanlon*, 150 F.3d at 1022. For instance, even when some class members "possess slightly differing remedies based on state statute or common law," there may still be "sufficient common issues to warrant a class action." *Id.* at 1022–23; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301–02 (3d Cir. 2011) (discussing the "pragmatic response to certifications of common claims arising under varying state laws," and citing a case that affirmed "the

district court's decision to subsume the relatively minor differences in state law within a single class" as illustrative) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (noting that even though "state laws may differ in ways that could prevent class treatment if they supplied the principal theories of recovery," class representatives in that case met the predominance requirement in part by limiting "their theories to federal law plus aspects of state law that are uniform"). On the other hand, where "the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving [a] dispute." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011).

**\*4**  **[14]**  **[15]**  **[16]** In determining whether predominance is defeated by variations in state law, we proceed through several steps. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). First, the class action proponent must establish that the forum state's substantive law may be constitutionally applied to the claims of a nationwide class. *Id.* at 589–90.[3] If the forum state's law meets this requirement, the district court must use the forum state's choice of law rules to determine whether the forum state's law or the law of multiple states apply to the claims. *Id.* at 590. "[I]f the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). But if class claims "will require adjudication under the laws of multiple states," *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 922, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001), then the court must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently. *Id.* As with any other requirement of Rule 23, plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate. *See Castano*, 84 F.3d at 741 (indicating that class action proponents must show that variations in state laws will not affect predominance; "[a] court cannot accept such an assertion on faith.") (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.)).

We undertook this predominance inquiry in *Mazza v. American Honda Motor Co.*, which is closely analogous to our case. *Mazza* considered a car manufacturer's challenge to a district court's decision to certify a nationwide class of consumers claiming that Honda had misrepresented material information regarding Acura RLs. Honda contended that the district court erred in certifying this class under Rule 23(b)(3), because "California's consumer protection statutes may not be applied to a nationwide class with members in 44 jurisdictions," *Mazza*, 666 F.3d at 589, and therefore plaintiffs had not demonstrated "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Pro. 23(b)(3).

**[17]**  **[18]** *Mazza* addressed this argument by undertaking the following analysis. The plaintiffs first established that defendants had adequate contacts to the forum state, and therefore the court should apply California's choice of law rules. 666 F.3d at 590.[4] Under these rules, the foreign law proponent had the burden of showing that the law of multiple states, rather than California law, applied to class claims. *Id. Mazza* therefore walked through the three parts of California's governmental interest test. First, we determined that Honda showed there were material differences between the plaintiffs' California misrepresentation claims and the laws of other states. *Id.* at 591. Second, we determined that each of the 44 different states where the car sales took place "has a strong interest in applying its own consumer protection laws to those transactions." *Id.* at 592. Turning to the third step of the test, we determined that "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id.* at 593. Therefore, we held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

**\*5**  **[19]**  **[20]** Our conclusion that the plaintiffs' class claims "will require adjudication under the laws of multiple states," *Wash. Mut. Bank*, 24 Cal. 4th at 922, 103 Cal.Rptr.2d 320, 15 P.3d 1071, led to the next question: whether this conclusion defeated predominance. Although *Mazza* did not expressly address the predominance question, its vacatur of the district court's class certification order established that plaintiffs

had failed to show that common questions would predominate over individual issues.[5]

**[21]** **[22]** Because the Rule 23(b)(3) predominance inquiry focuses on "questions that preexist any settlement," namely, "the legal or factual questions that qualify each class member's case as a genuine controversy," *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231, a district court may not relax its "rigorous" predominance inquiry when it considers certification of a settlement class, *Zinser*, 253 F.3d at 1186. To be sure, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231 (citation omitted). But "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.* "Heightened" attention is necessary in part because a court asked to certify a settlement class "will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* Indeed, in *Amchem* itself, the court determined that both factual differences among class members and differences in the state laws applicable to class members' claims defeated predominance for a single nationwide settlement class. *Id.* at 624, 117 S.Ct. 2231.

**[23]** A court may not justify its decision to certify a settlement class on the ground that the proposed settlement is fair to all putative class members.[6] Indeed, federal courts "lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is fair, then certification is proper." *Id.* at 622, 117 S.Ct. 2231; *see also Ortiz*, 527 U.S. at 849, 119 S.Ct. 2295 (holding that "a fairness hearing under Rule 23(e) is no substitute for rigorous adherence to those provisions of the Rule designed to protect absentees[.]") (internal quotation marks omitted). This prohibition makes sense: "[i]f a common interest in a fair compromise could satisfy the predominance requirement of Rule 23(b)(3), that vital prescription would be stripped of any meaning in the settlement context," and the safeguards provided by the Rule, which "serve to inhibit appraisals of the chancellor's foot kind—class certifications dependent upon the court's gestalt judgment or overarching impression of the

settlement's fairness," would be eviscerated. *Amchem*, 521 U.S. at 621, 623, 117 S.Ct. 2231.

## II

***6** We now turn to the facts of this case. Under the Clean Air Act, all new vehicles sold in the United States must be covered by an Environmental Protection Agency (EPA) certificate of conformity demonstrating compliance with fuel efficiency and greenhouse gas emission standards. *See* 42 U.S.C. § 7522(a)(1). To obtain such a certificate, a vehicle manufacturer must submit an application to the EPA with information about the fuel efficiency for each model year. *Id.* § 7525(a)(1). In November 2011, a consumer advocacy group sent a letter to the EPA regarding complaints that Hyundai and Kia had overstated the fuel efficiency of a number of their vehicles and asked the EPA to audit the manufacturers. In response, the EPA initiated an investigation into Hyundai's and Kia's fuel efficiency test procedures. About a year later, in November 2012, the EPA investigation confirmed that Hyundai and Kia used improper test procedures to develop the fuel efficiency information submitted for certain 2011, 2012, and 2013 models.[7] These improper procedures resulted in overstated fuel efficiency estimates.

At the same time as the EPA announced its findings, Hyundai and Kia announced that they would lower their fuel efficiency estimates for approximately 900,000 Hyundai and Kia vehicles from model years 2011, 2012, and 2013. At the same time, Hyundai and Kia announced the institution of a voluntary Lifetime Reimbursement Program (LRP) to compensate affected vehicle owners and lessees for the additional fuel costs they had incurred and would incur in the future as a result of the overstated fuel efficiency estimates. Under the LRP, anyone who owned or leased an affected Hyundai or Kia vehicle on or before November 2, 2012 was entitled to periodic reimbursements based on the number of miles driven, the difference between the original and revised fuel efficiency estimate, and the average fuel price in the area where the car was driven, plus an extra 15 percent to account for the inconvenience caused by the overstated fuel efficiency estimates. In order to receive these benefits, class members could enroll in the LRP and then periodically visit a Hyundai or Kia dealership to verify their odometer readings. Car owners could register for the LRP until

December 31, 2013, although the program would continue for those who registered for as long as they owned or leased their vehicles. [8]

After the EPA commenced its investigation, but before announcing its results, a number of plaintiffs filed suit against Hyundai and Kia. In January 2012, plaintiffs filed a putative nationwide class action in state court in Los Angeles County. *See Espinosa v. Hyundai Motor Am.*, No. BC 476445 (Cal. Super. Ct. filed Jan. 6, 2012). The complaint raised claims under California's consumer protection laws and common law, alleging that Hyundai had falsely advertised that its 2011 and 2012 Elantra and Sonata vehicles got 40 miles per gallon (MPG) on the highway, when in fact these vehicles got far lower MPG. [9] The plaintiffs sought damages, rescission, restitution, and injunctive relief in the form of corrective advertising on behalf of a putative nationwide class of owners of specified vehicles who purchased or leased their vehicles in the United States.

 **\*7**  After Hyundai removed the *Espinosa* action to federal court, *see* No. 2:12-cv-800 (C.D. Cal. filed Jan. 30, 2012), the plaintiffs moved for certification of a nationwide class. In its opposition to class certification, Hyundai argued, among other things, that differences in state consumer protection laws precluded the application of California law to consumers who are not Californians and defeated predominance. Hyundai supported this argument with a thirty-four page "Appendix of Variations in State Laws," which detailed the numerous differences in the burden of proof, liability, damages, statutes of limitations, and attorneys' fees awards under different state consumer protection laws and common law fraud actions. Hyundai also argued that there were individual questions regarding whether each class member was exposed to or relied on Hyundai's advertising, and that these questions prevented class certification. [10]

In November 2012, the district court issued a tentative ruling on the motion for class certification in *Espinosa*. Plaintiffs sought to certify two classes, an Elantra class (including purchasers and lessees of 2011–12 model year Elantras) and a Sonata class (including all purchasers and lessees of 2011–2012 model year Sonatas). The court stated it would likely find that the plaintiffs demonstrated both the Rule 23(a) commonality and Rule 23(b)(3) predominance requirements were met as to statutory, but

not common law claims. With respect to the question whether plaintiffs could show individualized reliance on advertising, the court stated that it would likely find that class-wide reliance on the challenged advertising could be presumed due to the "extensive sweep" of Hyundai's marketing efforts. [11]

Turning to the question whether plaintiffs could certify a nationwide class, despite the fact that their complaint invoked only California law, the district court held it was required to perform a choice of law analysis. The court stated that California had sufficient contacts to support the extraterritorial application of California law to all claims, but "just as in *Mazza*, the three-part choice of law test ... comes out in Defendant's favor." In reaching this conclusion, the court relied on three factors. First, Hyundai's submission of its appendix of variations in state law "unquestionably demonstrates that there are material differences as between the various states' laws that would 'make a difference in this litigation.' " (quoting *Mazza*, 666 F.3d at 590–91, specifically considering the scienter requirements and remedies). Second, the court ruled that as in *Mazza*, each of the states "has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Mazza*, 666 F.3d at 592. Third, the court determined that "the interests of the other states would be more impaired were California law imposed upon their citizens than California would be impaired were this action limited to a class of only California consumers." In sum, the court found "that certification of a nationwide class where California law is applied to out-of-state consumers is foreclosed by the Ninth Circuit's decision in *Mazza*, a case virtually on all fours with the instant matter."

 **\*8**  Because California law could not be applied to out-of-state class members, the court thought it was obvious that the class could not be certified: "were the laws of the other various states applied to out-of-state purchasers, class certification would be precluded because common questions of law and fact would no longer predominate." The court held that it would consider certifying a class of California consumers, defined to include only those California consumers who actually viewed one of the challenged advertisements or marketing materials. On November 29, 2012, the Court held a hearing on the class certification motion pending in *Espinosa*, but did not make a final ruling, instead requesting supplemental briefing.

Immediately following Hyundai's November 2, 2012 announcement of the LRP, and before the *Espinosa* court could make a final ruling on class certification, plaintiffs across the country filed a flurry of putative class actions alleging that Hyundai and Kia misrepresented the fuel efficiency of their vehicles through advertising and Monroney Stickers. [12] Among other actions, plaintiffs filed *Hunter v. Hyundai Motor America*, No. 8:12-CV-01909 (C.D. Cal. filed Nov. 2, 2012), and *Brady v. Hyundai Motor America*, No. 8:12-cv-1930 (C.D. Cal. filed Nov. 6, 2012), in the Central District of California. Both actions claimed violations of California consumer protection laws and common law on behalf of putative nationwide classes of all persons who had owned or leased a Hyundai or Kia vehicle that had been identified in the EPA investigation. [13] In December 2012, the district court requested further supplemental briefing on the class certification motion in light of Hyundai's November 2, 2012 announcement.

Plaintiffs in one putative nationwide class action, *see Krauth v. Hyundai Motor Am.*, No. 8:12-cv-01935 (C.D. Cal. filed Nov. 6, 2012), initiated proceedings before the Multidistrict Litigation (MDL) judicial panel pursuant to [28 U.S.C. § 1407](), requesting that twelve putative class actions against Hyundai and Kia (including *Espinosa*, *Hunter*, and *Brady*) relating to the marketing and advertising of the fuel efficiency estimates of Hyundai and Kia vehicles be transferred to a single district for coordinated pretrial proceedings. On February 6, 2013, the MDL judicial panel transferred those actions as MDL No. 2424 to the court that was already presiding over the *Espinosa* action. The MDL judicial panel noted that any other related actions were potential tag-along actions. [14] In total, 56 actions were ultimately transferred to the MDL.

 **\*9**  One week after the MDL judicial panel issued its transfer order, and approximately three months after the announcement of the EPA investigation and LRP, the district court held a status conference in the *Espinosa* matter. At that status conference, the *Espinosa* plaintiffs informed the district court that they (along with the plaintiffs in *Hunter* and *Brady*) had reached a settlement with Hyundai for a single nationwide class. Shortly thereafter, the parties informed the court that Kia had agreed to the same settlement terms as Hyundai.

The proposed settlement agreement had the following terms. The parties agreed that the district court should certify a nationwide class of all persons who were current and former owners and lessees of specified Hyundai and Kia vehicles on or before November 2, 2012. [15] Hyundai and Kia would offer class members several alternative methods of compensation. First, class members could opt to receive the cash equivalent of the pre-existing LRP program. Specifically, class members could choose to receive a single lump sum payment rather than the periodic payments offered through the preexisting LRP. The lump sum payment for current owners was calculated based on an average 4.75-year term of ownership, 15,000 miles driven each year, and gas prices between $3.00 and $3.70. [16] The predicted average total lump sum payment was $353 for class members owning or leasing Hyundais and $667 for class members owning or leasing Kias. A class member who had begun participating in the LRP before the settlement but elected to switch to the lump sum payment option would receive a smaller lump sum, reduced by any amount the class member had already received through the LRP. The class members would receive their lump sum payment in the form of a debit card that would expire one year after it was issued; any unused amount would revert to Hyundai or Kia unless the class member timely deposited the residual amount in a bank account.

Two other compensation options offered consumers a credit that was nominally larger than the lump sum value of the existing LRP program, but which could be used only for purchasing more services or products from Hyundai or Kia. First, class members could choose to receive a Hyundai or Kia dealer service credit worth 150 percent of the value of the lump sum payment. The credit expired after two years. Alternatively, class members could choose to receive a new car rebate certificate worth 200 percent of the lump sum payment, which could be used toward the purchase of a new Hyundai or Kia vehicle. The certificate would expire after three years.

Finally, class members who were already participating in the preexisting LRP could choose to forego any of the settlement options and simply remain in the preexisting LRP. The deadline for enrolling in the LRP was extended to July 6, 2015, giving class members who had not enrolled in the LRP by the original December 31, 2013 deadline an additional 18 months to do so. Class members who were

current owners or lessees of certain Hyundai vehicles who elected to remain in the LRP could receive an additional $100 for current original owners and $50 for current lessees and fleet owners. [17]

**\*10** Used car owners were included in the proposed settlement class, but received only half the amounts available to new car owners. The settling parties justified this settlement amount on the ground that used car owners' "reliance on the Monroney numbers is less clear and potentially individualized" because Monroney stickers are not required for sales of used cars. *See* 15 U.S.C. §§ 1232–1233.

The proposed settlement provided a process for class members to opt out of the settlement by mailing a request for exclusion. However, upon the district court's final approval of the settlement agreement, the district court would dismiss "all other lawsuits centralized in the MDL in which the named plaintiffs in such lawsuit(s) did not timely exclude themselves from the settlement."

In addition to paying the requisite amounts for class members, Hyundai and Kia agreed to pay class counsel reasonable attorneys' fees. The amount of attorneys' fees would be negotiated and awarded separately from the relief provided to class members.

Following the February 2013 announcement of this proposed settlement, the court ordered discovery in April 2013 to confirm the facts on which the settlement was based and to allow plaintiffs to evaluate the terms of the settlement. Hyundai and Kia produced several hundred thousand pages of documents and allowed plaintiffs to interview 11 employees.

While this confirmatory discovery was ongoing, a different group of plaintiffs filed another action against Hyundai in the Western District of Virginia. *See Gentry v. Hyundai Motor Am.*, No. 3:13-cv-0030 (W.D. Va. filed Oct. 14, 2013). The *Gentry* plaintiffs asserted claims under Virginia consumer protection, false advertising, and vehicle warranty laws on behalf of a putative class of all persons who had purchased a model year 2011, 2012, or 2013 Hyundai Elantra in Virginia. [18] Claiming that Hyundai's false advertising was willful, the complaint demanded the greater of treble damages or $1000 for each class member under the Virginia Consumer Protection Act. *See* Va. Code Ann. § 59.1-204(A). On November 6,

2013, the MDL judicial panel identified the *Gentry* action as a tag-along action, and transferred it to the Central District of California as part of MDL No. 2424.

In December 2013, after approximately eight months of confirmatory discovery, the *Hunter*, *Brady*, and *Espinosa* plaintiffs moved for class certification and preliminary approval of the nationwide class settlement. According to these plaintiffs, confirmatory discovery had failed to reveal any evidence that Hyundai and Kia had engaged in deceptive conduct, knowing concealment, or other bad acts. In their motion for certification of a settlement class, the settling parties contended that common questions of fact or law predominated under Rule 23(b)(3) with respect to California causes of action.

The *Gentry* plaintiffs opposed class certification and sought remand of their action to the Western District of Virginia. In their memorandum opposing class certification filed May 2014, the *Gentry* plaintiffs argued that California choice of law rules did not allow certification of the class. The memorandum discussed elements of both the governmental interest test and the contractual choice-of-law provision. First, with respect to their contractual claim, the plaintiffs stated that the Virginia plaintiffs had purchased their vehicles by means of a contract with a Virginia choice of law provision and under California law, "an otherwise enforceable choice-of-law agreement may not be disregarded merely because it may hinder the prosecution of a multistate or nationwide class action or result in the exclusion of nonresident consumers from a California-based class action." *Wash. Mut. Bank*, 24 Cal. 4th at 918, 103 Cal.Rptr.2d 320, 15 P.3d 1071. Second, under the elements of California's governmental interest test, the *Gentry* plaintiffs noted that "[n]umerous courts have recognized that conflicts exist among State substantive laws" applicable to analogous consumer fraud claims, and argued that there were "material and significant conflicts in the law of Virginia as compared to the law and remedy sought to be applied by *Espinosa*, *Hunter*, and *Brady*." [19] Moreover, the memorandum contended, not only were the Virginia causes of action "materially different from those asserted by the Settling Plaintiffs," but Virginia also had a strong interest in having its law apply. Accordingly, even without the contractual choice-of-law provisions, the *Gentry* plaintiffs argued, California law would require courts to apply Virginia law. [20] Three sets of plaintiffs,

including the *Gentry* plaintiffs, also filed objections to the terms of the settlement. [21]

 **\*11**  In June 2014, the district court circulated a tentative ruling granting the plaintiffs' motion for certification of the settlement class. The court acknowledged that it "would need to engage in an extensive choice of law analysis" if the case were going to trial. Nevertheless, the court thought such an analysis was not warranted in the settlement context, because notwithstanding the *Gentry* plaintiffs' objections to class certification "on the grounds that Virginia law provides a materially different remedy to Virginia consumers" for certain claims, state law variations were less of a concern and could be addressed as part of the final fairness hearing under Rule 23(e). Accordingly, the district court declined to apply California's choice of law rules to determine whether California law was applicable to the class, or to make any choice of law ruling, and instead held that even if "substantial differences in state law are brought to light at the final fairness hearing, those issues do not prevent the Court from certifying the class for settlement purposes." The court adhered to this position in its subsequent rulings.

 In August 2014, the court granted class certification without ever addressing variations in state law. [22] At the same time, the district court granted preliminary approval of the proposed settlement, finding it sufficiently fair, reasonable, and adequate to merit disseminating notice of the settlement to the class. The court noted the settling parties' agreement that an aggregate amount of $210 million represented the total lump sum compensation that would be available to class members.

 In December 2014, counsel for the *Espinosa*, *Hunter*, and *Brady* plaintiffs, as well as counsel for plaintiffs in other actions that had been transferred to the district court, filed applications for attorneys' fees. Through a series of hearings beginning in March 2015, the district court approved $2,700,000 in attorneys' fees to class co-counsel who represented the plaintiffs in the *Hunter* and *Brady* cases, $2,850,000 in attorneys' fees to class co-counsel who represented the plaintiffs in the *Espinosa* case, and collectively over $3 million to counsel for other plaintiffs. In calculating attorneys' fees, the district court began with the lodestar method (multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate). The court then determined that

the *Hunter* and *Brady* counsel were entitled to a lodestar enhancement in light of the complexity and volume of work and the amount of the settlement, and multiplied the lodestar amount by a 1.22 multiplier. The district court also determined that the *Espinosa* counsel was entitled to a lodestar enhancement due to the risk of filing a lawsuit before the November 2, 2012 EPA announcement, and multiplied the lodestar amount by a 1.5521 multiplier. In total, the district court awarded approximately $9 million in attorneys' fees and costs.

In March 2015, the *Hunter*, *Brady*, and *Espinosa* plaintiffs, along with Hyundai and Kia, jointly moved for final approval of class settlement. In support of this motion, Hyundai and Kia submitted declarations reporting on response rates of class members. The reports established that approximately 21 percent of class members had filed claims for some $44,000,000 in total value. Of the class members filing claims, more than two-thirds began participating in the LRP before the settlement. Therefore, the portion of the class filing new claims accounted for only a small fraction of the $44 million in total value.

In June 2015, the district court gave its final approval of the class settlement. The court reaffirmed its prior conclusion that certification of the class for settlement was proper under Rule 23(b)(3) and that the settlement was fair, relying in part on its August 2014 finding that the settlement would provide an estimated $210 million to the class. In rejecting objections that the proposed attorneys' fees awards were excessive and not in proportion to the benefit conferred on the class, the district court noted that the attorneys' fees did not impact class recovery because they were awarded separately, and so the issue of collusion did not arise. Further, the court stated that the fees were in most cases less than the amount requested by counsel. Finally, the court dismissed all lawsuits in MDL No. 2424 except for those in which the named plaintiffs had timely excluded themselves from the settlement.

### III

 **\*12**  Objectors now bring five consolidated appeals raising challenges to class certification, approval of the settlement as fair and adequate, and approval of attorneys' fees as reasonable in proportion to the benefit conferred on the class.

A

**[24]**  We first address objectors' arguments that the district court abused its discretion by failing to conduct a choice of law analysis or rigorously analyze potential differences in state consumer protection laws before certifying a single nationwide settlement class under Rule 23(b)(3). As explained in *Mazza*, the district court was required to apply California's choice of law rules to determine whether California law could apply to all plaintiffs in the nationwide class, or whether the court had to apply the law of each state, and if so, whether variations in state law defeated predominance. 666 F.3d at 588–89. Under California's choice of law rules, this required the district court to apply the California governmental interest test. *Id.* at 590. There is no dispute that the district court did not do so. The parties acknowledge that the district court did not conduct a choice of law analysis, and did not apply California law or the law of any particular state in deciding to certify the class for settlement.

**[25]**  **[26]**  In failing to apply California choice of law rules, the district court committed a legal error. "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Id.* (quoting *Zinser*, 253 F.3d at 1187). The district court made a further error by failing to acknowledge, as it had in its tentative ruling, that Hyundai and the *Gentry* plaintiffs submitted evidence that the laws in various states were materially different than those in California, and that these variations prevented the court from applying only California law. Finally, the court erred by failing to make a final ruling as to whether the material variations in state law defeated predominance under Rule 23(b)(3). Because "variations in state law may swamp any common issues and defeat predominance," *Castano*, 84 F.3d at 741, a court must analyze whether "the consumer-protection laws of the affected States vary in material ways," *Pilgrim*, 660 F.3d at 947, even if the court ultimately determines that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, ––– U.S. ––––, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (citation omitted).

The district court's reasoning that the settlement context relieved it of its obligation to undertake a choice of

law analysis and to ensure that a class meets all of the prerequisites of Rule 23, is wrong as a matter of law. While the district court was correct that it need not consider litigation management issues in determining whether to certify a class, the Rule 23(b)(3) predominance inquiry focuses on whether common questions outweigh individual questions, an issue that preexists any settlement. *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. Therefore, factors such as whether the named plaintiffs were in favor of the settlement or whether other class members had an opportunity to opt out are irrelevant to the determination whether a class can be certified.

**\*13**  **[27]**  If anything, this case highlights the reasons underlying *Amchem*'s warning that district courts must give "undiluted, even heightened, attention in the settlement context," *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231, to scrutinize proposed settlement classes. [23] Because the district court made clear that it would be unlikely to certify the same class for litigation purposes, the class representatives were well aware that they would be unlikely to succeed in any efforts to certify a nationwide litigation class. Thus, by "permitting class designation despite the impossibility of litigation, both class counsel and court [were] disarmed." *Id.* at 621, 117 S.Ct. 2231. Hyundai and Kia knew that there was little risk that they would face a nationwide litigation class action if they did not reach a settlement agreement. Accordingly, "[c]lass counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer, and the court [faced] a bargain proffered for its approval without benefit of adversarial investigation." *Id.* (citation omitted).

**[28]**  Finally, the district court erred in holding that it could avoid considering the potential applicability of the laws of multiple states on the ground that the proposed settlement was fair. "[A] fairness hearing under Rule 23(e) is no substitute for rigorous adherence to those provisions of the Rule designed to protect absentees[.]" *Ortiz*, 527 U.S. at 849, 119 S.Ct. 2295.

Because the district court erred in certifying a settlement class, we must vacate the class certification. This does not mean that the court is foreclosed from certifying a class (or subclasses) on remand. We make no ruling on this issue, and merely note that *Mazza* determined that no such class was possible in a closely analogous case.

B

**[29]** Even if the district court had restricted the class to California consumers (as the court indicated it would do in its tentative ruling in *Espinosa*), we would still have to consider the objectors' argument that the district court abused its discretion in certifying a settlement class under Rule 23(b)(3) that includes used car owners without analyzing whether these class members were exposed to, and therefore could have relied on Hyundai's and Kia's misleading statements. According to the objectors, individual questions of reliance preclude the inclusion of used car owners in this class.

In *Mazza*, we provided guidance on how a district court should determine whether a court can presume that class members relied on misleading advertising. On the one hand, we explained, "[a]n inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class." *Mazza*, 666 F.3d at 595 (quoting *Davis–Miller v. Automobile Club of Southern California*, 201 Cal. App. 4th 106, 125, 134 Cal.Rptr.3d 551 (2011)). Rather, the class proponent must establish that the scope of the advertising makes it reasonable to assume that all class members were exposed to the allegedly misleading advertisements. *Id.* On the other hand, we noted the California Supreme Court's exception to this general rule in *In re Tobacco II Cases*. *Tobacco II* presumed that class members had relied on a pervasive advertising campaign for cigarettes, extending over 40 years by 11 different defendants, which "misled the smoking public of the health risks and addictive nature of smoking and targeted the putative class uniformly in an alleged class-wide effort to seduce and induce people to smoke." 46 Cal. 4th 298, 309, 327–28, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) (*Tobacco II*). Distinguishing *Tobacco II*, *Mazza* explained that "in the context of a decades-long tobacco advertising campaign where there was little doubt that almost every class member had been exposed to defendants' misleading statements," class members did not need to demonstrate individualized reliance. 666 F.3d at 596. Harmonizing these rules, *Mazza* concluded that "[i]n the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading." *Id.*[24] We held that the defendant's scope

of advertising in *Mazza* did not rise to that level, and therefore an individualized case had to be made for each member showing reliance. *Id.* For this reason, we held that common questions of fact did not predominate where the class included members who were not exposed to the false advertising or who purchased products after learning of the misrepresentations, and therefore it was an error to certify the class. *Id.*

**\*14** The district court addressed the question whether class members could have relied on Hyundai's and Kia's misleading statements in its June 14, 2014 ruling, and concluded that it could presume that all class members relied on the misleading statements because "misrepresentations were uniformly made to all consumers by virtue of Monroney stickers and nationwide advertising." In reaching this conclusion, the district court failed to reference any evidence in the record regarding the extent of the advertising campaign for the 41 different Hyundai models and 35 different Kia models from 2011 to 2013; nor did it provide any reasoning regarding how this advertising reached the level of the cigarette advertising campaign (extending over 40 years by 11 defendants) discussed in *Tobacco II*.[25] Furthermore, the district court's ruling is based on a factual error, because there is no requirement that Monroney stickers be provided to purchasers of used cars, and there is no evidence in the record that used car owners were uniformly exposed to such stickers. In fact, the settlement itself relied on this difference in exposure to misleading information in awarding used car owners only half the amounts awarded to new car owners. *See supra*, at p. ——. Nor can we conclude that this error was harmless because exposure to the defendant's advertising can be presumed. The settling parties have not identified any evidence in the record of this sort of massive advertising campaign that could give rise to such a presumption with respect to used car owners.

The settling parties argue that even if there are individualized questions regarding exposure to the nationwide advertising, these questions do not predominate in the settlement context, where there is no manageability concern. This argument is contrary to *Amchem*, where the Court held that factual differences among class members, such as the ways that class members were exposed to asbestos and the length of those exposures, translated into significant legal differences, thereby defeating predominance for a settlement class. 521 U.S. at 624, 117 S.Ct. 2231. Similarly here, factual

differences regarding used car owners' exposure to the misleading statements translate into significant legal differences regarding the viability of these class members' claims.

In sum, because the record does not support the presumption that used car owners were exposed to and relied on misleading advertising, the district court had an obligation to define the relevant class "in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 596. The district court erred by failing to do so here.

### C

**[30]** Because a court's obligations under Rule 23 are heightened in the settlement-class context, *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231, a district court's obligation to conduct a "rigorous analysis" to ensure that the prerequisites of Rule 23 have been met, *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426, is heightened as well. Here, the district court failed to conduct a rigorous inquiry into whether the proposed class could meet the Rule 23 prerequisites on the mistaken assumption that the standard for certification was lessened in the settlement context. Because our precedent raises grave concerns about the viability of a nationwide class in this context, *see Mazza*, 666 F.3d at 596–97, this certification decision cannot stand.

### IV

**[31] [32] [33] [34] [35]** Because the district court may yet determine, after a rigorous Rule 23 analysis, that it may certify a settlement class and approve a settlement, we briefly clarify some principles of attorneys' fee approval for the district court on remand. *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820–22 (3d Cir. 1995). When awarding attorneys' fees in a class action, the district court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Therefore, we have "encouraged courts to guard against an unreasonable result by cross-

checking their calculations against a second method." *Id.* at 944. "In this circuit, there are two primary methods to calculate attorneys fees: the lodestar method and the percentage-of-recovery method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." *Id.* (citing *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942); *see also Hanlon*, 150 F.3d at 1029. If the district court employs the lodestar method, but calculates an award that "overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997). When a district court fails to conduct a "comparison between the settlement's attorneys' fees award and the benefit to the class or degree of success in the litigation" or a "comparison between the lodestar amount and a reasonable percentage award," we may remand the case to the district court for further consideration. *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 943; *see also In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 (9th Cir. 2013). Indeed, in the absence of an adequate explanation of whether the award is proportionate to the benefit obtained for the class, "we have no choice but to remand the case to the district court to permit it to make the necessary calculations and provide the necessary explanations." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

**\*15** **[36]** Here, the district court used the lodestar method to calculate attorneys' fees, awarding approximately $9 million in attorneys' fees and costs. However, the court failed to calculate the value of the settlement in order to ensure that the attorneys' fees were not excessive in proportion to the settlement value. Although the court mentioned that the settling parties had earlier estimated the value of the proposed settlement at $210 million, it did not make a finding regarding the actual value of the settlement based on claims made, and the claims data in the record indicates that the amount of settlement funds claimed by class members was far lower.[26] Moreover, the court failed to address objectors' reasonable questions about the value of the settlement, for example, whether the value for class members who began participating in the LRP before the settlement, and who elected to remain in the LRP or who switched from

the LRP to the lump sum option, could be attributed to the attorneys' efforts in this litigation. [27] Because the district court could not compare the fees award to the settlement value without considering these questions and determining the actual settlement value, it failed "to assure itself—that us—that the amount awarded was not unreasonably excessive in light of the results achieved." *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 943.

**[37]** **[38]** **[39]** A district court must also provide adequate justification for the use of a multiplier, which is appropriate in only "rare" or "exceptional" cases. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Here, the district court's reasoning for enhancing the lodestar amount by a multiplier for class counsel, namely that the *Hunter* and *Brady* multiplier was warranted by the "complexity and volume of work that counsel engaged in," and that the *Espinosa* multiplier was warranted by the risk that *Espinosa* counsel assumed by filing a lawsuit before the announcement of the LRP, is insufficient to explain why an enhancement is warranted, particularly given objectors' concerns that the settlement confers only modest benefits to the class, *see Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942 (holding that district courts should "award only that amount of fees that is reasonable in relation to the results obtained," even where counting all hours reasonably spent would produce a larger fees award) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). [28]

**\*16** On remand, if the district court properly approves class certification and a settlement, the district court must determine what value was created by the settlement and take a closer look at the reasonableness of the attorneys' fees in light of the results achieved. [29]

V

We conclude that the district court abused its discretion in certifying a nationwide settlement class without conducting a rigorous predominance analysis under Rule 23(b)(3) to determine whether variations in state consumer protection laws, or individual factual questions regarding exposure to the misleading statements, precluded certification. [30] We vacate class certification and remand

to the district court for further proceedings consistent with this opinion. Each party will bear its own costs on appeal.

**VACATED AND REMANDED.**

NGUYEN, Circuit Judge, dissenting:

"Economic reality dictates" that this consumer lawsuit "proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). By championing the cause of a handful of objectors and their attorneys (who were denied fees below) to decertify the class, the majority deprives thousands of consumers of any chance to recover what is, conservatively speaking, a more than $159 million settlement. [1] In doing so, the majority relies on arguments never raised by the objectors, contravenes precedent, and disregards reasonable factual findings made by the district court after years of extensive litigation.

The majority also deals a major blow to multistate class actions. Contrary to our case law and that of our sister circuits, the majority shifts the burden of proving whether foreign law governs class claims from the foreign law proponent—here, the objectors—to the district court or class counsel. This newly invented standard significantly burdens our overloaded district courts, creates a circuit split, and runs afoul of the doctrine established long ago in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Next, in excluding used car owners from the class, the majority misapplies the rule that consumer claims merely require proof that the *public*—not any individual—is likely to be deceived. Lastly, the majority bases its clarification of the district court's attorneys' fees award on a flawed reading of the record and a disregard of our usual deferential review.

**I.** **Rule 23**'s predominance inquiry was readily met

**\*17** Both we and our sister circuits have long held that a nationwide class action cannot be decertified simply because there are "differences between state consumer protection laws." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022–23 (9th Cir. 1998); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("[N]ationwide classes are certified routinely even though every state has its own [laws.]"). Far from imposing geographic

limitations, the predominance inquiry under Rule 23(b)(3) simply tests whether questions common to the class "are more prevalent or important" than individual ones, *Tyson Foods, Inc. v. Bouaphakeo*, ––– U.S. ––––, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (citation omitted), a standard which is "readily met" in consumer class actions, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (citation omitted). Therefore, even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 136 S.Ct. at 1045 (citation omitted).

Here, the district court concluded that the following undisputed common questions predominated over individualized issues: "[w]hether the fuel economy statements were in fact accurate" and "whether defendants knew that their fuel economy statements were false or misleading." The district court also found that the class claims were subject to common proof because the fuel economy statements were "uniformly" made by Defendants via "Monroney stickers and nationwide advertising." These types of common issues, which turn on a common course of conduct by the defendant, establish predominance in nationwide class actions. *Hanlon*, 150 F.3d at 1022–23 (affirming certification of a nationwide settlement class of car owners because common questions as to defendant's knowledge and existence of the problem predominated over state law variations); *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182–83 (9th Cir. 2015) (reversing denial of a nationwide consumer class certification because the defendants' "common scheme, if true, presents a significant aspect of [defendants'] transactions"). Neither the objectors nor the majority adhere to these precedents.

## II. Neither the district court nor class counsel had a duty to raise arguments on objectors' behalf, nor can a class action be decertified for failure to do so

The majority's first misstep in the predominance analysis is a subtle, but dispositive, departure from our nationwide class action jurisprudence. In violation of controlling choice-of-law rules, the majority places the burden on the district court or class counsel to extensively canvass every state's laws and determine that none other than California's apply. Opinion at ––––, ––––. This is wrong for three reasons. First, because the objectors here bore the burden and failed to meet it, the class claims are controlled by California law. Second, the majority's reassignment of the burden cannot be justified under Rule 23, which is silent on choice-of-law issues and requires class counsel to prove predominance, but not a negative. Nor can the majority rely on the combination of Rule 23 and CAFA diversity jurisdiction to flip the burden. Doing so violates the *Erie* doctrine, which requires a California federal court sitting in diversity jurisdiction to apply California's choice-of-law rules, even where a federal rule is involved. Third, the majority's heavy reliance on *Amchem* is misplaced because that case did not address choice-of-law issues and involved conflicts between potential claimants that are not present here.

### A. The objectors failed to meet their choice-of-law burden

As the majority acknowledges, California's choice-of-law rules control the outcome of this case. Opinion at ––––, ––––. Under these rules, California law applies "unless a party litigant timely invokes the law of a foreign state," in which case it is "the foreign law proponent" who must "shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1080–81 (2001) (citation omitted); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010). The "foreign law proponent" here, of course, is the objectors.

**\*18** To meet their burden, the objectors must satisfy the three-step governmental interest test. *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1080–81; *Pokorny*, 601 F.3d at 994–95. Under that test, the objectors must prove that: (1) the law of the foreign state "materially differs from

the law of California," *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1080–81, meaning that the law differs "with regard to the particular issue in question"; (2) a "true conflict exists," meaning that each state has an interest in the application of its own law to "the circumstances of the particular case"; and (3) the foreign state's interest would be "more impaired" than California's interest if California law were applied. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 45 Cal.Rptr.3d 730, 137 P.3d 914, 922 (2006); *Pokorny*, 601 F.3d at 994–95. If the objectors fail to meet their burden at any step in the analysis, the district court "may properly find California law applicable without proceeding" to the rest of the analysis. *Pokorny*, 601 F.3d at 995 (quoting *Wash. Mut.*, 103 Cal.Rptr.2d 320,15 P.3d at 1081). [2]

The majority faults the district court for not sua sponte surveying all 50 states' laws to prove that none other than California's should apply. But, to the extent anyone was obliged to analyze the laws of other states, that burden fell squarely on the objectors—and they failed to meet it. No objector even mentioned, much less conducted, the correct choice-of-law analysis. Nor did any objector explain how, under the facts of this case, they satisfied the governmental interest test's three elements. "Where, as here, parties do not address choice-of-law issues, California courts presumptively apply California law." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011). Given the objectors' failure to prove that the law of a state other than California applied, the district court acted well within its discretion in certifying the class.

The majority acknowledges, as it must, that the objectors carry the burden. Opinion at ——. But it does not acknowledge that the objectors entirely failed to do so here. Instead, the majority implies that a few sentences in the objectors' opposition to class certification constitute a developed choice of law analysis. Opinion at —— – ——. But in that opposition, the *Gentry* objectors clearly argue that California *contractual* choice of law provisions should govern, citing explicitly to three contracts entered into by their named class representatives. "California has two different analyses for selecting which law should be applied in an action": the contractual choice-of-law provisions analysis from *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992), and, "[a]lternatively," the governmental interests test. *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1077. Apart from a passing reference to *Washington Mutual*, the

objectors never even addressed the governmental interests test before the district court. They certainly did not meet their burden of showing that foreign law should apply. [3]

**\*19** Our precedent recognizes that when, as here, the foreign law proponent fails to meet its burden, neither the district court nor class counsel is obligated to address choice-of-law issues, nor will a class action be decertified for lack of such analysis. In *Harmsen v. Smith*, for example, we rejected the argument that California law could not be applied to a class which included non-Californians, even though the district court conducted no choice-of-law analysis. 693 F.2d 932, 946–47 (9th Cir. 1982). There, the foreign law proponent challenged the ability of non-California class members to recover under California fraud and tort claims that, like the claims here, arose from the defendants' misrepresentations. *Id.* at 946, 935–37. The district court rejected the argument on a procedural ground, which we did not embrace on appeal. *Id.* at 946. However, we did not fault the district court for failing to raise and then refute arguments favoring another state's law. Instead, we placed the onus where it belonged: on the foreign law proponent who "failed to show, as required by California law, that the law of other states relating to the [class] claims is significantly different from California's and, more importantly, that the interests of other states would be impaired by application of California law to these nonresident plaintiffs." *Id.* at 947; *accord Pokorny*, 601 F.3d at 994–96 (affirming application of California law because the foreign law proponent failed to meet its burden under California's governmental interest test).

This case is even more straightforward than *Harmsen*, as the objectors here did not advance *any* argument under the governmental interest test, and therefore we must "apply California law." *Johnson*, 653 F.3d at 1008. The objectors' silence is a far cry from *Mazza*—the only case from this circuit to which the majority analogizes. There, the foreign law proponent (the defendant) "exhaustively detailed the ways in which California law differs from the laws of the 43 other jurisdictions" and showed how applying the facts to those disparate state laws made "a difference in this litigation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590–91 (9th Cir. 2012). Unlike class counsel here, the plaintiffs in *Mazza* did "not contest these differences [.]" *Id.* at 591 n.3. Weighing these arguments and concessions, a divided panel concluded it was error to find that the defendant had "not met its burden" to show that foreign

law applied "[u]nder the facts and circumstances of this case." *Id.* at 591, 594. In light of that unique record, *Mazza* stands as a rare exception to the general rule that "[p]redominance is a test readily met" in consumer class actions. *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231.

We have never held, in *Mazza* or any other case, that a class cannot be certified unless a district court sua sponte raises and refutes arguments on the objectors' behalf in support of foreign law. Rather, we have made clear that, if the "*parties* do not address choice-of-law issues, California courts presumptively apply California law." *Johnson*, 653 F.3d at 1008 (emphasis added). After all, the court, as an impartial arbiter, need not do a party's "work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support." *See W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012). Nor is any duty triggered if a district court becomes aware that multiple states' laws may apply; as *Mazza* confirmed, the mere "fact that two or more states are involved does not itself indicate that there is a conflict of law." 666 F.3d at 590 (quoting *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1080). The district court therefore had no duty to dig up briefing from two years earlier in the *Espinosa* action and refashion those arguments for the objectors' benefit.

### B. Under the *Erie* doctrine, CAFA and Rule 23 cannot reassign the foreign law proponent's burden because it is substantive state law

The majority's reassignment of the burden under California's choice-of-law rules also violates the *Erie* doctrine. A federal court sitting in diversity jurisdiction must "apply the substantive law of the state in which it sits, including choice-of-law rules"—even where a federal rule or statute is involved. *Harmsen*, 693 F.2d at 946–47; *Manalis Fin. Co. v. United States*, 611 F.2d 1270, 1272 (9th Cir. 1980) ("[W]hen application of a federal statute depends on an issue of state law, a federal court should defer to the ruling of the highest court of the state on that issue.").

**\*20** Because California's choice-of-law rules are substantive state law for which the California Supreme Court is the final arbiter, the majority is not free to disregard them. *Harmsen*, 693 F.2d at 946–47; *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61

S.Ct. 1020, 85 L.Ed. 1477 (1941). The California Supreme Court has unequivocally held that California law governs *unless* a foreign law proponent meets its burden to prove otherwise under the governmental interest test, *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1080–82, as we have repeatedly recognized. *See, e.g., Pokorny*, 601 F.3d at 995. Moreover, the California Supreme Court has made clear that the foreign law proponent bears the burden even "when a nationwide class action is at issue," rejecting the idea that the "*proponent* of class certification [should] affirmatively demonstrate[ ] that California law is more properly applied." *Wash. Mut.*, 103 Cal.Rptr.2d 320, 15 P.3d at 1081. Yet that is exactly what the majority demands here.

By flouting the applicable choice-of-law rules, the majority denies relief that the class would have obtained in state court. [4] In doing so, the majority's ruling creates exactly the "variations between state and federal outcomes that the *Erie* doctrine is designed to combat. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1005 (9th Cir. 2012) (en banc) (critiquing panel's misapplication of state law for violating *Erie* by creating "inconsistent" results in state and federal courts). The Supreme Court has stressed the need to prevent inconsistent state and federal outcomes as the basis for its holding that federal courts must apply state choice-of-law rules. *Klaxon*, 313 U.S. at 496, 61 S.Ct. 1020. As the Court explained, failure to follow these rules would allow "the accident of diversity of citizenship [to] disturb equal administration of justice in ... state and federal courts sitting side by side," which would "do violence to the principle of uniformity within a state upon which the [*Erie*] decision is based." *Id.*

Nor can the majority rely on the general principle that a district court should "protect" the class by conducting a "heightened" or "rigorous" analysis of whether class counsel has satisfied certain Rule 23 prerequisites. Opinion at ——, ——, ——, — — ——. Rule 23 says nothing about how choice-of-law issues should be resolved, nor does it require class counsel or the district court to make choice-of-law arguments on the objectors' behalf. We should avoid importing into the class certification process "an additional hurdle" found nowhere in the Rule. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

Moreover, the majority's position puts us at odds with the reasoned decisions of other circuits. The prevailing view amongst our sister circuits is that "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) (en banc) (alteration in original) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004)). These circuits reject the notion that Rule 23 places the burden on anyone other than the objector to prove which law applies. *See Mex. Money*, 267 F.3d at 747 ("Why [class counsel] should have an obligation to find some way to defeat class treatment is a mystery."). As Judge Easterbrook has explained:

> **\*21** It is best to bypass marginal theories if their presence would spoil the use of an aggregation device that on the whole is favorable to holders of small claims. Instead of requiring the plaintiffs to conduct what may be a snipe hunt, district judges should do what the court did here: Invite objectors to identify an available state-law theory that the representatives should have raised, and that if presented would have either increased the recovery or demonstrated the inappropriateness of class treatment.

*Id.* This burden allocation makes sense because Rule 23 does not come into play until *after* a foreign law proponent has proven that the class claims are governed by multiple states' laws. The majority's contrary holding sends a district court on exactly the "snipe hunt" that the Seventh Circuit warns against.

The problem created by the majority can easily be avoided simply by adhering to our own precedent, which is on all fours. In *Hanlon v. Chrysler Corp.*, we affirmed certification under Rule 23(b)(3) of a nationwide settlement class of car owners alleging violations of state consumer laws. 150 F.3d at 1017, 1022. There, as here, multiple class actions were filed and then consolidated in California following a federal agency's investigation, with the defendant announcing a remedial plan and entering into a settlement only after the class moved for certification. *Id.* at 1018. Like the *Gentry* objector in our appeal, an objector in *Hanlon* filed a late class action in

another state and sought to litigate it in contravention of the district court's orders. *Id.* at 1019. We held that common questions as to the defendant's knowledge and the existence of the problem (the same questions at issue here) predominated, notwithstanding "variations in state law." *Id.* at 1020, 1022–23. In rejecting the objectors' argument that "the idiosyncratic differences between state consumer protection laws" defeated predominance, we reasoned that the claims revolved around a "common nucleus of facts" and applied the longstanding rule that "differing remedies" do not preclude class certification. *Id.* at 1022–23. That same reasoning applies with even greater force here, where the class claims turn on the Defendants' common course of conduct (its fuel economy statements) and no objector established that the law of any other states applied.

### C. The settlement raises no concerns about collusion

The majority implies that the settlement here raises the same concerns about collusion between class and defense counsel that animated *Amchem*. Opinion at ——. But this case is nothing like *Amchem*, which was the most "sprawling" class the Court had ever seen. 521 U.S. at 624, 117 S.Ct. 2231. There, asbestos manufacturers agreed to settle with class counsel for several pending products liability cases only upon receiving a global release for as-yet-unfiled lawsuits by future claimants, who class counsel did not represent. *Id.* at 601, 117 S.Ct. 2231. Unlike class counsel here, who litigated for years, the settling parties in *Amchem* never intended to litigate the future claimants' lawsuits. *Id.* at 601, 117 S.Ct. 2231. Instead, within a single day, they filed a complaint, an answer, a proposed settlement, and a motion to certify a class of current and future claimants under various state products liability laws—none of which are implicated here. *Id.* at 601–03, 117 S.Ct. 2231. The class encompassed individuals "exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods," rendering some class members sick while others suffered "no physical injury." *Id.* at 624, 117 S.Ct. 2231. But while the class definition was expansive, the remedies were anemic. The settlement allowed the defendants to unilaterally set the compensation for claims, capped the number of claims payable per year regardless of how many were filed, and bound the class in perpetuity despite allowing the defendants to withdraw after ten years. *Id.* at 604–05, 117 S.Ct. 2231.

**\*22** Unsurprisingly, the Court found the class untenable on multiple grounds, including inadequate representation, because of class members' conflicting interests. *Id.* at 627–28, 117 S.Ct. 2231. Whereas current claimants, who suffered from lung cancer and other asbestos-related illnesses, wanted to maximize the current payout, future claimants, who were healthy at the time, had a strong interest in preserving funds should they become sick. *Id.* at 624, 117 S.Ct. 2231. The Court also highlighted unexplained disparities between class members' recovery, with some class members receiving no compensation at all and others receiving hundreds of thousands less than the average recovery for that claim. *Id.* at 604, 610 n.14, 117 S.Ct. 2231. It was in this collusive context that *Amchem* chided the district court for not devoting "undiluted, even heightened, attention" to Rule 23 criteria "designed to protect" absent class members and their right to proper notice and adequate representation. *Id.* at 620, 117 S.Ct. 2231 (citing Rule 23(c) and (d)). Moreover, the Court expressly distinguished the case before it, where "individual stakes are high and disparities among class members great," from consumer class actions, where the predominance requirement is "readily met." *Id.* at 625, 117 S.Ct. 2231.

The consumer class certified here raises none of the concerns identified in *Amchem*. As *Hanlon* explained in distinguishing *Amchem*, the "heart" of the problem there was the class members' conflicting interests: current claimants, who were sick, wanted to maximize the immediate payout, whereas healthy claimants had a strong interest in preserving funds in case they became ill in the future. *Hanlon*, 150 F.3d at 1020–21. Here, like in *Hanlon*, there are no such conflicts because all class members suffer from "the same problem"—cars with a fuel economy that is worse than advertised—for which they are all compensated, without any of the onerous terms that *Amchem* found objectionable. *See id.* at 1021.

Nor does *Amchem* support decertification on the ground urged by the majority, namely, that the district court should have sua sponte catalogued the laws of all 50 state law to identify any variations and competing state interests. *Amchem* did not address, much less conduct, a choice-of-law analysis. The fundamental problem in *Amchem* was the factual differences between class members that created a conflict between potential

claimants. *Id.* at 1020–21. And that conflict would have existed even if all the state laws at issue were identical.

Finally, faulting the district court at every turn, the majority fails to adhere to our deferential standard of review. When reviewing an order granting class certification, "we accord the district court noticeably more deference than when we review a denial." *Torres*, 835 F.3d at 1132 (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013)). Our review of a class action settlement is "very limited" and we will "reverse only upon a strong showing that the district court's decision was a clear abuse of discretion." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (internal quotation marks omitted) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "This is especially true in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id.* (quoting *Class Plaintiffs*, 955 F.2d at 1276); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963–64 (9th Cir. 2009). The majority's failure to apply a deferential standard of review is reflected in the opinion's unusual reliance on a *tentative* order in the *Espinosa* class action, which the district court never adopted. *See* Opinion at ––– – –––, –––. But it is only the district court's final rulings—issued after it had the benefit of additional briefing, hearings, and over eight more months of discovery—which we are reviewing here.

### III. Used car owners need not offer individualized proof under the reasonable consumer test, which asks only if the public is likely to be deceived

In excluding used car owners from the class, the majority again focuses on an argument not raised by the objectors and belied by the record. The reliance element of California consumer protection laws "does not require individualized proof" that each plaintiff was exposed to a specific misrepresentation. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (internal quotation mark omitted) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20, 35 (2009)). Rather, under the "reasonable consumer test," reliance is presumed if "members of the public are likely to be deceived" by the defendant's misrepresentation. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *Tobacco II*, 93 Cal.Rptr.3d

559, 207 P.3d at 29. In fact, the California Supreme Court has expressly rejected the view that a claim requires proof that purchasers "heard and had relied on specific misrepresentations." *Tobacco II*, 93 Cal.Rptr.3d 559, 207 P.3d at 40.

**\*23** Applying this standard, we routinely affirm class certification without demanding proof of every class member's exposure to the same misrepresentation. In *Gutierrez v. Wells Fargo Bank, NA*, for example, we upheld class certification because common issues predominated as to whether the public was likely to be deceived (and thus reliance could be presumed) by a bank's "misleading marketing materials." 704 F.3d 712, 728–79 (9th Cir. 2012). The district court identified four exhibits that contained the bank's misleading marketing of its overdraft fees: a website, a 2001 and 2005 brochure, and a new account jacket from 2004 that was "customarily provided" at the opening of a new account. *Id.* at 729. On appeal, we did not limit the class to only those new account holders who read the jacket; instead, we upheld certification of a class that included all account holders who had incurred overdraft fees from 2004 to 2008. *Id.* at 718, 728–29. As we explained, the class was not overbroad because the "pervasive nature" of the marketing materials established reliance, as similar statements appeared in other advertising, which was enough to show reliance under California law. *Id.* at 729; *accord Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975) (where there are "similar misrepresentations, ... the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions").

Similarly, the district court here did not limit the class to those who saw the Monroney stickers on new cars because the fuel economy statements were also "uniformly" made in "nationwide advertising." The advertising campaign here was even more pervasive than in *Gutierrez*, with more than $100 million spent on a large number of print magazines, billboards, and TV commercials during the NFL playoffs, the Super Bowl, and the Academy Awards. The objectors do not refute any of this evidence, which in any event requires us to defer to the district court's factual finding even if another view "is equally or more" plausible. *Cooper v. Harris*, ––– U.S. ––––, 137 S.Ct. 1455, 1465, 197 L.Ed.2d 837 (2017).

The omissions in the advertising campaign here bear no resemblance to the "smaller-scale" advertisements of "quite disparate information" in *Mazza*, to which the majority (but not the objectors) analogizes. 666 F.3d at 586, 595–96. We have distinguished *Mazza* to uphold class certification where, as here, the class suffers from an "informational injury," meaning "a common policy of non-disclosure" by the defendant. *Torres*, 835 F.3d at 1135. As we have explained, the outcome in *Mazza* was due to the defendant having "subjected only a small segment of an expansive class of car buyers to misleading material as part of a 'very limited' advertising campaign." *Id.* at 1137 (quoting *Mazza*, 666 F.3d at 595). But where there exists "a common failure to disclose information, and not merely a disparate series of affirmative statements," predominance is easily established. *Id.* at 1137–38; *accord In re First All. Mortg. Co.*, 471 F.3d 977, 985, 990–91 (9th Cir. 2006) (affirming consumer class certification under California law based on defendants' omissions and misrepresentations communicated through various loan officers).

Rather than apply clear error review, the majority faults the settling parties for purportedly "not identify[ing] any evidence in the record of [a] massive advertising campaign." Opinion at ––––. But the settling parties directed us to such evidence, including the TV and print advertising discussed above. And, contrary to the majority's assertion, the advertisements' misleading fuel statements were not limited to only Elantra vehicles. Importantly, the settling parties might well have identified more evidence had the objectors actually made the argument that the majority advances here. The objectors' failure to do so waived the issue. *See W. Radio*, 678 F.3d at 979.

Finally, the majority mistakenly equates the uniform advertising campaign here with the asbestos exposure in *Amchem*, Opinion at ––––, which involved different substantive state law. Unlike the products liability claims in *Amchem*, the consumer claims here do not turn on individualized proof of exposure. *See Rubio*, 613 F.3d at 1204. Moreover, predominance is not defeated simply because there may be "important matters ... peculiar to some individual class members." *Tyson*, 136 S.Ct. at 1045; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (reversing denial of class certification despite "some

variation" in claims and "some potential difficulty in proof").

### IV. The attorneys' fees award
### was not an abuse of discretion

**\*24** The district court correctly calculated the attorney's fee award using the lodestar method and then cross-checked that figure against the settlement's estimated value to make the factual finding that the "total amount of attorney's fees awarded in this case is far lower than ... 25% of the settlement figure." The majority does not dispute this methodology, but criticizes the award based on its own miscalculation of the settlement's value and the mistaken belief that the court failed to address the objectors' questions. Opinion at —— – ——. These are curious grounds for disapproval, as the objectors do not rely on them, instead confirming at oral argument that that their "only disagreement is with the *multiplier* that was applied to a portion of the fees." Oral Argument at 17:01– 17:25. In fact, the concerns that the objectors raised were addressed by the district court in several hearings and rounds of supplemental briefing.

The majority states that the court failed to answer the objectors' questions about whether the Lifetime Reimbursement Program ("LRP") portion of the settlement "could be attributed to the attorneys' efforts in this litigation," implying that the LRP was instead the result of the EPA investigation. Opinion at ——. But these questions were not raised by the objectors and, in any event, are answered by the district court's finding that the investigation only played a "part" in Defendants' announcement of the LRP on November 2, 2012. The LRP announcement came only after almost a year of dispositive motions, discovery, depositions, and expert reports, and just three weeks before a class certification hearing. It is therefore more than reasonable to infer, as the district court did, that this litigation pressured Defendants to announce the LRP.

Certainly, the claims here were bolstered by the EPA's finding that Defendants' fuel economy representations were inflated. Yet other important elements of the class claims remained unresolved. Where, as here, other "pivotal issue[s]" remain, we have rejected objectors' arguments that a federal investigation merits a reduction in class counsel's fees. *Vizcaino v. Microsoft Corp.*, 290

F.3d 1043, 1048 n.3 (9th Cir. 2002). And we have never before conjured arguments not advanced by objectors to discredit class counsel's role in diligently litigating a case to settlement simply because, along the way, an agency's findings *confirmed* the claims' viability. To the contrary, we have upheld certification of nationwide class actions even when they were filed *after* a federal agency's investigation established liability. *See Hanlon*, 150 F.3d at 1018.

Moreover, the record supports the district court's finding that attorneys' fees were "far lower" than 25% of the settlement value even if we count only the portion of the settlement that is indisputably attributable to class counsel's efforts: LRP claims filed after December 31, 2013 (the original LRP enrollment deadline that the settlement extended). As reflected in several expert [5] and other reports, the net present value of LRP claims filed after that date totaled more than $65 million by March 26, 2015, which was still several months away from the July 6, 2015, claim deadline. [6] An attorneys' fees award of $8.9 million is less than 14% of this $65 million portion of the settlement.

The majority wrongly suggests that all class claims were worth less than "$44,000,000 in total value." Opinion at ——. The reports from which it plucks that number make clear that the $44 million reflected only *lump sum* payments for roughly 100,000 "completed claims" as of March 2015. That number does not include the $65 million in LRP claims filed after December 2013, nor the almost 42,000 "pending claims" that had not yet been paid, nor any other claims to be submitted in the more than three months before the July 6, 2015, claim deadline. Not only that, the majority's concerns about how to account for class members who switched from the LRP to a lump sum payment were addressed in expert reports that calculated the "incremental value" of the lump sum payments. These reports were never challenged below. [7]

**\*25** The majority also suggests that "this exact arrangement" has been found to be "one of the 'subtle signs' of collusion." Opinion at —— – —— n.28 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 943, 947 (9th Cir. 2011)). This case could not be more different than *Bluetooth*, in which the settlement paid the class "zero dollars" and contained a "clear sailing" provision in which "defendants agreed not to object"

to an award of attorneys' fees totaling eight times the cy pres award, and a "kicker" clause whereby "all fees not awarded would revert to defendants." 654 F.3d at 938, 947. The district court there made no findings under *either* the lodestar or the percentage method and instead awarded what "defendants agreed to pay." *Id.* 943. Here, the settlement has no clear sailing or kicker clauses, Defendants successfully litigated a reduction in fees, the court made findings, and the class received tens of millions of dollars. Moreover, the settlement here "was negotiated over multiple mediation sessions with a respected and experienced mediator," class counsel were "experienced," and class members had plenty of opportunities to raise their concerns at seven hearings over seventeen months. The majority has "floated out the specter" of collusion, "but brought forth no facts to give that eidolon more substance." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008).

Given that the objectors' sole quibble is with the multiplier used by the district court, and reviewing factual findings for clear error, affirmance should be an easy call. The district court's findings about the "complexity" of the work and the "risk" class counsel assumed by litigating this case are exactly the kind of findings that justify an upward lodestar adjustment. *Hanlon*, 150 F.3d at 1029. Based on similar findings, we have affirmed fee awards

totaling a far greater percentage of the class recovery than the fees here. *See, e.g., Vizcaino*, 290 F.3d at 1047–48 (no abuse of discretion to award fees constituting 28% of the class's recovery given the "risk" assumed in litigating); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (no abuse of discretion where the "$4 million award (thirty-three percent [of the class's recovery] ) for attorneys' fees is justified because of the complexity of the issues and the risks"). The majority's disregard of our usual deferential review is deeply troubling.

\* \* \*

In decertifying this class of hundreds of thousands of car owners who were deceived, the majority effectively ensures that "no one will recover anything." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000). "Settlement at least allows damages for some members of the class where damages might otherwise be unobtainable for any member of the class." *Id.* Because the district court committed no error, I would affirm.

### All Citations

--- F.3d ----, 2018 WL 505343

### Footnotes

1   Defendants-Appellees also include Hyundai and Kia affiliates Kia Motors Corporation; Grossinger Autoplex, Inc., FKA Grossinger Hyundai; John Krafcik; Hyundai Motor Company; and Sarah Kundrat. We refer to all Hyundai entities as "Hyundai" and all Kia entities as "Kia."

2   Rule 23(b) provides, in relevant part:
    A class action may be maintained if Rule 23(a) is satisfied and if: ...
    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
    (D) the likely difficulties in managing a class action.

3   The Supreme Court has explained that in order to apply the forum state's law to out-of-state defendants, the state must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). There is no dispute that California has significant contacts with the defendants in this case.

4   Under California choice of law rules, there are "two different analyses for selecting which law should be applied in an action": one considering a contractual choice-of-law provision, and the other requiring an application of the governmental interest test. *See Wash. Mut. Bank*, 24 Cal. 4th at 914–15, 103 Cal.Rptr.2d 320, 15 P.3d 1071. The governmental interest test has three steps. "Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."

*Id.* at 920, 103 Cal.Rptr.2d 320, 15 P.3d 1071. If "the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case." *Id.* If "each state has an interest in having its own law applied, thus reflecting an actual conflict" the court "must select the law of the state whose interests would be more impaired if its law were not applied." *Id.*; *see also Mazza,* 666 F.3d at 589–90.

5    California takes the same approach in applying a choice-of-law analysis to class claims. Under California law, if the court concludes "that class claims will require adjudication under the laws of multiple states," then " 'the court must determine "whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently.' " *Wash. Mut. Bank,* 24 Cal. 4th at 922, 103 Cal.Rptr.2d 320, 15 P.3d 1071. In California, " 'the class action proponent bears the burden of establishing the propriety of class certification.' " *Id.*

6    A court must make such a fairness finding under Rule 23(e) of the Federal Rules of Civil Procedure, which prohibits a court from approving a settlement unless it concludes that "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

7    According to the EPA, the improper procedures included selecting results from test runs that were aided by a tailwind, selecting only favorable results from test runs rather than averaging a broader set of results, restricting testing times to periods when the temperature allowed vehicles to coast farther and faster, and preparing vehicle tires to improve the test results.

8    In October 2014, Hyundai and Kia entered into a $100 million consent decree with the United States and the California Air Resources Board to settle claims arising from the EPA investigation.

9    Specifically, the *Espinosa* plaintiffs asserted claims for violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17209; violations of California False Advertising Law, *id.* §§ 17500–17509; violations of California Consumer Legal Remedies Act, *id.* §§ 1750–1784; fraud; negligent misrepresentation; and deceit, *id.* § 1710.

10   During the period from January 2012, when the *Espinosa* plaintiffs filed their complaint, until November 2012, the date the EPA announced the result of its investigation and Honda announced its LRP program, the *Espinosa* plaintiffs focused their efforts on certifying a class. The plaintiffs otherwise limited their actions to filing two amended complaints (one to join additional class representatives) and responding to Hyundai's motion to dismiss, which was denied by the district court on April 24, 2012. (Hyundai's prior motion to dismiss had been vacated when Espinosa filed its amended complaint.) *Hunter v. Hyundai Motor America,* No. 8:12-CV-01909 (C.D. Cal. filed Nov. 2, 2012), and *Brady v. Hyundai Motor America,* No. 8:12-cv-1930 (C.D. Cal. filed Nov. 6, 2012) were not filed until after the LRP program was announced.

11   Although the court indicated that the marketing efforts related to "the fuel efficiency of the Elantra and Sonata vehicles," the campaign identified by the court was limited to the 2011 Elantra. Specifically, the court noted that Hyundai had purchased advertising for the 2011 Elantra during the NFL playoffs, the Super Bowl, and the Academy Awards, placed Elantra ads on Amazon, Facebook, Yahoo, and other internet sites, used print advertising, and placed billboard ads for the 2011 Elantra in Times Square in New York and on certain California freeways.

12   A Monroney Sticker is named after Senator A.S. Mike Monroney, sponsor of the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231–1233. The Act requires a car manufacturer to affix a label displaying information about the car's fuel efficiency to the window of every new vehicle sold in the United States. *See* 15 U.S.C. §§ 1232–1233; *see also* 49 U.S.C. § 32908; 49 C.F.R. § 575.401 (2012). Monroney stickers are not required for sales of used cars. *See* 15 U.S.C. §§ 1232–1233.

13   Specifically, the *Hunter* and *Brady* plaintiffs asserted claims under California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17209; California False Advertising Law, *id.* §§ 17500–17509; California Consumer Legal Remedies Act, *id.* §§ 1750–1784; for fraud; for negligent misrepresentation; for unjust enrichment; and for breach of express warranty, Cal. Com. Code § 2313.

14   *See* Rule 1.1(h), Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation (" 'Tag-along action' refers to a civil action pending in a district court which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407.").

15   The settlement agreement covered 41 different Hyundai models and 35 different Kia models from 2011 to 2013.

16   For lessees, the lump sum payment was based on a 2.75-year term.

17   In January 2014, the settling parties filed an addendum to the proposed settlement that extended the additional $100 offer to former owners of these Hyundai models. In May 2014, the settling parties filed a second addendum to the settlement agreement allowing class members to submit claims through the settlement website and requiring defendants to follow certain procedures for distributing class members' payments.

18   The *Gentry* plaintiffs alleged violations of the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code Ann. §§ 59.1-207.9 to 207.16:1, the Virginia Consumer Protection Act, *id.* § 59.1-200(14), and Virginia's false advertising statute, *id.* § 18.2-216.

19   The *Gentry* plaintiffs argued that the Virginia Consumer Protection Act provides for a minimum of $500 in statutory damages for individuals who suffer damage as a result of a violation of the act, *see* Va. Code Ann. § 59.1-204(A), while California's Consumer Legal Remedies Act sets no statutory minimum damages for individuals who suffer violations of the act, *see* Cal. Civ. Code § 1780(a). This statutory minimum of $500 is superior to the average maximum lump sum benefit of $353 that Hyundai class members are entitled to under the settlement. In addition, under the Virginia Consumer Protection Act, the trier of fact can award treble damages within its discretion if it finds that the violation was "willful," *see* Va. Code Ann. § 59.1-204; *Holmes v. LG Marion Corp.*, 258 Va. 473, 478, 521 S.E.2d 528 (1999), whereas, under California's Legal Remedies Act, the trier of fact can only award punitive damages if it finds "clear and convincing evidence" of "oppression, fraud, or malice," Cal. Civ. Code. § 3294(a).

20   The dissent contends that we should disregard the *Gentry* plaintiffs' argument regarding California choice of law rules because they alternatively argue on appeal that the failure to include a Virginia subclass would violate their due process rights. *See* Dissent at ——– ——, n.3. This claim is based on the *Gentry* plaintiffs' interpretation of a Virginia Supreme Court case as holding that the commencement of a class action in California that does not include a Virginia cause of action will not toll the statute of limitations in Virginia, and thus they would be time-barred from bringing their Virginia-specific claims. Recognizing this interpretation is in dispute, the *Gentry* plaintiffs alternatively urged us to certify this question to the Virginia Supreme Court. Because the *Gentry* plaintiffs raised their choice-of-law argument to the district court, we do not place any significance on the fact that they later also raised an alternative argument.

21   In addition to the *Gentry* plaintiffs, the objectors included the named plaintiffs in two other actions transferred to the district court as part of MDL No. 2424, *Krauth* and *Wilson v. Kia Motors America, Inc.*, No. 13-cv-1069 (D.N.J. filed Jan. 24, 2013). These plaintiffs are not objectors in this appeal.

22   The class was defined as: "[a]ll current and former owners and lessees of a Class Vehicle (i) who were the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States," with several small exceptions.

23   The dissent argues that we fail to apply the correct standard of review. *See* Dissent at ——. In making this argument, the dissent echoes the dissenting justices in *Amchem*, which likewise argued that the majority had erred in failing to give sufficient deference to the district court. *Amchem*, 521 U.S. at 630, 117 S.Ct. 2231 (Breyer, J., concurring in part and dissenting in part). But we are bound by the *Amchem* majority, which indicates that a district court makes a legal error, and thus abuses its discretion, when it fails to scrutinize a settlement class to the same extent as a litigation class. *Id.* at 620, 117 S.Ct. 2231.

24   California courts have likewise read *Tobacco II* narrowly, and have rejected the argument that class-wide reliance can be presumed "whenever there is a showing that a misrepresentation was material." *Tucker v. Pacific Bell Mobile Services*, 208 Cal. App. 4th 201, 226–27, 145 Cal.Rptr.3d 340 (2012) (citing *Tobacco II*, 46 Cal. 4th at 327, 93 Cal.Rptr.3d 559, 207 P.3d 20). As indicated in *Mazza*, reliance can be presumed only when there is the sort of massive decades-long advertising campaign at issue in *Tobacco II*. 666 F.3d at 596. Regardless whether the Hyundai and Kia advertising campaign here was more extensive than the campaign in *Mazza*, *see* Dissent at ——, it does not come close to the level of cigarette advertising from the 1960s to the 2000s.

25   The district court's statement in its November 2012 ruling that class-wide reliance on the challenged advertising could be presumed due to the "extensive sweep" of Hyundai's marketing efforts focused solely on the 2011 Elantra model; the Sonata model is merely mentioned in an aside. The court did not address either the 35 other Hyundai models or any Kia models. This is not surprising, given that the district court relied on a declaration that focused almost exclusively on the 2011 Elantras, with only limited mention made of the 2011 Sonata models or any 2012 models. Moreover, because the advertising was limited in time (under a year) and scope, it does not come close to the pervasive campaign (extending over 40 years by 11 separate companies) described in *Tobacco II*.

26   Although the settling parties filed expert reports, the district court did not discuss or address them in any way. An examination of the reports, would have likely led the district court to probe some of expert's questionable assumptions, such as the assumption that car owners who entered the LRP program before the settlement would own their cars for a shorter period of time than car owners who entered the LRP program after the settlement, and the assumption that all of the class members who entered the LRP program after the settlement would not have done so of their own accord regardless of the settlement.

27 The dissent contends that "we have rejected objectors' arguments that a federal investigation merits a reduction in class counsel's fees," citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 n.3 (9th Cir. 2002). *See* Dissent at ——. This is incorrect. *Vizcaino* concluded that the federal investigation was irrelevant to the pivotal issue in the suit, and therefore concluded that it did not merit a reduction in fees. By contrast, the EPA investigation here established that Hyundai and Kia had misstated fuel efficiency estimates for certain models, which was the pivotal issue in this class action, and which directly led Hyundai and Kia to implement the LRP program.

28 We also disagree with the district court's conclusion that "the issue of collusion is not present in the attorney[s'] fees context" because "the attorney[s'] fees were awarded separately from the class recovery and did not impact class recovery." The district court's responsibility to conduct an independent inquiry into the reasonableness of attorneys' fees is of equal, if not greater, importance when attorneys' fees are awarded separately from the class award. *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 943. Indeed, we have identified this exact arrangement as one of the "subtle signs" of collusion in the settlement context. *See id.* at 947. Similar to the "clear sailing agreement" examined in *Bluetooth Headset Prods. Liab. Litig.*, the parties reached an agreement on the amount of attorneys' fees to be paid in the *Hunter* and *Brady* actions, and the defendants did not contest the fees before the district court.

29 In light of our decision that the district court abused its discretion in certifying a settlement class under Rule 23(b)(3) without conducting a choice of law analysis and considering differences in state consumer protection laws, we do not reach the objection raised by James Feinman, counsel for the *Gentry* plaintiffs, that the district court abused its discretion in not awarding him attorneys' fees.

30 Objectors raised a number of additional arguments, including claims that: the district court abused its discretion in certifying the settlement class because named plaintiffs did not adequately represent the interests of the class, as required under Rule 23(a)(4); the district court's failure to conduct a choice of law analysis violated absent class members' due process rights; the district court's failure to certify a Virginia subclass violated class members' due process rights; and the settlement was not fair and adequate under Rule 23(e). Because we conclude that the district court abused its discretion in certifying the class under Rule 23(b)(3), we do not consider these arguments. *See Wang*, 737 F.3d at 546.

1 The majority attempts to soften its decision by noting that its vacatur of the class certification "does not mean that the court is foreclosed from certifying a class (or subclasses) on remand." Opinion at ——. But this sentiment is undercut by the majority's acknowledged "grave concerns about the viability of a nationwide class in this [case's] context." Opinion at ——.

2 The objectors' burden is not the "modest" burden applicable when an out-of-state defendant invokes its due process right to be free from arbitrarily applied state law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). We cannot conflate the due process rights of out-of-state defendants with those of objectors given that the "burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant." *Id.* at 808, 105 S.Ct. 2965. While the objectors have a due process right to opt out of the settlement, they have no due process right to dictate which state's law applies to the class. *See id.* at 814, 105 S.Ct. 2965 (rejecting objectors' due process challenge to settlement).

3 Indeed, the lead plaintiff in the *Gentry* tag-along action (the only *Gentry* objector to appeal) sought to hold hostage any class recovery under the settlement unless she and her attorney were certified to represent a Virginia subclass that, by her own concession, would recover *nothing* because her claim was "time-barred" under Virginia law. Given that concession, any textual differences between the two states' statutes are not "material" because they do not "make a difference in this litigation": they do not result in a greater recovery under Virginia rather than California law. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012).

4 *See, e.g., Rutledge v. Hewlett-Packard Co.*, 238 Cal.App.4th 1164, 190 Cal.Rptr.3d 411, 431–32 (2015) (reversing denial of nationwide consumer class certification where lower "court improperly placed the burden" on class counsel because "the burden was on [the foreign law proponent] to demonstrate that the interests of other state's laws were greater than California's interests").

5 These expert reports were filed in appeal No. 15-56014 on March 10, 2016.

6 That $65 million figure is the sum of the net present value of LRP claims filed from January through December 2014 with Hyundai ($13,698,496) and Kai ($12,535,120), plus net present value of LRP claims filed after that date with Hyundai ($21,862,156) and Kia ($17,655,276).

7 These reports reflect a total settlement value of, conservatively speaking, more than $159 million as of March 2015—three months before the July 6, 2015, claim deadline. That $159 million reflects the sum of the $65 million in LRP claims filed after December 31, 2013, another $50 million in LRP claims filed before that date, and $44 million in lump sum payments. Given that the settlement totaled $159 million well before the claim deadline, the district court was correct that the claims

process was on track to reach an estimated $210 million. Where, as here, a settlement involves "a complicated formula from which valuable considerations of several kinds are provided to the class members," it is no abuse of discretion to use a settlement's "estimated value" when calculating fees. *Wing v. Asarco Inc.*, 114 F.3d 986, 990 (9th Cir. 1997).

---

**End of Document**                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---