SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:     415.434.3947
Email:          npopovic@sheppardmullin.com
                   amclean@sheppardmullin.com
                   trodewald@sheppardmullin.com
                   lpayne@sheppardmullin.com
                   jsiu@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**SEAGATE'S OBJECTIONS TO AND REQUEST TO STRIKE EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>**Judge:**  Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed:  July 11, 2016 |

For the reasons stated herein, and pursuant to Local Civil Rule 7-3(d)(1), Federal Rule of Evidence 702, and Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1), Seagate objects to, and respectfully requests the Court to strike, the Rebuttal Declaration of Andrew Hospodor in Support of Class Certification ("Hospodor II") and the Declaration of Stefan Boedeker in Further Support of Plaintiffs' Motion for Class Certification ("Boedeker Rebuttal Declaration").

## I. THE HOSPODOR REBUTTAL DECLARATION SHOULD BE STRICKEN

### A. Hospodor II Far Exceeds the Bounds of Permissible Rebuttal

Rebuttal reports must be limited to responding to an opposing expert's report.[1] Thus, an initial report "*must* contain [] a *complete* statement of *all* opinions the witness will express and the basis and reasons for them," FED. R. CIV. P. 26(a)(2)(B)(i), and a rebuttal report is *limited to* "contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party." Fed.R.Civ.P. 26(a)(2)(D)(ii).[2] It cannot introduce new opinions or analysis that should have been disclosed in the initial report. Allowing a plaintiff to present new work and opinions in rebuttal—especially as to issues on which it bears the burden of persuasion—would "deny a party the opportunity to rebut the new opinions expressed in a faux 'rebuttal' report," *R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 WL 2923703, at *5 (D. Nev. July 18, 2011); "reverse the order of proof. . .", *Braun v. Lorillard Inc.*, 84 F.3d 230, 237 (7th Cir. 1996), and constitute unfair sandbagging. *In re High-Tech Employee Antirust Litigation*, 2014 WL 1351040, at *12. A rebuttal report that goes beyond the permitted scope cannot be used. FED. R. CIV. P. 37(c)(1). "The sanction is *automatic and mandatory* unless the sanctioned party can show that its violation . . . was either justified or harmless." *Matthew Enter.,* 2016 WL 4272430, at *2.

Although Hospodor styles his report as a "rebuttal," it is not. At the class certification stage,

---

[1] A reply expert declaration is a rebuttal report. *See, e.g.*, *Matthew Ent., Inc. v. Chrysler Group LLC,* 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016); *In re High-Tech Employee Antirust Litigation*, 2014 WL 1351040, at *12 (N.D. Cal. Apr. 4, 2014). Rule 26's limitations apply equally to expert reports submitted on class certification. *Kleen Products LLC v. Inter'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015); *Bowman v. IBM Corp.*, 2012 WL 6596933 (S.D. Ill. Dec. 18, 2012).

[2] Even so, rebuttal is "limited to 'new *unforeseen* facts brought out in the other side's case.'" *Columbia Grain, Inc. v. Hinrichs Trading, LLC*, 2015 WL 6675538, at *2 (D. Idaho Oct. 30, 2015). "Thus, a party cannot 'offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief.' " *Bowman*, 2013 WL 1857192, at *5 (citation omitted); *see also Matthew Enter.,* 2016 WL 4272430, at *2, *4 (rebuttal report may not "set forth an alternate theory" or "change methodologies to account for noted deficiencies" or present new facts.)

Plaintiffs bear the burden of establishing, among other things, that **common** questions of law or fact predominate over individual questions. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (plaintiffs must "satisfy through evidentiary proof" every Rule 23 element.) However, in his opening report and deposition, Hospodor *expressly disclaimed* that he was offering opinions or evidence to support commonality. He testified that that his role was to provide "examples" only, and that he was not opining: (i) that any defects, issues or failure rates were *common* to the drive products sold throughout the class period; (ii) that the failure rates of any drives extended beyond 2012; or (iii) as to the failure rates of drives in consumers' hands. (Payne Decl., Ex. 11 at 49:7-52:25, 54:17-55:5, 125:19-128:14; 255:3-256:16.) Seagate's expert, Donald Adams—whom Plaintiffs elected not to depose—pointed out numerous deficiencies in Hospodor's opening report on the issue of commonality, including that the report contained *no evidence* of *common* issues or failure rates; with one exception, Hospodor's *evidence was limited to* Grenada *Classic* drives *in 2011-2012*; and Hospodor's evidence *could not establish* that any Drives had any particular failure rate in the marketplace, let alone above 1%. (Opposition at 7-8, 24-25.)

Hospodor now attempts for the first time to introduce opinions and analysis supporting commonality, and to fill the identified holes in his prior report. Specifically:

(a) he introduces new opinions/analysis that certain issues "persisted" past 2012 and/or were allegedly "consistent" across (some) drive products, including new opinions and analysis relating to: (1) ship holds (Hospodor II ¶¶ 6-21), (2) unspecified contamination issues (*id*. ¶¶ 30-31), (3) unspecified 'complaints' from OEMs not previously identified (*id*. ¶ 34), (4) raw AFR in Seagate's ORT testing (*id*. ¶¶ 35-50);

(b) he claims for the first time that it is possible to draw conclusions about the failure rates of drives in consumers' hands (*id*., ¶¶ 51-52);

(c) Plaintiffs claim Hospodor II shows "high failure rates (regardless of Seagate's marketing name)." (*See* Reply at 6.)

Hospodor's new material continues Plaintiffs' strategy of misusing normal drive development and manufacturing quality control processes to attempt to raise a variety of *disconnected* issues with the drives, and none shows *failure rates* in consumers' hands at all. However, Hospodor's new opinions constitute Plaintiffs' first (albeit still unsuccessful) attempt to establish commonality and thus meet their burden of proof on class certification. This attempt contradicts Hospodor's opening report and deposition. (Opposition at 24:7-17.) Seagate has had no

opportunity to challenge the new opinions and show their innumerable deficiencies. Thus, Plaintiffs would reverse the burden of proof by requiring Seagate to disprove Plaintiffs' claims without ever seeing them. This sandbagging and unfair surprise is prohibited.[3] *Columbia Grain,* 2015 WL 6675538, *2-3; *Bowman,* 2012 WL 6596933, *7; *Matthew Enter.,* 2016 WL 4272430, *2, *4.

### B. Hospodor II Should Be Stricken under Rule 702 and *Daubert*

**Rule 702:** The party submitting expert testimony carries the burden to show its admissibility. *Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.*, 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007). Thus, Hospodor must ***demonstrate*** that his opinions are based on sufficient facts or data and on reliable principles and methods. Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Here, Hospodor's new analysis is based entirely on speculation and misinterpretations of a handful of internal Seagate documents, and is neither reliable nor admissible. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (upholding exclusion of "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

**Irrelevance**: To be relevant on class certification, expert testimony must relate to issues "that could affect the class as a whole." *In re 5-Hour Energy*, 2017 WL 2559615, at *3 (C.D. Cal. June 7, 2017). Plaintiffs' new theory is that Seagate "was obligated to disclose the unreliability of its drives, separate from any misrepresentations." (Reply at 2-6.) Thus, at a minimum, Plaintiffs must show there is a ***common*** issue of ***a high failure rate in consumers' hands***.[4] As shown below, Hospodor II fails to address this question. Therefore, it is irrelevant. Seagate objects to the entirety of Hospodor II on the foregoing bases, and makes the following specific objections:

**Ship Holds, "Contamination" (Hospodor II, ¶¶ 6-29, Reply, p. 5-6) – Irrelevance, Rule 702**: **(i)** These relate to many diverse issues, not common ones. **(ii)** Hospodor introduces only 3 ship holds after 2012. (Hospodor II, ¶¶ 18, 20.) Seagate can prove that at least two of the three (from 2013 and 2015) *did not relate to the ST3000DM001 drives at issue*. **(iii)** Ship holds were triggered for "raw" AFRs in the range of 1-2% or other small percentage issues, meaning that only a very small fraction of drives were affected. (*e.g.,* Netel Decl., ¶¶ 31, 38; Hospodor I, ¶ 176-77) Hospodor provides no basis to link issues in small percentages of drives held prior to shipment to *unreasonably high failure rates in consumers' hands*. **(iv)** Ship holds could relate to all drive

---

[3] That Hospodor styles his new opinions as "responding" to Seagate's expert's report is irrelevant. The fact that Seagate's expert identified omissions and deficiencies in Hospodor's initial report does not make Hospodor's attempts to fix those deficiencies proper rebuttal. *Century Indem. Co. v. Marine Grp., LLC*, 2015 WL 5521986, at *4 (D. Or. Sept. 16, 2015); *Bowman v. IBM Corp.*, 2013 WL 1857192, at *7 (S.D. Ind. May 2, 2013).

[4] If the drives did not fail at unreasonably high rates in consumer hands, then they were not "unreliable" in any way that could possibly disappoint *consumer* expectations.

capacities. (Netel Decl., ¶ 39.) The ST3000DM001 (3TB) drives were only a small fraction of the Grenada drives. (Dewey Decl., ¶ 23 (relative 3TB drive volume low).) Thus, Hospodor's opinion regarding the number of "bad" ST3000DM001 drives shipped to consumers is baseless speculation.

**Alleged complaints by other OEMs (Hospodor II, ¶ 34, Reply at 5) – Irrelevance, Rule 702:** Plaintiffs' only evidence is one document that Hospodor misquotes. The document also covered a totally different drive and *"early vintage" drives only*. Plaintiffs misrepresent the document.

**"High" AFRs (Hospodor II, ¶¶ 35-50, Reply pp. 5-6) – Irrelevance**: Hospodor's evidence is still limited to *raw* AFR values for Grenada *Classic*, internal (*Disty*) drives in *2012-early 2013* (¶¶ 35-44, 48-50), or Grenada BP *Disty* drives for a few weeks in *early 2013* (¶¶ 45-46) (during which time the projected AFR was always below 1.5%). Hospodor omits the parts of the same document showing SBS AFRs below 1% during these times. There is no basis for an opinion that "raw" AFRs in the ranges noted (1% to 3%) translated into unreasonably high failure rates in consumers' hands.[5]

**Reliance on Backblaze (Hospodor II, ¶¶ 53-60, Reply p. 6) – Irrelevance, Rule 702**: Backblaze only purchased ST3000DM001 drives in 2012 and so, at best, the information relates to 2011-2012 drives only and cannot show commonality. (Adams Decl., ¶ 81.) Hospodor disclaims any ability to determine a failure rate in consumers' hands (Hospodor II, ¶ 53), so Backblaze is irrelevant. Hospodor fails to show Backblaze's data or analysis are reliable or of a type experts would rely on. They are not, including because Backblaze misclassified drives as "failing" that were not and abused drives in a 24/7 commercial environment. (Rollings Decl., ¶¶ 5-8; Adams Decl., ¶ 81.)

**Seagate's Alleged Marketing Statements (Hospodor II, ¶¶ 61-76, Reply 5, 6) – Rule 702**: Hospodor's purported interpretation of Seagate's consumer-facing representations about the Drives is not proper expert testimony. (Opposition at 24-25.) Similarly, Hospodor has no expertise or basis to contradict Seagate's percipient witness testimony that "Internal Kit" products "*were qualified and tested* as part of the Disty release." (Dewey Decl., ¶ 7.)

**ECR Logs (Hospodor II, ¶¶ 77-96) – Irrelevance, Rule 702**: Hospodor misrepresents Seagate documents without basis other than his *ipse dixit*. These opinions are irrelevant because they cannot show failure rates in consumers' hands or commonality. (Adams Decl., ¶¶ 64, 114-119.)

## II. THE BOEDEKER REBUTTAL DECLARATION SHOULD BE STRICKEN

Stefan Boedeker's Rebuttal Declaration should be stricken for the same reasons as his initial declaration. *See* Opposition, at 23:9-24:1. Boedeker—who has no expertise in consumer behavior or decision-making—attacks (and misinterprets the results of) the survey conducted by Seagate's expert, Itamar Simonson, one of the preeminent experts in the field. Among other deficiencies, Boedeker does not understand how statistical significance is calculated under the "intention to buy" scale, which is well-established in consumer research. Boedeker Rebuttal Declaration, at ¶¶59-73.[6]

---

[5] Indeed, Hospodor II, ¶¶ 51-52 *states precisely the opposite*. At most, the failure rate in consumer hands would have been very low because (according to Hospodor) the consumer failure rate would have been higher than the raw AFR by 12% ("1.39% to 1.24%") meaning a raw AFR of 1.24% yields a "true" AFR of 1.39%, and a raw AFR of 3% yields a "true" AFR of only 3.36%.

[6] Briefly, Boedeker misapplies a "chi-squared" analysis that treats all survey responses as if they were the same, instead of weighting them according to correction factors standard in consumer

Nor does he effectively distinguish his methodology of focusing on a few singled-out product attributes from the problems that caused the courts in the *Garmin, Apple III,* and *Oracle* cases to exclude similarly flawed conjoint studies. *See* Simonson Decl., ¶¶53-55.

More fundamentally, Boedeker entirely ignores the central objection raised by Seagate as to why his opinion is irrelevant and should be excluded under *Daubert*, 509 U.S. at 589 and *Comcast*, 569 U.S. at 34: his failure to address causation, or *how* putative class members would have seen and acted on the "higher AFR" information Plaintiffs claim should have been disclosed. Indeed, Boedeker concedes that "AFR is not a top of mind association, nor is it a metric consumers are acutely aware of." Rebuttal Declaration, at 7:5-7. And he likewise concedes his conjoint study was supposed to measure "if there is a shift in the demand for a product ***when additional information is made available to consumers at the point of purchase***." *Id.* at 3:27-28 (emphasis added). Because *Comcast* requires plaintiffs "to show their damages stemmed from defendant's actions that created the legal liability," *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013), a class damages model in a misrepresentation/nondisclosure case must demonstrate that causation can be proved on a common basis—it must show (1) how class members would have seen the allegedly omitted information "at the point of purchase," and (2) that they would have changed their purchasing behavior as a result. *Id.; see also Lanovaz v. Twinings North America,* 2014 WL 1652338 at *5 (N.D. Cal. 2014) (rejecting damages model in product misrepresentation case and denying certification of damages class, because "[t]he damages must be capable of determination by tracing the damages to plaintiff's theory of liability."). Boedeker's theory ignores the causation issue, but rather assumes a "market equilibrium" price that purportedly reflects by osmosis all information, even information consumers are not aware of. Simonson Decl. ¶ 70 (quoting Boedeker Depo. at 223:10-225:9). It therefore does not satisfy *Comcast* and should be stricken.

### III.  CONCLUSION

For the foregoing reasons, the Hospodor II Declaration and the Boedeker Rebuttal Declaration should be stricken and disregarded in their entirety.

---

research. *See, e.g.,* ERIC RISEN AND LARRY RISEN, BIOTRAK RESEARCH, INC., *THE USE OF INTENT SCALE TRANSLATIONS TO PREDICT PURCHASE INTEREST* (2008), http://www.biotrak.com/wp-content/uploads/2011/11/Intent-Scale-White-Paper.pdf.  His Opinion 7 is wrong as a result.

Dated: February 27, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Anna S. McLean*
ANNA S. McLEAN
Attorneys for Defendant
SEAGATE TECHNOLOGY LLC