1 | Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
2 | 1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
3 | Telephone: (206) 623-7292
Facsimile: (206) 623-0594
4 | steve@hbsslaw.com

5 | Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
6 | 715 Hearst Avenue, Suite 202
Berkeley, California 94710
7 | Telephone: (510) 725-3000
Facsimile: (510) 725-3001
8 | shanas@hbsslaw.com

9 | Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
10 | AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
11 | Philadelphia, PA 19102
Telephone: (267) 534-7400
12 | mgoldich@axgolaw.com
naxler@axgolaw.com
13 |
*Attorneys for Plaintiffs and the*
14 | *Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>ADMINISTRATIVE MOTION FOR LEAVE TO FILE PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION; MOTION TO SEAL |

010581-11 1027836 V2

## I.   INTRODUCTION

A mere two weeks before class certification, plaintiffs learned that Seagate Technology LLC ("Seagate") made a tactical decision to withhold critical documents from production until *after* the class certification briefing closed. The withheld documents are highly relevant to plaintiffs' pending class certification motion. In opposing class certification, Seagate denied that the unreliability of its drives was material to consumers. But the recently produced documents expose the truth: Not only did Seagate know that the drives were defective and failing, Seagate covered up the failure rates *because* it knew they were material. The late-produced documents also contradict statements made on the record by Seagate's own experts as part of Seagate's class certification briefing. Had Seagate produced these documents in a timely manner, plaintiffs and their experts would have relied upon them in the original class certification motion and reply. By delaying, Seagate ensured that plaintiffs could not use these critical documents during class certification. Because of this conduct, in accordance to Civil Local Rule 7-11 and the Federal Rules of Civil Procedure, plaintiffs seek leave to file the seven page supplemental brief attached as **Exhibit A**. The supplemental brief addresses the documents Seagate impermissibly withheld.

## II.   STATEMENT OF FACTS

Seagate provided no warning that it was holding back the documents that contain its most damning admissions. Instead, without any communication, Seagate produced 144 documents on March 27, 2018. This surprise production contained duplicates of data sheets, and contracts and correspondence with third party retailers, ongoing reliability tests, and a spreadsheet with customer complaints. One week later, on April 3, 2018 Seagate produced an additional 125 of its withheld documents. This production contained material and substantive communications during the class period. Prior to Seagate's surprise productions on March 27 and April 3, 2018, Seagate had not produced documents for three months.

Plaintiffs asked Seagate to explain the reasons for the delay in producing the April 3 documents and Seagate admitted that it withheld these essential documents by using a "second look" document tag.

ADMIN. MOT. FOR LEAVE TO FILE SUPP. BR. &
TO SEAL – Case No.: 3:16-cv-00523-JCS
010581-11 1018246 V1

-1-

Early in the case, plaintiffs understood that the "second look" tag might be used by Seagate's contract attorneys for close-call documents where privilege could be contested. However, ***none*** of the documents in the April 3, 2018 production involve communications with or between counsel, or documents that might be "close calls" on privilege. Rather, all 125 documents contain admissions made by Seagate regarding the drives' defects, failure rates, and customer complaints. Seagate explained that it did not review the "second look" documents with haste, but rather Seagate's counsel "got to them when time allowed" – which happened to be after class certification briefing closed. Prior to the production on April 3, 2018, Seagate ***never*** disclosed that it was holding back many critical documents using this review tag. Plaintiffs were thus taken by surprise.

Plaintiffs have attempted to resolve this issue and understand Seagate's delayed document production during two meetings, on April 13 and 17, 2018. Plaintiffs requested that Seagate stipulate to this supplemental filing, which it declined when plaintiffs would not produce a list of the Bates-numbers of documents (from the 125 produced on April 3, 2018) that they intended to use with the supplemental filing. At these discovery conferences, Seagate disclosed that all 125 documents respond to plaintiffs' first set of requests production – ***originally served nearly two years ago***.[1] The fact that plaintiffs consider these documents highly relevant to class certification cannot surprise Seagate; the parties stipulated that documents relating to "all of the ST3000DM001 drives, not just the three Defendant [had previously] produced documents for, are germane to the lawsuit and class certification." ECF No. 115. Nevertheless, Seagate used the "second look" tag to withhold its worst omissions from discovery – possibly for more than a year – so that the documents could not be relied upon during class certification.[2]

During the meet-and-confer sessions, plaintiffs have also learned that Seagate is still withholding "**no more than 2,000**" documents from production, including an estimated 1,000

---

[1] Seagate concedes that the search terms that captured these documents were first discussed and approved by federal plaintiffs in June 2016, and that its contract attorneys began reviewing documents in August 2016.

[2] Plaintiffs asked Seagate's counsel to disclose the dates that it received these documents, so plaintiffs could evaluate the time that elapsed due to the misuse of the "second look" tag. Counsel refused, stating that they had "no obligation" to provide factual information and then asserted privilege. Of course, "[d]ates are not privileged." *Zody v. Microsoft Corp.,* No. C 12-00942 YGR (LB), 2013 WL 3855568, at *1 (N.D. Cal. July 24, 2013).

spreadsheets and up to 1,000 additional documents. The spreadsheets catalogue customer complaints, warranty claims, and returns for the drives at issue in this case. Seagate was unable to articulate the contents of the remaining documents. Exacerbating the issue, Seagate has refused to provide plaintiffs with a written statement confirming that Seagate had produced all materials related to <u>any</u> of plaintiffs' requests for production. Plaintiffs believe that this violates the Court's Standing Order, and plaintiffs intend to bring a motion to compel promptly.[3] Because Seagate will not certify whether it has produced all material, plaintiffs have no idea whether any of Seagate's responses are complete. Indeed, it is possible that Seagate intends to surprise plaintiffs with additional productions in the future – perhaps after another Court deadline.

### III.   ARGUMENT

As plaintiffs' supplemental brief explains, the 125 documents that Seagate produced on April 3, 2018 are critical to class certification. The documents demonstrate the breadth and depth of the unreliability of these drives – spanning nearly the entire class period, across multiple large sophisticated customers, and across versions of the drives marketed under different brand names. The documents show that Seagate engaged in a scheme to mislead its sophisticated customers about the drive's true failure rate. Seagate did so *because it <u>knew</u> that the true failure rate of the drives was a material fact*. Finally, the documents also show that Seagate's most sophisticated customers advised others not to use Seagate drives due to the high failure rates and drive defects. Each of these documents is evidence, common to the class, demonstrating that the failure rates of these drives are material to the reasonable consumer.

Plaintiffs were unable to include this direct evidence of Seagate misleading its customers because Seagate impermissibly withheld these documents from production. Plaintiffs would have used this evidence in the original briefing to emphasize the materiality of Seagate's omissions and to demonstrate that the defects occurred across all iterations of the drive. Moreover, plaintiffs' expert would have reviewed and relied upon these documents to form conclusions regarding the drive defects and Seagate omissions. The documents would have been used on reply to impeach Seagate's experts. Because of Seagate's conduct, plaintiffs have been precluded from doing any of this.

---

[3] Seagate agreed to meet plaintiffs for an in-person meet-and-confer on April 20, 2018.

1    Plaintiffs respectfully ask the Court to consider these documents now, as if they had been
2    filed with plaintiffs' original briefing. Plaintiffs should not be prejudiced for following the Court's
3    case schedule while Seagate played discovery games. Seagate knew it should have produced these
4    documents prior to class certification and yet it deliberately withheld the documents (and is still
5    withholding more evidence) germane to certification. In other cases where defendants have withheld
6    critical documents on the eve of class certification, courts have routinely recognized that these delays
7    prejudice plaintiffs.[4] While plaintiffs could ask for greater sanctions, plaintiffs believe that a lesser
8    remedy is appropriate at this time. Rather than change the Court's schedule, plaintiffs respectfully
9    request that the Court include this new evidence in its review.

### IV.   MOTION TO SEAL

Pursuant to Civil Local Rule 7-11 and 79-5, plaintiffs provisionally lodge under seal the following:

1.  Portions of Plaintiffs' Supplemental Brief in Further Support of Motion for Class Certification (Supplemental Brief); and

2.  Exhibits 58 through 71 to the Declaration of Steve W. Berman in Support of Plaintiffs' Supplemental Brief in Further Support of Class Certification;

because they contain information designated by defendants as "Confidential," or " Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order ("Protective Order") in place in this action.[5] The Protective Order in this action requires that information designated as confidential "qualify for protection under Federal Rule of Civil Procedure 26(c)."[6]  In turn, under Rule 26(c), a Court may require "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."[7]

---

[4] *See Rooney v. Sierra Pac. Windows*, No. 10-CV-00905-LHK, 2011 WL 2149097, at *4 (N.D. Cal. June 1, 2011) (electing to extend the deadline for class certification based on defendants' production of documents); *Orozco v. Illinois Tool Works Inc.*, No. 2:14-CV-2113-MCE-EFB, 2016 WL 5160172, at *3 (E.D. Cal. Sept. 20, 2016) (noting that "late production surely impacted plaintiffs' ability to prepare its motion for class certification" and awarding fees).

[5] Stipulated Protective Order, July 8, 2016, ECF No. 61.

[6] *Id.*, ¶ 2.4.

[7] Fed. R. Civ. P. 26(c)(1)(G).

1 | These cases involve the rights of thousands of consumers and businesses across the country – people and entities that should have the ability to see the issues being litigated in this case. The information contained in the Plaintiffs' Supplemental Brief in Support of Motion for Class Certification, and Exhibits 58 through 71 to the Berman Declaration are exactly the type of information that should be available for the public to review. Pursuant to the Protective Order and Civil Local Rule 79-5(d), the designating party must now demonstrate that the designated information is sealable or must withdraw the designation of confidentiality.

## V. CONCLUSION

At all times, plaintiffs have followed the Court's orders and have attempted to engage in good-faith discovery. Plaintiffs should not be prejudiced by Seagate's discovery delays. Thus, plaintiffs respectfully request that the Court consider plaintiffs' supplemental brief, which addresses the documents withheld by Seagate.

DATED: April 20, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP

By:   /s/ Steve W. Berman
           STEVE W. BERMAN

1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 207-2920
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*