# EXHIBIT A
# [REDACTED VERSION]

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>DATE: April 27, 2018<br>TIME: 9:30 a.m.<br>DEPT: Hon. Joseph C. Spero<br>Courtroom G, 15th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

010581-11 1027313 V1

## I.  INTRODUCTION

After the close of class certification briefing, only weeks ahead of the class certification hearing, Seagate Technology LLC (Seagate) has produced over a hundred documents highly relevant to the pending motion for class certification and the merits of plaintiffs' claims. These documents show the materiality of the drive failures to some of the largest and most sophisticated customers in the country. The documents further support the testimony of plaintiffs' experts, and directly contradict statements made by Seagate's declarants opposing class certification. Plaintiffs submit this supplemental brief to address these critical pieces of evidence, each of which is a common evidence demonstrating not only the unreliability of the ST3000DM001 drives, but also Seagate's exclusive knowledge of facts material to the class.

In addition to this production ambush, Seagate has admitted to plaintiffs that it continues to withhold "no more than 2,000" documents.[1] Seagate has told plaintiffs that "nearly every document" that has yet to be produced will be responsive to plaintiffs' first set of requests for production – **originally served nearly two years ago**. Seagate has represented that this set of unproduced documents includes spreadsheets that identify customer complaints, warranty claims, and returns for the drives at issue in this case. *Id*. To justify its impermissible delay, Seagate claims to be undertaking the "laborious" project of redacting customers' (i.e. class members') contact information from the document set. This stalling tactic is impermissible; plaintiffs are entitled to class members' contact information and Seagate has had *plenty* of time to produce these documents.

Seagate's tardy document production has already prejudiced plaintiffs by preventing them from using the evidence in depositions of Seagate's employees. Plaintiffs have deposed several of the Seagate employees who created or received some of these documents, including at least one of Seagate's Rule 30(b)(6) representatives. Seagate's late production prevented plaintiffs from questioning the deponents about these critical documents.

Plaintiffs respectfully request that the Court consider these documents as part of plaintiffs' motion for class certification. To the extent that the Court's decision might rely on the evidence not

---

[1] Declaration of Steve W. Berman in Support of Plaintiffs' Supplemental Brief in Support of Class Certification (Berman Supp. Decl.), ¶ 2, filed concurrently herewith.

PLS.' SUPP. BRIEF IN FURTHER SUPPORT OF
CLASS CERT. - Case No.: 3:16-cv-00523-JCS
010581-11 1018246 V1

-1-

yet produced by Seagate (including the "2,000" documents containing warranty and return data from class members), plaintiffs respectfully request that the Court draw inferences favorable to plaintiffs.

## II.   ARGUMENT

**A.   The new documents prove that the drives were defective and that failure was pervasive.**

The new documents confirm two critical questions at class certification are answered using common evidence. *First*, that Seagate knew that its drives were experiencing failure rates far beyond those advertised, and far beyond those experienced in the industry. *Second*, these high failure rates were material to the reasonable consumers. The recently produced evidence supports each of these arguments and undermines Seagate's opposition to class certification.

**1.   Seagate knew its drives were experiencing failure rates far beyond the industry norm.**

Using evidence common to the class, plaintiffs previously argued that Seagate knew its drives were unreliable, and yet continued to market these drives to consumers.[2] The newly uncovered evidence further supports this argument.

Previously, plaintiffs provided examples of Seagate's knowledge of the drive's unreliability through large customers – Apple, HP and Dell – identifying the high failure rates and returning drives. Mot. at 8. In its sur-reply opposing class certification, Seagate argued that "[w]hile Plaintiffs have pointed to various one-off complaints by customers and certain OEMs," this was insufficient to show knowledge of a product defect.[3] New evidence shows an avalanche of complaints by sophisticated customers experiencing high failure rates on the drives, who alerted Seagate to the issues, and demanded refunds. The customers included ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ among others. Exs. 58-66.[4] Each of these customers told Seagate that its drives were faulty and failing at unacceptably high rates.

---

[2] Plaintiffs' Notice of Motion and Motion for Class Certification ("Mot.") at 4-10, filed under seal, Nov. 8, 2017; Plaintiffs' Reply in Support of Motion for Class Certification at 23, 5-6, filed under seal, Feb. 20, 2018.

[3] Seagate Technology LLC's Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification at 6, Feb. 27, 2018, ECF No. 161-1.

[4] All exhibit references are to the Berman Supp. Decl., unless otherwise noted.

1   And although Seagate has argued that the drives were failing at high rates only earlier in the
2   class period, this is also belied by the new evidence. In 2011, Seagate stated, ▓▓▓▓▓
3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 58 at 1.  Seagate noted that the ▓▓▓ drives had ▓▓
5   ▓▓▓▓▓▓" Ex. 59 at 1. In 2012, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 60 at 1. In 2013, ▓▓▓▓▓
7   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 61 at 2. Seagate called its own drives
8   ▓▓▓▓▓▓ and ▓▓▓▓▓▓ in response to sophisticated customers' complaints. Ex. 62. In
9   2014, Seagate used its own proprietary technology to predict a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10  ▓▓▓▓▓▓. Ex. 63 at 2. Seagate noted that this prediction was ▓▓▓▓▓▓▓▓▓▓▓▓▓
11  *Id*. A 2016 spreadsheet shows ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 64. The
12  unreliability of the drives carried across the class period.
13  Seagate has argued that the failures were isolated to one type of drive – the Grenada Classic.
14  Seagate suggested that common evidence did not predominate because "none of the purported issues
15  affected more than a tiny minority of putative class members because, with one exception, the
16  evidence is limited to Grenada Classic drives in 2011-2012." And yet, this new set of documents
17  contains evidence from 2014 where large customer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 65 at 2. In the new documents, Seagate states: ▓▓
19  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 66 at 2. Seagate later discusses how corrective actions had no
21  effect on the drives' performance: the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 67 at 6. In later documents, Seagate ▓▓▓▓▓▓▓▓▓▓▓▓▓
23  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 65 at 8-9. Seagate spent
24  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
25  Seagate's expert, Donald Adams, submitted testimony that plaintiffs had misinterpreted the
26  Backblaze blog posts, and they did not support the conclusion that ▓▓▓▓▓▓▓▓▓▓▓▓▓
27
28

1   ███████████████████████ And yet, the conclusion reached by plaintiffs' expert Dr. Hospodor, is

2   exactly the same conclusion as reached by the ███████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████████████████████ Ex.

6   68 at 3.

7        Similarly, Dr. Hospodor testified that issues with Seagate's firmware demonstrated the

8   unreliability of the drives.[6] Seagate's expert, Donald Adams, submitted a declaration saying that Dr.

9   Hospodor's concerns were ████████████ and that any firmware issues were nothing more that

10  ██████████████████████████████████████ Adams Decl., ¶ 98. And yet,

11  included in the new document production is another return from the customer ██████████

12  ████████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████" Ex. 60. In another email, a customer ████

15  ████████████████████████████████████████████████████████████████████████████████

16  ██████" Ex. 58 at 2. The customer was █████ Seagate responded, █████████████████

17  █████████████████████████ *Id*.

18       All of this evidence is common to the class and demonstrates Seagate's knowledge of the

19  unreliability of its drives.

20  **B.  The new documents prove that the true failure rate was material to the reasonable consumer.**

21

22       Seagate concedes that the high failure rate is material to customers in the newly produced

23  documents. For example, the new documents contain an email wher ███████████████████

24  ████████████████████████████████████████████████████████████████████████ Ex. 69 at 2.

25  ████████████████████████████████████████████████████████████████████

---

[5] Declaration of Donald Adams, PE in Support of Seagate's Opposition to Plaintiffs' Motion for Class Certification ("Adams Decl."), filed under seal, Jan. 5, 2018.

[6] Declaration of Andrew Hospodor in Support of Plaintiffs' Motion for Class Certification, filed under seal, Nov. 7, 2017, at ¶¶ 156-168.

1   ███████████████████████████████████████████████████████████████." *Id*.

2   Seagate's marketing team discusses extensively how to control the narrative in response to the

3   Backblaze article. Yet nobody at Seagate suggested providing the truthful data – even when asked

4   directly by a Seagate customer. Instead, Seagate continued to obfuscate the truth. In an internal

5   response to the customer's question, one Seagate employee notes: ████████████████████████

6   ████████████████████████████████████████████████████████████████" *Id*. at 1.

7   Even when asked, Seagate chose not to provide truthful data about the drives' failure rate because

8   that data was a material fact. Had customers known the truth, they would not have purchased Seagate

9   drives.

10        The newly produced documents demonstrate that when Seagate's customers learned the truth

11   about how often Seagate's drives failed, they cut ties with Seagate.  Seagate knew that the high

12   failure rate of its drives was compromising customer relationships.  With regard to the drive failures

13   affectin ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████ *Id*. Seagate also ████████████████

15   ████████████████████████████████████████████████████████████████. Ex. 64.

16   ████████████████████████████████████████████████████████████████

17   *Id*.

18        To stall these customer losses, Seagate actively concealed information about the drive's true

19   failure rate – from even its largest customers. For example, while negotiating the return of drives

20   with one large business customer, ████████████████████████████████████████

21   Ex. 67 at 2. Seagate intended to show this chart to the customer during negotiations.  After reviewing

22   a first draft of the chart, one employee note ████████████████████████████████████

23   ██████████████████ *Id*. at 5.  This truthful data prevented Seagate from claiming in negotiations

24   that there were no issues with the drives.  Yet, instead of providing the truth, Seagate elected to

25   mislead the customer by ████████████████████████████████████. *Id*. at 5. As demonstrated on

26   the next page, this omission substantially changed the graph's failure rate:

27

28

PLS.' SUPP. BRIEF IN FURTHER SUPPORT OF
CLASS CERT. - Case No.: 3:16-cv-00523-JCS           -5-
010581-11 1018246 V1

**Figure 1:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ [7]

[redacted figure]

**Figure 2:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ [8]

[redacted figure]

---

[7] Ex. 70 at 4.

[8] Ex. 71 at 4.

1  In short, Seagate knew the failure rate of the drives was material – providing truthful data could
2  cause Seagate to lose sales and force returns.
3        These charts directly contradict statements made in Seagate's opposition to class certification.
4  For example, Seagate argued that plaintiffs presented "no evidence that the Grenada BP or BP2
5  drives" ever had high failure rates. Opp. at 7. And yet, the comments on the first graph,
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ stated; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In the first graph (figure
7  1 above), the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
8        This evidence, common to the class, combined with the complaints of the major customers
9  such as ▮▮▮▮▮▮▮▮▮ and others demonstrates that the unreliability of these drives was material
10 to the reasonable consumer.

### III.   CONCLUSION

12       To the extent that Court finds that additional evidence is needed to satisfy any element of
13 class certification, plaintiffs request that the Court infer that this evidence is contained in the "no
14 more than 2,000" documents that Seagate has yet to produce. Drawing this inference is permissible
15 in accordance with Federal Rule of Civil Procedure 37(b)(2)(A)(i). This rule provides that if a party
16 fails to obey an order to provide or permit discovery, the court where the action is pending may
17 "direct[] that the matters embraced in the order or other designated facts be taken as established for
18 purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). Such an
19 inference is appropriate here: the Court ordered Seagate to produce information related to all the
20 Model 001 hard drives on June 9, 2017 (ECF No. 120). Seagate knew that this evidence was material
21 to class certification; the parties stipulated as to the fact (ECF No. 115). For the reasons articulated
22 above, the Court should consider the late produced documents and grant plaintiffs' motion for class
23 certification.

24 DATED: April 20, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP

26                                          By:   /s/ Steve W. Berman
                                                  STEVE W. BERMAN

27                                          1918 Eighth Avenue, Suite 3300
                                            Seattle, Washington 98101
28                                          Telephone: (206) 623-7292

|   |   |
|---|---|
| 1 | Facsimile: (206) 623-0594 |
| 2 | steve@hbsslaw.com |
| 3 | Shana E. Scarlett (217895)<br>715 Hearst Avenue, Suite 202 |
| 4 | Berkeley, California 94710<br>Telephone: (510) 725-3000 |
| 5 | Facsimile: (510) 725-3001<br>shanas@hbsslaw.com |
| 6 | Marc A. Goldich (*pro hac vice*) |
| 7 | Noah Axler (*pro hac vice*)<br>AXLER GOLDICH, LLC |
| 8 | 1520 Locust Street, Suite 301<br>Philadelphia, PA 19102 |
| 9 | Telephone: (267) 207-2920<br>mgoldich@axgolaw.com |
|   | naxler@axgolaw.com |

*Attorneys for Plaintiffs and the Proposed Class*