

Shana Scarlett
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Direct (510) 725-3032
shanas@hbsslaw.com

April 27, 2018

*Via ECF*

Chief Magistrate Judge Joseph C. Spero
U.S. District Court, N.D. Cal.

Re: *In re: Seagate Tech. LLC Litig.*, Case No. 3:16-cv-00523-JCS (N.D. Cal.)
    Joint Letter Brief re: Defendant's Production of Unredacted Spreadsheets

Dear Magistrate Judge Spero:

Plaintiffs bring this motion to compel Seagate Technology LLC (Seagate) to produce by May 18, 2018 unredacted copies of the approximately 1,000 spreadsheets that Seagate is withholding from production.

## I.   PLAINTIFFS' POSITION

A centerpiece to Seagate's opposition to class certification and the merits of this case is that the ST3000DM001 hard drives were unreliable only for short periods of time and for particular customers. With every piece of late-produced evidence, this defense becomes more and more untenable. At issue in this motion is 1,000 spreadsheets that contain customer complaints, warranty claims, and return requests for defective drives. Seagate is currently undertaking the "laborious" process of redacting out all customer names, emails, and physical addresses (indeed, any contact information). In so, doing, Seagate is depriving plaintiffs of critical evidence.

*First*, redacting the names and locations of customers deprives plaintiffs of the ability to show the true impact and breadth of the drives' failures – something that Seagate has put squarely at issue in this case. Seagate has claimed that "none of the purported issues affected more than a tiny minority of punitive class members[.]"[1] The spreadsheets, undoubtedly, will demonstrate all of the ST3000DM001 drives, regardless of the marketing name provided by Seagate, were defective, unreliable and suffered from high failure rates. Such evidence should be produced in its original form – as it was kept as a business record. Moreover, the spreadsheets contain the contact information and names of percipient witnesses with information regarding Seagate's representations and actions (or inaction) related to the drives that failed.[2] The identity of these percipient witnesses is highly relevant to allow class counsel to interview and identify witnesses in the case.

---

[1] Opp. at 8 ("Opp." refers to Seagate's Opposition to Plaintiffs' Motion for Class Certification, January 1, 2018, ECF No. 152).

[2] *See Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 374 (2007) (requiring the disclosure of the contact information of customers who complained to defendant and noting that the "complaining customers would be percipient witnesses" to the defects).

SEATTLE   SAN FRANCISCO   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   MINNEAPOLIS   NEW YORK   PHOENIX   WASHINGTON, D.C.

010581-11 1029564 V1

Seagate concedes that these spreadsheets are responsive to plaintiffs' first set of requests for production, which were served nearly two years ago. Seagate has justified its delay by claiming that the process for undertaking the redactions is "laborious." According to Seagate, the redaction process has required the use of specialized software. As a result, Seagate claims that redacting the spreadsheets is *exceptionally time consuming and expensive*. This delay and expense is unnecessary: courts have consistently held that the contact information of potential class members is discoverable, even before class certification.³ In fact, "the disclosure of names, addresses, social security numbers, and telephone numbers is a common practice in the class action context."⁴ The request for unredacted versions of these spreadsheets is all the more reasonable because providing unredacted information would be <u>less burdensome for both parties</u> and would decrease discovery expenses.

Plaintiffs did not learn that Seagate was withholding these documents until three weeks ago. Plaintiffs requested a meet-and-confer phone call on April 13, 2018 to discuss Seagate's "latest production of documents." Plaintiffs made this request because Seagate surprised plaintiffs by producing material highly relevant to class certification only after briefing on the issue closed. During this meeting, Seagate revealed that it was still in the process of producing documents, including up to 1,000 spreadsheets. Seagate has argued that plaintiffs implicitly agreed to Seagate's delay because plaintiffs allowed Seagate to redact personal information from its early productions. However, Seagate **never** informed plaintiffs that its redaction process would cause production delays, including the delay of material highly relevant to class certification, and Seagate never disclosed the extensiveness of the redactions. Seagate essentially argues that plaintiffs should have guessed that these documents were being withheld and should have scheduled a meet-and-confer session prior to Seagate's surprise production.

Seagate argues that class members' contact information should not be released until after certification. This mischaracterizes the law. Seagate cannot cite to a single case in this District where a court has limited discovery of class members' contact information until after class certification.⁵ To

---

³ *Benedict v. Hewlet-Packard Co.*, No. 13-CV-0119-LHK, 2013 WL 3215186 at *2 (N.D. Cal. June 25, 2013) (noting that "numerous courts in the Northern District of California have allowed pre-certification discovery of putative class members' confidential information subject to a protective order, without requiring prior notice to the putative class members"); *Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-CV-4124-PSG, 2012 WL 1123587, at *2 (N.D. Cal. Apr. 3, 2012)("[C]ourts have not hesitated to allow class plaintiffs the opportunity to contact customers in pursuit of the evidence they will be asked to tender in order to certify a class or prevail on the merits."); *Khalilpour v. CELLCO P'ship*, No. C 09-02712 CW MEJ, 2010 WL 1267749, at *2 (N.D. Cal. Apr. 1, 2010) (holding that the production of class members' telephone names, addresses and telephone numbers "is relevant to and reasonably calculated to lead to the discovery of evidence relevant to class certification issues"); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (holding that the plaintiff was "entitled to the contact information of putative class members"); *Sanbrook v. Office Depot*, No. C07-5938RMWPVT, 2009 WL 840019, at *1 (N.D. Cal. Mar. 30, 2009) ("Named Plaintiff is entitled to discover this contact information because the customers who purchased repair plans are percipient witnesses of, at a minimum, what representations Defendant made regarding those plans."); *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 WL 605652, at *3 (N.D. Cal. Nov. 30, 1992) (ordering that defendants produce the names, addresses, telephone numbers, and social security numbers of potential class members).

⁴ *Khalilpour*, 2010 WL 1267749, at *2.

⁵ Seagate's citation to *Rabin v. PriceWaterHouseCoopers, LLP*, No. 16-cv-02276-JST, 2017 WL 4876780, at *1-2 (N.D. Cal. Aug. 8, 2017) is highly misleading. The court in Rabin was directly

the contrary, in every case in this District, the court has held that this information is material to class certification and discoverable. Nor does the law support Seagate's argument that this is an impermissible invasion of customers' privacy. A request for contact information is "not typically held to constitute a serious privacy invasion because simple contact information does not contain personal secrets or reveal intimate activities."[6] To the contrary, the California Supreme Court has held that "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case."[7] Regardless, the Court has already issued a protective order that should assuage Seagate's concerns over privacy. Courts have held that "producing discovery pursuant to a protective order is one way to protect the privacy interests of putative class members."[8] More is not required here.

Finally, plaintiffs must raise an issue regarding the briefing schedule for these joint letters. Seagate has refused to agree to a mutual exchange of the parties' positions. Seagate claims that plaintiffs must first give their drafts to Seagate. Seagate has also frequently worked on its versions of these joint letters past the close of business. This process has required plaintiffs' staff to work late, waiting for Seagate to finish its revisions, long past the close of business. Plaintiffs have raised this issue with Seagate on multiple occasions, but Seagate has refused to agree to the mutual exchange of briefs. Plaintiffs respectfully request that the Court issue an order requiring the mutual exchange of position statements two days before filing.

For all of these reasons, plaintiffs respectfully request this Court to order Seagate to provide unredacted spreadsheets by May 18, 2018, or whatever deadline this Court deems appropriate.

## II.  DEFENDANTS' POSITION

This discovery dispute arises from plaintiffs' late-arising insistence that Seagate provide, before class certification, personally identifying information ("PII") of customers and others whose PII appears in documents produced by Seagate. Under the California Constitution and the Federal Rules of Civil Procedure, Seagate has redacted PII from documents (including spreadsheets) produced throughout this case. Plaintiffs have known this and have not previously objected.

Plaintiffs first objected to the redaction of PII at a meet and confer on April 13, 2018, when Plaintiffs stated they had never been informed of Seagate's redaction of customer PII (hereafter "Redactions"). By letter dated April 13, 2018, they reiterated their contention that the April 13, 2018 call was the first time they had learned of Seagate's Redactions. The parties spoke again on April 17, 2018, and Seagate explained that its contemporaneous records confirmed the Redactions were discussed with Plaintiffs on December 22, 2016, and memorialized in a February 28, 2017 letter ("Seagate has used its best efforts to redact all PII from the produced spreadsheets."). Plaintiffs did not dispute that they

---

quoting a transcript from a case in New York applying Second Circuit law regarding conditional class certification. The court in Rabin ultimately held that plaintiffs were entitled to discovery.

[6] *Kilbourne v. Coca-Cola Co.*, No. 14CV984 MMA (BGS), 2015 WL 10943611, at *6 (S.D. Cal. Jan. 13, 2015).

[7] *Pioneer Elecs.*, 40 Cal. 4th at 373.

[8] *Minns v. Advanced Clinical Emp't Staffing LLC*, No. C 13-03249 SI, 2014 WL 4352343, at *2 (N.D. Cal. May 9, 2014).

Chief Magistrate Judge Spero
April 27, 2018
Page 4

received the February 28, 2017 letter, or that they expressed no objection to redaction of PII at the time or thereafter before April 2018. Nor did they explain their change of position. Instead, they threatened to file a discovery motion.

Pursuant to the Court's Standing Order on Discovery Disputes, lead trial counsel met in person at Plaintiffs' counsel's offices on April 20, 2018. Seagate asked Plaintiffs to share legal authority that supported their position that Seagate should produce customer PII before class certification. Plaintiffs declined to do so, except through the process of drafting a Joint Letter to the Court.

Precertification discovery of consumer PII is generally limited to certification issues. *See Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 WL 605652, at *2 (N.D. Cal. Nov. 30, 1992) (allowing precertification discovery of PII only where plaintiffs showed the information could provide evidence of a policy or practice of discrimination by defendant for purposes of satisfying Rule 23 prerequisites); *Rabin v. PriceWaterHouseCoopers, LLP*, No. 16-cv-02276-JST, 2017 WL 4876780, at *1-2 (N.D. Cal. Aug. 8, 2017) (dicta) ("plaintiffs are not entitled to discovery about individual potential class members until plaintiffs have moved for and been granted class certification."). Pre-certification discovery of putative class member PII thus requires a showing of "need for the information" *for class certification. See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, 352-53 (1978) (class member identities must be relevant to issues "upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23"); *Khalilpour*, 2010 WL 1267749, at *1 (citing *Oppenheimer*, 437 U.S. 340 at 353 n.17); Memo of Pts & Auth. in Supp. of Pltf. Khalilpour's Mot. to Compel Discov. at 4-5, *Khalilpour v. CELLCO P'ship*, No. C 09-02712 CW MEJ, 2010 WL 1267749 (N.D. Cal. Apr. 1, 2010) (plaintiff showed he needed to contact potential class members to determine, among other things, whether his claims were typical); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-0119-LHK, 2013 WL 3215186, at *3 (N.D. Cal. June 25, 2013) (plaintiffs showed putative class member PII was "crucial" for certification); *Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-CV-4124-PSG, 2012 WL 1123587, at *1 (N.D. Cal. Apr. 3, 2012) (discovery of PII related to the "central question of whether Defendants' representations about their [campground] programs were common across the putative class.").[9]

Plaintiffs disclosed their reasons for seeking putative class member PII *for the first time* in drafting this Joint Letter. Plaintiffs seek to contact potential class members to obtain information "regarding

---

[9] Plaintiffs' further citations reinforce the general rule that they must show how putative class member PII is relevant to class certification. *Kilbourne v. Coca-Cola Co.*, No. 14CV984 MMA (BGS), 2015 WL 10943611, at *6 (S.D. Cal. Jan. 13, 2015) (allowing precertification discovery of PII only where plaintiffs showed that "class list contact information is relevant to claims of commonality and predominance" under the facts of the case); *Minns v. Advanced Clinical Employment Staffing LLC*, No. C 13-03249 SI, 2014 WL 4352343, at *2 (N.D. Cal. May 9, 2014) ("District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court"; class member PII discoverable because relevant to commonality and typicality); *Sanbrook v. Office Depot*, No. C07-5938RMWPVT, 2009 WL 840019, at *1 (N.D. Cal. Mar. 30, 2009) (PII of putative class members who purchased certain products permitted where plaintiffs showed that data was relevant "at a minimum, to show what [defendant] knew or should have known at particular points in time regarding any perceived problems with its performance protection repair plans."); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy'"; plaintiff showed discovery likely to provide information concerning plaintiff's gender discrimination claims).

010581-11 1029564 V1

Chief Magistrate Judge Spero
April 27, 2018
Page 5

Seagate's representations and actions (or inaction) related to the drives that failed," contending that putative class members are "percipient witnesses"[10] Presumably, plaintiffs are referring to customers who made warranty claims, who are but a small subset of the proposed class. But matters concerning consumers' warranty claims and other information concerning "the drives' unreliability and defects" are merits issues, which are "usually deferred until it is certain that the case will be allowed to proceed as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Babbitt*, 1992 WL 605652, at *2 (internal citation omitted).

Moreover, the California Supreme Court has recognized "that in a particular case there may be special reason to limit or postpone a representative plaintiff's access to contact information for those he or she seeks to represent." *See Williams v. Superior Court*, 3 Cal. 5th 531, 544 (2017). In evaluating disputes involving PII, courts must "consider the nature of the privacy invasion involved [] and apply a balancing test that weighs the various competing interests." *See Pioneer Elecs. (USA), Inc. v. Superior Court*, Cal. 4th 360, 370 (2007). A person's privacy is "measured against other competing or countervailing interests." *Id*. at 371. Accordingly, the party seeking PII must show that the relevance of the information outweighs the privacy interests at stake. *See Pioneer,* Cal. 4th at 374-75; *Williams*, 3 Cal. 5th at 552-559.

To the extent Plaintiffs have sought to meet their burden under *Pioneer, Williams,* and *Oppenheimer* in requesting putative class member PII *for class certification purposes*, their only proffer was the following: "In addition, to the extent that class certification is still at issue, this information may also be used to establish the elements necessary to certify the class, including commonality and typicality—both of which Seagate has challenged." Plaintiffs subsequently deleted that sentence from this Joint Letter. Plaintiffs have provided no factual explanation of how putative class member PII would aid them in establishing commonality and typicality.

Moreover, the timing of this dispute belies Plaintiffs' position that consumer PII is needed to certify the class. Briefing on class certification is closed. Even if Seagate were to produce customer PII now, Plaintiffs would be unable to use the information. This dispute is thus both too late for class certification purposes and too early to determine (1) whether consumer PII will be relevant to the merits *if* certification is granted, and (2) what safeguards may be necessary if Plaintiffs pursue a survey or interviews of class members as proposed.[11] Accordingly, Seagate requests that the Court either deny Plaintiffs' motion or defer ruling until after class certification has been decided. The issue will be moot if certification is denied. At a minimum, the parties and the Court will then be better able to weigh the privacy intrusion against the purported need, and thus to determine the parameters of Plaintiffs' access to and use of the information, if any.[12]

---

[10] Plaintiffs' claims are not based on what Seagate's consumers believed, but rather the actual failure rate of the drives and whether the failure rate created a duty to disclose. Plaintiffs do not need to contact putative class members to establish the failure rate.

[11] Courts have employed various safeguards to protect class members' privacy, including third-party administrators, opt-in or opt-out procedures, warnings at the outset of any calls, and Court supervision of the list of class members who are contacted. See, e.g., Benedict, 2013 WL 3215186, at *3; Khalilpour, 2010 WL 1267749, at *4; Kilbourne, 2015 WL 10943611, at *6 (class list provided to third-party facilitator who oversaw opt-out process under Belaire-West Landscape, Inc. v. Super. Ct., 149 Cal. App. 4th 554-560-61 (2007)).

[12] In both prior discovery disputes before this Court, the parties exchanged drafts of their sections of the Joint Letter brief sequentially, not simultaneously. Without explanation, Plaintiffs' counsel this

010581-11 1029564 V1

Chief Magistrate Judge Spero
April 27, 2018
Page 6

---

time insisted upon a simultaneous exchange, even though it was Plaintiffs' motion. Nothing in the Local Rules or the Court's Standing Order requires a simultaneous exchange. Finally, Seagate states that its final compromise position was that the parties agree to defer the issue until the Court rules on class certification, and if the Court grants class certification, we can then work out a procedure to provide customer PII that protects customers' privacy rights.

Chief Magistrate Judge Spero
April 27, 2018
Page 7

          Sincerely,

          HAGENS BERMAN SOBOL SHAPIRO LLP


By     s/ Shana E. Scarlett
      SHANA E. SCARLETT

715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 207-2920
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*

SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP


By     s/ Anna S. McLean
      ANNA S. McLEAN

NEIL A.F. POPOVIĆ (SBN 132403)
DAVID E. SNYDER (SBN 262001)
LIÊN H. PAYNE (SBN 291569)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
amclean@sheppardmullin.com
npopovic@sheppardmullin.com
dsnyder@sheppardmullin.com

010581-11 1029564 V1

lpayne@sheppardmullin.com

*Attorneys for Defendant*

## E-FILING ATTESTATION

I, Shana E. Scarlett, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                                          s/ Shana E. Scarlett
                                                     SHANA E. SCARLETT