SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
DANIEL R. FONG, Cal. Bar No. 311985
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947
Email:       npopovic@sheppardmullin.com
             amclean@sheppardmullin.com
             rodewald@sheppardmullin.com
             lpayne@sheppardmullin.com
             jsiu@sheppardmullin.com
             dfong@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**DECLARATION OF KARL J. SCHWEISS IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL PORTIONS OF PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**Date:** June 15, 2018<br>**Time:** 9:30 a.m.<br>**Place:** Courtroom G<br>**Judge:** Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed: July 11, 2016 |

I, Karl J. Schweiss, declare as follows:

1. I am a Senior Technical Writer and Project Manager at Seagate Technology LLC ("Seagate"). Unless otherwise indicated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as to their truth.

2. I submit this declaration in support of Seagate's Motion for an Order Sealing certain portions of Plaintiffs' Supplemental Brief in Support of Class Certification. ECF No. 175.

3. It is my understanding the Plaintiffs filed the Declaration of Shana Scarlett (Scarlett Decl.), ECF No. 175-5, in support of their second proposed Supplemental Brief in Support of Class Certification ("Second Supplemental Brief"), which attaches exhibits 72-77, all of which have either (1) been designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the Stipulated Protective Order in this case, or (2) directly quote excerpts of such documents. It is also my understanding that portions of Plaintiffs' proposed Second Supplemental Brief, ECF No. 175-3, reference those same materials.

4. These documents contain highly confidential information, including sensitive commercial information concerning the operations of Seagate's business and its strategic decision-making based on market and product testing, which Seagate has conducted over time. As a result, I believe that access to this business information would be used by Seagate's competitors to Seagate's detriment because it would give them previously unavailable insight into Seagate's operations, how it measures its products' performance, as well as its proprietary market research and strategy. Seagate thus faces the risk of competitive harm should this information be disclosed.

5. Due to the sensitive nature of these documents, Seagate takes great efforts to protect their secrecy. Indeed, Seagate only produced these documents in this litigation subject to the Stipulated Protective Order, and has marked these documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Seagate therefore seeks an order sealing these documents from the public record for the following reasons.

6. Exhibit 72 to the Scarlett Declaration is a chart compiled by Plaintiffs, which quotes and references various documents produced throughout the course of discovery that were designated as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" pursuant to the

1  Protective Order.  Preliminarily, it is my understanding that such materials are subject to a request
2  to strike on grounds that the chart lacks foundation, in which case any request to seal would be
3  mooted if the Court granted such request.  Regardless, Seagate seeks to seal only a portion of the
4  information contained in Plaintiffs' chart:  those rows that reference internal communications and
5  discussions at Seagate regarding topics such as:  (1) results of Seagate's consumer testing of its
6  website, which concededly does not provide any information about the ST3000DM001 drive at
7  issue (entry dated 2016-03-10); (2) the personal identifying information of a customer that is
8  disclosed in one of the complaint records; and (3) internal Seagate communications and analyses
9  that detail Seagate's strategy for responding to complaints or warranty claims and the tracking of
10 same.  To narrowly tailor its request, attached hereto as **Exhibit A** is a redacted version of Exhibit
11 72 that redacts only these categories of information.

12      7.   Exhibit 73 is a set of meeting notes that disclose the results of Seagate's global
13 market testing and analysis, and outline potential marketing concepts and strategies.  Seagate uses
14 this information to guide its business and marketing strategy.  If this information were disclosed, it
15 could be used by Seagate's competitors to predict Seagate's strategies, which could result in
16 competitive harm to Seagate.

17      8.   Exhibits 74 and 75 are charts that reflect Seagate's internal analyses of product
18 performance as indicated by customer reviews on specific retailer websites.  Seagate uses this
19 information to inform its product development and improvement strategies.  If these analyses were
20 disclosed, they would provide Seagate's competitors with previously unavailable insight into
21 Seagate's sensitive commercial information.

22      9.   Exhibit 76 is an internal email chain between Seagate employees discussing
23 Seagate's efforts to obtain drives on which to perform product testing and failure analysis as a
24 function of Seagate's product improvement efforts.  The email chain also discloses the results of,
25 and pending, product testing for various other products not at issue in this litigation.  In addition to
26 disclosing Seagate's confidential information, this document discloses the confidential data of
27 Seagate's current and former business customers—with which Seagate has entered into various
28 non-disclosure agreements—including their product strategy, testing, and development efforts.

10. Finally, Exhibit 77 is an internal email chain between Seagate employees in which they strategize what information to include in their product manuals, and attaches an internal pre-release draft of the product manual. This email chain and draft product manual provides insight into Seagate's strategy behind its development of consumer-facing materials, as well as Seagate's strategy in communicating with its consumers.

11. All of these documents show Seagate's internal business strategies, including its market and product development and improvement strategies. Seagate goes to great lengths to ensure the confidentiality of documents like these to protect itself competitive harm and to ensure that it abides by any legal obligations under any applicable non-disclosures.

12. The portions of the Second Supplemental Brief that reference the confidential information in the exhibits to the Scarlett Declaration should be sealed for the same reasons set forth above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 11th day of June, 2018, in Oklahoma City, Oklahoma.

_____
Karl J. Schweiss