SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
DANIEL R. FONG, Cal. Bar No. 311985
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        npopovic@sheppardmullin.com
              amclean@sheppardmullin.com
              trodewald@sheppardmullin.com
              lpayne@sheppardmullin.com
              jsiu@sheppardmullin.com
              dfong@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**SEAGATE TECHNOLOGY LLC'S OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION**<br><br>**Date:** June 15, 2018<br>**Time:** 9:30 a.m.<br>**Place:** Courtroom G<br>**Judge:** Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed: July 11, 2016 |

## I. INTRODUCTION

Nearly a month after Seagate's final production, Plaintiffs once again attempt to use documents produced in the ordinary course of discovery to justify a *second* supplemental filing just prior to the class certification hearing. As with the previous effort, Plaintiffs make false accusations regarding the timing of Seagate's document productions. They also mislead the Court as to the contents of the documents produced. In any event, none of the information saves their motion.

First, Seagate never "withheld" documents from production.[1] Second, none of the cited documents cures the deficiencies in Plaintiffs' class certification motion. The documents consist of: (1) scattered hearsay statements Plaintiffs construe as "complaints;" (2) communications relating to dozens of products that do not contain the ST3000DM001 drives (the "Drives");[2] or (3) information cumulative of that contained in documents earlier produced to Plaintiffs. Notably, the documents do not show (1) an unreasonably high failure rate for the Drives that would trigger a duty to disclose, or (2) that Seagate had exclusive knowledge of, actively concealed, or made partial misrepresentations regarding the Drives' reliability. Indeed, the document Plaintiffs tout as proof of 100,000 complaints does no such thing; rather, it supports Seagate's own analysis that there was less than a 2-3% annual return rate for consumers using the Drives.[3] Declaration of Tenaya Rodewald filed herewith ("Rodewald Decl."), ¶ 5, Ex. 1, row 9. Plaintiffs' Administrative Motion should be denied.

---

[1] This assertion has been thoroughly refuted elsewhere. As addressed in the parties' Further Joint Case Management Statement, ECF No. 166, Plaintiffs were aware that Seagate was still producing documents on a rolling basis at the time they filed their class certification motion. ECF No. 166 at 3:13-4:1. Plaintiffs were also aware that Seagate was engaged in ongoing, time-intensive redactions of numerous large spreadsheets containing personal identifying information ("PII") of its customers. *Id*. at 6:4-17. Pursuant to the Court's Order Regarding Production of Spreadsheets, ECF No. 162, Seagate produced the unredacted spreadsheets over a month ago. Moreover, many of the documents Plaintiffs cite are not even new. For instance, Plaintiffs cite as purportedly "new" evidence portions of Exhibit 76 to the Scarlett Declaration that were previously produced on October 21, 2016, and June 1, 2017. *See also* Rodewald Decl., Ex. 1. Plaintiffs should not be given leave to file a *second* Supplemental Brief to proffer evidence produced over a year and a half ago.

[2] As the Court will recall, this litigation relates to one size of a single drive model—namely, the 3 terabyte ("TB") drive with model number ST3000DM001 ("Drive"). *See* Second Consolidated Amended Complaint, ECF No. 62 ("SAC") ¶¶ 45-48. This Drive was used in several External Products that had specific model numbers provided to Plaintiffs. Rodewald Decl., ¶ 11.

[3] *See* Seagate's Opposition to Plaintiffs' First Supplemental Filing, ECF No. 170-4 at 4 (there was less than a 3% average annual return rate for Drives manufactured pre-June 2013, and a

## II.     ARGUMENT

### A.     Exhibit 72 Should Be Stricken Because It Is Inadmissible

As a threshold issue, Plaintiffs' purported summary chart of customer complaints under Fed. R. Evid. 1006 should be stricken as improper evidence due to a lack of foundation.  *See Cherry v. City College of San Francisco*, No. C 04-04981 WHA, 2006 WL 6602454, at *11 (N.D. Cal. Jan. 12, 2006) ("While FRE 1006 permits the tabulation of voluminous writings, charts submitted under that section still require foundation and may not contain additional legal argument, legal conclusions or hearsay.").  At the least, the exhibit proponent "should present the testimony of the witness who supervised its preparation."  *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011) (quoting *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)).  Plaintiffs here provide no such declaration from the preparer of the summary and hence no verification of its accuracy.  *See* Decl. of Shana E. Scarlett in Supp. of Pl.s' Second Supplemental Brief, ECF 175-5, ¶ 7 (attesting that the document is a true copy of the summary but saying nothing about its preparation or accuracy).  Plaintiffs' misrepresentations concerning the purported customer complaints, as shown below, underscore the importance of complying with evidentiary rules.

### B.     The Documents Still Do Not Establish a High Failure Rate or "Unreliability"

In their last supplemental filing, Plaintiffs claimed that new documents proved the existence of a defect, although they never identified any defect or how the documents showed it.  ECF No. 167-3 at 2:4.  In this second supplemental filing, Plaintiffs assert that newly proffered evidence "demonstrates high failure rates for all SMT3000DM001 [*sic*] drives at issue, regardless of the name under which they were marketed or product code name."  ECF No. 175 at 3:10-13.  Once again, Plaintiffs' assertion is hollow.  They cite no "high failure rate" in the documents that Seagate purportedly should have disclosed.  Nor do they purport to have any method of establishing a "true" failure rate based on the documents, or indeed any failure rate ***common to the class***.

Instead, Plaintiffs misleadingly conflate consumer communications about the Drives—of which only a tiny subset potentially relate to ***drive failures for the products at issue—***with the

---

1.5% annual return rate for Drives manufactured post-June 2013).  Failure rates are lower than return rates.  *See* ECF No. 150-6 (Almgren Decl.) ¶ 25; ECF No. 150-4 (Adams Decl.) ¶ 76.b.

notion of a failure rate, substituting cherry-picked snippets of commentary for fact.  Plaintiffs' assertion that Seagate tracked more than 100,000 complaints about the Drives, even if it were true, does *not* establish a failure rate.   *See* ECF No. 175-4 at 2:10-14.  **And the statement is not true**.  Plaintiffs misrepresent contacts about *52* Seagate products *not at issue* as pertaining solely to the Drives.[4]  *See* Rodewald Decl., Ex. 1, row 9.  When the spreadsheet is filtered to include only the Drives at issue, and only customer contacts potentially related to hardware issues or Drive returns— *i.e.*, the categories that *might* relate to "failures"—and when duplicate entries about the same customer and Drive are removed, Plaintiffs' "100,000 complaints" are reduced to approximately 13,000 ***world-wide*** contacts for products of which Seagate sold ***over 560,000 units in the US alone***.  *Id*.  Thus, the ***rate*** of ***contacts*** that ***might*** have related to "failures" is at most 2.3% (13,000 divided by 560,000).  *Id*.  Of course, the true rate should be calculated using only U.S. contacts (divided by U.S. sales), and thus would be even lower.  *Id*.  This low rate of contacts that ***might*** relate to failures is fully consistent with a consumer return rate of less than 2-3% (*see supra* note 3 and accompanying text), and cannot support claims of an unreasonably high failure rate for consumers.

The other documents Plaintiffs cite are likewise irrelevant to class certification.  These fall into two categories.  First, there are documents tracking reviews on third party websites.  These documents do not contain new information—the third-party websites are publicly available, and Plaintiffs have had these or similar documents since early in the litigation or before (indeed, such reviews are quoted in the SAC).  *See also, e.g.,* Rodewald Decl., Ex. 1 at rows 19, 28 and response to Pls' Exs. 74, 76.  Plaintiffs deposed Seagate witnesses months ago about Seagate's tracking of reviews on third-party websites.  *Id.*, ¶ 10.  At any rate, many of the reviews do not relate to the Drives at issue, (*id.*, Ex. 1, rows 1-3, 5-7, 11, 16, 19, 22, 28, response to Pls' Exs. 74-76), and to the extent they do, a handful of negative consumer reviews cannot establish a failure rate.  *Ibid*.  Nor do they show Seagate's exclusive knowledge (indeed, the reviews at issue are public).  *See Berenblat v.*

---

[4] Some of Plaintiffs' misrepresentations are startling.  Seagate did not start manufacturing the Drives until April 28, 2011.  ECF No. 150-6 ¶ 11.  However, Plaintiffs cite two documents from ***before*** late April 2011, claiming they report consumer complaints about the Drives.  *See* Rodewald Decl., ¶ 5, Ex. 1, rows 1-2.  Plaintiffs quote "sample complaints" about 1 TB, 2 TB, 5 TB and other sizes drives, and other products, which are not at issue.  *Id.*, rows 3, 6, 11, 22, 27.  Plaintiffs even claim that Thank You communications to Seagate are "Complaints."  *Id.*, Ex. 1, row 9, Ex. F.

*Apple, Inc.*, Nos. 08-4969 JF, 09-1640 JF, 2010 WL 1460297 at *9 (N.D. Cal. Apr. 9, 2010) ("the complaints posted on [defendant's] consumer website merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that [defendant] had knowledge that the memory slot in fact was defective and sought to conceal that knowledge from consumers.").[5]

Second, there are records from Seagate customer support. These relate to innumerable Seagate products not at issue, and comprise a huge variety of customer *contacts* many of which are neither complaints nor indicative of drive failures. Rodewald Decl., Ex. 1, rows 4, 8-10, 12, 14, 15, 17, 18, 20, 21, 24-27. These documents also cannot establish any failure rate, let alone one that is *common* and unreasonably high. *Ibid*.

C.   **The Documents Do Not Establish Materiality as to the Class**

Plaintiffs assert "this Court need not determine the materiality of Seagate's omissions to certify the class." ECF No. 175-4 at 3:7-8. Not so. While the Court need not itself determine what failure rate would be material to a reasonable consumer, **Plaintiffs must show they can prove materiality with common evidence.** *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) ("if the misrepresentation or omission is not material as to all class members . . . the class should not be certified"), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Indeed, Plaintiffs' class certification theory hinges on the purported materiality of a higher, undisclosed failure rate as compared to Seagate's published <1% AFR for certain drives. *See* ECF No. 152 at 1:1-3:16. Yet, as stated above, Plaintiffs do not identify any "true" failure rate or any method of proving one (*see* Section A, above). Accordingly, they cannot show on a classwide basis what rate would be material.

D.   **The Documents Do Not Establish Active Concealment or Partial Misrepresentations**

There is no evidence of a common, materially high failure rate, and accordingly, no probability Plaintiffs can establish Seagate knew of and "actively concealed" anything on a

---

[5] Indeed, Plaintiffs refer to a "spike" of 1-star reviews on Amazon in 2015—ECF No. 175 at 4:18-19, Exhibits 74 & 75—but of course that is after the Backblaze reports were published. Online reviews are well known to be unreliable and heavily influenced by other reviews, leading to "herd" behavior. *See, e.g.*, https://sloanreview.mit.edu/article/the-problem-with-online-ratings-2/.

classwide basis.[6] A "partial misrepresentation" can only exist "when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255 (2011). Thus, to certify such a claim, Plaintiffs must establish that Seagate made a partial representation *to the whole class* that was misleading because Seagate simultaneously withheld a fact that was material *to the whole class*.[7] Plaintiffs still do not identify any representations made to the entire class. *See generally* ECF No. 152 (Opp. to Class Cert.) at 4-6 (showing absence of any uniform AFR representations by Seagate). Instead, Plaintiffs seem to contend that making an alleged misrepresentation about AFR to *part of the class* is equivalent to making a "partial misrepresentation" to the whole class.[8] It is not, rendering Plaintiffs' additional arguments and purported evidence legally and factually irrelevant to class certification.[9]

### III.    CONCLUSION

For all the reasons set forth above, the Court should deny Plaintiffs' Motion for Leave to File a Second Supplemental Brief and their Motion for Class Certification.

---

[6] "Active concealment occurs when a defendant prevents the discovery of material facts." *Rubenstein v. The Gap, Inc*., 14 Cal. App. 5th 870, 878 (2017). "Mere nondisclosure does not constitute active concealment." *Herron v. Best Buy Co. Inc*., 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013). Plaintiffs do not address this factor, let alone show it can be proved on a classwide basis.

[7] *See Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581, 596 (9th Cir. 2012) (to certify a misrepresentation claim, "it is necessary for everyone in the class to have viewed the allegedly misleading advertising"). Likewise, to the extent Plaintiffs seek certification under the laws of seven states in addition to California, *see, e.g.*, ECF 175 at 1 n. 2, whether or not those states in theory permit claims for "omissions" or "active concealment," Plaintiffs have failed to show they can establish that Seagate omitted or actively concealed material facts *on a classwide basis* sufficient to meet the requirements of any state's law. Moreover, as previously explained, South Carolina and Tennessee do not permit class actions under their consumer protection laws; thus, subclasses of consumers in those states may not be certified. *See* ECF No. 152 at 20.

[8] Plaintiffs have never shown that Seagate consistently made AFR statements, or that any significant portion of the class ever saw them. ECF No. 156 at 5-6, 10-11. Indeed, Plaintiffs now concede that product manuals did not consistently contain AFR before 2015. ECF No. 175 at 6.

[9] Plaintiffs also suggest that Karl Schweiss, a senior technical writer at Seagate, updated the product manual for the Desktop HDD in 2015 by pulling information from another hard drive's manual that did not apply to the ST3000DM001. *See* ECF No. 175-4 at 6:1-12; Exhibit 77. When creating or revising product manuals, Seagate's process involves pulling template information from other manuals. If the information in the pulled template is incorrect for the current product, this information is revised to reflect the correct specifications. In any event, Plaintiffs offer no evidence that anything stated in the 2015 product manual was either wrong or viewed by class members.

Dated: June 11, 2018

By         */s/ Anna S. McLean*
ANNA S. McLEAN
Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC