Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>NOTICE OF SUPPLEMENTAL AUTHORITY |

010581-11 1039003V1

Plaintiffs respectfully notify the Court of recent supplemental authority.  On June 4, 2018, the Ninth Circuit issued its decision in *Hodsdon v. Mars, Inc.,* No. 16-15444, 2018 WL 2473486 (9th Cir. June 4, 2018), a copy of which is attached hereto, which is relevant to the pending motion for class certification.

DATED: June 12, 2018                           HAGENS BERMAN SOBOL SHAPIRO LLP


By:     s/ Shana E. Scarlett
        SHANA E. SCARLETT

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 207-2920
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*

2018 WL 2473486
United States Court of Appeals, Ninth Circuit.

Robert HODSDON, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
MARS, INC., a Delaware corporation; Mars Chocolate North America LLC, a Delaware company, Defendants-Appellees.

No. 16-15444
|
Argued and Submitted December 7, 2017 Pasadena, California
|
Filed June 4, 2018

**Synopsis**
**Background:** Consumer brought putative class action against chocolate manufacturer, alleging that manufacturer's failure to disclose on its product labels that its suppliers used forced and child labor violated California's Unfair Competition Law (UCL), Consumers Legal Remedies Act (CLRA), and False Advertising Act (FAL). The United States District Court for the Northern District of California, No. 3:15-cv-04450 Rs, Richard Seeborg, J., 162 F.Supp.3d 1016, dismissed. Consumer appealed.

**Holdings:** The Court of Appeals, Tashima, Circuit Judge, held that:

[1] consumer did not state claim for violation of CLRA;

[2] consumer did not state claim for violation of UCL; and

[3] consumer did not state claim for violation of FAL.

Affirmed.

West Headnotes (11)

[1]     **Federal Courts**
         Pleading

Appellate court reviews de novo a district court's dismissal for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Cases that cite this headnote

[2]     **Antitrust and Trade Regulation**
         Labeling and packaging

Consumer failed to establish that chocolate manufacturer had duty to disclose child and forced labor practices of its suppliers on its product labels and, thus, did not state claim for violation of California's Consumers Legal Remedies Act (CLRA); consumer failed to allege that existence of child labor in supply chain affected central functionality of chocolate products. Cal. Civ. Code § 1770(a)(2), (5), (7).

Cases that cite this headnote

[3]     **Antitrust and Trade Regulation**
         Omissions and other failures to act in general;disclosure

Although a claim may be stated under the California Consumers Legal Remedies Act (CLRA) in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose. Cal. Civ. Code § 1750 et seq.

Cases that cite this headnote

[4]     **Antitrust and Trade Regulation**
         In general;unfairness

        **Antitrust and Trade Regulation**
         Source of prohibition or obligation; lawfulness

        **Antitrust and Trade Regulation**
         Fraud;deceit;knowledge and intent

Because California's Unfair Competition Law (UCL) is written in the disjunctive, it establishes three varieties of unfair competition, acts or practices which are unlawful, or unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200 et seq.

Cases that cite this headnote

[5]   **Antitrust and Trade Regulation**
      Source of prohibition or obligation; lawfulness

      **Antitrust and Trade Regulation**
      Labeling and packaging

      Consumer failed to allege that chocolate manufacturer violated California's Consumers Legal Remedies Act (CLRA) and, thus, did not state claim for violation of unlawful prong of Unfair Competition Law (UCL); consumer did not establish that manufacturer had duty to disclose child and forced labor practices of its suppliers on its product labels, as consumer failed to allege that existence of child labor in supply chain affected central functionality of chocolate products. Cal. Bus. & Prof. Code § 17200 et seq.; Cal. Civ. Code § 1770(a)(2), (5), (7).

      Cases that cite this headnote

[6]   **Antitrust and Trade Regulation**
      Fraud;deceit;knowledge and intent

      **Antitrust and Trade Regulation**
      Labeling and packaging

      Consumer failed to establish that chocolate manufacturer had duty to disclose child and forced labor practices of its suppliers on its product labels and, thus, did not state claim for violation of fraudulent prong of California's Unfair Competition Law (UCL); consumer failed to allege that existence of child labor in supply chain affected central functionality of chocolate products. Cal. Bus. & Prof. Code § 17200 et seq.

      Cases that cite this headnote

[7]   **Antitrust and Trade Regulation**
      Omissions and other failures to act in general;disclosure

      A failure to disclose a fact one has no affirmative duty to disclose is not likely to deceive anyone within the meaning of California's Unfair Competition Law (UCL). Cal. Bus. & Prof. Code § 17200 et seq.

      Cases that cite this headnote

[8]   **Antitrust and Trade Regulation**
      In general;unfairness

      To determine whether something is sufficiently tethered to a legislative policy, for purposes of the unfair prong of California's Unfair Competition Law (UCL), courts require a close nexus between the challenged act and the legislative policy. Cal. Bus. & Prof. Code § 17200 et seq.

      Cases that cite this headnote

[9]   **Antitrust and Trade Regulation**
      In general;unfairness

      **Antitrust and Trade Regulation**
      Labeling and packaging

      Consumer could not state claim against chocolate manufacturer for violation of unfair prong of California's Unfair Competition Law (UCL) based on manufacturer's failure to include information about child and forced labor practices of its suppliers on its product labels; manufacturer's failure to disclose information it had no duty to disclose was not substantially injurious, immoral, or unethical. Cal. Bus. & Prof. Code § 17200 et seq.

      Cases that cite this headnote

[10]  **Antitrust and Trade Regulation**
      Labeling and packaging

      Consumer could not state claim against chocolate manufacturer for violation of California's False Advertising Law (FAL) based on manufacturer's failure to include information about child and forced labor practices of its suppliers on its product labels; manufacturer's failure to disclose fact that it did not have affirmative duty to disclose was not likely to deceive consumer. Cal. Bus. & Prof. Code § 17500 et seq.

Cases that cite this headnote

[11]  **Antitrust and Trade Regulation**
   ⟜ Advertising, marketing, and promotion

Whether an advertisement is misleading under California's False Advertising Law (FAL) is determined by asking whether a reasonable consumer would likely be deceived. Cal. Bus. & Prof. Code § 17500.

Cases that cite this headnote

Appeal from the United States District Court for the Northern District of California, Richard Seeborg, District Judge, Presiding, D.C. No. 3:15-cv-04450 RS

**Attorneys and Law Firms**

Steve W. Berman (argued), Hagens Berman Sobol Shapiro LLP, Seattle, Washington; Elaine T. Byszewski, Hagens Berman Sobol Shapiro LLP, Pasadena, California; for Plaintiff-Appellant.

Stephen D. Raber (argued), and Richmond T. Moore, and Joelle Perry Justus, Williams & Connolly LLP, Washington, D.C., for Defendants-Appellees.

Tina Charoenpong, Deputy Attorney General; Michele Van Gelderen, Supervising Deputy Attorney General; Nicklas A. Akers, Senior Assistant Attorney General; Office of the Attorney General, Los Angeles, California; for Amicus Curiae State of California.

Before: A. Wallace Tashima, William A. Fletcher, and Marsha S. Berzon, Circuit Judges.

## OPINION

TASHIMA, Circuit Judge:

In this action, the putative class plaintiff alleges that California consumer protection laws require certain food manufacturers to disclose, on their products' labels, that the products' supply chain may involve child or slave labor. Regrettably, despite some efforts to eradicate the practices, child labor and slave labor are modern-day scourges, and manufacturers that source materials from around the world may benefit from that illicit labor. This issue has gained public attention in recent years such that many consumers now consider in their purchasing decisions the labor practices behind household products. In fact, some manufacturers have decided to market their products as free of unsavory labor practices, and some legislatures have attempted to further educate the public about modern-day slavery.

Nonetheless, the California consumer protection laws do not obligate the defendants-appellees to label their goods as possibly being produced by child or slave labor. In the absence of any affirmative misrepresentations by the manufacturer, we hold that the manufacturers do not have a duty to disclose the labor practices in question, even though they are reprehensible, because they are not physical defects that affect the central function of the chocolate products.

One of the key issues in this case is the continued viability of *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012). Defendants-appellees rely on *Wilson* to argue that plaintiff-appellant has not alleged that defendants-appellees had a duty to disclose because *Wilson* stands for the premise that plaintiffs in pure omission cases must plead that the undisclosed information created a safety hazard. Plaintiff-appellant acknowledges the holding in *Wilson*, but urges us to deviate from that precedent, arguing that intervening California Courts of Appeal cases render our interpretation of California law incorrect. It is true that recent state-court cases have cast doubt on the breadth of this Circuit's precedent about the duty to disclose, but the facts before us today do not compel us to reexamine that precedent in this case. This is so because, even applying the tests from the intervening California cases, Plaintiff cannot state a claim. We therefore affirm the district court's order of dismissal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**\*2** Plaintiff-appellant Robert Hodsdon ("Plaintiff") is a California citizen who purchased defendants-appellees' (together, "Mars") chocolate products at retail stores and viewed the labeling. Hodsdon alleges he would not have bought the chocolate or would not have paid as much for it if the manufacturer had disclosed, on the label itself, the existence of child and slave labor in its supply chain.

The Ivory Coast (or Côte d'Ivoire) is the world's largest producer of cocoa beans, the raw ingredient for chocolate. Like most chocolate manufacturers, Mars sources at least some cocoa beans from the Ivory Coast. Some cocoa beans from the Ivory Coast are produced using what the International Labor Organization ("ILO") calls "the worst forms of child labour." The Bureau of International Labor Affairs of the U.S. Department of Labor describes the situation in the Ivory Coast as follows:

> [C]hildren ... are working under conditions of forced labor on Ivoirian cocoa farms.... Some children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor.... Some children are forced to perform dangerous tasks....

Mars recognizes that its supply chains may be infected by the worst forms of child labor, but does not disclose this on its product labeling. However, in compliance with the California Transparency in Supply Chains Act of 2010 ("Supply Chains Act"), Mars does disclose on its website its efforts to combat slavery and labor abuses in its supply chain. [1]

Plaintiff brought this action under California's Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), alleging that Mars has a duty to disclose on its labels the labor practices that may taint its supply chain. Plaintiff's CLRA claim is that Mars misrepresented the source, characteristics, and standard of the chocolate products by omitting information about labor practices on its label. *See* Cal. Civ. Code § 1770(a)(2), (5), (7). As to the UCL, Plaintiff claims that Mars' conduct came within the UCL's prohibition on "any unlawful, unfair or fraudulent business act or practice" by: (1) violating the "unlawful" prong based on its violation of the CLRA; (2) violating the "fraudulent" prong because it omitted information about the forced labor at the point of sale; and (3) violating the "unfair" prong because the omission contravened legislative policy against child and slave labor, or because Mars' "participation in a supply chain involving [slave labor] is immoral, unethical, oppressive, unscrupulous and injurious to consumers." *See* Cal. Bus. & Prof. Code § 17200. Finally, Plaintiff's FAL claim also is based on Mars' alleged failure to disclose its labor practices on its label. *See id.* § 17500.

**\*3** The district court dismissed the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiff has timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

**[1]** The district court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291, and review de novo the district court's dismissal for failure to state a claim. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013).

## III. ANALYSIS

### A. Duty to Disclose

Plaintiff does not allege any affirmative misstatement and relies solely on an omission theory of consumer fraud. Omissions may be the basis of claims under California consumer protections laws, but "to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*." *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118, 126 (2006) (emphasis added).

Mars argues that to establish a duty to disclose, under the Ninth Circuit's interpretation of California law, Plaintiff must always allege that the undisclosed information "caused an unreasonable safety hazard." *Wilson*, 668 F.3d at 1143. Plaintiff urges us to rule that *Wilson* is no longer good law after more recent California Courts of Appeal opinions, and to apply the tests for duty to disclose from those cases. While the recent California cases do cast doubt on whether *Wilson*'s safety-hazard requirement applies in all circumstances, we have no occasion in this case to consider whether the later state-court cases have effectively overruled *Wilson*. This is true because even applying Plaintiff's proposed tests, derived from his reading of the more recent California decisions, he cannot state a claim. Specifically, Plaintiff has not sufficiently alleged that the defect in question—

the existence of child labor in the supply chain—affects the central functionality of the chocolate products. Therefore, without either relying on or overruling *Wilson*, we hold that Plaintiff has not established that Mars had a duty to disclose the labor practices on its labels.

The primary California cases on which Plaintiff relies are *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 134 Cal.Rptr.3d 588 (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal.App.4th 1164, 190 Cal.Rptr.3d 411 (2015). Plaintiff has not sufficiently alleged that Mars has a duty to disclose under these cases.

In *Collins*, the plaintiffs were a putative class of consumers that purchased eMachine computers. 134 Cal.Rptr.3d at 591. The plaintiffs complained that a floppy disk controller defect, which manifested itself during the warranty period, caused critical data corruption of the hard drive. *Id.* at 591–92. Citing the four-prong test from *LiMandri v. Judkins*, 52 Cal.App.4th 326, 60 Cal.Rptr.2d 539 (1997), the plaintiffs asserted that eMachines had a duty to disclose the defect. *Collins*, 134 Cal.Rptr.3d at 593. The court explained:

> A failure to disclose a fact can constitute actionable fraud or deceit in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

**\*4** *Id.* (citing *LiMandri*, 60 Cal.Rptr.2d at 543). The plaintiffs in *Collins* argued that eMachines had a duty to disclose based on either prong (2) or (3). *Id.* at 593.

The court held that the plaintiffs had stated a CLRA claim under prong (2). *Id.* at 594. The fact of the defect was material because a "reasonable consumer would deem it important in determining how to act in the transaction at issue," *id.* at 593 (internal quotation and alterations omitted), and "according to the complaint, eMachines knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover."[2] *Id.* at 594 (alteration omitted). Further, *Collins* emphasized that the failure to disclose the defect at issue supported a CLRA claim because the defect "was central to the function of a computer as a computer." *Id.* at 595. In so holding, *Collins* distinguished *Daugherty*—on which *Wilson* is based—by noting that the defect in the case before it, unlike the defect in *Daugherty*, resulted in damage to the computers *during* the warranty period. *See id.* at 595. *Collins*, therefore, stands for the premise that a manufacturer has a duty to disclose only physical defects —not the means by which a product is produced—that relate to a product's central function and arise during the warranty period.

The second case that Plaintiff relies upon is *Rutledge*, another case involving computers. The plaintiffs there alleged that Hewlett Packard ("HP") actively concealed and did not disclose that its laptops contained defective inverters that would cause the screens to dim and darken during the warranty period. *Rutledge*, 190 Cal.Rptr.3d at 418. The plaintiffs further alleged that HP made misrepresentations in its press releases, that the plaintiffs relied on these statements, and that the laptop screen is central to the function of the laptop. *See id.* at 420–422. On summary judgment, the court held that there was a triable issue about whether HP had a duty to disclose the inverter defect. *Id.* at 422.

The court's reasoning in *Rutledge*, however, is far from clear. First, the court did not apply the *LiMandri* factors, as *Collins* did, to determine whether defendants had an obligation to disclose. Further, the section of the opinion on the duty to disclose ultimately concludes that there is "a triable issue of fact as to the nature of HP's [affirmative] representations, and whether that *triggered* a duty to disclose the defect." *Id.* at 422 (emphasis added). The opinion is thus somewhat inconclusive on whether there was a duty to disclose independent of HP's affirmative representations about its product. Finally, *Rutledge* seems to cite favorably the holding in *Collins* that manufacturers have a duty to disclose a defect when it affects the central functionality of a product. *See id.* at 421.

*Rutledge*, therefore, could be read as a case that stands for any of the following propositions: (1) there is a duty to disclose in light of affirmative representations; (2) there is a duty to disclose defects that go to the central function of the product; or (3) there is a duty to disclose defects that

go to the central function of the product and which arise during the warranty period. Plaintiff cannot state a claim under any of these interpretations.

**\*5** While *Collins* and *Rutledge* are somewhat vague about the test for determining whether a defendant has a duty to disclose, they sanction a UCL omission claim when: the plaintiff alleges that the omission was material; second, the plaintiff must plead that the defect was central to the product's function; and third, the plaintiff must allege one of the four *LiMandri* factors. See *Collins,* 134 Cal.Rptr.3d at 593–95. Plaintiff argues that Mars had a duty to disclose because information about labor practices is material to consumers and—relying on the second prong of *LiMandri*—because Mars had "superior knowledge" about labor issues in its supply chain. Plaintiff, however, omits a crucial element that *Collins* and *Rutledge* emphasize—that the defect must relate to the central functionality of the product. [3]

First, we assume without deciding that the existence of slave or child labor in a product's supply chain is material to consumers.

Second, however, Plaintiff fails to allege that the existence of slave or child labor in the supply chain affects the product's central function. In *Collins* and *Rutledge*, the plaintiffs were required to plead that the allegedly concealed *physical* defect was *central* to the product's function. [4] Here, the alleged lack of disclosure about the existence of slave labor in the supply chain is not a physical defect at all, much less one related to the chocolate's function as chocolate. Plaintiff contends that he has "no practical use" for the products tainted by slave or child labor, but the central functionality of the product is not based on subjective preferences about a product. A computer chip that corrupts the hard drive, or a laptop screen that goes dark, renders those products incapable of use by any consumer; some consumers of chocolate are not concerned about the labor practices used to manufacture the product. Thus, Plaintiff fails to establish that Mars has a duty to disclose the issues in its supply chain. [5]

**\*6** Nonetheless, even though we apply the more recent California Courts of Appeal decisions, doing so does not deprive *Wilson* of all vitality. The recent California cases show that *Wilson*'s safety hazard pleading requirement is not necessary in *all* omission cases, but that the requirement may remain applicable in some circumstances. In other words, *Collins* and *Rutledge* are not necessarily irreconcilable with *Wilson* because, where the challenged omission does not concern a central functional defect, the plaintiff may still have to plead a safety hazard to establish that the defendant had a duty to disclose. [6] For example, even though we offer no binding opinion on the issue, *Wilson* may still apply where the defect in question does not go to the central functionality of the product, but still creates a safety hazard. For this reason, we are not convinced that the California Supreme Court would rule that a plaintiff need never plead a safety hazard. See *Muniz v. United Parcel Serv., Inc.,* 738 F.3d 214, 219 (9th Cir. 2013) ("Decisions of the six [California] district appellate courts are persuasive but do not bind each other or us. We should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it.") (citations omitted). *But see In re Watts,* 298 F.3d 1077, 1084–86 (9th Cir. 2002) (O'Scannlain, J., concurring) (questioning this Circuit's practice of revisiting panel decisions based on subsequent state intermediate appellate opinions, especially where state appellate courts have independent districts that do not follow one another's precedent).

Therefore, we hold that in this pure omissions case concerning no physical product defect relating to the central function of the chocolate and no safety defect, Plaintiff has not sufficiently pleaded that Mars had a duty to disclose on its labels the labor issues in its supply chain. [7] Absent a duty to disclose, Plaintiff's CLRA, UCL and FAL claims are foreclosed.

### B. CLRA

Plaintiff alleges three separate violations of the CLRA, namely that Mars' failure to disclose on its labels information about slave or child labor: (1) "[m]isrepresent[ed] the source" of the products; (2) "[r]epresent[ed] that [the] goods ... have ... characteristics ... which they do not have"; and (3) "[r]epresent[ed] that goods ... are of a particular standard." Cal. Civ. Code § 1770(a)(2), (5), (7).

[2] [3] Again, "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a

representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 51 Cal.Rptr.3d at 126. As discussed above, Mars was not obliged to disclose issues about its supply chain. Therefore, Mars did not violate the CLRA.

### C. UCL

[4] The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 540 (1999). Plaintiff claims that Mars is liable under all three of the varieties.

#### 1. Unlawful Prong

[5] Plaintiff links his unlawful prong claim to Mars' alleged violation of the CLRA. As discussed above, Mars did not violate the CLRA; thus, it did not violate the unlawful prong of the UCL.

#### 2. Fraudulent Prong

[6] [7] "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 51 Cal.Rptr.3d at 128; *see also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 62 Cal.Rptr.3d 177, 188 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."). Plaintiff does not state a claim under this prong.

#### 3. Unfair Prong

*7 Unlike the other two UCL prongs, the lack of a duty to disclose does not necessarily dispose of claims under the unfair prong. "The UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (quoting *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) ). "Before *Cel-*

*Tech*, courts held that 'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " *Id.* (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 85 Cal.Rptr.2d 301, 316 (1999) ) ("*South Bay* test"). The California Supreme Court, in *Cel-Tech*, established a different, more concrete, definition of unfair:

> "[U]nfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." It further required that "any finding of unfairness to competitors under section 17200 be *tethered* to some legislatively declared policy or proof of some actual or threatened impact on competition."

*Davis*, 691 F.3d at 1169–70 (quoting *Cel-Tech*, 83 Cal.Rptr.2d 548, 973 P.2d at 543–44) (emphasis added). The *Cel-Tech* test did not apply to actions by consumers, but "some courts in California have extended the *Cel-Tech* definition to consumer actions, while others have applied the [*South Bay* test]." *Id.* at 1170; *see also Cel-Tech*, 83 Cal.Rptr.2d 548, 973 P.2d at 544 n.12. The parties here argue under both the *Cel-Tech* and *South Bay* tests.

[8] First, under the *Cel-Tech* test, Plaintiff contends that his claims are "tethered" to the United Nations' Universal Declaration of Human Rights and the ILO's Convention 182 ("Worst Forms of Child Labour Convention")—the former forbidding slavery and the latter forbidding the worst forms of child labor. Plaintiff's theory is that these international declarations demonstrate the "legislatively declared policy" against child and slave labor. To determine whether something is sufficiently "tethered" to a legislative policy for the purposes of the unfair prong, California courts require a close nexus between the challenged act and the legislative policy. *See Cel-Tech*, 83 Cal.Rptr.2d 548, 973 P.2d at 544 (holding that for an act to be "unfair," it must "threaten[ ]" a violation of law or "violate[ ] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law").

For example, in *Gregory v. Albertson's, Inc.*, 104 Cal.App.4th 845, 128 Cal.Rptr.2d 389 (2002), the plaintiffs alleged that the defendants violated the unfair prong of the UCL when the defendant grocery store

chain closed one location, but held the lease and kept the property empty to prevent a competitor from moving in. *Id.* at 395. Plaintiffs tried to tether defendants' actions to a policy against urban blight. See *id.* ("[B]y keeping off the market the chief retail store in the shopping center, the [defendants] have put in motion a process of deterioration affecting the entire shopping center that will inevitably produce the kind of blight that Health and Safety Code section 33035 condemns...."). The court rejected plaintiffs' argument that defendants' decision to hold onto *one* lease was sufficiently tethered to the policy against *community* blight in § 33035. *Id.* at 395–96. Instead, the court reasoned that § 33035 was part of a broader Community Redevelopment Law, which established procedures for public participation in the redevelopment of blighted areas, but did not "call[ ] for a private remedy affecting a single parcel of property under the unfair competition law." *Id.* at 395.[8] In other words, the challenged action was too far removed from the legislative policy, as stated in the Community Redevelopment Law, to be the tether for a claim under the unfair prong. *Id.*; see also *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 134 Cal.Rptr.2d 101, 117 (2003) (holding that plaintiffs did not state a claim under the unfair prong where defendant medical center's practice of not continuing to treat patients who sued the center did not affect plaintiffs' constitutional right to redress in court).

**\*8** As the plaintiffs in *Gregory* pointed to a general policy against urban blight, so too, Plaintiff here highlights a general policy against child or slave labor. However, like in *Gregory*, there is not a close enough nexus between the policy at issue—here a policy against certain labor practices—and the challenged action—here not placing disclosures on consumer labels. Just as leaving one building empty may *eventually* lead to blight, so too not labeling chocolate bars may indirectly exacerbate slave labor in the supply chain; however, the labeling of products is too far removed from the U.N. and ILO policies to serve as the basis for a UCL claim. As such, the U.N. Convention and the Worst Forms of Child Labour Convention do not provide a tether here. Further, requiring Mars to place labels on its products could arguably impinge on the Supply Chains Act, which addresses disclosure of labor abuses, but does not require labels on the products themselves. Plaintiff cannot state an unfairness prong claim under the *Cel-Tech* test.

**[9]** Plaintiff's claims also fail under the *South Bay* test. Mars' failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical. See *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 39 Cal.Rptr.3d 634, 643–44 (2006) (holding that the use of less expensive tubular steel exhaust manifolds did not violate public policy because the defendant made no representation about the composition of the manifolds and the plaintiffs did not allege a safety concern or a violation of the warranty). Plaintiff's allegation that Mars' participation in a supply chain involving slave labor is "immoral" does not suffice here, because Plaintiff is challenging the failure to disclose. While the labor practices themselves are clearly immoral, it is doubtful that failing to disclose on the label that a product may be tainted by such labor practices is itself immoral, especially when there is no specific duty to disclose this information and the information is otherwise disclosed under the Supply Chains Act. Further, the failure to disclose is not substantially injurious because, as mentioned above, information about slave and child labor is public knowledge, accessible on Mars' website —pursuant to the Supply Chains Act. Therefore, under either test for the unfair prong of the UCL, Plaintiff's claims fail.

### D. FAL

**[10]** **[11]** "California's False Advertising Law makes it unlawful for any person to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Davis*, 691 F.3d at 1161 (quoting Cal. Bus. & Prof. Code § 17500). Whether an advertisement is misleading is determined by asking whether a reasonable consumer would likely be deceived. See *id.* at 1162. Plaintiff's FAL claims fail because "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone." *Daugherty*, 51 Cal.Rptr.3d at 128.[9]

### IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing Plaintiff Hodsdon's CLRA, UCL, and FAL claims with prejudice.

**AFFIRMED.**

**All Citations**

--- F.3d ----, 2018 WL 2473486, 18 Cal. Daily Op. Serv. 5501

Footnotes

1 The Supply Chains Act, Cal. Civ. Code § 1714.43, was enacted in 2010. The California Attorney General later described the requirements of the Act:
> This Act requires large retailers and manufacturers doing business in California to disclose on their websites their "efforts to eradicate slavery and human trafficking from [their] direct supply chain for tangible goods offered for sale." ... Companies subject to the Act must post disclosures on their Internet websites related to five specific areas: verification, audits, certification, internal accountability, and training.

KAMALA D. HARRIS, CAL. DEP'T OF JUSTICE, THE CALIFORNIA TRANSPARENCY IN SUPPLY CHAINS ACT: A RESOURCE GUIDE, i (2015).

2 The court also determined that plaintiffs' complaint alleged that eMachines actively concealed the defect. *Collins*, 134 Cal.Rptr.3d at 594.

3 Plaintiff also cites *Rubenstein v. Gap, Inc.*, 14 Cal.App.5th 870, 222 Cal.Rptr.3d 397 (2017). The plaintiffs in *Rubenstein* alleged that Gap violated the consumer protection laws "based on Gap's alleged misrepresentation in using the Gap and Banana Republic brand names for [factory store] items that had never been sold in traditional Gap and Banana Republic stores and/or were of lesser quality, and also on Gap's failure to disclose these facts to consumers." *Id.* at 401. The court rejected the plaintiffs' claims, reasoning that the plaintiffs did not "allege facts showing that the sales history of factory store items is material to reasonable consumers." It further held that "any quality issues with factory store merchandise were not in Gap's exclusive knowledge." *Id.* at 405.

Additionally, after oral argument in this case, the California Court of Appeal, Fifth District, decided *Gutierrez v. CarMax Auto Superstores Cal.*, 19 Cal.App.5th 1234, 228 Cal.Rptr.3d 699 (2018). In *Gutierrez*, the defendant car dealer did not disclose that the car that the plaintiff purchased was subject to a safety recall relating to the car's braking and lighting systems. The court held that the omitted information was material because it related to safety concerns—which would be important to the reasonable consumer. *Id.* at 705. Further, the court concluded that the car dealer had a duty to disclose the recall because "CarMax made *partial representations* about the vehicle's braking and lighting systems and those representations were likely to mislead for want of communication of the facts about the recall." *Id.* at 722–23. As *Gutierrez* is a partial misrepresentation case, it does not affect the outcome of this purely omissions-based case.

4 Neither *Rubenstein* nor *Gutierrez* mentions the "central functionality" test, but their facts are consistent with requiring that the alleged defect be physical and important to the product's function. In *Gutierrez*, the alleged omission related to a physical defect that created a safety hazard. 228 Cal.Rptr.3d at 723. In *Rubenstein*, the court concluded that there were no "facts showing that the sales history of factory store items is material to reasonable consumers." 222 Cal.Rptr.3d at 405.

5 The parties also dispute whether Plaintiff sufficiently pleaded that Mars had knowledge that Plaintiff did not about the existence of child or slave labor in the supply chain. Plaintiff argues that Mars need only have "superior" knowledge over the consumer to satisfy the *Limandri* prong, whereas Mars contends that the test is "exclusive" knowledge. While we need not reach the issue here, Mars appears to have the better reading of California law.

6 For example, even though we offer no binding opinion on the issue, *Wilson* may still apply where the defect in question does not go to the central functionality of the product but still creates a safety hazard.

7 Plaintiff has an outstanding motion to certify the following question to the California Supreme Court: "Must a pure omission-based consumer deception claim under the UCL, FAL, and CLRA involve a safety concern to be actionable?" Because Plaintiff cannot establish that Mars had a duty to disclose, even if he is not required to plead a safety hazard, the answer to Plaintiff's question is not outcome-determinative. *See* Cal. R. of Court 8.548(a)(1) ("The [California] Supreme Court may decide a question of California law if ... [t]he decision could determine the outcome of a matter pending in the requesting court."). We therefore deny the motion to certify the question.

8 *Gregory* also rejected plaintiffs' tethering claim because "it would impinge on a separate state policy favoring freedom of contract by the parties to commercial real property leases." 128 Cal.Rptr.2d at 395 (quotation marks omitted).

9 Because we hold that Plaintiff has not pleaded a claim under the CLRA, UCL, or FAL, we need not, and do not, reach any of Mars' other arguments in support of affirmance.

---

**End of Document**　　　　　　　　　　　　　　　　　　　　　　© 2018 Thomson Reuters. No claim to original U.S. Government Works.