SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
DANIEL R. FONG, Cal. Bar No. 311985
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947
Email:         npopovic@sheppardmullin.com
                  amclean@sheppardmullin.com
                  rodewald@sheppardmullin.com
                  lpayne@sheppardmullin.com
                  jsiu@sheppardmullin.com
                  dfong@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**DECLARATION OF SEK NAM "ALLEN" NG IN SUPPORT OF SEAGATE TECHNOLOGY LLC'S CONSOLIDATED ADMINISTRATIVE MOTION TO SEAL CERTAIN DOCUMENTS OR PORTIONS THEREOF FILED IN CONNECTION WITH PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Second Consolidated Amended Complaint filed:  July 11, 2016 |

I, Sek Nam "Allen" Ng, declare as follows:

1. I am the Director of Customer Technical Support for the Americas Channel and Original Equipment Manufacturers ("OEMs") at Seagate Technology LLC ("Seagate"). Unless otherwise indicated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as to their truth.

2. I submit this declaration in support of Seagate's Consolidated Administrative Motion to Seal Certain Documents or Portions Thereof Filed in Connection with Plaintiffs' Motion for Class Certification.

3. It is my understanding the following documents, filed in connection with the briefing on the Class Certification Motion, attach, quote, or reference documents that were designated as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the Stipulated Protective Order in this case (Dkt. No. 61):

- Plaintiffs' Motion to Certify Class and associated filings (Dkt. Nos. 133, 135, 136, 138-140, 146);
- Seagate's Opposition to Plaintiffs' Motion to Certify Class and associated filings (Corrected Dkt. Nos. 154-156);
- Plaintiffs' Reply in Support of Motion to Certify Class (Dkt. No. 158);
- Plaintiffs' Administrative Motion to File Under Seal Administrative Motion for Leave to File Plaintiffs' Supplemental Brief in Support of Class Certification (Dkt. No. 167);
- Seagate's Opposition to Plaintiffs' Administrative Motion for Leave to File Supplemental Brief (Dkt. No. 170);
- Plaintiffs' Administrative Motion to File Under Seal and Administrative Motion for Leave to File Plaintiffs' Second Supplemental Brief in Further Support of Motion for Class Certification (Dkt. No. 175); and
- Seagate's Administrative Motion to File Under Seal portions of Seagate's Opposition to Plaintiffs' Administrative Motion for Leave to File Second Supplemental Brief (Dkt. No. 178).

4. Due to the confidential nature of the information in certain of these documents (the "Confidential Information"), Seagate seeks an order sealing this Confidential Information from the public record. The Confidential Information includes proprietary and commercially sensitive information, from which Seagate derives independent economic value because it is not generally known to the public. Because of the sensitive nature of this information, Seagate takes great efforts to protect the secrecy of the Confidential Information. Indeed, Seagate only produced the Confidential Information in this litigation subject to the Stipulated Protective Order.

5. Further, Seagate is bound by various non-disclosure agreements ("NDAs"), which it executes with its Original Equipment Manufacturer ("OEM") and corporate customers, and which require Seagate to protect the information of these companies. The disclosure of these corporate partners' and customers' confidential business information and their interactions with Seagate could be unfairly exploited by Seagate's competitors to undermine Seagate's relationships with such companies. This would result in severe financial detriment to Seagate.

6. At bottom, Seagate has a compelling reason for desiring that the Confidential Information not to be released to its competitors or the public: namely, because there is a risk of competitive harm should this information be generally known, as discussed in further detail below.

## I. PORTIONS OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE SEALED

### a. Exhibits Attached to the Declaration of Steve W. Berman Should Be Sealed

7. Exhibit 22 is a Decision Brief assembled by Seagate detailing the results of its testing and analysis of an OEM customer's hard drives. Seagate has executed an NDA with this OEM that requires Seagate to protect the OEM's information. In this report, Seagate details the analyses it ran, suggests a design change to resolve issues seen with the hard drives in this particular OEM's environment, and summarizes its communications with its customer. Seagate asks that the Court seal this document in its entirety, attached hereto in its unredacted form as **Exhibit A.**

8. Exhibit 23 is an email string, which contains a Consumer Technical Support Weekly Status Report that tracks the status of Seagate's OEM and corporate customer

relationships, and any issues Seagate is responding to with such companies. Seagate uses this report to develop its business and product strategies, including deciding whether to conduct product testing and/or implementing design changes to respond to concerns. Further, as discussed above, Seagate enters into NDAs with its OEMs and business customers. Release of the information in this report could be used by Seagate's competitors to undermine its relationship with OEMs and corporate customers, which would result in financial harm to Seagate. Accordingly, Seagate requests that the Court seal a portion of FED_SEAG0002674-79, as reflected in the versions of Exhibit 23 attached hereto as **Exhibit B**.[1]

9.   Exhibit 24 is a Customer Advocacy report assembled by Seagate that details Seagate's global strategic priorities regarding its reliability and quality control initiatives, and analyzes Seagate's progress on certain initiatives. It also includes information about Seagate's product development for OEM and corporate customers. As discussed above, if this information were to be released, it could be used by Seagate's competitors to influence Seagate's relationships with its corporate customers, which would result in severe financial harm to Seagate. As a result, Seagate requests that the Court seal a portion of the exhibit, as reflected in the versions of Exhibit 24 attached hereto as **Exhibit C**.

10.  Exhibit 26 includes the personal identifying information of Seagate's customers, including their names, phone numbers, and personal email addresses, as well as their emails to Seagate customer service. Accordingly, Seagate requests that the Court seal a portion of the exhibit, as reflected in the versions of Exhibit 26 attached hereto as **Exhibit D**.

11.  Exhibits 45 and 48 are a Technical Customer Management report and Simple Storage Core Team report, respectively, which outline Seagate's product development focuses and the status of various projects, as well as Seagate's overall product strategy. For example, these reports outline information such as what Seagate perceives to be its products' "Competitive Gaps and Features[,]" its development of OEM and corporate customers' products and projects, and Seagate's "Product Development Testing." Many of the projects discussed in these reports inform

---

[1] To differentiate from Plaintiffs' highlights, Seagate's proposed new limited redactions are indicated in orange.

Seagate's long-term business strategy. As a result, in addition to the risk of harm to Seagate's relationships with its corporate clients, the information in these documents could be used by Seagate's competitors to predict Seagate's business strategies. Due to the particular sensitivity of the information in these documents, Seagate requests that the Court seal Exhibits 45 and 48, attached hereto in their unredacted form as **Exhibits E & F**, in their entirety.

### b. Portions of the Declaration of Andrew Hospodor Should Be Sealed

12. As admitted in Mr. Hospodor's declaration, his analysis entails a review of, i*nter alia,* "Seagate's Drive Development and Manufacturing Process[,]"Seagate's pre-release and post-release product testing procedures, which are used by Seagate to inform product design, and Seagate's internal analysis of its own product failure analysis procedures. The method and process for developing and testing Seagate's hard drives and other products is confidential and proprietary. As a result, this information could be used by Seagate's competitors to predict its business processes and product strategy and extrapolate its proprietary product designs and internal specifications. It also implicates the confidential information of Seagate's corporate clients, which Seagate is bound to protect under various NDAs.

13. Accordingly, the portions of the Hospodor Declaration that reference this information should be sealed. To narrowly tailor its request, Seagate requests that the Court seal only a portion of the Hospodor Declaration, as reflected in the versions attached hereto as **Exhibit G**.

### c. Portions of the Memorandum of Points and Authorities Should Be Sealed

14. The portions of Plaintiffs' Motion for Class Certification that reference the Confidential Information described above should be sealed for the same reasons, as reflected in the versions attached hereto as **Exhibit H**.

## II. PORTIONS OF SEAGATE'S OPPOSITION SHOULD BE SEALED

### a. Portions of the Declaration of Donald Adams Should Be Sealed

16. The first sentence of paragraph 42 and the corresponding Figure 3 on the following page reference Seagate's design goals for cumulative failure probabilities. This reveals an internal strategical decision by Seagate on the failure rates that it demands of its products before release.

17. Paragraph 95's (a)-(e) describe the specific technical changes made to Seagate drives as a result of engineering change requests ("ECRs"). This reveals internal decisions by Seagate's engineers on how to modify Seagate drives in response to observed testing behaviors.

18. Paragraphs 105 and 106 refers to Seagate employees' interactions with OEMs and their interactions with Seagate. This reveals OEM's specific non-public business strategies and decisions. Failure to keep such information confidential may endanger Seagate's relationship with these customers.

19. These specific portions of the Adams Declaration could be used by Seagate's competitors to understand its product approval requirements, predict its product strategy, and interfere with Seagate's relationships with its OEMs. To protect Seagate from the risk of competitive harm that could result from disclosure of such proprietary and commercially sensitive information, Seagate asks that this information be sealed, as reflected in the versions attached hereto as **Exhibit I**.

      **b.**    **Portions of the Declaration of Patrick Dewey Should Be Sealed**

20. Paragraph 36's (a)-(e) describe the specific technical changes made to Seagate drives as a result of engineering change requests (ECRs). This section reveals internal decisions by Seagate's engineers on how to modify Seagate drives in response to observed testing behaviors. Accordingly, Seagate asks that this information be sealed, as reflected in the versions attached hereto as **Exhibit J**.

      **c.**    **Portions of the Declaration of Harrie Netel Should Be Sealed**

21. Paragraph 36 refers to Seagate's specific interactions with two OEM customers in regard to their conversations with Seagate on ORT testing results. This reveals the OEMs' internal business decisions and strategy on whether to issue stop-ships, as well as Seagate's internal discussions with those OEMs. Failure to keep such information confidential may endanger Seagate's relationship with these customers. Accordingly, Seagate asks that this information be sealed, as reflected in the versions attached hereto as **Exhibit K**.

**d.    Exhibits Attached to the Declaration of Liên H. Payne Should Be Sealed**

22.    Exhibits 1-5 are Shipping Approval Documents for Grenada drives. These documents provide Seagate's Core Team's justifications for requesting approval to begin shipping drives, including internal testing results, strategy considerations, and engineering decisions on how the drives were modified to reach this approval stage. Seagate's procedure for conducting such analyses has been defined through iteration over time, is confidential and proprietary, and could be copied by Seagate's competitors. Seagate thus requests that the Court seal these documents, attached hereto in their unredacted form as **Exhibits L, M, N, O, and P**, in their entirety.

23.    Exhibit 6 is an internal draft document regarding Seagate's internal strategy on reliability goals for drives sold to OEMs. This document outlines Seagate's benchmarks, internal testing procedures, and strategy in how to increase reliability for drives sold to OEMs. Seagate thus requests that the Court seal this document, attached hereto in its unredacted form as **Exhibit Q**, in its entirety.

24.    Exhibits 7 and 9 should be sealed as to the names of Seagate's OEM customers. Disclosing such identities will hurt Seagate's competitiveness by disclosing Seagate's key customers and those customers' business decisions to request ship holds, which Seagate's OEMs expect Seagate to keep confidential. Failure to keep such information confidential may endanger Seagate's relationship with these customers. To narrowly tailor its sealing request, Seagate has redacted only those portions of the exhibits that implicate such concerns, as reflected in the versions attached hereto as **Exhibits R and S**.

25.    Exhibit 15 is an internal Seagate document on projecting failure rates for GoFlex Turbo drives sold to OEMs. As part of its analysis, this document lists non-public information of the OEMs, including the number of drives sold to the OEMs, their profit margins, their return rates, and costs. Failure to keep such information confidential may endanger Seagate's relationship with these customers. Seagate thus requests that the Court seal this document, attached hereto in its unredacted form as **Exhibit T** in its entirety.

### III. PORTIONS OF PLAINTIFFS' REPLY SHOULD BE SEALED

#### a. An Exhibit Attached to the Declaration of Steve W. Berman Should Be Sealed

26. Exhibit 57 is a Shipping Approval Document for Grenada BP2 drives. This document provides Seagate's Core Team's justifications for requesting approval to begin shipping drives, including internal testing results, strategy considerations, and engineering decisions on how the drives were modified to reach this approval stage. Seagate's procedure for conducting such analysis has been defined through iteration over time, is confidential and proprietary, and could be copied by Seagate's competitors. Seagate thus requests that the Court seal this document, attached hereto in its unredacted form as **Exhibit U**, in its entirety.

#### b. Portions of the Rebuttal Declaration of Andrew Hospodor Should Be Sealed

27. The Hospodor Rebuttal Declaration references the confidential information of Seagate's OEM and business clients, which Seagate is bound to protect under various NDAs.

28. This information could be used by competitors to undermine Seagate's relationships with these clients, which would result in competitive and financial harm to Seagate.

29. Accordingly, the portions of the Hospodor Declaration that reference these corporate clients should be sealed. To narrowly tailor its request, Seagate requests that the Court seal only a portion of the Hospodor Rubuttal Declaration, as reflected in the versions attached hereto as **Exhibit V**.

#### c. Portions of the Reply Should Be Sealed

30. The portions of Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification that reference the above-described Confidential Information should be sealed for the same reasons set forth above, as reflected in the proposed redacted version of the Reply, as reflected in the versions attached hereto as **Exhibit W**.

### IV. PORTIONS OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE SUPPLEMENTAL BRIEF SHOULD BE SEALED

#### a. Exhibits Attached to the Declaration of Steve W. Berman Should Be Sealed

31. Exhibit 63 and 65 are documents analyzing the failures of Seagate drives owned by two its corporate customers. Such information reflects the manner in which Seagate tests its

drives, as well as confidential communications with large corporate customers subject to a confidentiality agreement. Seagate thus requests that the Court seal these documents, attached hereto in their unredacted form as **Exhibits X and Y**, in their entirety.

32. Exhibit 66 is a Decision Brief analyzing how to respond to failures reported by two of Seagate's corporate customers. This documents reveals Seagate's internal strategy on how to respond to those customers' concerns, including discussion of how to handle relations with the customer and how to communicate with the customers regarding the failures. Seagate thus requests that the Court seal this document, attached hereto in its unredacted form as **Exhibit Z**, in its entirety.

33. Exhibit 67 is an email chain between Seagate employees discussing how to respond to certain OEMs' requests for replacement drives and what data Seagate provides to OEMs. Seagate thus requests that the Court seal this document, attached hereto in its unredacted form as **Exhibit AA**, in its entirety.

34. Exhibits 70 and 71 are internal Seagate documents analyzing a request by a large corporate customer to replace some of its Seagate drives. This document reveals Seagate's internal strategy in how to respond to the customer's concerns. In addition, the document includes data from Apple, which is subject to a confidentiality agreement. Seagate thus requests that the Court seal these documents, attached hereto in their unredacted form as **Exhibits BB and CC**, in their entirety.

    **b.** **<u>Portions of the Plaintiffs' Supplemental Brief in Support of Class Certification Should Be Sealed</u>**

35. In Plaintiffs' proposed Supplemental Brief, Plaintiffs name several large corporate customers of Seagate as well as those customers' internal data and private communications with Seagate regarding drive concerns. Revealing Seagate's key customers' identities, internal data, and communications with Seagate will result in competitive harm to Seagate and violate confidentiality agreements with those customers. To narrowly tailor its sealing request, Seagate has redacted only those portions of the brief that implicate such concerns, as reflected in **Exhibit DD**, attached hereto.

## V. PORTIONS OF SEAGATE'S OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE SUPPLEMENTAL BRIEF SHOULD BE SEALED

36. For the same reasons listed above, the portions of Seagate's brief referencing Seagate's corporate customers should be sealed. To narrowly tailor its sealing request, Seagate has redacted only those portions of the opposition brief that implicate such concerns, as reflected in **Exhibit EE**, attached hereto.

## VI. PORTIONS OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE SECOND SUPPLEMENTAL BRIEF SHOULD BE SEALED

### a. Exhibits Attached to the Declaration of Shana Scarlett Should Be Sealed

37. Exhibit 73 is a set of meeting notes that disclose the results of Seagate's global market testing and analysis, and outline potential marketing concepts and strategies. Seagate uses this information to guide its business and marketing strategy. If this information were disclosed, it could be used by Seagate's competitors to predict Seagate's strategies, which could result in competitive harm to Seagate. Seagate thus requests that the Court seal this document, attached hereto in its unredacted form as **Exhibit FF**, in its entirety.

38. Exhibit 76 is an internal email chain between Seagate employees discussing Seagate's efforts to obtain drives on which to perform product testing and failure analysis as a function of Seagate's product improvement efforts. The email chain also discloses the results of, and pending, product testing for various other products not at issue in this litigation. In addition to disclosing Seagate's confidential information, this document discloses the confidential data of Seagate's current and former business customers—with which Seagate has entered into various NDAs—including its product strategy, testing, and development efforts. Accordingly, Seagate requests that the Court seal a portion of Exhibit 76, as reflected in the redacted version attached hereto as **Exhibit GG**.

/ / /

/ / /

/ / /

**b.      Portions of the Plaintiffs' Second Supplemental Brief in Support of Class Certification Should Be Sealed**

39.     The portions of the Second Supplemental Brief that reference the confidential information in the exhibits to the Scarlett Declaration should be sealed for the same reasons set forth above.  To narrowly tailor its sealing request, Seagate has redacted only those portions of the brief that implicate such concerns, as reflected in **Exhibit HH**, attached hereto.

## VII.   AN EXHIBIT TO THE RODEWALD DECLARATION IN SUPPORT OF SEAGATE'S OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE SECOND SUPPLEMENTAL BRIEF SHOULD BE SEALED

40.     Exhibit 1 to the Rodewald Declaration is a chart responding to Exhibit 72 to the Scarlett Declaration, discussed above.  In responding to Plaintiffs' chart, Exhibit 1 discloses some of this same information, which Seagate seeks to seal for the same reasons.  Accordingly, Seagate requests that the Court seal a portion of Exhibit 1, as reflected in the redacted version attached hereto as **Exhibit II**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 26th day of July, 2018, in Cupertino, California.



_____
Sek Nam "Allen" Ng

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Joy O. Siu, attest that the signatory of this document, and on whose behalf the filing is submitted, concurs with the filing's content and has authorized the filing.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By   */s/ Joy O. Siu*
     JOY O. SIU

Attorneys for SEAGATE TECHNOLOGY LLC