# EXHIBIT H

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Steve W. Berman (*pro hac vice*)
Ashley Bede (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
ashleyb@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the
Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION<br><br>DATE:   Feb. 9, 2018<br>TIME:   9:30 a.m.<br>DEPT:   Hon. Joseph C. Spero<br>          Courtroom G, 15th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 9, 2018, at 9:30 a.m. or as soon thereafter as the matter may be heard by the Honorable Judge Joseph C. Spero of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, Courtroom G, 15th Floor, San Francisco, CA 94102, plaintiffs will and hereby do move for an order certifying the following class pursuant to Federal Rule of Civil Procedure 23(b)(3) and California law:

> All individuals in the United States who purchased new, not for resale, on or before February 1, 2016, at least one Seagate model ST3000DM001 hard drive or at least one drive with any of the following model numbers on the box it was sold in or on the hard drive's casing or chassis: STAC3000100, STAC3000102, STAC3000202, STAC3000402, STAC3000403, STAC3000404, STAC3000602, STAM3000100, STAM3000400, STAY3000100, STAY3000102, STBC3000101, STBC3000102, STBD3000100, STBM3000100, STBN6000100, STBP12000100, STBV3000100, STBV3000200, STCA3000101, STCA3000600, STCA3000601, STCA3000602, STCB3000100, STCB3000101, STCB3000201, STCB3000400, STCB3000401, STCB3000900, STCB3000901, STCP3000100, STCP3000400, STDT3000100, STDT3000400, STDT3000402, STDT3000600, STDU3000101, STDU3000400, STEB3000100, STEB3000200, STEB3000400, STEG3000100, STEG3000400, STFM3000100, or STFM3000400.

In the alternative, plaintiffs propose the following state classes under the omissions theory in these jurisdictions' consumer protection laws:[1]

> All individuals in the jurisdictions of California, Florida, Massachusetts, New York, South Carolina, South Dakota, Tennessee, Texas, who purchased new, not for resale, on or before February 1, 2016, at least one Seagate model ST3000DM001 hard drive or at least one drive with any of the following model numbers on the box it was sold in or on the hard drive's casing or chassis: STAC3000100, STAC3000102, STAC3000202, STAC3000402, STAC3000403, STAC3000404, STAC3000602, STAM3000100, STAM3000400,

---

[1] Specifically, California's CLRA, UCL, and FAL; Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"); Massachusetts Gen. Laws Ch. 93A; Tennessee Consumer Protection Act, Tenn. Code § 47-18-104 ("TCPA"); New York Gen. Bus. Law § 349 ("DAPS"); South Carolina Unfair Trade Pracs. Act, S.C. Code Ann. § 39-5-10 ("South Carolina UTPA"); Texas Deceptive Trade Pracs. Act, Tex. Bus. & Comm. Code § 17.41 ("Texas DTPA"); and South Dakota Deceptive Trade Practices & Consumer Protection Statute, S.D.C.L. § 34-27-1 ("DTP-CPS").

1  STAY3000100, STAY3000102, STBC3000101, STBC3000102,
2  STBD3000100, STBM3000100, STBN6000100, STBP12000100,
   STBV3000100, STBV3000200, STCA3000101, STCA3000600,
3  STCA3000601, STCA3000602, STCB3000100, STCB3000101,
   STCB3000201, STCB3000400, STCB3000401, STCB3000900,
4  STCB3000901, STCP3000100, STCP3000400, STDT3000100,
   STDT3000400, STDT3000402, STDT3000600, STDU3000101,
5  STDU3000400, STEB3000100, STEB3000200, STEB3000400,
   STEG3000100, STEG3000400, STFM3000100, or STFM3000400.

6      This motion is based on this notice of motion and motion, the following memorandum of

7  points and authorities, all accompanying declarations and exhibits, the pleadings and papers on file in

8  this action, oral argument, and such other matters as the Court may consider in hearing this motion.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ....................................................................................................1

II.    THE PROPOSED CLASS ......................................................................................3

III.   PROFFER OF EVIDENCE COMMON TO THE CLASS....................................4

    A.   Seagate engaged in a widespread campaign regarding the reliability of its drives, including misleading AFRs. ...........................................................4

    B.   Evidence common to the class demonstrates that Seagate was aware its drives were not reliable and experienced high failure rates. ......................8

IV.    ARGUMENT .........................................................................................................10

    A.   Plaintiffs have satisfied all the requirements of Rule 23(a). ...................10

        1.   The class is so numerous that joinder would be impracticable. ...................10

        2.   Questions of law and fact are common to the class......................................11

        3.   Class representatives' claims are typical of the class's claims.....................12

        4.   The class representatives will adequately represent the class. .....................13

    B.   The class satisfies the Rule 23(b)(3) predominance and superiority requirements. .............................................................................................14

        1.   Nationwide application of California law is appropriate. ............................14

            a.   Seagate's headquarters in California, and its other contacts to this state, make the application of California law constitutional. ..................................................................15

            b.   California "governmental interest analysis" dictates California law applies.........................................................16

        2.   In the alternative, plaintiffs request certification of classes under eight states' consumer protection laws.........................................................19

        3.   Plaintiffs will use common evidence to support their claims, regardless of whether a nationwide class or state classes are certified.......................................................................................................19

            a.   Evidence, common to the class, supports plaintiffs' claims of Seagate's failure to disclose the true unreliability of its drives. ...................................................................................20

            b.   Plaintiffs propose a class-wide damages methodology that relies on common evidence. ..............................................21

        4.   A class action is superior to other forms of adjudication. ............................23

B.    The class is ascertainable...........................................................................24

C.    Proposed class counsel will fairly and adequately represent the class......................24

V.    CONCLUSION ...........................................................................................25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4
*Abdullah v. U.S. Sec. Assocs. Inc.*,
    731 F.3d 952 (9th Cir. 2013) ................................................................. 14

5
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
6
    568 U.S. 455 (2013) ................................................................. 2, 10, 14

7
*Bardin v. DaimlerChrysler Corp.*,
    39 Cal. Rptr. 3d 634 (Cal. Ct. App. 2006) ........................................... 20

8
*Beck-Ellman v. Kaz USA, Inc.*,
9
    283 F.R.D. 558 (S.D. Cal. 2012) ........................................................ 19

10
*Blakemore v. Super. Ct.*,
11
    28 Cal. Rptr. 3d 877 (Cal. Ct. App. 2005) ........................................... 20

12
*Calvert v. Red Robin Int'l, Inc.*,
    2012 WL 1668980 (N.D. Cal. May 11, 2012) ....................................... 14

13
*Chamberlan v. Ford Motor Co.*,
14
    369 F. Supp. 2d 1138,1144 ................................................................. 20

15
*Corbett v. Super. Ct.*,
16
    125 Cal. Rptr. 2d 46 (Cal. Ct. App. 2002) ........................................... 20

17
*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) ........................................................ 20

18
*Elias v. Hewlett-Packard Co.*,
19
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) ............................................... 19

20
*Ellis v. Costco Wholesale Corp.*,
21
    657 F.3d 970 (9th Cir. 2011) ........................................................... 2, 10

22
*In re First Alliance Mortg. Co.*,
    269 B.R. 428 (C.D. Cal. 2001) ........................................................... 17

23
*Hanlon v. Chrysler Corp.*,
24
    150 F.3d 1011 (9th Cir. 1998) ...................................................... 11, 24

25
*Hodson v. Mars, Inc.*,
26
    162 F. Supp. 3d 1016 (N.D. Cal. 2016) ............................................... 21

27
*Hurtado v. Super. Ct.*,
    522 P.2d 666 (Cal. 1974) ..................................................... 15, 17, 18

28

*Kearney v. Salomon Smith Barney, Inc.*,
   137 P.3d 914 (Cal. 2006) ..................................................................................... 17

*Keilholtz v. Lennox Hearth Prods. Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) .................................................................... 16, 17

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ........................................................................ 22, 24

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) ................................................................................. 3

*LiMandri v. Judkins*,
   60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) .......................................................... 21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) .............................................................................. 14

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002) ........................................................ 20

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................ 18

*McCann v. Foster Wheeler LLC*,
   223 P.3d 516 (Cal. 2010) ............................................................................... 17, 18

*Menagerie Prods. v. Citysearch*,
   2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ....................................................... 17

*Nguyen v. Wells Fargo Bank, N.A.*,
   2017 WL 4224930 (N.D. Cal. Sept. 22, 2017) .............................................. 11, 12

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016) ...................................................... 14

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ......................................................................... 17

*Parra v. Bashas', Inc.*,
   536 F.3d 975 (9th Cir. 2008) ................................................................................ 11

*Pecover v. Elec. Arts Inc.*,
   2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ..................................................... 16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................. 15

*Plascencia v. Lending 1st Mortg.*,
   259 F.R.D 437 (N.D. Cal. 2009) .......................................................................... 19

1

2

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ...................................................................... 11

3

*Ries v. Ariz. Bev. USA LLC*,
  287 F.R.D 523 (N.D. Cal. 2012) ....................................................................... 21

4

5

*In re Seagate Technologies Secs. Litig.*,
  115 F.R.D 264 (N.D. Cal. 1987) ....................................................................... 19

6

7

*Senne v. Kan. City Royals Baseball Corp.*,
  2017 WL 897338 (N.D. Cal. Mar. 7, 2017) ...................................................... 11

8

*Shepard v. Lowe's HIW, Inc.*,
  2013 WL 4488802 (N.D. Cal. Aug. 19, 2013) .................................................. 24

9

10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 6327490 (N.D. Cal. Dec. 3, 2013) ..................................................... 17

11

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
  209 F.R.D. 159 (C.D. Cal. 2002) ...................................................................... 14

12

13

*In Re Toyota Motor Corp.*,
  790 F. Supp. 2d 1152 (C.D. Cal. 2011) ............................................................ 20

14

15

*True v. Am. Honda Motor Co.*,
  2009 WL 838284 (C.D. Cal. Mar. 25, 2009) .................................................... 25

16

17

*Wash. Mut. Bank v. Super. Ct.*,
  15 P.3d 1071 (Cal. 2001) .................................................................................. 18

18

*Wershba v. Apple Comput., Inc.*,
  110 Cal. Rptr. 2d 145 (Cal. Ct. App. 2001) ..................................................... 17

19

20

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................ 19

21

*Wolin v. Jaguar Land Rover N. Am. LLC*,
  617 F.3d 1168 (9th Cir. 2010) .......................................................................... 23

22

23

*Zinser v. Accuflex Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................................... 10

24

### OTHER AUTHORITIES

25

Fed. R. Civ. P. 23 ....................................................................................... *passim*

26

27

28

1

## STATEMENT OF ISSUES

2

(1)     Using evidence common to the class, plaintiffs will show that defendant Seagate

3

Technology LLC (Seagate) marketed its model ST3000DM001 hard drives as reliable for consumers

4

to save irreplaceable photos, videos, and documents. Seagate told consumers that the ST3000DM001

5

had the same failure rates as industry standard – under 1 percent – and that it was suitable for

6

Desktop RAID. Despite these public statements, from the time of launch and throughout the class

7

period (April 2011 through February 2016), Seagate measured failure rates between 2.4 and 20 times

8

greater than its advertised rates. Indeed, Seagate was well aware that the ST3000DM001 had a

9

higher than advertised failure rate, was unsuitable for RAID, and was unreliable by industry

10

standards. However, during the class period, Seagate did not disclose these material facts and the true

11

reliability of the ST3000DM001 to consumers. Given this, are consumers entitled to move forward

12

as a certified class to seek redress from Seagate?

13

(2)     Seagate – the only defendant in this case – is headquartered in California. Seagate

14

created and distributed its marketing campaigns from California; its sales force is located here; the

15

team who designed the hard drives at issue is located in California; and class members returned

16

defective drives to Seagate's California distribution center. Given the extensive set of contacts with

17

California, and the lack of true interest in any other state in limiting recovery to consumers who

18

purchased these unreliable drives, should this Court certify a nationwide class under California's

19

consumer protection laws?

20

(3)     In the alternative to a nationwide class under California law, where plaintiffs propose

21

a class to be certified under eight jurisdiction's laws, and where common evidence supports all of the

22

elements of plaintiffs' claims, should these eight state classes be certified?

23

(4)     Hagens Berman Sobol Shapiro LLP and Axler Goldich, LLC have represented the

24

proposed class and plaintiffs since the inception of this litigation. They have expended significant

25

time and resources on behalf of the claims of class members. Given this, should they be appointed as

26

counsel for the class pursuant to Federal Rule of Civil Procedure 23(g)?

27

28

PLS.' MOT. FOR CLASS CERTIFICATION - viii
Case No.: 3:16-cv-00523-JCS

010581-11 997744 V1

**STATEMENT OF ISSUES**

(1)　　Using evidence common to the class, plaintiffs will show that defendant Seagate Technology LLC (Seagate) marketed its model ST3000DM001 hard drives as reliable for consumers to save irreplaceable photos, videos, and documents. Seagate told consumers that the ST3000DM001 had the same failure rates as industry standard – under 1 percent – and that it was suitable for Desktop RAID. Despite these public statements, from the time of launch and throughout the class period (April 2011 through February 2016), Seagate measured failure rates between 2.4 and 20 times greater than its advertised rates. Indeed, Seagate was well aware that the ST3000DM001 had a higher than advertised failure rate, was unsuitable for RAID, and was unreliable by industry standards. However, during the class period, Seagate did not disclose these material facts and the true reliability of the ST3000DM001 to consumers. Given this, are consumers entitled to move forward as a certified class to seek redress from Seagate?

(2)　　Seagate – the only defendant in this case – is headquartered in California. Seagate created and distributed its marketing campaigns from California; its sales force is located here; the team who designed the hard drives at issue is located in California; and class members returned defective drives to Seagate's California distribution center. Given the extensive set of contacts with California, and the lack of true interest in any other state in limiting recovery to consumers who purchased these unreliable drives, should this Court certify a nationwide class under California's consumer protection laws?

(3)　　In the alternative to a nationwide class under California law, where plaintiffs propose a class to be certified under eight jurisdiction's laws, and where common evidence supports all of the elements of plaintiffs' claims, should these eight state classes be certified?

(4)　　Hagens Berman Sobol Shapiro LLP and Axler Goldich, LLC have represented the proposed class and plaintiffs since the inception of this litigation. They have expended significant time and resources on behalf of the claims of class members. Given this, should they be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g)?

1

2

# I.     INTRODUCTION

Vast amounts of data have become a mainstay of modern life. With the advent of cameras in cellphones, online streaming of videos, and electronic versions of documents, consumers have collected huge amounts of digital information invaluable to their lives. To prevent wholesale loss of this information, many consumers turned to defendant Seagate Technology LLC (Seagate) and its hard drives to back up this information. Seagate promised its ST3000DM001 drives would make consumers' "digital life . . . safe from loss."[2] And yet, Seagate's drives put consumers' digital lives at risk at a rate far greater than promised, and far greater than the industry standard. Faced with competitors already releasing similar products, in April 2011, Seagate rushed model ST3000DM001 drives into production and distribution prematurely. Seagate promised failure rates of less than 1% and the drives' suitability for RAID[3] arrays (a collection of drives put together). These statements were found throughout Seagate's marketing materials, website, and product manuals. These statements were false.

Seagate knew the failure rates of these drives were significantly higher than advertised, and that the drives were unstable and defective. Plaintiffs can prove Seagate's knowledge using common evidence including a host of internal documents showing low factory yields, engineering and firmware changes, and contamination during the manufacturing process. As one of plaintiffs' experts, Andrew Hospodor, explains, at the time Seagate shipped its drives, it estimated failure rates of at least 2.35% – **7 times greater** than the 0.34% Seagate advertised at the time. Throughout the period these drives were sold, internal Seagate documents reflect AFRs between **2.4 and 20 times greater than its advertised rates**.[4]

---

[2] Ex. 1. Unless otherwise indicated, all exhibit references are to the Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification (Berman Decl.), filed herewith.

[3] RAID stands for "redundant array of independent disk." The RAID configuration is a collection of hard drives configured to back up data by writing the same data to multiple hard drives such that if one drive fails, the RAID can "rebuild" and the data is preserved.

[4] *See generally* Declaration of Andrew Hospodor in Support of Plaintiffs' Motion for Class Certification (Hospodor Decl.), filed herewith. Dr. Hospodor is a Ph.D in Computer Engineering with extensive expertise in the data storage industry.

These failure rates were relevant to consumers – and yet, at no time did Seagate disclose to consumers that its drives were unreliable. Plaintiffs' expert, Stefan Boedeker, offers evidence (common to the class) that the failure rate of the drives was by far the most material characteristic for consumers.[5] Sophisticated industry participants, however, noticed the unreliability of these Seagate drives. Apple recalled the drives,[6] ███████████████████████████████████ ████████████████████████████████████████████████████. Hospodor Decl. ¶¶ 183-193, 176.

At class certification, while this Court is to engage in a "rigorous analysis" of Rule 23's requirements, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[7] There can be no question that plaintiffs satisfy the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy. Thousands of consumers have suffered the same injury – the purchase of drives that were far more unreliable than promised. The eight proposed class representatives each testified as to Seagate's deceit and assert claims typical of the proposed class. Under Rule 23(a)'s adequacy requirement, there can be no real suggestion that the claims of these consumer plaintiffs are in conflict with the consumer class. **_See section IV.A, infra_**.

Rule 23(b)(3) is also met, as common issues predominate over any individual ones. Given Seagate's location in California, its extensive contacts with this state, and the emanation of its scheme and deceptions from California, plaintiffs request certification of a nationwide class of consumers under California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law. In the alternative, plaintiffs propose eight state classes under the consumer protection laws of California, Florida, Massachusetts, New York, South Carolina, South Dakota, Tennessee, and Texas for consumers who purchased the drives before February 1, 2016. Each of

---

[5] Declaration of Stefan Boedeker in Support of Plaintiffs' Motion for Class Certification (Boedeker Decl.), filed herewith.

[6] Hospodor Decl. ¶¶ 183-193.

[7] _Amgen Inc. v. Conn. Ret. Plans & Trust Funds_, 568 U.S. 455, 466 (2013); _see also Ellis v. Costco Wholesale Corp._, 657 F.3d 970, 983 n.8 (9th Cir. 2011).

1   these states recognizes causes of action for omissions, and share nearly identical showings at trial on

2   whether consumers have been deceived. ***See* section IV.B, *infra*.**

3       Plaintiffs have also shown, using evidence common to the class, that damages may be

4   calculated on a classwide basis. Of course, the Ninth Circuit has instructed that "the presence of

5   individualized damages cannot, by itself, defeat class certification,"[8] but even then, such a

6   calculation presents no bar here. As plaintiffs' expert, Stefan Boedeker, testifies, two methods exist

7   to calculate class members' damages. *First*, at trial, if the jury accepts plaintiffs' theory that

8   Seagate's drives with above-industry-standard failure rates had no or only *de minimis* value to

9   consumers, a full refund is appropriate. *Second*, in the alternative, if the jury believes that the drives

10  provided some benefit to the class, Mr. Bodeker is able to quantify damages based on the range of

11  Seagate's own calculated failure rates – rates far above those disclosed to the class. **See section**

12  **IV.B, *infra*.**

13      All of this evidence, if accepted by a jury, would be sufficient to support plaintiffs' claims by

14  a preponderance of the evidence. But that is not the Court's job here. Here, this Court's job is to test

15  whether plaintiffs have proffered evidence common to the class to support each of the elements of

16  Rule 23. This, they have done.

17                **II.    THE PROPOSED CLASS**

18      Plaintiffs propose the following nationwide class for certification based on a theory of

19  nondisclosure of the true unreliability and failure rates of the drives under California's laws,

20  including California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (CLRA); the

21  Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL); and the False Advertising

22  Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (FAL). The proposed class is as follows:

23          All individuals in the United States who purchased new, not for resale,
            on or before February 1, 2016, at least one Seagate model

24          ST3000DM001 hard drive or at least one drive with any of the
            following model numbers on the box it was sold in or on the hard

25          drive's casing or chassis: STAC3000100, STAC3000102,
            STAC3000202, STAC3000402, STAC3000403, STAC3000404,

26          STAC3000602, STAM3000100, STAM3000400, STAY3000100,
            STAY3000102, STBC3000101, STBC3000102, STBD3000100,

27  _____

28      [8] *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013).

STBM3000100, STBN6000100, STBP12000100, STBV3000100,
STBV3000200, STCA3000101, STCA3000600, STCA3000601,
STCA3000602, STCB3000100, STCB3000101, STCB3000201,
STCB3000400, STCB3000401, STCB3000900, STCB3000901,
STCP3000100, STCP3000400, STDT3000100, STDT3000400,
STDT3000402, STDT3000600, STDU3000101, STDU3000400,
STEB3000100, STEB3000200, STEB3000400, STEG3000100,
STEG3000400, STFM3000100, or STFM3000400.

In the alternative, plaintiffs propose the following state classes under the omissions theory in these eight jurisdictions' consumer protection laws (*see* **Appendix A**):

All individuals in the jurisdictions of California, Florida,
Massachusetts, New York, South Carolina, South Dakota, Tennessee,
and Texas, who purchased new, not for resale, on or before February 1,
2016, at least one Seagate model ST3000DM001 hard drive or at least
one drive with any of the following model numbers on the box it was
sold in or on the hard drive's casing or chassis: STAC3000100,
STAC3000102, STAC3000202, STAC3000402, STAC3000403,
STAC3000404, STAC3000602, STAM3000100, STAM3000400,
STAY3000100, STAY3000102, STBC3000101, STBC3000102,
STBD3000100, STBM3000100, STBN6000100, STBP12000100,
STBV3000100, STBV3000200, STCA3000101, STCA3000600,
STCA3000601, STCA3000602, STCB3000100, STCB3000101,
STCB3000201, STCB3000400, STCB3000401, STCB3000900,
STCB3000901, STCP3000100, STCP3000400, STDT3000100,
STDT3000400, STDT3000402, STDT3000600, STDU3000101,
STDU3000400, STEB3000100, STEB3000200, STEB3000400,
STEG3000100, STEG3000400, STFM3000100, or STFM3000400.

### III.     PROFFER OF EVIDENCE COMMON TO THE CLASS

More than other consumer cases, the facts in this case center almost entirely around the defendant's conduct and statements to consumers. Had consumers known the true state of affairs – that Seagate's drives failed at a rate higher than advertised, higher than the industry standard – they would not have purchased these drives.

**A.     Seagate engaged in a widespread campaign regarding the reliability of its drives, including misleading AFRs.**

Evidence common to the class satisfies the objective test for California consumer protection statutes – whether the reasonable consumer would have been deceived by Seagate's actions – and also for the consumer protection laws of Florida, Massachusetts, New York, Tennessee, South Carolina, South Dakota, and Texas. *See* **Appendix A**.

Seagate made the reliability of its drives a centerpiece of all its marketing campaigns, knowing that consumers would purchase these drives to store photos, movies, music, and documents.

As Seagate was aware, these files carry significant monetary and personal value to consumers. In a press release issued at the time Seagate introduced the drives, Seagate promised consumers that these drives would ensure "every aspect of one's digital life is safe from loss."[9] The press release quoted Scott Horn, Seagate's vice president of marketing, as saying, "Nearly everything that is dear to us is now in a digital format; from tax documents, to emails, to family photos and video, many of these files can not be recreated in the event of an accidental loss of system failure."[10] Seagate's vice president of marketing went on to state that "Seagate is in the business of keeping digital content and files protected in every aspect . . . . Backup Plus is a product that eliminates the barriers to protecting these digital assets."[11]

The technical documents accompanying these drives assured customers of the reliability and security of these drives. Seagate's Storage Solutions Guide informed customers these drives were intended for "Keeping your digital life safe and sound."[12] The same guide promised customers that the drives were the "simple, one-click way to protect and share your entire digital life."[13] Storage Solutions Guides throughout the class period contained essentially the same representations.[14] Data sheets for these drives promised consumers that these drives were for consumers "who want to protect their entire digital life locally."[15] Ironically, Seagate told its customers to "[k]eep multiple copies of your files in case disaster strikes"[16] – nowhere did Seagate disclose that its own drives were most likely to result in disastrous failure.

---

[9] Ex. 1.

[10] *Id.*

[11] *Id.*

[12] Ex. 2 at 2 (2012 version of Seagate's Storage Solutions Guide describing Backup Plus Desktop and Backup Plus Desktop for Mac drives); Hospodor Decl. ¶ 16 (confirming the informal names of drives falling under the model ST3000DM001).

[13] Ex. 2 at 3.

[14] *See, e.g.*, Ex. 3 at 2, 6 (2013 version of Storage Solutions Guide).

[15] Ex. 4 at 1 (2012 Data Sheet for BackUp Plus Desk drive); *see also* Ex. 5 at 1 (2013 Data Sheet for BackUp Plus Desk drive); Ex. 6 at 1 (2014 Data Sheet for BackUp Plus Desk drive); Ex. 7 at 1 (2015 Data Sheet for BackUp Plus Desk drive).

[16] Ex. 4 at 1 (2012 Data Sheet for BackUp Plus Desk).

The boxes for the drives themselves contained the same message that consumers should trust Seagate to back-up their "irreplaceable memories." For example, plaintiff Christopher Nelson's 2012 box for his failed the Backup Plus drive promised:[17]



Seagate's package guidelines show this same representation on all packages.[18]

And of course, a critical part of Seagate's advertising campaigns was its reliance on annualized failure rates (AFRs). AFRs are the projected percentage of drives of a particular model that will fail in a given year. Hospodor Decl. ¶ 27. AFRs are calculated by conducting accelerated life testing (running large populations of drives 24 hours per day and 7 days per week for at least 30 days, to predict failures over the designated lifetime of a disk drive – typically five years). *Id.* ¶ 34.

Seagate well understood that consumers would interpret these AFR statements to mean that these drives were "reliable" and of "high quality." When asked whether "AFR is listed under reliability because it could indicate how reliable a particular product is," Seagate's vice president of global marketing, Jeffrey Fochtman, testified that that "Seems like it would be one indication of that. Yes."[19] When asked about his and consumers' understanding of the term "reliability," Mr. Fochtman testified that reliability "comes with the term 'high quality.'" or "[m]ade of good components, thoughtfully put together, tested."[20]

Seagate advertised its AFRs ubiquitously. These drives were first released around April 2011. Hospodor Decl. ¶ 44. From the time they were released, Seagate advertised the AFR as <1%, 0.34%, or both. *Id.* ¶ 45. The product manual, always available on Seagate's website, stated that these drives

---

[17] Ex. 8 at PLTFS_000110.

[18] Ex. 9 at 6, 10, 19, 22 (Seagate's package guidelines).

[19] Ex. 10 (Fochtman Dep.) at 62:3-8.

[20] *Id.* at 130:2-11.

had an AFR of 0.34%. *Id.* ¶¶ 46-49. From April 2012 to at least January 2013, Seagate modified its website to reflect an AFR of "0.34%, <1%." *Id.* ¶ 50. By November 2011, Seagate released a Data Sheet for the drives (downloadable on its website) which also listed the AFR as <1%. *Id.* ¶¶ 51-53. Throughout the class period, Seagate advertised failure rates of <1% on its Storage Solutions Guides, its website, and its data sheets.[21] And there was good reason that Seagate relied so heavily on this <1% number – it was industry standard. A storage device with an AFR greater than 1% would be undesirable because of its unreliability. Customers care about data, and an AFR greater than 1% represents an increased opportunity for data loss, when compared with Seagate's competitors. Hospodor Decl. ¶¶ 88-89.

Seagate was aware that its Storage Solutions Guide was reviewed and relied upon by customers. Mary Shartle, a marketing communications manager of Seagate, writes, "The Storage Solutions Guide is a valuable tool that is frequently downloaded and referenced. It has not been updated since October and many of us are fielding requests for an updated guide. I need your help in order to ensure that we're communicating accurate information to our customers."[22] Accompanying this email is the Storage Solutions Guide for October 2013 and it contains the AFR for the Barracuda drives as "<1%AFR."[23]

---

[21] *See, e.g.*, Ex. 11 at FED-SEAG0015568 (2011 Barracuda Data Sheet); Hospodor Decl. ¶¶ 44-58 (citing Defendant documents, manuals, and website publications); Ex. 10 (Fochtman Dep.) at 34:14-35:2 (acknowledging AMER is abbreviation for Americas, and that at some points there have been different versions of advertising material by region, not within a region, and identifying Exhibit 3); Ex. 12 (May 2012 Storage Solutions Guide listing AFR of less than 1% for the Barracuda Drive); Ex. 13 (Desktop HDD 2012 data sheet where "best-fit" applications include "Desktop RAID" and an AFR rate for ST3000DM001 models as <1%); Ex. 14 (April 26, 2012 website screenshot advertising the Barracuda of having an AFR of "0.34% <1%"); Ex. 15 (Barracuda Data Sheet where "best-fit" applications include "Desktop RAID" and an AFR rate for ST3000DM001 models as <1%); Ex. 17 at 17 (Storage Solutions Guide stating AFR for Barracuda models is <1%); Ex. 17 at 9 (Barracuda Product Manual stating AFR of <1% for ST3000DM001 models); Ex. 18 (January 2015 product manual stating AFR of <1%); Ex. 19 (September 2015 product manual stating AFR of <1% for ST3000DM001); Ex. 2 (July 2012 Storage Solutions Guide providing AFR of <1% for Barracuda drives).

[22] Ex. 20 at FED_SEAG0004783.

[23] *Id.* at FED_SEAG0004802.

**B.     Evidence common to the class demonstrates that Seagate was aware its drives were not reliable and experienced high failure rates.**

At no point in time did Seagate disclose that these drives had AFRs far below the industry standard – and Seagate's advertised standard. Evidence common to the class demonstrates that internally, Seagate was aware that its drives fell far below its advertised and industry standards. At the time of shipment, Seagate internally estimated that the true AFR was actually 7.006%, **20 times greater** than the advertised rate. Hospodor Decl. ¶ 65. Even after its projected corrective actions, Seagate's own documents show that the drives' AFR was predicted to be 2.35% – **7 times greater** than the 0.34% being advertised to consumers at the time. *Id.* At the release of one iteration of this drive (the GrenadaBP), failure rates were **8.65 times higher** than the advertised 0.34%. *Id.* ¶ 83. As the drive stayed on the market, Seagate measured actual AFRs of 3.436% (**10.10 times higher** than the advertised rate). *Id.* ¶¶ 83-84.

Seagate's own Senior Director of Analysis and Solutions Engineering admitted that at the time of his email (October 2012), the Grenada drives were "not very stable right now." *Id.* ¶ 135.[24] Seagate knew its drives were unstable, defective, and were released prematurely. Internal documents detail low factory yields, large numbers of engineering and firmware changes, repeated shipping holds, "particulate contamination," "head instability," and firmware issues. Hospodor Decl. ¶¶ 118-169, 193.

Although Seagate never disclosed these problems to consumers, sophisticated original equipment manufacturers (OEMs) – the companies putting these drives in personal computers and selling them to consumers – noticed the consequences: high failure and return rates. Three of the largest OEMs in the industry – ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ ██ ████████████████████████████████████

████████████████████████████████████████████████████

---

[24] *See also* Ex. 21.

[25] *See also* Ex. 22 at FED_SEAG00057215; Ex. 23 at FED_SEAG0002674.

█████████████████████████████████████████████. Hospodor Decl.

¶ 176.[26] The ST3000DM001 drives in the distribution channel suffered from the same high failure rates and contamination as the recalled Apple drives and the drives sold to other OEMs, and yet – despite internally considering offering free data recovery to nearly a million consumers with drives in warranty – Seagate never instituted any such plan, never informed its customers of the problem, and never issued any recall of the failing drives. Hospodor Decl. ¶¶ 191-193.

Third parties also confirmed the high AFRs of Seagate's drives. In 2015, Backblaze published a report concluding that the overall failure rate of the drives was 28.46%. *Id.* ¶ 104. Seagate internally commented that the failure rates being measured by Backblaze were "astounding."[27]

Seagate also marketed the drive as "best-fit" and "perfect" for desktop RAID. *Id.* Desktop RAID is, at bottom, a collection of hard drives that are placed in an enclosure that utilizes a RAID controller to enhance reliability and availability of user data. Hospodor Decl. ¶ 208. However, given the high failure rates, these drives were unreliable and unstable – unsuitable for use in RAID. *Id.* ¶ 207. Seagate admitted as much when it told a customer that if the drives were used in a RAID-5 configuration (using three or more drives), "you can expect to deal with RAID failures." *Id.* ¶ 210.[28] This is the closest Seagate ever came to "publicly" disclosing that the drives suffered from higher than normal failure rates and were not suitable for desktop RAID. In fact, defendant deliberately did not inform customer service agents (those whose role it is to interact with th end consumers) of the acknowledged problems with the drives, at least the Grenada vintage of the drives.[29]

The AFR and suitability of the drives is particularly significant to consumers. One of plaintiffs' experts, Stefan Boedeker, conducted a thorough conjoint survey and employed an attribute utility analysis to establish that the AFR "is by far the most important attribute" that consumers consider. Boedeker Decl. ¶ 145. Mr. Boedeker is a statistician and economist who has extensive

---

[26] *See also* Ex. 24 at FED_SEAG00024763.
[27] Ex. 25.
[28] *See also* Ex. 26 at FED_SEAG00054830.
[29] Ex. 27 (Clark Dep.) at 157:9-12, 161:1-163:20.

experience designing and conducting surveys and empirical studies. *Id.* ¶ 4. Based on his survey and analysis, he will be able to demonstrate that "the removal of the attributes represented by the claims [of <1% AFR and suitability for RAID] will have turned the product into a bad for the marginal consumer" such that Seagate would have to market the drives at a "much lower price to achieve the same market share." *Id.* ¶ 141.

## IV.    ARGUMENT

This Court must conduct a "rigorous analysis" to determine whether plaintiffs satisfy Rule 23.[30] As the Supreme Court explained, however, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[31]

Here, plaintiffs can satisfy each of the elements of Rule 23 using evidence common to the class. As with most advertising cases, the heart of the evidence is what statements Seagate made to the class, what Seagate failed to disclose to the class, and whether its nondisclosures were material to the reasonable person. Were each class member to proceed to trial against Seagate, each class member would use the same evidence. Given this, plaintiffs request that this Court certify the class and allow consumers to litigate their claims as a class, rather than individually.

**A.    Plaintiffs have satisfied all the requirements of Rule 23(a).**

The proposed classes satisfy Rule 23(a). Rule 23(a) requires (1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the interests of the class.[32]

### 1.    The class is so numerous that joinder would be impracticable.

Numerosity is easily met here, as is required by Rule 23(a)(1). Numerosity does not require a minimum number of class members, though joinder is often presumed impracticable when a class

---

[30] *Zinser v. Accuflex Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); Fed. R. Civ. P. 23(b).

[31] *Amgen Inc.*, 568 U.S. at 466; *see also Costco Wholesale Corp.*, 657 F.3d at 983 n.8.

[32] Fed. R. Civ. P 23(a).

exceeds forty members.[33] Here, according to Defendant's own admission, there are thousands of class members in the U.S. who purchased the ST3000DM001 drives.[34]

### 2. Questions of law and fact are common to the class.

Commonality is met when the "claims asserted by the proposed classes turn on a number of common and central questions that are likely to give rise to common answers. . . ."[35] In other words, the common contention "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, classwide proof."[36] Additionally, all that is required is a common question of law *or* fact: "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."[37] "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)[.]"[38]

Commonality is met here by common questions of law as well as common questions of fact, including:

- Whether Seagate's failure to disclose the unreliability of its drives was fraudulent, deceptive, and unfair;

- Whether the average consumer was likely to be misled by Seagate's omissions about the drives' reliability and suitability;

- Whether Seagate's omissions would have caused plaintiffs and the class to act differently and not purchase the drives; and

- Whether plaintiffs and the class have sustained damages and/or are entitled to restitution as a result of defendant's omissions.

These common questions satisfy Rule 23(a)(2).

---

[33] *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citing cases).

[34] Ex. 28 at 6 (Table 1, "U.S. Net Unit Sales of Drives").

[35] *Senne v. Kan. City Royals Baseball Corp.*, 2017 WL 897338, at *28 (N.D. Cal. Mar. 7, 2017).

[36] *Nguyen v. Wells Fargo Bank, N.A.*, 2017 WL 4224930, at * 6 (N.D. Cal. Sept. 22, 2017) (quoting *Tyson Foods, Inc. v. Bouaphaeko*, -- U.S. ----, 136 S. Ct. 1036, 1045 (2016)) (internal quotation omitted).

[37] *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)) (alteration in original).

[38] *Hanlon.*, 150 F.3d at 1090.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   **3.      Class representatives' claims are typical of the class's claims.**

   As required by Rule 23(a)(3), the named plaintiffs' claims are typical of those of the class. "'Under [Rule 23's] permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"[39]

   Seagate knew the ST3000DM001 had a higher-than-advertised failure rate, was unsuitable for RAID, and was unreliable by industry standards. Seagate failed to disclose these material facts to the plaintiffs and to the entire class, and it cannot be disputed that plaintiffs' omissions claims are typical of those of the class. Moreover, plaintiffs were subject to the same publicly available advertising statements and omissions with respect to the AFR and as to the suitability of the drives as was the rest of the class. Plaintiffs testified to their similar experience of failures of the ST3000DM001 drives and their reliance on defendant's AFR and RAID representations of the drives and lack of correction by Seagate. Plaintiff Crawford testified that prior to purchase he reviewed Seagate's website and saw the ST3000DM001 drive was "suitable for all scenarios, including RAID."[40] Plaintiff Dortch testified that he saw and relied on Seagate's statements on the drives' data sheet that it was suitable for RAID and NAS.[41] Plaintiff Enders testified he reviewed the data sheet from Seagate's website, as well, including the AFR rate,[42] and plaintiff Schechner testified that the Barracuda data sheet he relied on prior to purchase was on Seagate's website, and "[t]he annualized failure rate was listed less than 1 percent power on hours 2,400."[43] Plaintiff Hagey testified that he also reviewed the data sheet and "considered the AFR rate to be material because it pertained to the internal Barracuda's reliability and longevity" and specifically meant that the drive would be reliable and have a long life.[44] He also relied on the data sheet statements that it was suitable for RAID, which to him also indicated reliability, as "a drive suitable for RAID would be just as suitable for

---

[39] *Nguyen*, 2017 WL 4224930, at *10 (citing *Hanlon*, 150 F.3d at 1020).

[40] Ex. 29 (Crawford Dep.) at 59:6-11.

[41] Ex. 30 (Dortch Dep.) at 95:12-98:3.

[42] Ex. 31 (Enders Dep.) at 109:20-110:14, 126:11-13.

[43] Ex. 32 (Schechner Dep.) at 104:10-17, 106:7-12, 145:19-24.

[44] Ex. 33 (Hagey Dep.) at 56:5-57:22.

single-drive storage."[45] Plaintiff Manak relied on Seagate's statements about the drives from the data sheet available on Seagate's website, including suitability, because he intended to use the drives in a RAID array, and "relied on their very, very low AFR which would mean it was very unlikely that I would suffer any data loss."[46] Similarly, plaintiff Nelson also relied on the public marketing efforts by Seagate that were available on Seagate's website and understood that suitability for RAID "indicated that the hard drive was -- would be good for use in a high-reliability situation."[47]

Plaintiffs relied on the same publicly available documents as the rest of the class members would have, such as the Storage Solutions Guide, which Seagate acknowledges is a "valuable tool that is frequently downloaded and referenced" by customers and potential customer, and statements made to consumers by Seagate agents.[48] Seagate's marketing materials did not vary state by state.[49] Seagate's advertising scheme and lack of true disclosures is the cornerstone of the analysis, not whether class members and named plaintiffs purchased the exact same product (which they did, all model ST3000DM001 drives) for the same price.[50] Typicality is met.

### 4. The class representatives will adequately represent the class.

Rule 23(a)(4) requires the class representatives "fairly and adequately protect the interests of the class." This Court looks at: (1) whether the named plaintiffs have "any conflicts of interest with other class members"; and (2) whether the named plaintiffs will "act vigorously on behalf of the

---

[45] *Id.* at 76:1-17; 77:17-24.

[46] Ex. 34 (Manak Dep.) at 135:17-136:10.

[47] Ex. 35 (Nelson Dep.) at 15:9-25, 131:23-133:16.

[48] Ex. 20 (defendant acknowledges the Storage Solutions Guide is a "valuable tool that is frequently downloaded and referenced" by customers and potential customers, and that the Storage Solutions Guide attached therein includes AFR for the Drive as <1%); Ex. 36 (online chat during week of May 16, 2015, between defendant agent and customer, where defendant, when specifically asked, fails to disclose that the drives have a high failure rate).

[49] Ex. 10 (Fochtman Dep.) at 34:14-35:2 (acknowledging AMER is abbreviation for Americas).

[50] *See Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) (citing cases) (stating in antitrust context that typicality is met by allegations of defendants' conspiracy that led to higher prices, not whether the plaintiffs and class members purchased same product or paid same price).

class."[51] Here, no conflict of interest exists. Plaintiffs and class members share the same interest in proving and recovering the damages caused by defendant's failure to disclose the true (lack of) reliability of the drives. Plaintiffs have actively served the class thus far, including responding to multiple discovery requests, producing documents, and sitting for traveling multiple days to attend their depositions.[52] Plaintiffs have demonstrated they will represent the class fairly and adequately, thereby satisfying the last of the Rule 23(a) requirements.

**B.    The class satisfies the Rule 23(b)(3) predominance and superiority requirements.**

Rule 23(b)(3) allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."[53] Moreover, predominance of common issues does not require that common questions completely dispose of the litigation.[54] Instead, when common questions present a significant aspect of the case such that "the plaintiffs' claims will prevail or fail in unison," handling the dispute on a class basis is justified.[55] And as cautioned by the Supreme Court, plaintiffs are not required to demonstrate that they win on every issue at this stage; only that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[56]

**1.    Nationwide application of California law is appropriate.**

The application of California law nationwide is a predominating question of law and fact. Federal courts apply the forum states' choice-of-law rules to state law issues.[57] Here, Seagate's

---

[51] *Calvert v. Red Robin Int'l, Inc.*, 2012 WL 1668980, at *2 (N.D. Cal. May 11, 2012) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Any question as to the adequacy of counsel is now addressed under Rule 23(g).

[52] Berman Decl. ¶ 2.

[53] Fed. R. Civ. P. 23(b)(3).

[54] *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

[55] *Abdullah v. U.S. Sec. Assocs. Inc.*, 731 F.3d 952, 967 (9th Cir. 2013) (quoting *Amgen Inc.*, 568 U.S. at 460).

[56] *Amgen Inc.*, 568 U.S. at 459.

[57] *Opperman v. Path, Inc.*, 2016 WL 3844326, at *6-*7 (N.D. Cal. July 15, 2016) (stating courts must apply "the forum state's choice of law rules to determine the controlling substantive law" and applying California's governmental interest test).

significant contacts to the state of California makes the application of California law constitutional,

and California's "governmental interest analysis" test warrants the application of California law.

### a. Seagate's headquarters in California, and its other contacts to this state, make the application of California law constitutional.

As required by the Supreme Court in *Phillips Petroleum Co. v. Shutts*, Seagate has a

"significant contact or significant aggregation of contacts" such that California has "state interests"

sufficient to ensure that the choice of its law is "not arbitrary or unfair."[58] As the California Supreme

Court has explained, there is no true conflict where a foreign jurisdiction's tort law is intended to

limit the liability of the defendant, but where the action is brought by a foreign plaintiff against a

California resident.[59]

There can be no claim of unfairness here, where California is the site of Seagate's

headquarters[60] as well as the state of residence of many of the end-users of its products, including

named plaintiff Joshuah Enders.[61] California is where Seagate's marketing team created and

distributed materials that omitted the true AFR and suitability of the drives for RAID.[62] California is

where Seagate's sales force is located.[63] California is where at least some of the manufacturing,

testing, and shipping of the drives occurred.[64] Seagate's branding team, the consumer solutions team,

---

[58] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

[59] *Hurtado v. Super. Ct.*, 522 P.2d 666, 670 (Cal. 1974) (holding that where a foreign state's law limited liability of defendant, the foreign state's interest would not be impaired by application of California law with no limitation of liability to California defendant).

[60] Ex. 10 (Fochtman Dep.) at 89:13-16; Ex. 39 (Schwartz Dep.) at 8:13-14.

[61] Ex. 31 (Enders Dep.) at 90:81:8.

[62] Ex. 38 (Sr. Director Americas Sales & Marketing – Branded Solutions to all authorized distributors on letter head from Cupertino, CA); Ex. 39 (VP, Sales, Marketing and Sales Operations notice to Authorized Distributors regarding warranty changes to certain drives, showing letter head as located in Cupertino, CA); Ex. 40 at 3 (Seagate presentation highlighting Cupertino, CA as source of products); Ex. 41 (Marketing Bulletin for Barracuda Hard Drives listing Cupertino, CA as Defendant's location for Americas).

[63] Ex. 42 (reflecting Senior Director, Global Channel Sales location of Cupertino, CA); Ex. 43 (reflecting Sales and Partner Training Manager location as Cupertino, CA); Ex. 44 (reflecting Vice President, Consumer Advocacy location as Cupertino, CA).

[64] Ex. 45 at 19-20, 24 (shipping and testing to Cupertino, CA); Ex. 47 (reflecting shipment of units to Cupertino, CA for testing and stating more to follow); Ex. 48 (Declaration of Conformity for

and the design of external hard drives are located in California.[65] California is where the corporate quality department is based.[66] Executives that run Seagate's customer service branch are located in California.[67] Seagate's finance and product line management for the drives, which is responsible for any changes to the warranty, is located in California.[68] Seagate's North American distribution center is located in California.[69] Class members returned defective drives to Seagate's California distribution center.[70] Defendant must have expected to fall under the laws of California. Indeed, many of Seagate's public documents that are geared towards consumers and third parties state that the laws of California apply, including the limited warranty for multiple retail products.[71] The record leaves no doubt that major components of the alleged conduct that forms the basis of plaintiffs' claims took place in California. If the Due Process Clause is satisfied, "the Court presumes that such law applies to the claims of the nation-wide class unless Defendants meet the 'substantial burden' of showing that foreign law, rather than California law, applies."[72]

> **b.    California "governmental interest analysis" dictates California law applies.**

If this Court does apply California's governmental interest test, the test is three steps: (1) whether the law in each of the potentially affected jurisdictions is the same or different; (2) if it is different, the jurisdictions' interests must be examined to determine if there is a true conflict; and (3)

---

Backup Plus drive listing Cupertino, CA as manufacturer's address and place of issue); Ex. 49 (internal Seagate presentation referencing testing completed in and needing to occur from Cupertino, CA); Ex. 50 (reflecting Retail Test Validation personnel located in Cupertino, CA).

[65] Ex. 27 (Clark Dep.) at 71:21-72:6.

[66] Ex. 37 (Schwartz Dep.) at 23:2-9.

[67] *Id.* at 50:23-51:10.

[68] *Id.* at 62:2-22.

[69] Ex. 27 (Clark Dep.) at 22:7-12, 29:11-30:13.

[70] *Id.* at 23:21-24:2, 36:24-37:4.

[71] Ex. 50 (document describing limited warranty for retail products states "the Laws of the State of California, USA, govern this limited warranty"); Ex. 51 (loan agreement between third party and Seagate provides the "laws of the State of California and the United States of America, without regard to conflict of law principles" applies).

[72] *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010); *see also Pecover v. Elec. Arts Inc.*, No. C08-2820 VRW, 2010 WL 8742757, at *17 (N.D. Cal. Dec. 21, 2010) (citing *Wash. Mut. Bank v. Super. Ct.*, 15 P.3d 1071 (Cal. 2001)).

1    if there is a true conflict, the court must carefully evaluate and compare the nature and strength of the

2    interest of each jurisdiction to determine which state's interest would be more impaired if its policy

3    were subordinated to the policy of the other state.[73] Under this analysis, thoroughly reasoned district

4    court decisions have selected California's UCL, FAL, and CLRA as the appropriate choice of law for

5    nationwide classes.[74]

6            As to the first prong, plaintiffs concede that material differences exist between the state laws

7    such that they would have a significant effect on the outcome of the litigation or "significantly alter

8    the central issue or the manner of proof in this case."[75]

9            Turning to the second prong, however, looking at the jurisdictions' interests, defendant will

10   be unable to meet its burden of showing that a true conflict exists. A "true conflict" exists only where

11   an interest of the chose state conflicts with that of another state.[76] The California Supreme Court has

12   held that "[a]lthough the two potentially concerned states have different laws, there is still no

13   problem in choosing the applicable rule of law where only one of the states has an interest in having

14   its law applied."[77] There are three distinct interests generally applicable in any conflict-of-law

15   analysis: (1) compensation for victims, (2) deterrence of conduct, and (3) limitation, or lack thereof,

16   upon the damages recoverable.[78] Each of these three interests is primarily local in character.[79]

17   _____

18       [73] *McCann v. Foster Wheeler LLC*, 223 P.3d 516, 527 (Cal. 2010).

19       [74] *Keilholtz*, 268 F.R.D. 330 (certified nationwide class of consumers pursuing CLRA, UCL, and
     unjust enrichment claims based on misrepresentations and omissions in the sale of glass-enclosed
20   fireplaces that caused burns); *Menagerie Prods. v. Citysearch*, 2009 WL 3770668 (C.D. Cal. Nov. 9,
     2009) (certifying nationwide class of UCL and breach of contract claims against defendant for click
21   fraud); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (certifying
     nationwide class of car owners pursuing UCL and CLRA claims based on defective car system); *In
22   re First Alliance Mortg. Co.*, 269 B.R. 428 (C.D. Cal. 2001) (certifying nationwide class of
     borrowers pursuing UCL claims based on fraudulent lending); *Wershba v. Apple Comput., Inc.*, 110
23   Cal. Rptr. 2d 145 (Cal. Ct. App. 2001) (certifying nationwide settlement class pursuing UCL, FAL,
     and breach of contract claims).
24
         [75] *Keilholtz*, 268 F.R.D. at 341.
25
         [76] *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 923 (Cal. 2006).
26
         [77] *Hurtado*, 522 P.2d at 670.
27
         [78] *Id.* at 672. Although the California Supreme Court has enumerated these three interests in the
28   context of wrongful death actions (*see id.*), such broad interests apply across most areas of law. *See,
     e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 6327490, at *2–*6 (N.D. Cal. Dec. 3,

1      Here the California's CLRA, UCL, and FAL allow class members to pursue restitution,

2   demonstrating an interest in compensation for victims. Other states with heightened levels of

3   scienter, or who deny causes of actions to consumers altogether, are expressing their interest in

4   limiting the recovery available to consumers. But the California Supreme Court has expressly held

5   that a state's "interest in limiting the amount of recovery . . . is directed at resident defendants not

6   resident plaintiffs."[80] This is because limiting recovery protects a defendant's financial security.[81]

7   But this is a single-defendant case, where Seagate is headquartered and based in California. No other

8   state has an interest in limiting the liability of this defendant other than California, and thus, no "true

9   conflict" exists.

10     Finally, the third prong of California's governmental interest test, where the Court must

11  compare the nature and strength of the interest of each jurisdiction in the application of its own law

12  to determine which state's interest would be more impaired if its policy were subordinated to the

13  policy of the other state, weighs in favor of applying California law.[82] "California recognizes that

14  'with respect to regulating or affecting conduct within its borders, the place of the wrong has the

15  predominant interest[,]'"[83] which here is the state of California, from where the advertising scheme,

16  including the notable omissions, emanated. Additionally, the foreign states have an interest in

---

2013) (applying factors in price fixing class action). In some cases, more specific state interests have been identified, but Seagate has failed to carry its burden and identify any such interests here. *See Wash. Mut. Bank*, 15 P.3d at 1082.

[79] *Hurtado*, 522 P.2d at 672.

[80] *Id.* at 674.

[81] *Id.* at 673.

[82] *McCann*, 225 P.3d at 521; *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012) ("[I]f the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.").

[83] *Mazza*, 666 F.3d at 593 (citing *Hernandez v. Burger*, 162 Cal. Rptr. 564, 568 (Cal. Ct. App. 1980)).

1    allowing the consumer protection claims to proceed under California law, as opposed to not

2    proceeding at all.[84]

### 2. In the alternative, plaintiffs request certification of classes under eight states' consumer protection laws.

Should the Court decline to certify a nationwide class under California's laws, certification of eight state classes (California, Florida, Massachusetts, New York, South Carolina, South Dakota, Tennessee, and Texas) under each state's consumer protection laws is appropriate. As demonstrated in **Appendix A**, the elements of each of these jurisdiction's laws are similar and a trial with these common claims would be manageable based on the same common evidence.

### 3. Plaintiffs will use common evidence to support their claims, regardless of whether a nationwide class or state classes are certified.

Here, common evidence will be used to support the nationwide class claims under California law, and the state class claims in the alternative. As the Ninth Circuit held in *Williams v. Gerber Products Co.*, "the primary evidence in a false advertising case is the advertising itself."[85] Whether Seagate failed to disclose the lack of reliability of its drives, and whether this omission was material to the average consumers, are common questions subject to common proof.

For the UCL, FAL, and CLRA, "[t]he standard for all three statutes is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue."[86] This is an objective test subject to common proof, as the same representations were made to all consumers.[87] Additionally, Seagate's intent to deceive or knowledge of the misleading nature of the omissions is irrelevant under the UCL

---

[84] *In re Seagate Technologies Secs. Litig.*, 115 F.R.D 264, 271 (N.D. Cal. 1987) (finding no conflict where class action implicated twenty-two different state laws and that there was predominance).

[85] *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

[86] *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132 (N.D. Cal. 2013) (citing *Williams*, 552 F.3d at 938). *See also Beck-Ellman v. Kaz USA, Inc*., 283 F.R.D. 558, 568 (S.D. Cal. 2012) (citation omitted) ("California consumer protection laws take an objective approach to the reasonable consumer, not the particular consumer.").

[87] *Plascencia v. Lending 1st Mortg.*, 259 F.R.D 437, 448 (N.D. Cal. 2009) ("Plaintiffs may prove with generalized evidence that Defendants' conduct was 'likely to deceive' members of the public.").

1    and CLRA.[88] To the extent it is needed for the FAL, plaintiffs meet this requirement by common

2    evidence establishing that Seagate knew the AFR was higher than <1%, and that it intentionally

3    failed to disclose the true rate.[89] While the CLRA requires that each class member sustain actual

4    injury stemming from defendant's unlawful practice, this may be presumed on a class-wide basis

5    where the misrepresentation was material.[90] This rule also applies to omissions cases,[91] and is

6    satisfied by a showing that plaintiffs would not have purchased the drives had they known the truth

7    of Seagate's omissions.[92] Bodeker Decl. ¶¶ 141-145. Similarly, each of the eight states whose

8    residents make up the proposed state classes similarly prohibit unfair and deceptive trade practices,

9    and do not require proof of intent or individual reliance. *See* **Appendix A**.

10        a.    **Evidence, common to the class, supports plaintiffs' claims of Seagate's
              failure to disclose the true unreliability of its drives.**

11

12        Under the fraudulent prong of the UCL, plaintiffs must only demonstrate that members of the

13    public are likely to be deceived.[93] Under the CLRA, plaintiffs may bring a claim for failure to

14    disclose under four circumstances, three of which are relevant here: "(2) when the defendant had

---

15    [88] *Corbett v. Super. Ct.*, 125 Cal. Rptr. 2d 46, 71 (Cal. Ct. App. 2002) (citing *Chern v. Bank of
16    Am.*, 544 P.2d 1310 (Cal. 1976) (intent not required under UCL); *Chamberlan v. Ford Motor Co.*,
17    369 F. Supp. 2d 1138,1144 (disagreeing with defendant's argument that plaintiff must prove duty
      and intentional breach for CLRA claim).

      [89] *See* section III.B, *supra*.

18
19    [90] *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) (quoting *Mass. Mut. Life Ins.
      Co. v. Super. Ct.*, 119 Cal. Rptr. 2d 190, 196-97 (Cal. Ct. App. 2002)).

20    [91] *Mass. Mut. Life Ins. Co.*, 119 Cal. Rptr. 2d at 197 (materiality for omissions can be determined
21    by evidence of "acts thereafter [that] were consistent with reliance," such as purchasing the
      misrepresented product) (citing *Occidental Land, Inc. v. Super. Ct.*, 134 Cal. Rptr. 388, 392 (Cal.
      1976)).

22    [92] *In Re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011) (stating reliance
23    required when claims for UCL and FAL are based on fraudulent or unlawful conduct, and can be
      established by pleading that plaintiffs would not have purchased but for the omissions).

24    [93] *Blakemore v. Super. Ct.*, 28 Cal. Rptr. 3d 877, 887 (Cal. Ct. App. 2005). Under the unlawful
25    prong, each of Seagate's violations are also a violation of the UCL. And under the "unfair" prong,
      plaintiffs need only demonstrate that Seagate's actions are "immoral, unethical, oppressive,
26    unscrupulous or substantially injurious to consumers," and the "gravity of the harm to the victim
      outweighs the utility of the defendant's conduct." *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d
27    634, 642-43 (Cal. Ct. App. 2006) (citation omitted). The evidence described applies equally to all
      three prongs of the UCL.

28

exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations

but also suppresses some material facts."[94] (These are frequently referred to as the *Judkins* factors.)

Under California's FAL, plaintiffs may bring a claim for omissions where "the defendant actually

made a statement, but omitted information that undercuts the veracity of the statement."[95]

As explained above (*see* section III.A), Seagate engaged in a widespread campaign regarding

the reliability of its drives, its AFRs, and the suitability of its drives for RAID arrays. Seagate alone

knew that its drives were experiencing failure rates far above the industry standard, and far above its

advertised rates. Seagate never disclosed the extent of its drive failure to any class member – and this

information was entirely within its possession.

Moreover, under the UCL, FAL, and CLRA, "[c]ausation, on a classwide basis, may be

established by *materiality*. If the trial court finds that material misrepresentations have been made to

the entire class, an inference of reliance arises as to the class."[96] As plaintiffs' expert, Mr. Boedeker,

testifies, he performed a survey of 2,000 consumers. Using a conjoint analysis, he asked consumers

to rank the importance of certain attributes, including AFR, price, warranty, NAS & RAID, and USB

connectivity. Of these five characteristics, failure rates were by far the most important. Boedeker

Decl. ¶ 145. All of this, if shown to a jury, shows by a preponderance of the evidence that Seagate

failed to disclose, and had a duty to disclose, true information regarding the unreliability of the drives

to the class.

### b.    Plaintiffs propose a class-wide damages methodology that relies on common evidence.

Mr. Boedeker is a renowned and highly qualified statistician and economist who employed a

commonly accepted methodology to evaluate and calculate damages on a class-wide basis. If a jury

were to decide the true failure rates of the Seagate drives was in excess of 10%, the full refund model

---

[94] *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997).

[95] *Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016).

[96] *Ries v. Ariz. Bev. USA LLC*, 287 F.R.D 523, 538 (N.D. Cal. 2012) (internal citation omitted) (emphasis in original).

is most appropriate. Mr. Boedeker applied a form of conjoint analysis known as Choice-Based Conjoint Analysis, where study participants were shown sets of product profiles and were asked to choose the profile they would prefer to purchase if the choice menu offered would describe the only products that were available to them. Boedeker Decl. ¶ 70. This survey method closely mimics real-world purchase processes. *Id*. Conjoint analysis allows for the prediction of the probability that a respondent will choose any product profile that is described, and can do so for any competitive set of products. *Id*. The analysis allows Mr. Boedeker to determine the difference in value (measured in dollars) that customers place on a Seagate drive that claims reliability compared to an otherwise identical Seagate drive that is not as reliable as claimed. *Id*.

At Mr. Boedeker's direction, a third-party survey was performed using a "double-blind," and other methods to ensure the validity of the data. *Id.* ¶ 90. The survey itself asked 2,000 participants to rank the attributes – and the results of this survey reveal that AFR is by far the most important attribute to consumers (followed by price and warranty terms). *Id.* ¶ 104, 145. Mr. Boedeker finds that for failure rates in excess of 10 percent, the economic loss quickly approaches the sales price of the product, making a full refund appropriate. *Id.* ¶ 159. Recently, in *Lambert v. Nutraceutical Corp*., the Ninth Circuit recognized the full refund model of damages, where plaintiffs have offered evidence "that the product has no or only a *de minimis* value" to consumers.[97] Plaintiffs have offered such evidence here – where the true failure rates were above 10%, consumers subscribed no value to these drives. Boedeker Decl. ¶ 159.

Plaintiffs also propose an alternative theory of damages, based on a partial refund. If the jury were to decide that the true failure rates were less than 10% – at 3%, 5%, 8%, or 10%, for example – the economic loss of each class member would be 16.9%, 33.7%, 59.1%, and 75.4% of the sales price of the drive, respectively. *Id.* ¶ 22. Applying these percentages to the median sales price of $89, the economic loss per class member would be $15.04 if the failure rate were 3%, $29.99 if the failure rate were 5%, $52.60 if the failure rate were 8%, and $67.11 if the failure rate were 10%. *Id.*; *see also id.* ¶¶ 148-151.

---

[97] *Lambert v. Nutraceutical Corp*., 870 F.3d 1170, 1183 (9th Cir. 2017).

**4.** **A class action is superior to other forms of adjudication.**

A class action is the superior method for resolving this case. The factors for determining superiority are:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.[98]

"Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."[99] Each of these factors weighs in favor of certifying the nationwide class.

Members of the class do not have a particularly strong interest in controlling prosecution of the case. Because this case involves Seagate's failure to disclose the true AFR and lack of suitability of the drives, many class members were not even aware that they were overcharged or received a product less than what was advertised. Even those who are aware do not have a sufficiently strong interest in controlling the case due to the size, complexity, and cost of pursuing a case like this exceeds the individual claims. Plaintiffs have obtained and reviewed thousands of documents, and employed multiple highly qualified experts to determine liability, causation, and damages theories. Even the most aggrieved class member would not have sufficient damages to justify expending such resources, as the drives cost between $150-$250 each.

Further, there is no other significant litigation concerning Seagate's drives. While a case is pending in California state court, it involves only a California class (not a nationwide class sought here) and a different theory of liability. Plaintiffs have engaged in almost two years' worth of

---

[98] Fed. R. Civ. P. 23(b)(3)(A)-(D).

[99] *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

1    extensive documentary and deposition discovery and have made substantial progress toward bringing

2    this matter to trial.

3         Finally, there are no unusual difficulties in managing this case. Defendant's liability depends

4    on and can be proven with evidence of Seagate's omissions, which is conduct common to the entire

5    class. Moreover, plaintiffs' expert can employ a methodology using techniques commonly relied on

6    by his field to calculate class-wide and individual damages – a methodology already accepted by the

7    Ninth Circuit.[100]

8    **B.     The class is ascertainable.**

9         The class is readily ascertainable. The proposed class of purchasers of the ST3000DM001

10   model is "sufficiently definite so that it is administratively feasible to determine whether a particular

11   person is a class member."[101] Four conditions exist for class membership: (1) residency in the U.S. or

12   one of the eight states; (2) purchase of the ST3000DM001 model hard drives (3) for a consumer's

13   own use, not for resale (4) on or before February 1, 2016. Indeed, retailers will be able to easily

14   identify and provide specific customer (*i.e.*, class member) information when necessary. Best Buy

15   has both provided a declaration stating they have contact information for at least some class

16   members.[102] The proposed class is easily ascertainable.

17   **C.     Proposed class counsel will fairly and adequately represent the class.**

18        Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel who will

19   "fairly and adequately represent the interests of the class."[103] The court evaluates counsel based on

20   (1) their work in identifying and investigating plaintiffs' claims; (2) their experience in similar cases;

21   (3) their knowledge of applicable law; and (4) the resources to commit to prosecuting the action.[104]

22

23

24   [100] *See Lambert*, 870 F.3d at 1183.

25   [101] *Shepard v. Lowe's HIW, Inc.*, 2013 WL 4488802, at *2 (N.D. Cal. Aug. 19, 2013).

     [102] Ex. 52 (Declaration of Derek Noer) ¶ 12.

26   [103] *Hanlon*, 150 F.3d at 1020; *True v. Am. Honda Motor Co.*, 2009 WL 838284, at *5 (C.D. Cal.
27   Mar. 25, 2009).

     [104] Fed. R. Civ. P. 23(g)(1)(A)(i).

28

1      Here, each of these considerations weighs in favor of Hagens Berman Sobol Shapiro LLP and

2 Axler Goldich, LLC as class counsel. Plaintiffs have retained highly capable counsel with extensive

3 experience in successfully prosecuting consumer class actions throughout the United States,

4 including this district.[105] They have demonstrated vigorous and effective prosecution on behalf of the

5 proposed class, including a comprehensive pre-filing investigation, preparing and filing detailed

6 complaints, responding to both Seagate's motion to dismiss and motion for judgment on the

7 pleadings, and retaining multiple experts in support of their claims. Plaintiffs' counsel has litigated

8 this action since its inception and has already committed significant resources to this litigation.

9 Proposed class counsel satisfies the Rule 23(g) factors.

## V.      CONCLUSION

11      Plaintiffs' proposed nationwide class meets the Rule 23 requirements of numerosity (the

12 proposed nationwide class reaches in the thousands), commonality (numerous common questions

13 exist), typicality (Plaintiffs' claims are identical to those of class members), and adequacy (interests

14 are aligned). Plaintiffs have also demonstrated the class is ascertainable, and that common questions

15 and evidence predominate. Class treatment is the superior method for adjudicating the case. Plaintiffs

16 respectfully request the Court certify a nationwide class under California law of purchasers of the

17 drives, or alternatively eight state classes, and appoint Hagens Berman Sobol Shapiro LLP and Axler

18 Goldich, LLC as class counsel.

---

[105] *See* Ex. 53 (Firm Resume of Hagens Berman Sobol Shapiro LLP); Declaration of Marc A. Goldich, Ex. A (Firm Resume of Axler Goldich LLC), filed herewith.

1     DATED: November 8, 2017                    HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                                By:    s/ Steve W. Berman
                                                       STEVE W. BERMAN

4                                                Ashley A. Bede (*pro hac vice*)
                                                 HAGENS BERMAN SOBOL SHAPIRO LLP
5                                                1918 Eighth Avenue, Suite 3300
                                                 Seattle, Washington 98101
6                                                Telephone: (206) 623-7292
                                                 Facsimile: (206) 623-0594
7                                                steve@hbsslaw.com
                                                 ashleyb@hbsslaw.com
8
                                                 Shana E. Scarlett (217895)
9                                                715 Hearst Avenue, Suite 202
                                                 Berkeley, California 94710
10                                               Telephone: (510) 725-3000
                                                 Facsimile: (510) 725-3001
11                                               shanas@hbsslaw.com

12                                               Marc A. Goldich (*pro hac vice*)
                                                 Noah Axler (*pro hac vice*)
13                                               AXLER GOLDICH, LLC
                                                 1520 Locust Street, Suite 301
14                                               Philadelphia, PA 19102
                                                 Telephone: (267) 207-2920
15                                               mgoldich@axgolaw.com
                                                 naxler@axgolaw.com
16
                                                 *Attorneys for Plaintiffs and the Proposed Class*
17

18

19

20

21

22

23

24

25

26

27

28