# EXHIBIT W

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the*
*Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS |
| | PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| | DATE:      March 30, 2018 |
| | TIME:      9:30 a.m. |
| | DEPT:     Hon. Joseph C. Spero |
| |                  Courtroom G, 15th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A & M Records, Inc. v. Napster, Inc.*,
　2000 WL 1170106 (N.D. Cal. Aug. 10, 2000) ...................................................... 15

*Alford Chevrolet-Geo v. Murphy*,
　2002 WL 31398487 (Tex. App. Oct. 25, 2002) .................................................... 12

*Allen v. Hyland's, Inc.*,
　300 F.R.D. 643 (C.D. Cal. 2014) .......................................................................... 11

*Asghari v. Volkswagen Grp. of Am., Inc.*,
　42 F. Supp. 3d 1306 (C.D. Cal. 2013) .................................................................. 13

*Bruno v. Eckhart Corp.*,
　280 F.R.D. 540 (C.D. Cal. 2012) .......................................................................... 11

*Catalano v. BMW of N. Am., LLC*,
　167 F. Supp. 3d 540 (S.D.N.Y. 2016) .................................................................. 12

*Chavez v. Blue Sky Nat. Bev. Co.*,
　268 F.R.D. 365 (N.D. Cal. 2010) ........................................................................... 8

*Cloud Nine, LLC v. Whaley*,
　650 F. Supp. 2d 789 (E.D. Tenn. 2009) ............................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993) ....................................................................................... 14, 15

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
　92 F.3d 1486 (9th Cir.1996) ............................................................................. 3, 11

*Hanlon v. Chrysler Corp*,
　150 F.3d 1011 (9th Cir. 1998) ............................................................................... 8

*Hill v. Novartis Pharm. Corp.*,
　2012 U.S. Dist. LEXIS 38516 (E.D. Cal. Mar. 21, 2012) ............................... 10, 11

*In re Auto. Parts Antitrust Litig.*,
　2013 WL 2456612 (E.D. Mich. June 6, 2013) ..................................................... 14

*In re Broiler Chicken Antitrust Litig.*,
　2017 WL 5574376 (N.D. Ill. Nov. 20, 2017) ...................................................... 13

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
　299 F.R.D. 648 (S.D. Cal. 2014) .......................................................................... 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
 2018 U.S. App. LEXIS 1626 (9th Cir. Jan. 23, 2018)......................................................... 11

*In re MyFord Touch Consumer Litig.*,
 2016 U.S. Dist. LEXIS 179487 (N.D. Cal. Sept. 14, 2016) ............................................. 12, 15

*In re MyFord Touch Consumer Litig.*,
 2018 U.S. Dist. LEXIS 25172 (N.D. Cal. Feb. 14, 2018) ..................................................... 15

*In re Optical Disk Drive Antitrust Litig.*,
 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012)..................................................................... 14

*Mazza v. Am. Honda Motor Co. Inc.*,
 666 F.3d 581 (9th Cir. 2012) ............................................................................ 3, 9, 11

*Nitsch v. Dreamworks Animation SKG Inc.*,
 315 F.R.D. 270 (N.D. Cal. 2016) ..................................................................................... 13

*Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
 840 F.2d 985 (1st Cir. 1988) ........................................................................................... 13

*In re Pizza Time Theatre Secs. Litig.*,
 112 F.R.D. 15 (N.D. Ca1. 1986) ....................................................................................... 10

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ................................................................... 11

*Pulaski & Middleman, LLC v. Google, Inc.*,
 802 F.3d 979 (9th Cir. 2015) ........................................................................................... 14

*In re Seagate Techs. Secs. Litig.*,
 115 F.R.D. 264 (N.D. Cal. 1987) .................................................................................. 1, 11

*In re Takata Airbag Prods. Liab. Litig.*,
 193 F. Supp. 3d 1324 (S.D. Fla. 2016) ............................................................................. 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010).. ....................................................................................................... 13

*Statler v. Dell, Inc.*,
 775 F. Supp. 2d 474 (E.D.N.Y. 2011) ............................................................................... 13

*Stearns v. Ticketmaster Corp.*,
 655 F.3d 1013 (9th Cir. 2011) ......................................................................................... 13

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*,
 2016 WL 158874 (N.D. Cal. Jan. 14, 2016)..................................................................... 15

*V.S.H. Realty, Inc. v. Texaco, Inc.*,
 757 F.2d 411 (1st Cir. 1985) ........................................................................................... 12

*Wendell v. GlaxoSmithKline LLC,*
   858 F.3d 1227 (9th Cir. 2017) ................................................................. 14

*Wershba v. Apple Computer, Inc.,*
   91 Cal. App. 4th 224, 241-44 (2001 .......................................................... 10

**STATE CASES**

*Aryeh v. Canon Bus. Sols., Inc.,*
   292 P.3d 871 (Cal. 2013) .......................................................................... 13

*Collins v. eMachines, Inc.,*
   202 Cal. App. 4th 249 (Nov. 28, 2011) ........................................................ 4

*Davis v. Powertel, Inc.,*
   776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ................................................. 12

*Diamond Multimedia Sys., Inc. v. Super. Ct.,*
   968 P.2d 539 (Cal. 1999) .......................................................................... 10

*Egwuatu v. S. Lubes, Inc.,*
   976 So. 2d 50 (Fla. Dist. Ct. App. 2008) .................................................. 13

*Gutierrez v. CarMax Auto Superstores Cal.,*
   No. F073215, slip. op. (Cal. App. Dep't Super. Ct. Jan. 30, 2018) ......... 2, 3, 6

*I. J. Weinrot & Son, Inc. v. Jackson,*
   708 P.2d 682 (1985) ............................................................................. 9, 10

*Kearney v. Salomon Smith Barney, Inc.,*
   137 P.3d 914 (Cal. 2006) ........................................................................... 9

*McCann v. Foster Wheeler LLC,*
   225 P.3d 516 (Cal. 2010) ........................................................................... 9

*Moss v. Guttormson,*
   551 N.W.2d 14 (S.D. 1996) ...................................................................... 12

*Offshore Rental Co. v. Cont'l Oil Co.,*
   583 P.2d 721 (Cal. 1978) ........................................................................... 9

*Rutledge v. Hewlett-Packard Co.,*
   238 Cal. App. 4th 1164 (July 22, 2015) ............................................... 3, 4, 7

*State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.,*
   869 So. 2d 592 (Fla. Dist. Ct. App. 2004) ................................................ 13

*In re Tobacco II Cases,*
   207 P.3d 20 (Cal. 2009) ............................................................................ 13

*Wash. Mut. Bank v. Super. Ct.*,
    15 P.3d 1071 (Cal. 2001) ........................................................................................8

*Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*,
    777 S.E.2d 176 (S.C. 2015) ...................................................................................12

*Wright v. Craft*,
    640 S.E.2d 486 (Ct. App. 2006) ............................................................................12

## STATE STATUTES

California's False Advertising Law .............................................................................14

S.C. Code Ann. § 39-5-150 ........................................................................................13

S.D. Codified Laws § 37-24-6(1) ...............................................................................12

S.D. Codified Laws § 37-24-33 ..................................................................................13

South Carolina's Unfair Trade Practices Act ..............................................................12

Tenn. Code Ann. § 47-18-110 ....................................................................................13

Tennessee Consumer Protection Act ..........................................................................12

Tex. Bus. & Comm. Code § 17.46(b)(23) ..................................................................12

Tex. Bus. & Com. Code § 17.46(b)(24) .....................................................................13

Tex. Bus. & Comm. Code § 17.565 ...........................................................................13

## FEDERAL RULES

Federal Rules of Evidence 702 ...................................................................................14

Federal Rules of Evidence 802 .....................................................................................9

Federal Rules of Evidence 901 .....................................................................................9

Federal Rule of Civil Procedure 23 ...............................................................2, 8, 13, 14

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................1

II.   ARGUMENT ......................................................................................................................2

    A.    Common Questions of Fact and Law Predominate Sufficient to Satisfy Both Rule 23(a)'s Commonality Test and Rule 23(b)'s Predominance Test ...........................2

        1.    Whether Seagate was obligated to disclose the unreliability of its drives, separate from any misrepresentations, is a question common to the class......2

        2.    The materiality of Seagate's omissions are common to the class, but also a question of fact for the jury. ...................................................................3

        3.    Evidence common to the class demonstrates the unreliability of Seagate's drives. ...............................................................................................5

        4.    As an alternative legal theory, common evidence also shows that Seagate's partial misrepresentations created a duty to disclose the unreliability of its drives...........................................................................6

    B.    The class representatives are typical of consumers. ....................................................7

    C.    Plaintiffs Satisfy the Elements of Rule 23(b) ...........................................................8

        1.    A nationwide class under California law is supported by California's choice of law rules...............................................................................8

        2.    In the alternative, common issues of fact and law predominate for the proposed eight sub-classes. ...................................................................11

    D.    Defendant Seagate's motion to strike the testimony of plaintiffs' experts should be denied................................................................................................14

        1.    Plaintiffs' damages model is admissible and based on an accepted methodology (common to the class), reliably applied to the facts of this case. .................................................................................................14

        2.    Dr. Hospodor's opinions are admissible and common to the class...............15

III.   CONCLUSION ................................................................................................................15

1

**TABLE OF DEFINITIONS**

2

| | |
|---|---|
| Berman I | Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification, ECF No. 136 |
| Berman II | Declaration of Steve W. Berman in Further Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Boedeker I | Corrected Declaration of Stefan Boedeker in Support of Plaintiffs' Motion for Class Certification, ECF No. 131-1 |
| Boedeker II | Declaration of Stefan Boedeker in Further Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Hospodor I | Corrected Declaration of Andrew Hospodor in Support of Plaintiffs' Motion for Class Certification, ECF No. 133-2 |
| Hospodor II | Declaration of Andrew Hospodor in Further Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith |
| Mot. | Plaintiffs' Notice of Motion and Motion for Class Certification, ECF No. 135 |
| MTD Order | Order Granting in Part and Denying in Part Motion to Dismiss Second Consolidated Amended Complaint, ECF No. 100 |
| Opp. | Seagate's Opposition to Plaintiffs' Motion for Class Certification, ECF No. 152 |
| Payne Decl. | Declaration of Lien Payne in Support of Defendant Seagate Technology LLC's Opposition to Plaintiffs' Motion for Class Certification, ECF No. 156-6 |
| SCAC | Second Consolidated Amended Complaint, ECF No. 62 |
| Schweiss Decl. | Declaration of Karl Schweiss in Support of Seagate Technology LLC's Opposition to Plaintiffs' Motion for Class Certification, ECF No. 152-3 |
| Simonson Decl. | Declaration of Itamar Simonson, Ph.D. in Support of Seagate Technology LLC's Opposition to Plaintiffs' Motion for Class Certification, ECF No.156-5 |

# I.     INTRODUCTION

Seagate Technology LLC (Seagate) marketed its ST3000DM001 hard drives to consumers to backup materials essential to modern life – pictures, data, and videos. Consumers bought these drives believing that they were reliable and would not fail prematurely. What Seagate failed to disclose to consumers was that these drives were suffering from failure rates far exceeding its advertisements and far exceeding industry rates. California law – and the laws of all eight states at issue here – confirm that Seagate's failure to disclose this material fact is actionable, and evidence to prove these claims is common to all class members. As plaintiffs' expert, Dr. Boedeker testifies, consumers consider reliability of a hard drive to be one of the most material characteristics. Boedeker I, ¶¶ 101, 145-46. And because the reliability of these drives is something central to the functioning of a hard drive as a hard drive, case law supports the materiality of Seagate's omissions as to the "reasonable consumer" and the entire class. *See* sections II.A.1-2, *infra*.

And although plaintiffs do not need to prove the merits of their claims now, using evidence common to the class, plaintiffs show Seagate's internal knowledge of its drives' unreliability. Dr. Hospodor presents evidence of Seagate's own technical documents demonstrating failure rates far in excess of the advertised rates. Hospodor I, ¶¶ 59-206; Hospodor II, ¶¶ 5-60. Seagate disputes plaintiffs' interpretation of these documents, but even this dispute remains common to the class. Whether Seagate's drives in fact failed at a rate higher than disclosed to the class, higher than the industry average, and higher than expected by consumers, are issues for the jury to decide. *See* section II.A.3, *infra*.

Plaintiffs seek to have a nationwide class certified under California law for purchases of the unreliable ST3000DM001 hard drives. Such a class is not unprecedented – Judge Ingram certified a nationwide class under California's common law of fraud in *In re Seagate Techs. Secs. Litig.*, 115 F.R.D. 264, 270 (N.D. Cal. 1987). The balancing tests have not changed in the interim – California maintains an interest in governing the businesses that operate within its borders. Seagate is headquartered here, maintains a large presence in California, and availed itself of all of the benefits of being a citizen of this state. Given all of these facts, respectfully, plaintiffs request that this Court certify a class of Seagate hard drive purchasers. *See* section II.C, *infra*.

1
2
3
4

## II.    ARGUMENT

Defendants challenge only whether plaintiffs have met the commonality and typicality prongs of Rule 23(a), and the predominance, superiority, and manageability tests of Rule 23(b). Plaintiffs do not address the factors which Seagate concedes have been met.

5
6
7
8
9
10
11
12

### A.    Common Questions of Fact and Law Predominate Sufficient to Satisfy Both Rule 23(a)'s Commonality Test and Rule 23(b)'s Predominance Test

Plaintiffs have presented sufficient facts to show common questions of law and fact predominate for all class members, given the following common questions: (1) whether Seagate was legally obligated to disclose the unreliability of its drives; (2) whether the unreliability of Seagate's drives was material to the reasonable consumer; (3) whether, in addition to failing to disclose a material fact, Seagate also had a duty to disclose because of its campaign of partial misrepresentations related to annualized failure rates (AFRs); and (4) whether Seagate's drives were, in fact, less reliable than advertised and the industry standard.

13
14

### 1.    Whether Seagate was obligated to disclose the unreliability of its drives, separate from any misrepresentations, is a question common to the class.

15
16
17
18
19
20
21

Plaintiffs move to certify a class of purchasers of Seagate drives based on Seagate's failure to disclose the unreliability of its drives. The California Court of Appeals recently confirmed that material omissions are actionable under the CLRA (and UCL).[1] In *Gutierrez v. CarMax*, the Court of Appeals squarely addressed the issue and reaffirmed that liability for omissions exists and is separate from the test for affirmative misrepresentations.[2] Liability for omissions exists in two circumstances relevant here: (1) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (2) when the defendant actively conceals a material fact from the plaintiff.[3]

22
23
24

Under these tests, Seagate is liable to class members for failing to disclose material facts (the unreliability of its drives) not known to plaintiffs when Seagate had exclusive knowledge. Seagate's opposition to class certification fails because it misstates the law. Seagate suggests that consumers

25
26

[1] This Court declined to decide whether an independent duty to disclose existed beyond that which was triggered by the alleged affirmative misrepresentations given that it would not alter the outcome of the motion. MTD Order at 25.

27

[2] *Gutierrez v. CarMax Auto Superstores Cal.*, No. F073215, slip. op. at 29-30 (Cal. App. Dep't Super. Ct. Jan. 30, 2018), http://www.courts.ca.gov/opinions/documents/F073215.PDF.

28

[3] *Id.*

1    can only recover for a company's failure to disclose a fact if they saw and viewed a misleading

2    advertising. Opp. at 10. That is, Seagate mistakenly believes that the test for omissions is co-

3    extensive with the test for false and misleading advertising. But this is not the law. The long-standing

4    rule in California, confirmed most recently in *Gutierrez*, is that defendants may be liable for omitting

5    to state a material fact even where no partial misrepresentation is made. To the extent that defendants

6    cite the Ninth Circuit's opinion in *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581 (9th Cir. 2012),

7    to suggest otherwise, a federal court cannot overrule the substantive law of a state court.[4]

8         **2.    The materiality of Seagate's omissions is common to the class, and a question of fact for the jury.**

9

10         As courts have held time and again, the test for materiality is an objective one – whether "a

11    reasonable consumer would deem it important in determining how to act in the transaction at issue."[5]

12    Materiality is a question of fact, reserved for a jury, and only in certain cases, can a court determine

13    that an omission "is so obviously unimportant that the jury could not reasonably find that a

14    reasonable person would have been influence[d] by it."[6] But this is not such a case.

15         California courts have held, in analogous cases to this one, that where an omission or defect

16    is central to the functioning of a product, the omission is material. For example, in *Rutledge v.

17    Hewlett-Packard Co.*, the California Court of Appeals reversed both a denial of class certification

18    and the granting of summary judgment.[7] In *Rutledge*, plaintiffs alleged that certain HP computers

19    contained inverters that HP knew would likely fail and cause display screens to dim and darken at

20    some point before the end of the notebook's useful life.[8] The Court of Appeals reversed the granting

21    of summary judgment, finding the defect was material because it was "critical to a notebook

22    _____

23    [4] *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir.1996) ("[i]n the absence of convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts.") (Internal quotation marks omitted.)

24    [5] *Gutierrez*, slip op. at 5 (internal quotation marks omitted).

25    [6] *Id.* at 32.

26    [7] *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (July 22, 2015). The opinion did not reverse the denial of certification on the CLRA claim for the limited reason that the district court had granted summary judgment on some of the defendants' affirmative defenses in favor of plaintiffs, creating a one-way intervention problem.

27

28    [8] *Id.* at 1168

computer's function."[9] The *Rutledge* opinion carefully followed *Collins v. eMachines, Inc.*, where the Court of Appeals held that allegations of defective microchips were material, because they corrupted floppy disks, a necessary component in the function of computers (at the time).[10] Despite knowing that the defects in the eMachines could result in "critical data corruption," the company continued to sell the machines.[11] Because the failure of the chips was "central to the function of a computer as a computer,"[12] it would have been material to the reasonable consumer.

Here, reliability of the drives is central to their functioning. Seagate did not tell consumers that its drives were not as reliable as it advertised, and were not as reliable as industry standard. Hospodor II, ¶¶ 5-96. When asked, consumers resoundingly responded that reliability was a material feature to them in the hard drives. In the pre-test prior to the conjoint analysis, which asks open-ended questions, reliability was the second most frequently named feature, behind only capacity. Boedeker I, ¶ 101. Using the survey responses from the conjoint analysis, respondents found that reliability/AFR had the highest perceived utility to the purchaser – that is, it was the *most material characteristic*. *Id.*, ¶¶ 145-46.

Seagate proffers testimony from Dr. Simonson, also common to the class, and suggests that consumers do not find AFRs material. An open question exists about the reliability of defendants' own expert evidence – Dr. Simonson's findings that consumers would be equally likely to buy a hard drive with a failure rate of 1% and 8% strains credibility under any common sense test. Simonson Decl., ¶ 37.[13] This Court should not become the ultimate fact-finder here, and determine whether as a matter of fact reliability is material to the consumer. But, even if this Court were to weigh the merits, plaintiffs' expert, Stefan Boedeker explains that Dr. Simonson's analysis only **confirms** the materiality of reliability and the AFR statements to the class – under Dr. Simonson's questioning, 52 of 75 respondents (or 69 percent) indicated that they valued the reliability of the drives (by

---

[9] *Id.* at 1175.

[10] *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (Nov. 28, 2011).

[11] *Id.* at 253.

[12] *Id.* at 258.

[13] *See also* Boedeker II, ¶¶ 22-30, 59-73 (explaining the flaws behind Dr. Simonson's survey which would lead to such an absurd result).

1  referencing security, safety, or "low-risk failure"). Boedeker II, ¶ 26. Even under defendant's flawed

2  analysis, the materiality of reliability to consumers is clear.

3      **3.      Evidence common to the class demonstrates the unreliability of Seagate's drives.**

4      Although plaintiffs need not prove the truth of their claims now, evidence common to the

5  class shows that Seagate's drives were unreliable. Dr. Hospodor offers testimony that contamination

6  and other systemic problems impacted the reliability of millions of drives. Hospodor II, ¶¶ 6-9. One

7  Seagate engineer, responding to the fact that the drives continued to be shipped to consumers despite

8  repeated failures and mounting evidence that they were defective, commented "We are not managing

9  quality here, we are just shipping product that will bite us later. We NEED a longer term plan here.

10  This drive does not seem like a good drive . . . should we stop shipping the drive altogether . . . ?"[14]

11  ██████████████████████████████████████████████

12  ██████████████████████████████████████████████████

13  ██████████████████████████████████████████████████

14  ██████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ██████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ██████████████████████████████████████████████

19  ████████████████████████████████████████

20  ██████████████████████████████████████████████

21  ██████████████████████████████████  Hospodor II, ¶ 77-96.

22      Seagate suggests that at best, plaintiffs have demonstrated that the failure rates of the drives

23  varied by product iteration over time. Opp. at 11. But, using Seagate's own internal documents and

24  his own industry expertise, Dr. Hospodor proffers testimony that the drives purchased by the class

25  suffered from ongoing issues that pushed failure rates above the advertised and industry rates, and

26  often substantially so. Hospodor II, ¶¶ 5-96. Seagate suggests that the evidence shows only drives

27  manufactured prior to 2013 had a high failure rate. Opp. at 4, 11. Nonsense. The evidence shows that

---

28      [14] Hospodor II, ¶ 8; Berman II, Ex. 54 at 60978.

1   throughout 2015 Apple issued its recall, Seagate issued ship holds, and high failure rates persisted.

2   Hospodor II, ¶¶ 20, 23-24, 31, 54-60. Backblaze, an industry participant who independently

3   measured the fail rates of Seagate's drives, found failure rates increasing from 10.35% in 2013 to

4   43.08% in 2014, to 30.94% in 2015. *Id.*, ¶¶ 54-56. And, despite Seagate's protestations otherwise,

5   the Grenada Classic drive was not the only unreliable drive. Opp. at 8. In 2015, Apple recalled

6   Grenada BP drives, ship holds were placed on Grenada BP2 drives, and other documents show high

7   failure rates (regardless of Seagate's marketing name). Hospodor II, ¶¶ 5, 18-20, 26-31, 35-50, 96.

8   All of this evidence regarding the unreliability of the drives is common to the class, amply

9   demonstrating that common questions of fact and law predominate.

10       **4.       As an alternative legal theory, common evidence shows that Seagate's partial
             misrepresentations created a duty to disclose the unreliability of its drives.**

11

12           As an alternative theory of liability, and one that is still common to the class, plaintiffs can

13   show that Seagate made partial representations regarding the AFR rates of its drives, while

14   suppressing disclosures regarding the true failure rates.[15] It is uncontested that <u>when</u> Seagate made

15   AFR representations regarding the drives purchased by the class, those representations were always

16   that the failure rates were <1%.[16] On Seagate's website, the AFR rates for the 3TB drives were listed

17   as <1% or 0.34% throughout 2012, 2013, and parts of 2014,[17] except that in November 2013 the

18   AFR rates for the 3TB drives were removed from a separate specifications webpage. Hospodor II, ¶

19   63. Omitting the drive AFR from the specifications webpage while including it for other drives in the

20   same family is anomalous and highly misleading.[18] Product brochures throughout 2010-2013, and

21   again in 2015-2016, reflect an AFR of <1%, and never disclosed a higher rate.[19]

22       [15] *Gutierrez*, slip op. at 29-30.

23       [16] *See generally* Opp. at 5-6; Hospodor II, ¶¶ 61-66.

24       [17] Hospodor I, ¶¶ 53-55.

25       [18] Indeed, the AFR field for the 3TB was the *only* data missing from the entire table as every
         other parameter for the 3TB, 2TB, and 1TB drives was stated.  Hospodor II, ¶ 63.

26       [19] Schweiss Decl., Ex. 19 at FED SEAG0070246 (Storage Solutions Guide for Oct. 2010 listing
         AFR of Barracuda drives as 0.34%); *Id.*, Ex. 12 at FED_SEAG0070276 (Oct. 2012 Storage
27       Solutions Guide listing AFR of Barracuda drives as <1); *Id.*, Ex. 13 at FED_SEAG0070307 (July
         2013 Storage Solutions Guide listing AFR of desktop drives as <1%); *Id.*, Ex. 22 (Oct. 2013 Storage
28       Solutions Guide listing AFR of desktop drives as <1%); *Id.*, Ex. 25 at FED_SEAG0070408 (Apr.
         2013 Storage Solutions Guide listing AFR of desktop drives as <1%); *Id.*, Ex. 26 at

Seagate suggests that, to state a claim under this separate prong of omissions law, plaintiffs must demonstrate that each and every class member saw the partial misrepresentation. But in *Rutledge*, the California Court of Appeals held both that plaintiffs had presented sufficient evidence of materiality to the omissions-only test, but also that HP had made misrepresentations that triggered a duty to disclose the defect.[20] HP's misrepresentations included its press releases which stated that the notebooks fell "within HP's tradition of 'reliable, manageable, stable, secure and expandable products."[21] Relevant to Seagate's set of partial misrepresentations here, although the court of appeals relied on this press release to trigger a duty to disclose the defective inverter, there was no evidence it was seen by the named plaintiff or all class members.[22] In any event, here, it is indisputable that the named plaintiffs explicitly relied upon the AFR misrepresentations. Seagate's attempt to have this court find as a matter of law that they are not typical and, instead, blindly assume that class members did not similarly rely, falls flat and must fail.

**B.    The class representatives are typical of consumers.**

Each of the named plaintiffs testified that they saw and relied on AFR statements prior to their purchase of the drives. Mot. at 12-13. Despite this, Seagate suggests their claims are atypical because "there is no evidence AFR representations were publicly available at the time." Opp. at 12. Seagate is wrong. On the facts[23]  But, in any event, this is a case where the plaintiffs intend to pursue the theory that Seagate failed to disclose the unreliability of its drives. Seagate's challenges on

FED_SEAG0070429 (May 2012 Storage Solutions Guide listing AFR of desktop drives as <1%); *Id.*, Ex. 27 at FED_SEAG0070450 (July 2012 Storage Solutions Guide listing AFR of desktop drives as <1%); Berman II, Ex. 55 at 4447 (Jan. 2015 Product Manual listing AFR as <1%); *Id.*, Ex. 56 at 30302 (Sept. 2016 Product Manual listing AFR as <1%).

[20] *Rutledge*, 238 Cal. App. 4th at 1166.

[21] *Id.* at 1176 (internal quotation marks omitted).

[22] *Id.* (citing plaintiffs' testimony she had seen an advertisement describing HP's larger screen).

[23] Indeed, Seagate admits that plaintiffs Hauff, Crawford, and Enders purchased products during time frames when Seagate published AFR representations. Opp. at 12, n.10. Seagate further admits it published AFR representations on its website beginning in October 2011 and in data sheets available on its website between April 2012 and January 2013. Payne Decl., ¶¶ 10, 12. Thus, there can be no dispute that the representations were available when Nelson and Schechner made their purchases in November 2012. SCAC, ¶¶ 135, 162. As Hagey, Manak, and Dortch testified, they relied upon the AFR representations, and it cannot be disputed that at a minimum, the Seagate Storage Solutions Guide was published on Seagate's website with the AFR representations at the time they purchased their internal drives. *See* note 19, *supra*.

1  typicality fail for the same reason that its arguments regarding the commonality of

2  misrepresentations fail – the two tests are not co-extensive. *See* section II.A.1A.1, *supra.*

3        Seagate suggests that plaintiffs Schechner and Nelson lack standing because they both claim

4  to have relied on representations for the *Barracuda* product, *not* the Backup Plus products they

5  purchased. Opp. at 13. But again, this only underlines that common questions predominate all class

6  members' claims – **these are the same drives**. There is no distinction between Seagate's internal

7  and external drives at issue in this case. Hospodor II, ¶ 37. Thus, failure rates for internal drives are

8  also germane to external drives. And this information was not hidden from class members –

9  Schechner testified that he read it online.[24]

10       Finally, Seagate suggests that the plaintiffs cannot establish typicality because they only

11  purchased Barracuda and BackUp Plus drives, not drives marketed under ten other marketing names

12  assigned to the hard drives at issue by Seagate. Opp. at 14. But under Rule 23(a)'s permissive

13  standards, "representative claims are 'typical' if they are reasonably co-extensive with those of

14  absent class members; they need not be substantially identical."[25] All of these drives are the same

15  drives. That Seagate called them by a different name for marketing purposes is irrelevant. Each

16  plaintiff has the same incentive, and will rely on the same proof, to pursue their claims.

17  **C.    Plaintiffs Satisfy the Elements of Rule 23(b)**

18        **1.    A nationwide class is supported by California's choice of law rules.**

19        Through its silence, Seagate concedes that the application of California law would be

20  constitutional. Opp. at 15-18. Thus, the burden shifts to Seagate to show that foreign law, not

21  California's law, should apply.[26] Seagate fails to carry this burden. Plaintiffs have conceded there are

22  material differences of law under the first prong of the test, but the second prong of California's state

23  interest test requires Seagate to demonstrate that a true conflict exists among the states' interests.[27] A

24

25        [24] Berman I, Ex. 32 at 106:13-19 (Schechner Dep Tr.).

26        [25] *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998). *See also Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (rejecting argument that plaintiffs need to have purchased "each product in the Blue Sky beverage line").

27        [26] *Wash. Mut. Bank v. Super. Ct.*, 15 P.3d 1071, 1081 (Cal. 2001).

28        [27] *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010).

1  "true conflict" exists when an interest of the chosen state conflicts with that of another state.[28]

2  Seagate evokes only the interest in other states to shield "out-of-state business from what the state

3  may consider to be excessive litigation." Opp. at 17 (citing *Mazza*). But addressing the second prong

4  of its choice-of-law test, California's Supreme Court has held that states have an interest in setting

5  the appropriate level of liability for companies conducting business "***within its territory***."[29] (Seagate

6  neglects to include this second sentence from either California authority or the Ninth Circuit's

7  opinion in *Mazza*.) Seagate then goes on to reference a small number of declarations where Seagate

8  employees work in Colorado, Oklahoma, and Minnesota.[30]

9        The last step of the comparative interest test requires the court to compare the nature and

10  strength of the interest of each jurisdiction in the application of its own law to determine which

11  state's interest would be more impaired if its policy were subordinated to the policy of the other

12  state.[31] The Court then applies the law of the state whose interest would be more impaired if its law

13  were not applied (Oklahoma's, Colorado's or Minnesota's). This analysis does not involve the court

14  in "weighing" the conflicting governmental interests "in the sense of determining which conflicting

15  law manifests the 'better' or the 'worthier' social policy on the specific issue."[32] Rather, the

16  resolution of true conflict cases may be described as "essentially a process of allocating respective

17  spheres of lawmaking influence."[33] In sum, the court must attempt "to determine the relative

18  commitment of the respective states to the laws involved."[34]

19

20        [28] *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 923 (Cal. 2006).

        [29] *McCann*, 225 P.3d at 534. *See also Mazza*, 666 F.3d at 592.

21
22        [30] Seagate also cites to a website which lists locations, purportedly for "jobs at Seagate." Opp. at
    17 n.17. Plaintiffs move to strike this unauthenticated hearsay evidence pursuant to Federal Rules of
    Evidence 802 and 901. Regardless, without further discussion is insufficient to carry any burden
23  regarding the interests of other states in regulating Seagate's conduct.

24        [31] *McCann*, 225 P.3d at 521; *see also Mazza*, 666 F.3d at 590 ("[I]f the court finds that there is a
    true conflict, it carefully evaluates and compares the nature and strength of the interest of each
    jurisdiction in the application of its own law to determine which state's interest would be more
25  impaired if its policy were subordinated to the policy of the other state, and then ultimately applies
    the law of the state whose interest would be more impaired if its law were not applied.").

26        [32] *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 726 (Cal. 1978), holding modified by *I. J.
    Weinrot & Son, Inc. v. Jackson*, 708 P.2d 682 (1985) (internal quotation marks omitted).

27
        [33] *Id.* at 726 (internal quotation marks omitted).

28        [34] *Id.* at 727.

Here, California has a specific and profound interest in the application of its laws. Courts apply California law nationwide in recognition of a "legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices" and its "clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country."[35] Courts have repeatedly recognized that where states are on the sidelines, they would almost certainly "rather have the injuries of [their] citizens litigated and compensated under another state's law than not litigated or compensated at all."[36] In the context of class actions, in fact, courts have repeatedly recognized that other states' interest in having their own laws applied is outweighed by their interest in protecting and compensating their citizens from illegal activities.[37]

Weighed against this, the interests of Oklahoma, Colorado, and Minnesota are small. As explained by one court addressing this situation in *Hill v. Novartis Pharm. Corp.*, the interest of any state in limiting the laws of a New Jersey corporation would relate to "promoting economic activity within its borders, attracting corporations and protecting those corporations whose principal places of business are located in the state."[38] Although shielding corporations "from excessive liability in New Jersey would undeniably advance New Jersey's economic interest . . . the fact those companies could potentially be subject to punitive liability *in other states* does not make New Jersey an any less attractive place to do business."[39] If anything, the Court reasoned, liability in California would make "New Jersey a more attractive place to do business by comparison."[40] And to be clear – Seagate has not suggested that its headquarters is in any of the three states (Oklahoma, Colorado, or Minnesota). As the *Hill* court held, "[t]he extent to which New Jersey's interest would be impaired if California

---

[35] *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 968 P.2d 539, 556-57 (Cal. 1999).

[36] *In re Pizza Time Theatre Secs. Litig.*, 112 F.R.D. 15, 20-21 (N.D. Ca1. 1986) (nationwide class applying California law and finding that other states had no interest in denying recovery to their residents injured by unfair business practices emanating from California).

[37] *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 241-44 (2001) (applying "California's more favorable laws . . . to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery").

[38] *Hill v. Novartis Pharm. Corp.*, No. 06-cv-00939, 2012 U.S. Dist. LEXIS 38516, at *29-*31 (E.D. Cal. Mar. 21, 2012).

[39] *Id.*, at *30-*31 (emphasis in original).

[40] *Id.*, at *31.

law applied is speculative at best."[41] So too here, Oklahoma, Colorado, and Minnesota's interest in limiting the liability of Seagate is speculative against the concrete and specific interests of California.

And although Seagate relies heavily on the Ninth Circuit's opinion in *Mazza*,[42] and submitted to the Court the recent opinion in the *In re Hyundai & Kia Fuel Econ. Litig.*,[43] the Ninth Circuit cannot change the substantive law of California, and this Court is bound by the decisions of the state's highest court.[44] Courts have continued to certify nationwide classes under California law since *Mazza*.[45] And another judge in this district (Judge Ingram) held that California law applied to claims against Seagate for common law fraud.[46] In so doing, Judge Ingram held that California law applied because "foreign state's interest in having the action proceed as a class action in California is greater than the foreign state's interest in not allowing the suit to proceed at all."[47] The Ninth Circuit's opinion in *Hyundai* does not further the analysis – it simply held that even in the settlement context, a district court is obligated to engage in a full choice-of-law analysis.[48]

**2.    In the alternative, common issues predominate for the eight sub-classes.**

In the alternative to California law being applied nationwide, plaintiffs seek to certify eight sub-classes under the laws of California, Florida, Massachusetts, New York, South Carolina, South Dakota, Tennessee, and Texas. As Judge Chen recently held in the *In re MyFord Touch Consumer Litig.* when certifying seven state classes, such a number is not "obviously unmanageable."[49] Each of

---

[41] *Id.*

[42] *Mazza*, 666 F.3d at 589.

[43] *In re Hyundai & Kia Fuel Econ. Litig.*, No. 15-56014, 2018 U.S. App. LEXIS 1626, at *12-*13 (9th Cir. Jan. 23, 2018).

[44] *Easyriders*, 92 F.3d at 1494 n.4 ("When interpreting state law, federal courts are bound by decisions of the state's highest court.").

[45] *See In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. ML 10-02199, 2012 WL 4490860, at *2-*4 (C.D. Cal. Sept. 28, 2012) (applying California law to a nationwide class), *class decert. on other grounds*, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014); *Allen v. Hyland's, Inc.*, 300 F.R.D. 643, 656-58 (C.D. Cal. 2014); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 543, 547 (C.D. Cal. 2012) (declining to decertify a nationwide class applying California consumer protection laws).

[46] *Seagate*, 115 F.R.D. at 270.

[47] *Id.*

[48] *Hyundai*, 2018 U.S. App. LEXIS 1626, at *35.

[49] *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2016 U.S. Dist. LEXIS 179487, at *81 (N.D. Cal. Sept. 14, 2016).

these states recognizes a legal cause of action for omission, separate from a misrepresentation.[50]

Given the underlying uniformity of proof for each of these state's laws, certification would be appropriate. Seagate's arguments otherwise are misplaced:

> **Injury/Deception**: Seagate overstates <u>South Carolina's</u> "public interest" requirement – which requires only that the company's procedures create a potential for repetition.[51] Evidence of Seagate's sales of 2.3 million drives meets this test.[52] Seagate argues that <u>Texas's</u> standard of deception – "the capacity to deceive an ignorant, unthinking, or credulous person" – differs from <u>California's</u> "reasonable man standard." Opp. at 19. But proof of the higher "reasonable person" standard would by its very nature encompass the "ignorant person."

> **Reliance**: Seagate argues that <u>South Dakota</u> requires reliance on affirmative misrepresentations but the Supreme Court of South Dakota has held that, in an omissions case like here, "[t]he suppression of a fact by one who is bound to disclose it" is sufficient to defeat summary judgment.[53] <u>Texas</u> does not require proof of reliance, only that "the act or omission was a substantial factor in bringing about injury."[54] <u>Florida's</u> consumer protection statute does not require reliance, as made clear by the very opinion cited by defendants.[55]

---

[50] *See Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 417 (1st Cir. 1985) (reviewing Massachusetts Supreme Court authority and finding "failure to disclose a material fact [states] a cause of action under chapter 93A"); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561 (S.D.N.Y. 2016) ("Omissions are actionable under § 349."); *Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 195-96 (S.C. 2015) (upholding jury instruction for South Carolina's Unfair Trade Practices Act in accordance with FTC guidance that included "representations or omissions in connection with the sale of a product 'without adequate disclosures'"); S.D. Codified Laws § 37-24-6(1) (requiring defendant "knowingly and intentionally" use a deceptive act or practice; states unlawful to engage in deceptive act or practice "or [to] omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby"); *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 796-97 (E.D. Tenn. 2009) (omissions are sufficient under Tennessee Consumer Protection Act and unfair or deceptive acts include those likely to mislead a reasonable consumer); Tex. Bus. & Comm. Code § 17.46(b)(23) ("failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed").

[51] *Wright v. Craft*, 640 S.E.2d 486, 502 (Ct. App. 2006).

[52] Berman I, Ex. 28.

[53] *Moss v. Guttormson*, 551 N.W.2d 14, 16 (S.D. 1996).

[54] *Alford Chevrolet-Geo v. Murphy*, No. 06-02-00059-CV, 2002 WL 31398487, at *1 (Tex. App. Oct. 25, 2002).

[55] *Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53 (Fla. Dist. Ct. App. 2008). *See also State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) ("When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").

Both <u>California</u> statutes (the UCL and CLRA) hold that reliance may be presumed on a class-wide basis where the misrepresentation or omission was material.[56]

**Knowledge Requirement:** Seagate suggests that <u>Texas's</u> consumer protection statute which requires knowledge by the defendant at the time of the omission and an intent to induce the consumer into the transaction,[57] differs from that of <u>Massachusetts</u>, which does not require knowledge of falsity. But plaintiffs have proffered evidence of Seagate's knowledge of the falsity of its AFR statements, and knowledge of the unreliability of its drives throughout the class period. *See* section II.A.3, *supra*; Hospodor II, ¶¶ 5-96. Seagate makes no factually based argument why proof of Seagate's knowledge would differ across classes.

**Statute of Limitations**: Differing statutes of limitations do not present an insurmountable issue for trial. Seagate concedes, in its absence of any evidence, that it never disclosed the truth of its drives' unreliability to the class. Each of the eight states recognizes some form of the tolling of the statute of limitations where the plaintiff could not have discovered the injury, or the defendants exclusively possessed knowledge of the omission.[58] Evidence of tolling is common to the class.[59] Moreover, Seagate's arguments specifically as to plaintiffs Crawford and Manak are misplaced (Opp. at 20 n.21) because Crawford purchased drives in July 2013, which is within the three-year statute of limitation for <u>New York</u>, and Manak brought his suit within two years after the discovery, as specifically contemplated by <u>Texas</u>.

**Class Actions**: Seagate relies on cases prior to the Supreme Court's decision in *Shady Grove*, to suggest that neither <u>South Carolina</u> nor <u>Tennessee</u> allow class actions.[60] In *Shady Grove*, the Supreme Court held that a state bar on class actions conflicted with Rule 23. Since *Shady Grove*, numerous district courts have found that these states' class action bars cannot be applied in federal courts.[61]

---

[56] *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009) ("relief under the UCL is available without individualized proof of deception, reliance and injury"); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.").

[57] Tex. Bus. & Com. Code § 17.46(b)(24).

[58] *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1320 (C.D. Cal. 2013); *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 878 (Cal. 2013); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016); *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 994 (1st Cir. 1988); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 482–83 (E.D.N.Y. 2011); S.C. Code Ann. § 39-5-150; S.D. Codified Laws § 37-24-33; Tenn. Code Ann. § 47-18-110; Tex. Bus. & Comm. Code § 17.565.

[59] *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 310 (N.D. Cal. 2016).

[60] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.* Co., 559 U.S. 393 (2010).

[61] *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2017 WL 5574376, at *33 (N.D. Ill. Nov. 20, 2017) (denying motion to dismiss under South Carolina law given *Shady Grove*); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012) (same); *In re Auto. Parts Antitrust Litig.*, No.12-md-02311, 2013 WL 2456612, at *106 (E.D. Mich. June 6, 2013) (same); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652 (S.D. Cal. 2014) (denying motion to dismiss under Tennessee law and applying Rule 23).

1

2

**Remedies/Relief**: It is nearly black letter law in the Ninth Circuit that individual differences in damages cannot defeat certification.[62] Seagate's suggestion otherwise must fail.

3

4

5

6

7

Finally, Seagate argues that a class action here cannot be superior because the San Francisco Superior Court has certified the state plaintiffs' omissions claims under the CLRA and fraudulent prong of the UCL. Payne Decl., Ex. 31. But here, federal plaintiffs assert more than just a California class, but even within the California claims, plaintiffs assert claims under the CLRA, all three prongs of the UCL, and claims under California's False Advertising Law. Mot. at 20.

8

**D.    Seagate's motion to strike the testimony of plaintiffs' experts should be denied.**

9

10

11

The Ninth Circuit has held that Rule 702 is meant to exclude "junk science."[63] In all other cases, *Daubert* requires that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" be used to address expert testimony.[64]

12

**1.    Plaintiffs' conjoint analysis and damages model are based on accepted methodologies (common to the class), reliably applied to the facts of this case.**

13

14

15

16

17

18

19

20

21

22

Seagate's motion to strike the expert testimony of Mr. Boedeker, plaintiffs' expert who has proposed two damages models and performed a conjoint analysis, fails for the same reason as the rest of its motion – plaintiffs need not show that every consumer saw a published AFR. Opp. at 23. Plaintiffs' theory is that Seagate failed to disclose a material fact to consumers (the reliability of its drives). This test for omissions does not require that class members, as a whole, saw a misrepresentation. Thus, plaintiffs' survey also need not have asked this question. Beyond this one issue, Seagate fails to articulate its criticisms with any specificity, but recently Judge Chen denied a motion to strike the testimony of Mr. Boedeker on a very similar conjoint analysis in the *In re MyFord Touch Consumer Litig.*[65] Seagate's motion to strike the testimony of Mr. Boedeker should likewise be denied.

23

24

25

26

27

28

---

[62] *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("differences in damage calculations do not defeat class certification").

[63] *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017).

[64] *Id.* at 1237-38 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).

[65] *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2018 U.S. Dist. LEXIS 25172, at *65-*66 (N.D. Cal. Feb. 14, 2018).

**2.     Dr. Hospodor's opinions are admissible and common to the class.**

Dr. Hospodor, in his opening declaration and again in his reply declaration, gives a high-level overview of an extraordinarily technical issue – how reliability of hard drives is measured by companies in the industry, and why Seagate's drives failed these standards. Using many internal Seagate documents, Dr. Hospodor opines that Seagate knew at the time that it was marketing its drives as having an AFR of <1%, that internally failure rates measured at a much higher level. Hospodor II, ¶¶ 5-96. Seagate objects that Hospodor's opinion is not common to the class because the internal evidence of ship holds, contamination and failures of the drives are limited to Grenada Classic drives and the time period 2011-2013. Dr. Hospodor makes clear that the issues plaguing Seagate's drives were in no way limited in such a scope or time period. *Id.*

Seagate also moves to strike Dr. Hospodor's juxtaposition of Seagate's consumer-facing advertisements against Seagate's internal documents demonstrating that the failure rates for these drives were much higher than advertised. Opp. at 24-25; Hospodor I, ¶¶ 44-58. But Dr. Hospodor explains technical documents that include acronyms and cryptic shorthand describing the reasons for the failures of Seagate drives.[66] Courts frequently allow experts to opine using defendants' internal documents as a way to help the jury reach a final conclusion on the ultimate issues.[67] Moreover, Dr. Hospodor has a Ph.D in computer engineering, over 25 years of experience in the data storage industry, industry experience working for Seagate's competitors, and over 12 patents related to data storage and is well-qualified to assist the court and jury in understanding these documents. Hospodor I, ¶¶ 4-10. The motion to strike should be denied.

## III.     CONCLUSION

For all the reasons stated above, plaintiffs respectfully request that this Court certify the class.

---

[66] *Compare* Berman II, Ex. 57 *with* Hospodor I, ¶¶ 112-14.

[67] *See Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.,* No. 14-cv-00930, 2016 WL 158874, at *15 (N.D. Cal. Jan. 14, 2016) (denying *Daubert* motion against expert who was asked to "review documents in light of his experience in the field"); *A & M Records, Inc. v. Napster, Inc*., No. C000074MHP, 2000 WL 1170106, at *6 (N.D. Cal. Aug. 10, 2000) (denying *Daubert* motion against economist where "conclusions were drawn from consideration of Napster, Inc.'s internal documents"). As to Seagate's attack on Dr. Hospodor's endorsement of the report prepared by Seagate's former employee, Andrei Khurshudov, that report stated that Seagate "assumed" a Weibull beta of <1. To the extent Seagate now claims that Mr. Khurshudov was incorrect and that Seagate used actual test results to determine the Weibull beta, it presents a disputed issue of material fact.

1    DATED: February 20, 2018              HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                         By:  ___s/ Steve W. Berman_____
                                               STEVE W. BERMAN

4                                         1918 Eighth Avenue, Suite 3300
                                          Seattle, Washington 98101
5                                         Telephone: (206) 623-7292
                                          Facsimile: (206) 623-0594
6                                         steve@hbsslaw.com

7                                         Shana E. Scarlett (217895)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
8                                         715 Hearst Avenue, Suite 202
                                          Berkeley, California 94710
9                                         Telephone: (510) 725-3000
                                          Facsimile: (510) 725-3001
10                                        shanas@hbsslaw.com

11                                        Marc A. Goldich (*pro hac vice*)
                                          Noah Axler (*pro hac vice*)
12                                        AXLER GOLDICH, LLC
                                          1520 Locust Street, Suite 301
13                                        Philadelphia, PA 19102
                                          Telephone: (267) 207-2920
14                                        mgoldich@axgolaw.com
                                          naxler@axgolaw.com
15
                                          *Attorneys for Plaintiffs and the Proposed Class*
16

17

18

19

20

21

22

23

24

25

26

27

28