# EXHIBIT DD

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>DATE: April 27, 2018<br>TIME: 9:30 a.m.<br>DEPT: Hon. Joseph C. Spero<br>Courtroom G, 15th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

010581-11 1027313 V1

## I.  INTRODUCTION

After the close of class certification briefing, only weeks ahead of the class certification hearing, Seagate Technology LLC (Seagate) has produced over a hundred documents highly relevant to the pending motion for class certification and the merits of plaintiffs' claims. These documents show the materiality of the drive failures to some of the largest and most sophisticated customers in the country. The documents further support the testimony of plaintiffs' experts, and directly contradict statements made by Seagate's declarants opposing class certification. Plaintiffs submit this supplemental brief to address these critical pieces of evidence, each of which is a common evidence demonstrating not only the unreliability of the ST3000DM001 drives, but also Seagate's exclusive knowledge of facts material to the class.

In addition to this production ambush, Seagate has admitted to plaintiffs that it continues to withhold "no more than 2,000" documents.[1] Seagate has told plaintiffs that "nearly every document" that has yet to be produced will be responsive to plaintiffs' first set of requests for production – **originally served nearly two years ago**. Seagate has represented that this set of unproduced documents includes spreadsheets that identify customer complaints, warranty claims, and returns for the drives at issue in this case. *Id*. To justify its impermissible delay, Seagate claims to be undertaking the "laborious" project of redacting customers' (i.e. class members') contact information from the document set. This stalling tactic is impermissible; plaintiffs are entitled to class members' contact information and Seagate has had *plenty* of time to produce these documents.

Seagate's tardy document production has already prejudiced plaintiffs by preventing them from using the evidence in depositions of Seagate's employees. Plaintiffs have deposed several of the Seagate employees who created or received some of these documents, including at least one of Seagate's Rule 30(b)(6) representatives. Seagate's late production prevented plaintiffs from questioning the deponents about these critical documents.

Plaintiffs respectfully request that the Court consider these documents as part of plaintiffs' motion for class certification. To the extent that the Court's decision might rely on the evidence not

---

[1] Declaration of Steve W. Berman in Support of Plaintiffs' Supplemental Brief in Support of Class Certification (Berman Supp. Decl.), ¶ 2, filed concurrently herewith.

yet produced by Seagate (including the "2,000" documents containing warranty and return data from class members), plaintiffs respectfully request that the Court draw inferences favorable to plaintiffs.

## II. ARGUMENT

**A.    The new documents prove that the drives were defective and that failure was pervasive.**

The new documents confirm two critical questions at class certification are answered using common evidence. *First*, that Seagate knew that its drives were experiencing failure rates far beyond those advertised, and far beyond those experienced in the industry. *Second*, these high failure rates were material to the reasonable consumers. The recently produced evidence supports each of these arguments and undermines Seagate's opposition to class certification.

**1.    Seagate knew its drives were experiencing failure rates far beyond the industry norm.**

Using evidence common to the class, plaintiffs previously argued that Seagate knew its drives were unreliable, and yet continued to market these drives to consumers.[2] The newly uncovered evidence further supports this argument.

Previously, plaintiffs provided examples of Seagate's knowledge of the drive's unreliability through large customers – Apple, HP and Dell – identifying the high failure rates and returning drives. Mot. at 8. In its sur-reply opposing class certification, Seagate argued that "[w]hile Plaintiffs have pointed to various one-off complaints by customers and certain OEMs," this was insufficient to show knowledge of a product defect.[3] New evidence shows an avalanche of complaints by sophisticated customers experiencing high failure rates on the drives, who alerted Seagate to the issues, and demanded refunds. The customers included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, among others. Exs. 58-66.[4] Each of these customers told Seagate that its drives were faulty and failing at unacceptably high rates.

---

[2] Plaintiffs' Notice of Motion and Motion for Class Certification ("Mot.") at 4-10, filed under seal, Nov. 8, 2017; Plaintiffs' Reply in Support of Motion for Class Certification at 23, 5-6, filed under seal, Feb. 20, 2018.

[3] Seagate Technology LLC's Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification at 6, Feb. 27, 2018, ECF No. 161-1.

[4] All exhibit references are to the Berman Supp. Decl., unless otherwise noted.

1   And although Seagate has argued that the drives were failing at high rates only earlier in the
2   class period, this is also belied by the new evidence. In 2011, Seagate stated, "*we got a large
3   channel customer who has delivered several systems to ▓▓▓ with the 3TB drive, and they are
4   failing at a very concerning rate.*" Ex. 58 at 1.  Seagate noted that the ▓▓▓ drives had "**a 30%
5   failure rate**." Ex. 59 at 1. In 2012, ▓▓▓ returned "a large batch of Seagate hard drives part #
6   ST300DM001" because the drives failed at unacceptably high rates. Ex. 60 at 1. In 2013, ▓▓▓
7   alerted Seagate to drive failures and requested a return. Ex. 61 at 2. Seagate called its own drives
8   "**bad quality**" and "poor quality" in response to sophisticated customers' complaints. Ex. 62. In
9   2014, Seagate used its own proprietary technology to predict a **21% failure rate** for the drives sold
10  to ▓▓▓. Ex. 63 at 2. Seagate noted that this prediction was "in-line with customer assessments."
11  *Id*. A 2016 spreadsheet shows dozens of customer returns from failed drives. Ex. 64. The
12  unreliability of the drives carried across the class period.
13  Seagate has argued that the failures were isolated to one type of drive – the Grenada Classic.
14  Seagate suggested that common evidence did not predominate because "none of the purported issues
15  affected more than a tiny minority of putative class members because, with one exception, the
16  evidence is limited to Grenada Classic drives in 2011-2012." And yet, this new set of documents
17  contains evidence from 2014 where large customer ▓▓▓ was "reporting high failure rate on 3x
18  end-customers / Mostly 3TB Grenada BP1." Ex. 65 at 2. In the new documents, Seagate states: "*it's
19  known that early vintage of GrenadaBP has high failure rate at multiple customers . . . due to
20  [the] poor airbearing design*." Ex. 66 at 2. Seagate later discusses how corrective actions had no
21  effect on the drives' performance: the "Grenada post CA [corrective action] is performing as bad as
22  the GrenadaBP pre-CA." Ex. 67 at 6. In later documents, Seagate lists the 38 corrective actions it
23  made to the drives in an attempt to fix the drives for one large customer. Ex. 65 at 8-9. Seagate spent
24  more than a year attempting to fix the drives before this customer requested a refund.
25  Seagate's expert, Donald Adams, submitted testimony that plaintiffs had misinterpreted the
26  Backblaze blog posts, and they did not support the conclusion that "the ST3000DM001 . . .  were not

1  as robust as the competition."[5] And yet, the conclusion reached by plaintiffs' expert Dr. Hospodor, is
2  exactly the same conclusion as reached by the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
3  experienced 110 failures out of 150 drives, and "had already started ordering Hitachi disks when the
4  Backblaze post came out, and after that, we alerted everyone on the ▬▬▬▬▬▬▬▬▬
5  that there was an issue and rec'ed [recommended] that everyone stop using Seagates [drives]." Ex.
6  68 at 3.

7  Similarly, Dr. Hospodor testified that issues with Seagate's firmware demonstrated the
8  unreliability of the drives.[6] Seagate's expert, Donald Adams, submitted a declaration saying that Dr.
9  Hospodor's concerns were "greatly overblown" and that any firmware issues were nothing more that
10 "limited issues with . . . the drive that were fixed early in 2012." Adams Decl., ¶ 98. And yet,
11 included in the new document production is another return from the customer ▬▬▬▬▬▬
12 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ where the customer says in June 2012: "**We are looking to**
13 **return a large batch of Seagate hard drives** part# ST3000DM001. Unfortunately we are unable to
14 use these hard drives **due to the CC4B firmware**." Ex. 60. In another email, a customer ▬▬▬
15 ▬▬▬▬▬▬▬▬▬ informed Seagate "[t]he drives we sent to the customer are 'failing' in large
16 volumes." Ex. 58 at 2. The customer was ▬▬▬. Seagate responded, "**it sounds like the firmware**
17 **roll might address the issue**." *Id*.

18 All of this evidence is common to the class and demonstrates Seagate's knowledge of the
19 unreliability of its drives.

20 **B.    The new documents prove that the true failure rate was material to the reasonable consumer.**
21
22 Seagate concedes that the high failure rate is material to customers in the newly produced
23 documents. For example, the new documents contain an email where one Seagate customer asks
24 Seagate to provide the data that supports Seagate's claim that the drives have no defect. Ex. 69 at 2.
25 The customer notes that he read the Blackblaze article, as well as Seagate's response, which

---

[5] Declaration of Donald Adams, PE in Support of Seagate's Opposition to Plaintiffs' Motion for Class Certification ("Adams Decl."), filed under seal, Jan. 5, 2018.

[6] Declaration of Andrew Hospodor in Support of Plaintiffs' Motion for Class Certification, filed under seal, Nov. 7, 2017, at ¶¶ 156-168.

contained no information disclosing the drives' true AFR. The customer notes, "**data talks**." *Id*. Seagate's marketing team discusses extensively how to control the narrative in response to the Backblaze article. Yet nobody at Seagate suggested providing the truthful data – even when asked directly by a Seagate customer. Instead, Seagate continued to obfuscate the truth. In an internal response to the customer's question, one Seagate employee notes: "we keep getting beaten about the head by competitors (and BlackBlaze) and **haven't come up with a good story on quality**." *Id*. at 1. Even when asked, Seagate chose not to provide truthful data about the drives' failure rate because that data was a material fact. Had customers known the truth, they would not have purchased Seagate drives.

The newly produced documents demonstrate that when Seagate's customers learned the truth about how often Seagate's drives failed, they cut ties with Seagate.  Seagate knew that the high failure rate of its drives was compromising customer relationships.  With regard to the drive failures affecting ███████████, Seagate's sales team asks, "*Is there anything we can do . . . to validate the fix and keep these important customers* in the fold?" *Id*. Seagate also charted individual customer complaints, in which customers relay that the unreliability of the drives is material. Ex. 64. Some of these customers took the step of alerting the Better Business Bureau to Seagate's deception. *Id*.

To stall these customer losses, Seagate actively concealed information about the drive's true failure rate – from even its largest customers. For example, while negotiating the return of drives with one large business customer, Seagate created a chart showing the drive's failure rate over time. Ex. 67 at 2. Seagate intended to show this chart to the customer during negotiations.  After reviewing a first draft of the chart, one employee noted that the data related to the Apple recall was "killing the [] curve" of the graph. *Id*. at 5.  This truthful data prevented Seagate from claiming in negotiations that there were no issues with the drives.  Yet, instead of providing the truth, Seagate elected to mislead the customer by removing all data related to the Apple recall. *Id*. at 5. As demonstrated on the next page, this omission substantially changed the graph's failure rate:

**Figure 1: Seagate's first draft of the chart includes all data.**[7]



**Figure 2: Seagate's second draft omits the Apple returns of the drives.**[8]



---

[7] Ex. 70 at 4.

[8] Ex. 71 at 4.

1   In short, Seagate knew the failure rate of the drives was material – providing truthful data could
2   cause Seagate to lose sales and force returns.
3         These charts directly contradict statements made in Seagate's opposition to class certification.
4   For example, Seagate argued that plaintiffs presented "no evidence that the Grenada BP or BP2
5   drives" ever had high failure rates. Opp. at 7. And yet, the comments on the first graph, which related
6   to the Grenada BP drives stated; "As expected, Grenada BP 3TB is worst." In the first graph (figure
7   1 above), the sky-rocketing customer return rate relates to the Grenada BP 3TB drive.
8         This evidence, common to the class, combined with the complaints of the major customers
9   such as ███████████, and others demonstrates that the unreliability of these drives was material
10  to the reasonable consumer.

### III.    CONCLUSION

12        To the extent that Court finds that additional evidence is needed to satisfy any element of
13  class certification, plaintiffs request that the Court infer that this evidence is contained in the "no
14  more than 2,000" documents that Seagate has yet to produce. Drawing this inference is permissible
15  in accordance with Federal Rule of Civil Procedure 37(b)(2)(A)(i). This rule provides that if a party
16  fails to obey an order to provide or permit discovery, the court where the action is pending may
17  "direct[] that the matters embraced in the order or other designated facts be taken as established for
18  purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). Such an
19  inference is appropriate here: the Court ordered Seagate to produce information related to all the
20  Model 001 hard drives on June 9, 2017 (ECF No. 120). Seagate knew that this evidence was material
21  to class certification; the parties stipulated as to the fact (ECF No. 115). For the reasons articulated
22  above, the Court should consider the late produced documents and grant plaintiffs' motion for class
23  certification.

24  DATED: April 20, 2018                HAGENS BERMAN SOBOL SHAPIRO LLP

                                         By:   /s/ Steve W. Berman
                                               STEVE W. BERMAN

                                         1918 Eighth Avenue, Suite 3300
                                         Seattle, Washington 98101
                                         Telephone: (206) 623-7292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 207-2920
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*