# EXHIBIT EE

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIĆ, Cal. Bar No. 132403
ANNA S. McLEAN, Cal. Bar No. 142233
TENAYA RODEWALD, Cal. Bar No. 248563
LIÊN H. PAYNE, Cal. Bar No. 291569
JOY O. SIU, Cal. Bar No. 307610
DANIEL R. FONG, Cal. Bar No. 311985
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        npopovic@sheppardmullin.com
              amclean@sheppardmullin.com
              rodewald@sheppardmullin.com
              lpayne@sheppardmullin.com
              jsiu@sheppardmullin.com
              dfong@sheppardmullin.com

Attorneys for Defendant,
SEAGATE TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION<br><br>CONSOLIDATED ACTION | Case No. 3:16-cv-00523-JCS<br><br>**SEAGATE TECHNOLOGY LLC'S OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION**<br><br>**Date:** May 11, 2018<br>**Time:** 2:00 p.m.<br>**Place:** Courtroom G<br>**Judge:** Hon. Joseph C. Spero<br><br>Second Consolidated Amended Complaint filed: July 11, 2016 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

SMRH:486073602.4

## I.    INTRODUCTION

Seagate showed in its Opposition to Plaintiffs' Motion for Class Certification filed March 30, 2018 ("Opposition") that Plaintiffs' motion should be denied because, *inter alia,* (1) Plaintiffs failed to identify any common misrepresentations made by Seagate to the putative class so as to trigger a duty to disclose under *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136 (9th Cir. 2012) and *Daugherty v. American Honda Motor Co.,* 144 Cal. App. 4th (2006), and (2) Plaintiffs failed to establish a common defect or even a common failure rate that was either materially or consistently higher than Seagate's published AFR during the class period such that, even assuming the existence of a duty, there would have been anything to "disclose."  ECF No. 156 at 7:4-8:11, 11:15-26; *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556-57 (2007) ("[F]ailure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone").

After the close of briefing, Plaintiffs now submit documents produced in the ordinary course of discovery claiming they justify a supplemental filing.  They do not. The documents relate solely to **commercial users, not putative class members** and thus do not fix the deficiencies identified above.  Nor is this new information.  Plaintiffs have long known of issues that arose when commercial entities tried to save money by misusing these consumer-grade drives in environments for which they were neither specified nor designed.  Even Plaintiffs' own expert agrees the experience of commercial users does not support conclusions about the failure rate of drives under consumer use.  ECF No. 158-7 ("Hospodor Rebuttal Declaration") ¶ 53.  The "new" documents still do not show Seagate made common, affirmative misrepresentations that gave rise to a common disclosure obligation or any presumption of class-wide reliance or materiality.  Plaintiffs' Administrative Motion should be denied.

## II.    ARGUMENT

### A.    The "New" Documents Are Irrelevant, Cumulative, and Do Not Support Certification

Plaintiffs assert the newly proffered exhibits provide "direct evidence of Seagate misleading its customers[,]" "emphasize the materiality of Seagate's omissions[,]" and "form conclusions regarding the drive defects."  ECF No. 167 at 3:21-27.  These issues go to the merits of this case;

they do nothing to establish the requirements for class certification.  Plaintiffs' request that the Court

consider these supplemental documents is therefore premature and should be denied.[1]

1.    **The "New" Documents Establish Neither a Defect Nor a "High Failure Rate" Relevant to Consumers**

First, Plaintiffs proclaim "[t]he new documents prove that the drives were defective."  ECF

No. 167-3 at 2:4.  Then what is the defect?  Plaintiffs do not seek to revive their implied warranty

claim with this supposed newfound evidence of a defect.  In fact, they nowhere point to any

document that identifies a defect.  Plaintiffs' claim is baseless and should be disregarded.

As to a "high failure rate," the same is true as to any rate that could be relevant to this case.

With the exception of Exhibit 64, ***none*** of the "new" documents relate to drive failures in *consumer*

use.[2]  Rather, the documents relate to commercial and institutional users who were abusing the

drives in large-scale, heavy-duty operations for which they were not designed.  ECF No. 167-5,[3]

Ex. 58 at FED_SEAG0072387 (███████████████████████ containing "***36 of the***

***ST3000DM001. 3TB drives in each system***"); Ex. 59 at FED_SEAG0072649 (same); Ex. 60

(████████ is an "***Enterprise Servers***" company that was returning pre-January 2012 drives)[4]; Ex.

62 at FED_SEAG0072348 and Ex. 68 ("They [████████] have 4 enclosures (SuperMicro) ***each***

***with 36 - 3TB Barracuda drives*** installed"); Ex. 63 at FED_SEAG0071792 (███████████

_____

[1]  The discovery issues are discussed in the parties' Further Joint Case Management Statement, ECF No. 166, and will be further addressed in an upcoming discovery motion Plaintiffs have stated they intend to file.  As such, Seagate does not address the inflammatory (and factually unsupported) discovery accusations in Plaintiffs' submission here.

[2]  Exhibit 64 is the only "new" document that appears to relate to consumers.  However, Plaintiffs fail to tell the Court that it concerns many drives not at issue.  For example, there are six entries that relate to Better Business Bureau complaints, one for a 1TB drive (not at issue), one for a 2TB drive (not at issue), one for a 4TB drive (not at issue), and three that do not specify a drive type or size.  ***There is no evidence that any of the BBB entries relate to the ST3000DM001 drive at issue in this case***.  The document is irrelevant.

[3]  All references to "Ex." refer to this docket entry.

[4]  The firmware to which this commercial user refers, "CC4**B**," does not exist. FED_SEAG0018735. The original firmware for the drive was "CC4**8**."  A revision ("CC4D") was released in ***January 2012—as Plaintiffs' expert admits***.  ECF No. 133-5 (Hospodor Declaration) ¶ 164.  Therefore, this user is clearly discussing the original firmware (mistaking an "8" for a "B"), meaning that ***the drives predated January, 2012*** and the user had failed to update the firmware. Plaintiffs are wrong.  *See* ECF No. 167-3 (Proposed Supp. Brief) at 4.

1  ██████████████, used **over 3,000** ST3000DM001 drives); *id*. at FED_SEAG0071795 (**each**

2  **Shutterfly server** had 45 or 48 drives); Exs. 65-67 & 70-71 (these documents relate to

3  ████████████████████ provided the large-scale systems for ████████)[5]; Ex. 69

4  (Backblaze used "desktop-class drives and some external drives" "in enterprise-class workloads -

5  which they were NOT designed for nor tested to support").[6]

6       Thus, the "new" documents that appear to relate to the ST3000DM001 **all concern**

7  **commercial users like Backblaze**—dozens of drives packed into single storage units, operated on a

8  "24/7" basis in high-vibration, high workload environments.  ECF No. 150-4 [Adams Decl.], ¶¶ 79-

9  81; ECF No. 152-1, Ex. 17 [Rollings Decl.], ¶¶ 4-9; Ex. 67 at FED_SEAG0072000 (Cleversafe's

10  customers' drives showed vibration-induced damage).  Plaintiffs based their Complaint on the

11  Backblaze posts, and received over 12,000 Backblaze documents in 2016.  Documents about

12  commercial users, such as ████████████, were also produced early in the litigation.[7]  These

13  "new" documents are merely cumulative of information Plaintiffs have had for years.[8]

14       Finally, the documents are still confined to a small subset of drives and thus do not and

15  cannot show **common** "failure rates" or **common** "defects" **as to the alleged class as a whole**.  Exs.

16  58-59 (████ drives were 2011 Grenada Classic); Exs. 62, 68 (████████ drives were 2011-2012

17

---

18     [5] ████████████████ were not end-users of the drives.  ████████████████████

19  ████████████████████████████████████████ *See, e.g*., Ex. 66 at FED_SEAG0071984; Ex. 58 at FED_SEAG0072382.

20     [6]  Finally, Exhibit 61 apparently relates to the company ████████, firmware that had not been updated to the latest version, and an end-user in the Czech Republic with a failure in Czech and has a

21  ".cz" email address—obviously not a class member.  *See* Ex. 61 at FED_SEAG0072680.  It is difficult to discern any relevance of this document.

22     [7]  *See* Joint Case Management Statement, ECF No. 166 at 2:24-3:11; *see also* ECF No. 152-

23  1, Ex. 31, at ¶¶(1)(q), (2)(b) & (g) (state plaintiffs attempted to rely on ████████████████ documents in support of their class certification motion filed nearly a year ago; all were held

24  inadmissible by Judge Karnow).

25     [8]  Indeed, even though Plaintiffs relied heavily on Backblaze to bring their Complaint, they soon realized the Backblaze data could not establish a defect or a failure rate relevant to consumers, and they never even deposed Backblaze.  Plaintiffs' opening expert report contains only a single

26  paragraph on Backblaze, and no discussion of ████████████████.  ECF No. 133-5 [Hospodor

27  Decl.], ¶ 104.  The reason is simple:  alleged "failures" in these commercial environments **cannot** support conclusions about failure rates **in consumer use, as Hospodor admits**.  (ECF No. 158-7

28  [Hospodor "Rebuttal" Report], ¶ 53.)  These "new" documents do not support class certification any more than the Backblaze reports or earlier-produced ████████ documents did.

Case No. 3:16-cv-00523-JCS

SMRH:486073602.4

SEAGATE'S OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE
MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

1    Grenada Classic); Ex. 65 at FED SEAG0072058-60, Exs. 66, 67, 70, 71 (Cleversafe/ Shutterfly

2    drives were "early vintage" Grenada BP from late 2012 to early 2013).

3          **2.**    **The Documents Do Not Support Plaintiffs' Claim of "Active Concealment"**

4          Nor do the documents support Plaintiffs' accusation that "Seagate actively concealed

5    information about the drive's true failure rate."  ECF No. 167-3 at 5.  ████████████████

6    ██████████████████████████████████████████████████████.  ECF

7    No. 133-5 (Hospodor Declaration) ¶ 183 (████████████████████████████████

8    ██); ECF No. 150-4 (Adams Decl.) ¶ 106; ECF No. 152-1, Ex. 18 (Ng Decl.) ¶ 11 (██████

9    ████████████████████).  Indeed, the point of Apple's so-called "recall" was to replace the

10   drives regardless of whether they failed.  Accordingly, it would be inaccurate for Seagate (or

11   Plaintiffs) to suggest all Apple drives failed, and it was appropriate for Seagate to remove them

12   from the totals.  Moreover, the Apple drives were "OEM" drives, ***which are not at issue in this***

13   ***litigation***.  "Disty" drives are at issue in this litigation and ***Seagate separately calculated return***

14   ***rates on Disty drives***.  Ex. 71 at FED SEAG0072019.  The <u>**cumulative**</u> return rate over 36 months

15   (three years) for pre-June 2013 Disty 3TB drives was a little over 7%.  *Id*. (purple line).  That

16   means that after three years of service, less than 8% ***total*** of the Disty drives had been returned

17   while 92% remained in the field.  That is an average annual return rate of <u>**less than 3%.**</u>  The post-

18   June 2013 3TB Disty drives did even better, with a two-year cumulative return rate of 3% and only

19   <u>**1.5% each year**</u>.  *Id*. (blue line); ECF No. 150-6 (Almgren Decl.) ¶ 29 (explaining cumulative vs.

20   annual return rates); ECF No. 150-4 (Adams Decl.) ¶ 78 (same).  Plaintiffs have not shown that an

21   annual return rate of 1.5% or 3% is material or relevant or supports class certification.[9]

22   **B.**    **The Supplemental Brief and Exhibits Still Do Not Establish a Common Disclosure**
23          **Obligation, or Permit a Presumption of Classwide Reliance and Materiality**

24         More fundamentally, the documents are irrelevant to the legal issues before the Court on

25   class certification under the correct legal standard.  A majority of courts, including this one, have

26   held that "absent affirmative representations, an obligation to disclose under California law extends

27   _____

28       [9] Nor do Plaintiffs identify any other "true" failure rate they claim Seagate should have
     disclosed.

only to matters of product safety." *See, e.g.*, *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 965 (N.D. Cal. 2016) (citing *Wilson*, 668 F.3d at 1136-1141 (9th Cir. 2012) (*Wilson*)) (UCL, CLRA, and FAL claims dismissed because plaintiffs did not allege safety defect or affirmative representation giving rise to duty to disclose); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 663 (N.D. Cal. 2016) (same); *Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1024-26 (N.D. Cal. 2016) (same, collecting cases); *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1076 (N.D. Cal. 2017) (same); *Marcus v. Apple, Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at *6 (N.D. Cal. Jan. 8, 2015) (*Marcus*); *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 Fed. App'x. 608, 609 (9th Cir. 2014) (no claim under UCL or CLRA absent safety issue or affirmative representation); *see also* ECF Nos. 156 (Class Cert. Opp.) at 1:12-21, 5:3-7:3, 9:18-11:14, 20:15-22:2; 158-1 (Seagate's Sur-Reply).[10]

Applying this standard, Plaintiffs still cannot establish that putative class members were exposed to, and relied on, any affirmative representations by Seagate that gave rise to a common duty to disclose. This is because Plaintiffs have only argued that Seagate communicated its affirmative misrepresentations through an "advertising campaign" limited to its website, which provided links to various PDFs that had representations related to RAID and AFR for a fraction of the products at issue in this case. *See* ECF No. 156 at 1:12-21, 5:3-7:3, 9:18-11:14, 20:15-22:2. None of the supplemental evidence changes these fundamental flaws in Plaintiffs' Motion. As such, the materials Plaintiffs propose to submit add nothing to their position on class certification, and the Court should deny their request to file a supplemental brief.

### III.    CONCLUSION

The Court should deny Plaintiffs' Motion for Leave to File a Supplemental Brief and their Motion for Class Certification.

---

[10] Indeed, Judge Alsup, who decided *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007), reversed course in *Marcus*, relying on *Wilson* to hold that an omission claim based on the defendant's alleged active concealment of a defect was non-actionable. *Marcus*, 2015 WL 151489, at *5-6. This is significant because the Court of Appeal in *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-56 (2011) relied on *Falk* as the basis for applying the *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) test to consumer protection claims. Of course, this Court also held that a "pure omissions" claim was not actionable under the UCL and/or CLRA in *Dana*, applying *Wilson*. The law has not changed since *Dana* so as to alter the Court's conclusion here.

1    Dated:  April 24, 2018

2                              By    _____
                                            */s/ Anna S. McLean*
3                                         ANNA S. McLEAN
                                        Attorneys for Defendant,
4                                      SEAGATE TECHNOLOGY LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28