Steve W. Berman (*pro hac vice*)
Breanna Van Engelen (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the*
*Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION<br><br>DATE: Jan. 18, 2019<br>TIME: 9:30 a.m.<br>DEPT: Hon. Joseph C. Spero<br>Courtroom G, 15th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 18, 2019, at 9:30 a.m. or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, 15th Floor, Courtroom G, before the Honorable Judge Joseph C. Spero, plaintiffs will and hereby do, move the Court for an order under Fed. R. Civ. P. 23(a) and (b)(3) certifying the following Classes:

1. **California Class**. All individuals who reside in California and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model numberST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "California Class"). The California Class seeks class certification of claims for violations of: (a) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (CLRA); (b) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL); and (c) the False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL).

2. **Florida Class**. All individuals who reside in Florida and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "Florida Class"). The Florida Class seeks class certification of claims for violations of the Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.204.

3. **Massachusetts Class**. All individuals who reside in Massachusetts and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "Massachusetts Class"). The Massachusetts Class seeks class certification of claims for violations of Massachusetts Gen. Laws Ch. 93A.

4. **New York Class**. All individuals who reside in New York and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "New York Class"). The New York Class seeks class certification of claims for violations of New York Gen. Bus. Law § 349.

5. **South Carolina Class**. All individuals who reside in South Carolina and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "South Carolina Class"). The South Carolina Class seeks class certification of claims for violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10.

6. **South Dakota Class**. All individuals who reside in South Dakota and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "South Dakota Class"). The South Dakota Class seeks class certification of claims for violations of the South Dakota Deceptive Trade Practices & Consumer Protection Statute, S.D.C.L. § 34-27-1.

7. **Tennessee Class**. All individuals who reside in Tennessee and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "Tennessee Class"). The Tennessee Class seeks class certification of claims for violations of the Tennessee Consumer Protection Act, Tenn. Code § 47-18-104.

8. **Texas Class**. All individuals who reside in Texas and purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001 manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2" (the "Texas Class"). The Texas Class seeks class certification of claims for violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code § 17.41.

Plaintiffs also move under Federal Rule of Civil Procedure 23(g) for the appointment of the following law firms as Class Counsel for all certified Classes: Hagens Berman Sobol Shapiro LLP & Axler Goldich, LLC.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declaration of Shana E. Scarlett in Support of Plaintiffs' Renewed Motion for Class Certification and exhibits thereto.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...........................................................................................................1

II.   SUMMARY OF CLASSWIDE EVIDENCE ESTABLISHING CLAIMS.....................2

    A.   Throughout the Class Period, Seagate advertised that the drives had a failure rate
        of less than one percent. ....................................................................................2

    B.   Seagate knew that its advertised AFR was materially incorrect and that the
        drives failed at much higher rates.....................................................................4

        1.   Seagate internally measured AFR rates that exceeded advertised rates,
            yet it did not disclose the higher rates to customers. ...............................4

        2.   Despite Seagate's largest corporate customers alerting it to the drive
            failures, Seagate did not disclose the true to class members. ...................9

    C.   Plaintiffs can prove materiality and class members' damages using common
        evidence and methodologies............................................................................11

III.  THE PROPOSED CLASSES MEET THE RULE 23 CERTIFICATION
    REQUIREMENTS ......................................................................................................13

    A.   Each of Rule 23(a)'s prerequisites are satisfied. .................................................13

        1.   The classes are sufficiently numerous...................................................13

        2.   Plaintiffs' and class members' claims share common questions of fact
            and law, satisfying Rule 23(a)(2). ........................................................13

        3.   Plaintiffs' claims are typical of the classes' claims, satisfying Rule
            23(a)(3). ..............................................................................................15

        4.   Adequacy of representation is satisfied under Rule 23(a)(4). .................16

    B.   The Classes Meet the Requirements of Rule 23(b) .............................................16

        1.   Common questions of law and fact concerning liability predominate over
            questions affecting only individual class members. ...............................17

            a.   The laws of the eight states all recognize a duty to disclose a
                material fact, measured by the reasonable consumer. .................17

            b.   Each state's statute of limitations is subject to tolling using
                 common proof. ...........................................................................25

        2.   Damages are common to the state classes...............................................27

        3.   A class action is the superior method of adjudication ............................27

    C.   The classes are ascertainable. ...........................................................................27

D.    Proposed class counsel will fairly and adequately represent the class. ...............28

IV.    CONCLUSION ...................................................................................................................28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Ackerman v. Coca-Cola Co.,*
5
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) ...............................................................22

6

*Alcantar v. Hobart Serv.,*
    800 F.3d 1047 (9th Cir. 2015) ...................................................................................14
7

*Amgen v. Conn. Ret. Plans and Trust Funds,*
8
    133 S. Ct.1184, 1191 (2013) ......................................................................................16

9

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013) ...............................................................................19
10

11

*In re Auto. Parts Antitrust Litig.,*
    2013 WL 2456612 (E.D. Mich. June 6, 2013) ..........................................................26
12

*Beyer v. Symantec Corp.,*
13
    2018 WL 4584217 (N.D. Cal. Sept. 21, 2018) .........................................................18

14

*Brazil v. Dell Inc.,*
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) .....................................................................24
15

16

*In re Broiler Chicken Antitrust Litig.,*
    290 F. Supp.3d 772 (N.D. Ill. 2017) .........................................................................26
17

*Cameron v. E.M. Adams & Co.,*
18
    547 F.2d 473 (9th Cir.1976) ......................................................................................25

19

*In re Carrier IQ, Inc. Cons. Priv. Litig.,*
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................................19
20

21

*Carriuolo v. Gen. Motors Co.,*
    823 F.3d 977 (11th Cir. 2016) ...................................................................................20
22

*Cavette v. Mastercard Int'l, Inc.,*
23
    282 F. Supp. 2d 813 (W.D. Tenn. 2003) ...................................................................24

24

*Cloud Nine, LLC v. Whaley,*
    650 F. Supp. 2d 789 (E.D. Tenn. 2009) ....................................................................24
25

26

*Collins v. eMachines, Inc.,*
    202 Cal. App. 4th 249 (2011) ....................................................................................18
27

*In re ConAgra Foods, Inc.,*
28
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................................22, 24

*In re Currency Conversion Fee Antitrust Litig.*,
224 F.R.D. 555 (S.D.N.Y. 2004)........................................................................23

*Deere Constr. v. Cemex Constr. Materials Florida, LLC*,
2016 WL 8542540 (S.D. Fla. Dec. 1, 2016)........................................................20

*Delagarza v. Tesoro Ref. & Mktg. Co.*,
2011 WL 4017967 (N.D. Cal. Sept. 8, 2011)......................................................17

*Ehret v. Uber Techs., Inc.*,
148 F.Supp.3d 884 (N.D. Cal. 2015)..................................................................19

*In re Facebook, Inc. PPC Adv. Litig.*,
282 F.R.D. 446 (N.D. Cal. 2012).......................................................................13

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) ..........................................................14, 15, 16

*Guido v. L'Oreal USA, Inc.*,
2013 WL 3353857 (C. D. Cal. July 1, 2013) ......................................................18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).......................................................15, 16, 28

*Hanrahran v. Specialized Loan Serv., LLC*,
54 F. Supp. 3d 149 (D. Mass. 2014)..................................................................21

*Herremans v. BMW of N. Am., LLC*,
2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ................................................19, 25

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ............................................................................18

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
299 F.R.D. 648 (S.D. Cal. 2014) .......................................................................26

*Lambert v. Nutraceutical Corp.*,
870 F.3d 1170 (9th Cir. 2017) ..........................................................................12

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ............................................................................27

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ......................................................26

*Lombardo v. Johnson & Johnson Consumer Cos.*,
124 F.Supp.3d 1283 (S.D. Fla. Aug. 12, 2015)..................................................20

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ...................................................26

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) ...................................................................21

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 430 (S.D.N.Y. 2015) .........................................................25

*Melgar v. CSK Auto, Inc.*,
    2015 U.S. Dist. LEXIS 170833 (N.D. Cal. Dec. 22, 2015)..........................27

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*,
    2012 WL 4761435 (D.S.C. Oct. 3, 2012)......................................................26

*In Re Motions to Certify Classes Against Court Reporting Firms for Charges
    Relating to World Indices*,
    715 F.Supp.2d 1265 (S.D. Fla. 2010)...........................................................20

*Newton v. Am. Debt Serv., Inc.*,
    2015 U.S. Dist. LEXIS 74626 (N.D. Cal. June 9, 2015)..........................14, 27

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ................................................................25

*In re Optical Disk Drive Antitrust Litig.*,
    2012 WL 1366718 (N.D. Cal. Apr. 19, 2012)...............................................26

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*,
    647 N.E.2d 741, 745 (N.Y. 1995). ..............................................................22

*Pecover v. Elec. Arts Inc.*,
    2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .............................................27

*Perez-Olano v. Gonzalez*,
    248 F.R.D. 248 (C.D. Cal. 2008)..................................................................13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009) .......................................................................21

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ....................................................................................13

*Razor Capital, LLC v. CMAX Fin. LLC*,
    2017 WL 3481761 (S.D. Fla. Aug. 14, 2017) ..............................................26

*Rannis v. Recchia*,
    2010 WL 2124096 (9th Cir. May 27, 2010)..................................................13

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015)..................................................................22

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) .............................................................22

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery,*
    *LLC*,
    278 F. Supp. 3d 1307 (S.D. Fla. 2017)..........................................20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................16

*True v. Am. Honda Motor Co.*,
    2009 WL 838284 (C.D. Cal. Mar. 25, 2009) ................................28

*V.S.H. Realty, Inc. v. Texaco, Inc.*,
    757 F.2d 411 (1st Cir. 1985) ........................................................21

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................14

*Waller v. Hewlett-Packard Co.*,
    295 F.R.D. 472 (S.D. Cal. 2013) ..................................................19

*Williams v. Sinclair*,
    529 F.2d 1383 (9th Cir.1975)........................................................25

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010).................................................15, 27

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) .................................................13

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011).......................................13

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ......................................................13

**STATE CASES**

*Concrete Spaces, Inc. v. Sender*,
    2 S.W.3d 901 (Tenn.1999) ...........................................................23

*deBondt v. Carlton Motorcars, Inc.*,
    536 S.E.2d 399 (S.C. Ct. App. 2000) ...........................................23

*Gutierrez v. Carmax Auto Superstores Cal.*,
    19 Cal. App. 5th 1234, 1258 (2018) .............................................18

*Haverlah v. Memphis Aviation, Inc.*,
   674 S.W.2d 297 (Tenn.Ct.App.1984)..................................................................23

*Hershenow v. Enter. Rent-A-Car Co. of Boston*,
   840 N.E.2d 526 (Mass. 2006)..........................................................................21

*Holmes v. Foster Pontiac GMC, Inc., Shelby Law No. 9*,
   1989 WL 48515 (Tenn. Ct. App. May 10, 1989).................................................23

*Koch v. Acker, Merrall & Condit Co.*,
   967 N.E.2d 675 (N.Y. 2012) ..........................................................................22

*Lopez v. Nissan N. Am., Inc.*,
   201 Cal. App. 4th 572 (2011) ........................................................................19

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
   842 So. 2d 773 (Fla. 2003) ............................................................................20

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 ..................................................................................18

*Slaney v. Westwood Auto, Inc.*,
   322 N.E.2d 768 (Mass. 1975)....................................................................20, 21

*Spradling v. Williams*,
   566 S.W.2d 561 (Tex. 1978) ..........................................................................24

*State v. W. Capital Corp.*,
   290 N.W.2d 467 (S.D. 1980) ..........................................................................23

*S.V. v. R.V.*,
   933 S.W.2d 1 (Tex. 1996) ..............................................................................25

*Szymanski v. Boston Mut. Life Ins. Co.*,
   778 N.E.2d 16 (Mass. 2002) ..........................................................................26

*Tucker v. Sierra Builders*,
   180 S.W.3d 109 (Tenn. Ct. App. 2005)............................................................23

*U.W. Marx, Inc. v. Bonded Concrete, Inc.*,
   776 N.Y.S.2d 617 (2004) ..............................................................................22

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*,
   777 S.E.2d 176 (S.C. 2015)............................................................................22

*Wright v. Craft*,
   640 S.E.2d 486 (S.C. Ct. App. 2006) ..............................................................22

### STATE STATUTES

Consumer Legal Remedies Act, Cal. Civ. Code § 1750 ...................................17, 18, 19, 24, 25

False Advertising Law, Cal. Bus. & Prof. Code § 17500 ...................................................17, 19

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ................................................17, 19

Fla. Stat. § 501.204(1) ........................................................................................................19

Mass. Gen. L. ch. 93A, § 2 ............................................................................................20, 21

N.Y. Gen. Bus. L. §§ 349, 350 ......................................................................................21, 22

S.C. Code Ann. § 39-5-20(a).................................................................................................22

S.D. Codified Laws §§ 37-24 .........................................................................................23, 26

Tenn. Code Ann. § 47-18-109(a)(1) and (3) .................................................................23, 24

Tex. Bus. & Com. Code § 17.46(a)................................................................................24, 25

### FEDERAL RULES

Federal Rule of Civil Procedure 23 ...................................................................................... *passim*

## I.    INTRODUCTION

During the Class Period of October 2011 to January 2015, Seagate advertised its 3 terabyte (TB) Desktop HDD and Barracuda drives as the perfect solution to safely store consumers' precious documents, family photos, and other personal data. As Seagate's Vice President of Marketing notes, "[n]early everything that is dear to us is now in a digital format; from tax documents, to emails, to family photos and video, many of these files cannot be recreated in the event of an accidental loss of system failure." Ex. 1[1] Enticed by Seagate's representations that these drives would keep their data safe from loss, thousands of customers bought Seagate's 3TB Barracuda drive.

Plaintiffs have narrowed the class definition in four ways to address the Court's concerns. *First*, to mitigate the Court's concerns that differences in internal and external drives would "require inquiries into the usage, marketing, and expectations related to a number of different external products not common to the class as a whole,"[2] plaintiffs now limit the class to internal drives alone. Seagate represented that these internal drives had an annualized failure rate (AFR) of less than one percent or, even better, .34 percent.  Seagate published these failure rates in its product manuals, data sheets, and on its website. *See, e.g.* Ex. 2 at 2; Ex. 3 at 12; Exs. 4-6; and Ex. 7 at 9.

*Second*, plaintiffs limit the class to specific type of internal drive – the Barracuda drives, which Seagate renamed the Desktop HDD between 2012 and 2013. Ex. 8 at 51:1-53:8, 257:20-258:16. Internally, Seagate referred to these drives as the Grenada Classic and Grenada BP drives. Ex. 9 at 4. The move from Grenada Classic to Grenada BP was not a complete redesign of the drive. As Seagate testified, "rather than a brand-new design, new capacity drive, this is deemed to be – we're trying to demonstrate equivalency with the changes for the product." Ex. 10 at 207:7-208:8. Plaintiffs exclude the last iteration of these drives, the Grenada BP2 drives, from the class.[3]

---

[1] All exhibit references are to the Declaration of Shana E. Scarlett in Support of Plaintiffs' Renewed Motion for Class Certification (Scarlett Decl.), unless otherwise indicated.

[2] *See* Order Denying Motion for Class Certification (Class Cert. Order) at 35, July 5, 2018, ECF No. 182.

[3] The Grenada BP2 drives can be excluded through part numbers. On August 30, 2018, plaintiffs served discovery requesting these part numbers from Seagate. After being granted an extension, Seagate responded on October 5, 2018 with the following: "Seagate will continue to investigate this issue and will provide Plaintiff with a supplemental response as soon as reasonably possible." Ex. 11

*Third*, the renewed motion limits the Class Period to October 2011 to January 2015 – the period during which Seagate made misrepresentations regarding the failure rates of the drives.

*Fourth*, using Seagate's internal documents, plaintiffs demonstrate that the drives **never consistently** performed at the advertised failure rates during the Class Period. This evidence shows that Seagate knew that the drives were failing at much higher rates than advertised, and yet it never informed customers. Instead of telling the truth, Seagate let customers pay the price for its mistakes. Many Seagate customers lost irreplaceable mementos such as artwork made by now-deceased relatives, genealogy records, and family photographs. Ex. 12 at 20:11-21. And to add insult to injury, Seagate sometimes profited *twice* from its false misrepresentations: not only did it sell customers drives that it knew would fail higher rates than promised, but it also offered data recovery service for those who lost everything – for an additional fee.[4]

Under Federal Rule of Civil Procedure 23(b)(3), plaintiffs seek certification of eight states classes. As detailed below, the proof is common to all members of the classes.

## II.     SUMMARY OF CLASSWIDE EVIDENCE ESTABLISHING CLAIMS

**A.     Throughout the Class Period, Seagate advertised that the drives had a failure rate of less than one percent.**

From the very beginning, Seagate advertised that its internal drives had failure rates at or better than the industry average. In 2011, Seagate published on its website that the drives had an AFR of less than one percent. Ex. 4. These AFR statements also appeared in the 2011 Barracuda data sheet – which was also available from the Seagate website. Ex. 2.

---

at 6. The part numbers are readily available and not unduly burdensome to produce. Seagate should be precluded from any challenge to this part of plaintiffs' renewed motion for class certification given its failure to provide this information in a timely manner.

[4] *See e.g.*, Ex. 13 at FED_SEAG0076681 (Customer reviews: ███████████████████████████ ██████████████████"; Ex. 14 (Seagate communication: █████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████

1  Seagate continued to represent that the AFR was less than one percent throughout 2012. Ex.

2  15. By April of 2012, Seagate began making even more specific representations: that the drives'

3  AFR was actually ".34%., <1%". Ex 5. This new representation appeared on Seagate's website:



In addition to appearing on the website, Seagate continued to advertise AFRs of less than one percent

in the drive's data original sheet (available to download from the website), as well as in Seagate's

Storage Solutions Guide – a document that compares different Seagate drives for customers. *See* Ex.

16 at 17; Ex. 17 at 17; Ex. 18 at 31.

At various times through this litigation, Seagate has tried to characterize these AFR

representations as "hidden" or inaccessible. But these AFR representations were not hidden from

customers during the Class Period; in fact, Seagate circulated the AFR statements in publications

upon which it knew customers were relying. For example, Seagate's marketing manager made clear

that ███████████████████████████████████████████

███████████" by customers. Ex. 19.

Between 2012 and 2013, Seagate changed the marketing name of its Barracuda drive, calling

it the Desktop HDD. Ex. 8 at 51:1-53:8, 257:20-258:16. Despite the name change, the drive

remained the same. The Barracuda and Desktop HDD products all used the same highly leveraged

design, known internally at Seagate as the "Grenada" design. Ex. 9 at 4. And Seagate continued to

make misleading and inaccurate AFR representations in 2013 and 2014. The 2013 Desktop HDD

2013 Storage Solutions Guide promised an AFR of less than one percent. Ex. 21 at 31. Seagate's

website in 2013 also listed the Desktop HDD drive's AFR as .34 percent:

| PRODUCT NAME | AREAL DENSITY | ENCRYPTION | AFR | MEAN TIME BETWEEN FAILURES | AVERAGE OPERATING POWER |
|---|---|---|---|---|---|
| Desktop HDD
LEARN MORE >
Desktop HDD Data Sheet (444KB) | 329 Gfc/in^2Gb/in², 329Gb/in², 625 Gfc/in^2Gb/in², 625Gb/in² | Security/Encryption, Volume level encryption | 0.34% | 750,000hr | 6.19W, 7.50W, 8.0W, <8.0W, <9.4W |

This .34 percent AFR for the Desktop HDD appeared on Seagate's website in 2014. *See* Ex. 6. And even after Seagate removed the AFR representations from some documents, Seagate never issued a clarification regarding its prior misstatements. Rather, the misleading AFR representations remained accessible to consumers on the internet.

**B.     Seagate knew that its advertised AFR was materially incorrect and that the drives failed at much higher rates.**

Although plaintiffs need not prove their claims now, common evidence shows that Seagate knew from the start that its Barracuda/Desktop HDD drives sustained serious engineering, coding, and contamination issues. Its own internal testing of the Barracuda/Desktop HDD reflected a much higher failure rate than advertised throughout the Class Period. Seagate's sophisticated corporate customers also alerted Seagate to problems with these drives.

**1.     Seagate internally measured AFR rates that exceeded advertised rates, yet it did not disclose the higher rates to customers.**

Internally, Seagate measured the AFRs of the Barracuda/Desktop HDD drives. Throughout the Class Period, Seagate's internal testing exceeded the advertised AFR. This was true for both the Grenada Classic and the Grenada BP product iterations of the drives. Ex. 22 at 33-35. Yet Seagate never disclosed the higher AFR rates to customers.

Seagate introduced the Barracuda in the fall of 2011. Within months, it became clear to Seagate that the drives would not meet the advertised AFR specifications. For example, in February 2012, Seagate estimated that the overall AFR for the drives was approximatel ████████ due to an assortment of issues, as demonstrated by the graph below:



Ex. 22 at 33-35. This was not an isolated incident; Seagate's tests from this period demonstrate that drives' AFR was above 1 percent consistently *for more than 12 weeks* in February 2012 – and trending higher:



Ex. 23. At the end of this 12-week testing period, Seagate estimated that its Grenada drives had a failure rate of ███████ Seagate issued a ██████ ship-hold for the drives. Ex. 24. But before Seagate issued the ship-hold, Seagate shipped hundreds of thousands, and possibly millions, of drives with high failure rates to retailers. At least ██████ from the ████████ were released to

retailers and sold to customers during this period, even though Seagate's own testing demonstrated a failure rate was above one percent. *Id.* Two other factories were not able to provide an estimate approximating how many defective drives were released from those factories. But assuming that the production output for these two factories was similar to that of the ▮▮▮▮▮ Seagate could have released more than one million defective drives between October 2011 and February 2012. Seagate later conducted an analysis to determine the causes of drive for the Grenada drives, and the most common cause, which Seagate estimated accounted for ▮▮▮▮▮ drive failures, was ▮▮▮▮ ▮▮▮▮ Ex. 25 at 7.

Despite Seagate's four-day ship hold, problems with the Grenada drives continued. An internal quality report dated March 6, 2012, demonstrated that the 12-week rolling AFR average was still ▮▮ percent in March. Ex. 26 at 4. Similarly, Seagate's data from June 2012 demonstrates a raw AFR of ▮▮ percent and a corrected AFR of ▮▮ percent. Ex. 34 at 36. And Seagate acknowledged in these documents that, even if every suggested fix went according to plan, in Seagate's best-case scenario, the "potential reduced AFR," no lower than ▮▮ percent. *Id.* This indicates ***that Seagate knew that it could not reach the AFR it advertised***. Yet it did nothing to inform customers. To the contrary, Seagate reduced the AFR in its marketing materials to ".34%, <1%" – a result it had ***never*** reached in its tests during this period.

In July 2012, Seagate's own employees expressed serious concerns about how often the Grenada Classic exceeded trigger limits and observed that Seagate was "▮▮▮▮▮▮▮" Ex. 27. Seagate noted that the high failure rate of the drives seemed ▮▮▮▮▮▮ ▮▮▮▮" *Id.* Joni Clark, Global NAS Segment Manager at Seagate, later stated in an internal email that the Grenada had ▮▮▮▮▮▮▮▮▮▮" Ex. 28. Even so, Seagate continued to advertise the AFR of .34 percent on its website.

By October 2012, Seagate issued at least six ship-holds due to contamination problems in the drives. Ex. 29. Problems continued through the end of November, with both failure rates for the Grenada Classic and the Grenada BP above one percent for most weeks of testing:

Ex. 30 at 2. The chart above demonstrates the failure rate for the OEM Grenada Classic and Grenada

BP – drives made for "original equipment manufacturers" such as ████████████    When these

drives tested as defective, Seagate elected to push its failing OEM drives into the hands of less-

sophisticated consumers. For example, ██████████ Seagate issued a ship hold that affected

approximately ████ shipped drives. Ex. 31 at 4. But Seagate only applied the ship hold to drives

going to its largest customers – original equipment manufacturers, ████████████ It did

not apply the ship hold to drives going to consumers. Rather, Seagate instructed the factory to

████████████████████" *Id.* In other words, Seagate shipped failing drives to

retailers and resellers, who in turn sold them directly to consumers. One Seagate engineer

commented, ████████████████████████████████

████████████████████████████████

████████████████ Ex. 27. Despite these concerns, Seagate continued to sell these

low quality, failing drives to consumers. All while Seagate advertised low AFR rates.

    Problems with the Grenada Classic and Grenada BP persisted throughout the Class Period. In

a report dated September 3, 2012, Seagate identified "████████████████ as one of

three "████████████████ plaguing the Grenada. Ex. 32 at 11. Seagate continued to

test for failure rates above one percent through November 2012:

1

2

3

4

5

6

7

8

9

10



Seagate's tests informed it that AFR was above two percent for almost this entire period,

11

peaking at ▉ percent. Ex. 33 at 3. During this period, the Grenada BP was also suffering from high

12

failure rates. Seagate identified problems with the Grenada BP iteration that persisted throughout the

13

Class Period, including the problem of ▉▉▉▉▉," an issue that also plagued the Grenada

14

Classic. Ex. 34 at 7. One month later, Seagate tested the failure rate of the Grenada Classic again and

15

found that the drive had an AFR of ▉ percent, ▉▉▉▉ *igher* than the advertised rate of .34

16

percent. Ex. 34 at 35. Even as the drive changed over time, Seagate never consistently managed to

17

reach the .34 percent AFR it promised consumers. For example, in January 2014, Seagate determined

18

that the Grenada BP2 had an AFR of ▉ percent. Ex. 35. And even after implementing suggested

19

fixes, Seagate estimated that it could only reduce the AFR to ▉ percent, even though the website

20

promised a failure rate of .34 percent.  As the graph below demonstrates, between 2011 and 2013,

21

Seagate consistently tested higher AFRs for these drives than advertised to consumers:

22

23

24

25

26

27

28



This graph presents snapshots of Seagate's testing to its advertised rates for both the Grenada Classic and the Grenada BP. More detailed data comparing the advertised AFR to Seagate's tests can be found at Exhibit 63.

### 2. Despite Seagate's largest corporate customers alerting it to the drive failures, Seagate did not disclose the true to class members.

Seagate understood that the drives were failing at much higher rates than testing predicted throughout the Class Period because its sophisticated customers told Seagate as much. For example, ███ alerted Seagate in December 2011 that the Grenada drives had a "████████." Ex. 36. Seagate roiled, noting that *the drives* ████████████████████." *Id.*

In 2012, another Seagate corporate customer asked to return "████████████████ ████████████" due to ongoing reliability issues. Ex. 64. During this same period, Seagate admitted internally that the Grenada drives were ████████████ Ex. 37. Still, it continued to advertise low failure rates in data sheets and on its website.

███ also alerted Seagate to drive failures and requested a large-batch return in 2013. Ex. 38. And in 2014, ███ contacted Seagate to alert them to additional issues with the drives, noting that they had experienced such high failure rates that they had switched to a competitor. Seagate responded internally by noting that its drives were ████████" Ex. 39. Yet it issued no

1  correction to consumers who were less sophisticated while trusting Seagate with their data. Also in

2  2014, Seagate predicted that the drives it sold to ████████ failed at a ████████ rate. Ex. 40 at 2.

3  Seagate noted that *the* ████████ *failure rate was* "████████████████████████ – in other

4  words, it knew the real-world failure rate was much higher than Seagate's flawed AFR model could

5  demonstrate. *Id*.

6      And despite making changes to the drive design over time, Seagate admitted that the drives

7  continued to fail. For example, after the Grenada BP was released, Seagate noted that "████████

8  ████████████████████████████████████████████████

9  ████████████  Ex 41 at 2. Seagate later asserted that corrective actions on the Grenada BP had

10  no impact on the drive's performance: the ████████████████████████████████████

11  ████████████████" Ex. 42. And still, it continued to advertise low failure rates.

12      Eventually, Seagate's most sophisticated customers reacted to the high failure rates. ████

13  recalled the Grenada BP drives, ████████████████ of drive failures. Ex. 43. The

14  ████  recall was announced on June 19, 2015 but lacked any reference to Seagate. In addition to the

15  ████████████████  Drives, Seagate projected that there were "████████████████

16  ████████████████████████." Ex. 45. Notably, Seagate's

17  projection only considered drives that were still in warranty, meaning that the true number of

18  affected drives shipped to consumers was likely far greater than ████████████████

19  ████████████████  placed a stop-ship order on the drives because of the reliability issues.

20  Ex. 46 at 21. ████ told Seagate that it was "████████████ with the drives' performance and failure

21  rates. *Id*. And still, Seagate failed to inform consumers that the drives had high failure rates. Instead,

22  it told consumers that the drives had a less than one percent failure rate.

23      In 2015, Backblaze published a report measuring the failure rates of the drives as 28.46

24  percent. Ex. 47 at 3; *also* Ex. 48. Blackblaze's independent tests provide evidence that the failure rate

25  for the same set of drives *increased* over time, rather than following the traditional "bathtub" curve.

26  Ex. 49 at 4. Internally, Seagate employees acknowledged "████████████████████████

27  ████████████████████████████" Ex. 50. And in a document titled

28  ████████████████  which appears to be an outline for Seagate's ghostwritten rebuttal

articles to the Backblaze blogs, Seagate posits that one of the reasons that the drives were so

unreliable was that they █████████████████████████████████.” Ex. 51.

Seagate also suspected that its own testing model may have underestimated the true AFR of

the drives. Ex. 52. To generate an AFR, Seagate engineers were required to assume that failure rate

of the drive would decrease with time. *Id.* But, according to the Blackblaze tests, Seagate's drives did

not follow this model. *Id*. Internally, Seagate seriously questioned its AFR model and concluded that

████████████████████████████████████████████████████████████████

████████████████ *Id*. Despite these conclusions, Seagate did not implement reliability tests for

the drives that were significantly longer than six weeks. In other words, Seagate knew it was

underestimating the failure rate of its drives.

**C.     Plaintiffs can prove materiality and class members' damages using common evidence and methodologies.**

Seagate put consumers' digital lives at risk at a rate far greater than promised. Yet Seagate

repeatedly failed to inform consumers of the greater than expected risk – a fact it knew customers

would find material.

Plaintiffs' expert, Stefan Boedeker, offers evidence (common to the class) that the failure rate

of the drives was by far the most material characteristic for consumers. Boedeker Decl., ¶ 145.[5] Mr.

Boedeker is a renowned and highly qualified statistician and economist who employed a commonly

accepted methodology to evaluate and calculate damages on a class-wide basis. When asked,

consumers resoundingly responded that reliability was a material feature to them in the hard drives.

In the pre-test prior to the conjoint analysis, which asked open-ended questions, reliability was the

second most frequently named feature, behind only capacity. Boedeker Decl., ¶ 101. Using the

survey responses from the conjoint analysis, respondents said that reliability/AFR had the highest

perceived utility to the purchaser – that is, it was the most material characteristic. Seagate's own

documents provide further evidence of the materiality to consumers, particularly customer complaint

---

[5] Corrected Declaration of Stefan Boedeker in Support of Plaintiffs' Motion for Class Certification ("Boedeker Decl."), dated November 20, 2017, concurrently filed herewith.

and comment logs. Seagate's meticulous customer logs show quality and reliability as top customer concerns, and one of the reasons they are most likely to switch to a competitor.[6]

Mr. Boedeker's model can also evaluate and calculate damages on a class-wide basis. As submitted previously to the Court, Mr. Boedeker applied a form of conjoint analysis known as Choice-Based Conjoint Analysis, where study participants were shown sets of product profiles and were asked to choose the profile they would prefer to purchase if the choice menu offered would describe the only products that were available to them. Boedeker Decl., ¶ 70. This survey method closely mimics real world purchase processes. *Id.* Conjoint analysis allows for the prediction of the probability that a respondent will choose any product profile that is described, and can do so for any competitive set of products. *Id.* The analysis allows Mr. Boedeker to determine the difference in value (measured in dollars) that customers place on a Seagate drive that claims reliability compared to an otherwise identical Seagate drive that is not as reliable as claimed. *Id.*

At Mr. Boedeker's direction, a third-party survey was performed using a "double-blind," and other methods to ensure the validity of the data. *Id.*, ¶ 90. The survey itself asked 2,000 participants to rank the attributes – and the results of this survey reveal that AFR is by far the most important attribute to consumers (followed by price and warranty terms). *Id.*, ¶¶ 104, 145. The results of the conjoint analysis are two-fold. First, if a jury were to find a true AFR more than ten percent for the drives, Mr. Boedeker proposes a full refund would be appropriate.[7] Second, plaintiffs also propose an alternative theory of damages, based on a partial refund. If the jury were to decide that the true failure rates were less than 10% – at 3%, 5%, 8%, or 10%, for example – the economic loss of each class member would be 16.9%, 33.7%, 59.1%, and 75.4% of the sales price of the drive, respectively. Boedeker Decl., ¶ 22. All of this is evidence and methodologies common to the class.

---

[6] Ex. 53 ( ██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████ ). *See also* Ex. 54 ███████████
████████████████████████████████████████████████████████████████████████

[7] *Id*., ¶ 159; *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (Where a product has "no or only a *de minimis* value" to consumers, a full refund is an appropriate damages model for the jury to consider).

1

### III.    THE PROPOSED CLASSES MEET THE REQUIREMENTS OF RULE 23

Class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and ensure that plaintiffs have a right to redress wrongs that would otherwise "have no realistic day in court if a class action were not available."[8] This Court has extensively addressed the legal standard that governs class certification motions. Plaintiffs must demonstrate that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" have been met.[9] The classes must also satisfy the "implied prerequisite" of ascertainability.[10] Ultimately, this Court has "broad discretion" over whether to certify a class.[11] Moreover, "[a]ny doubts regarding the propriety of class certification generally should be resolved in favor of certification."[12]

### A.    Each of Rule 23(a)'s prerequisites are satisfied.

#### 1.    The classes are sufficiently numerous.

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." "In order to satisfy this requirement, plaintiffs need not state the exact number of potential class members, nor is there a specific number that is required."[13] According to Seagate's own admission, there are thousands of class members in the U.S. who purchased the drives. Ex. 55 at 6. This sufficiently surpasses the threshold of numerosity.[14]

#### 2.    Plaintiffs' and class members' claims share common questions of fact and law.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." The "commonality requirement is construed less rigorously than the 'predominance' requirement of Rule

---

[8] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

[9] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

[10] *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

[11] *Zinser*, 253 F.3d at 1186.

[12] *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).

[13] *In re Facebook, Inc. PPC Adv. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008) ("[W]here the exact size of the class is unknown, but general knowledge and commonsense indicate that it is large, the numerosity requirement is satisfied."). Internal quotation marks and citation omitted, unless otherwise noted.

[14] *Rannis v. Recchia*, No. 09-55859, 2010 WL 2124096, at *4 (9th Cir. May 27, 2010) (citing cases) (numerosity presumed at forty class members).

23(b)(3)."[15] As the Supreme Court has noted, "even a single common question will do."[16] The Ninth Circuit explained that a "common contention need not be one that will be answered, on the merits, in favor of the class."[17] It only "must be of such a nature that it is capable of classwide *resolution*."[18] So "the lawsuit must call upon the court or jury to decide at least one factual or legal issue whose outcome logically must be the same for each class member."[19]

Here, a number of common questions exist, including: 1) whether Seagate sold drives that failed at higher rates than advertised; 2) whether Seagate's failure to disclose the true rate of drive failures was fraudulent, deceptive or unfair; 3) whether the reasonable consumer was likely to be misled by Seagate's misrepresentations and omissions regarding the drives' failure rate; 4) whether the failure rate of the drives was material to consumers; and 5) whether consumers were damaged by Seagate's false and misleading statements and material omissions.

Although plaintiffs need not prove the truth of their claims now, evidence common to the class shows that Seagate's drives failed at a higher rate than industry standard, contrary to Seagate's representations on its website, in its product manuals, and in its product brochures. And evidence common to the class also demonstrates that Seagate failed to disclose the true AFR to consumers. *See* section II, *infra*. Common proof demonstrates that Seagate sold the Barracuda and Desktop HDD drives with a failure rate higher than industry standard (and higher than Seagate advertised). And common proof demonstrates that Seagate failed to disclose the drives' true AFRs to consumers. This question is "central to the validity of the claims of all class members and is capable of resolution in one stroke."[20] Thus, Rule 23(a)(2)'s commonality requirement is satisfied.

---

[15] *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 287 (N.D. Cal. 2017).

[16] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (alteration omitted).

[17] *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015).

[18] *Id.* at 1052 (citing *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added)).

[19] *Newton v. Am. Debt Serv., Inc.*, No. C-11-3228 EMC, 2015 U.S. Dist. LEXIS 74626, at *19 (N.D. Cal. June 9, 2015).

[20] *Gold*, 323 F.R.D. at 287-88.

**3.      Plaintiffs' claims are typical of the classes' claims, satisfying Rule 23(a)(3).**

'"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."'[21] Plaintiffs' claims are typical if "reasonably co-extensive with those of absent class members; they need not be substantially identical."[22] As this Court recently explained, typicality is met even if there are differences in how plaintiffs' problems manifested – so long as plaintiffs are seeking relief under the "same legal theories."[23]

Here, each of the plaintiffs are pursuing the same legal theories as those of the classes. Seagate published the AFR statements on its website and in national marketing materials and these statements were available to all class members. Seagate's marketing materials did not vary state-by-state. Ex. 56 at 34:14-35:2. Plaintiffs Enders, Hauff, Crawford, Dortch, Hagey and Manak each purchased one or more Barracuda drives and experienced drive failures. Plaintiff Enders testified he reviewed the data sheet from Seagate's website, including the AFR rate before purchasing his drive. Ex. 57 at 109:20 -110:14, 126:11-13. Plaintiff Schechner testified that the Barracuda data sheet he relied on prior to purchase was on Seagate's website, and had "[t]he annualized failure rate was listed less than 1 percent power on hours 2,400." Ex. 58 at 104:10-17, 106:7-12. Plaintiff Hagey testified that he also reviewed the data sheet and "considered the AFR rate to be material because it pertained to the internal Barracuda's reliability and longevity" and specifically meant that the drive would be reliable and have a long life. Ex. 59 at 56:5-57:22. Plaintiff Manak relied on Seagate's statements about the drives from the data sheet available on Seagate's website and "relied on their very, very low AFR which would mean it was very unlikely that I would suffer any data loss." Ex. 60 at 135:17-136:10. In other words, Plaintiffs relied on the same publicly available documents as the rest of the class members would have, such as the Storage Solutions Guide, which Seagate acknowledges is a "valuable tool that is frequently downloaded and referenced" by customers and potential customers. Ex. 19. Accordingly, typicality is established.

---

[21] *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

[22] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[23] *Gold*, 323 F.R.D. at 288.

### 4.     Adequacy of representation is satisfied under Rule 23(a)(4).

Adequacy turns on whether the representative plaintiffs have any conflicts of interest with other class members.[24] Here, Plaintiffs' interests do not conflict with the interests of the other class members they seek to represent. Relying on the same set of facts, plaintiffs seek for themselves and each of the other class members damages suffered as a result of Seagate's misrepresentations regarding the failure rate of the drives. All plaintiffs have demonstrated their commitment to this case and their familiarity with the claims in this matter, actively participating in this litigation by producing documents, providing written discovery responses, and making themselves available for depositions and comprehensive vehicle inspections. The adequacy requirement is satisfied.[25]

## B.     The Classes Meet the Requirements of Rule 23(b)

Certification under Rule 23(b)(3) is proper when the interests of the parties are best served by resolving differences in a single action.[26] This analysis focuses on the relationship between common and individualized issues.[27] If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."[28] Rule 23(b)(3) does not require Plaintiffs to prove the common questions will be answered in their favor.[29] And minor variations among the claims of class members is insufficient to defeat predominance where all of the

---

[24] *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

[25] Seagate may suggest that plaintiffs Schechner lacks standing because he purchased the Backup Plus product. In similar circumstances, this Court has held that "as long as a proposed class satisfies all other requirements of Rule 23, a court may certify the class conditioned on the substitution of an adequate named plaintiff." *Gold*, 323 F.R.D. at 290. Accordingly, Plaintiffs request that the Florida class be conditionally certified pending plaintiffs' substitution of an adequate named plaintiff in place of Schechner.

[26] *Hanlon*, 150 F.3d at 1022.

[27] *Id.*

[28] *Id.*

[29] *Amgen v. Conn. Ret. Plans and Trust Funds*, _U.S._, 133 S. Ct.1184, 1191 (2013) (movant must show "that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class") (emphasis in original).

claims arise out of the defendant's generalized conduct.[30] Predominance does not "constitute a uniformity requirement, such that a single exception would defeat class certification."[31]

Plaintiffs seek to certify eight sub-classes under the laws of California, Florida, Massachusetts, New York, South Carolina, South Dakota, Tennessee, and Texas. As discussed below, the law for each of the eight sub-classes significantly overlaps.

### 1. Common questions of law and fact concerning liability predominate.

Common questions of fact and law predominate for each of the proposed state classes. In its Class Certification Order, this Court has held that (i) "[t]here is no distinction in the **conduct** at issue across the eight states;" and (ii) "[t]o the extent that the subclasses would require different jury instructions and verdict forms, such issues are manageable for a set of eight states with at least partially overlapping consumer protection statutes, and the Court is satisfied that the common issues of fact would predominate over any variation in issues of law."[32] Plaintiffs address three points below raised by the court in its order: (i) when a duty to disclose arises under the law of each state; and (ii) whether the different statute of limitations for the states presents a certification issue; and (iii) whether the laws of Tennessee and North Carolina permit class actions.[33]

#### a. All eight states all recognize a duty to disclose a material fact, measured by the reasonable consumer.

##### (1) The California Class.

Plaintiffs seek certification of three California consumer claims: the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (CLRA); the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL); and the False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL). Common issues for those claims render them appropriate for class-wide resolution.

---

[30] *See Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-09-5803 EMC, 2011 WL 4017967, at *11 (N.D. Cal. Sept. 8, 2011) ("While there may be some variation within the [defendant's] refinery with respect to the amount of downtime per shift or number of times per week that employees leave the premises, such variation does not 'present sufficient evidence that individual questions predominate over Plaintiffs' actual theory, which is based on [defendant's] purported general policies. . . .'").

[31] *Id.*, at *12.

[32] Class Cert. Order at 29-30.

[33] *Id.* at 30.

1    **CLRA**: As the parties have extensively addressed in earlier memoranda, material omissions

2    are actionable under the CLRA.[34] In *Gutierrez v. CarMax*, the California Court of Appeals squarely

3    addressed the issue and reaffirmed that liability for omissions exists and is separate from the test for

4    affirmative misrepresentations.[35] Since the decision in *Gutierrez*, Judge Chen has affirmed the law of

5    *Gutierrez* and the circumstances under which a defendant is under a duty to disclose.[36] Liability for

6    omissions exists in two circumstances relevant here: (1) when the defendant had exclusive

7    knowledge of material facts not known to the plaintiff; (2) when the defendant actively conceals a

8    material fact from the plaintiff.[37]

9           Under each of these tests, materiality is an objective standard.[38] Where an omission or defect

10   is central to the functioning of a product, the omission is material.[39] Here, reliability of the drives is

11   central to their functioning. Plaintiffs have demonstrated that common evidence shows that Seagate's

12   drives were not as reliable as it advertised. *See* section II, *supra*. And Seagate did not tell consumers

13   about the higher-than-advertised failure rates. When asked, consumers resoundingly responded that

14   _____

15   [34] *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1258 (2018), *as modified
     on denial of reh'g* (Feb. 22, 2018). *See also Beyer v. Symantec Corp.*, No. 18-cv-02006-EMC, 2018

16   WL 4584217, at *8 (N.D. Cal. Sept. 21, 2018) ("The requirement in *Williams* that there be a safety
     hazard [to allege a CLRA or UCL omission claim] has been cast into doubt by recent California

17   Court of Appeal opinions. . . . These recent appellate decisions extend liability for non-disclosure to
     beyond safety hazards[.]"); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018) ("The recent

18   California cases show that *Wilson's* safety hazard pleading requirement is not necessary in *all*

19   omission cases[.]").

20   [35] *Gutierrez*, 19 Cal. App. 5th at 1258.

21   [36] *See Beyer*, 2018 WL 4584217, at *7 ("An omission is actionable 'if the omitted fact is (1)
     contrary to a [material] representation actually made by the defendant or (2) is a fact the defendant

22   was obliged to disclose.'") (Alteration in original).

     [37] *Id.*

23   [38] *Guido v. L'Oreal USA, Inc.*, No. 11-cv-1067 CAS (JCx)m, 2013 WL 3353857, at *11 (C. D.

24   Cal. July 1, 2013) ("Since materiality concerns objective features of allegedly deceptive advertising,
     not subjective questions of how it was perceived by each individual consumer, whether an omission

25   is material presents a common question of fact suitable for class litigation.") (citing *Mass. Mutual
     Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1294 (2002)).

26   [39] *See Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1175(2015) (holding a defect

27   was material because it was "critical to a notebook computer's function"); *Collins v. eMachines, Inc.*,
     202 Cal. App. 4th 249, 258 (2011) (holding a failure of microchips in a computer was material to

28   consumers because the failure was "central to the function of a computer as a computer").

reliability was a material feature to them in the hard drives. In the pre-test prior to the conjoint analysis, which asks open ended questions, reliability was the second most frequently named feature, behind only capacity. Boedeker Decl., ¶ 101. Using the survey responses from the conjoint analysis, respondents found that reliability/AFR had the highest perceived utility to the purchaser – that is, <u>it was the most material characteristic</u>.

**UCL**: The UCL prohibits "practices which are unlawful, unfair or fraudulent."[40] "Omissions can form the basis of a fraudulent prong UCL claim."[41] A UCL violation is shown if "members of the public are likely to be deceived" by the fraudulent omission,[42] which is a question of materiality.[43] As with the CLRA, under the UCL "[a]ctual reliance is presumed (or at least inferred) if the omission is material."[44] Each of these elements can be established with no need for individual inquiries, for the same reasons set forth above in relation to the CLRA claim.

**FAL**: The FAL prohibits "untrue or misleading" advertising likely to deceive members of the public.[45] "A violation of the UCL's fraud prong is also a violation of the FAL, and likewise, a violation of the FAL necessarily violates the UCL."[46] For the same reasons set forth above as to the CLRA and UCL claims, the California class's FAL claim is susceptible to generalized proof and therefore suited for class certification.[47]

### (2) The Florida Class.

The language of Florida's consumer protection law nearly identically mirrors that of California, prohibiting any "unfair or deceptive acts or practices in the conduct of any trade."[48] To

---

[40] *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 895 (N.D. Cal. 2015).

[41] *In re Carrier IQ, Inc. Cons. Priv. Litig.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015).

[42] *Ehret*, 148 F. Supp.3d at 895.

[43] *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 485 (S.D. Cal. 2013).

[44] *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM (PJWx), 2014 WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014).

[45] *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 595 (2011).

[46] *Waller*, 295 F.R.D. at 485 (citing *Tobacco II*, 46 Cal. 4th at 312 n.8).

[47] *Astiana v. Kashi Co.*, 291 F.R.D. 493, 504-06 (S.D. Cal. 2013) (finding predominance met with respect to FAL, UCL, and CLRA claims following identical analysis).

[48] Fla. Stat. § 501.204(1).

prevail on a claim under FDUTPA, Plaintiff must establish: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."[49] Again, like California, Florida's test for deceptive acts recognizes omissions,[50] and uses a reasonable consumer standard.[51]

"While proof of actual reliance is unnecessary, the first element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as plaintiff. The modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be objectively established as to mindset but subjectively established as to context."[52] To prove the causation element of a FDUTPA claim, "a plaintiff need not prove reliance on the allegedly false statement…but rather a plaintiff must simply prove that a reasonably objective person [in the same circumstances as Plaintiff] would have been deceived."[53]

Plaintiffs can demonstrate using classwide evidence that Seagate omitted material information it had a duty to disclose, in violation of the FDUTPA, without requiring inquiry into individual consumer decisions. Thus, predominance is satisfied.

### (3)    The Massachusetts Class.

Chapter 93A of Massachusetts General Law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[54] This remedial statute "goes far beyond the scope of the common law action for fraud and deceit,"[55] and is "quite robust and arguably more consumer

---

[49] *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (applying Florida law).

[50] *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) ("'[D]eception may be accomplished by innuendo' and through omissions 'rather than outright false statements.'").

[51] *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) ("[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.").

[52] *Deere Constr. v. Cemex Constr. Materials Florida, LLC*, No. 15-24375, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016); *see also In Re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to World Indices*, 715 F.Supp.2d 1265, 1282 (S.D. Fla. 2010).

[53] *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F.Supp.3d 1283, 1290 (S.D. Fla. Aug. 12, 2015).

[54] Mass. Gen. L. ch. 93A, § 2.

[55] *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975).

1    friendly than the California consumer protection regime."[56] "Massachusetts courts 'evaluate unfair

2    and deceptive trade practice claims based on the circumstances of each case,' leaving 'the

3    determination of what constitutes an unfair trade practice to the finder of fact.'"[57] Deception is

4    evaluated under an objective "reasonable person" standard.[58] Reliance is "not an essential element of

5    a [Chapter] 93A claim."[59] In addition, omissions are actionable: "failure to disclose a material fact

6    [states] a cause of action under chapter 93A."[60]

7            Causation under Chapter 93A can be proven with classwide evidence. "Materiality and

8    causation are established by a showing that the deceptive representation [or omission] 'could

9    reasonably be found to have caused a person to act differently from the way he or she otherwise

10   would have acted.'"[61] This objective showing can be made using evidence common to the class, as

11   demonstrated with respect to other consumer fraud statutes. Thus, the Chapter 93A claim will be

12   resolved by common proof and predominance is satisfied.

13              **(4)    The New York Class.**

14           The New York Class' consumer protection claims under General Business Law §§ 349-350

15   are likewise well-suited to class treatment. Section 349 prohibits "deceptive acts or practices in the

16   conduct of any business, trade or commerce,"[62] and section 350 prohibits false advertising.[63] Each

17   requires materially misleading representations *or omissions* resulting in injury to the plaintiff, and

18

19

20   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [56] *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 60 (D. Mass. 2010).

21   [57] *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184 (1st Cir. 2009)
     (affirming class recovery under Chapter 93A for losses suffered from false and inflated average
22   wholesale prices).

23   [58] *Hanrahran v. Specialized Loan Serv., LLC*, 54 F. Supp. 3d 149, 154 (D. Mass. 2014).

24   [59] *Hershenow v. Enter. Rent-A-Car Co. of Boston*, 840 N.E.2d 526, 534 n.20 (Mass. 2006); *see
     also Slaney*, 322 N.E.2d at 779 ("proof of actual reliance by the plaintiff on a representation is not
25   required").

26   [60] *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 417 (1st Cir. 1985).

     [61] *M3 Power Razor*, 270 F.R.D. at 60 (certifying consumer class asserting Chapter 93A claim).
27   [62] N.Y. Gen. Bus. L. § 349.

28   [63] *Id.* at § 350.

that the misconduct be "consumer-oriented."[64] Any nationwide commercial activity, such as

Seagate's sale of defective hard drives, easily qualifies as "consumer-oriented" activity.[65]

Representations or omissions are considered deceptive when they are likely to mislead a reasonable

consumer acting reasonably under the circumstances.[66]

Reliance and scienter are not elements of either claim.[67] Instead, the claims require "that a

reasonable consumer could have been misled by defendants' conduct."[68] This objective "reasonable

consumer" test is satisfied with a showing of materiality.[69]

Plaintiffs will establish their New York General Business Law §§ 349-350 claims using

classwide evidence of Seagate's deceptive and fraudulent omission of material information – the

drives' true AFRs. As no individualized inquiry threatens to overshadow the predominantly common

issues raised by these claims, they are amenable to classwide resolution.

### (5)     The South Carolina Class.

It is a violation of South Carolina law to engage in "deceptive acts or practices."[70] Failure to

disclose a material fact is an actionable deceptive act.[71] "A deceptive practice is one which has a

tendency to deceive. Even a truthful statement may be deceptive if it has a capacity or tendency to

---

[64] *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

[65] *U.W. Marx, Inc. v. Bonded Concrete, Inc.*, 776 N.Y.S.2d 617, 619 (2004).

[66] *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, *N.A*, 647 N.E.2d 741, 745 (N.Y. 1995).

[67] *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("[N]either Section 349 nor 350 require proof of reliance").

[68] *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010).

[69] *Id.*; *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1008 (C.D. Cal. 2015) ("individualized issues concerning reliance and scienter do not preclude classwide proof").

[70] S.C. Code Ann. § 39-5-20(a).

[71] *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 189 (S.C. 2015) (upholding a finding that defendant violated the South Carolina Unfair Trade Practices Act by failing to disclose the side effects of an anti-psychotic); *Wright v. Craft*, 640 S.E.2d 486, 500 (S.C. Ct. App. 2006) (holding that the defendant violated the South Carolina Unfair Trade Practices Act by failing to disclose the accident history of a vehicle for sale).

1    deceive."[72] Plaintiffs will establish South Carolina UTPA claims using the same classwide evidence

2    of Seagate's deceptive acts. Therefore, these claims are amenable to classwide resolution.

3                            **(6)    The South Dakota Class.**

4           It is unlawful in South Dakota to "employ any deceptive act or practice. . .regardless of

5    whether any person has in fact been misled, deceived or damaged[.]"[73] Omissions are actionable,

6    because the failure to disclose a material fact is considered by courts to be an unlawful deceptive

7    act.[74] The South Dakota DTP-CPS claims will be established using the same classwide evidence of

8    Seagate's deceptive acts and so these claims are amenable to classwide resolution.

9                            **(7)    The Tennessee Class.**

10          In order to recover under the Tennessee Consumer Protection Act (TCPA), the plaintiff must

11   prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by

12   the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property,

13   real, personal, or mixed, or any other article, commodity, or thing of value wherever situated."[75] The

14   defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court

15   to award treble damages.[76] "[W]hether a specific representation in a particular case is 'unfair' or

16   'deceptive' is a question of fact."[77] And omissions are actionable: "for the purposes of the TCPA, . .

17   .the essence of deception is misleading consumers by a merchant's statements, silence, or actions.[78]

18

19          [72] *deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000).

20          [73] S.D. Codified Laws § 37-24-6.

21          [74] *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 567 (S.D.N.Y. 2004),
     *modified on reconsideration*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) (certifying a class in action

22   alleging that the defendant failed to disclose fees and thus violated of the South Dakota Deceptive
     Trade Practices Act); *State v. W. Capital Corp.*, 290 N.W.2d 467, 469 (S.D. 1980) (holding that the

23   defendant engaged in deceptive trade practices by failing to disclose loan fees).

24          [75] Tenn. Code Ann. § 47-18-109(a)(1).

25          [76] Tenn. Code Ann. § 47-18-109(a)(3); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 n.13
     (Tenn.1999); *Holmes v. Foster Pontiac GMC, Inc., Shelby Law No. 9*, 1989 WL 48515, at *4 (Tenn.

26   Ct. App. May 10, 1989), perm. app. denied, (Tenn. Oct. 2, 1989); *Haverlah v. Memphis Aviation,
     Inc.*, 674 S.W.2d 297, 306 (Tenn.Ct.App.1984).

27          [77] *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005).

28          [78] *Id*.

Tennessee "has recognized that a deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer. This includes the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."[79] Consumer injury will be considered "substantial" TCPA if a relatively small harm is inflicted on a large number of consumers or if a greater harm is inflicted on a relatively small number of consumers.[80] Here, Plaintiffs can show that Seagate omitted material information that it had a duty to disclose, without requiring inquiry into individual consumer decisions. Thus, predominance is demonstrated.

### (8)    The Texas Class.

The Texas Deceptive Trade Practices-Consumer Protection Act (DTPA) bars "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."[81] A prohibited act (or omission) can be proven by demonstrating "an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous."[82] Causation is an element of this claim, but as the *Spradling* court's reference to ignorance shows, actual reliance is not.[83]

Texas's DTPA's causation requirement is susceptible to classwide proof.[84] Like other state consumer fraud statutes, it allows a classwide inference of reliance or causation where the omitted information would have affected consumers' purchasing decisions.[85] The same classwide evidence will be used to establish liability under Texas's DTPA as the other states.

---

[79] *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 796-97 (E.D. Tenn. 2009); *also Cavette v. Mastercard Int'l, Inc.*, 282 F. Supp. 2d 813, 819 (W.D. Tenn. 2003) (holding that MasterCard's alleged practice of failing to adequately disclose its currency conversion fee could violate the Tennessee Consumer Protection Act).

[80] *Id.*

[81] Tex. Bus. & Com. Code § 17.46(a).

[82] *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978).

[83] *Id.*

[84] *See ConAgra*, 90 F. Supp. 3d at 1016-17.

[85] *See Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1164-65 (N.D. Cal. 2008) (comparing reliance requirements of TDTPCPA and California CLRA, and concluding, "[w]hen applied in a class setting, California courts do not appear to apply the materiality requirement in a significantly different

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.      Each state's statute of limitations is subject to tolling.**

All of the state consumer laws in this case are subject to a statute of limitations period, which ranges from 2 years (Texas) to 5 years (Tennessee). But the fact that Seagate might raise a statute of limitations defense does not preclude certification: the Ninth Circuit has repeatedly held that that "[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones."[86] To the contrary, "it is clear as a general matter that a statute of limitations defense does not automatically preclude certification where common questions otherwise predominate."[87] In *Cameron*, the Ninth Circuit considered whether a class-action securities fraud claim could proceed in light of an Oregon fraud statute with a two-year statute of limitation.[88] The statute was tolled by the discovery rule, meaning that the two-year period began to run when "a class member discovered, or in the exercise of reasonable diligence should have discovered, the alleged deceit."[89] The defendants in *Cameron* argued "that the individual issues of when each member of the classes discovered, or should have discovered, the alleged omissions prevents the common issues from predominating."[90] The Ninth Circuit rejected that argument, holding that "even if there [existed] questions of individual compliance with the Oregon statute of limitations, they are not sufficient, on balance, to negate the predominance of the common issues."[91]

All statute of limitations for the class states are tolled if the defendant conceals material facts, or the action was inherently undiscoverable within the time period.[92] Courts in this district have held

---

manner from the Texas courts. . . . [T]he court does not find that the CLRA and [DTPA] materially differ with respect to a reliance requirement.").

[86] *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir.1975); *see also Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir.1976) ("We hold that the presence of individual issues of compliance with the statute of limitations here does not defeat the predominance of the common questions.").

[87] *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 308 (N.D. Cal. 2016).

[88] *Cameron*, 547 F.2d at 477-78.

[89] *Id.* at 478.

[90] *Id.*

[91] *Id.*

[92] Texas: *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)(noting that actionable conduct that is inherently undiscoverable is tolled until its discovery); California: *Herremans*, 2015 WL 12712082, at *3 (noting that the discovery rule tolls the statute of limitations); New York: *Martin Hilti Family*

1   that questions as to whether the statute of limitations tolled will not bar certification if the questions

2   "turn primarily on common proof regarding Defendants' actions[.]" Here, Plaintiffs have provided

3   evidence that establishes Seagate materially misrepresented the true failure rate of its drives and

4   failed to disclose the real failure rate to consumers. Plaintiffs can provide proof, common to the class

5   that consumers did not discover Seagate's deceit until Backblaze published its report regarding the

6   Seagate drive failures in 2015. Thus, there is no bar to certification. A class action can be maintained

7   for the South Carolina and Tennessee claims.

8         Courts have recognized that the statutory provisions in South Carolina and Tennessee that

9   prohibit class actions are procedural, rather than substantive. For example, in *Los Gatos Mercantile,*

10   *Inc v. E.I. DuPont De Nemours & Co*., the court held that a "class action may be maintained under

11   Rule 23 notwithstanding the language of the South Carolina statute[.]"[93] Likewise, in *In re*

12   *Hydroxycut Mktg. & Sales Practices Litig*.,[94] the court found that both Tennessee and South

13   Carolina's statutes could not bar federal class actions. Thus, a class action can be maintained

14   notwithstanding these provisions.[95]

---

*Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 468 (S.D.N.Y. 2015) (concealing material facts tolls the statute of limitations); <u>South Carolina</u>: *In re MI Windows & Doors, Inc. Prods. Liab. Litig*., No. 2:12-CV-02238-DCN, 2012 WL 4761435, at *5 (D.S.C. Oct. 3, 2012) (noting that concealment of a products defects – even unintentionally – tolls the statute of limitations); <u>Florida</u>: *Razor Capital, LLC v. CMAX Fin. LLC*, No. 17-80388-CIV, 2017 WL 3481761, at *3, *4 (S.D. Fla. Aug. 14, 2017) (a plaintiff's "blameless ignorance" tolls the statute of limitations); <u>Massachusetts</u>: *Szymanski v. Boston Mut. Life Ins. Co*., 778 N.E.2d 16, 20 (Mass. 2002) (holding that the discovery rule applied to toll consumer protection act claims); <u>South Dakota</u>: S.D. Codified Laws § 37-24-33 (the statute of limitations does not run until the misconduct is discovered).

[93] *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co*., No. 13-cv-01180-BLF, 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015).

[94] *In re Hydroxycut Mktg. & Sales Practices Litig*., 299 F.R.D. 648, 654 (S.D. Cal. 2014).

[95] *See also In re Lithium Ion Batteries Antitrust Litig*., No. 13-MD-2420 YGR, 2014 WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014) ("South Carolina's class-action bans merely determine how substantive rights may be asserted, that is, 'the process of enforcing litigants' rights and not the rights themselves.'); *See In re Broiler Chicken Antitrust Litig*., 290 F. Supp.3d 772, 792 (N.D. Ill. 2017) (denying motion to dismiss under South Carolina law given *Shady Grove*); *In re Optical Disk Drive Antitrust Litig*., No. 10-md-2143, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012) (same); *In re Auto. Parts Antitrust Litig*., No.12-md-02311. 2013 WL 2456612, at *106 (E.D. Mich. June 6, 2013) (same); *Hydroxycut*, 299 F.R.D. at 652 (denying motion to dismiss under Tennessee law and applying Rule 23).

**2.       Damages are common to the state classes.**

The Ninth Circuit has instructed that "the presence of individualized damages cannot, by itself, defeat class certification,"[96] but even then, such a calculation presents no bar here. Plaintiffs' expert provides a common methodology – the conjoint analysis – that can apply damages to the whole. *See* section II.C, *supra.* Hence, the amended class definitions do not change this analysis, as at class certification, plaintiffs need only demonstrate a methodology that is common to the class.

**3.       A class action is the superior method of adjudication**

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency."[97] This requirement is satisfied "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis."[98] Given that each class member can only recover a relatively small amount of money, in comparison to the costs of litigating, "class treatment likely represents plaintiffs' only chance for adjudication."[99]

**C.     The classes are ascertainable.**

The proposed classes meet Rule 23's implicit ascertainability requirement. "To be ascertainable, the description of the class must be 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member' before trial, and by reference to 'objective criteria.'"[100] The classes are ascertainable even if some class members cannot be identified by records. As this Court recently explained, "'courts in this circuit ha[ve] found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits.'"[101] Here, the class definitions are straightforward, requiring only that a person

---

[96] *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

[97] *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

[98] *Wolin*, 617 F.3d at 1175 ("The amount of damages suffered by each class member is not large. Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.").

[99] *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *25 (N.D. Cal. Dec. 21, 2010).

[100] *Newton*, 2015 U.S. Dist. LEXIS 74626, at *16 (internal citation omitted).

[101] *Melgar v. CSK Auto, Inc.*, No. 13-cv-03769-EMC, 2015 U.S. Dist. LEXIS 170833, at *22 (N.D. Cal. Dec. 22, 2015) (citation omitted).

purchased or leased a particular Seagate Barracuda drive (model number ST3000DM001) or a Seagate HDD (model number ST3000DM) prior to January 1, 2015, but excluding the GrenadaBP2 drives. Indeed, retailers will be able to easily identify and provide specific customer, *i.e.* class member, information when necessary. Best Buy and Office Depot have both provided declarations stating they have contact information for at least some class members.[102] The proposed class is ascertainable.

**D.      Proposed class counsel will fairly and adequately represent the class.**

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel who will '"fairly and adequately protect the interests of the class."'[103] Hagens Berman Sobol Shapiro LLP and Axler Goldich, LLC have devoted countless hours to the litigation of this action. Both firms have extensive experience in successfully prosecuting consumer class actions throughout the U.S., including this district. Proposed class counsel satisfies the Rule 23(g) factors.

# IV.      CONCLUSION

Plaintiffs respectfully request the Court certify the eight proposed classes, and appoint Hagens Berman and Axler Goldich as class counsel.

DATED: October 15, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP


By:      s/ Shana E. Scarlett
         SHANA E. SCARLETT

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

---

[102] Ex. 61, ¶¶ 8-11; Ex. 62, ¶ 8.

[103] *Hanlon*, 150 F.3d at 1020, 1023; *True v. Am. Honda Motor Co.*, No. EDCV 07-287-VAP (OPx), 2009 WL 838284, at *3, *5 (C.D. Cal. Mar. 25, 2009).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 207-2920
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*