1    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        A Limited Liability Partnership
2        Including Professional Corporations
     NEIL A.F. POPOVIC, Cal. Bar No. 132403
3    ANNA S. McLEAN, Cal. Bar No. 142233
     TENAYA RODEWALD, Cal. Bar No. 248563
4    JOY O. SIU, Cal. Bar No. 307610
     DANIEL R. FONG, Cal. Bar No. 311985
5    Four Embarcadero Center, 17th Floor
     San Francisco, California 94111-4109
6    Telephone:    415.434.9100
     Facsimile:    415.434.3947
7    Email:        npopovic@sheppardmullin.com
                   amclean@sheppardmullin.com
8                  trodewald@sheppardmullin.com
                   jsiu@sheppardmullin.com
9                  dfong@sheppardmullin.com

10   Attorneys for Defendant,
     SEAGATE TECHNOLOGY LLC

11

12                    UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15   IN RE SEAGATE TECHNOLOGY LLC          Case No. 3:16-cv-00523-JCS
     LITIGATION
16                                         **DEFENDANT SEAGATE TECHNOLOGY
                                           LLC'S OPPOSITION TO PLAINTIFF'S
17   CONSOLIDATED ACTION                   RENEWED MOTION FOR CLASS
                                           CERTIFICATION**
18
                                           **Date:**   January 18, 2019
19                                         **Time:**   9:30 a.m.
                                           **Place:**  Courtroom G, 15th Floor
20                                         **Judge:**  Hon. Joseph C. Spero
21
22                                         [Second Consolidated Amended Complaint
                                           filed:  July 11, 2016]
23

24

25

26

27

28

SMRH:488221917.6

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II.     OFFERING THE SAME EVIDENCE IN  SUPPORT OF A NARROWER CLASS DOES NOT SOLVE PLAINTIFFS' PROOF PROBLEMS .......................................................4

    A.      Plaintiffs' Evidence of AFR Representations Remains Insufficient ............................4

    B.      Plaintiffs' Failure Rate Evidence Remains Insufficient ...............................................7

    C.      Boedeker's Damages Declaration Remains Inadmissible and Irrelevant ...................9

III.    LEGAL STANDARD ...............................................................................................................10

IV.     PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(A) ...........................11

    A.      Plaintiffs Still Lack Common Evidence of Seagate's Representations and Purported Omissions Sufficient to Give Rise to a Classwide Duty to Disclose ........11

    B.      The Alleged "Higher" AFR of the Drives Is Not a Common Issue ..........................13

    C.      Materiality Is Not a Common Issue ..............................................................................15

    D.      The Class Representatives Are Even More Atypical and Inadequate Now ...............16

V.      PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(B) ..............................18

    A.      Individual Factual Issues Predominate Regarding Exposure, Reliance, and Materiality .......................................................................................................................18

    B.      Individual Legal Issues Predominate Under the Substantive Laws of the Eight States ...............................................................................................................................19

        a.      Plaintiffs Fail to Examine, Let Alone Provide a Trial Plan, for the Differences Among States Regarding Any Duty to Disclose .......................................................................................19

        b.      South Dakota's and Tennessee's Class Action Bars Foreclose Their Inclusion In Any Sub-Class ................................................22

    C.      A Class Action Still Is Not Superior Given its Unmanageability ..............................24

VI.     CONCLUSION .........................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ....................................................................................................24

*Bearden v. Honeywell Intern. Inc.*
    2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) ........................................................23

*Bentley v. Verizon Bus. Global, LLC*
    2010 WL 3341728 (S.D.N.Y. Aug. 20, 2010) ............................................................16

*Berger v. Home Depot USA, Inc.*
    741 F.3d 1061 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v.
    Baker*, 137 S. Ct. 1702 (2017)......................................................................................5

*Braynina v. TJX Companies, Inc.*
    2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ...........................................................20

*Castano v. American Tobacco Co.*
    84 F. 3d 734 (5th Cir. 1996).........................................................................................20

*In re Clorox Consumer Litig.*
    301 F.R.D. 436 (N.D. Cal. 2014) ..............................................................................3, 24

*Coleman v. CubeSmart*
    2018 WL 3672241 (S.D. Fla. June 21, 2018) .............................................................21

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) .......................................................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004),
    *opinion modified on reconsideration*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............21

*Dana v. Hershey Co.*
    180 F. Supp. 3d 652 (N.D. Cal. 2016) .......................................................................12

*Darisse v. Nest Labs, Inc.*
    2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)............................................................14

*Daubert v. Merrell Dow Pharms. Inc.*
    509 U.S. 579 (1993) .....................................................................................................10

*Davidson v. Apple, Inc.*
    2018 WL 2325426 (N.D. Cal. May 8, 2018) ..............................................................23

SMRH:488221917.6
SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

*Del Valle v. Global Exchange Vacation Club*
    320 F.R.D. 50 (C.D. Cal. 2017) ..........................................................................16

*Ehret v. Uber Technologies, Inc.*
    148 F. Supp. 3d 884 (N.D. Cal. 2015) ..................................................................5

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011)................................................................................11

*Falcon v. Philips Electronics North America Corp.*
    304 Fed. Appx. 896 (2d Cir. 2008) ......................................................................16

*Fejzulai v. Sam's West, Inc.*
    205 F. Supp. 3d 723 (D.S.C. 2016) ................................................................22, 23

*Flores v. EP2, Inc.*
    2011 U.S. Dist. LEXIS 163839 (C.D. Cal. May 20, 2011)..................................16

*In re Ford Tailgate Litigation*
    2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) .....................................................23

*Grayson v. 7-Eleven, Inc.*
    2011 WL 2414378 (S.D. Cal. June 10, 2011) ......................................................19

*Hodsdon v. Mars, Inc.*
    162 F. Supp. 3d 1016 (N.D. Cal. 2016),
    *aff'd on other grounds*, 891 F.3d 857 (9th Cir. 2018).........................................12

*Hodsdon v. Mars, Inc.*
    891 F.3d 857 (9th Cir. 2018) ...............................................................................12

*Hydroxycut Mktg. & Sales Practices Litig.*,
    299 F.R.D. 648 (S.D. Cal. 2014)..........................................................................23

*Johnson v. Nissan N. Am., Inc.*
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ...............................................................21

*Levya v. Medline Indus., Inc.*
    716 F.3d 510 (9th Cir. 2013)................................................................................10

*Herron v. Best Buy Co. Inc.*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...............................................................13

*Los Gatos Mercantile, Inc. v. E.I.DuPont De Nemours & Co.*
    2015 WL 4755335 (N.D. Cal. Aug. 11, 2015)......................................................23

*Makaeff v. Trump University, LLC*
    736 F.3d 1180 (9th Cir. 2013)..............................................................................23

*Marsh v. First Bank of Delaware*
  2014 WL 2085199 (N.D. Cal. May 19, 2014) ...................................................19

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012)...............................................................3, 13

*In re Myford Touch Consumer Litigation*
  2016 WL 7734558 (N.D. Cal. Sept. 14, 2016)............................................23

*In re NJOY, Inc. Consumer Class Action Litigation*
  2015 WL 12732461 (C.D. Cal. May 27, 2015)...........................................20

*Oestreicher v. Alienware Corp.*
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................15

*Oetting v. Norton*
  795 F.3d 886 (8th Cir. 2015) ....................................................................16

*Opperman v. Kong Technologies, Inc.*
  2017 WL 3149295 (N.D. Cal. July 25, 2017) ..............................................5

*Philips v. Ford Motor Co.*
  2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) .......................................10, 14

*Rothbaum v. Samsung Telecommunications America, LLC*
  52 F.Supp.3d 185 (D. Mass. 2014) ...........................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
  559 U.S. 393 (2010) ..................................................................................22

*Stalvey v. American Bank Holdings, Inc.*
  2013 WL 6019320 (D.S.C. Nov. 13, 2013) ...............................................22

*Stearns v. Ticketmaster Corp.*
  655 F.3d 1013 (9th Cir. 2011) (quotations omitted, *abrogated on other grounds
  by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)) ..................................15

*Sweet v. Pfizer*
  232 F.R.D. 360 (C.D. Cal. 2005) ..............................................................24

*Tait v. BSH Home Appliances Corp.*
  2011 WL 1832941 (C.D. Cal. May 12, 2011)............................................23

*In re TD Bank, N.A.*
  150 F. Supp. 3d 593 (D.S.C. 2015) ...........................................................22

*Todd v. Tempur-Sealy International, Inc.*
  2016 WL 5746364 (N.D. Cal. Sept. 30, 2016)............................................5

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*
  2018 WL 4777134 (N.D. Cal. Oct. 3, 2018) ...................................................................23

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ....................................................................................2, 10, 11

*Wang v. Chinese Daily News, Inc.*
  737 F.3d 538 (9th Cir. 2013) .................................................................................10

*Wilson v. Hewlett–Packard Co.*
  668 F.3d 1136 (9th Cir.2012) ................................................................................12

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ...............................................................................24

State Cases

*Buller v. Sutter Health*
  160 Cal. App. 4th 981 (2008) ................................................................................11

*Cohen v. DirecTV, Inc.*
  178 Cal. App. 4th 966 (2009) ................................................................................13

*Collins v. eMachines, Inc.*
  202 Cal. App. 4th 249 (2011) ...........................................................................11, 20

*Daugherty v. Am. Honda Motor Co., Inc.*
  144 Cal. App. 4th 824 (2006) ...........................................................................12, 20

*Davis-Miller v. Automobile Club of S. Cal.*
  201 Cal. App. 4th 106 (2011) .............................................................................5, 14

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*
  383 S.C. 115 (2009) .............................................................................................22

*Fayne v. Vincent*
  301 S.W.3d 162 (Tenn. 2009) ...............................................................................21

*LiMandri v. Judkins*
  52 Cal. App. 4th 326 (1997) .................................................................................11

*Rutledge v. Hewlett-Packard Company*
  238 Cal.App.4th 1164 (2015) ................................................................................12

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*
  249 S.W.3d 301 (Tenn. 2008) ...............................................................................22

*Wyrick v. Tillman & Tillman Realty, Inc.*
  2001 WL 123877 (Tex. Ct. App. Feb. 15, 2001) .......................................................21

SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure
    Rule 23 ..............................................................................................22, 23
    Rule 23(a) .....................................................................2, 10, 11, 18
    Rule 23(b) ..........................................................................10, 18
    Rule 23(b)(2) .......................................................................4, 18
    Rule 23(b)(3) ...........................................................................10
    Rule 23(b)(3)(D) .......................................................................1

State: Statutes, Rules, Regulations, Constitutional Provisions

South Carolina Code of Laws Annotated
    § 39-5-140 .............................................................................22

Tennessee Code of Laws Annotated
    § 47-18-104(b) ........................................................................22
    § 47-18-109 ...........................................................................22

SMRH:488221917.6
SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

In its Order Denying Motion for Class Certification issued July 5, 2018 (ECF #182, the "Order"), the Court found Plaintiffs had failed to show "that common issues predominate," taking into account "the likely difficulties in managing a class action" under Fed. R. Civ. P. 23(b)(3)(D). Assessing the evidence Plaintiffs proffered, the Court reasoned that "there is virtually no evidence of drive [Annualized Failure Rate ("AFR")]—or even any purported indicia of unreliability from which AFR might conceivably be inferred—that would be common to, for example, the claim of a class member who purchased a Grenada Classic external drive product in 2011 and the claim of a class member who purchased a Grenada BP2 internal drive product in 2015." ECF No. 182, Order Denying Mot. for Class Certification ("Order") at 37:14-18. The Court continued:

> ***Even assuming it would be manageable to simply present all of the evidence that Plaintiffs believe is relevant across the class period and range of products, Plaintiffs have not addressed any plan to manage potentially different determinations of whether AFRs of various drives were higher than Seagate represented or consumers expected across different permutations of timing, product modifications, drive generations, and products intended for different purposes, or whether the named plaintiffs are typical or adequate to represent the various subclasses that might emerge from attempting to address those variations.*** Without any such plan available, the court concludes that common issues do not predominate among the proposed class and subclasses, and the proposed class action would be unmanageable. *Id.* at 37:11-27. (Emphasis added).

Six months later, Plaintiffs try again for an eight-state class with fewer products[1] and a shorter time period, ***but still have no plan*** to address the "different permutations" inherent in: (1) the AFR representations made at the time of purchase; (2) factory AFR testing showing purportedly higher failure rates over the entire putative class period; (3) consumers' exposure to and reliance on AFR representations; (4) the named plaintiffs and whether they are typical or adequate representatives of each subclass, and (5) the different state laws at issue and how they would impact the evidence to be presented at trial. Indeed, ignoring the Court's admonitions, Plaintiffs apparently *do* intend at trial to "simply present all of the evidence that Plaintiffs believe is relevant across the class period and range of products*"* because they have jettisoned their technical expert Hospodor,

---

[1] The products at issue are now limited to the "Barracuda" branded and "Desktop HDD" branded internal, desktop hard drives, model number ST3000DM001, *excluding* any such products made with the "Grenada BP2" version of the ST3000DM001 drive. The products at issue are referred to as the "Drives."

yet submit *almost exactly the same evidence* on which he previously relied, now attached to Ms. Scarlett's declaration.  How the evidence is expected to be introduced at trial remains unexplained. In short, Plaintiffs have failed to address the fundamental deficiencies identified by the Court last July, and class certification should be denied once again, at least for the following reasons:

*First*, with respect to the requirements of Federal Rule of Civil Procedure 23(a), Plaintiffs still fail to show that the putative class claims "depend upon a common contention" likely to generate "common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349-350 (2011).  As to purported AFR misrepresentations, Plaintiffs submit the same scattershot evidence as before:  representations posted from time to time on Seagate's website, or in data sheets and product guides linked to the website.  Moreover, in a transparent attempt to conceal the lack of common evidence of AFR representations, Plaintiffs offer a misleading illustration that *assumes* AFR representations were made during time periods for which, in fact, there were none.  ECF No. 189, Renewed Motion for Class Certification ("Mot.") at 9:1-11. Seagate has carefully reviewed the Internet Archive and that review demonstrates that Plaintiffs' claim of continuous AFR representations is false.  *See* Section II(A). *infra; see also* Declaration of Tenaya Rodewald, filed herewith.

*Second*, Plaintiffs' evidence of failure rates is equally lacking in consistency and thus commonality.  Plaintiffs still have "virtually no evidence of drive AFR—or even any purported indicia of unreliability from which AFR might conceivably be inferred—that would be common" among class members.  Order at 37:14-18.  Assuming, *arguendo,* putative class members universally saw an AFR representation relevant to the iterations of the drives they purchased, Plaintiffs must show that each had a higher failure rate than represented and that such higher failure rate persisted throughout the class period.  They cannot do so.  Indeed, their only evidence of "higher" AFRs is *de minimis*—periodic AFRs from Seagate's Ongoing Reliability Testing at the factory level ("ORT") of at most 3%—limited in time, and portrayed deceptively by Plaintiffs.  The same misleading illustration that purports to track Seagate's AFR representations also includes data points from Seagate's ORT testing that ends in November 2013—yet Plaintiffs seek class certification for drives sold through the end of 2014, when the evidence supports a <1% factory

1  AFR.  Mot. at 9:1-11.[2]  More fundamentally, the ORT data is impossible to link to drives in

2  consumer use.

3       *Third,* materiality and reliance are not common issues.  Plaintiffs' damages expert,

4  Boedeker, submits the same declaration Seagate debunked before.  Plaintiffs argue that Boedeker's

5  declaration establishes the materiality of AFR.  Mot. at 11:15-12:22.  But Boedeker never actually

6  tested the materiality of the term AFR as such:  he conflated it with the terms "reliability" and

7  "expected lifetime" in his survey.  Nor did he show survey participants the AFR in any real-world

8  setting, *i.e.* on Seagate's data sheet.  In addition, the survey's lowest AFR was 3%—Boedeker did

9  not test the materiality of the *very* low AFRs —1.5% and 2%—Plaintiffs now seek to use as a basis

10  for liability.  And his theory of damages based on the view that prices reflect all information

11  available in the market is not supported by Ninth Circuit law, which requires *a large-scale*

12  *advertising campaign* to give rise to such a classwide presumption of exposure and reliance.  *See*

13  *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 596 (9th Cir. 2012) (vacating class certification

14  order because limited marketing campaign precluded presumption of exposure); *In re Clorox*

15  *Consumer Litig.*, 301 F.R.D. 436, 444 (N.D. Cal. 2014) (classwide presumption of exposure

16  impossible where advertising campaign consisted of only 16-months of television commercials and

17  representations on product packaging).  Here, because Seagate did not make uniform, widespread,

18  and material misrepresentations regarding the Drives, a presumption of materiality or reliance

19  cannot be found.

20       *Fourth*, as to the adequacy requirement, Plaintiffs entirely ignore the Court's admonition that

21  they must address "whether the named plaintiffs are typical or adequate to represent the various

22  subclasses that might emerge from attempting to address [the many factual] variations."  They make

23  no attempt to show that named plaintiffs (1) saw AFR representations during the times they argue

24  misstatements were made, or (2) bought drives manufactured during the times Plaintiffs argue

25

26       [2] Seagate does not concede that the "Actual AFRs" illustrated in Plaintiffs' chart titled
"Comparing Seagate's AFR tests to its advertized [sic] rates" [Mot. at 9:1-11] are accurate, but even
27  if they are, they show factory AFRs of no higher than 2.6% for Grenada Classic and no higher than
1.5% for Grenada BP.  The chart is missing data from after November 2013 and includes extra data
28  points from 2012.  Seagate has prepared its own chart showing the correct data in its proper
perspective for the Court's convenience.  *See* p. 9, *infra*.

SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

1    Seagate experienced factory AFRs above 1%.  Indeed, two of the named Plaintiffs are no longer

2    members of the subclasses they seek to represent and another's claim is time-barred.  Nor should

3    Plaintiffs be given leave to find new representatives at this late date.

4         *Fifth*, under Rule 23(b)(2), common issues do not predominate for facts *or* law.  As to

5    factual issues, common issues do not predominate as to exposure, materiality, or reliance, given the

6    variations in the AFRs published on Seagate's website, the variable ORT AFR evidence, and the

7    lack of any common measure of materiality.  *See* Section V(A), *infra*.  As to legal issues, Plaintiffs'

8    request for eight subclasses fails because Plaintiffs (1) do not explain how a trial under the laws of

9    eight states could proceed, when (2) the consumer protection statutes of those states vary materially.

10   Moreover, Plaintiffs ignore the Court's prior Order seeking a deeper analysis of the state law

11   differences and how they would be managed at trial.  Order, at 30:10-25.

12        *Finally,* Plaintiffs' proposed subclasses are neither superior nor manageable for the same

13   reasons.  *See* Section V(B), *infra*.  At bottom, Plaintiffs' evidence is weaker, not better, the second

14   time around.  The Court should deny class certification, this time with prejudice.

15   **II.    OFFERING THE SAME EVIDENCE IN  SUPPORT OF A NARROWER CLASS
        DOES NOT SOLVE PLAINTIFFS' PROOF PROBLEMS**

16        **A.    Plaintiffs' Evidence of AFR Representations Remains Insufficient**

17        Plaintiffs claim that "from the very beginning," and throughout the class period, Seagate

18   "advertised that the drives had a failure rate of less than one percent."  Mot. at 2:14-15.  This claim

19   is as false now as it was six months ago.  And even as to the limited periods when Seagate made

20   AFR representations, Plaintiffs do not show that any material number of class members *saw* them.[3]

21   Seagate examines in detail the evidence of AFR representations below.

22        First, from at least February 2013 through August, 2013 and after February 2014, Seagate

23   made *no* AFR representations on either its website or in the Data Sheet for the Drives.  The periods

24   when there was no AFR representation on the website or in the applicable Data Sheet account for 18

25

26   _____

27       [3]  Plaintiffs do not contend class members could have been exposed to these alleged
     misrepresentations anywhere but on Seagate's website. Mot. at p. 2-4.  Plaintiffs claim Seagate
     made AFR representations in some versions of the "Storage Solutions Guide" but do not explain
28   how any consumer would have been exposed to this, other than by indicating that at some
     unspecified point in time, it might have been available for download from Seagate's website.  *Id*.

1    of the 39 months at issue in the class period – **46% of the time**.  Where at least 46% of the class

2    **could not have been exposed** to the allegedly false statements, exposure is not a common issue.[4]

3    Second, even as to those limited times when AFR representations were present on Seagate's website

4    or Data Sheets, Plaintiffs fail to show that consumers or the named plaintiffs **saw** them—much less

5    that they considered and relied on them in making their purchases.  Third, as to the Guide, Plaintiffs

6    provide no evidence that *anyone* saw or relied on it, and certainly none of the proposed class

7    representatives did so.  *Ibid*.  Seagate examines the evidence for the specific time periods on which

8    Plaintiffs rely in detail below. Figure 1 on page 9 also summarizes some of Seagate's evidence.

9        <u>November 2011 – December 2012</u>.  Plaintiffs claim that "[i]n 2011, Seagate published on

10   its website that the drives had an AFR of less than one percent" and that Seagate represented that the

11   "AFR was less than one percent throughout 2012."  Mot. at 2:17-19, 3:1.  Plaintiffs' only evidence

12   of this is two images from the Internet Archive, one from November 29, 2011 (Pls Ex. 4)[5] and one

13   from April 28, 2012 (Pls Ex. 5).  Plaintiffs fail to disclose that the AFR representations on the

14   website were variable during this time, and that different parts of Seagate's website said different

15   things or nothing at all about AFR.  *See, e.g.*, Rodewald Decl., ¶¶ 3-6, Exs. 1-4.  Moreover,

16   Plaintiffs present no evidence that class members **saw** the AFR representations on Seagate's

17   website, or in downloadable "Data Sheets" in October 2011- December 2012.

18       Plaintiffs also claim the Storage Solutions Guide contained an AFR representation, and that a

19   Seagate employee said the Guide is a "valuable tool that is frequently downloaded."  Mot. at 3:15-

---

20       [4] *See Opperman v. Kong Technologies, Inc.*, 2017 WL 3149295, at *6, *8 (N.D. Cal. July

21   25, 2017) ("*Plaintiffs must 'demonstrate*[] that the class was exposed to the challenged marketing
     materials' in order to 'demonstrate commonality and predominance'" and denying class certification

22   where plaintiffs "provided no evidence of consumer reach" in regards to the alleged
     misrepresentations); *Todd v. Tempur-Sealy International, Inc.*, 2016 WL 5746364, at *8 (N.D. Cal.

23   Sept. 30, 2016) (denying class certification where plaintiffs "do not offer direct evidence that most
     or all class members were exposed to the challenged advertising materials.")*; Ehret v. Uber*

24   *Technologies, Inc.*, 148 F. Supp. 3d 884, 900-01 (N.D. Cal. 2015) ("Just because the information
     was available on the website does not necessarily imply that visitors would likely have seen it.");

25   *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014), *abrogated on other grounds
     by Microsoft Corp. v. Baker*, 137 S. Ct. 1702, (2017) (individualized inquiry predominated where

26   Home Depot signs had "variance over time and among the different Home Depot locations
     throughout California"); *Davis-Miller v. Automobile Club of S. Cal.*, 201 Cal. App. 4th 106, 125-26

27   (2011) (affirming denial of certification where invoices "inconsistently referred" to the alleged
     misrepresentation).

28       [5] References to "Pls Ex." are references to Plaintiffs' exhibits to the Declaration of Shana
     Scarlett, ECF No. 189-5.

21.  However, the Guide also contains information relating to business, OEM and commercial products (*e.g.*, Pls Ex. 16 at p. 12-13, 20-33), and Plaintiffs present no evidence that *putative class members* viewed the Guide about products for consumer use.  Indeed, Plaintiffs do not even show the Guide was consistently on Seagate's website.  Neither the website nor the Guide is evidence of common exposure in October 2011- December 2012.

**2013**.  Plaintiffs misleadingly suggest that Seagate's AFR representations in 2013 were similar to those in 2012, and likewise claim that "Seagate's website in 2013 also listed the Desktop HDD drive's AFR as .34 percent."  Mot. at 3:27.  However, Plaintiffs' *only evidence* is *one screenshot* of Seagate's website from the Internet Archive on an *unspecified* date. Mot. at 4:1-5.  In fact, as Plaintiffs admit, "[b]etween 2012 and 2013, Seagate changed the marketing name of its Barracuda drive, calling it the Desktop HDD."  Mot. at 3:21-22.  At that time, *Seagate removed the AFR references from its website until September 2013*.  Rodewald Decl., ¶¶ 7-9, 11, Exs. 5-7, 22.  Thus, from at least **February, 2013 through August, 2013**—a full 7 months—there was *no* AFR representation on the website.  *Ibid*.  Furthermore, there was no AFR representation in the Data Sheet after the transition to the "Desktop HDD" in January 2013.  *Id.*, ¶¶ 10, 40, Exs. 8-11, 35 [ECF 152-3 (Schweiss Decl.), ¶¶ 12-13, Exs. 17-18].  Even during September-November 2013, when Plaintiffs' Exhibit 63 claims Seagate's website showed an AFR representation of 0.34%, the pages specific to the Desktop HDD drive lacked any AFR. Rodewald Decl., ¶¶ 12-13, Exs. 12-14.[6]

**2014**.  Plaintiffs claim that the ".34 percent AFR for the Desktop HDD appeared on Seagate's website in 2014," but their only support for this claim is *one screenshot* from the Internet Archive of Seagate's website in January 2014.  Mot. at 4:6, citing Pls Ex. 6.  In fact, from at least *February through December 2014* there was no AFR representation on Seagate's website.  Rodewald Decl., ¶¶ 14-15, Exs. 15-17.  As explained above, after the transition to the "Desktop

---

[6]  In Plaintiffs' Exhibit 63, Plaintiffs falsely claim that in February – May 2013, the AFR representation was <1% based on **2012** documents, namely the "Original [Barracuda] Data Sheet," the "July 2012 Storage Solutions Guide," and the "October 2012 Storage Solutions Guide." Plaintiffs also claim that "[t]he 2013 Desktop HDD 2013 Storage Solutions Guide promised an AFR of less than one percent."  Mot. at 3:26-27.  The Original Barracuda data sheet is irrelevant; the "Desktop HDD" Data Sheet applicable in 2013 contained no AFR representation. Rodewald Decl., ¶¶ 10, 40, Exs. 8-11, 35 [ECF 152-3 (Schweiss Decl.), ¶¶ 12-13, Exs. 17-18]. The 2012 and 2013 Guides are likewise irrelevant, because there is no evidence that named Plaintiffs or anyone else viewed the Guides and it is unclear when, or if, they were available on Seagate's website. *Id.*, ¶ 17.

1  HDD" marketing name in January, 2013, there was no AFR representation in the Data Sheets either.

2  *Id*., ¶ 16, Exs. 18-21, 35 [ECF 152-3 (Schweiss Decl.), ¶¶ 12-13, Exs. 17-18].[7]

3      Thus, for large periods of time, Seagate made no AFR representations, and even during the

4  limited times when it did so, Plaintiffs fail to present evidence that consumers saw or relied on them.

5      **B.    Plaintiffs' Failure Rate Evidence Remains Insufficient**

6      Plaintiffs' purported evidence of "failure rates" and Seagate's "knowledge" thereof remains

7  scattershot documents almost exclusively confined ***to drives manufactured in 2012 or early 2013***.

8  Indeed, with one exception, the exhibits Plaintiffs cite in Section II.B of their Motion (pp 4-11) are

9  the ***same evidence*** submitted previously, which the Court already found insufficient.[8]  Order at p.

10  37; Rodewald Decl. ¶ 18, Ex. 23. Thus, Plaintiffs cite:

11
- Exhibits 23-27, 29-34, 37, 46, 52[9] – documents about drives from ***2012 or earlier***.
  Rodewald Decl. ¶¶ 19, 20.

12
13
- Exhibits 28, 36, 38, 39-42, 47-51, 64 – documents relating to commercial users that were
  misusing drives meant for consumers. Rodewald Decl., ¶¶ 21-27.  As Seagate previously
14  demonstrated (ECF 170-4 at 2-4):  (a) the drives these companies purchased were
  manufactured in ***2012 or early 2013*** (ECF 170-4 at 2-4; Rodewald Decl., ¶¶ 21-27; Ex. 25
15  [ECF 150-4 (Adams Decl.), ¶ 81]; (b) these companies used the drives in commercial, data-
  center environments (ECF 170-4 at 2-3; Rodewald Decl., ¶¶ 21-27); and (c) Plaintiffs'
16  expert admitted that alleged "failures" in these commercial, data-center environments ***cannot***
  support conclusions about failure rates ***in consumer use*** (ECF 170-4 at 3, n. 8; ECF 158-7
  [Hospodor "Rebuttal" Report], ¶ 53).

17
18
- Exhibits 43, 44 and 45 – documents relating to the Apple "recall" which concerned ***pre-May
  2013 drives***, OEM drives not at issue, and does not support a failure rate relevant to
19  consumer drives.  ECF 170-4 at 4; Rodewald Decl., ¶ 28, Ex. 25 [ECF 150-4 (Adams Decl.)
  ¶ 106].

20
———————————

21      [7]  The May 2014 Storage Solutions Guide has no AFR representation either (Rodewald
  Decl., Ex. 35 [ECF 152-3 (Schweiss Decl.), ¶ 16, Ex. 23]), and there is no evidence any Guide was
22  linked to Seagate's website in 2014.  Rodewald Decl., ¶ 17.
      [8]  The exception is Exhibit 30, which is a November 2012 document.  Plaintiffs cite a graph
23  relating to *OEM* drives (not at issue) which appears to show an ORT AFR for Grenada Classic OEM
  drives that was briefly above 1%, but also below 1% for a full ten of the weeks pictured.  Mot. at
24  5:1-10 (blue line).  Plaintiffs attempt to link Exhibit 30 to an email chain from March 2012 (Exhibit
  31).  Exhibit 31 discusses a ship hold because of a "TVM" issue (not an AFR issue) limited to OEM
25  drives from Korat, Thailand—just one of Seagate's three factories—in March 2012, several months
  earlier.  Mot. at 7:12-13; Pls. Ex 31 at p. 55042 ("so that Korat OEM drives are putting on
26  hold").  Plaintiffs assert, without evidence, that the OEM drives addressed in November 2012
  "tested as defective" and had somehow been "dumped" on consumers months before, as reflected in
27  the March 2012 email chain. There is no basis to link these two documents or to assert that either of
  them demonstrates a product defect—a claim Plaintiffs abandoned long ago.
28      [9]  This is the Khurshudov presentation, which concerned many drives not at issue and is
  otherwise not evidence of failure rates in consumer use.  Rodewald Decl, ¶ 20, Exs. 24, 25.

- Exhibit 35 – a document relating to Grenada *BP2* drives, which Plaintiffs expressly excluded from their class definition.  Mot. at i-ii, 1:22; Rodewald Decl. ¶ 29.

- Exhibits 13 and 14 – customer reviews for *external products* no longer part of the case. Mot. at 2:8-11 & fn. 4; Rodewald Decl. ¶¶41, 42.

Nor do the few documents Plaintiffs cite containing ORT (factory-level) AFR data show any *classwide* patterns.  Plaintiffs cite two documents they claim show "higher-than-advertised" AFRs in 2013.  Pls Exs. 22, 63. However, Plaintiffs fail to mention that one of these documents (Pls. Ex 22) shows ORT AFRs for February – April 2013, *but there was no AFR on the website or Data Sheets* during those months, so the ORT AFR could not have been "higher-than-advertised" at that time.  *See* p. 6 *supra*.  Exhibit 63 cites only one other document from 2013, namely, FED_SEAG0056643.  Rodewald Decl., ¶¶ 31-32.  This document shows the ORT AFR substantially below 1% for the period September 2013 – November 2013, and even below 0.34% for two weeks.[10]  *Id*., ¶ 33, Ex. 28.  Moreover, Plaintiffs submit no ORT AFR evidence at all for 2014. Yet there is affirmative evidence—which Plaintiffs failed to submit—that the ORT AFR was *below* 1% for much of 2014.  *Id*., ¶¶ 34-35, 46, Exs. 29-30, 37.  Moreover, there were no AFR representations after February 2014, so the ORT AFR could not have been "higher-than-advertised" during 2014.  *See* p. 6-7 *supra*. Neither the ORT AFR itself, nor the issue of a "higher than advertised" AFR, is common for 2013 or 2014.

Importantly, *even for 2012*, Plaintiffs do not show that ORT AFR data can prove failure rates in consumer use on a class-wide basis.  As noted above, their "evidence" consists of strung-together citations to documents relating to different time periods, different products, and different factories—which actually show the AFR was variable and below 1% for substantial periods.  (*See* note 6 *supra*.)  Nor do Plaintiffs show that ORT AFRs are linked to failure rates in consumer use, and they propose no method for doing so.  Finally, Plaintiffs cite or submit documents relating to "ship holds" issued during 2012.  Mot. at 5:25-6:5; Pls Ex. 23, 24, 29, 31.  As Seagate witnesses

---

[10]  Plaintiffs claim that the Seagate website "advertised" an AFR of 0.34% during this time, but they also claim that the Storage Solutions Guide advertised an AFR of 1% (Mot. at 3:25-28), and the ORT AFR was below 1% during September 2013 – November 2013.  As noted, Plaintiffs provide no evidence that class members saw the AFR on either the website *or* in the Guide, but even if some members were exposed to one of these, determining whether they were will require individual determinations of whether they viewed the website, the Guide, or neither.

have explained, any ORT AFR calculated during those times cannot reflect an AFR for drives sold to consumers, because the drives tested with those AFRs *were not shipped*, and any drives ultimately released for sale were subsets with different characteristics than the tested population. Rodewald Decl., ¶ 47, Ex. 38 [ECF 150-10 [Netel Decl.], ¶¶ 19, 28-33, 38, 39]. Plaintiffs dispute Seagate's evidence, and claim that *some* "bad" drives still reached consumers (Mot. at 5:25-27), but cite documents showing many drives were not shipped (*e.g.,* Pls Ex. 24 (thousands of drives subject to hold)). Nor do Plaintiffs propose any method to identify the supposedly "bad" drives. Rather, Plaintiffs' own evidence shows there is no common proof of the purported "true AFR" of the Drives at any time.

Figure 1 below shows a corrected version of Plaintiffs' misleading graph on page 9 of their Motion. Plaintiffs' graph misrepresents the data in several key ways and Figure 1 corrects Plaintiffs' graph to accurately shows the *absence* of common evidence of AFR representations and the *absence* of common evidence of purportedly high AFRs. *See* Rodewald Decl., ¶ 46, Ex. 37. A larger version is attached as Exhibit 37 to the Rodewald Declaration.



**Figure 1** – Corrected Version of Plaintiff's Graph on Motion, p. 9 (Rodewald Decl., ¶ 46, Ex. 37)

### C.    Boedeker's Damages Declaration Remains Inadmissible and Irrelevant

Plaintiffs resubmit the same Boedeker Declaration from a year ago. Mot. Ex. B. Boedeker's survey is no more admissible or persuasive now than it was during the prior round of briefing. Indeed, it is less so, because the lowest "true" failure rate Boedeker tested was 3%—and thus his

1  survey provides no evidence as to the materiality of AFRs of 1.5% or 2% on which Plaintiffs now

2  seek to rely for portions of the class period, as shown in, *e.g.* Exhibit 30.  Moreover, as Seagate's

3  survey expert, Dr. Itamar Simonson, demonstrated, Boedeker's study was seriously flawed in that,

4  among other problems, it cherry-picked a limited set of drive attributes and showed them out of

5  context, causing survey participants to consider AFR (which Boedeker conflated with the terms

6  "reliability" and "expected lifetime"—another problem with the survey) even if they would not have

7  done so under real-world conditions.  *See* Simonson Declaration, at ¶¶ 14-20; 42-76.  For these

8  reasons, Boedeker's report and conclusions are inadmissible under *Daubert v. Merrell Dow Pharms.*

9  *Inc.*, 509 U.S. 579, 589 (1993) and the Court should not consider them.

10         In any event, if the Court considers Boedeker's declaration, it should be given no weight

11  because it is irrelevant to the legal theories at issue.  Akin to the "fraud on the market" theory of

12  securities class actions, Boedeker assumed *that it does not matter if consumers even saw the*

13  *published AFR;* the "market equilibrium" price nevertheless somehow reflects its value and can be

14  used to compute "damages."  Simonson Decl. ¶ 70 (quoting Boedeker Depo. at 223:10-225:9).  But

15  *Comcast Corp. v. Behrend*,  569 U.S. 27, 34 (2013) applies to consumer protection cases, and

16  plaintiffs must "show their damages *stemmed from* defendant's actions that created the legal

17  liability."  *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (emphasis added).

18  Boedeker's opinions should be disregarded not only because they are based on a flawed study, but

19  because they are irrelevant to a consumer protection claim requiring evidence of causation.

20  **III.    LEGAL STANDARD**

21         A class may be certified *only if* all of the requirements of Rule 23(a) and one of the

22  requirements of Rule 23(b) are met.  *Wal-Mart*, 564 U.S. at 345.  Under Rule 23(a), a class may be

23  certified if the plaintiff demonstrates (1) numerosity; (2) commonality; (3) typicality; and (4) fair

24  and adequate representation of the interests of the class.  Fed. R. Civ. P. 23(a).  Courts must engage

25  in a "rigorous analysis" of Rule 23(a)'s requirements.  *Wang v. Chinese Daily News, Inc.,* 737 F.3d

26  538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart,* 564 U.S. at 351).  In addition, because Plaintiffs

27  invoke Rule 23(b)(3), they must also show that (1) common questions of law or fact predominate

28  over individual questions, and (2) a class action is superior to other available methods of

SMRH:488221917.6

SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

1  adjudicating the controversy. *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *6 (N.D. Cal. Dec.

2  22, 2016).

3  **IV.    PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(A)**

4         As discussed in Section II(A) and below, commonality exists only where there is a "common

5  contention" that is "capable of classwide resolution—which means that determination of its truth or

6  falsity will resolve an issue that is central to the validity of each of the [Plaintiffs'] claims in one

7  stroke." *Wal-Mart*, 564 U.S. at 350.   Plaintiffs have identified no issues capable of classwide

8  resolution in "one stroke."   Nor have Plaintiffs met their burden to show their claims are typical or

9  that they are adequate representatives, because (1) Plaintiffs Nelson and Schechner purchased

10  external drives no longer included in the class definition, (2) Plaintiff Manak's claim is time-barred,

11  and (3) Plaintiffs Hagey, Manak, Enders, and Dortch purchased their Drives at times when no AFR

12  representations were available. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir.

13  2011) (citation omitted) (typicality not satisfied where action based on conduct unique to named

14  plaintiffs and class members were not injured by same course of conduct).   Moreover, without

15  evidence of common exposure to Seagate's AFR representations, materiality and reliance cannot be

16  presumed and must be proved individually for each class member.   The Rule 23(a) requirements are

17  not satisfied.

18     **A.    Plaintiffs Still Lack Common Evidence of Seagate's Representations and
            Purported Omissions Sufficient to Give Rise to a Classwide Duty to Disclose**

19
        The Court concluded in its prior Order that the "viability of a 'pure omissions' claim under

20  California law, as interpreted by the Ninth Circuit, is currently in flux . . . ."   Order at 31:22-24.

21  This uncertainty stemmed from two Court of Appeal decisions that conflicted as to whether the four

22  factors creating a duty to disclose in fraud actions apply to consumer protection claims.[11]   *Compare*

23  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011) (adopting *LiMandri* factors without

24  analysis although *LiMandri* was a fraud case), *with Buller v. Sutter Health*, 160 Cal. App. 4th 981,

25

26         [11]   Under *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997), there are four
    circumstances that may create a disclosure obligation:  "(1) when the defendant is in a fiduciary
27  relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not
    known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff;
28  and (4) when the defendant makes partial representations but also suppresses some material facts."
    52 Cal. App. 4th at 336.

988 n.3 (2008) ("respectfully disagree[ing]" with "the proposition that a failure to disclose is

actionable under the UCL if it satisfies one of the four tests for the tort of fraud by failure to disclose

as set forth in *LiMandri* . . . ."). Other courts have cautioned that *LiMandri* should not be applied to

consumer protection claims, because California courts have generally declined to adopt a broad duty

to disclose thereunder. *E.g.*, *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016),

*aff'd on other grounds*, 891 F.3d 857 (9th Cir. 2018) ("The definition of a material omission has

stunning breadth, and could leave manufacturers (chocolate or otherwise) little guidance about what

information, if any, it must disclose to avoid CLRA or UCL liability"); *Wilson v. Hewlett–Packard*

*Co.*, 668 F.3d 1136, 1141 (9th Cir.2012) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144

Cal. App. 4th 824, 835 (2006)) ("California courts have generally rejected a broad obligation to

disclose").

Nonetheless, although the Court should find Seagate had no duty, common or otherwise, to

disclose additional information about the Drives' AFR because it did not involve an "issue[] of

product safety" or a consistent "affirmative misrepresentation" that Seagate needed to counter, *Dana*

*v. Hershey Co.*, 180 F. Supp. 3d 652, 664 (N.D. Cal. 2016) (citing *Hodsdon v. Mars, Inc.*, 162

F.Supp 3d 1016, 1025 (N.D. Cal. 2016), and *Wilson*), even applying *LiMandri*, Plaintiffs cannot

show that Seagate owed a common duty of disclosure. The Ninth Circuit's recent decision in

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) attempts to reconcile these varying standards.

In *Hodsdon*, the Ninth Circuit affirmed the dismissal of a putative class's claims under the UCL and

CLRA, which alleged that Mars had omitted material information about slave and child labor in its

chocolate supply chain. *Id.* at 860-62. The court held that, even when assuming that this

information was material to customers, in a "pure omissions case concerning **no physical product**

**defect** relating to the central function of the chocolate and no safety defect, Plaintiff has not

sufficiently pleaded that Mars had a duty to disclose on its labels the labor issues in its supply chain"

such that his "CLRA, UCL and FAL claims [we]re foreclosed." *Id.* at 865 (emphasis added). The

Ninth Circuit emphasized that the disclosure obligation relates to "physical defects"—such as the

controller defect in *Collins* or the defective converters in *Rutledge v. Hewlett-Packard Company*,

238 Cal.App.4th 1164 (2015)—that impact the central function of the product. *Id.* at 862-63.

1      Here, Plaintiffs do not claim that Seagate failed to disclose a physical product defect.

2 Instead, they argue that Seagate had a duty to disclose the "true AFR" of the Drives.  Mot. at 9,

3 14:17-18.  Tellingly, Plaintiffs do not specify what "true AFR" Seagate should have disclosed—

4 likely because it varied over time and fell within the specified range at various points throughout the

5 putative class period such that there was no common "true AFR" to disclose.  But setting aside the

6 fact that an unspecified "true AFR" falls far short of the "specific fact or metric that Seagate failed

7 to disclose" the Court previously held Plaintiffs must identify, disclosure of a "true AFR" is not

8 required even under *Hodsdon,* as it does not relate to a *physical* defect.  Order, at 33:1-7.

9      Further, Plaintiffs cannot show that Seagate owed a common duty to disclose under the two

10 prongs of *LiMandri* they advance:  (1) exclusive knowledge of material facts; and (2) active

11 concealment.  Mot. at 18:6-8.  As discussed in detail in Section II(B) above, Seagate's "knowledge"

12 regarding the Drives' AFR varied over time, by factory, and among the Drives.  Given these

13 variations, Plaintiffs cannot show Seagate knew of any common information it could or should have

14 disclosed.  Nor have Plaintiffs identified specific "affirmative acts on the part of the [D]efendants in

15 hiding, concealing or covering up the matters complained of" that would trigger a disclosure

16 obligation under the active concealment prong of *LiMandri.  Herron v. Best Buy Co. Inc.*, 924 F.

17 Supp. 2d 1161, 1176 (E.D. Cal. 2013) (citations omitted).  Plaintiffs have argued that Seagate failed

18 to disclose the "true AFR" of the Drives—but "[m]ere nondisclosure does not constitute active

19 concealment."  *Id.*  Thus, under either standard, Plaintiffs cannot establish a disclosure duty.[12]

20     **B.**     **The Alleged "Higher" AFR of the Drives Is Not a Common Issue**

21      Plaintiff's theory is that Seagate represented the Drives' AFR as below 1% (or, for a short

22 period as 0.34%), but that this was a misrepresentation, and consumers were deceived, because the

23 Drives' "true" AFR was "*higher than advertised*."  Of course, only those class members who **saw**

24 the AFR representations could possibly have been deceived by them.  But exposure to the AFR

25

26     [12] In its prior Order, the Court declined to reach the question whether the *Wilson* or *Hodson* tests applied, reasoning that "[t]he clearer deficiency here is that Plaintiffs have not presented classwide proof from which a finder of fact could conclude that the drives' AFR was higher than

27 Seagate represented, or otherwise sufficiently high to support Plaintiffs' claims, across the full span of the class period and various products at issue."  Order, at 32:12-15.  This remains the case, as

28 explained more fully below.  Accordingly, the Court still need not reach the legal issue of what standard applies to the duty to disclose.

representations has not been shown, and cannot be presumed, on a classwide basis.  Indeed, "[f]or everyone in the class to have been exposed to the omissions … ***it is necessary for everyone in the class to have viewed the allegedly misleading advertising***."  *Mazza*, 666 F.3d at 596 (emphasis added); *Cohen v. DirecTV, Inc*., 178 Cal. App. 4th 966, 980 (2009) ("we do not understand the UCL to authorize an award . . . on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice").  Further, when plaintiffs are exposed to "'quite disparate information,' . . . a presumption of reliance is inappropriate." *Philips*, 2016 WL 7428810, at *16 (individual issues predominated under CLRA and UCL where class members were not exposed to "uniform representations"); *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *5-6 (N.D. Cal. Aug. 15, 2016) (denying certification in part because classwide inference of reliance was impossible where no uniform misrepresentations were made); *Davis-Miller v. Automobile Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011) (same).

As discussed in Section II(A) above, AFR representations were not uniformly published, even as to the internal Grenada Classic and BP Drives now at issue.  Plaintiffs' sole evidence of a "widespread" campaign involving AFRs is limited to an unrepresentative sample of website screenshots in November 2011-December 2012, September 2013, and January 2014; Data Sheets before 2013; and Storage Solutions Guides (before 2014 or earlier).  However there were no AFR representations on the website from February-August 2013 or after February 2014, and no AFR representations in the Data Sheets after 2012.  Even when AFR representations existed, the AFR representations were variable and sometimes inconsistent.  *See* Section II(A), *supra*.  Moreover, Plaintiffs have not demonstrated that class members as a whole saw any of them.

Furthermore, as explained in Section II(B), Plaintiffs provide no evidence that the Drives' AFR exceeded 1% throughout the class period.  Rather—just as in Plaintiffs' prior attempt at class certification—Plaintiffs' evidence relates almost exclusively to 2012.  For 2013, there were no AFR representations for most of the time; during September-December 2013 the AFR representations were inconsistent and factory testing was at or below 1% for at least part of that time.  For 2014, there is affirmative evidence that the ORT AFR was below 1% and there were no AFR representations at all.  The purported AFR of the drives is not subject to common proof.  *See* Section

SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

1    II(B), *supra*.  In sum, the alleged "misrepresentations" are not a common issue, the alleged "higher

2    than advertised" AFR is not a common issue, and exposure to any purported representations cannot

3    be presumed on a classwide basis.

4        **C.    Materiality Is Not a Common Issue**

5        Plaintiffs do not dispute that they must be able to prove materiality with common evidence.

6    Mot. at 11:12-12:22.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011)

7    ("If the misrepresentation or omission is not material as to all class members . . . the class should not

8    be certified") (quotations omitted, *abrogated on other grounds by Comcast Corp. v. Behrend*, 569

9    U.S. 27 (2013)).  Moreover, plaintiff must show that 'had the omitted information been disclosed,

10   one would have been aware of it and behaved differently.'"  *Oestreicher v. Alienware Corp.*, 544 F.

11   Supp. 2d 964, 971 (N.D. Cal. 2008) (quoting *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1093 (1993))

12   (declining to adopt "fraud on the market" federal securities class action theory as California law).

13       Plaintiffs assert that Boedeker's survey establishes materiality, because "the results of [his]

14   survey reveal that AFR is by far the most important attribute to consumers (followed by price and

15   warranty terms)."  Mot. at 12:15-16.  However, Boedeker's materiality determination was based on

16   a Pre-Test Study that did not use the term AFR, but rather asked consumers to assign weights to the

17   values of "reliability" and "expected lifetime."  Mot., Ex. B at 103 & fig 16.  He then switched to

18   using AFR for the survey (claiming that AFR "reflected" the "reliability" and "expected lifetime")

19   values, without ever having tested whether the term AFR in particular was significant to consumers.

20   Mot., Ex. B, ¶103.  Seagate's survey expert, Itamar Simonson, conducted a far more realistic survey

21   in which subjects were shown an actual Seagate Data Sheet with the AFR representation changed

22   from <1% to <8%; the false AFR did not make any difference to survey participants' buying

23   decisions.  Simonson Decl. ¶ 37.  Moreover, the lowest "true" failure rate Boedeker tested was 3%;

24   thus, his survey provides no evidence as to the materiality of AFRs of 1.5% or 2% on which

25   Plaintiffs now seek to rely for portions of the class period.[13]  Finally, Plaintiffs fail to show class

26

27       [13] Plaintiffs also cite a purported customer complaint mentioning "reliability" (Plaintiffs'
     Exhibit 53) as evidence of materiality, Mot. at 12:2 & fn. 6, but Seagate earlier demonstrated that
28   this "complaint" does not relate to the ST3000DM001.  Similarly, it is impossible to tell whether
     Plaintiffs' Exhibit 54 relates to any of the products at issue or not, as was also demonstrated in prior

1    members would have been aware of any disclosure by Seagate of the allegedly omitted AFR and

2    behaved differently.  Because Plaintiffs cannot establish materiality on a classwide basis, they

3    cannot establish a classwide duty to disclose.

4        **D.    The Class Representatives Are Even More Atypical and Inadequate Now**

5            The named plaintiffs remain atypical and thus cannot adequately represent the proposed

6    class.  Indeed, two are no longer members of the newly narrowed classes they purport to represent

7    and another's claim is time-barred.  Nor, after nearly three years of litigation and two attempts at

8    class certification, should Plaintiffs be given leave to substitute new class representatives.

9            Named Plaintiffs Nelson and Schechner both purchased external drives only.  Now that the

10   class definition includes only purchasers of internal drives, *see* Mot. at 1, Nelson and Schechner no

11   longer qualify as members.  Therefore, the subclasses of Florida and South Dakota have no class

12   representative and certification should be denied for those states.  *See Del Valle v. Global Exchange*

13   *Vacation Club*, 320 F.R.D. 50, 58 (C.D. Cal. 2017) ("if Plaintiff is not a member of the class, she

14   cannot 'adequately protect the interests of the class'") (citing Fed. R. Civ. P. 23(a)(4)).

15           Plaintiffs attempt to skirt this problem by suggesting that the classes could be conditionally

16   certified without a named class representative.  Mot. at 16 n. 25 (citing *Gold v. Lumber Liquidators,*

17   *Inc.*, 323 F.R.D. 280, *appeal filed* (N.D. Cal. 2017).  However, instead of proposing new class

18   representatives, Plaintiffs ask the Court to certify the Florida and South Dakota subclasses on the

19   assumption that new representatives will eventually be found.  Although a court may have a duty to

20   substitute a new named plaintiff after certification to protect the class' interests, "that duty does not

21   exist prior to certification of the class," especially since pre-certification dismissal will not prejudice

22   the class.  *Oetting v. Norton*, 795 F.3d 886, 892 (8th Cir. 2015).[14]  Plaintiffs should not be permitted

23   to proceed with subclasses they knew lacked adequate representatives and yet did nothing to fix the

24   problem.  Moreover, the litigation has been ongoing for too long to start over with new

25

26   briefing.  Rodewald Decl., ¶¶44, 45.

[14] *See also Falcon v. Philips Electronics North America Corp.*, 304 Fed. Appx. 896, 898 (2d
27   Cir. 2008) (affirming denial of discovery to find new class representative when counsel already on
     notice of named plaintiff's deficiency); *Flores v. EP2, Inc.*, 2011 U.S. Dist. LEXIS 163839, at *4
28   (C.D. Cal. May 20, 2011) (denying discovery of contact information because "the court will not
     permit [p]laintiff to use the power of the court to solicit claims.").

1    representatives. *See Bentley v. Verizon Bus. Global, LLC*, 2010 WL 3341728, at *2 (S.D.N.Y. Aug.

2    20, 2010) (rejecting request to substitute new class representative where litigation had been ongoing

3    for years, extensive discovery had been conducted, and plaintiff's counsel was on notice of the

4    representative's inadequacy yet failed to find a substitute representative). Here, Plaintiffs do not

5    propose any new representatives for Florida or South Dakota, or any method of easily locating them.

6         Further, Plaintiff Manak is an inadequate class representatives because his claim is time-

7    barred. Manak purchased his drive in May 2013 and it allegedly failed in March 2014. SAC ¶¶

8    211, 220. Claims brought under Texas' DTPA must be brought within two years. V.T.C.A., Bus. &

9    C. §17.565. Plaintiffs assert that the statute should be tolled because the actionable conduct is

10   "inherently undiscoverable." Mot. at 25 n. 92. Not so. Manak personally experienced a drive

11   failure within a year and sent a request to Seagate for replacement. SAC ¶ 220. Notably, Plaintiffs

12   no longer argue the drives are defective, only that they were not as reliable as advertised. Thus,

13   once Manak's drive failed, Manak was on notice that it did not last as long as he expected. Because

14   there is no reason to invoke tolling, Manak should be dismissed as a named plaintiff and the

15   corresponding Texas subclass should not be certified.

16        Neither are the named plaintiffs' expectations with respect to AFR typical of those of the

17   class. *See generally supra*, Section IV(C) (showing lack of commonality regarding materiality). As

18   Professor Simonson found, consumers generally did not find a representation of even "<8%" to be

19   material to their purchasing decisions. Simonson Decl., ¶ 37. Some of the named plaintiffs,

20   however, articulated individualized reasons for expecting a drive with a low AFR. *See, e.g.,*

21   Rodewald Decl., ¶ 39, Ex. 34 (Manak Depo. at 136:2-10) (wanted low AFR because intended to use

22   the drives for RAID and NAS); *id.*, ¶ 37, Ex. 32 (Hagey Depo. at 59:25-60:5) (expected low AFR

23   partly because his work on customers' unspecified models of Seagate drives caused him to expect a

24   low AFR for his own ST3000DM001 drives); *cf. id.*, ¶ 38, Ex. 33 (Dortch Depo at 95:6) ("I don't

25   remember that [representation of low AFR] being a factor"); *id.*, ¶ 36, Ex. 31 (Hauff Dep., 115:8-15)

26   (failing to remember whether AFR he saw was from "Seagate's or Amazon's or one of the other

27   websites I was using for research"). Indeed, the only representations that would have been available

28   to all consumers would have been on the drives' packaging, which contained no AFR

representations.  *See* Declaration of Jeff Fochtman in Support of Seagate's Opposition to Plaintiff's Motion for Class Certification, ECF No. 152-2, ¶¶ 7-8.  More significantly, the evidence suggests that there were no AFR representations publicly available at the time named plaintiffs Hagey, Manak, Enders, or Dortch purchased their drives.  Compare SAC ¶¶ 174, 211, 227, 232 with Section II(A), *supra*.  At a minimum, these named Plaintiffs' exposure to AFR representations will be a disputed issue that subjects them to unique defenses.

Moreover, Plaintiffs have provided no evidence that the particular drives purchased by the named plaintiffs were manufactured at times and at the factories where ORT data showed a greater than 1% AFR.  *See* Section II(B), *supra*, (noting that the ORT AFR data varied over time).  Absent a showing that Seagate owed the named plaintiffs a duty to disclose based on (1) their exposure to an AFR representation, and/or (2) the existence of a materially high failure rate at the time and place of manufacture, the named plaintiffs are atypical of the classes they purport to represent.

## V.      PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF RULE 23(B)

In addition to the requirements of Rule 23(a), plaintiffs seeking certification under Rule 23(b)(2) must also show that (1) common issues of fact or law predominate, and (2) a class action is superior to other methods of resolving the dispute and will be manageable at trial.  Here, none of these factors has been established.

### A.      Individual Factual Issues Predominate Regarding Exposure, Reliance, and Materiality

As Seagate has shown, Plaintiffs have not established classwide exposure to uniform AFR representations.  S*ee* Sections II(A) and IV(B), *supra*.  Nor have Plaintiffs shown that representations regarding AFR were commonly material to the class.  *See* Section IV(C), *supra*. Indeed, AFRs could ***not*** have been common or material to buyers of Drives in February-August 2013 or after February 2014, because there were no AFR representations.  As to other times, AFR representations were sometimes available (1) on some portions of Seagate's website (but not others) before 2013 and or between September 2013—January 2014, (2) on Data Sheets before 2013, or (3) in Storage Solutions Guides before 2014, although Plaintiffs do not show the Guides were readily available on the website or anywhere else.  *See* Section II(A).  Moreover, even if common

1   representations existed, Plaintiffs still cannot establish classwide materiality in light of Boedeker's

2   flawed survey and the fact that he presumed common exposure, as well as Simonson's contrary

3   finding that consumers' purchasing decisions did not change in any statistically significant way

4   when presented with Data Sheets that included AFRs of <1% vs. <8%.  Simonson Decl. ¶ 37.

5        Plaintiffs have shown neither the common materiality of Seagate's AFR representations, *see*

6   Section IV(C), *supra*, nor that these representations were uniformly made.  *See* Section II(A), *supra*.

7   Accordingly, there can be no presumption of exposure or reliance, and individualized inquiries will

8   be necessary to determine: (1) whether AFR representations for the product appeared on Seagate's

9   website or other product-related materials at the time of each class member's purchase; (2) whether

10  the class member saw the AFR representation and relied on it; and (3) whether the Drive purchased

11  in fact had a higher failure rate during the time period in question.

12   **B.    Individual Legal Issues Predominate Under the Substantive Laws of the Eight
             States**

13

14       Plaintiffs' request to certify subclasses for the eight states in which they reside does not

15  overcome the lack of predominance of legal issues.  "Courts routinely deny class certification where

16  the laws of multiple states must be applied" because of the difficulty in applying multiple states'

17  laws with varying elements of the cause of action.  *Grayson v. 7-Eleven, Inc.*, 2011 WL 2414378, at

18  *3 (S.D. Cal. June 10, 2011).  It is therefore the class proponent's "responsibility to provide 'a

19  suitable and realistic plan for the trial of the class claims'" to account for this complexity.  *Marsh v.*

20  *First Bank of Delaware*, 2014 WL 2085199, at *8 (N.D. Cal. May 19, 2014) (internal citation

21  omitted).  In its earlier order, the Court noted the absence of sufficient analysis of whether state laws

22  on the duty to disclose materially differed.  Order at 30:15-22.  Despite the Court's expressed desire

23  for more in-depth briefing on the state laws at issue, Plaintiffs provide no trial plan or, indeed, any

24  analysis that attempts to resolve the substantial differences among the eight states on when a duty to

25  disclose rises to the level of an unfair or deceptive practice.

26       **a.    Plaintiffs Fail to Examine, Let Alone Provide a Trial Plan, for the
                 Differences Among States Regarding Any Duty to Disclose**

27

28       Plaintiffs' renewed motion fails to analyze the various states' laws on what triggers a duty to

disclose.  *See* Order, at 32.  Rather than conduct that analysis, Plaintiffs merely repeat the general elements of the eight states' consumer protection statutes.  Plaintiffs apparently assume that, because their consumer protection statutes have similar wording, the case law of the eight states on the duty to disclose must be the same.  This is incorrect.  Moreover, "a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome."  *See Castano v. American Tobacco Co*., 84 F. 3d 734, 742 (5th Cir. 1996) (overturning certification order where plaintiffs only made a "cursory review of state law variations").  As in California, the other seven states have consumer protection statutes that contain language prohibiting "unfair" and "deceptive" practices, but a more in-depth analysis is necessary to determine when an omission or representation constitutes an unfair or deceptive act.

For example, states differ on <u>when</u> a duty to disclose arises.  *See Rothbaum v. Samsung Telecommunications America, LLC*, 52 F.Supp.3d 185, 207 (D. Mass. 2014).  In *Rothbaum*, the court held that under Massachusetts law, "where the 'asserted misconduct amounts to a failure to disclose a *potential* problem, not a present and actual one, [it] does not rise to the level of a chapter 93A violation.'"  *Id*. (citing *L.B. Corp. v. Schweitzer-Mauduit Intern., Inc.*, 121 F. Supp.2d 147, 154 (D. Mass. 2000)).  The court found that defendant Samsung noticed the occurrence of shutdown issues with a small percentage of its phones and subsequently attempted technical changes to remedy the issue.  *Id*.  The court determined that based on this, Samsung at most suspected an issue with a small segment of its phones, but never had "actual knowledge of a material defect" and thus was not required to disclose that it was troubleshooting this issue.  *Id* at 208.  California law, in turn, slightly varies, requiring disclosure where defendant knows of a defect "central to the function" of the product, *Collins,* 202 Cal. App. 4th at 258, or when a prior contrary representation has been made.  *Daugherty*, 144 Cal. App. 4th at 836.  New York applies a different standard, requiring disclosure "where the business alone possesses material information that is relevant to the consumer and fails to provide this information."  *Braynina v. TJX Companies, Inc*., 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).  Florida, on the other hand, imposes its own test:  "(1) one who speaks must say enough to prevent his words from misleading the other party; (2) one who has

1  knowledge of material facts to which the other party does not have access may have a duty to

2  disclose these facts to the other party; and (3) one who stands in a confidential or fiduciary relation

3  to the other party to a transaction must disclose material facts." *See In re NJOY, Inc. Consumer*

4  *Class Action Litigation*, 2015 WL 12732461, at *14 (C.D. Cal. May 27, 2015) (noting that

5  FDUTPA claim fails where no duty to disclose shown).

6       Similarly, the states differ in what <u>intent</u> is required for an actionable omission. In Texas,

7  "the DTPA requires intentional omission of a material fact *for the purpose* of duping a consumer."

8  *Wyrick v. Tillman & Tillman Realty, Inc*., 2001 WL 123877, at *5 (Tex. Ct. App. Feb. 15, 2001)

9  (emphasis added, citing *Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1100 (5th

10  Cir.1988)).  Other states, such as South Dakota, Tennessee, and New York, lack this particular

11  intent requirement.  *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017)

12  (under New York law, "[p]laintiff need not establish defendant's intent to defraud or mislead in

13  order to state a claim"); *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) ("Negligent

14  misrepresentations may be found to be violations of the Act"); *In re Currency Conversion Fee

15  Antitrust Litig.*, 224 F.R.D. 555, 567–68 (S.D.N.Y. 2004), *opinion modified on reconsideration*, 361

16  F. Supp. 2d 237 (S.D.N.Y. 2005) (under South Dakota law, plaintiffs had to show credit card

17  company's omission of information on fees was "knowing and intentional").

18       Lastly, the states vary on when a fact is sufficiently <u>material</u> to require disclosure.  Some

19  states apply an objective standard.  *See Coleman v. CubeSmart*, 2018 WL 3672241, at *8 (S.D. Fla.

20  June 21, 2018) (finding claim actionable under FDUTPA if "the statements are 'likely to mislead

21  reasonable consumers" even if "the statements are 'technically or literally true'") (quoting *F.T.C. v.

22  Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007)); *Johnson v. Nissan N. Am., Inc.*,

23  272 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017) (New York law imposes a "likely to mislead a

24  reasonable consumer" standard).  Other states apply a subjective standard.  *See Terry v. Mercedes-

25  Benz, USA, LLC*, 2007 WL 2045231, at *2 (Tex. Ct. App. July 18, 2007) (Texas' DPTA examines

26  whether the consumer would have purchased the product had the information been disclosed);

27  *Sheehy v. Lipton Industries, Inc.*, 24 Mass. App. Ct. 188, 195 (1987) (Massachusetts' statute

28  requires evidence that plaintiff would not have made the purchase if fact was disclosed).  Given

1   these substantial differences in the subclass states' laws regarding the duty of disclosure and

2   Plaintiffs' failure to show how a trial would proceed in light of them, Plaintiffs have not met their

3   burden to show a predominance of common legal issues for the proposed subclasses.[15]

4              **b.      South Dakota's and Tennessee's Class Action Bars Foreclose Their
                         Inclusion In Any Sub-Class**

5

6        South Carolina and Tennessee, two of the proposed subclass states, do not permit class

7   actions under their consumer protection laws.  *See* S.C. Code § 39-5-140; *Dema v. Tenet Physician*

8   *Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123 (2009) ("Federal courts have recognized that class

9   actions may not be brought pursuant to SCUTPA"); Tenn. Code Ann. § 47-18-109 (West) ("Any

10  person who suffers an ascertainable loss of money or property . . . by another person of an unfair or

11  deceptive act or practice described in § 47-18-104(b) . . . may bring an action individually to recover

12  actual damages."); *see also Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 310

13  (Tenn. 2008) (noting class actions are prohibited under Tennessee consumer statute).

14       Plaintiffs attempt to circumvent these class action bars with a conclusory statement that such

15  bars "are procedural, rather than substantive."  Mot. at 26.  This appears to allude to Justice Stevens'

16  concurring opinion *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423

17  (2010), which reasoned that Rule 23 cannot preempt a state class action bar that "is so intertwined

18  with a state right or remedy that it functions to define the scope of the state-created right."

19  However, unlike the general New York class action bar found in *Shady Grove* to be procedural, the

20  class action bars in South Carolina and Tennessee are *located within their consumer protection*

21  *statutes*, meaning they were intended to apply to that specific right and thus are substantive.

22       Federal courts in South Carolina have repeatedly found that "the prohibitions against class

23  actions ingrained in the very text of the SCUTPA . . . are substantive portions of South Carolina law

24  and are not trumped by Federal Rule of Civil Procedure 23, even in light of the *Shady Grove*

25  decision."  *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) (dismissing class claims);

26

27  _____
        [15] A California subclass also would not be superior because it would duplicate the action
28  pending in San Francisco Superior Court before Judge Curtis Karnow, who earlier granted
    certification of the state plaintiffs' omissions claims under the CLRA and the UCL.  *Pozar v.*
    *Seagate Technology LLC*, No. CGC-15-547787 2016 WL 4562694 (S.F. Super. Ct. Nov. 1, 2017)).

1   *Stalvey v. American Bank Holdings, Inc.*, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013) (same);

2   *see also Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 729 (D.S.C. 2016) (rejecting class claims

3   because class action bar's placement in the same sentence as the SCUTPA right means that it

4   "shape[s] the scope of the right conveyed).  Similarly, courts agree that because Tennessee's class

5   action bar is located in its consumer protection statute, it is "so intertwined with that statute's rights

6   and remedies that it functions to define the scope of the substantive rights."  *Bearden v. Honeywell*

7   *Intern. Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (striking class claims); *see also*

8   *In re Ford Tailgate Litigation,* 2014 WL 1007066, at *9 (N.D. Cal. Mar. 12, 2014) (dismissing class

9   claims after finding class-action bar "intertwined" with State Consumer Protection Law); *Tait v.*

10  *BSH Home Appliances Corp.*, 2011 WL 1832941, at *9 (C.D. Cal. May 12, 2011) (same).

11          Plaintiffs rely on *Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 654 (S.D. Cal.

12  2014), which followed Justice Scalia's plurality opinion in *Shady Grove* and concluded that Rule 23

13  always trumps conflicting state class action bars.[16]  *Hydroxycut* was criticized by Judge Koh in

14  *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *11 (N.D. Cal. May 8, 2018) for adopting a

15  "minority view" of *Shady Grove* and ignoring "the Ninth Circuit's approving citation of Justice

16  Stevens' *Shady Grove* concurrence in *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1187 n. 8

17  (9th Cir. 2013)."  The court in *Hydroxycut* declined to analyze the class action bar at issue and

18  instead found all such bars pre-empted by Rule 23, *see id.* at 654, a view not shared by most of the

19  courts applying *Shady Grove.  See In re Volkswagen "Clean Diesel" Marketing, Sales Practices,*

20  *and Products Liability Litigation*, 2018 WL 4777134, at *28 (N.D. Cal. Oct. 3, 2018) (citing Justice

21  Stevens' opinion as the law); *In re Myford Touch Consumer Litigation*, 2016 WL 7734558, at *27

22  (N.D. Cal. Sept. 14, 2016) (applying Justice Stevens' opinion as controlling law); *Fejzulai,* 205

23  F.Supp.3d at 726 ("a majority of courts have concluded that Justice Stevens' concurring opinion is

24  controlling in view of the 'narrowest grounds' principle") (quoting *Stalvey v. Am. Bank Holdings,*

25  *Inc.*, No. 4:13–CV–714, 2013 WL 6019320, *4 (D.S.C. Nov. 13, 2013)).  This Court should follow

26  the prevailing view of *Shady Grove* and analyze whether each specific state's class action bar is

27  ────────────────

28      [16] For South Carolina law, Plaintiffs cite *Los Gatos Mercantile, Inc. v. E.I.DuPont De Nemours & Co*., 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015), but *Los Gatos* relies on *Hydroxycut*, which should not be followed for the reasons set forth above.

SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

1    intertwined with the substantive right.  Here, South Carolina's and Tennessee's class action

2    prohibitions have been shown to be so tied and should be enforced.

3        **C.    A Class Action Still Is Not Superior Given its Unmanageability**

4            Plaintiffs summarily argue that a class action is superior because it will be more efficient and

5    any potential individual recoveries would be dwarfed by litigation costs.  Mot. at 27:7-12.  But the

6    risk of small individual recoveries alone is insufficient to find superiority or to justify class

7    certification.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (affirming Third

8    Circuit's vacation of class certification order, including finding that class action was not superior

9    where complexity of class action made it so that it "could not be tried").  Instead, the "factors

10   relevant to assessing superiority" include weighing "(A) the class members' interests in individually

11   controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

12   concerning the controversy already begun by or against class members; (C) the desirability or

13   undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

14   difficulties in managing a class action."  *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168,

15   1175 (9th Cir. 2010) (citing Fed. R. Civ. P. 23(b)(3)(A-D)).

16           Plaintiffs do not address any of these factors, and on balance, the factors weigh against a

17   finding of superiority.  Indeed, Plaintiffs' own evidence shows that:  (1) Seagate's AFR

18   representations varied over time and were intermittently available on its website, and (2) Seagate's

19   factory AFRs were consistent with or not materially above its representations for the majority of the

20   putative class period.  *See* Section II(B), *supra*.  As a result of these variations, there is absolutely no

21   consistency in *what* information Seagate could have been obliged to disclose, *when* it had

22   knowledge of the information, *when* it would have then had a duty to disclose that information, and

23   *to whom* during the class period.  The individualized fact inquiries necessary to decide which

24   putative class members, if any, may be entitled to recover are compounded by the variations in state

25   substantive law and interpretation.  *See* Section V(B), *supra*.  Hence the Court's request for a trial

26   plan—a request Plaintiffs have ignored.

27           At bottom, "[t]he immense difficulty of determining class membership will make managing

28   this case as a class action extremely complicated" which should be "sufficient to preclude a finding

1   that a class action is the superior method for resolving this case." *See In re Clorox Consumer Litig.*,

2   301 F.R.D. at 449; *see also Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005) ("Because there

3   are too many individual questions at issue in this case and because Plaintiffs have not met their

4   burden of showing that this case is judicially manageable as a class action, as discussed above, a

5   class action here is not superior to other methods of litigation.").

6   **VI.    CONCLUSION**

7          For the foregoing reasons, the Court should deny Plaintiffs' renewed motion for class

8   certification, this time with prejudice.

9

10  Dated:  November 16, 2018                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

11                                        By_____ */s/ Anna S. McLean*_____

12                                                ANNA S. McLEAN
                                          Attorneys for Defendant
13                                        SEAGATE TECHNOLOGY LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEAGATE'S OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION