1   Steve W. Berman (*pro hac vice*)
    Breanna Van Engelen (*pro hac vice*)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Second Avenue, Suite 2000
3   Seattle, Washington 98101
    Telephone: (206) 623-7292
4   Facsimile: (206) 623-0594
    steve@hbsslaw.com
5   breannav@hbsslaw.com

6   Shana E. Scarlett (217895)
    HAGENS BERMAN SOBOL SHAPIRO LLP
7   715 Hearst Avenue, Suite 202
    Berkeley, California 94710
8   Telephone: (510) 725-3000
    Facsimile: (510) 725-3001
9   shanas@hbsslaw.com

10  Marc A. Goldich (*pro hac vice*)
    Noah Axler (*pro hac vice*)
11  AXLER GOLDICH, LLC
    1520 Locust Street, Suite 301
12  Philadelphia, PA 19102
    Telephone: (267) 534-7400
13  mgoldich@axgolaw.com
    naxler@axgolaw.com
14
    *Attorneys for Plaintiffs and the*
15  *Proposed Class*

16                     UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18                         SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SEAGATE TECHNOLOGY LLC LITIGATION | No. 3:16-cv-00523-JCS<br><br>PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION<br><br>DATE: Jan. 18, 2019<br>TIME: 9:30 a.m.<br>DEPT: Hon. Joseph C. Spero<br>         Courtroom G, 15th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Common questions of fact and law predominate, satisfying both the commonality requirements of Rule 23(a) and the predominance test of Rule 23(b). ..........................................................................................................................2

        1. Did Seagate misrepresent the drives' AFR during portions of the class period? ...........................................................................................................3

        2. Did Seagate knowingly underestimate the drives' true failure rate?.........4

        3. Was Seagate obligated to disclose the true AFR of its drives? .................6

        4. Are Seagate's misrepresentations and omissions material? ......................8

    B. The minor variations in state law do not bar class certification. ..........................11

    C. Plaintiffs satisfy the adequacy and typicality requirements of Rule 23(b)..........13

    D. A class action is the superior method of adjudication. .........................................15

III. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ...................................................................................................2

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) ...............................................................3, 7, 10, 11

*In re Auto. Parts Antitrust Litig.*,
    2013 WL 2456612 (E.D. Mich. June 6, 2013) ........................................................13

*In re Broiler Chicken Antitrust Litig.*,
    290 F. Supp.3d 772 (N.D. Ill. 2017) ........................................................................13

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .................................................................................................11

*Edwards v. Ford Motor Co.*,
    603 F. App'x 538 (9th Cir. 2015) ..............................................................................2

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .....................................................................................8

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ...................................................................................2

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017) .................................................................................11

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ...................................................................................11

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ...........................................................13

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...............................................................................9, 10

*In re Optical Disk Drive Antitrust Litig.*,
    2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) .........................................................13

*Rothbaum v. Samsung Telecomms. Am., LLC*
    52 F. Supp. 3d 185 (D. Mass. 2014) ........................................................................12

*Sali v. Corona Reg'l Med. Ctr.*,
    2018 WL 6175617 (9th Cir. May 3, 2018) ......................................................1, 3, 5

**STATE CASES**

*Gutierrez v. Carmax Auto Superstores Cal.*,
   19 Cal. App. 5th 1234, 1270 (2018) ...................................................................................... 8

*Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*,
   840 N.E.2d 526 (Mass. 2006) .............................................................................................. 12

*Pecan Valley Nut Co., Inc. v. E.I. du Pont de Nemours & Co.*,
   15 S.W.3d 244 (Tex. App. 2000) ................................................................................... 14, 15

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 (2015) .............................................................................................. 9

*Slaney v. Westwood Auto, Inc.*,
   322 N.E.2d 768 (Mass. 1975) .............................................................................................. 12

*VMark Software, Inc. v. EMC Corp.*,
   37 Mass. App. Ct. 610 (1994) ............................................................................................. 12

**FEDERAL RULES**

Federal Rule of Civil Procedure 23 ............................................................................... *passim*

# I.  INTRODUCTION

Seagate opposes class certification by delving into the merits and admissibility of plaintiffs' evidence. The Ninth Circuit recently affirmed that such challenges are not appropriate at the certification stage.[1] In any event, it is undisputed that Seagate told consumers that its internal drives had an annualized failure rate (AFR) of less than one percent or, even better, .34 percent. These failure rates were published on Seagate's website, in its product manuals, and in its data sheets. *See, e.g.*, Scarlett Decl., Ex. 2 at 2; Ex. 3 at 12; Exs. 4-6; and Ex. 7 at 9.[2] But this was not the truth. The truth is that the drives were ▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.*, Ex. 36. Seagate's AFR testing reveled higher failure rates than it published. And some of Seagate's commercial customers experienced failure rates of up to 30 percent. As one Seagate engineer lamented, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.*, Ex. 27.

Consumers paid the price for drives Seagate internally called ▓▓▓▓▓▓ *Id.*, Ex. 39. By not telling consumers the truth, Seagate made exactly the kind of material misrepresentations and omissions that state consumer protection law is designed to guard against. Consumers should be able to trust that corporations are telling them the truth – especially regarding a product's specifications and rate of failure.

Seagate now argues that "there was no common 'true AFR' to disclose" to consumers because the drives' failure rate "varied over time[.]" Opp. at 13.[3] Well, this is news to consumers. Consumers were not told that the drives' failure rate might depend on when they bought their drive

---

[1] *Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, 2018 WL 6175617, at *5 (9th Cir. May 3, 2018) (*as amended* Nov. 27, 2018) ("Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification. 'Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies.'") (Internal citation omitted.).

[2] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Plaintiffs' Renewed Motion for Class Certification, Oct. 15, 2018, ECF No. 189-5.

[3] "Opp." Refers to Defendant Seagate Technology LLC's Opposition to Plaintiffs' Renewed Motion for Class Certification, Nov. 16, 2018, ECF No. 193.

or that it might vary over time. They were told that the AFR was less than one percent, or more specifically, .34 percent. Seagate never disclosed to consumers that its own testing consistently estimated a failure rate above the one percent range.

For the reasons set forth below, plaintiffs respectfully request the Court appoint Hagens Berman Sobol Shapiro LLP and Axler Goldich, LLC as class counsel, and certify the eight proposed classes on behalf of individuals who reside in California, Florida, Massachusetts, New York, South Carolina, South Dakota, Tennessee, and Texas, who purchased a new (not for resale) Seagate Barracuda brand hard drive, model number ST3000DM001 or a new (not for resale) Seagate Desktop HDD, model number ST3000DM001, manufactured on or before January 1, 2015, but excluding drives manufactured under the Seagate product name "Grenada BP2."

## II.   ARGUMENT

Seagate only challenges whether plaintiffs have met the commonality, typicality and adequacy prongs of Rule 23(a) and the predominance, superiority and manageability tests of Rule 23(b). Plaintiffs do not address the factors which Seagate concedes have been met.

**A.   Common questions of fact and law predominate, satisfying both the commonality requirements of Rule 23(a) and the predominance test of Rule 23(b).**

Seagate challenges whether there really are common questions of fact predominating over this litigation. In bringing forth this challenge, Seagate mischaracterizes much of plaintiffs' evidence and delves heavily into the merits, suggesting once again that "no defect" exists. Opp. at 13. But it is well-established that plaintiffs need not prove the merits of their claims at class certification: "In order to satisfy the predominance requirement [of Rule 23(b)], the plaintiff need not prove the existence of the defect."[4] "Plaintiffs' position [on the existence of defects] may or may not prevail, but that is a merits question not appropriately addressed at the class certification stage."[5] This is because "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[6] To the extent that Seagate

---

[4] *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015).

[5] *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017).

[6] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

invites this Court to rule on the merits, doing so would invite error: "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[7]

Plaintiffs have presented sufficient facts to show common questions of law and fact predominate for all class members, given the following common issues: (1) whether Seagate misrepresented the drives' AFR during portions of the class period; (2) whether Seagate knowingly underestimated the drives' true failure rate; (3) whether Seagate was legally obligated to disclose the unreliability of its drives; (4) whether Seagate's misrepresentations and omissions were material to the reasonable consumer. Although Seagate challenges the answer to the last three questions on the merits, Seagate concedes the answer to the first. Regardless, all four points are common questions of fact that predominate over this litigation, satisfying Rule 23(a) and Rule 23(b).[8]

1.   **Did Seagate misrepresent the drives' AFR during portions of the class period?**

One question common to the class is whether Seagate misrepresented the AFR of its drives during the class period. Although plaintiffs should not be required to prove the merits of their case now, undisputed evidence proves that Seagate did in fact misrepresent the AFR of its drives from at least 2011 to 2013. Specifically, Seagate concedes that its website promised that the drives had an AFR of less than one percent between November 2011 and May 2013. *See* Rodewald Decl., Ex. 37.[9] Seagate also concedes that it made the same specification representation in its data sheets and in its storage solutions guide, available for download from the Seagate website. Opp. at 6. Finally, Seagate

---

[7] *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 348 (N.D. Cal. 2018) (internal quotation marks and citation omitted), *leave to appeal denied sub nom*, *Reyna v. Arris Int'l PLC*, No. 18-80099, 2018 WL 6167340 (9th Cir. Nov. 8, 2018) (citing *Amgen*, 568 U.S. at 466).

[8] Curiously, Seagate questions how the evidence attached to the Scarlett declaration can be admitted at trial. First, discovery is not closed, and plaintiffs would be able to conduct additional depositions of Seagate employees to ask foundational questions and designate sponsoring witnesses for each of these pieces of evidence. But second, and more importantly, Seagate's employees at its headquarters in Cupertino, California are within the 100 miles required to issue a trial subpoena under the Federal Rules of Civil Procedure. Additionally, the Ninth Circuit recently held that in evaluating a motion for class certification, "the court's consideration should not be limited to only admissible evidence." *Sali*, 2018 WL 6175617, at *5.

[9] "Rodewald Decl." refers to the Declaration of Tenaya Rodewald in Support of Seagate Technology LLC's Opposition to Plaintiff's Renewed Motion for Class Certification, Nov. 16, 2018, ECF No. 193-1.

1  admits that from at least July to November of 2013, it listed the drives' AFR as a more specific "
2  >1%, .34%". *See* Rodewald Decl., Ex. 37.[10]

3  Despite these representations to consumers, Seagate now agrees that its own testing revealed an average annual failure rate that was greater than one percent for the entire period between 2011 and 2013. *See* Rodewald Decl., ¶ 46. During this period, Seagate also concedes that it **never once** reached an average AFR of .34 percent in testing – contrary to the more specific representations it made to consumers on its website. *See* Scarlett Decl., Exs. 4-6. In other words, it is undisputed that, between November 2011 and May 2013, Seagate failed to manufacture drives that met *any* of the AFR specifications Seagate promised. Not only are Seagate's misrepresentations a question of fact common to the class, but the answer itself is affirmative and undisputed.

2.  **Did Seagate knowingly underestimate the drives' true failure rate?**

Even though Seagate concedes that it misrepresented the drives' AFR during the 2011 to 2013 period, Seagate suggests that its misrepresentations were not significant, because the AFR "was not materially above one percent." Opp. at 24. In forming this argument, Seagate ignores and dismisses plaintiffs' evidence showing that Seagate knew its testing was underestimating the drives' true AFR between 2011 and 2015. Indeed, the true failure rate may have been as high as 30 percent. Whether Seagate believed that its testing underestimated the true failure rate is a question of fact common to the class that predominates over this litigation.

Plaintiffs have provided common evidence which demonstrates that Seagate questioned its own AFR testing model for the drives. For example, plaintiffs have shown that Seagate engineers were required to assume that failure rate of the drive would decrease with time. Mot. at 10.[11] But the Blackblaze tests show that the Barracuda and Desktop HDD drives failure rate did not decrease over time. *Id*. And internally, Seagate seriously questioned the assumptions of its AFR model, stating that

---

[10] Seagate also concedes that the ">1%, .34%" representation appeared on the website between September and November 2013. *See* Rodewald Decl., Ex. 37. And Seagate appears to concede that Seagate listed an AFR of ".34%" for the Desktop HDD from an unspecified period to at least January 2014. *Compare*, *e.g.*, Scarlett Decl., Ex. 6 to Rodewald Decl., *passim*.

[11] "Mot." refers to Plaintiffs' Notice of Motion and Renewed Motion for Class Certification, filed under seal, Nov. 15, 2018.

1 ██████████████████████████████████████████████████████████
2 ████████████████████ Scarlett Decl., Ex. 52.

3       Plaintiffs have also provided evidence that, beginning in December 2011, Seagate's sophisticated commercial customers were estimating real-world drive failure rates between 20 and 30 percent – contrary to the AFR projections Seagate reached in testing. Mot. at 9-10. Seagate confessed that these failure rates were ████████████████████████████ carlett Decl., Ex. 40. Seagate received reports of high failures from sophisticated customers in 2011, 2012, 2013, and 2014. *Id*. Seagate admits that its sophisticated customers described high failure rates occurring in both iterations of the drive – the Grenada Classic and the Grenada BP. Rodewald Decl., ¶ 23.

      The parties dispute the weight a factfinder will give this evidence: plaintiffs argue that these users were better able to reveal the drives' true AFR because they were more sophisticated than individual consumers, who purchased the drives for home use. Commercial customers also purchased more drives, allowing them to see failure patterns that individual consumers (most of whom only bought one or two drives each) would not have been able to uncover. Seagate, on the other hand, argues that less weight should be given to the commercial evidence because the failure rate might be higher in a commercial setting. This is a dispute for the fact finder: whether consumers experienced the same 20-30 percent failure rate as Seagate's commercial customers is a question of fact that should be reserved for the jury.[12] Certainly, it cannot be held that this evidence is irrelevant as a matter of law. And Seagate ignores its own admissions that the drives were failing at concerning rates for consumers.[13] Hence, plaintiffs' evidence creates a common question of fact that predominates: did Seagate knowingly underestimate the true AFR between 2011 and 2015?

      Similarly, Seagate disputes much of plaintiffs' AFR testing evidence on the merits. For example, plaintiffs submitted original equipment manufacturer (OEM) testing documents that

---

[12] "[W]e have never equated a district court's 'rigorous analysis' at the class certification stage with conducting a mini-trial." *Sali*, 2018 WL 6175617, at *4.

[13] As one Seagate engineer asked: ████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Scarlett Decl., Ex. 27.

1  demonstrate that the AFR was higher than one percent. Mot. at 7. Seagate argues that this evidence
2  must be ignored because the OEM drives were originally produced for computer equipment
3  manufacturers, such as Apple or Dell. Opp. at 7. Relatedly, Seagate disputes the significance of the
4  Apple recall, Dell's complaints regarding drive failures, and HP's stop-ship order.[14] *Id*. Yet Seagate
5  ignores plaintiffs' critical evidence that Seagate was aware that nearly one million **non-OEM**
6  consumer drives were likely affected by the defect. Seagate also conveniently ignores the evidence
7  that it pushed its failing OEM drives into the hands of less-sophisticated consumers by
8  ███████████████████████████ Mot. at 7, Scarlett Decl., Ex. 31. Whether these OEM drives were
9  sold to consumers as Barracuda and Desktop HDD drives is a factual dispute, not a reason to deny
10 certification, nor ignore plaintiffs' evidence.[15]

   3.   **Was Seagate obligated to disclose the true AFR of its drives?**

12    Seagate argues that predominance and commonality are defeated because, for seven months
13 in 2013 and for part of 2014, Seagate removed the AFR specifications from portions of its website
14 and told consumers nothing about the failure rate. Opp. at 6. Essentially, Seagate argues that it cannot
15 be liable for its misrepresentations because it also made omissions during the class period.

16    As an initial matter, Seagate seriously misleads the Court by incorrectly claiming that "*there*
17 *was no AFR on the website*" during the months of February through April of 2013. Opp. at 8
18 (emphasis in original).  To the contrary, the original Barracuda Data Sheet *was available from*
19 *download on Seagate's website through the entire class period*. *See* Van Engelen Decl., ¶¶ 4-13.[16]
20 In fact, Seagate continues to host the original Barracuda data sheet on its website,[17] and it continues
21 to be one of the top two results in Google, Bing, and other engines when users search for "Seagate

---

[14] While addressing the Apple recall, Seagate projected that there were at least ███████████████████████████████████████████████████████████████ Scarlett Decl., Ex 45.

[15] Seagate does not dispute that both the Barracuda and the Desktop HDD are SBS drives.

[16] "Van Engelen Decl." refers to Declaration of Breanna Van Engelen in Support of Plaintiffs' Reply in Support of Renewed Motion for Class Certification, concurrently filed herewith.

[17] *See e.g.*, Seagate, Data Sheet - Barracuda®, (December 7, 2018, 8:35 AM), https://www.seagate.com/staticfiles/docs/pdf/datasheet/disc/barracuda-ds1737-1-1111us.pdf (showing a copy of Scarlet Decl., Ex. 2, accessible from the seagate.com website).

1  3TB Barracuda AFR" or "Seagate 3TB Barracuda Data Sheet." *Id*. (showing the documents are
2  accessible using simple searches). Setting aside this misstatement, the fact that Seagate removed the
3  AFR specifications from portions of its website does not defeat the commonality or predominance.

4  Seagate mirrors an argument made in *In re Arris Cable Modem Consumer Litigation*.[18] In
5  *Arris*, consumers alleged that a modem manufacturer made misleading representations about the
6  "speed and reliability"[19] of its modems – a device that helps users connect to the internet. The
7  plaintiffs described a "network latency" defect, which the defendants attempted to fix by
8  implementing a series of firmware updates. The defendant argued that it could not be held liable for
9  its representations regarding its modems' speed and reliability because it "made no representations
10 regarding latency" for the modems.[20] But Judge Koh dismissed this argument and granted class
11 certification, holding that the manufacturers' duty to disclose the latency defect was a mixed
12 question of law and fact common to the class that predominated over the ligation.[21]

13 Here, plaintiffs have alleged that Seagate failed to disclose the true AFR of the drives during
14 the class period. The fact that Seagate removed AFR representations for several months are
15 additional omissions – not a reason to preclude classwide liability. And Seagate failed to disclose
16 that "contamination issues" and "head instability" defects were affecting the failure rate of the
17 drives. Seagate's own engineers noted that the drives had [redacted]
18 [redacted] a fact it never disclosed to consumers. Scarlett Decl., Ex. 28.

19 Seagate twists the holding of *Hodson v. Mars, Inc.*[22] to suggest that it had no independent
20 duty to disclose the drives' true AFR to consumers. Seagate concludes – without any legal analysis –
21 that it had no duty under California omissions law to correct the AFR representations it made
22 between 2011 and 2013. Opp. at 12. Yet the Ninth Circuit limited the *Hodson* holding, stating that it

---

[18] *Arris*, 2018 WL 6167340.
[19] *Id.*, at *345.
[20] *Id.*
[21] *Id.*, at *361-*363.
[22] *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018).

only applies "[i]n the absence of any affirmative misrepresentations made by the manufacturer."[23] Here, it is indisputable that Seagate made affirmative misrepresentations. *Hodson* is also inapposite because "the existence of slave labor in the supply chain is not a physical defect at all, much less one related to the chocolate's function as chocolate."[24]

Plaintiffs are not arguing that Seagate's drives are defective because they are made by children or slave labor overseas; the argument here is about the central function of hard drives and whether or not they fail at the rate promised. Plaintiffs contend that Seagate failed to disclose the drives' failure rate – which may have been up to 30 percent. Mot. at 9. Hence, whether Seagate had a duty to disclose the true AFR is a mixed question of law and fact susceptible to classwide proof.

    4.  **Are Seagate's misrepresentations and omissions material?**

As courts have held time and again, the test for materiality is an objective one – whether "a reasonable consumer would deem it important in determining how to act in the transaction at issue."[25] Materiality is a question of fact, reserved for a jury. Only in certain circumstances – not present here – can a court determine that an omission "is so obviously unimportant that the jury could not reasonably find that a reasonable person would have been influence[d] by it."[26]

Seagate disputes whether its representations were material, but it does not engage in any analysis of the relevant case law. This failure is critical because California courts have held, in analogous cases to this one, that an omission is material if the omission or defect is central to the functioning of a product.[27] For example, in *Rutledge v. Hewlett-Packard Co.*, the California Court of Appeals reversed both a denial of class certification and the granting of summary judgment because

---

[23] *Id.* at 860.

[24] *Id.* at 864.

[25] *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1270 (2018), *as modified on denial of reh'g* (Feb. 22, 2018) (internal quotation marks and citation omitted).

[26] *Id.* at 1262.

[27] Plaintiffs' analysis centers on California law because Seagate cites to no other state law cases that would suggest its omissions are not material.

materiality was a question of fact.[28] In *Rutledge*, plaintiffs alleged that certain HP computers contained inverters that HP knew would likely fail and cause display screens to dim and darken at some point before the end of the notebook's useful life.[29] The Court of Appeals reversed the granting of summary judgment, finding the defect was material because it was "critical to a notebook computer's function."[30] So it is here: plaintiffs have demonstrated that the drives fail before the end of the drives' useful life, at rates not previously disclosed.

Seagate also ignores evidence of its knowledge that drive failures were of critical concern for customers because it meticulously logged consumer complaints before and during the class period. These logs show customers repeatedly telling Seagate that avoiding drive failures is one of their top concerns when purchasing a hard drive. Customers also told Seagate that drive failures are one reason to switch to a competitor. Scarlett Decl., Ex. 53. And customers told Seagate that published failure rates were important to them when making product decisions. *Id.* at Ex. 54.

Throughout its opposition brief, Seagate incorrectly asserts that plaintiffs must show that Seagate engaged in a large-scale national advertising campaign that exposed class members to the misrepresentations and induced reliance. *See* Opp. at 3, 15-16, 18. In doing so, Seagate mischaracterizes the holding in *Mazza v. Am. Honda Motor Co.*[31] In *Mazza*, plaintiffs brought consumer protection claims for misrepresentations about an optional automated braking system. Specifically, plaintiffs alleged that Honda's television commercials and magazine advertisements did not warn drivers that the system might send three warnings (auditory and visual warnings, seatbelt tightening, and strong braking) at the same time and that the system shuts off in inclement weather. The Ninth Circuit found, that while Honda "might have been more elaborate and diligent in disclosing the limitations" of the braking system, "its advertising materials do not deny that

---

[28] *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015). The opinion did not reverse the denial of certification on the CLRA claim for the limited reason that the district court had granted summary judgment on some of defendants' affirmative defenses in favor of plaintiffs, creating a one-way intervention problem.

[29] *Id.* at 1168.

[30] *Id.* at 1175.

[31] *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

limitations exist."[32] Additionally, Honda published warnings about the limits of the braking system in its dealerships and online.[33] The Ninth Circuit held that, in these circumstances, a presumption of reliance could not be found to exist because consumers "were exposed to quite disparate information from various representatives of the defendant."[34]

Seagate is distinguishable from *Mazza* because consumers were not exposed to disparate information from various representatives. Seagate does not contest that <u>every time</u> it published the AFR for the drives, it represented that the failure rate was less than one percent, or even more specific, .34 percent. By repeatedly publishing only these rates, Seagate effectively "den[ied] that limitations exist" for the AFR, unlike the Honda advertisements.[35] And Seagate did not publish any disclaimers regarding the limits of its AFR testing process, unlike Honda – which published the dealership video disclaimers *on its website*.[36] Finally, Seagate is distinguishable from *Honda* because Seagate disseminated its representations online throughout the class period; *Honda* involved a rather short, limited print and television advertising campaign.

*In re Arris Cable Modem Consumer Litigation* highlights how these distinctions affect class certification.[37] As previously discussed, Section A(3), *supra*, the allegations in *Arris* are substantially similar to the allegations at issue in this case. In *Arris*, the court held that "Defendant's limited advertising is irrelevant in the instant case because the misrepresentations upon which plaintiffs allegedly relied were on . . . Defendant's website, and the Modem's product pages on retailers' websites, not in advertisements."[38] So it is here.

Finally, Seagate challenges materiality by challenging plaintiffs' damages expert, Stephen Boedeker. Seagate uses an identical argument to its previous argument, which was criticized by this

---

[32] *Id.* at 596.
[33] *Id.* at 587.
[34] *Id.* at 596.
[35] *Id.*
[36] *Id.* at 587.
[37] *Arris*, 327 F.R.D. at 365.
[38] *Id.* at 366.

1   Court for being "conclusory."[39] Seagate argues (again without analysis) that *Leyva v. Medline Indus.*

2   *Inc.*,[40] (a wage and hour case) precludes Boedekers' damages theory. But the Ninth Circuit held that

3   the full refund calculation is a permissible method for measuring classwide damages in consumer

4   protection actions.[41]

**B.     The minor variations in state law do not bar class certification.**

Next, Seagate argues that small variations in the state consumer protection statutes predominate over the four common questions discussed above. Nonsense. This Court has already held that it is "satisfied that the common issues of fact would predominate over any variation in issues of law."[42] And the consumer protection statutes do not provide substantial differences regarding the duty to disclose such that would affect the outcome of this case. Notably, Seagate does not cite to a single case where class certification was denied due to the purported variations in state law that Seagate discusses or a single case where a class was decertified on such grounds.

Seagate points to minor variations in state law that are irrelevant to this case. For example, Seagate argues that "states differ on <u>when</u> a duty to disclose arises" (Opp. at 20), but Seagate fails to conduct any analysis related to how that would affect the allegations put forward in this case. This is because the law of all eight states imposes a duty for Seagate to disclose the drives' true AFR.

For the **Massachusetts** class, Seagate cites to *Rothbaum v. Samsung*[43] to support its claim that "failure to disclose a potential problem" is not actionable under Chapter 93A.[44] At issue in *Rothbaum* was whether Samsung had an obligation to disclose that its phones occasionally shut off.

---

[39] Order Denying Motion for Class Certification ("Class Cert. Order"), July 5, 2018, ECF No. 182 ("Seagate asserts in a conclusory fashion that his 'conjoint study . . . is so fundamentally flawed in its conception and execution as to render Boedeker's report and conclusions inadmissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),' with no further explanation except for a citation to Seagate's expert Itamar Simonson's report.").

[40] *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

[41] *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 2675 (2018).

[42] Class Cert. Order at 30.

[43] *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 203 (D. Mass. 2014).

[44] *Id.*

1  It was uncontested that this shutdown occurred "no more than once per month" and "did not impede
2  [the consumer's] ability to use her phone."[45] The court noted that there "is no evidence that the
3  shutdowns caused [the consumer] to lose data, miss calls, or suffer any harm."[46]

4  In contrast, Seagate's drive failures caused consumers to lose troves of valuable data. This
5  distinction is important, because *Rothbaum* acknowledges that under Massachusetts law, "a
6  defendant's failure to disclose known problems with its goods" violates Chapter 93A.[47] Indeed,
7  Massachusetts courts will impose liability for inducing a consumer to purchase goods "of dubious
8  reliability for the intended purpose," such as devices that have high failure rates.[48] Finally, Seagate
9  incorrectly claims that Massachusetts law requires proof of actual reliance. To the contrary, reliance
10 is "not an essential element of a [Chapter] 93A claim."[49]

11 Seagate suggests that **New York** "applies a different standard, [than Massachusetts] requiring
12 disclosure when the business alone possesses material information relevant to the consumer and fails
13 to provide that information." Opp. at 20. But there is no dispute in this case that Seagate was the only
14 entity that had knowledge of the particulate issues, head instability issues, and high AFR affecting
15 consumers' drives. So this variation in New York law would not affect the outcome.

16 Seagate notes in passing that **Florida** provides that "one who has knowledge of material facts
17 to which the other party does not have access may have a duty to disclose these facts to the other
18 party." Opp. at 20-21 (citation omitted). This "different standard" once again leads to the same
19 result: plaintiffs contend that Seagate possessed material information related to the true AFRs of the
20 drives and information about the drive defects. Hence, it would have a duty to disclose.

21 Likewise, Seagate's claim that **Texas** requires an intentional omission of material fact does
22 not present a bar for certification. As explained above, Section A(2), *supra*, in this case, it is

---

[45] *Id*. at 203.

[46] *Id*.

[47] *Id*. at 207.

[48] *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 624 (1994).

[49] *Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 534 n.20 (Mass. 2006); *see also Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975) ("proof of actual reliance by the plaintiff on a representation is not required").

uncontested that Seagate knew the drives' AFR exceeded one percent every month between 2011 and 2013. Rodewald Decl., ¶ 46. The factfinder can use this information to decide whether Seagate intended to "dupe" the consumer. This variation can be addressed with a simple jury instruction.

Finally, Seagate argues that **South Carolina** and **Tennessee** bar class actions. But other Northern District courts have held that these bans are procedural, rather than substantive. As Judge Gonzales Rodgers noted *In re Lithium Ion Batteries Antitrust Litigation*,[50] "South Carolina's class-action bans merely determines how substantive rights may be asserted, that is, the process of enforcing litigants' rights and not the rights themselves."[51]

## C. Plaintiffs satisfy the adequacy and typicality requirements of Rule 23(b).

Seagate's last challenge against certification is that the named plaintiffs' claims are atypical. First, Seagate incorrectly argues that "there were no AFR representations publicly available at the time named Plaintiffs Hagey, Manak, Enders, or Dorctch purchased their drives." But for the reasons discussed above, Section A(2), *supra*, this is absolutely untrue: Seagate's original data sheet was hosted on Seagate's website through the class period (and is, to this day, it still available on Seagate's website). This explains why Plaintiff Hagey testified that he also reviewed the data sheet and "considered the AFR rate to be material because it pertained to the internal Barracuda's reliability and longevity" and specifically meant that the drive would be reliable and have a long life. Scarlett Decl., Ex. 59. And it explains Plaintiff Enders' testimony that he reviewed the data sheet from Seagate's website, including the AFR rate before purchasing his drive. *Id.*, Ex. 57 at 109:20-110:14, 126:11-13. It also explains how Plaintiff Manak relied on Seagate's statements about the drives from the data sheet and "relied on their very, very low AFR which would mean it was very unlikely that I would suffer any data loss." *Id.*, Ex. 60 at 135:17-136:10.

---

[50] *See also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014).

[51] *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp.3d 772, 821 (N.D. Ill. 2017) (denying motion to dismiss under South Carolina law given *Shady Grove*); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012) (same); *In re Auto. Parts Antitrust Litig.*, No.12-md-02311. 2013 WL 2456612, at *106 (E.D. Mich. June 6, 2013) (same).

Seagate also suggests that the class representative for Florida is inadequate because he purchased a drive that is no longer in the class. Plaintiffs request that the Court conditionally certify a Florida class; plaintiffs have already found an adequate replacement representative who purchased an internal Barracuda drive that failed.[52] This new representative can substitute Schechner with minimal disruption to the case schedule.

Seagate also challenges Plaintiff Nelson's standing to represent South Dakota, incorrectly claiming that Plaintiff Nelson "purchased external drives only." Opp. at 16. Not true. Seagate is correct that Plaintiff Nelson purchased an external drive that failed. But Seagate misses the fact that Plaintiff Nelson also purchased a Seagate 3TB internal desktop hard drive from Tiger Direct in 2015.[53] This drive did not fail because it was never used – in his deposition, Plaintiff Nelson testified that shortly after he purchased the drive, he leaned about the drives' high failure rates from Blackblaze, so he shelved the drive, since it was likely to fail and not suitable for use.[54] Hence, Plaintiff Nelson perfectly captures the conclusions of Boedeker's conjoint analysis – the true failure rate of the drive is by far the most material characteristic for consumers, and if the true AFR rises above 10 percent, the drive would be worthless and unsuitable for use by most consumers. For this reason, Plaintiff Nelson is a perfectly adequate representative.

Finally, Seagate argues – without citing to any law that supports its position – that Plaintiff Manak's claims are time-barred. Seagate claims that the tolling stopped as soon as Manak's drive failed, and that Manak was then "on notice" that Seagate's drives were not as reliable as advertised. But that is not the law in Texas. Under Texas law, a claim under the DTPA is tolled until a claimant "should have discovered the injury and that it was likely ***caused by*** the wrongful acts of another." *Pecan Valley Nut Co.* is instructive: in *Pecan Valley*, consumers purchased trees that had been damaged by a fungicide, in violation of the DTPA. But even though the consumers discovered the

---

[52] *See* Declaration of Eric Ingram, ¶¶ 1-4, filed herewith.

[53] Van Engelen Decl., ¶ 14.

[54] *Pecan Valley Nut Co., Inc. v. E.I. du Pont de Nemours & Co.*, 15 S.W.3d 244, 248 (Tex. App. 2000), *review granted, judgment vacated, and remanded by agreement*, No. 11-98-00154-CV, 2001 Tex. LEXIS 99 (Oct. 25, 2001).

tree injury, including "terminal die back, early defoliation, curling, and leaf chlorosis," the statute of limitations for the DTPA claims did not begin to run until the consumers learned that this could have been caused by the fungicide, rather than by natural factors.[55] Here, Plaintiff Manak had no reason to suspect that Seagate was misrepresenting the AFR of its drives until the Blackblaze article in 2015 – before then, Plaintiff Manak could have reasonably believed that his drive fell within the .34% failure rate that Seagate published. Thus, Plaintiff Manak's claims were tolled until the Blackblaze article was published.

**D.    A class action is the superior method of adjudication.**

Finally, Seagate argues that a class action is not a superior method of adjudication because it claims that Seagate's AFR representations "varied over time and were intermittently available on its website." Opp. at 24. But Seagate has always hosted the data sheet with AFR representations on its website. And even if it were true, classwide litigation would still be superior to thousands of individual claims. There is no dispute that when Seagate made AFR representations regarding its drives, the AFR representations were always that the drives' failure rate was less than one percent.

Seagate's argument that there "is absolutely no consistency in what information Seagate could have been obligated to disclose" falls flat. Seagate could have made truthful representations by disclosing an accurate AFR range (*e.g.*, "up to ten percent") during the whole class period. In the alternative, Seagate also could have disclosed that particulate issues and head instability were making an accurate AFR difficult to calculate. Instead, it published a rate that it did not consistently reach in testing.

### III.    CONCLUSION

For the forgoing reasons, plaintiffs request that the Court certify the eight proposed classes.

DATED: December 10, 2018            HAGENS BERMAN SOBOL SHAPIRO LLP

By:    s/ Shana E. Scarlett
         SHANA E. SCARLETT

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000

---

[55] *Id.* at 248.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Breanna Van Engelen (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
Noah Axler (*pro hac vice*)
AXLER GOLDICH, LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 207-2920
mgoldich@axgolaw.com
naxler@axgolaw.com

*Attorneys for Plaintiffs and the Proposed Class*